David W. Parham
State Bar No. 15459500
John Mitchell
State Bar No. 00797095
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, Texas 75201
Telephone: (214) 978-3000
Facsimile: (214) 978-3099
Email: david.parham@bakermckenzie.com
Email: john.mitchell@bakermckenzie.com

- and -

Erin E. Broderick *(pro hac vice pending)*
Illinois Bar No. 6295974
300 East Randolph Drive, Suite 5000
Chicago, Illinois 60602
Telephone: (312) 861-8000
Facsimile: (312) 861-2899
Email: erin.broderick@bakermckenzie.com

*Attorneys for the Petitioner Robert Marie Mark Karpeles,*
*Foreign Representative of MtGox Co., Ltd., a/k/a MtGox KK*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re | ) | Chapter 15 |
| | ) | |
| MtGox Co., Ltd. (a/k/a MtGox KK) | ) | Case No. 14-_____  (___) |
| | ) | |
| Debtor in a Foreign Proceeding. | ) | |
| | ) | |

## DECLARATION OF TOD L. GAMLEN

I, Tod L. Gamlen, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury

under the laws of the United States of America as follows:

1

1.     I am a litigation attorney in the Palo Alto office of Baker & McKenzie LLP and am currently representing MtGox Co., Ltd. a/k/a MtGox KK (the "Debtor" or "MtGox") in a civil lawsuit filed in May 2013 in the United States District Court for the Western District of Washington, and entitled *CoinLab, Inc. v. Mt. Gox KK and Tibanne KK*, No. 2:13-cv-0077 (W.D. May 2, 2013) (the "CoinLab Action"), which is discussed in greater detail below.  I have been advised that MtGox has filed a civil rehabilitation proceeding under Japanese law (the "Japan Proceeding") before the Tokyo District Court, Twentieth Civil Division (the "Tokyo Court"), and this Chapter 15 proceeding.

2.     All facts set forth in this declaration are based on: (i) my personal knowledge; (ii) my review of relevant documents; or (iii) my opinion based on facts I have learned as counsel for MtGox in the CoinLab Action.

3.     I am authorized to, and do, submit this declaration in support of MtGox's Application for Order Granting Provisional Relief, Scheduling Hearings, and Specifying Form and Manner of Notice (the "Application").

**The US Litigation Subject to the Application**

**A.     The CoinLab Action.**

4.     The CoinLab Action was filed in the United States District Court for the Western District of Washington by CoinLab, Inc. ("CoinLab").  The claims asserted by CoinLab arise out of that certain Exclusive License Agreement for the USA & Canada (the "CoinLab Agreement"), dated November 22, 2012  and entered into between CoinLab on the one hand, and MtGox and its parent corporation, Tibanne, Co. Ltd., a/k/a Tibanne KK, on the other. Under the CoinLab Agreement, CoinLab was granted a license to use MtGox's technology to provide bitcoin exchange services for customers in the US and Canada.  As part of the CoinLab Agreement, CoinLab agreed to operate the services in compliance with all applicable laws.

5.     The facts disclosed in the CoinLab Action demonstrate that, among other things: prior to final implementation of the CoinLab Agreement, it was determined that CoinLab was not properly registered or licensed to perform the services called for under the CoinLab Agreement; and, as a result of such nonperformance by CoinLab, MtGox ceased its own performance under the CoinLab Agreement.

6.     CoinLab is suing MtGox and Tibanne for alleged breach of the CoinLab Agreement and breach of the implied duty of good faith and fair dealing. CoinLab is seeking damages of $75,000,000, which includes $50,000,000 arising from a liquidated damages clause in the CoinLab Agreement, as well as accounting and restitution. In addition, MtGox has asserted a counterclaim against CoinLab seeking to recover $5.2 million relating to CoinLab's conversion of customer funds.

7.     There is significant discovery yet to be completed in the CoinLab Action, which I believe would require MtGox to incur substantial expenses and expend significant resources. Among other things:

(a)     CoinLab has noticed the deposition of Mark Karpeles ("Karpeles") for March 25 and 26, 2014 in Taiwan. Karpeles is the Petitioner and proposed foreign representative in this Chapter 15 proceeding, the Debtors' Chief Executive Officer, and sole director of the Debtor, and the individual that is most knowledgeable about the technological defects that have led to the Debtor's current financial problems.

(b)     MtGox needs to take several depositions to complete preparation of its defenses, including the depositions of CoinLab's former Chief Financial Officer, CoinLab's former business development manager, and third

3

parties with knowledge of CoinLab's lack of regulatory compliance and/or CoinLab's conversion of the customer funds.

(c)     Summary judgment motions will likely be filed in the next few months.

(d)     CoinLab has served a discovery request, a response to which is due on or about March 17, 2014, which seeks, among other things, productions and/or inspection of MtGox's entire customer database, a request that I believe will result in substantial motion practice.

(e)     Expert disclosures are due April 7, 2014, which requires the preparation of expert reports and will lead to the depositions of such experts.

(f)     CoinLab may also seek to depose other witnesses before the June 6, 2014 discovery cutoff in the CoinLab Action.

8.     Relevant litigation scheduling dates in the CoinLab Action are as follows: (i) April 7, 2014, as the deadline to disclose expert witnesses and submission of expert witness reports; (ii) May 2, 2014, as the deadline to serve written discovery; (iii) June 6, 2014, as the deadline to complete discovery; (iv) July 7, 2014, as the deadline to file dispositive motions; and (v) November 3, 2014, the date of trial.

9.     I believe that if the CoinLab Action is not stayed in its entirety, MtGox will need to expend substantial monetary and personnel resources to work with experts, have experts prepare their reports, prepare responses to discovery requests, and prepare for depositions. Given the approaching deadlines in this action, work on most of these projects, if not all of them, must be done now if there is no provisional stay. Even though an automatic stay will be in place upon recognition of the Japan Proceeding, that may not occur for several weeks and during such time work must be performed.

**B.**    **The Greene v. MtGox Class Action.**

10.    On or about February 28, 2014, newspapers and postings on the Internet reported that a purported class action had been filed in the United States District Court for the Northern District of Illinois against "MtGox" by an individual named Gregory Greene.

11.    On March 5, 2014, I received an email from an attorney named Steven Woodrow; a copy of that email (without all attachments) is attached hereto as **Exhibit A**.  As can be seen from that email,  Mr. Woodrow stated, among other things, that:

(a)    His "…law firm represents Gregory Greene in the litigation recently filed in the Northern District of Illinois against Mt. Gox…." and that he understood that Baker & McKenzie represents Mt. Gox in a separate matter pending in the  Western District of Washington, which I understood to refer to the CoinLab Action.

(b)    His firm had filed a motion for temporary restraining order ("<u>TRO</u>") and preliminary injunction and wanted to know if our firm would be representing "Mt. Gox" in the matter.

12.    Mr. Woodrow attached several papers that his firm had filed in the Northern District of Illinois action.  Certain of those papers are attached hereto as discussed below.  In addition,  I obtained a copy of the complaint from the PACER online system.  Those papers demonstrate the following:

(a)    On February 27, 2014, Mr. Woodrow's firm filed a purported class action in the United Stated District Court for the Northern District of Illinois, entitled *Gregory Greene v. MtGox Inc., et al.*, Case No. 1:14-cv-1437 (N.D. Ill. Feb. 27, 2014) (the "<u>Greene Class Action</u>" and with the CoinLab

Action, the "US Litigation Matters"). A copy of the complaint is attached hereto as **Exhibit B**. In the Greene Class Action, the lead plaintiff seeks to represent two classes: (i) all persons in the US who paid a fee to MtGox to buy, sell, or otherwise trade bitcoin; and (ii) all persons in the US who had Bitcoins or currency stored with MtGox as of February 7, 2014, when MtGox halted all withdrawals of currency or Bitcoins.

(b)     Four defendants are named in the Greene Class Action: (i) MtGox; (ii) MtGox, Inc.; (iii) Tibanne; and (iv) Karpeles. Based on my work in the CoinLab Action, I have learned that MtGox Inc. is a second tier subsidiary of MtGox. It was formed in June 2013. It has never conducted any business operations. The company was formed to, among other things, operate certain US operations, including forming banking relationships and obtain appropriate licenses in the US in light of CoinLab's failure to be so licensed. In June 2013, it registered with FinCEN as a money transmitter business. It has been in the process of seeking to obtain state money transmitter business licenses. Based on my work in the CoinLab Action, I have learned that Tibanne is the parent of MtGox and owns 88% of the shares of MtGox.

(c)     The complaint asserts twelve causes of action against MtGox, MtGox, Inc., Tibanne, and Karpeles, including consumer fraud, fraudulent inducement, negligence, breach of fiduciary duty, breach of contract, unjust enrichment, trespass to chattels, conversion, for which the lead plaintiff is seeking a temporary restraining order and preliminary

injunction, a permanent injunction, an accounting, and imposition of a constructive trust.

(d)    On March 4, 2014, Mr. Woodrow's firm filed a motion for a temporary restraining order and preliminary injunction ("TRO"), of copy of which is attached hereto as **Exhibit C**.  The TRO motion requests that the court: (i) freeze any of the defendants' assets in the US (including any servers or other computer equipment in the US upon which customer information regarding bitcoins or currency accounts is stored); (ii) prohibit the defendants from transferring any bitcoin or currency belonging to the class members; (iii) provide an accounting of all of the defendants' outstanding liabilities; and (iv) impose a constructive trust over the defendants' assets for the exclusive benefit of the class members and the defendants to hold such assets in trust for the class members and immediately transfer those assets to the class members.   A hearing on the motion is scheduled for March 11, 2014.

(e)    In addition, in the motion referred to above plaintiff is seeking expedited discovery.

13.    My review of the claims asserted against MtGox in the Greene Class Action indicate that such claims arise out of the same facts which led to MtGox's insolvency and filing of the Japan Proceeding—the theft of MtGox customers' bitcoin and MtGox's consequent inability to return such bitcoin to its customers.

14.    I have acted as counsel in several class actions and have acted as counsel in several cases involving motions and/or applications for TROs, preliminary injunctions and

expedited discovery. It is my view that if the Greene Class Action is not stayed in its entirety, MtGox will need to expend substantial monetary and personnel resources to defend both the TRO/preliminary injunction motion (including its request for expedited discovery) as well as to defend the litigation on the merits. Among other things:

(a) The request for expedited discovery, if granted, will require MtGox to divert substantial personnel resources to comply, as well as substantial attorney fees. At the same time MtGox is trying to devote its resources to assisting in the Japanese Proceeding.

(b) Preliminary injunction papers will have to be prepared.

(c) Once defendants are served, responses to the complaint will have to be prepared. The issues involved in the Greene Class Action have only occurred recently, may not yet be fully understood, even by MtGox, and are of a highly technical nature. A fair understanding of them will have to gained in order to meaningfully respond to the complaint. That will require substantial resources and attorney fees.

(d) Potentially complex and technical class certification issues will be litigated. Among other things, the claims are based on Illinois state law and involve issues of individual reliance.

(e) Depositions will likely have to be taken of one or more MtGox personnel in order to understand cause and extent of the bitcoin loss. Yet, these are the same issues that are already being investigated in the Japan Proceeding.

(f) Experts may well have to be retained.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is, to the best of my knowledge, information and belief, complete, true and correct.

Executed on this 9th of March, 2014
in Palo Alto, California.

Tod L. Gamlen

# EXHIBIT A

**Gamlen, Tod L**

| | |
|---|---|
| **From:** | Steve Woodrow <swoodrow@edelson.com> |
| **Sent:** | Wednesday, March 05, 2014 11:34 AM |
| **To:** | Valles, Daniel; Gamlen, Tod L |
| **Cc:** | Alicia Hwang |
| **Subject:** | Greene v. Mt. Gox et al., 1:14-cv-01437 (ND. Ill) |
| **Attachments:** | Greene-Mt. Gox Dkt. 06 Mtn Oversized Brief.pdf; Greene-Mt. Gox Dkt. 07 Notice of Mtn Oversized Brief.pdf; Greene-Mt. Gox Dkt. 08 Mtn for TRO and Prelim Injunction.pdf; Greene-Mt. Gox Dkt. 09 Notice of Mtn TRO.pdf; Greene-Mt. Gox Dkt. 010 Greene Decl ISO Mtn TRO.pdf; Greene-Mt. Gox Dkt. 11 Woodrow Decl. ISO Mtn TRO.pdf; Greene-Mt. Gox Dkt. 11-1.pdf; Greene-Mt. Gox Dkt. 11-2.pdf; Greene-Mt. Gox Dkt. 11-3.pdf; Greene-Mt. Gox Dkt. 11-4.pdf |

Counsel:

Following up on my voicemail left yesterday evening, our law firm represents Gregory Greene in the litigation recently filed in the Northern District of Illinois against Mt. Gox. We understand that you represent Mt. Gox in a separate matter pending the in Western District of Washington and that Baker McKenzie attorneys are assisting Mt. Gox in Japan.

As I indicated on my voicemail, we have filed a Motion for a TRO/Preliminary Injunction and wanted to know if you would be representing Mt. Gox in this matter. Please let us know when you get a moment or whether Mt. Gox will be represented by other attorneys. In the meantime, I've attached a copy of the filed Motion together with the exhibits.

Best regards,

-Steven

--
Steven L. Woodrow I Edelson PC
999 West 18th Street, Suite 3000
Denver, Colorado 80202
303.357.4878 (direct) I 303.357.4877 (firm) I 312.589.6378 (fax)
swoodrow@edelson.com I www.edelson.com

⯀ Please consider the environment before printing this e-mail.

CONFIDENTIALITY AND LIABILITY FOR MISUSE
The information contained in this communication is the property of Edelson PC. It is confidential, may be attorney work product, attorney-client privileged or otherwise exempt from disclosure under applicable law, and is intended only for the use of the addressee(s). Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited. If you have received this communication in error, please notify Edelson PC immediately by return e-mail and destroy this communication and all copies thereof, including all attachments.

Pursuant to requirements related to practice before the U.S. Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for purposes of (i) avoiding penalties imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| GREGORY GREENE, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>MTGOX INC., a Delaware corporation, MT. GOX KK, a Japanese corporation, TIBANNE KK, a Japanese corporation, and MARK KARPELES, an individual,<br><br>*Defendants.* | Case No. 1:14-cv-1437 |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Gregory Greene ("Greene") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendants MtGox Inc., Mt. Gox KK, Tibanne KK, and Mark Karpeles (collectively referred to in the singular as "Mt. Gox") to challenge its intentional and systematic misuse and misappropriation of its users' property. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### NATURE OF THE ACTION

1.      In just a short period of time, hundreds of millions of dollars worth of a new form of digital currency known as "Bitcoin" belonging to the members of the Classes has disappeared. This catastrophic loss has not only revealed the instability of a burgeoning new industry, it has also uncovered a massive scheme to defraud millions of consumers into providing a private company with real, paper money in exchange for virtual currency. To help understand this

1

scheme, a brief introduction to the Bitcoin industry follows.

2.      Bitcoin is a form of digital currency that was created in early 2009.[1] Unlike

traditional money, bitcoins aren't issued from a government and aren't regulated by any central

authority. Instead, bitcoins can be created by any person with specialized hardware and computer

software and then sold to other consumers on the Internet via private companies, called "Bitcoin

exchanges" (like Mt. Gox).

3.      Founded in 2009, Mt. Gox claims to have become the world's largest Bitcoin

exchange. In other words, Mt. Gox has become the largest digital marketplace where individuals

can buy and sell bitcoins and also exchange them for traditional currencies (like the United

States Dollar). Mt. Gox has also become one of the largest "digital wallets," meaning that users

can deposit and store their bitcoins and the keys (passwords) necessary to access them on Mt.

Gox's servers.

4.      Unfortunately, while it was relatively easy to join the Mt. Gox exchange and

deposit cash and bitcoins, withdrawing one's money or bitcoins has become impossible. In early

February 2014, Mt. Gox halted all withdrawals from its website due to a supposed computer bug.

Over the next few weeks, reports began to reveal that the so-called "computer bug" afflicting Mt.

Gox's servers may have actually been a several-year long security breach that resulted in the

pilfering of millions of dollars worth of its users' bitcoins. Not surprisingly, after this news

broke, the price of bitcoins plummeted, creating a disruptive ripple effect that has nearly shut

down the industry and left Mt. Gox users unable to trade bitcoins and cut their losses against a

falling market.

---

[1]      For the sake of clarity, "Bitcoin" refers to the digital currency and "bitcoin" (with a lower case "b") refers to an individual unit of the currency itself.
[2]      Business Plan MtGox 2014-2017, http://www.scribd.com/doc/209535200/Business-Plan-MtGox-2014-2017 (last accessed February 27, 2014).

5.      In addition to these devastating effects, the security breach also revealed that Mt. Gox intentionally and knowingly failed to provide its users with the level of security protection for which they paid. To make matters even worse, the supposed security breach also supposedly prompted Mt. Gox to shut down its services, which has resulted in the loss of millions of dollars worth of its users' bitcoins. Plaintiff Greene is just one consumer who had bitcoins and keys stored with Mt.Gox who has lost money as a result of Mt. Gox's conduct. Accordingly, Greene brings suit on behalf of himself and all others similarly situated, to seek both monetary and equitable relief for Mt. Gox's deceptive and unlawful conduct.

## PARTIES

6.      Plaintiff Gregory Greene is a natural person and citizen of the State of Illinois.

7.      Defendant MtGox Inc. is a corporation existing under the laws of the State of Delaware with its principal place of business located at Level 15-F, Cerulean Tower, 26-1 Sakuragaoka-cho, Shibuya-ku, Tokyo, Japan 150-8512. MtGox Inc. conducts business throughout this District, the State of Illinois, and the United States. MtGox Inc. is registered with the Financial Crimes Enforcement Network (United States Department of the Treasury) as entity number 31000029348132. Additionally, it is registered as a Money Services Business ("MSB") to conduct MSB Activities in the State of Illinois.

8.      Defendant Mt. Gox KK is a Japanese corporation with its principal place of business located at Level 15-F, Cerulean Tower, 26-1 Sakuragaoka-cho, Shibuya-ku, Tokyo, Japan 150-8512. Mt. Gox KK conducts business throughout this District, the State of Illinois, and the United States. Mt. Gox KK is a parent of MtGox Inc. and conducts business in the United States directly by and through MtGox Inc.

9.      Defendant Tibanne KK is a Japanese corporation with its principal place of

business located at Level 15-F, Cerulean Tower, 26-1 Sakuragaoka-cho, Shibuya-ku, Tokyo,

Japan 150-8512. Tibanne KK conducts business throughout this District, the State of Illinois, and

the United States. Tibanne KK is a parent of Mt. Gox KK and conducts its business in the United

States directly by and through MtGox Inc.

10.    Defendant Mark Karpeles serves as the Chief Executive Officer of MtGox Inc.,

Mt. Gox KK, and Tibanne KK. Additionally, Mr. Karpeles is the sole shareholder of all three

companies. Based on Defendants' own statements, "Mark Karpeles is the President and CEO of

both MtGox and Tibanne. Mark providers [sic] overall direction, responsible for supervising

main operations and steering the company according to his vision".[2] Mr. Karpeles was

personally and intimately involved in the fraudulent conduct, theft, and breaches of fiduciary

duties described in this Complaint.

11.    Defendants act in direct concert and as a single unified entity under the brand

name "Mt. Gox." MtGox Inc., Mt. Gox KK, Tibanne KK, and Mark Karpeles are

indistinguishable as separate entities as all three corporations are maintained for a singular

purpose (operation of the Mt. Gox Bitcoin exchange), and Mr. Karpeles is the sole shareholder of

all three companies.

12.    Mt. Gox operated its Bitcoin exchange through the website www.mtgox.com,

which operates from servers located in the Commonwealth of Massachusetts (IP address

23.198.168.44).

## JURISDICTION AND VENUE

13.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2),

because (i) at least one member of the Classes, both of which consist of over 100 persons, is a

---

[2]    Business Plan MtGox 2014-2017, http://www.scribd.com/doc/209535200/Business-Plan-
MtGox-2014-2017 (last accessed February 27, 2014).

citizen of a different state than Defendants, (ii) the amount in controversy exceeds $5,000,000,

exclusive of interest and costs, and (iii) none of the exceptions under that subsection apply to this

action.

      14.    This Court has personal jurisdiction over Defendants because they conduct

business in this District, and the unlawful conduct alleged in the Complaint occurred in, was

directed to, and/or emanated from this District.

      15.    Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial

part of the events or omissions giving rise to the unlawful conduct alleged in the Complaint

occurred in, was directed to, and/or emanated from this District.

## COMMON FACTUAL ALLEGATIONS

**I.    An Overview of the Bitcoin Market.**

      16.    Introduced in early 2009, Bitcoin has quickly become a recognized form of digital

currency.

      17.    Just like paper money (*e.g.*, Dollars, Euros, etc.) (commonly known as "Fiat

Currency"), bitcoins can be used to purchase and sell goods and services through a number of

websites or from any merchant that accepts them. However, that's where the similarities end. For

instance, with "paper money, a government decides when to print and distribute [it]."[3] Bitcoin,

on the other hand, is a currency that is not issued or directly regulated by any central authority or

government. Instead, bitcoins are created by individuals through a complex computer program

and then bought and sold to consumers through private "exchanges."[4] The price of bitcoins

---

[3]     Bitcoin Mining, http://www.bitcoinmining.com/ (last accessed February 26, 2014).

[4]     By way of background, there are three primary ways to obtain bitcoins: mining new ones
(meaning creating new bitcoins using specialized computer hardware and software), accepting
them for goods and services, and buying them on an exchange (like Mt. Gox).

fluctuate on these exchanges just like any other currency market.

## II.    Mt. Gox's Bitcoin Exchange.

18.    Mt. Gox claims to operate the "world's most established Bitcoin exchange" that handles "over 80% of all Bitcoin trade" worldwide.[5] Mt. Gox boasts that it has become the leader in Bitcoin exchanges because its purported ability to allow consumers to "quickly and securely trade bitcoins with other people around the world with your local currency."[6]

19.    To trade bitcoins using Mt. Gox's service, a consumer must sign up for an account with it at www.mtgox.com. Once registered, users are required to verify their accounts by providing Mt. Gox with detailed information such as the user's full name, date of birth, country of birth, physical address, and proof of identity (such as a state issued identification card).

20.    Once the registration process is complete, users can start "trading" Bitcoins using Mt. Gox's online trading platform.

21.    Alternatively, Mt. Gox also provides users "with the ability to securely store Bitcoins in a virtual 'vault' for safe keeping."[7]

22.    When a consumer registers for an account, Mt. Gox expressly promises and represents that its website is "always on" and that users can "[b]uy and sell Bitcoin 24/7/365 with

---

[5]    Archive of Mt. Gox's homepage, http://xena.ww7.be/wsj/Mt.Gox%20-%20Bitcoin%20Exchange.html (last accessed February 26, 2014).

[6]    Archive of Mt. Gox's homepage, http://xena.ww7.be/wsj/Mt.Gox%20-%20Bitcoin%20Exchange.html (last accessed February 26, 2014).

[7]    Mt. Gox About Us, www.mtgox.com/about-us (last accessed December 4, 2013).

the world's most sophisticated trading platform."[8]

23.    Unfortunately for consumers, Mt. Gox has seriously failed to deliver on these promises.

### III.    Mt. Gox Freezes its Users' Accounts Without Notice and Then Shuts Down its Website.

24.    In early February 2014, Mt. Gox halted its users' ability to withdrawal any form of currency from its website while it purportedly investigated a "bug" or "technical malfunction" in the Bitcoin network, but still allowed users to trade bitcoins.[9]

25.    Not surprisingly, the market reacted quickly to this news and the price of bitcoins fell.[10] Unfortunately, because withdrawals were frozen, Mt. Gox users like Plaintiff and the members of the Classes could not withdraw funds as the price plummeted. Even if users traded during this time period, the resulting money remained trapped within Mt. Gox and, eventually, became entirely inaccessible once Mt. Gox shut down completely.

26.    Setting aside the fact that users couldn't even attempt to salvage their bitcoins during this time—as Mt. Gox left its users' accounts frozen—any remaining vestiges of Mt. Gox (including its Chief Executive Officer, Mark Karpeles) began to quickly disappear. Specifically, on or around February 23, 2014, Mt. Gox's social media webpage went offline, its website (www.mtgox.com) shut down, and Karpeles stepped down from the board of directors at the

---

[8]    Archive of Mt. Gox's homepage, http://xena.ww7.be/wsj/Mt.Gox%20-%20Bitcoin%20Exchange.html (last accessed February 26, 2014).
[9]    Bitcoin Price Plunges as Mt. Gox Exchange Halts Activity, http://www.bloomberg.com/news/2014-02-07/bitcoin-price-falls-as-mt-gox-exchange-halts-activity.html (last accessed February 27, 2014).

[10]    Bitcoin Price Plunges as Mt. Gox Exchange Halts Activity, http://www.bloomberg.com/news/2014-02-07/bitcoin-price-falls-as-mt-gox-exchange-halts-activity.html (last accessed February 27, 2014).

Bitcoin Foundation, the Bitcoin currency advocacy group.[11]

27.    Shortly thereafter, media outlets around the world began reporting that Mt. Gox had actually shut down due to a security breach that went unnoticed for *years*, which resulted in the loss of hundreds of millions of dollars worth of its users' bitcoins (approximately 744,000 of them).[12]

28.    As a result of Mt. Gox "going dark" and shutting down its entire operation, users' Fiat Currency and bitcoins previously stored by Mt. Gox are now unavailable to them, and by all accounts, have been converted and captured by Mt. Gox for its own purposes. On information and belief, Mr. Karpeles, as the sole shareholder of Mt. Gox, personally profited by shutting down Mt. Gox and obtaining users' Fiat Currency and bitcoins worth millions of dollars. Mr. Karpeles was and is aware of the conduct and security problems underlying the widespread loss of bitcoins, and was and is aware that he and his co-defendants were wrongfully obtaining bitcoins and Fiat Currency by shutting down the Mt. Gox exchange and capturing its users' property. Mr. Karpeles personally participated in, and had direct control over, Mt. Gox's public statements, the design and development of its website, the maintenance of its hardware and software, its customer service, banking regulatory affairs, interactions with government entities, and events leading to the loss of its users' bitcoins and Fiat Currency and the closing of the Mt. Gox exchange. On information and belief, Mr. Karpeles was personally responsible for making the decision to shut down Mt. Gox without releasing any of Plaintiff's or the putative Classes'

---

[11]    Survival of Bitcoin Exchange in Mt. Gox in Doubt, http://money.cnn.com/2014/02/24/technology/security/mtgox-bitcoin/ (last accessed February 27, 2014).

[12]    Bitcoin's Mt. Gox Goes Offline, Loses $409M – Recovery Steps and Taking Your Tax Losses, http://www.forbes.com/sites/cameronkeng/2014/02/25/bitcoins-mt-gox-shuts-down-loses-409200000-dollars-recovery-steps-and-taking-your-tax-losses/ (last accessed February 27, 2014).

bitcoins or Fiat Currency.

**IV.     Facts Relating to Plaintiff Gregory Greene.**

29.     In late 2011, while searching the Internet for a Bitcoin exchange, Plaintiff Greene navigated to Mt. Gox's website (www.mtgox.com) and read its advertisements and representations about its service, including its representations about the exchange's security, reliability, and ability to withdraw or deposit bitcoins at any time—substantially similar to the advertisements and representations described in Section II above.

30.     Relying upon these representations made to him by Mt. Gox on its website when he registered his account—namely, that Mt. Gox would allow him to "quickly and securely trade bitcoins with other people around the world," give him "the ability to securely store [his] Bitcoins in a virtual 'vault' for safe keeping," and allow him to access his bitcoins "at any time"—Greene signed up for an account on Mt. Gox's website, transferred United States Dollars into the account, and then used Mt. Gox's services to convert those funds into bitcoins.

31.     As part of the sign up process, Mt. Gox required Greene to provide it with his personal information in exchange for an agreement with Mt. Gox to be able to quickly and securely trade bitcoins.

32.     As such, Greene paid Mt. Gox transaction fees, in part, to be able to buy, sell, trade, and withdraw bitcoins, and also, in part, to maintain and protect his bitcoins and Fiat Currency in compliance with industry standards.

33.     Had Greene known of Mt. Gox's substandard security procedures that left his bitcoins vulnerable to theft, he would have paid substantially less for Mt. Gox's services or would not have paid at all.

34.     Additionally, because Mt. Gox prohibited withdrawals and eventually shut down

trading completely, Plaintiff was unable to (1) withdraw his bitcoins and/or Fiat Currency and

(2) was unable to sell his bitcoins in the rapidly falling market resulting from Defendants'

conduct.

35.    Because Mt. Gox did not sufficiently protect its service, including Greene's

bitcoins, Greene did not receive the entirety of the services he paid for, and as a result, he paid

more than he otherwise would have for such services.

36.    Worse yet, at the time Mt. Gox shut down, Greene had used Mt. Gox's services to

store and protect bitcoins with a present value of approximately $25,000 dollars. Despite his

repeated attempts, Greene has been unable to withdraw his money from Mt. Gox since early

February 2014. Prior to February 7, 2014, Plaintiff's bitcoins had a market value of nearly

double their value following Mt. Gox's prohibition on withdrawals and eventual shutdown,

which undeniably caused a sharp decline in the market value of bitcoins.

## CLASS ALLEGATIONS

37.    **Class Definition**: Plaintiff brings this action pursuant to Federal Rule of Civil

Procedure 23(b)(2) and (b)(3) on behalf of himself and a class of similarly situated individuals,

defined as follows:

> **Payment Class**: All persons in the United States who paid a fee to Mt. Gox to buy, sell,
> or otherwise trade bitcoins.

Additionally, Plaintiff Greene brings this action pursuant to Federal Rule of Civil Procedure

23(b)(2) and (b)(3) on behalf of himself and a second class of similarly situated individuals,

defined as follows:

> **Frozen Currency Class**: All persons in the United States who had bitcoins or Fiat
> Currency stored with Mt. Gox on February 7, 2014.

Excluded from the Payment Class and Frozen Currency Class (collectively, the

"Classes") are (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current and former employees, officers, and directors, (2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, (3) persons who execute and file a timely request for exclusion, (4) all persons who have previously had claims similar to those alleged herein finally adjudicated or who have released their claims against Defendants, and (5) the legal representatives, successors, or assigns of any such excluded person.

38.     **Numerosity**: The exact number of the members of the Classes is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, there are hundreds of thousands of persons in the Classes. Members of the Classes can be identified through Defendants' records and ascertained by reference to objective criteria.

39.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the members of the putative Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to, the following:

(a)     whether Mt. Gox adequately safeguarded Plaintiff's and the members of the Classes' bitcoins and Fiat Currency;

(b)     whether Mt. Gox breached its duty to protect Plaintiff's and the Classes' bitcoins and Fiat Currency;

(c)     whether implied or express contracts existed between Mt. Gox, on the one hand, and Plaintiff and the members of the putative Classes on the other;

(d)    whether Mt. Gox's conduct described herein constitutes consumer fraud;

(e)    whether Mt. Gox's conduct constitutes fraudulent inducement;

(f)    whether Mt. Gox's conduct constitutes negligence;

(g)    whether Mr. Gox's conduct constitutes a breach of fiduciary duty;

(h)    whether Mt. Gox's conduct described herein constitutes a breach of contract;

(i)    whether Mt. Gox should retain the monies paid by Plaintiff and the putative Classes;

(j)    whether a temporary restraining order and/or preliminary injunction is appropriate and necessary;

(k)    whether a permanent injunction is appropriate and necessary;

(l)    whether an accounting is appropriate and necessary;

(m)    whether Defendants' conduct constitutes trespass to chattels;

(n)    whether Defendants' conduct constitutes conversion; and

(o)    whether Plaintiff and the putative Classes' are entitled to such further relief requested herein, among other common legal and factual questions.

40.    **Typicality**: Plaintiff's claims are typical of the claims of other members of the Classes in that Plaintiff and the members of the Classes suffered substantially similar injuries arising out of Mt. Gox's uniform wrongful conduct.

41.    **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Classes, and Mt. Gox has no defenses unique to Plaintiff.

42.     **Policies Generally Applicable to the Classes**: This class action is appropriate for certification under Rule 23(b)(2) because Mt. Gox has acted or refused to act on grounds generally applicable to the Classes as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final injunctive relief appropriate with respect to the Classes as a whole. Mt. Gox's policies challenged herein apply and affect members of the Classes uniformly and Plaintiff's challenge of these policies hinges on Mt. Gox's conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiff. Specifically, the factual and legal bases of Mt. Gox's liability to Plaintiff and to the other members of the Classes are the same, resulting in injury to the Plaintiff and to all of the other members of the Classes. Plaintiff and the members of the Classes have suffered harm and damages as a result of Mt. Gox's unlawful and wrongful conduct.

43.     **Superiority and Manageability**: This case is also appropriate for class certification under Rule 23(b)(3) because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Mt. Gox's actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Mt. Gox's misconduct. Even if members of the Classes could sustain such individual litigation it would still not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of

single adjudication, economies of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

## FIRST CAUSE OF ACTION
### Consumer Fraud
### (On behalf of Plaintiff and the Classes)

44. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

45. As described herein, Mt. Gox has engaged in unlawful, deceptive, and unfair conduct that is immoral, unscrupulous, and causes substantial injury to consumers.

46. Through its online marketing materials and advertisements, Mt. Gox represented to Plaintiff and the Classes that it would, *inter alia*, protect their bitcoins and Fiat Currency and safely and quickly allow them to buy, sell, trade, or withdraw the same at any time.

47. Mt. Gox's promises and representations made on its website and in its associated promotional materials with respect to its utility, privacy, security, and availability were, in fact, false. Mt. Gox did not adequately safeguard its exchange or its users' bitcoins and Fiat Currency nor did Mt. Gox safely and quickly allow Plaintiff and the members of the Classes to buy, sell, and otherwise trade the same at any time.

48. Thus, Mt. Gox's representations to Plaintiff and the members of the Classes were false and Mt. Gox knew they were false.

49. Knowing that consumers are less likely to do business with companies that fail to adequately safeguard their bitcoins and Fiat Currency or allow them to buy, sell, trade, or withdraw the same at any time, Mt. Gox made the false representations with the intention that Plaintiff and the members of the Classes' would rely on them in contracting with Mt. Gox.

50. Because ordinary consumers lacked access to Mt. Gox's proprietary information regarding its true business policies, practices and procedures prior to February 2014, Mt. Gox's

14

representations were likely to deceive consumers who had no other resource for assessing Mt. Gox's services.

51.     Had Mt. Gox disclosed its true practices, Plaintiff and the Payment Class would have paid substantially less for Mt. Gox's services or would not have paid at all (*i.e.*, the value of Mt. Gox's exchange services *without* adequate protections and the ability to access funds at any time is worth substantially less than the value of such services *with* adequate protection and the ability to access funds or trade at any time). Because Plaintiff and the Payment Class paid, in part, for Mt. Gox to protect their bitcoins and Fiat Currency in compliance with industry standards and allow them to access funds at any time, Plaintiff and the Payment Class did not receive the services for which they paid.

52.     Further, Mt. Gox's deceptive conduct caused Plaintiff and the members of the Frozen Currency Class monetary damages because, but for Mt. Gox's unlawful conduct, they would be able to withdraw their bitcoins or Fiat Currency, which are worth millions of United States Dollars.

53.     Accordingly, Mt. Gox's false representations constituted deceptive conduct.

54.     Mt. Gox's failures to comply with its security and privacy promises and obligations were also unlawful conduct.

55.     Mt. Gox's conduct also constitutes unfair conduct because it caused substantial injury to Plaintiff and the members of the Classes that was not offset by countervailing benefits to consumers or competition and is not reasonably avoidable by consumers.

56.     Mt. Gox's inadequate security measures and false representations caused substantial injury to Plaintiff and the members of the Payment Class because Plaintiff and the Payment Class would have paid substantially less for Mt. Gox's services or would have not paid

at all but for Mt. Gox's deception. Further, Mt. Gox's unlawful conduct caused the Frozen Currency Class to suffer actual harm in the form of lost, stolen, or inaccessible bitcoins or Fiat Currency.

57.    Plaintiff and the putative members of the Frozen Currency Class also experienced harm in that they were unable to withdraw their Fiat Currency or bitcoins while the market fell as a result of Defendants' conduct. Additionally, Plaintiff's and other members of the Frozen Currency Class's bitcoins lost significant value between February 7, 2014 and the present as the price of bitcoins on the Mt. Gox exchange plummeted.

58.    The harm suffered by Plaintiff and the Classes was not reasonably foreseeable to them because they lacked firsthand knowledge of Mt. Gox's security measures and other business practices given Mt. Gox's false public representations regarding the same.

59.    Mt. Gox's deceptive, unlawful, and unfair conduct occurred in the course of consumers contracting for the exchange of currency and therefore occurred in the course of conduct involving trade and commerce.

60.    In sum, Mt. Gox's deceptive, unlawful, and unfair conduct caused Plaintiff and the Classes monetary damages. Plaintiff and the Payment Class would have paid substantially less for Mt. Gox's services or would have not paid at all had they known that Mt. Gox would protect their bitcoins and make them readily available in derogation of its representations. Likewise, Plaintiff and the Frozen Currency Class would not have lost bitcoins and Fiat Currency, and lost significant value in their bitcoins that they were unable to sell, but for Mt. Gox's unlawful, deceptive, and unfair conduct.

61.    Accordingly, Plaintiff seeks an order (i) preliminarily and permanently enjoining Mt. Gox from continuing to engage in unfair and fraudulent conduct, (ii) requiring Mt. Gox to

make full restitution of all funds wrongfully obtained, and (ii) awarding punitive damages, costs, and reasonable attorneys' fees to Plaintiff and the Classes.

**SECOND CAUSE OF ACTION**
**Fraud in the Inducement**
**(On Behalf of Plaintiff and the Classes)**

62.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

63.    Mt. Gox misrepresented and/or failed to disclose material provisions of the sale of its Bitcoin exchange services.

64.    Through the misrepresentations and omissions detailed herein, Mt. Gox wrongfully induced Plaintiff and the Classes to purchase its services and provide it with Fiat Currency and bitcoins. These representations included statements on Defendants' website indicating that the Mt. Gox exchange was safe and secure, and that users' would be able to freely deposit and withdraw Fiat Currency and bitcoins at any time.

65.    Defendant knew or should have known that its misstatements and omissions regarding the terms of the sale of its services were misleading to Plaintiff and the Classes.

66.    Defendant intended that consumers rely upon its misstatements and omissions regarding the sale of its services.

67.    In deceiving Plaintiff and members of the Classes regarding the full terms of the sale of its services, Mt. Gox has engaged in fraudulent practices designed to induce consumers to sign up for and use its services.

68.    Defendants together participated in a fraudulent scheme to defraud consumers. Specifically, Defendants made numerous false statements and broke numerous affirmative promises, including but not limited to the quality of its security procedures, users' ability to withdraw bitcoins and Fiat Currency, and the accessibility and ownership of the bitcoins and Fiat

17

Currency held by Defendants. Moreover, Defendants perpetrated a fraudulent scheme by halting

user withdrawals, representing that the prohibition was only temporary, allowing users to

continue to trade (and therefore profited from transaction fees), and thereafter never lifted the

withdrawal prohibition and shut down he entire exchange.

69.     As a proximate result of Mt. Gox's violations of law and wrongful conduct

alleged herein, Plaintiff and the Classes have suffered actual harm. Plaintiff and the Payment

Class suffered economic injury and other damages, including in the amount of the difference

between the price they paid for Mt. Gox's services as promised and the actual diminished value

of its services. Further, Plaintiff and the Frozen Currency Class have suffered damages in the

form of the price of the bitcoins and Fiat Currency that were stolen, lost, or misused by Mt. Gox,

and the loss of value in those bitcoins that they were prohibited from selling.

70.     Accordingly, Plaintiff seeks an order (i) preliminarily and permanently enjoining

Mt. Gox from continuing to engage in unfair and fraudulent conduct, (ii) requiring Mt. Gox to

pay damages and make full restitution of all funds wrongfully obtained, charged, or held, and (ii)

awarding punitive damages to Plaintiff and the Classes plus costs.

### THIRD CAUSE OF ACTION
#### Negligence
#### (On behalf of Plaintiff and the Classes)

71.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

72.     Mt. Gox requested and came into possession of Plaintiff's and the Classes'

bitcoins and Fiat Currency and had a duty to exercise reasonable care in safeguarding and

protecting such information from being accessed, stolen, or otherwise harmed. Mt. Gox's duty

arose from the legal and industry standards discussed above and its financial relationship with

Plaintiff's and the Classes.

73. Mt. Gox had a duty to employ procedures to detect and prevent the improper access and misuse of Plaintiff's and the Classes' bitcoins and Fiat Currency and also to allow them complete access to the same. The breach of security, unauthorized access, freezing of their accounts, and resulting injury to the Plaintiff and the Classes were reasonably foreseeable, particularly in light of Mt. Gox's inadequate data management and security system.

74. Mt. Gox, through its actions and/or omissions, unlawfully breached its duty to the Plaintiff and the Classes by failing to implement industry-standard protocols and exercise reasonable care in light of foreseeable risks in maintaining, protecting and safeguarding the Plaintiff's and the Classes' bitcoins and Fiat Currency within Mt. Gox's control.

75. Mt. Gox, through its actions and/or omissions, breached its duty to Plaintiff and the Classes by failing to have procedures in place to detect and prevent access to Plaintiff's and the Classes' bitcoins and Fiat Currency.

76. But for Mt. Gox's breach of its duties, Plaintiff's and the Classes' bitcoins and Fiat Currency would not have been compromised and/or frozen. The Plaintiff's and Classes' bitcoins and Fiat Currency were accessed, frozen, converted, and/or misused as the proximate result of Mt. Gox's failure to exercise reasonable care in safeguarding such information by adopting, implementing, and maintaining appropriate data management and security measures. Additionally, Plaintiff and members' of the Frozen Currency Class lost significant value in their bitcoins as a result of being unable to access or sell them.

77. As a result of Mt. Gox's conduct, Plaintiff and the Payment Class suffered economic injury and other damages, including without limitation the amount of the difference between the price they paid for Mt. Gox's services as promised and the actual diminished value of its services. Further, Plaintiff and the Frozen Currency Class have suffered damages in the

form of the price of the bitcoins and Fiat Currency that were stolen, lost, or misused by Mt. Gox.

78. Accordingly, Plaintiff seeks an order requiring Mt. Gox to pay damages in amounts to be proven at trial plus costs of this suit.

## FOURTH CAUSE OF ACTION
### Breach of Fiduciary Duty
### (On Behalf of Plaintiff and the Classes)

79. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

80. As guardians of the Plaintiff's and the Classes' bitcoins, Mt. Gox owed a fiduciary duty to Plaintiff and the Classes to protect their bitcoins and Fiat Currency and maintain complete and accurate records of how its users' bitcoins and Fiat Currency were purchased, sold, and withdrawn. Defendants likewise owed a fiduciary duty to Plaintiff and the Classes to allow access to their Fiat Currency and bitcoins held on the Mt. Gox exchange.

81. Mt. Gox breached its fiduciary duty to the Plaintiff and the Classes by: (i) failing to adequately safeguard its users bitcoins and Fiat Currency, and (ii) to allow them to safely and quickly buy, sell, trade, or withdraw the same. Mt. Gox did not honor any of these obligations.

82. As a result of Mt. Gox's breaches, the Plaintiff and the Classes have suffered actual harm. Plaintiff and the Payment Class suffered economic injury and other damages, including, without limitation, the amount of the difference between the price they paid for Mt. Gox's services as promised and the actual diminished value of its services. Further, Plaintiff and the Frozen Currency Class have suffered damages in the form of the price of the bitcoins and Fiat Currency that were stolen, lost, or misused by Mt. Gox. Members of the Classes have also suffered damages in the amounts of fees paid to Mt. Gox in exchange for its faithful execution of its fiduciary obligations.

83. Accordingly, Plaintiff seeks an order (i) preliminarily and permanently enjoining

Mt. Gox from continuing to engage in unfair and fraudulent conduct, (ii) requiring Mt. Gox to

make full restitution of all funds wrongfully obtained, held or charged, and (ii) awarding punitive

damages, costs, and reasonable attorneys' fees to Plaintiff and the Classes.

## FIFTH CAUSE OF ACTION
### Breach of Contract
### (On behalf of Plaintiff and the Classes)

84.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

85.    Plaintiff and the Classes entered into valid and enforceable agreements with Mt.

Gox whereby Mt. Gox promised to provide services to Plaintiff and the Classes, and Plaintiff and

the Classes agreed to pay money for such services.

86.    As a material part of Mt. Gox's form contracts with the members of the Classes,

Mt. Gox promised Plaintiff and the Classes that it would adequately protect their bitcoins and

Fiat Currency and would allow them to safely and quickly buy, sell, trade, or withdraw the same.

87.    Based on the foregoing offers and representations, Plaintiff and the Classes agreed

to sign up for Mt. Gox's services and trade bitcoins and Fiat Currency using the same. Further,

Plaintiff and the Frozen Currency Class agreed to store and maintain bitcoins and Fiat Currency

on Mt. Gox's website. As such, Plaintiff and the Classes performed their obligations under the

contracts.

88.    Mt. Gox breached its contracts with Plaintiff and the Payment Class by failing to

safely and adequately protect their bitcoins and Fiat Currency. Mt. Gox further breached its

contracts with Plaintiff and the Frozen Currency Class by unlawfully retaining, losing, or

misusing their bitcoins and Fiat Currency and by failing to provide them with access to their

bitcoins and currency stored on Mt. Gox at any time.

89.    Likewise, Illinois contract law recognizes the implied covenant of good faith and

fair dealing in every contract. Thus, implicit in its contracts with Plaintiff and the Classes were provisions prohibiting Mt. Gox from engaging in conduct that frustrated Plaintiff's and the Classes' abilities to receive the benefits of their agreements.

90.     Mt. Gox acted in bad faith and breached these provisions of the agreement specifically by not honoring its responsibilities to adequately safeguard its users bitcoins and Fiat Currency, by unlawfully retaining, losing, or misusing the same, and by failing to provide its users with access to their bitcoins and money stored on Mt. Gox at any time.

91.     Furthermore, Mt. Gox was under an implicit obligation to be truthful in its advertisements, and to adequately safeguard its users bitcoins and Fiat Currency and to allow them to safely and quickly buy, sell, trade, or withdraw the same at any time. Mt. Gox did not honor any of these obligations.

92.     Mt. Gox breached the implied covenant of good faith and fair dealing by: (i) failing to adequately safeguard its users bitcoins and Fiat Currency, (ii) unlawfully retaining, losing, or misusing their bitcoins and Fiat Currency, (iii) denying users access to Mt. Gox at any time, and (iv) by failing to fully comply with the proscriptions of applicable law.

93.     The aforementioned breaches of contract have directly and proximately caused Plaintiff and the Payment Class economic injury and other damages, including in the amount of the difference between the price they paid for Mt. Gox's services as promised and the actual diminished value of its services. Further, Plaintiff and the Frozen Currency Class have suffered damages in the form of the price of the bitcoins and Fiat Currency that were stolen, lost, or misused by Mt. Gox.

94.     Accordingly, Plaintiff seeks an order (i) preliminarily and permanently enjoining Mt. Gox from continuing to engage in unfair and fraudulent conduct, (ii) requiring Mt. Gox to

pay damages in amounts to be proven at trial, and (ii) awarding Plaintiff costs and reasonable

attorneys fees.

**SIXTH CAUSE OF ACTION**
**Unjust Enrichment/Restitution**
**(in the alternative to Count V)**
**(On Behalf of Plaintiff and the Classes)**

95.     Plaintiff incorporates the foregoing allegations as if fully set forth herein,

excluding paragraphs 84 to 94.

96.     If the Court finds Plaintiff's and the Classes' contracts with Mt. Gox invalid, non-

existent, or otherwise unenforceable, Plaintiff and the Classes may be left without any adequate

remedy at law.

97.     Plaintiff and the Payment Class conferred monetary benefits on Mt. Gox in the

form of fees paid for its services.

98.     Mt. Gox appreciated or had knowledge of the benefits conferred upon it by

Plaintiff and the Payment Class.

99.     The fees for services that Plaintiff and the Payment Class paid to Mt. Gox were

supposed to be used by Mt. Gox, in part, to pay for the administrative costs of bitcoin

management and security and to keep the exchange operating.

100.    Under principles of equity and good conscience, Mt. Gox should not be permitted

to retain the money belonging to Plaintiff and the Payment Class because Mt. Gox failed to

implement adequate bitcoin management and security measures that Plaintiff and the Payment

Class paid for and are otherwise entitled to by industry standards.

101.    Moreover, Plaintiff and the Frozen Currency Class conferred a monetary benefit

on Mt. Gox in the form of actual bitcoins and Fiat Currency and transaction fees.

102.    Mt. Gox appreciated or had knowledge of the benefits conferred upon it by

23

Plaintiff and the Frozen Currency Class.

103.    The bitcoins and Fiat Currency that Plaintiff and the Frozen Currency Class provided to Mt. Gox were supposed to be released back or made available to Plaintiff and the Frozen Currency Class.

104.    Under principles of equity and good conscience, Mt. Gox should not be permitted to retain the money belonging to Plaintiff and the Frozen Currency Class.

105.    Accordingly, as a result of Mt. Gox's conduct, Plaintiff and the Payment Class suffered economic injury and other damages, including in the amount of the difference between the price they paid for Mt. Gox's services as promised and the actual diminished value of its services. Further, Plaintiff and the Frozen Currency Class have suffered damages in the form of the price of the bitcoins and Fiat Currency that were stolen, lost, or misused by Mt. Gox.

106.    Accordingly, Plaintiff seeks an order (i) preliminarily and permanently enjoining Mt. Gox from continuing to engage in unfair and fraudulent conduct, (ii) requiring Mt. Gox to make full restitution of all funds wrongfully obtained, and (ii) awarding punitive damages to Plaintiff and the Classes plus costs of the lawsuit.

### SEVENTH CAUSE OF ACTION
**Temporary Restraining Order/ Preliminary Injunction**
**(On Behalf of Plaintiff and the Frozen Currency Class)**

107.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

108.    Plaintiff and the Frozen Currency Class conferred a monetary benefit on Mt. Gox in the form of actual bitcoins and Fiat Currency and fees.

109.    Mt. Gox appreciated or had knowledge of the benefits conferred upon it by Plaintiff and the Frozen Currency Class.

110.    On February 7, 2014, Mt. Gox halted all withdrawals from its website and

24

subsequently shut down its service. As a result, Plaintiff and the Frozen Currency Class cannot

access, withdraw, or cash out their bitcoins or Fiat Currency.

111.    The bitcoins and Fiat Currency that Plaintiff and the Frozen Currency Class

provided to Mt. Gox were supposed to be released back to Plaintiff and the Frozen Currency

Class.

112.    Plaintiff and the Frozen Currency Class will suffer irreparable harm if Mt. Gox

retains the bitcoins and Fiat Currency belonging to Plaintiff and the Frozen Currency Class.

113.    Plaintiff and the Frozen Currency Class have no adequate remedy at law since

they have no other means of accessing, withdrawing, or cashing out their bitcoins or Fiat

Currency. Furthermore, media reports suggest that Mt. Gox may become insolvent or dissipate

any remaining assets.

114.    Plaintiff and the Frozen Currency Class will likely succeed on the merits, because

Mt. Gox unlawfully misused or misappropriated Plaintiff's and the Frozen Currency Class's

bitcoins and Fiat Currency and continues to exercise control over their property.

115.    Accordingly, Plaintiff seeks an order (i) temporarily restraining and preliminarily

enjoining Mt. Gox from continuing to deny Plaintiff and the members of the Frozen Currency

Class access to their bitcoins and money, (ii) requiring Mt. Gox to immediately make full

restitution of all funds wrongfully obtained, and (iii) awarding Plaintiff costs of the lawsuit.

### EIGHTH CAUSE OF ACTION
**Permanent Injunction**
**(On Behalf of Plaintiff and the Frozen Currency Class)**

116.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

117.    Plaintiff and the Frozen Currency Class conferred a monetary benefit on Mt. Gox

in the form of actual bitcoins and Fiat Currency.

118.  Mt. Gox appreciated or had knowledge of the benefits conferred upon it by Plaintiff and the Frozen Currency Class.

119.  In early February 2014, Mt. Gox halted all withdrawals from its website and subsequently shut down its service. As a result, Plaintiff and the Frozen Currency Class cannot access, withdraw, or cash out their bitcoins or Fiat Currency.

120.  The bitcoins and Fiat Currency that Plaintiff and the Frozen Currency Class provided to Mt. Gox were supposed to be released back to Plaintiff and the Frozen Currency Class.

121.  Plaintiff and the Frozen Currency Class will suffer irreparable harm if Mt. Gox retains the bitcoins and Fiat Currency belonging to Plaintiff and the Frozen Currency Class. Furthermore, media reports suggest that Mt. Gox may become insolvent or dissipate any remaining assets.

122.  Plaintiff and the Frozen Currency Class have no adequate remedy at law since they have no other means of accessing, withdrawing, or cashing out their bitcoins or Fiat Currency.

123.  Plaintiff and the Frozen Currency Class will likely succeed on the merits, because Mt. Gox unlawfully misused or misappropriated Plaintiff's and the Frozen Currency Class's bitcoins and Fiat Currency.

124.  Accordingly, Plaintiff seeks an order (i) permanently enjoining Mt. Gox from continuing to deny Plaintiff and the members of the Frozen Currency Class access to their bitcoins and money, (ii) requiring Mt. Gox to immediately make full restitution of all funds wrongfully obtained, and (iii) awarding Plaintiff costs of the lawsuit.

26

## NINTH CAUSE OF ACTION
### Trespass to Chattels
#### (On Behalf of Plaintiff and the Frozen Currency Class)

125.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

126.    Plaintiff and the Frozen Currency Class transferred, maintained, and stored actual bitcoins and Fiat Currency on Mt. Gox's exchange.

127.    Plaintiff's and the Frozen Currency Class's bitcoins and Fiat Currency are protected property interests.

128.    Mt. Gox intentionally and/or negligently, and without authorization or consent, gained accessed to Plaintiff's and the Frozen Currency Class's bitcoins and Fiat Currency, used Plaintiff's and the Frozen Currency Class's bitcoins and Fiat Currency, exercised control, dominion or ownership of Plaintiff's and the Frozen Currency Class's bitcoins and Fiat Currency, and/or dispossessed of Plaintiff's and the Frozen Currency Class's bitcoins and Fiat Currency.

129.    In doing so, Mt. Gox intentionally and/or negligently intermeddled with, damaged, and/or deprived Plaintiff and the other members of the Frozen Currency Class of the use of their bitcoins and Fiat Currency.

130.    As a result of Mt. Gox's interference with Plaintiff's and the other Frozen Currency Class's use of their bitcoins and Fiat Currency, Plaintiff and the other members of the Frozen Currency Class have suffered, and will continue to suffer, damages, including in the form of diminished value of their bitcoins.

131.    Accordingly, Plaintiff seeks an order (i) enjoining Mt. Gox from continuing to deny Plaintiff and the members of the Frozen Currency Class access to their bitcoins and money, (ii) requiring Mt. Gox to pay damages and immediately make full restitution of all funds

wrongfully obtained, and (ii) awarding Plaintiff costs of the lawsuit.

## TENTH CAUSE OF ACTION
### Conversion
### (On Behalf of Plaintiff and the Frozen Currency Class)

132.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

133.    Plaintiff and the Frozen Currency Class transferred, maintained, and stored actual bitcoins and Fiat Currency on Mt. Gox's exchange.

134.    Plaintiff's and the Frozen Currency Class's bitcoins and Fiat Currency are protected property interests.

135.    Mt. Gox intentionally and without authorization or consent gained accessed to Plaintiff's and the Frozen Currency Class's bitcoins and Fiat Currency, used Plaintiff's and the Frozen Currency Class's bitcoins and Fiat Currency, exercised control, dominion or ownership of Plaintiff's and the Frozen Currency Class's bitcoins and Fiat Currency, and/or dispossessed of Plaintiff's and the Frozen Currency Class's bitcoins and Fiat Currency.

136.    In doing so, Mt. Gox intentionally intermeddled with, damaged, and/or deprived Plaintiff and the other members of the Frozen Currency Class of the use of their bitcoins and Fiat Currency.

137.    As a result of Mt. Gox's interference with Plaintiff's and the other Frozen Currency Class's use of their bitcoins and Fiat Currency, Plaintiff and the other members of the Frozen Currency Class have suffered, and will continue to suffer, damages, including in the form of diminished value of their bitcoins.

138.    Accordingly, Plaintiff seeks an order (i) enjoining Mt. Gox from continuing to deny Plaintiff and the members of the Frozen Currency Class access to their bitcoins and money, (ii) requiring Mt. Gox to pay damages and immediately make full restitution of all funds

wrongfully obtained, and (ii) awarding Plaintiff costs of the lawsuit.

## ELEVENTH CAUSE OF ACTION
### Accounting
### (On Behalf of Plaintiff and the Frozen Currency Class)

139.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

140.    Plaintiff and the Frozen Currency Class conferred a monetary benefit on Mt. Gox in the form of actual bitcoins and Fiat Currency.

141.    Mt. Gox appreciated or had knowledge of the benefits conferred upon it by Plaintiff and the Frozen Currency Class.

142.    In early February 2014, Mt. Gox halted all withdrawals from its website and subsequently shut down its service. As a result, Plaintiff and the Frozen Currency Class cannot access, withdraw, or cash out their bitcoins or Fiat Currency.

143.    Because all transaction records relating to the purchase, sale, trade, and withdrawal of Plaintiff's and the Frozen Currency Class's bitcoins and Fiat Currency are exclusively within the control of Mt. Gox, Plaintiff and the Frozen Currency Class have an inadequate legal remedy in that it cannot determine the precise amount of damage that it has suffered as a result of Mt. Gox's conduct, including its breaches of fiduciary duty.

144.    As a result, Plaintiff and the Frozen Currency Class seek an order requiring Mt. Gox to provide a full and complete accounting of all transactions or records relating to the purchase, sale, trade, withdrawal, disbursement, theft, or dissipation of Plaintiff's and the Frozen Currency Class's bitcoins or Fiat Currency plus costs of the lawsuit.

## TWELFTH CAUSE OF ACTION
### Constructive Trust
### (On Behalf of Plaintiff and the Frozen Currency Class)

145.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

146.    Plaintiff and the Frozen Currency Class conferred a monetary benefit on Mt. Gox in the form of actual bitcoins and Fiat Currency.

147.    Mt. Gox appreciated or had knowledge of the benefits conferred upon it by Plaintiff and the Frozen Currency Class.

148.    In early February 2014, Mt. Gox halted all withdrawals from its website and subsequently shut down its service. As a result, Plaintiff and the Frozen Currency Class cannot access, withdraw, or cash out their bitcoins or Fiat Currency.

149.    As a result, and with respect to Plaintiff's claims for equitable relief described herein, each of which is made in the alternative to Plaintiff's claims for money damages, Plaintiff and the Frozen Currency Class seek the imposition of a constructive trust on all of their bitcoins or Fiat Currency within Mt. Gox's possession, custody, or control. Such bitcoins or Fiat Currency are the property of the members of the Frozen Currency Class and they have an equitable interest in such property.

150.    Mt. Gox intentionally and/or negligently, and without authorization or consent, gained possession, custody or control of Plaintiff's and the Frozen Currency Class's bitcoins and Fiat Currency and has denied Plaintiff and the members of the Frozen Currency Class the ability to access their property.

151.    The imposition of a constructive trust on Plaintiff's and the Frozen Currency Class's bitcoins and Fiat Currency is warranted given Mt. Gox's unlawful conduct described above.

152.    Plaintiff and the members of the Frozen Currency Class have no other adequate remedy at law.

153.    Plaintiff and the members of the Frozen Currency Class are likely to suffer

30

irreparable harm as they have no alternative means for accessing their bitcoins or Fiat Currency and media reports suggest that Mt. Gox may be insolvent or dissipating its remaining assets.

154.     Accordingly, Plaintiff seeks an order (i) imposing a constructive trust over the bitcoins and Fiat Currency currently held by Mt. Gox and belonging to the Plaintiff and the members of the Frozen Currency Class, (ii) appointing Mt. Gox as trustee of the constructive trust for the sole purpose of returning the all of the members of the Frozen Currency Class's bitcoins and Fiat Currency to the members of the Frozen Currency Class, and (iii) awarding Plaintiff costs for the lawsuit.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Gregory Greene, individually and on behalf of the Classes, prays for the following relief:

(a)     An order certifying the Classes as defined above, appointing Plaintiff Greene as the representative of the Classes, and appointing his counsel as Class Counsel;

(b)     An award of actual and statutory damages;

(c)     An award of injunctive, statutory and/or declaratory relief as necessary to cease Mt. Gox's unlawful conduct as described herein;

(d)     An award of restitution for Mt. Gox's wrongful conduct;

(e)     An accounting;

(f)     The imposition of a constructive trust;

(e)     An award of reasonable attorneys' fees and costs; and

(f)     Such other and further relief that the Court deems equitable, reasonable, and just.

31

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

**GREGORY GREENE**, individually and on behalf
of all others similarly situated,

Dated: February 27, 2014

By: /s/ Christopher L. Dore
     One of Plaintiff's Attorneys

Steven L. Woodrow
swoodrow@edelson.com
Megan Lindsey
mlindsey@edelson.com
EDELSON PC
999 West 18th Street, Suite 3000
Denver, Colorado 80202
Tel: 303.357.4878
Fax: 303.446.9111

Jay Edelson
jedelson@edelson.com
Christopher L. Dore
cdore@edelson.com
David I. Mindell
dmindell@edelson.com
Alicia Hwang
ahwang@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Counsel for Plaintiff Greene and the Putative Classes*

32

Case: 1:14-cv-01437 Document #: 1-1 Filed: 02/27/14 Page 1 of 2 PageID #:33

JS 44 (Rev. 3/13)

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

### I. (a) PLAINTIFFS

GREGORY GREENE, individually and on behalf of all others similarly situated,

### DEFENDANTS

MTGOX INC., MT. GOX KK, TIBANNE KK, and MARK KARPELES,

**(b)** County of Residence of First Listed Plaintiff   Cook County, Illinois
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Edelson PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel 312.589.6370

Attorneys *(If Known)*

### II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ✔ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

### III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ✔ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ✔ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ✔ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**    **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane    ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability    ☐ 367 Health Care/ | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander    Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability    Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine    ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Veteran's Benefits | ☐ 350 Motor Vehicle    **PERSONAL PROPERTY** ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability    ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ✔ 190 Other Contract | ☐ 360 Other Personal Injury    ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice    ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS**    **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights    ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting    **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment    ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations    ☐ 535 Death Penalty | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment    ☐ 540 Mandamus & Other | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other    ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education    ☐ 555 Prison Condition | ☐ 463 Habeas Corpus - Alien Detainee (Prisoner Petition) | | |
| |    ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 465 Other Immigration Actions | | |

### V. ORIGIN *(Place an "X" in One Box Only)*

☑ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from Another District *(specify)*    ☐ 6 Multidistrict Litigation

### VI. CAUSE OF ACTION

Enter U.S. Civil Statute under which you are filing and write a brief statement of cause.

Breach of Contract, Consumer Fraud, Negligence, Breach of Fiduciary Duty

### VII. Previous Bankruptcy Matters (For nature of suit 422 and 423, enter the case number and judge for any associated bankruptcy matter previously adjudicated by a judge of this Court. Use a separate attachment if necessary.)

### VIII. REQUESTED IN COMPLAINT:

☑ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ $5,000,000+

CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes ☐ No

### IX. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____ DOCKET NUMBER _____

### X. This case (check one box)   ☐ Is not a refiling of a previously dismissed action   ☐ is a refiling of case number _____ previously dismissed by Judge _____

DATE   February 27, 2014    SIGNATURE OF ATTORNEY OF RECORD   /s/ Christopher L. Dore

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.       (a) Plaintiffs-Defendants. Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

         (b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

         (c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.      Jurisdiction. The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; NOTE: federal question actions take precedence over diversity cases.)

III.     Residence (citizenship) of Principal Parties. This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.      Nature of Suit. Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V.       Origin. Place an "X" in one of the six boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

VI.      Cause of Action. Report the civil statute directly related to the cause of action and give a brief description of the cause. Do not cite jurisdictional statutes unless diversity. Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

VII.     Previous Bankruptcy Matters  For nature of suit 422 and 423 enter the case number and judge for any associated bankruptcy matter previously adjudicated by a judge of this court. Use a separate attachment if necessary.

VIII.    Requested in Complaint. Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P. Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

IX.      Related Cases. This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

X.       Refiling Information. Place an "X" in one of the two boxes indicating if the case is or is not a refiling of a previously dismissed action. If it is a refiling of a previously dismissed action, insert the case number and judge.

         Date and Attorney Signature. Date and sign the civil cover sheet.

EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

GREGORY GREENE, individually and on
behalf of all others similarly situated,

        *Plaintiff,*

v.

MTGOX INC., a Delaware corporation, MT.
GOX KK, a Japanese corporation, TIBANNE
KK, a Japanese corporation, and MARK
KARPELES, an individual,

        *Defendants.*

Case No. 1:14-cv-01437

## MOTION FOR TEMPORARY RESTRAINING ORDER AND
## PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................

I. INTRODUCTION ............................................................................................................ 1

II. STATEMENT OF FACTS ............................................................................................... 2

    A. The Advent of Bitcoin ............................................................................................ 2

    B. Mt. Gox Establishes Itself as the Largest Bitcoin Exchange in the World ................. 3

    C. Plaintiff Greene Becomes a Mt. Gox. Member in 2012 and Begins Trading
       Bitcoins on Mt. Gox ............................................................................................... 4

    D. Early February 2014: Mt. Gox Prevents Users From Withdrawing Their
       Bitcoins and Fiat Currency Entirely ....................................................................... 5

    E. February 23-24, 2014: Mt. Gox Resigns From the Bitcoin Foundation and
       Goes Offline Completely—Taking its Members' Bitcoins and Fiat
       Currency With It In the Process ............................................................................... 6

    F. February 28, 2014: Mt. Gox KK (a/k/a Mt. Gox Co. Ltd) Files for Bankruptcy in
       Japan a Day After This Lawsuit is Filed ................................................................. 7

III. ARGUMENT ................................................................................................................. 8

    A. This Court Should Enter a TRO Barring All Defendants From Dissipating
       Their Assets Held in the United States ..................................................................... 9

       1. Plaintiff's claims have a high likelihood of success on the merits ......................... 9

          a. Plaintiff's consumer fraud claim is strongly supported by the
             available evidence ................................................................................. 10

          b. Greene will also be able to succeed on his common law fraud claim ............... 12

          c. Greene has a likelihood of succeeding on his negligence claims ................... 13

          d. Plaintiff Greene will readily be able to succeed on his claim for breach
             of fiduciary duty ................................................................................... 14

          e. Greene will also be able to prevail on his claims for breach of contract ........... 15

          f. Plaintiff also has a likelihood of prevailing on his claim for
             unjust enrichment ................................................................................. 16

     g.   *Greene is also likely to succeed on his claim for an accounting*........................17

     h.   *Plaintiff's claims for trespass to chattels and conversion are also likely to succeed*........................................................................................................18

  2.  **No adequate remedy at law exists, and Plaintiff will suffer irreparable harm if an injunction isn't granted because Mt. Gox has, as predicted in the Complaint, declared bankruptcy** ........................19

  3.  **Balancing the relative harms plainly weighs in favor of granting injunctive relief—particularly in light of the strength of the Classes' claims**........................21

  4.  **The public interest weights in favor of granting the TRO/ preliminary injunction** ........................22

B.  **This Court Should Impose a Constructive Trust on Any Mt. Gox or Karpeles Assets Held or Maintained in the United States, Including Without Limitation, All Computer Equipment and Servers Used by Mt. Gox or Karpeles, As Well As Any Bank Accounts Maintained by Either of Them**........................22

C.  **This Court Should Certify the Class Insofar as Certification is Required to Protect the Class From Any Operation of the One-Way Intervention Rule**........................24

D.  **In the Alternative, the Court Should Order Expedited Discovery With Respect to Plaintiff's Claims For an Accounting and Defendants' Assets.**........................26

IV.  **CONCLUSION**........................27

ii

## TABLE OF AUTHORITIES

**UNITED STATES SUPREME COURT CASES**

*Deckert v. Independence Shares* Corp., 311 U.S. 282 (1940) ...................................................20

**UNITED STATES COURT OF APPEALS CASES**

*Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6 (7th Cir. 1992) .........................................8

*Association Benefit Services, Inc. v. Caremark RX, Inc.*, 493 F.3d 841 (7th Cir. 2007) .........15, 17

*Cavel Int'l, Inc. v. Madigan*, 500 F.3d 544 (7th Cir. 2007) ...............................................8

*Cleary v. Philip Morris Inc.*, 656 F.3d 511 (7th Cir. 2011) .............................................. 16-17

*CSC Holdings, Inc. v. Redisi*, 309 F.3d 988 (7th Cir. 2002) ...........................................20, 23

*Dexia Credit Local v. Rogan*, 629 F.3d 612 (7th Cir. 2010) ...............................................23

*Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of America, Inc.*, 549 F.3d 1079
    (7th Cir. 2008)...............................................................................................9

*Johnson v. Wal-Mart Stores, Inc.*, 588 F.3d 439 (7th Cir. 2009) ........................................13

*Korte v. Sebelius*, 735 F.3d 654 (7th Cir. 2013) .............................................................. 8-9

*In re Focus Media Inc.*, 387 F.3d 1077 (9th Cir. 2004).....................................................20

*In re McGee*, 353 F.3d 537 (7th Cir. 2003) ...................................................................15

*Kennedy Bldg. Assocs. v. CBS Corp.*, 476 F.3d 530 (8th Cir. 2007) ....................................20

*Lambert v. Buss*, 498 F.3d 446 (7th Cir. 2007)..............................................................8

*Planned Parenthood of Ind., Inc. v. Comm'r of the Ind. State Dep't of Health*, 699 F.3d 962
    (7th Cir. 2012).............................................................................................9

*Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380 (7th Cir. 1984) ......................20

*Siegel v. Shell Oil Co.*, 612 F.3d 932 (7th Cir. 2010) .....................................................10

*Tanimura & Antle, Inc., v. Packed Fresh Produce, Inc.*, 222 F.3d 132 (3d Cir. 2000)................20

*Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891 (7th Cir. 2001)................................................21

*United States ex rel Rahman v. Oncology Assocs., P.C.*, 198 F.3d 489 (4th Cir. 1999) ..............20

*Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012) .............................................10, 15

**UNITED STATES DISTRICT COURT CASES**

*3Com Corp. v. Electronics Recovery Specialists, Inc.*, 104 F. Supp. 2d 932 (N.D. Ill. 2000) .....17

*Bernina of America, Inc. v. Fashion Fabrics Int'l, Inc.*, 01 C 585, 2001 WL 128164,
    (N.D. Ill. Feb. 9, 2001).................................................................................................................8

*Cima v. WellPoint Health Networks, Inc.*, 250 F.R.D. 374 (S.D. Ill. 2008) .................................24

*F.T.C. v. Think Achievement Corp.*, 144 F. Supp. 2d 1013 (N.D. Ind. 2000) ...............................23

*F.T.C. v. QT, Inc.*, 605 F. Supp. 2d 999 (N.D. Ill. 2009).......................................................... 22-23

*G.M. Sign, Inc. v. Stergo*, 681 F. Supp. 2d 929 (N.D. Ill. 2009) ..................................................18

*Gray v. Orr*, 13 C 8449, 2013 WL 6355918 (N.D. Ill. Dec. 5, 2013) .........................................8, 9

*Hard Drive Prods., Inc. v. Doe*, 283 F.R.D. 409 (N.D. Ill. 2012) ................................................26

*Hudson v. Chicago Teachers Union, Local No. 1*, 117 F.R.D. 413 (N.D. Ill. 1987)....................25

*Ibarra v. City of Chicago*, 816 F. Supp. 2d 541 (N.D. Ill. 2011)..................................................26

*In re Edgewater Med. Ctr.*, 344 B.R. 864 (Bankr. N.D. Ill. 2006) .......................................... 14-15

*In re McCook Metals, L.L.C.*, 07 C 0621, 2007 WL 1687262 (N.D. Ill. June 7, 2007) ...............14

*Long v. Bd. of Educ., Dist. 128*, 167 F. Supp. 2d 988 (N.D. Ill. 2001)..........................................8

*Minuti v. Johnson*, 02 C 4551, 2003 WL 260705 (N.D. Ill. Feb. 5, 2003)....................................18

*Nelson v. Sotheby's Inc.*, 115 F. Supp. 2d 925 (N.D. Ill. 2000).....................................................18

*Oglesby v. Rotche*, 93 C 4183, 1994 WL 142867 (N.D. Ill. Apr. 18, 1994) ................................24

*Travelers Cas. & Sur. Co. v. Wells Fargo Bank, NA*, 3:09 CV 501 PPS,
    2009 WL 4881079 (N.D. Ind. Dec. 9, 2009).........................................................................9, 20

*Williams v. Lane*, 129 F.R.D. 636 (N.D. Ill. 1990)................................................................. 24-25

## STATE COURT CASES

*Bd. of Educ. of City of Chicago v. A, C & S, Inc.*, 131 Ill. 2d 428 (1989) .......................................12

*Connick v. Suzuki Motor Co., Ltd.*, 174 Ill. 2d 482 (1996).................................................................12

*Espinoza v. Elgin, Joliet & E. Ry. Co.*, 165 Ill.2d 107 (1995)...........................................................13

*General Motors Corp. v. Douglass*, 206 Ill.App.3d 881 (1990).........................................................18

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145 (1989) ............................17

*Mann v. Kemper Financial Companies, Inc.*, 247 Ill.App.3d 966 (1st Dist. 1992)......................17

*Neade v. Portes*, 193 Ill.2d 433 (2000) ..............................................................................................14

*People ex rel. Daley for Use of Cook Cnty. v. Warren Motors, Inc.*,
    136 Ill. App. 3d 505 (1985) ...........................................................................................................23

*People ex rel. Hartigan v. Candy Club*, 149 Ill.App.3d 498 (1st Dist. 1986) ........................17, 23

*Smithberg v. Illinois Mun. Retirement Fund*, 192 Ill.2d 291 (2000) ...............................................23

## RULES AND REGULATIONS

Fed. R. Civ. P. 23 ...................................................................................................................................24

Fed. R. Civ. P. 65 .........................................................................................................................8, 21-22

Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505 *et seq.* ..............10

## MISCELLANEOUS

8A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, & Richard L. Marcus,
    *Federal Practice and Procedure*, § 2046.1 (3d ed. 1998) ..........................................................26

## I.    INTRODUCTION

Due to what they have described as a security "bug," Defendants MtGox Inc., Mt. Gox

KK, Tibanne KK, and Mark Karpeles (collectively "Defendants" or "Mt. Gox") have lost

hundreds of millions of dollars worth of their members' bitcoins[1] and currency once held in their

system—and they refuse to return whatever bitcoins and money remains.

To make a long story short, until last week, Mt. Gox operated one of the world's largest

Bitcoin exchanges—an online marketplace where members could buy and sell bitcoins and trade

them for paper money (referred to in the industry as "Fiat Currency"). In early February 2014,

Mt. Gox revealed that it had discovered a "bug" that had resulted in the loss of some users'

bitcoins and that it was working to fix the issue. This was false. In reality, the bug had been

going on for years and had resulted in the loss of millions of dollars worth of its members'

bitcoins, and, rather than working to fix it, Mt. Gox was secretly preparing for bankruptcy.

Seeking to prevent a run on the exchange, Mt. Gox froze its customers' accounts—claiming that

it was necessary while it evaluated the technical issues—and publicly assured members that

access would be restored in the near future. This also proved untrue. On February 24, 2014, Mt.

Gox went offline entirely, taking hundreds of millions of dollars worth of its members' bitcoins

and currency with it in the process.

A few days later, on February 28, 2014, Defendant Mt. Gox KK (also known as Mt. Gox.

Co. Ltd.) filed for bankruptcy protection in Japan.

Given the Defendants' insolvency and reports indicating that Mt. Gox's liabilities far

outweigh its remaining assets, there is a very real risk that the Class Members, if made to wait

---

[1]    "Bitcoin" refers to the digital commodity and "bitcoin" (with a lower case "b") refers to
an individual unit of the commodity itself.

1

for trial, could recover nothing. As such, Plaintiff seeks a temporary restraining order ("TRO")

and preliminary injunction seeking an order from this Court:

- freezing each of the Defendant's assets in the United States—including any servers or other computer equipment in the U.S. upon which Mt. Gox stores or maintains its users' bitcoins, any bank accounts belonging to Mt. Gox (or its parents or subsidiaries) and Mr. Karpeles personally, and any other assets Defendants may have in the Country,

- barring Defendants from transferring any bitcoins or currency belonging to the Class Members from the United States to any other country,

- providing an accounting to the Court and the Class Members of all of Mt. Gox's outstanding liabilities to the Class Members, including a breakdown of the bitcoins and currency belonging to each Class Member that Mt. Gox continues to unlawfully withhold, and

- imposing a constructive trust over Defendants' assets for the exclusive benefit of the putative Class Members, requiring Mt. Gox to hold such assets in trust for the Class Members, and ordering Mt. Gox to immediately transfer those assets to the Class Members.

In short, Mt. Gox has shuttered its operations while holding onto the Class Member's

property—their bitcoins and Fiat Currency—and should be made to return that property without

further delay. Absent such relief, Mt. Gox's victims will be required to watch as Defendants

abscond with their remaining bitcoins and money without any hope of recourse.

In the alternative, Plaintiff seeks expedited discovery on his claims for an accounting to

determine the Bitcoin and Fiat Currency held by Mt. Gox with respect to each class member. In

support, Plaintiff states as follows:

## II. STATEMENT OF FACTS

### A. The Advent of Bitcoin.

Introduced in early 2009, Bitcoin has quickly become a recognized digital commodity.

(*See* Class Action Complaint and Demand for Jury Trial ["Compl."], Dkt. 1 at ¶ 16.) Similar in

certain respects to paper money (*e.g.*, Dollars, Euros, etc.), bitcoins can be used to purchase and

sell goods and services through a number of websites or from any merchant that accepts them.[2] (*Id.* ¶ 17.) But the similarities generally end there. For instance, with "paper money, a government decides when to print and distribute [it]." (*Id.*) Bitcoins, on the other hand, are created by individuals through a complex computer program and are bought and sold by consumers through private "exchanges." (*Id.*)

### B.    Mt. Gox Establishes Itself as the Largest Bitcoin Exchange in the World.

Prior to shutting down, Mt. Gox boasted that it operated the "world's most established Bitcoin exchange," handling "over 80% of all Bitcoin trade" worldwide.[3] (*Id.* ¶ 18.) Mt. Gox represented on it website and through its Terms of Use that its members could "quickly and securely trade bitcoins with other people around the world with [their] local currency."[4] To use Mt. Gox's service, a consumer would register for an account with the exchange at www.mtgox.com. (Compl. ¶ 19.) Once registered, users (called "members") could verify their accounts by providing Mt. Gox with detailed information such as their full name, date of birth, country of birth, physical address, and proof of identity (such as a state-issued identification card). (*Id.* ¶ 19.) Upon registering, members could "trade" Bitcoin using Mt. Gox's online trading platform. (*Id.* ¶ 20.) Mt. Gox also provided members "with the ability to securely store Bitcoins in a virtual 'vault' for safe keeping." (*Id.* ¶ 21.) In signing up for an account, Mt. Gox expressly promised that its website would "always [be] on" and that users could "[b]uy and sell

---

[2]        For example, overstock.com now accepts Bitcoin as payment (*see* http://money.cnn.com/2013/12/20/technology/innovation/overstock-bitcoin/ (last visited March 4, 2014)) and consumers can access Bitcoin ATMs in certain locations in Texas, Massachusetts, and New Mexico (*see* http://www.usatoday.com/story/money/business/2014/02/19/bitcoin-atm-austin/5623387/ (last visited March 4, 2014)).

[3]        *See* Mt. Gox Website Landing Page ("Landing Page") a true and accurate copy of which is attached as Ex. A to the Declaration of Attorney Steven Woodrow Filed in Support of Motion for TRO/Preliminary Injunction ("Woodrow Decl.").

[4]        *See* Landing Page, Woodrow Decl. Ex. A.

3

Bitcoin 24/7/365 with the world's most sophisticated trading platform." (*Id.* ¶ 22.)

**C.    Plaintiff Greene Becomes a Mt. Gox Member in 2012 and Begins Trading Bitcoin on Mt. Gox.**

Plaintiff Greene became a member of Mt. Gox in 2012. (*See* Declaration of Gregory Greene filed in Support of TRO/Preliminary Injunction ("Greene Decl.") ¶ 2.) Upon activating his account, Greene accepted Mt. Gox's Terms of Use.[5] He used Mt. Gox regularly and eventually acquired over $25,000 worth of bitcoins on the exchange. (*Id.* at ¶ 3.) Greene experienced delays with certain bitcoin transactions in November 2013, which he was able to resolve through Mt. Gox's customer service. (*Id.* at ¶ 4.) At no time when Greene was complaining about the delays did Mt. Gox ever inform him that its system had been compromised by a bug. (*Id.*) Rather, as Mt. Gox represented on its website and through its Terms of Use and Privacy Policy, Greene believed that his bitcoins were being stored securely on Mt. Gox's system. (*Id.*)

Initially, Greene was an "unverified" Mt. Gox member. (*Id.* at ¶ 2.) That is, he was able to trade and withdraw bitcoins, but not Fiat Currency. (*Id.*) On February 5, 2014, however, Greene accessed his Mt. Gox account to discover that his access to certain funding options—including the simple withdrawal of bitcoins—had been restricted. (Greene Decl. ¶ 5.) Greene immediately contacted Mt. Gox customer service. (*Id.*) On February 10, 2014, Mt. Gox informed Greene that they needed him to verify his account by submitting proof of identification. (*Id.* ¶ 6.) Through several messages back and forth, Greene submitted the required proof and forms. (*Id.*) Finally, on February 24, 2014, Greene received notification from Mt. Gox that his account had been verified. (*Id.*)

---

[5]    *See* Mt. Gox Terms of Use and Privacy Policy ("Terms of Use"), a true and accurate copy of which is attached as Group Exhibit B to the Woodrow Declaration.