Case 14-31229-sgj15    Doc 5-1    Filed 03/10/14    Entered 03/10/14 00:17:10    Desc
Case: 1:14-cv-01437    Document #: 8    Filed: 03/04/14    Page 11 of 34    PageID #:92
Part 2 of Declaration    Page 1 of 24

Curiously, upon being notified that his account was verified, Greene attempted to make a

withdrawal on Mt. Gox but nothing happened—when Greene clicked "enter" to process the

transaction, the computer screen simply cleared his inputs. (*Id.* ¶ 7.) Hours later, when Greene

attempted to access the exchange again, he discovered that Mt. Gox had gone offline entirely and

that access to his account was totally blocked. (*Id.* ¶ 8.)

**D.    Early February 2014: Mt. Gox Prevents Users From Withdrawing Their Bitcoins and Fiat Currency Entirely.**

Greene's experience tracks the stories of Mt. Gox members more generally. In late 2013,

users began reporting payment delays. The issues persisted and, on February 4, 2014, Mt. Gox

announced through its online Support Desk that it was "currently experiencing a problem where

some bitcoin withdrawals are not being transferred correctly, affecting a limited number of

users."[6] On February 7, 2014, Mt. Gox announced that "[i]n order for our team to resolve the

withdrawal issue it is necessary for a temporarily [*sic*] pause on all withdrawal requests…" and

that "[a]ll bitcoin withdrawal requests will be on pause, and the withdrawals in the system will

be returned to your MtGox wallet and can be reinitiated once the issue is resolved."[7]

On February 10, 2014, the Support Desk revealed that Mt. Gox had detected "unusual

activity" with respect to its Bitcoin wallets and had been investigating a technical issue, called

"transaction malleability," which appeared to involve the ability of third parties to manipulate

certain transactions. Mt. Gox assured members that "MtGox will resume bitcoin withdrawals to

outside wallets once the issue" had been addressed.[8] On February 15 or 17, 2014, Mt. Gox

announced that it was "going to have a 6-hour downtime" on deposits and that it would be

---

[6]    *See* "Support Desk Updates," true and accurate copies of which are attached as Ex. C to
the Woodrow Declaration.

[7]    *Id.*

[8]    *Id.*

Case 14-31229-sgj15   Doc 5-1   Filed 03/10/14   Entered 03/10/14 00:17:10   Desc
Part 2 of Declaration   Page 2 of 24
Case: 1:14-cv-01437 Document #: 8 Filed: 03/04/14 Page 12 of 34 PageID #:93

"doing extensive testing before bitcoin withdrawals are reactivated."[9] On February 17, 2014, the

Support Desk announced that "we have now implemented a solution that should enable

withdrawals" and that "Mt. Gox should be able to resume withdrawals soon."[10] In an interview

that day with *The Wall Street Journal*, Mt. Gox's owner and CEO, Mark Karpeles, refused to

state when exactly the exchange would resume withdrawals.[11] On February 19, 2014, Mt. Gox

announced that it had moved back to its prior offices in Tokyo. The next day, the Support Desk

notified members that the move and technical challenges had "pushed back our progress" but

again assured customers that "we are working on re-initiating bitcoin withdrawals."[12]

    E.    **February 23-24, 2014: Mt. Gox Resigns From the Bitcoin Foundation and Goes Offline Completely—Taking Its Members' Bitcoins and Fiat Currency With It In The Process.**

On February 23, 2014, Mt. Gox resigned from the board of the Bitcoin Foundation, the

industry's lobbying group, and took down all posts from the company's Twitter feed.[13] The next

day, Mt. Gox suspended all trading entirely and its website "went dark" a few hours later—

returning nothing but a blank page. A leaked internal crisis management report that received

heavy media attention revealed that the technical issue was actually a "bug" that had been

affecting the exchange for *years* and that, as a result, Mt. Gox had lost over 750,000 of its'

members' bitcoins—valued at over $450 million.[14] While the report gave the impression that Mt.

---

[9]   *Id.*

[10]   *Id.*

[11]   http://online.wsj.com/news/articles/SB10001424052702304899704579388483531937
144?mg=reno64-wsj&url=http%3A%2F%2Fonline.wsj.com%2Farticle%2FSB100014240527
02304899704579388483531937144.html (last visited March 4, 2014.)

[12]   Support Desk Updates, Woodrow Decl. Ex. C.

[13]   *See* "MtGox Resigns From Bitcoin Foundation, Deletes All Tweets From Twitter Feed"
http://www.businessinsider.com/mtgox-resigns-from-bitcoin-foundation-2014-2#ixzz2v1CxPstF
(last visited March 4, 2014.)

[14]   *See* Business Plan MtGox 2014-2017, http://www.scribd.com/doc/209535200/Business-
Plan-MtGox-2014-2017 (last accessed February 27, 2014), a true and accurate copy of which is

Gox was still attempting to resume operations at some point in the future, in the meantime, members like Greene were simply made to wait without any access to their accounts. The next day, a message on the Mt. Gox website notified members that a "decision was taken to close all transactions for the time being."[15]

**F.    February 28, 2014: Mt. Gox KK (a/k/a Mt. Gox Co. Ltd.) Files for Bankruptcy in Japan a Day After This Lawsuit is Filed.**

On February 27, 2014, Plaintiff Greene filed the instant lawsuit alleging claims against Mt. Gox and its owner, Mark Karpeles, for consumer fraud, fraud in the inducement, negligence, breach of fiduciary duty, breach of contract, unjust enrichment/restitution, trespass to chattels, and conversion, and seeking a TRO, a preliminary injunction, a permanent injunction, an accounting, and the imposition of a constructive trust over the Class Members' property remaining in Mt. Gox's possession or control. (Dkt. 1.)

The day after the instant lawsuit was filed, Mt. Gox KK (a/k/a Mt. Gox Co. Ltd.) filed for bankruptcy protection in Japan. During a press conference, Karpeles revealed that Mt. Gox has assets of over $20 million (USD) and liabilities in excess of $65 million (USD)—*not* including the over $450 million worth of bitcoins it had lost through the supposed bug.[16] Mt. Gox has computer equipment and servers located in Massachusetts (IP address 23.198.168.44) that it used

---

attached as Ex. D to the Woodrow Declaration. *See also* Popper, Nathaniel; Abrams, Rachel (25 February 2014) "Apparent Theft at Mt. Gox Shakes Bitcoin World," *The New York Times,* available at http://www.nytimes.com/2014/02/25/business/apparent-theft-at-mt-gox-shakes-bitcoin-world.html?_r=0 (last visited March 4, 2014).

[15]    *See* "Is it the beginning of the end for Bitcoin? Virtual currency in turmoil as rumoured $375m theft closes major exchange," available at URL http://www.thisismoney.co.uk/money/news/article-2567436/Bitcoin-turmoil-rumoured-375m-theft-closes-major-exchange.html (last visited March 4, 2014).

[16]    *See* "Mt. Gox files bankruptcy, says hackers stole all its bitcoins" available at URL http://articles.chicagotribune.com/2014-02-28/news/sns-mt-gox-bankruptcy-bitcoins-20140228_1_gox-bitcoin-market-bitcoin-community (Feb. 28, 2014) (last visited March 4, 2014).

Case 14-31229-sgj15   Doc 5-1   Filed 03/10/14   Entered 03/10/14 00:17:10   Desc
Part 2 of Declaration   Page 4 of 24
Case: 1:14-cv-01437 Document #: 8 Filed: 03/09/14 Page 14 of 34 PageID #:95

to operate the exchange and store member bitcoins (Compl. ¶ 12) and it is believed that Mt. Gox

(or its parents or subsidiaries) and Mr. Karpeles may maintain bank accounts within the

territorial United States. (Woodrow Decl. ¶ 6.)

Based upon these facts of record and any additional facts uncovered through discovery,

Plaintiff seeks a TRO followed by a preliminary injunction freezing Defendants' U.S. assets,

imposing a constructive trust upon them for the benefit of the aggrieved Class Members, and

ordering Defendants to return the Class Members' bitcoins and Fiat Currency to them without

further delay. In the alternative, Greene requests expedited discovery on his claims for an

accounting and into Defendants' assets so that Class Members can learn the amount of Bitcoin

and Fiat Currency held by Mt. Gox on each of their respective behalves.

## III.   ARGUMENT

A party seeking a temporary restraining order or preliminary injunction must demonstrate

(1) a likelihood of success on the merits, (2) a lack of an adequate remedy at law, and (3) an

irreparable harm will result if the injunction is not granted.[17] *See* Fed. R. Civ. P. 65; *see also*

*Lambert v. Buss,* 498 F.3d 446, 451 (7th Cir. 2007); *Abbott Labs. v. Mead Johnson & Co.,* 971

F.2d 6, 11 (7th Cir. 1992); *Gray v. Orr,* 13 C 8449, 2013 WL 6355918 (N.D. Ill. Dec. 5, 2013).

If the moving party meets these elements, the Court then balances the harm to the non-moving

party if preliminary relief is granted against the harm to the moving party should relief be denied,

as well as considers any public interest. *Abbot Labs,* 971 F.2d. at 11–12. In the Seventh Circuit,

the balancing of harm involves a "sliding scale" analysis, "weighting harm to a party by the

merit of her case." *Cavel Int'l, Inc. v. Madigan,* 500 F.3d 544, 547 (7th Cir. 2007); *Korte v.*

---

[17]   The elements required for TROs and preliminary injunctions are identical. *See Bernina of America, Inc. v. Fashion Fabrics Int'l, Inc.,* No. 01 C 585, 2001 WL 128164, at *1 (N.D. Ill. Feb. 9, 2001); *Long v. Bd. of Educ., Dist. 128,* 167 F. Supp. 2d 988, 990 (N.D. Ill. 2001).

*Sebelius,* 735 F.3d 654, 665 (7th Cir. 2013); *Planned Parenthood of Ind., Inc. v. Comm'r of the*

*Ind. State Dep't of Health,* 699 F.3d 962, 972 (7th Cir. 2012) ("The strength of the moving

party's likelihood of success on the merits affects the balance of harms."); *Gray,* 2013 WL

6355918.

As explained below, Plaintiff Greene and the absent class members readily meet these

standards, and the Court should grant a TRO, followed by a preliminary injunction, enjoining

Mt. Gox from further dissipating or transferring any of its U.S. assets. Furthermore, the Court

should impose a constructive trust over such assets for the benefit of the Class Members and

order that the property be returned to the Class immediately. Lastly, the Court should also certify

the Classes as set forth in Plaintiff's Motion for Class Certification (dkt. 2) to the extent deemed

necessary to avoid application of the one-way intervention rule.

**A.      This Court Should Enter a TRO Barring All Defendants From Dissipating
Their Assets Held in the United States.**

As explained below, the Court should enter a TRO and preliminary injunction barring

Mt. Gox, any of its parents or subsidiaries, and Karpeles personally from dissipating or

transferring any assets that any of them may hold within the United States that belong to the

Class Members.

**1.      Plaintiff's claims have a high likelihood of success on the merits.**

Plaintiff Greene's claims have a high likelihood of succeeding on their merits—"an

admittedly low requirement." *See Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of

America, Inc.,* 549 F.3d 1079, 1096 (7th Cir. 2008); *see also Travelers Cas. & Sur. Co. v. Wells

Fargo Bank, NA,* 3:09 CV 501 PPS, 2009 WL 4881079 (N.D. Ind. Dec. 9, 2009). As explained

below, Greene will likely be able to succeed on each of his claims.

Case 14-31229-sgj15    Doc 5-1    Filed 03/10/14    Entered 03/10/14 00:17:10    Desc
Case: 1:14-cv-01437 Document #: 8 Filed: 03/04/14 Page 16 of 34 PageID #:9
Part 2 of Declaration    Page 6 of 24

a.    *Plaintiff's consumer fraud claim is strongly supported by the available evidence.*

The elements of a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505 *et seq.* are: "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 573 (7th Cir. 2012) (*citing Siegel v. Shell Oil Co.,* 612 F.3d 932, 934 (7th Cir. 2010)).

Defendants in this case have engaged in a series of deceptive and unfair practices designed to lull consumers into depositing and keeping their money on the exchange while Mt. Gox KK readied itself for bankruptcy. Defendants falsely represented on their website that members could "quickly and securely trade bitcoins with other people around the world with [their] local currency," and that Mt. Gox was "SECURE" and "protected by Prolexic and certified by VeriSign, which means all communications with our servers are encrypted with SSL technology."[18] In reality, Defendants knew that their system had been infiltrated by a "bug," that millions of dollars worth of bitcoins and currency had been lost or stolen, and that its system was anything but secure. Likewise Mt. Gox's website had publicly promised consumers that, "We're always on. Buy and sell Bitcoin 24/7/365 with the world's most sophisticated trading platform,"[19] and its Terms of Use promised members they could engage in Bitcoin transactions "at any time."[20] In reality, Mt. Gox KK was preparing to declare bankruptcy and take the entire exchange offline.

---

[18]    *See* Landing Page, Woodrow Decl. Ex. A.
[19]    *Id.*
[20]    Terms of Use 2, Woodrow Decl. Group Ex. B

Case 14-31229-sgj15   Doc 5-1   Filed 03/10/14   Entered 03/10/14 00:17:10   Desc
Case: 1:14-cv-01437 Document #: 3 Filed: 03/04/14 Page 17 of 34 PageID #:98
Part 2 of Declaration   Page 7 of 24

Mt. Gox's representations regarding its system security and its members' ability to access their accounts were not only false, they were calculated to assuage any concerns that would lead consumers to withdraw their money, stop using the exchange, and/or notify the authorities of the persistent irregularities. In short, Mt. Gox falsely represented its system security and availability up until the moment it shut down so that it could buy more time to get its bankruptcy filing in order and collect more of the Class Members' money and bitcoins in the process.[21]

Mt. Gox's public statements during this time did nothing to reveal its true plans. Karpeles all but disappeared from social media, deactivating the company Twitter account.[22] Likewise, Defendants continued throughout February 2014 to post updates regarding the technical issues on the Mt. Gox online "Support Desk." Each of these postings gave the impression that Mt. Gox was busily working to correct the problems affecting withdrawals and that any disruption in service was only temporary. For example, in a post dated February 7, 2014, the Support Desk provided an "Update – Statement Regarding BTC Withdrawal Delays" that stated: "In order for our team to resolve the withdrawal issue it is necessary for a temporary pause on all withdrawal requests to obtain a clear technical view of the current processes."[23] Further, on February 20, 2014, the Support Desk provided an "update on an update" informing users that "we are working on re-initiating bitcoin withdrawals"[24] At no time did these updates apprise users of the impending bankruptcy filing or warn that access was about to be shut off permanently.

Additionally, during the week of February 24, 2014, a leaked internal business plan that received broad media attention suggested that the company was busily working to fix the bug

---

[21]     Indeed, proposed Class Counsel have received reports from Class Members that Mt. Gox was accepting deposits of bitcoins and currency mere hours before it shut down completely. (Woodrow Decl. ¶ 7.)
[22]     See footnote 13, *supra*.
[23]     Support Desk Updates, Woodrow Decl., Ex. C.
[24]     *Id.*

and that the company was going to come back online in the near future.[25] Again, such statements appear intended to cause users to refrain from attempting to withdraw their money and bitcoins from the exchange, or notifying the authorities, and to encourage members to continue depositing their money and bitcoins on Mt. Gox. As such, Greene can show deceptive conduct.

For the last element, Plaintiff will also likely be able to prove that the deceptive and unfair conduct occurred in the course of trade or commerce. Bitcoins represent a new digital marketplace and Mt. Gox had registered as a money services business with the Treasury Department's Financial Crimes Enforcement Network in 2013.[26] As such, Defendants cannot credibly argue their wrongful conduct occurred outside the ambit of trade or commerce.

        b.     *Greene will also be able to succeed on his common law fraud claim.*

In a similar vein, Greene will likely succeed on his common law fraud claim, which requires that he show: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement. *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill. 2d 482, 496, 675 N.E.2d 584, 591 (1996); *see also Bd. of Educ. of City of Chicago v. A, C & S, Inc.*, 131 Ill. 2d 428, 546 N.E.2d 580 (1989).

As explained above, Mt. Gox falsely represented to Greene and its other users that its system was secure and that they would be able to access their bitcoins and currency at any time, and Mt. Gox knew these representations were false—Mt. Gox continued to make these false

---

[25]    Business Plan, Woodrow Decl., Ex. D.
[26]    See URL
http://online.wsj.com/news/articles/SB10001424127887323873904578574000957464468 (last visited March 4, 2014).

Case 14-31229-sgj15   Doc 5-1   Filed 03/10/14   Entered 03/10/14 00:17:10   Desc
Case: 1:14-cv-01437 Document #: 8 Filed: 03/04/14 Page 9 of 34 PageID #:100
Part 2 of Declaration   Page 9 of 24

representations even after it had discovered that a bug had caused it to lose hundreds of millions of dollars worth of Bitcoin and currency and even as it readied itself for Mt. Gox KK's bankruptcy filing.

In addition to the elements for consumer fraud, common law fraud also requires a showing of reliance and damages—both of which Greene can demonstrate here. Greene would not have deposited his bitcoins with Mt. Gox nor kept them on the exchange had he known that Mt. Gox had lax security and was preparing to go offline permanently—taking his bitcoins in the process. (Greene Decl. ¶ 9.) Indeed, it is precisely because any reasonable user would withdraw their money from the exchange, stop using the exchange, or notify law enforcement upon hearing such news that Mt. Gox worked so stridently to conceal it. And of course, Greene and the Class Members have been damaged—they have collectively lost hundreds of millions of dollars worth of Bitcoin and Fiat Currency that unquestionably belong to them.[27]

Accordingly, Greene's common law fraud claim is also likely to succeed on the merits.

      c.    *Greene has a likelihood of succeeding on his negligence claims.*

At this stage, Greene is also likely to succeed on his negligence claims related to the breach of Mt. Gox's system. To state a negligence claim under Illinois law, "the plaintiff must establish that the defendant owed a duty of care, that the defendant breached that duty, and that the plaintiff incurred injuries proximately caused by the breach." *Johnson v. Wal-Mart Stores, Inc.*, 588 F.3d 439, 441 (7th Cir. 2009) (*citing Espinoza v. Elgin, Joliet & E. Ry. Co.*, 165 Ill.2d 107, 649 N.E.2d 1323, 1326 (1995)).

In accepting member bitcoins and Fiat Currency for deposit, Mt. Gox assumed a duty to use accepted industry standards to safeguard and protect it from attack. Defendants fell far short

---

27     This is in addition to suffering other damages such as overpaying for transaction fees and commissions that included security protections the Classes never received.

of this duty by allowing a several-years-long "bug" to infiltrate its systems and siphon off user bitcoins and money. At bottom, had Mt. Gox exercised due care it wouldn't have lost the Classes' bitcoins and Fiat Currency (or such property wouldn't have been stolen from the Class Members for as long as the theft was allowed to occur) and the exchange wouldn't have needed to shut down completely, taking all remaining customer money and bitcoins with it. But Mt. Gox failed to use industry standard protocols (Compl. ¶¶ 73-74) and, as a result, Greene and the other Class Members have collectively lost hundreds of millions of dollars. As such, Plaintiff can also demonstrate a likelihood of success on his negligence claims.

> d.     *Plaintiff Greene will readily be able to succeed on his claim for breach of fiduciary duty.*

To plead a breach of fiduciary duty claim, a plaintiff must allege: (1) the existence of a fiduciary duty, (2) a breach of that fiduciary duty, and (3) that such breach proximately caused the alleged injury. *In re McCook Metals, L.L.C.,* 07 C 0621, 2007 WL 1687262 (N.D. Ill. June 7, 2007) (*citing Neade v. Portes,* 193 Ill.2d 433, 444, 739 N.E.2d 496 (2000)).

Greene has a strong likelihood of showing that Mt. Gox has acted in defalcation of its fiduciary duties to Class Members by failing to appropriately safeguard their bitcoins and Fiat Currency. Mt. Gox occupied a fiduciary role with respect to Greene's and the other Class Members' bitcoins and Fiat Currency. As the Mt. Gox Terms of Use expressly stated, "MtGox represents and warrants that…it will hold all monetary sums and all Bitcoins deposited by each Member in its Account, in that Member's name as registered in their Account details, and on such Member's behalf."[28] The bitcoins and money thus remained the property of the users while held on the exchange. In light of such contractual terms and formal separation, Greene will likely be able to prove that Defendants owed a fiduciary duty to their members. *See In re Edgewater*

---

[28]     *See* Terms of Use 3, Woodrow Decl., Group Ex. B.

*Med. Ctr.*, 344 B.R. 864, 868 (Bankr. N.D. Ill. 2006) (fiduciary duty may arise from contract

between parties); *see also In re McGee*, 353 F.3d 537, 541 (7th Cir. 2003) (formal separation and

ownership rules may give rise to fiduciary obligations.)

Mt. Gox breached its fiduciary obligations to Greene and the absent Class Members by

failing to warn them of known security issues or the impending shutdown and bankruptcy, and

by continuing to encourage consumers to deposit their Bitcoin and Fiat Currency with the

exchange while Defendants readied themselves to go out of business. Accordingly, and because

Greene can show that he and the Class Members have lost hundreds of millions of dollars as a

result, Plaintiff has a likelihood of succeeding on his breach of fiduciary duty claim as well.

> e.   *Greene will also be able to prevail on his claims for breach of contract.*

Under Illinois law the elements for breach of contract are: "(1) offer and acceptance, (2)

consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required

conditions, (5) breach, and (6) damages." *Wigod*, 673 F.3d at 560; *Association Benefit Services,*

*Inc. v. Caremark RX, Inc.,* 493 F.3d 841, 849 (7th Cir. 2007).

Greene will likely be able to show that Mt. Gox breached several provisions of its

contract with the Class Members. First, Greene plainly had an agreement with Mt. Gox whereby

he agreed to deposit his Bitcoin and money with Defendants in exchange for their agreement to

allow him to trade on the exchange "at any time."[29] Defendants breached—and have caused the

class to suffer hundreds of millions in damages—by shutting down the exchange.

---

[29]   *See* Terms of Use 2 ("Members may at any time transfer any amount of Bitcoins to any
other Members as well as any other Bitcoin users even if they are not Members…Bitcoin
Transfer Transactions may be initiated at any time from the following page:
https://mtgox.com/index.html), Woodrow Decl., Group Ex. B.

Second, Mt. Gox represented and warranted that it would "hold all monetary sums and all Bitcoins deposited by each Member in its Account, in that Member's name as registered in their Account details, and on such Member's behalf."[30] The Mt. Gox website similarly promised members that their transactions would be encrypted and secure[31], and its Privacy Policy stated that Mt. Gox had instituted security measures to protect personal information.[32] Defendants breached—and have caused the class to suffer hundreds of millions in damages—by failing to take reasonable measures to protect against the "bug."

Third, the Terms of Use also provided that "These Terms may be terminated without reason by either party providing the other with reasonable prior notice, receipt of which shall be promptly acknowledged in writing by the other party."[33] Rather than provide reasonable notice of termination, Mt. Gox did just the opposite: lulling members into a false sense of security through repeated assurances that the company was busily attempting to come back online, only to then shutdown completely without providing *any* advance notice. As a result, the Class Members are out hundreds of millions worth of Bitcoin and Fiat Currency.

Given the strength of this claim, Defendants can hardly argue that Greene lacks a likelihood of succeeding on it.

      f.    *Plaintiff also has a likelihood of prevailing on his claim for unjust enrichment.*

Greene also has a likelihood of succeeding on his claim for unjust enrichment. "To state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the

---

[30]    Terms of Use 3, Woodrow Decl., Group Ex. B.
[31]    *See* Landing Page, Woodrow Decl., Ex. A.
[32]    Privacy Policy, Woodrow Decl., Group Ex. B.
[33]    Terms of Use 4, Woodrow Decl. Group Ex. B.

Case 14-31229-sgj15   Doc 5-1   Filed 03/10/14   Entered 03/10/14 00:17:10   Desc
Part 2 of Declaration   Page 13 of 24
Case: 1:14-cv-01437 Document #: 8 Filed: 03/04/14 Page 23 of 34 PageID #:104

benefit violates the fundamental principles of justice, equity, and good conscience." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (*quoting HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.,* 131 Ill.2d 145, 545 N.E.2d 672, 679 (1989)).

Here, Greene presents his claim for unjust enrichment in the alternative to his breach of contact claim and, in the event that Mt. Gox has a contract defense, he will more than likely be able to demonstrate that Mt. Gox has unjustly retained his and the Class Members' Bitcoin and Fiat Currency. As explained above, Mt. Gox was obligated to hold the bitcoins and money in the customer's account *for the benefit of the customer* and has fallen far short by exposing its members to a serious breach of its website's security, misrepresenting its efforts and intentions with respect to reopening, and refusing to return the bitcoins and currency to the Class Members. Furthermore, as Greene is likely to prevail on his fraud claims, his allegations of unjust enrichment are also likely to succeed. *See Ass'n Benefit Servs.,* 493 F.3d at 855 ("[W]here the plaintiff's claim of unjust enrichment is predicated on the same allegations of fraudulent conduct that support an independent claim of fraud, resolution of the fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well.")

g.    *Greene is also likely to succeed on his claim for an accounting.*

Greene is also entitled to an accounting. Under Illinois law, to state a claim for an accounting, a plaintiff must allege the absence of an adequate remedy at law and either a breach of a fiduciary relationship, a need for discovery, fraud, or the existence of mutual accounts which are of a complex nature. *3Com Corp. v. Electronics Recovery Specialists, Inc.,* 104 F. Supp. 2d 932, 941 (N.D. Ill. 2000) (*citing Mann v. Kemper Financial Companies, Inc.,* 247 Ill. App. 3d 966, 618 N.E.2d 317, 327 (1st Dist. 1992)); *People ex rel. Hartigan v. Candy Club,* 149 Ill.App.3d 498, 501 N.E.2d 188, 190 (1st Dist. 1986).

Case 14-31229-sgj15    Doc 5-1    Filed 03/10/14    Entered 03/10/14 00:17:10    Desc
Part 2 of Declaration    Page 14 of 24
Case: 1:14-cv-01437 Document #: 8 Filed: 03/04/14 Page 24 of 34 PageID #:105

In this case, Greene can readily demonstrate a likelihood of success for an accounting. As explained above, Mt. Gox had a fiduciary duty to maintain its members' bitcoins and Fiat Currency for the benefit of those members and Greene is likely to succeed on his fraud claims given Mt. Gox's repeated false statements of material fact. Further, as Mt. Gox has now shut down (blocking out member access entirely) without revealing which accounts were affected by the "bug", Class Members lack sufficient information regarding how much Bitcoin and Fiat Currency Mt. Gox claims to retain with respect to each of their accounts. Greene and the Class Members therefore need discovery showing the precise amounts of Bitcoin and Fiat Currency (along with the denominations) that Mt. Gox purports to have held on each of their behalves at the time the exchange went offline.

Accordingly, the instant fact pattern is tailor-made for an accounting claim, and Greene is likely to prevail on it at trial.

        h.     *Plaintiff's claims for trespass to chattels and conversion are also likely to succeed.*

Finally, trespass to chattels requires proof of the following elements: (1) defendant's wrongful assumption of control, (2) plaintiff's right in the property, (3) plaintiff's right to immediate possession, and (4) plaintiff's demand for possession. *Minuti v. Johnson*, 02 C 4551, 2003 WL 260705, ay *4 (N.D. Ill. Feb. 5, 2003) (*citing Nelson v. Sotheby's Inc.,* 115 F.Supp. 2d 925, 929 n. 2 (N.D. Ill. 2000)). Similarly, to state a claim for conversion, a plaintiff must allege: (1) unauthorized and wrongful control, dominion, or ownership by defendant over plaintiff's property, (2) plaintiff's right in the property, (3) plaintiff's absolute and unconditional right to the immediate possession of the property, and (4) a demand for possession of the property. *G.M. Sign, Inc. v. Stergo*, 681 F. Supp. 2d 929, 931 (N.D. Ill. 2009) (*citing General Motors Corp. v. Douglass*, 206 Ill.App.3d 881, 565 N.E.2d 93, 97 (1990)).

Applied here, Greene will be able to show that Mt. Gox has wrongfully assumed unauthorized control over the Class Members' bitcoins and currency, that the Class has an absolute right to immediate possession of their bitcoins and currency, and that despite demanding Mt. Gox return their Bitcoin and funds immediately, the Defendants refuse to do so. Accordingly, Greene has a likelihood of prevailing on these claims as well.

As such, and irrespective of the label attached to Greene's claims, it is clear that Greene and the Class Members have an overwhelming likelihood of success on the merits. Accordingly, the first element for granting a TRO/preliminary injunction is plainly satisfied.

> **2. No adequate remedy at law exists, and Plaintiff will suffer irreparable harm if an injunction isn't granted because Mt. Gox has, as predicted in the Complaint, declared bankruptcy.**

Plaintiff Greene can also satisfy the elements requiring that he show no adequate remedy at law exists and that he and other Class Members stand to suffer irreparable harm if the injunction isn't granted. As predicted in the Complaint (*see* Compl. ¶¶ 113, 121, 153), Mt. Gox has become insolvent and lacks the financial wherewithal to satisfy a judgment entered against it in favor of the Class Members. Likewise, and although less is presently known about Mr. Karpeles' personal finances, it is likely that he too lacks the hundreds of millions of dollars and bitcoins owed to the Class Members.

Under such circumstances—where a defendant[34] is insolvent and will be unable to satisfy a money judgment—courts have awarded preliminary injunctive relief to prevent further

---

[34]    To be clear, although only Defendant Mt. Gox KK has filed for bankruptcy protection, it would be incredible to suggest that Mt. Gox's parent company, co-Defendant Tibanne KK, or the exchange's majority owner, co-Defendant Mark Karpeles, possess the hundreds of millions of dollars worth of Bitcoin or Fiat Currency needed to adequately compensate Class Members. As such, the lack of comparable bankruptcy filings by Mt. Gox KK's co-Defendants reveals at most a superficial solvency incapable of providing the Class Members with an adequate remedy at law or protecting them from the irreparable harm they otherwise plainly face.

dissipation of any remaining assets. *See Deckert v. Independence Shares* Corp., 311 U.S. 282, 290, 61 S.Ct. 229 (1940) (preliminary injunction of money assets proper where defendant "was insolvent and its assets in danger of dissipation or depletion."); *Roland Machinery Co. v. Dresser Industries, Inc.,* 749 F.2d 380, 386 (7th Cir. 1984) (finding money damages inadequate where defendant may become insolvent); *Tanimura & Antle, Inc., v. Packed Fresh Produce, Inc.,* 222 F.3d 132, 139 (3d Cir. 2000) (finding injunction proper where plaintiffs showed that defendants were dissipating trust assets and would be unlikely to have funds to satisfy a judgment); *see also Travelers Cas. & Sur. Co.,* 2009 WL 4881079.

Such relief is available here because Greene specifically alleges claims that sound in equity as opposed to theories that are based solely in law. *See, e.g., CSC Holdings, Inc. v. Redisi,* 309 F.3d 988, 996 (7th Cir. 2002) (finding that a restraint on assets is still proper if a suit seeks equitable relief.); *United States ex rel Rahman v. Oncology Assocs., P.C.,* 198 F.3d 489, 496-97 (4th Cir. 1999) (holding that *Deckert* still authorizes a district court to preliminarily freeze assets in a case involving equitable claims); *Kennedy Bldg. Assocs. v. CBS Corp.,* 476 F.3d 530, 535 (8th Cir. 2007) ("Here, the underlying relief sought is equitable, rather than legal, so our case involves the use of equity in support of equity, rather than equity in support of a legal remedy."); *In re Focus Media Inc.,* 387 F.3d 1077, 1085 (9th Cir. 2004) (same). Specifically, Greene alleges equitable claims for unjust enrichment/restitution, breach of fiduciary duty, for preliminary and permanent injunctions, and for an accounting—each of which seeks equitable relief.[35]

Thus, because Greene and the **Class Members** have plead equitable claims, Defendants' insolvency and apparent inability to satisfy a money judgment for hundreds of millions of dollars in damages demonstrates that the Class will be irreparably harmed through the continued

---

[35]     *See* Compl. Counts IV, VI-VIII & XI. (Dkt. 1.)

dissipation of assets in the event that the TRO and preliminary injunction are denied.

Accordingly, Greene satisfies these elements for preliminary injunctive relief as well.

> **3.    Balancing the relative harms plainly weighs in favor of granting injunctive relief—particularly in light of the strength of the Classes' claims.**

The next step in the analysis requires that the Court balance the harm to the Class

Members of denying the injunction against the harm to Mt. Gox should the injunction be

granted. As explained above, Greene and the Class Members stand to suffer irreparable harm if

the TRO/preliminary injunction is denied because Mt. Gox is insolvent. On the other hand,

freezing Defendants' U.S. assets and requiring that Mt. Gox maintain them in trust for the benefit

of the Class Members causes almost no harm to Mt. Gox other than preventing it from further

absconding with the Class Members' Fiat Currency and bitcoins.

It is important here to recall that in the Seventh Circuit the balancing of harms is done

according to a "sliding scale." That is, "the more likely the plaintiff will succeed on the merits,

the less the balance of irreparable harms need favor the plaintiff's position." *Ty, Inc. v. Jones*

*Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). Although no case is ever a "slam dunk," it is

readily apparent here that Plaintiff Greene and the Class Members' claims are exceptionally

strong: Defendants have admittedly either lost or stolen the Classes' money and bitcoins and are

at bottom retaining the Class Members' money and bitcoins without any right to do so—thereby

minimizing the consideration to be accorded to any countervailing harm to Mt. Gox. As such, the

Court should find that the irreparable harm to the Class Members far exceeds any supposed harm

that Defendants may claim to suffer should the injunction be granted.[36]

---

[36]    The supposed harm to Defendants may further be militated by the posting of a reasonable bond, which Plaintiff stands capable of providing should the Court deem it necessary. Fed. R. Civ. P. 65. ("The court may issue a preliminary injunction or a temporary restraining order only

4. **The public interest weighs in favor of granting the TRO/preliminary injunction.**

As a final consideration here, the public interest plainly weighs in favor of granting the TRO and preliminary injunction. Without such relief, it is unlikely the Class Members will be able to recover anything from Mt. Gox as they wait years for a Japanese bankruptcy court to decide the fate of their money and bitcoins. In the interim, Mt. Gox will be free to further dissipate its remaining assets, including by making preferential transfers to Karpeles and substantial payments to its lawyers at the international law firm of Baker & McKenzie. Ensuring the safety and protection of U.S. consumers in an international market against rampant fraud and abuse is plainly within the public's interest. Without such protections, U.S. consumers who participate in online markets operated by companies based overseas (but which avail themselves to U.S. consumers) will find themselves at the mercy of foreign courts and laws. Such a policy would sharply undercut the ability of the United States to impose its laws even on those foreign companies that transact business within the Country. At the same time, the public has little interest in allowing foreign companies who transact business within the United States via the Internet to cheat and steal from U.S. consumers with impunity.

In light of the need to protect U.S. consumers from such fraudulent activity, the Court should find that the public interest also weighs in favor of granting the injunction.

B. **This Court Should Impose a Constructive Trust on Any Mt. Gox or Karpeles Assets Held or Maintained in the United States, Including Without Limitation, All Computer Equipment and Servers Used by Mt. Gox or Karpeles, As Well As Any Bank Accounts Controlled by Either of Them.**

A constructive trust is created by the court to avoid unjust enrichment "when a [party] has obtained money to which he is not entitled ... [and] in equity and good conscience he ought

---

if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.")

Case 14-31229-sgj15    Doc 5-1    Filed 03/10/14    Entered 03/10/14 00:17:10    Desc
Part 2 of Declaration    Page 19 of 24
Case: 1:14-cv-01437 Document #: 8 Filed: 03/04/14 Page 29 of 34 PageID #:110

not retain." *F.T.C. v. QT, Inc.*, 605 F. Supp. 2d 999, 1008 (N.D. Ill. 2009) (*quoting Smithberg v.*

*Illinois Mun. Retirement Fund,* 192 Ill.2d 291, 735 N.E.2d 560, 565 (2000). Where a

constructive trust is imposed, the party in possession of the wrongfully obtained funds becomes

the "constructive trustee" and is obligated to transfer the funds to the beneficiary. *Id.* at 565–66.

Constructive trusts have been created "when the case involves funds that were frozen at the

initial stage of litigation in order to preserve the possibility of consumer redress." *F.T.C. v. QT,*

*Inc.,* 605 F. Supp. at 1008 (*quoting F.T.C. v. Think Achievement Corp.,* 144 F. Supp. 2d 1013,

1020 (N.D. Ind. 2000) *aff'd,* 312 F.3d 259 (7th Cir. 2002) ("A court may grant equitable

relief…if it is established that the relief defendant possesses property or profits illegally obtained

and the relief defendant has no legitimate claim to them.") (internal citations omitted.); *see also*

*CSC Holdings, Inc.,* 309 F.3d at 996 (explaining that a claim for accounting "is equitable in

nature and imposes a constructive trust on the defendant.")

     "'The particular circumstances in which equity will impress a constructive trust are as

numberless as the modes by which property may be obtained through bad faith and

unconscientious acts.'" *Dexia Credit Local v. Rogan,* 629 F.3d 612, 630 (7th Cir. 2010) (quoting

*People ex rel. Daley for Use of Cook Cnty. v. Warren Motors, Inc.,* 136 Ill. App. 3d 505, 511,

483 N.E.2d 427, 431 (1985) *aff'd sub nom. People ex rel. Daley v. Warren Motors, Inc.,* 114 Ill.

2d 305, 500 N.E.2d 22 (1986) (internal citations omitted). A party seeking a constructive trust

must establish "the existence of identifiable property to serve as the res upon which a trust can be

imposed and possession of that res or its product by the person who is to be charged as the

constructive trustee." *People ex rel. Hartigan,* 149 Ill.App.3d at 502 (internal citations and

quotations omitted.)

Case 14-31229-sgj15    Doc 5-1    Filed 03/10/14    Entered 03/10/14 00:17:10    Desc
Part 2 of Declaration    Page 20 of 24
Case: 1:14-cv-01437 Document #: 8 Filed: 03/04/14 Page 30 of 34 PageID #:111

Plaintiff Greene expressly pleads causes of action for unjust enrichment—premised on Mt. Gox's fraud and breaches of fiduciary duty—and an accounting premised upon Defendants' continued withholding of Bitcoin and currency that belongs to the Class Members (*see* Compl. Counts IV and XI). The accounting should detail the bitcoins and Fiat Currency Mt. Gox holds for each of the putative Class Members. In the United States, Defendants continue to maintain servers in Massachusetts that are used to host the Mt. Gox website, www.mtgox.com (IP address 23.198.168.44) (Compl. ¶ 12) and may also maintain U.S. bank accounts. Given that Mt. Gox cannot legitimately claim to have an interest in its users' bitcoins and Fiat Currency and that such property is readily identifiable, Mt. Gox should be treated as a trustee of such property and be ordered to hold it for the benefit of the Class Members. As such, the Court should—in addition to freezing Defendants' U.S. assets and barring Mt. Gox from transferring them to third parties or taking them out of the Country—impose a constructive trust on such assets, order Defendants to hold them as constructive trustees, and transfer such property directly and immediately to the putative Class Members as beneficiaries.

**C.      This Court Should Certify the Class Insofar as Certification is Required to Protect the Class From Any Operation of the One-Way Intervention Rule.**

Additionally, the Court should provisionally certify the proposed classes under Rule 23(b)(2) and 23(b)(3) insofar as it is necessary to avoid operation of the one-way intervention rule. "The one-way intervention doctrine holds generally that class certification must occur before any determination is made with respect to the merits of the class claims." *Cima v. WellPoint Health Networks, Inc.*, 250 F.R.D. 374, 378 (S.D. Ill. 2008) (*citing Oglesby v. Rotche*, No. 93 C 4183, 1994 WL 142867, at *1 (N.D. Ill. Apr. 18, 1994)). The purpose of the doctrine is to avoid the inequities to defendants that would arise if class members could make decisions

about whether or not to opt-out of a class on the basis of pre-certification rulings on the merits. *Cima,* 250 F.R.D. at 378, n.2 (*citing Williams v. Lane,* 129 F.R.D. 636, 639-40 (N.D. Ill. 1990)).

Whether the rule applies in the context of a TRO or an order granting a preliminary injunction is unclear, as only an assessment of the "likelihood of success" on the merits is required for a TRO/preliminary injunction (as opposed to a ruling on the merits themselves). In *Williams,* Judge Shadur explained that "[T]houghtful analysis shows that such overriding concern for one-way intervention legitimately arises only where monetary relief is the sole relief sought, not where as here injunctive relief was and is so importantly at stake." 129 F.R.D. at 642. At the same time, Judge Shadur admittedly faced circumstances where a class had already been certified for injunctive relief under Rule 23(b)(2). *Id.* at 642-43 (distinguishing *Hudson v. Chicago Teachers Union, Local No. 1,* 117 F.R.D. 413, 415 (N.D. Ill. 1987) on the grounds that the merits of injunctive relief in that case was fully decided before *any* class had been certified.)

Thus, while application of the rule would seemingly be restricted to cases where damages are sought or where the merits of a permanent injunction have been already been adjudicated, given the unresolved nature of the issue, Plaintiff respectfully requests that the Court provisionally certify the Classes to the extent the Court deems it necessary to do so for the purposes of the instant Motion. To that end, Plaintiff hereby incorporates as if set forth in full his Motion for Class Certification (dkt. 2), which sets forth in detail Plaintiff's ability to satisfy the elements of numerosity, commonality, typicality, and adequacy of representation, in addition to the requirements of both Rule 23(b)(2) and 23(b)(3). Without repeating the arguments set forth in the Motion for Class Certification, it is plain that the Classes consist of thousands users of Mt. Gox who have their bitcoins trapped in Mt. Gox's system and that common issues—including Mt. Gox's uniform misrepresentations of material fact and serial failure to adopt basic measures

to safeguard their bitcoins and currency—predominate over any individualized questions. As

such, Plaintiff Greene respectfully requests that his Motion for Class Certification be granted

(again, to the extent the Court deems it necessary) concurrently with the instant filing.

> **D.     In the Alternative, the Court Should Order Expedited Discovery With
> Respect to Plaintiff's Claims For an Accounting and Defendants' Assets.**

In the alternative to a granting the requested TRO and preliminary injunction outright,

and only to the extent deemed needed by the Court, Plaintiff requests an order allowing for

expedited discovery with respect to Greene's claims for an accounting and into Defendants' U.S.

assets. "A party seeking leave to conduct an expedited deposition has the burden to make a prima

facie showing of the need for such early discovery." *Hard Drive Prods., Inc. v. Doe*, 283 F.R.D.

409, 410 (N.D. Ill. 2012). Courts in the Seventh Circuit generally look for at the totality of the

circumstances to determine whether "good cause" exists for the discovery, including the need for

the discovery, and the reasonableness of the information sought. *Ibarra v. City of Chicago*, 816

F. Supp. 2d 541, 554 (N.D. Ill. 2011); *see also* 8A Charles Alan Wright, Arthur R. Miller, Mary

Kay Kane, & Richard L. Marcus, *Federal Practice and Procedure,* § 2046.1 (3d ed. 1998) ("it is

implicit that some showing of good cause should be made to justify" an expediting discovery

order).

Applied to the instant facts, because Mt. Gox has gone offline, putative Class Members

lack basic information about their potential claims against the exchange, including, most

critically, the amount of Bitcoin and Fiat Currency the exchange holds with respect to each of

their accounts. This lack of clarity is compounded by the fact that Mt. Gox has utter failed to be

forthcoming with respect to which exchange members had bitcoins or Fiat Currency lost as a

result of the "bug." Such information is integral for each Class Member's claim and ability to

demonstrate not only a likelihood of success on the merits but that they lack an adequate remedy

at law and will suffer irreparable harm.[37] At present, Class Members simply lack the information that Mt. Gox has from which they could determine whether they additionally have claims for lost bitcoins and Fiat Currency as a result of the "bug." Further, without discovery into the extent and amount of Defendants' assets, Class Members will be unable to determine the res encompassed in any constructive trust imposed by the Court.

As such, in the alternative to granting the TRO and preliminary injunction, the Court should at a minimum allow Plaintiff leave to conduct limited discovery with respect to Greene's and the Class Members' accounting claims.

## IV.    CONCLUSION

For all of the reasons set forth above, the Court should grant a TRO and preliminary injunction freezing any of the Defendants' assets located in the United States, imposing a constructive trust on such bitcoins and currency, requiring the Defendants to hold and transfer such property immediately and directly to the Plaintiff and the putative Class Members, grant class certification to the extent necessary to avoid application of the one-way intervention rule, or in the alternative, to award expedited discovery into Defendants' assets here and abroad, and to award such additional relief as the Court deems necessary, reasonable, and just.

Respectfully submitted,

**GREGORY GREENE**, individually and on behalf of all others similarly situated,

Dated: March 4, 2014                    By: /s/ Steven L. Woodrow
                                             One of Plaintiff's Attorneys

---

[37]    Moreover, Class Members would need this information to file any claim in bankruptcy, should such action become relevant.

| | |
|---|---|
| Steven L. Woodrow | Jay Edelson |
| swoodrow@edelson.com | jedelson@edelson.com |
| Megan Lindsey | Christopher L. Dore |
| mlindsey@edelson.com | cdore@edelson.com |
| EDELSON PC | David I. Mindell |
| 999 18th Street, Suite 3000 | dmindell@edelson.com |
| Denver, Colorado 80202 | Alicia Hwang |
| Tel: 303.357.4878 | ahwang@edelson.com |
| Fax: 303.446.9111 | EDELSON PC |
| | 350 North LaSalle Street, Suite 1300 |
| | Chicago, Illinois 60654 |
| | Tel: 312.589.6370 |
| | Fax: 312.589.6378 |

*Counsel for Plaintiff Greene and the Putative Classes*

## CERTIFICATE OF SERVICE

I, Steven L. Woodrow, an attorney, hereby certify that I served the above and foregoing *Motion for Temporary Restraining Order and Preliminary Injunction*, by causing true and accurate copies of such paper to be transmitted to all counsel of record via the Court's CM/ECF electronic filing system on March 4, 2014.

s/ Steven L. Woodrow
Steven L. Woodrow
