David W. Parham
State Bar No. 15459500
John E. Mitchell
State Bar No. 00797095
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, Texas 75201
Telephone: (214) 978-3000
Facsimile: (214) 978-3099
Email: david.parham@bakermckenzie.com
Email: john.mitchell@bakermckenzie.com

- and -

Erin E. Broderick *(pro hac vice pending)*
Illinois Bar No. 6295974
300 East Randolph Drive, Suite 5000
Chicago, Illinois 60602
Telephone: (312) 861-8000
Facsimile: (312) 861-2899
Email: erin.broderick@bakermckenzie.com

*Attorneys for the Petitioner Robert Marie Mark Karpeles,*
*Foreign Representative of MtGox Co., Ltd., a/k/a MtGox KK*

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| In re | ) Chapter 15 |
| | ) |
| MtGox Co., Ltd. (a/k/a MtGox KK) | ) Case No. 14-31229-15 |
| | ) |
| Debtor in a Foreign Proceeding. | ) |
| | ) |

### MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR RECOGNITION AND APPLICATION FOR PROVISIONAL RELIEF, SCHEDULING HEARING, AND APPROVING FORM AND MANNER OF NOTICE

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................... 1

I.      BACKGROUND ..................................................................................................... 1

        A.      MtGox's Business................................................................................... 1

        B.      MtGox's Capital Structure ..................................................................... 3

        C.      Business Challenges................................................................................ 3

        D.      MtGox's Japan Proceeding and Corporate Reorganization under the JCRA ........ 4

        E.      MtGox's US Litigation Matters .............................................................. 6

                1.      The CoinLab Action ................................................................... 6

        F.      The Greene v. MtGox Class Action........................................................ 9

ARGUMENT ..................................................................................................................... 13

II.     RECOGNITION OF MTGOX'S FOREIGN REPRESENTATIVE  AND
        FOREIGN MAIN PROCEEDING ARE APPROPRIATE ................................... 13

        A.      Mr. Karpeles May Be Recognized as MtGox's Foreign Representative............. 13

        B.      The Japan Proceeding is a Foreign Proceeding ................................... 13

        C.      The Japan Proceeding is a Foreign Main Proceeding.......................... 16

        D.      The Petitioner is Entitled to Relief Pursuant to Section 1517 ............ 17

III.    THE ISSUANCE OF PROVISIONAL RELIEF INCLUDING IMPOSITION OF
        AUTOMATIC STAY TO PROTECT MTGOX IS APPROPRIATE............................ 18

        A.      MtGox Satisfies All Requirements for Injunctive Relief .................... 20

                1.      Likelihood of Success on the Merits......................................... 20

                2.      Irreparable Harm ...................................................................... 21

                3.      Balance of Hardships ............................................................... 22

                4.      Public Interest .......................................................................... 23

IV.     THE PROPOSED NOTICE AND HEARING ON RECOGNITION ............................ 24

CONCLUSION.................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

FEDERAL CASES

<u>In re ABC Learning Centres Ltd.</u>, 445 B.R. 318, 328 (Bankr. D. Del. 2010) ...............................15

<u>In re Bear Stearns High-Grade Structured Credit Strategies Master Fund</u>,
 374 B.R. 122 (Bankr. S.D.N.Y. 2007), <u>aff'd</u> 389 B.R. 325 (S.D.N.Y. 2008) ..................16, 17

<u>In re Bear Stearns High-Grade Structured Credit Strategies Master Fund</u>,
 389 B.R. 325 (S.D.N.Y. 2008)........................................................................................16, 17

<u>In re Betcorp Ltd.</u>,
 400 B.R. 266 (Bankr. D. Nev. 2009) .........................................................................14, 15, 17

<u>In re Ho Seok Lee</u>,
 348 B.R. 799 (Bankr. W.D. Wash. 2006) ...................................................................19

<u>In re Integrated Health Servs., Inc.</u>,
 258 B.R. 96 (Bankr. D. Del. 2000) ...........................................................................23

<u>In re Japan Airlines Corp.</u>,
 No. 10-10198 (JMP), 2010 WL 1050075 (Bankr. S.D.N.Y. Jan. 28, 2010) ..........................21

<u>In re MMG LLC</u>,
 256 B.R. 544 (Bankr. S.D.N.Y. 2000) ...................................................................20

<u>In re Netia Holdings, S.A.</u>,
 277 B.R. 571 (Bankr. S.D.N.Y. 2002) ...................................................................14

<u>In re R&G Fin. Corp.</u>, 441 B.R. at 411 (Bankr. D.P.R. 2010).....................................................21

<u>In re SPhinX Ltd.</u>,
 351 B.R. 103 (Bankr. S.D.N.Y. 2006) <u>aff'd</u>, 371 B.R. 10 (S.D.N.Y. 2007) ..........................19

<u>In re Tradex Swiss AG</u>,
 384 B.R. 34 (Bankr. D. Mass. 2008) ...........................................................16, 17

<u>In re Tri-Continental Exch. Ltd.</u>,
 349 B.R. 627 (Bankr. E.D. Cal. 2006) ...................................................................16

<u>In re Vitro</u>,
 455 B.R. 571 (Bankr. N.D. Tex. 2011).....................................................................19, 20

<u>In re W.R. Grace & Co.</u>,
 386 B.R. 17 (Bankr. D. Del. 2008) ...........................................................................23

Lavie v. Ran (In re Ran),
    607 F.3d 1017 (5th Cir. 2010) ............................................................................17

Nevada Power Co. v. Calpine Corp. (In re Calpine Corp.),
    365 B.R. 401 (S.D.N.Y. 2007)............................................................................21

**FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

11 U.S.C. § 101(23), (24) ...........................................................................13, 14, 15, 16

11 U.S.C. § 105(a) ................................................................................................1, 19

11 U.S.C. §§ 1501(a)(1)(B)-(a)(4) ...........................................................................23

11 U.S.C. § 1502(4) .................................................................................................16

11 U.S.C. § 1516(c) .................................................................................................16

11 U.S.C. § 1517.........................................................................................16, 17, 18

11 U.S.C. § 1519(a), (e) ................................................................................1, 18, 19

Fed. R. Bankr. P. 1011(b) ........................................................................................24

Fed. R. Bankr. P. 2002(q)(1)....................................................................................24

Fed. R. Bankr. P. 9007.............................................................................................24

Chapter X of the United States Bankruptcy Act of 1898........................................15, 16

**OTHER AUTHORITIES**

H.R. Rep. 109-31, pt. 1 (2005) ................................................................................18

## PRELIMINARY STATEMENT

1.       Robert Marie Mark Karpeles ("Karpeles"), in his capacity as the foreign representative (the "Petitioner") of MtGox Co., Ltd. a/k/a MtGox KK (the "Debtor" or "MtGox"), a debtor in a civil rehabilitation proceeding under Japanese law (the "Japan Proceeding"), currently pending before the Twentieth Civil Division of the Tokyo District Court, Japan (the "Tokyo Court"), submits this memorandum in support of his petition (the "Petition") under Chapter 15 of title 11 of the United States (the "Bankruptcy Code") seeking recognition as a foreign representative, and recognition of the Japan Proceeding as a foreign main proceeding, and entry of an order substantially in the form attached to the Verified Petition for Recognition and Chapter 15 Relief as Exhibit A (the "Recognition Order"), and in support of his Application for an Order Granting Provisional Relief Pursuant to Sections 105(a) and 1519 of the Bankruptcy Code, Scheduling Recognition Hearing, and Specifying Form and Manner of Notice (the "Application").

2.       There are currently two actions pending against the Debtor in the United States in which there are near-approaching court appearances and discovery deadlines, including a hearing on injunctive relief against the Debtor on March 11, 2014. The Debtor's participation in these lawsuits during the short time before the Court rules on the Petition would wastefully divert resources away from administration of the Japan Proceeding. Accordingly, the Application seeks a stay of these actions to avoid irreparable harm to the administration of the Japan Proceeding.

## I.       BACKGROUND.

### A.       MtGox's Business.

3.       MtGox is a Japanese corporation formed in 2011. It is, and always has been, located in Tokyo, Japan. Since it was formed and up to February 25, 2014, it operated an online

bitcoin exchange through the website mtgox.com. MtGox has operated this exchange since the summer of 2011. There were times during this period that MtGox was reported to be the largest online bitcoin exchange in the world, but that is no longer the case.

4.      As set forth in the Declaration of the Petitioner (the "<u>Karpeles Declaration</u>"), bitcoin is a form of digital currency that was first conceived of in 2008 by a person or group going by the name of Satoshi Nakamoto. The first actual bitcoin was created, or "mined" in 2009. There are several ways in which a person can obtain bitcoin, including the following:

- o     Bitcoins are "created" through a computer software algorithm which, at any point in time, resides on thousands of computers on the Internet. Persons who accept to certify bitcoin transactions over the bitcoin peer-to-peer network are remunerated by the issuance of a fixed number of bitcoins, which evolves over time. The certification is done by the solving of an "algorithm" with the use of ever-more powerful computers. These persons are called "miners" and the process of obtaining bitcoin in this fashion is called "mining."

- o     A person can also obtain bitcoins that have already been mined by buying them from another. These transactions can consist of "one-to-one" transactions between a buyer and seller. In addition, a person can buy or sell bitcoin through an online exchange, such as the exchange operated by MtGox on the mtgox.com website. In these exchange transactions, the buyer and seller create accounts at the exchange and then fund the account with currency funds, bitcoin or both. The user can then enter a buy or sell order online and the website will match the buy or sell order with one or more sell or buy orders. The buyer receives an increase in bitcoin in his/her account and the seller receives an increase in currency in his/her account. The bitcoin exchange receives a fee or commission for the transaction.

- o     A person can also obtain and use bitcoin through commercial or merchant transactions; that is, a person can use bitcoin in certain circumstances to pay for goods and services.

5.      Users store bitcoins in a digital "wallet" using either the software provided as part of the bitcoin software or a wallet provided by various providers. MtGox provides a wallet

feature. A wallet can be materialized on a piece of paper and bitcoins need not be stored on a computer.

6.      The MtGox exchange allowed persons with MtGox accounts to buy and sell bitcoin among themselves. In this regard, a person was to first open an account at MtGox and was assigned an account number. Once a user wanted to start buying or selling bitcoin on the mtgox website, he or she would need to "fund" the account with currency, bitcoin, or both. In addition, the account holder would be subject to "anti-money laundering" ("AML") procedures. Once the account was "funded," the account holder would have a "currency balance" in the account, corresponding to the amount of currency he or she had a right to withdraw; and, a "bitcoin balance" in the account, corresponding to the amount of bitcoin he or she had a right to withdraw.

**B.      MtGox's Capital Structure.**

7.      MtGox has approximately ¥6.5 billion ($63.9 million) in liabilities and approximately ¥3.84 billion ($37.7 million) of assets at present. MtGox has no secured debt. Approximately 12% of the equity in MtGox is held by the developer of the initial MtGox software, Jed MacCaleb, with the remaining equity held by Tibanne Co., Ltd., a Japanese corporation located in Japan.

**C.      Business Challenges.**

8.      The mtgox.com website has been subject to numerous attempts by persons to breach its security, create denial of service ("DOS") situations, or to otherwise "hack" the system, and this has been the case since MtGox started operating the website in July 2011. In certain circumstances such attempts have led to the company shutting down the site for periods at a time.

9.     On February 7, 2014, MtGox halted all bitcoin withdrawals by its customers—this was because MtGox was the subject to a massive theft or disappearance of bitcoins being held by MtGox both on behalf of its customers and itself.  This theft or disappearance is currently the subject of an intense investigation which required MtGox to devote most of its resources.  As of the present time MtGox believes the theft or disappearance was caused or related to a flaw in the software algorithm that underlies bitcoin, and "hacking" attacks of one or more persons.  On February 24, 2014, MtGox suspended all trading after internal investigations discovered a loss of 744,408 bitcoins presumably from this method of theft.   These events caused among others MtGox to become insolvent and to file the Japan Proceeding.

**D.     MtGox's Japan Proceeding and Corporate Reorganization under the JCRA.**

10.     In order to protect the MtGox business as a going concern and retain its value while MtGox investigates the theft of the bitcoins under its control and addresses security defects in the bitcoin exchange, MtGox filed a petition (the "Japan Petition") for the commencement of the Japan Proceeding in the Tokyo Court pursuant to Article 17(1) of the Japanese Corporate Reorganization Act (*Kaisha Kosei Ho*) (the "JCRA") on February 28, 2014, reporting that the company had lost almost 750,000 of its customers' bitcoins, and around 100,000 of its own bitcoins, totaling around 7% of all bitcoins in the world, and worth around $473 million near the time of the filing.  The Japan Petition is attached as Exhibit A to the accompanying Declaration of Robert Marie Mark Karpeles (the "Karpeles Declaration").

11.     The JCRA is intended to be used for the rehabilitation and reorganization of large corporate debtors.  The Japan Proceeding is a civil rehabilitation.  The purpose of a civil rehabilitation proceeding is to formulate a rehabilitation plan as consented to by a requisite number of creditors and confirmed by the court, to appropriately coordinate the relationships of

-4-

rights between creditors and the debtor, with the aim of ensuring rehabilitation of the debtor's business or economic life.

12.     In addition to the petition for commencement, MtGox also filed applications for a temporary restraining order and for a comprehensive prohibition order, and for the appointment of a supervisor and examiner.  By separate orders dated February 28, 2014, the Tokyo Court granted these additional applications (collectively, the "Tokyo Court Orders").  The Tokyo Court Orders are attached, together with their English translation, as Exhibits B, C, D, and E respectively, to the Karpeles Declaration.

13.     The Tokyo Court appointed Mr. Nobuaki Kobayashi as MtGox's supervisor and examiner.  Under the Tokyo Court Orders, the Debtor cannot execute an agreement with any third party without the consent of the supervisor and examiner.  The Debtor however remains free to initiate or pursue any legal proceeding provided that the costs of these proceedings be approved by the supervisor and examiner.  On March 10, 2014, Mr. Kobayashi, pursuant to the powers conferred upon by the Tokyo Court Orders, issued a consent allowing the Debtor to hire Baker &McKenzie to file this case and further acknowledging that the consent was granted at the condition that the MtGox's sole Director and Chief Executive Officer, Mr. Karpeles, file this Chapter 15 case as the foreign representative of MtGox.  A true and correct copy of the application for consent and the consent issued by Mr. Kobayashi is attached to the Karpeles Declaration, together with an English translation, as Exhibit F.

14.     The schedule of MtGox's reorganization proceedings has not yet been determined.  Upon issuance of the commencement order, the Tokyo Court will set a deadline to file proof of claims, submit a rehabilitation plan, etc.  As additional steps are taken in the Japan Proceeding, this Court will be advised.

-5-

15.     This Chapter 15 case is being filed in an effort to maximize recoveries to, and provide for an equitable distribution of value among, all creditors.  The enjoining of certain ongoing litigation to which MtGox and/or its affiliates are parties in conjunction with the protections afforded by the Japan Proceeding is essential to this effort. Please refer to the Gamlen Declaration, which is incorporated and made a part of this Petition as if restated herein, regarding the pending litigation against MtGox and/or its affiliates.

16.     There are no other foreign proceedings that have been filed by, regarding, or against MtGox and which are pending.

**E.     MtGox's US Litigation Matters.**

17.     MtGox has been named as a defendant in two pending lawsuits in the United States:  <u>CoinLab, Inc. v. Mt. Gox KK</u>[1] <u>and Tibanne KK</u>, No. 2:13-cv-0777 (W.D. Wash. May 2, 2013) (the "<u>CoinLab Action</u>") and <u>Gregory Greene v. MtGox Inc., Mt. Gox KK, Tibanne KK and Mark Karpeles</u>, No. 1:14-cv-01437 (N.D. Ill. February 27, 2014) (the "<u>Class Action</u>" and with the CoinLab Action, the "<u>US Litigation Matters</u>").

18.     Karpeles is MtGox and Tibanne's CEO and sole director.  MtGox Inc., a Delaware Corporation, is a subsidiary of another MtGox subsidiary, and has neither operations or assets.  Tibanne, as described above, is MtGox's parent.  The exchange complained of in the Class Action is operated by MtGox in Japan.

**1.     The CoinLab Action.**

19.     The CoinLab Action was filed in the United States District Court for the Western District of Washington by CoinLab, Inc. ("<u>CoinLab</u>").  The claims asserted by CoinLab arise out of that certain Exclusive License Agreement for the USA & Canada (the "<u>CoinLab Agreement</u>"),

---

[1] MtGox is sometimes referred to as Mt. Gox KK.

dated November 22, 2012 and entered into between CoinLab on the one hand, and MtGox and its parent corporation, Tibanne, Co. Ltd., a/k/a Tibanne KK, on the other. Under the CoinLab Agreement, CoinLab was granted a license to use MtGox's technology to provide bitcoin exchange services for customers in the US and Canada. As part of the CoinLab Agreement, CoinLab agreed to operate the services in compliance with all applicable laws.

20. The facts disclosed in the CoinLab Action demonstrate that: prior to final implementation of the CoinLab Agreement, it was determined that CoinLab was not properly registered or licensed to perform the services called for under the CoinLab Agreement; and, as a result of such nonperformance by CoinLab, MtGox ceased its own performance under the CoinLab Agreement, which was never fully implemented to begin with.

21. CoinLab is suing MtGox and Tibanne for alleged breach of the CoinLab Agreement and breach of the implied duty of good faith and fair dealing. CoinLab is seeking damages of $75,000,000, which includes $50,000,000 arising from a liquidated damages clause in the CoinLab Agreement, as well as accounting and restitution. In addition, MtGox has asserted a counterclaim against CoinLab seeking to recover $5.2 million relating to CoinLab's conversion of customer funds.

22. There is significant discovery yet to be completed in the CoinLab Action, which would require MtGox to incur substantial expenses and expend significant resources. Among other things:

> (a) CoinLab has noticed the deposition of Karpeles for March 25 and 26, 2014 in Taiwan. Karpeles is the Petitioner and proposed foreign representative in this Chapter 15 proceeding, the Debtors' Chief Executive Officer, and sole director of the Debtor, and the individual that is most

knowledgeable about the technological defects that have led to the Debtor's current financial problems.

(b)     MtGox needs to take several depositions to complete preparation of its defenses, including the depositions of CoinLab's former Chief Financial Officer, CoinLab's former business development manager, and third parties with knowledge of CoinLab's lack of regulatory compliance and/or CoinLab's conversion of the customer funds.

(c)     Summary judgment motions will likely be filed in the next few months.

(d)     CoinLab has served a discovery request, a response to which is due on or about March 17, 2014, which seeks, among other things, productions and/or inspection of MtGox's entire customer database, a request that will result in substantial motion practice.  Expert disclosures are due April 7, 2014, which requires the preparation of expert reports and will lead to the depositions of such experts.

(e)     CoinLab may also seek to depose other witnesses before the June 6, 2014 discovery cutoff in the CoinLab Action.

23.     Relevant litigation scheduling dates in the CoinLab Action are as follows: (i) April 7, 2014, as the deadline to disclose expert witnesses and submission of expert witness reports; (ii) May 2, 2014, as the deadline to serve written discovery; (iii) June 6, 2014, as the deadline to complete discovery; (iv) July 7, 2014, as the deadline to file dispositive motions; and (v) November 3, 2014, the date of trial.

24.     If the CoinLab Action is not stayed in its entirety, MtGox will need to expend substantial monetary and personnel resources to prepare expert reports, prepare responses to

discovery requests, and prepare for depositions. Given the approaching deadlines in this action, all of this must be done now if there is no provisional stay, even though an automatic stay will be in place upon recognition of the Japan Proceeding.

      **F.**     **The Greene v. MtGox Class Action.**

     25.    On or about February 28, 2014, newspapers and postings on the Internet reported that a purported class action had been filed in the United States District Court for the Northern District of Illinois against "MtGox" by an individual named Gregory Greene.

     26.    On March 5, 2014, counsel to MtGox received an email from an attorney named Steven Woodrow; a copy of that email (without all attachments) is attached to the Gamlen Declaration as <u>Exhibit A</u>. As can be seen from that email, Mr. Woodrow stated, among other things, that:

        (a)    His "…law firm represents Gregory Greene in the litigation recently filed in the Northern District of Illinois against Mt. Gox…." and that he understood that Baker &McKenzie represents Mt. Gox in a separate matter pending in the Western District of Washington, which I understood to refer to the CoinLab Action.

        (b)    His firm had filed a motion for temporary restraining order ("<u>TRO</u>") and preliminary injunction and wanted to know if our firm would be representing "Mt. Gox" in the matter.

     27.    Mr. Woodrow attached several papers that his firm had filed in the Northern District of Illinois action. Certain of those papers are attached hereto as discussed below. Those papers demonstrate the following:

        (a)    On February 27, 2014, Mr. Woodrow's firm filed a purported class action in the United Stated District Court for the Northern District of Illinois,

entitled <u>Gregory Greene v. MtGox Inc., et al.</u>, Case No. 1:14-cv-1437 (N.D. Ill. Feb. 27, 2014) (the "<u>Greene Class Action</u>" and with the CoinLab Action, the "<u>US Litigation Matters</u>").  A copy of the complaint is attached to the Gamlen Declaration as <u>Exhibit B</u>.  In the Greene Class Action, the lead plaintiff seeks to represent two classes: (i) all persons in the US who paid a fee to MtGox to buy, sell, or otherwise trade bitcoin; and (ii) all persons in the US who had Bitcoins or currency stored with MtGox as of February 7, 2014, when MtGox halted all withdrawals of currency or Bitcoins.

(b)    Four defendants are named in the Greene Class Action:  (i) MtGox; (ii) MtGox, Inc.; (iii) Tibanne; and (iv) Karpeles. MtGox Inc. is a second tier subsidiary of MtGox.  It was formed in June 2013.  It has never conducted any business operations. The company was formed to, among other things, operate certain US operations, including forming banking relationships and obtain appropriate licenses in the US in light of CoinLab's failure to be so licensed.  In June 2013, it registered with FinCEN as a money transmitter business. It has been in the process of seeking to obtain state money transmitter business licenses.  Tibanne is the parent of MtGox and owns 88% of the shares of MtGox.

(c)    The complaint asserts twelve causes of action against MtGox, MtGox, Inc., Tibanne, and Karpeles, including consumer fraud, fraudulent inducement, negligence, breach of fiduciary duty, breach of contract, unjust enrichment, trespass to chattels, conversion, for which the lead

plaintiff is seeking a temporary restraining order and preliminary injunction, a permanent injunction, an accounting, and imposition of a constructive trust.

(d)    On March 4, 2014, Mr. Woodrow's firm filed a motion for a temporary restraining order and preliminary injunction ("TRO"), of copy of which is attached to the Gamlen Declaration as Exhibit C. The TRO motion requests that the court: (i) freeze any of the defendants' assets in the US (including any servers or other computer equipment in the US upon which customer information regarding bitcoins or currency accounts is stored); (ii) prohibit the defendants from transferring any bitcoin or currency belonging to the class members; (iii) provide an accounting of all of the defendants' outstanding liabilities; and (iv) impose a constructive trust over the defendants' assets for the exclusive benefit of the class members and the defendants to hold such assets in trust for the class members and immediately transfer those assets to the class members. A hearing on the motion is scheduled for March 11, 2014.

(e)    In addition, in the motion referred to above plaintiff is seeking expedited discovery.

28.    The claims asserted against MtGox in the Greene Class Action indicate that such claims arise out of the same facts which led to MtGox's insolvency and filing of the Japan Proceeding—the theft of MtGox customers' bitcoin and MtGox's consequent inability to return such bitcoin to its customers. If the Greene Class Action is not stayed in its entirety, MtGox will need to expend substantial monetary and personnel resources to defend both the

TRO/preliminary injunction motion (including its request for expedited discovery) as well as defend the litigation on the merits. Among other things:

(a)     The request for expedited discovery, if granted, will require MtGox to divert substantial personnel resources to comply, as well as substantial attorney fees at the same time MtGox is trying to devote its resources to assisting in the Japanese Proceeding.

(b)     Preliminary injunction papers will have to be prepared.

(c)     Once defendants are served, responses to the complaint will have to be prepared. The issues involved in the Greene Class Action have only occurred recently, may not yet be fully understood, even by MtGox, and are of a highly technical nature. A fair understanding of them will have to gained in order to meaningfully respond to the complaint. That will require substantial resources and attorney fees.

(d)     Potentially complex and technical class certification issues will be litigated. Among other things, the claims are based on Illinois state law and involve issues of individual reliance.

(e)     Depositions will likely have to be taken of one or more MtGox personnel in order to understand cause and extent of the bitcoin loss. Yet, these are the same issues that are already being investigated in the Japan Proceeding.

(f)     Experts may well have to be retained.

**ARGUMENT**

II.    **RECOGNITION OF MTGOX'S FOREIGN REPRESENTATIVE AND FOREIGN MAIN PROCEEDING ARE APPROPRIATE.**

    A.    **Mr. Karpeles May Be Recognized as MtGox's Foreign Representative.**

    29.    The term "foreign representative" is defined in section 101(24) of the Bankruptcy Code as follows:

> The term 'foreign representative' means a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 USC. § 101(24).

    30.    As set forth in the Karpeles Declaration, the Tokyo Court appointed Mr. Nobuaski Kobayashi, a Japanese attorney, as MtGox's supervisor and examiner. On March 9, 2014, Mr. Kobayashi, pursuant to the general powers conferred upon him under the JCRA and by order of the Tokyo Court, issued a consent empowering MtGox's sole director and Chief Executive Officer, Mr. Karpeles, to file this Chapter 15 case as the foreign representative of MtGox. A true and correct copy of the application for consent and the consent issued by Mr. Kobayashi is attached, together with an English translation, as <u>Exhibit F</u> to the Karpeles Declaration. Mr. Karpeles thus qualifies as a foreign representative under section 101(24).

    B.    **The Japan Proceeding is a Foreign Proceeding.**

    31.    The Bankruptcy Code defines a "foreign proceeding" as "a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the

debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation." 11 USC. § 101(23).[2]

32.    In In re Betcorp Ltd., 400 B.R. 266 (Bankr. D. Nev. 2009), the Bankruptcy Court for the District of Nevada analyzed whether an Australian voluntary winding up proceeding could be recognized as a foreign proceeding under Chapter 15. The court noted that Chapter 15 "incorporate[s] the Model Law on Cross-Border Insolvency," and to interpret the term "foreign proceeding," "the court shall consider its international origin, and the need to promote an application of this chapter that is consistent with the application of similar statutes adopted by foreign jurisdictions." Id. at 275-76 (quoting section 1508).

> To fall within the scope of the Model Law, a foreign insolvency proceeding needs to possess certain attributes. These include the following: basis in insolvency-related law of the originating State; involvement of creditors collectively; control or supervision of the assets and affairs of the debtor by a court or another official body; and reorganization or liquidation of the debtor as the purpose of the proceeding. . . .

Id. at 276 (quoting UNCITRAL Model Law on Cross-Border Insolvency With Guide To Enactment, ¶ 32, at 10).

33.    The court then conducted a lengthy examination of the Australian winding up to determine whether it met the requirements, namely whether it was: "(i) a proceeding; (ii) that is either judicial or administrative; (iii) that is collective in nature; (iv) that is in a foreign country; (v) that is authorized or conducted under a law related to insolvency or the adjustment of debts;

---

[2]    The current definition of "foreign proceeding" in the Bankruptcy Code makes clear the concept expressed in In re Netia Holdings, S.A., 277 B.R. 571 (Bankr. S.D.N.Y. 2002), a case under section 304, that an interim proceeding qualifies as a foreign proceeding. See id. at 580 (finding that the filing of an application for commencement started a continuous process that plainly satisfied each of the requirements necessary to qualify as a "foreign proceeding"); see also In re Compania Mexicana de Aviacion, S.A., Chapter 15 Case No. 10-14182 (MG) (Bankr. S.D.N.Y. Aug. 16, 2010) (board of directors of foreign company can appoint foreign representative on interim basis to initiate Chapter 15 proceeding because under Mexican law management remains in control until Mexican Court replaces it). Indeed, courts have recognized proceedings under the JCRA as a foreign proceeding at the same procedural stage as the Japan Proceeding. See In re Elpida Memory, Inc., No. 12-10947 (Bankr. D. Del. Apr. 24, 2012).

(vi) in which the debtor's assets and affairs are subject to the control or supervision of a foreign court; and (vii) which proceeding is for the purpose of reorganization or liquidation." Id. at 277. The court concluded that all relevant criteria were met and recognized the Australian proceeding.

34. MtGox's Japan Proceeding meets all of the criteria set forth in section 101(23) and the aforementioned cases, and is entitled to recognition as a "foreign proceeding" under Chapter 15.

35. **First**, the Japan Proceeding is a "proceeding," as it was initiated by the filing of the petition to commence reorganization proceedings.

36. **Second**, the Japan Proceeding is "judicial," as the Tokyo Court has exercised its supervisory powers by granting MtGox's petitions for a comprehensive prohibition order, for a temporary restraining order, and for the appointment of a supervisor and examiner.

37. **Third**, the Japan Proceeding is "collective in nature" because all affected creditors are involved. The Betcorp court found that a proceeding was collective where it "considers the rights and obligations of all creditors" in contrast to a "receivership remedy instigated at the request, and for the benefit, of a single secured creditor." 400 B.R. at 281; see also In re ABC Learning Centres Ltd., 445 B.R. 318, 328 (Bankr. D. Del. 2010) (citing In re Betcorp Ltd. regarding the meaning of "collective in nature").

38. **Fourth**, the Japan Proceeding is pending in Japan, a foreign country.

39. **Fifth**, the Japan Proceeding is governed by the JCRA, which was initially modeled on Chapter X of the United States Bankruptcy Act of 1898 and was amended in 2002 to facilitate more expeditious procedure. The JCRA is intended to be used for the rehabilitation and reorganization of large corporate debtors.

40.     **Sixth**, MtGox's assets are subject to the court-appointed supervision of the supervisor and examiner, who has conferred his authority to Mr. Karpeles to continue to represent MtGox until a trustee is appointed.

41.     **Seventh**, the objective of the Japan Proceeding is rehabilitation of the Debtor.

42.     As all of the criteria required by section 101(23) are satisfied, this Court should recognize the Japan Proceeding as a "foreign proceeding" as required by section 1517 of the Bankruptcy Code.

### C.     The Japan Proceeding is a Foreign Main Proceeding.

43.     The Japan Proceeding is also a "main" proceeding.  A "foreign main proceeding" is defined as a "foreign proceeding" pending in the country where the debtor has the center of its main interests.  See 11 USC. § 1502(4).   Section 1516(c) provides a presumption that, "in the absence of evidence to the contrary, the debtor's registered office" "is presumed to be the center of the debtor's main interests."  11 USC. § 1516(c); see also In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, 374 B.R. 122, 127 (Bankr. S.D.N.Y. 2007), aff'd 389 B.R. 325 (S.D.N.Y. 2008); In re Tradex Swiss AG, 384 B.R. 34, 43 (Bankr. D. Mass. 2008).

44.     The phrase "center of main interest" ("COMI") is a term of art, which the Bankruptcy Code does not define explicitly.  Courts have generally equated COMI to where a debtor has its principal place of business.  See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, 389 B.R. 325, 336 (S.D.N.Y. 2008) (noting that "[a]n early bankruptcy court decision that addressed the determination of COMI specifically discusses the [regulation adopting the EU Convention on Insolvency Proceedings] language and properly equates it to the United States' concept of 'principal place of business'" (citing In re Tri-Continental Exch. Ltd., 349 B.R. 627, 629 (Bankr. E.D. Cal. 2006)).  The Bankruptcy Code provides that "[i]n the absence of evidence to the contrary, the debtor's registered office, or habitual residence in the

case of an individual, is presumed to be the center of the debtor's main interests." 11 U.S.C. § 1516(c). This presumption may only be overcome by evidence that the debtor's registered office is not its COMI.

45.     In <u>Lavie v. Ran (In re Ran)</u>, 607 F.3d 1017 (5th Cir. 2010), the Fifth Circuit identified several factors relevant to the COMI analysis: "the location of the debtor's headquarters; the location of those who actually manage the debtor; the location of the debtor's primary assets; the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and/or the jurisdiction whose law would apply to most disputes." (citing <u>In re SphinX</u>, 351 B.R. 103 (Bankr. S.D.N.Y. 2006)); <u>see also</u> <u>In re Bear Stearns</u>, 374 B.R. at 129; <u>In re Tradex</u>, 384 B.R. at 43 ("Such factors as the location of a debtor's headquarters; the location of a debtor's management; the location of its assets and creditors; and the site of the controlling law are important in determining COMI."); <u>In re Betcorp Ltd.</u>, 400 B.R. at 287-88 (referring to Bear Stearns and Tradex and also to cases in the European Community for COMI analysis).

46.     MtGox's COMI is clearly Japan under all of the relevant criteria. MtGox's registered office is located in Tokyo, Japan. Most of MtGox's personnel, including its Chief Executive Officer and sole director, reside in Japan. Thus, because the Japan Proceeding is pending in MtGox's COMI, it qualifies for recognition as a foreign main proceeding pursuant to section 1517 of the Bankruptcy Code.

  **D. <u>The Petitioner is Entitled to Relief Pursuant to Section 1517.</u>**

47.     Section 1517 states that an order recognizing a foreign proceeding "shall be entered" if all of the requirements for recognition have been met. <u>See</u> 11 USC. § 1517. If all of the requirements for recognition are satisfied, recognition under section 1517(a) and (b) is mandatory, unless granting recognition would be fundamentally against public policy pursuant to

section 1506 of the Bankruptcy Code.  See H.R. Rep. 109-31, pt. 1 (2005) ("The decision to grant recognition is not dependent upon any findings about the nature of the foreign proceedings . . . [t]he requirements of this section . . . are all that must be fulfilled to attain recognition."); see also In re Ran, 607 F.3d at 1022 ("[t]his statutory mandate is subject to a narrow public policy exception which permits a court to refuse recognition 'if the action would be manifestly contrary to the public policy of the United States.' 11 U.S.C. § 1506. But, the exception is intended to be invoked only under exceptional circumstances concerning matters of fundamental importance for the United States.").

48.    The JCRA was modeled after Chapter IX of the U.S. Bankruptcy Act of 1898 and shares many of the core objectives of the Bankruptcy Code.  Courts have routinely recognized the foreign main proceedings commenced under the JCRA are not manifestly against US public policy.  See, e.g., In re Elpida Memory, Inc., No. 12-10947 (Bankr. D. Del. Apr. 24, 2012) (granting recognition of foreign main proceeding where company sought reorganization in Japan under JCRA); In re Spansion Ltd., No. 09-11480 (Bankr. D. Del. May 28, 2009) (same); In re Japan Airlines Corp., No. 10-10198 (Bankr. S.D.N.Y. Feb. 17, 2010) (same).  The Japan Proceeding satisfies all of the requirements to be designated as a foreign main proceeding, and recognition should therefore be granted.

## III.    THE ISSUANCE OF PROVISIONAL RELIEF INCLUDING IMPOSITION OF AUTOMATIC STAY TO PROTECT MTGOX IS APPROPRIATE.

49.    As set forth above, it is likely that MtGox will be successful in obtaining an order under section 1517 recognizing Mr. Karpeles as its foreign representative and the Japan Proceeding as a foreign main proceeding.  Section 1519(a) provides, in pertinent part:

> From the time of filing a petition for recognition until the court rules on the petition, the court may, at the request of the foreign representative where relief is urgently needed to protect the assets of the debtor or in the interests of the creditors, grant relief of a provisional nature, including –

-18-

(1) staying execution against the debtor's assets;

(2) entrusting the administration or realization of all or part of the debtor's assets located in the united states to the foreign representative or another person authorized by the court, including an examiner, in order to protect and preserve the value of assets that, by their nature or because of other circumstances, are perishable, subject to devaluation or otherwise in jeopardy . . .

50.      The standards applicable to an injunction apply to the relief to be granted under section 1519(a). See 11 USC. § 1519(e). After recognition, MtGox will be entitled to the protection of the automatic stay of section 362 pursuant to section 1521(a)(1). It is therefore appropriate to issue provisional automatic stay relief pending the issuance of the Recognition Order, to ensure that MtGox, its United States assets, and the Japan Proceeding are protected pending issuance of that stay.

51.      Section 1519(a) of the Bankruptcy Code expressly permits the Court to grant "relief of a provisional nature" from the time of a petition for recognition until the time that the court rules on that petition, where such relief is "urgently needed to protect the assets of the debtor or the interest of the creditors." 11 USC. § 1519(a). Additionally, pursuant to section 105(a), this Court has broad authority to "issue any order . . . that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 USC. § 105(a).

52.      In order to receive automatic relief on a provisional basis pursuant to sections 105(a) and 1519(a) of the Bankruptcy Code, a debtor must comply with the standards governing the issuance of a preliminary injunction. See, e.g., In re Vitro, 455 B.R. 571 (Bankr. N.D. Tex. 2011) (citing In re Commonwealth Oil Refining Co., 805 F.2d 1175, 1188 (5th Cir. 1986) ("injunctions issued under § 105 outside of a plan of reorganization may be granted only 'under the usual rules for the issuance of an injunction.'")); In re Ho Seok Lee, 348 B.R. 799, 802 (Bankr. W.D. Wash. 2006) (noting that section 1519 authorizes discretionary relief during the

period between petition filing to petition recognition); <u>see also</u> <u>In re Wellpoint Sys. Inc.</u>, No. 11-10423 (Bankr. D. Del. Feb. 11, 2011) (applying preliminary injunction requirements and granting provisional relief to debtor pursuant to sections 105 and 1519); <u>In re Crystallex Int'l Corp.</u>, No. 11-14074 (Bankr. D. Del. Dec. 28, 2011) (same); <u>In re Grant Forrest Prods. Inc.</u>, No. 10-11132 (Bankr. D. Del. Apr. 19, 2010) (same).  For the reasons set forth above, Petitioner has established that he is likely to succeed on his petition to have the Japan Proceeding recognized as a foreign main proceeding and himself recognized as foreign representative. Further, as set forth below, MtGox will suffer irreparable harm is such relief is not granted and all equities and public policy weigh in favor of the granting of such relief.

### A.    <u>MtGox Satisfies All Requirements for Injunctive Relief.</u>

53.    MtGox has complied with all of the requirements for an injunction, and should therefore be afforded provisional relief, including in the form of an automatic stay as to the US Litigation Matters.  Generally, in deciding whether to grant an injunction, courts in the Fifth Circuit consider four factors: (i) whether the movant has shown a reasonable probability of success on the merits; (ii) whether the movant will be irreparably injured by denial of the relief; (iii) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (iv) whether granting the preliminary relief will be in the public interest. <u>In re Vitro</u>, 455 B.R. at 580 (citing <u>Winter v. Natural Resources Defense Council, Inc.</u>, 555 U.S. 7 (2008); <u>see also</u> <u>In re Commonwealth Oil.</u>, 805 F.2d at 1188.

### 1.    <u>Likelihood of Success on the Merits.</u>

54.    Because it is likely that MtGox's Japan Proceeding will be recognized as a foreign main proceeding, at which point the section 362 automatic stay will protect its US assets, success on the merits has been demonstrated.  <u>See, e.g.</u>, <u>In re MMG LLC</u>, 256 B.R. 544, 552

(Bankr. S.D.N.Y. 2000) (likelihood of success on merits was demonstrated where it was likely that court would grant comity to debtor's foreign insolvency proceeding).

2. <strong><u>Irreparable Harm.</u></strong>

55. MtGox will face immediate and irreparable harm if the US Litigation Matters are not stayed. If the CoinLab Matter is allowed to proceed in any respect, MtGox personnel will need to spend substantial time preparing for and attending depositions, preparing responses to discovery requests, and working with counsel and experts to draft expert reports. See <u>Nevada Power Co. v. Calpine Corp.</u> (<u>In re Calpine Corp.</u>), 365 B.R. 401, 410 (S.D.N.Y. 2007) (enjoining creditor from litigating against Chapter 11 debtor's guarantor because debtor would be forced to aid guarantor's defense, causing "significant burden and distraction of key employees from its restructuring efforts"); <u>In re R&G Fin. Corp.</u>, 441 B.R. at 411 (Bankr. D.P.R. 2010) (irreparable harm found where "[d]ebtor would be the entity legally and financially responsible in providing not only all the legal costs of [subsidiary's] defense . . . but also its limited managerial resources would also be diverted in assisting towards the preparation for such proceedings"); <u>In re Japan Airlines Corp.</u>, No. 10-10198 (Bankr. S.D.N.Y. Jan. 28, 2010) (irreparable harm shown where Chapter 15 debtor's US assets could be subject to creditors' efforts to control or possess such assets).

56. In short, MtGox's discovery preparation must begin now in the CoinLab Matter and must defend a TRO motion on March 11, 2014 in the Class Action if there is no provisional stay, even though the automatic stay will be in place upon recognition of the Japan Proceeding in the near future. This will further distract for the reorganization effort and result in a diversion of resources that otherwise could be available for the benefit of all creditors. It has been consistently held that "the premature piecing out of property involved in a foreign liquidation proceeding constitutes irreparable injury." <u>In re Lines</u>, 81 B.R. 267, 270 (Bankr. S.D.N.Y. 1988).

-21-

It has also been held that harm to an estate exists where the orderly determination of claims and the fair distribution of assets are disrupted. See Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B., 825 F.2d 709, 714 (2d Cir. 1987). Finally, irreparable harm has been found where allowing litigation to go forward would (i) threaten the assets of a foreign estate, (ii) subject a foreign representative to a default judgment, and/or (iii) divert funds needed for the purpose of maximizing value for the estate's creditors. In re Gercke, 122 B.R. 621, 626 (Bankr. D.D.C 1991).

57. Under the Tokyo Court Orders, the stay that is in place in the Japan Proceeding extends to all assets wherever located, including assets located in the United States. The Petitioner is requesting this Court's assistance to stay any action or proceedings by creditors in the United States, so that the reorganization goals that are intrinsic of the Japan Proceeding can be fulfilled.

58. MtGox's successful rehabilitation requires that the claims of all creditors, wherever situated, be resolved as part of the foreign proceeding. Allowing the US Litigation Matters to go forward thus prejudices other creditors of MtGox, whose claims will be heard in the Japan Proceeding. Given MtGox's current liquidity concerns, all potential savings are necessary to MtGox's reorganization effort and cannot be diverted to litigation costs at this time. MtGox also requires the stewardship of its key employees in the Japan Proceeding. These employees, including Karpeles, cannot be distracted by attending dispositions, preparing discovery, and otherwise overseeing the US Litigation Matters. In short, if the relief sought in the Application is not granted, it is likely that MtGox's estate will be substantially diminished.

### 3. Balance of Hardships.

59. The balance of the hardships decidedly favors MtGox, because the other parties to the US Litigation Matters will suffer little or no harm as a result of the requested stay of the

proceedings. This Court will simply be providing the same relief to MtGox that will be granted upon recognition of the Japan Proceeding pursuant to section 1520(a)(1). As a result, plaintiffs in the US Litigation Matter will also benefit from the requested provisional stay because it will also prevent the wasting of their resources before the stay under section 1520(a)(1) comes into place. Certainly, no creditor or party to the US Litigation Matters will be harmed if MtGox is granted the full benefit of a breathing period to allow it to focus on its restructuring efforts without the distraction that would result if the US Litigation Matters were to proceed. See also In re W.R. Grace & Co., 386 B.R. 17, 33 (Bankr. D. Del. 2008) (weighing potential harms and finding that "relative hardship of the parties favors the [d]ebtors").

### 4. Public Interest.

60. Granting the Application is clearly in the public interest because provisional relief requested by the Petitioner advances the express purpose of Chapter 15. See 11 USC. §§ 1501(a)(1)(B)-(a)(4). ("The purpose of this chapter is to . . . provide effective mechanisms for dealing with cases of cross-border insolvency with the objectives of cooperation between the courts and other competent authorities of foreign countries involved in cross-border insolvency cases . . . [and] protection and maximization of the value of the debtor's assets."); see also In re Integrated Health Servs., Inc., 258 B.R. 96, 108 (Bankr. D. Del. 2000) ("In the context of a bankruptcy case, promoting a successful reorganization is one of the most important public interests.").

61. Accordingly, it is respectfully requested that this Court apply the automatic stay, on a provisional basis, to temporarily halt the US Litigation Matters to protect MtGox's assets in the United States pending recognition.

770349-v1\DALDMS

IV.      **THE PROPOSED NOTICE AND HEARING ON RECOGNITION.**

62.      Bankruptcy Rule 1011(b) provides that a party be provided 21 days' notice of the filing of a Chapter 15 petition. Fed. R. Bankr. P. 1011(b).  Bankruptcy Rule 2002(q)(1) provides that a party is to be given 21 days' notice of a hearing to consider granting the relief requested in a Chapter 15 petition.  Fed. R. Bankr. P. 2002(q)(1).  Bankruptcy Rule 9007 permits the Court to prescribe the time, form and manner in which notice shall be given.  Fed. R. Bankr. P. 9007.

63.      Bankruptcy Rule 1011(b) also provides that any party objecting to a petition for recognition under Chapter 15 shall file such objection within 21 days of that upon which notice is served.  Fed. R. Bankr. 1011(b).  The Petitioner proposes to serve notice of the Petition within three business days of the date of the order granting the Application.

64.      As set forth in the Application, the Petitioner requests that the Recognition Hearing be scheduled for a date to be determined and agreed upon by the Court and Petitioner on or after March 31, 2014.  This will provide the required 21 days' notice and will allow sufficient time for objections to the Petition, if any, to be received in advance of the hearing.  Notice of the Recognition Hearing, together with any order granting the Application, will be provided to: (i) the Debtor; (ii) Mr. Nobuaki Kobayashi, as supervisor and examiner of MtGox; (iii) all parties to the US Litigation Matters; (iv) the Office of the United States Trustee of the Northern District of Texas; and (v) such other parties as the Court may direct (collectively, the "Notice Parties").  The Petitioner proposes to notify the Notice Parties by e-mail, facsimile, and/or express mail.

65.      Such notice meets the requirements of Rule 2002(q) because it is provided to the required parties within the proscribed time period, and it is also in keeping with the Court's "discretion to set the particularities of notice procedures" pursuant to Rule 9007.  In re Pierce, 435 F.3d 891, 892 (8th Cir. 2006).

-24-

## <u>CONCLUSION</u>

66.     The Petitioner respectfully submits that the Petition satisfies the requirements for the recognition of Mr. Karpeles, as MtGox's "foreign representative," and for recognition of the Japan Proceeding as its "foreign main proceeding." The Petitioner further respectfully requests entry of an order provisionally applying the automatic stay of section 362 to the US Litigation Matters pursuant to sections 105(a) and 1519(a) pending issuance of the Recognition Order, as well as scheduling the Recognition Hearing and approving the form and manner of notice to interested parties.

Dated:   March 9, 2014                          Respectfully submitted,
         Dallas, Texas

                                                **BAKER & McKENZIE LLP**

                                                By:   /s/ *David W. Parham*
                                                       David W. Parham
                                                       State Bar No. 15459500
                                                       John Mitchell
                                                       State Bar No. 24056313
                                                       2300 Trammell Crow Center
                                                       2001 Ross Avenue
                                                       Dallas, Texas 75201
                                                       Telephone: (214) 978-3000
                                                       Facsimile: (214) 978-3099
                                                       Email:  david.parham@bakermckenzie.com
                                                       Email:  john.mitchell@bakermckenzie.com

                                                       - and -

                                                       Erin E. Broderick *(pro hac vice pending)*
                                                       Illinois Bar No. 6295974
                                                       300 East Randolph Drive, Suite 5000
                                                       Chicago, Illinois 60602
                                                       Telephone: (312) 861-8000
                                                       Facsimile: (312) 861-2899
                                                       Email:  erin.broderick@bakermckenzie.com

                                                       *Attorneys for the Petitioner Robert Marie*
                                                       *Mark Karpeles, Foreign Representative of*
                                                       *MtGox Co., Ltd., a/k/a MtGox KK*