Steven L. Woodrow (admitted *pro hac vice*)
Edelson PC
999 West 18th Street, Suite 3000
Denver, Colorado 80202
Telephone: (303) 357-4878
Facsimile: (303) 446-9111
Email: swoodrow@edelson.com

Jay Edelson (admitted *pro hac vice*)
Alicia Hwang (admitted *pro hac vice*)
Edelson PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378
Email: jedelson@edelson.com
Email: ahwang@edelson.com

Scott B. Kitei (admitted *pro hac vice*)
Honigman Miller Schwartz and Cohn LLP
2290 First National Building
660 Woodward Avenue
Detroit, Michigan 48226-3506
Telephone: (313) 465-7000
Facsimile: (313) 465-8000
skitei@honigman.com

Robin E. Phelan, TBN 15903000
Stephen Manz, TBN 24070211
Haynes and Boone, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone: 214.651.5000
Facsimile: 214.651.5940
Email: robin.phelan@haynesboone.com
Email: stephen.manz@haynesboone.com

Counsel for Gregory Greene and Joseph Lack

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 15 |
| | § | |
| MtGox Co., Ltd. (a/k/a MtGox KK) | § | Case No. 14-31229-sgj-15 |
| | § | |
| Debtor in a Foreign Proceeding | § | |
| | § | |
| | § | |

### CREDITORS GREGORY GREENE AND JOSEPH LACK'S MOTION
### FOR TERMINATION OF PROVISIONAL RELIEF

**AN EXPEDITED HEARING HAS BEEN REQUESTED TO BE HELD ON TUESDAY APRIL 1, 2014 AT 1:30 PM. IF DENIED, THE FOLLOWING IS APPLICABLE.**

**PURSUANT TO LOCAL BANKRUPTCY RULE 4001-1(B), A REPSONSE IS REQUIRED TO THIS MOTION, OR THE ALLEGATIONS IN THE MOTION MAY BE DEEMED ADMITTED, AND AN ORDER GRANTING THE RELIEF SOUGHT MAY BE ENTERED BY DEFAULT.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT EARLE CABELL FEDERAL BUILDING 1100 COMMERCE ST., RM 1254, DALLAS, TX 75242 BEFORE CLOSE OF BUSINESS ON APRIL 8, 2014 WHICH IS AT LEAST 14 DAYS FROM THE DATE OF SERVICE HEREOF. A COPY SHALL BE SERVED UPON COUNSEL FOR THE**

**MOVING PARTY AND ANY TRUSTEE OR EXAMINER APPOINTED IN THE CASE. ANY RESPONSE SHALL INCLUDE A DETAILED AND COMPREHENSIVE STATEMENT AS TO HOW THE MOVANT CAN BE "ADEQUATELY PROTECTED" IF THE STAY IS TO BE CONTINUED.**

# TABLE OF CONTENTS

I. <u>INTRODUCTION</u> ........................................................................................................... 1

II. <u>JURISDICTION AND VENUE</u> .................................................................................. 3

III. <u>BACKGROUND</u> ......................................................................................................... 3

   A. **Mt. Gox: Once the Apex of Bitcoin Exchanges** ................................................. 3

   B. **Early Signs of Trouble Are Met With Repeated Assurances That Problems Were Being Resolved** ................................................................................................... 4

   C. **The Foreign Representative Seeks This Court's Recognition and Protection Via Chapter 15 of the Bankruptcy Code** ................................................................. 6

   D. **U.S. Creditors Are Provided Incorrect and Incomplete Information Regarding Their Holdings, the Debtor's Assets, and the Circumstances Surrounding the Debtor's Supposed Insolvency** ........................................................................... 8

IV. <u>RELIEF REQUESTED</u> ............................................................................................. 9

V. <u>ARGUMENT</u> ................................................................................................................ 9

   A. **The Foreign Representative Has Not Demonstrated a Reasonable Likelihood of Success on the Merits** .................................................................................... 10

   B. **The Debtor's U.S. Customers Will Be Irreparably Harmed if the TRO Order Remains in Place** ............................................................................................. 14

   C. **The Debtor Will Not Face Any Immediate or Irreparable Harm if the Class Action Litigation Is Not Stayed** ..................................................................... 15

   D. **Terminating the TRO Order Is In the Public Interest** ................................... 17

VI. <u>NOTICE</u> .................................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

In re Commonwealth Oil Refining Co., 805 F.2d 1175, 1188 (5th Cir. 1986) ............................. 9

In re Japan Airlines Corp., Case No. 10-10198 ("JAL") ............................................. 16

In re Ran, 607 F.3d 1017, 1024 (5th Cir. 2010) .......................................................... 11

In re Vitro, 455 B.R. 571 (Bankr. N.D. Tex. 2011) ..................................................... 9

In re Worldwide Educational Services, Inc., 494 B.R. 494 (Bankr. C.D. Cal. 2013) ................. 15

Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008) ..................................... 10

**Statutes**

11 U.S.C. § 1522 ............................................................................................................. 3

11 U.S.C. § 1522(a) ...................................................................................................... 10

28 U.S.C. § 1410 ............................................................................................................ 3

28 U.S.C. § 1410(a) ...................................................................................................... 10

28 U.S.C. § 1410(b) ...................................................................................................... 11

Gregory Greene ("Greene") and Joseph Lack ("Lack") (collectively the "Movants"), by their attorneys, Edelson P.C., Honigman Miller Schwartz and Cohn LLP, and Haynes and Boone LLP, for this *Creditor Gregory Greene's Motion for Termination of Provisional Relief* (the "Motion") respectfully states as follows:

## I. INTRODUCTION

1.       This Chapter 15 proceeding involves the catastrophic collapse of MtGox Co., Ltd. (a/k/a MtGox KK) (the "Debtor")—at one time the largest Bitcoin exchange in the world. Allowing members to buy, sell, convert, and keep their bitcoins and Fiat Currency, from 2010 right up until its shutdown in February 2014, the Debtor thrived as a major player in the rapidly developing world of crypto-currency: facilitating hundreds of thousands (if not millions) of user transactions and—per its own representations—securely maintaining hundreds of thousands of bitcoins and tens of millions of dollars (and other currencies) on behalf of its exchange members. This collapse led to the filing of a petition for the commencement of a civil rehabilitation proceeding in Japan under Japanese Law (the "Japan Proceeding"), which is currently pending before the Twentieth Civil Division of the Tokyo District Court.

2.       Robert Maries Mark Karpeles, the Debtor's foreign representative (the "Foreign Representative") and CEO, has come to the United States and obtained provisional relief on the basis of a declaration which fails to disclose material facts, including a basis for this District being a proper venue for the Chapter 15 case, yet the Foreign Representative refuses to come to the United States to allow parties in interest to question him regarding the declaration and subsequent events relevant to this chapter 15 proceeding.

3.       This Motion concerns the ability of this Court to adequately protect creditors amid what has emerged as a concerning lack of transparency.  The Foreign Representative has been

accused of serious improper conduct, including fraud, and his recognition as the Debtor's foreign representative would be highly inappropriate. He is of questionable character, and is conflicted since he is accused of misappropriating assets of the Debtor. At minimum, he is guilty of gross mismanagement, and his affidavit fails to disclose relevant information to the point where it can be considered misleading. For example, the Debtor, under the control of the Foreign Representative, has now admitted that it "discovered" almost 200,000 bitcoins worth more than a hundred million dollars that it previously thought were lost, yet despite making this discovery prior to filing the Chapter 15 petition, the Foreign Representative made no mention of it in any pleadings filed with the Court.

4.     There is currently pending in the Class Action Litigation (as defined below) in the United States District Court for the Northern District of Illinois a request for an order freezing the Debtor's United States assets to protect the Debtor's creditors located in the Unites States. However, the District Court is unable to take such action because of the temporary relief granted by this Court.

5.     Although it appears that the Debtor's registered office is in Japan, the Foreign Representative's declaration does not present sufficient facts to demonstrate that Japan is the Debtor's center of main interests. The ultimate burden of proof to establish the center of main interests remains with the Foreign Representative, and there is no indication that the Debtor's principal assets are in Japan, or that the totality of the circumstances supports Japan as the center of main interests.

6.     In light of these additional facts, interim relief is inappropriate and, indeed, redundant of the freeze order which will be entered in the Class Action Litigation if provisional relief is terminated in this Court. The foreign representative has identified no harm that will

befall creditors if provisional relief is terminated, yet continuation of provisional relief impedes the ability of United States creditors to obtain a determination by a United States District Court of their claims and to otherwise protect their interests. The standards for a temporary injunction have not been met and the provisional relief previously granted by this Court should be terminated.

## II. JURISDICTION AND VENUE

7.      This Court has jurisdiction over this Motion under 28 U.S.C. § 1334.

8.      For purposes of this Motion only, venue is proper pursuant to 28 U.S.C. § 1410.

9.      The statutory basis for the relief request in this Motion is 11 U.S.C. § 1522.

## III. BACKGROUND

### A.   Mt. Gox: Once the Apex of Bitcoin Exchanges

10.     Introduced in early 2009, Bitcoin has quickly become a recognized digital commodity. Similar in certain respects to paper money (*e.g.*, Dollars, Euros, etc.), bitcoins can be used to purchase and sell goods and services through a number of websites or from any merchant that accepts them.[1] See *Declaration Steven L. Woodrow In Support of Creditor Gregory Green's Motion for Termination of Provisional Relief* (the "Woodrow Declaration," attached hereto as **Exhibit B**) at ¶ 3.  But the similarities generally end there. For instance, whereas with paper money a government decides when to print and distribute, bitcoins are mined by individuals through a complex computer program and are bought and sold by consumers through private "exchanges." Id. at ¶ 4.

---

[1]      For example, overstock.com now accepts Bitcoin as payment, and consumers can access Bitcoin ATMs in certain locations in Texas, Massachusetts, and New Mexico. S*ee* http://money.cnn.com/2013/12/20/technology/innovation/overstock-bitcoin/ (last visited March 4, 2014)), attached hereto as **Exhibit C**, and http://www.usatoday.com/story/money/business/2014/02/19/bitcoin-atm-austin/5623387/ (last visited March 4, 2014)), attached hereto as **Exhibit D**.

11. Prior to shutting down, the Debtor had boasted that it operated the "world's most established Bitcoin exchange," handling "over 80% of all Bitcoin trade" worldwide. *See* Mt. Gox Website Landing Page ("Landing Page") a true and accurate copy of which is attached to the Woodrow Declaration as Exhibit A. The Debtor represented on its website and through its Terms of Use that its members could "quickly and securely trade bitcoins with other people around the world with [their] local currency." Id. To use the exchange a consumer would register for an account with the exchange at www.mtgox.com and, once registered, users (called "members") could "trade" Bitcoin using the Debtor's online trading platform. Woodrow Declaration at ¶ 5.

12. The Debtor also provided members "with the ability to securely store Bitcoins in a virtual 'vault' for safe keeping." Id. at ¶ 6. In signing up for an account, the Debtor expressly promised that its website would "always [be] on," that users could "[b]uy and sell Bitcoin 24/7/365 with the world's most sophisticated trading platform," and that it would keep each member's bitcoins and Fiat Currency in the member's account, in the member's name, and on the member's behalf. See Landing Page.

**B. Early Signs of Trouble Are Met With Repeated Assurances That Problems Were Being Resolved**

13. Though only company insiders know exactly when the trouble began, on February 4, 2014, the Debtor announced through its online Support Desk that it was "currently experiencing a problem where some bitcoin withdrawals are not being transferred correctly, affecting a limited number of users." See "Support Desk Updates," true and accurate copies of which are attached to the Woodrow Declaration as Exhibit C (the "Support Desk Updates"). On February 7, 2014, the Debtor announced that "[i]n order for our team to resolve the withdrawal issue it is necessary for a temporarily [*sic*] pause on all withdrawal requests . . ." and that "[a]ll

bitcoin withdrawal requests will be on pause, and the withdrawals in the system will be returned to your MtGox wallet and can be reinitiated once the issue is resolved." <u>Id</u>.

14.     On February 10, 2014, the Support Desk revealed that the Debtor had detected "unusual activity" with respect to its Bitcoin wallets and had been investigating a technical issue, called "transaction malleability," which appeared to involve the ability of third parties to manipulate certain transactions. The Debtor assured members that "MtGox will resume bitcoin withdrawals to outside wallets once the issue" had been addressed.  <u>Id</u>.

15.     On or around February 15, 2014, the Debtor announced that it was "going to have a 6-hour downtime" on deposits and that it would be "doing extensive testing before bitcoin withdrawals are reactivated." <u>Id</u>.  On February 17, 2014, the Support Desk announced "we have now implemented a solution that should enable withdrawals" and that "Mt. Gox should be able to resume withdrawals soon."  <u>Id</u>.  In an interview that day with *The Wall Street Journal*, the Foreign Representative—the Debtor's owner and CEO—refused to state when exactly the exchange would resume withdrawals.[2]

16.     On February 19, 2014, the Debtor announced that it had moved back to its prior offices in Tokyo. The next day, the Support Desk notified members that the move and technical challenges had "pushed back our progress" but again assured customers that "we are working on re-initiating bitcoin withdrawals."  <u>See</u> Support Desk Updates.

17.     As exchange members clamored for answers and waited patiently for withdrawals to be restored, on February 24, 2014 the Debtor's website "went dark," denying members the

---

[2]      <u>See</u> http://online.wsj.com/news/articles/SB10001424052702304899704579388483531937144?mg=reno64-wsj&url=http%3A%2F%2Fonline.wsj.com%2Farticle%2FSB10001424052702304899704579388483531937144.html (last visited March 4, 2014.), a copy of which is attached to the Woodrow Declaration as <u>Exhibit D</u>.

ability to even see their balance. On February 27, 2014, Movants filed their putative *Class Action Complaint and Demand for Jury Trial* in the United States District Court for the Northern District of Illinois (the "Class Action Litigation," and its plaintiffs the "Class Action Plaintiffs") against the Debtor, the Foreign Representative (in his individual capacity), Tibanne KK, and MtGox Inc. (Case No. 1:14-cv-1437) for damages and injunctive relief.

18.    The next day, on February 28, 2014, the Debtor filed a petition for the commencement of a civil rehabilitation proceeding in Japan under Japanese Law (the "Japan Proceeding"), which is currently pending before the Twentieth Civil Division of the Tokyo District Court.

### C. The Foreign Representative Seeks This Court's Recognition and Protection Via Chapter 15 of the Bankruptcy Code

19.    Ten days following its initiating of Japan Proceeding, on March 10, 2014 (the "Petition Date"), the Foreign Representative filed the *Verified Petition for Recognition and Chapter 15 Relief* [Docket No. 2] (the "Petition") under Chapter 15 of title 11 of the United States Code (the "Bankruptcy Code") seeking recognition of the Japan Proceeding as a foreign main proceeding, and recognition individually as the Debtor's foreign representative.

20.    Also on the Petition Date, the Foreign Representative filed his *Emergency Application for an Order Granting Provisional Relief Pursuant to Sections 105(a) and 1519 of the Bankruptcy Code, Scheduling Recognition Hearing, and Specifying Form and Manner of Notice* (the "TRO Application") [Docket No. 4], the *Memorandum of Law in Support of Petition for Recognition and Application for Provisional Relief, Scheduling Hearing, and Approving Form and Manner of Notice* (the "TRO Memorandum") [Docket No. 6], and the *Declaration of Robert Marie Mark Karpeles* in support of the Petition (the "Karpeles Declaration") [Docket No. 3].

21.     The sole support offered in support of these emergency filings was the Karpeles Declaration.  As the CEO and designer of the Debtor's back-end programming, the Foreign Representative had been appointed the Debtor's foreign representative. The Karpeles Declaration asserted that due to the technical issue, the Debtor had lost all or almost all of its exchange members' bitcoins and Fiat Currency and indicated that the Debtor had commenced the Japan Proceeding.  Further, and although his declaration was silent with respect to any assets that would support venue in this district, a cover sheet filed by Mt. Gox's attorneys asserted that assets consisting of backup data located on a server existed somewhere in Dallas. This contrasts with the filings in Japan which make clear that the Debtor had informed the Japanese court that the company's main U.S. assets were in the form of unspecified "cash deposits." See Exhibit F to the Karpeles Declaration at ¶ 5.

22.     At the emergency hearing held by this Court on March 10, 2014, the Court accepted the representative's averments regarding the Debtor's insolvency as well as the explanation by the Debtor's lawyers that the debtor's primary assets in the United States consisted of back-up data stored on servers in the Dallas area.  The Court entered the provisional stay with respect to the debtor, denied the Debtor's request to extend the stay as to non-debtors, and scheduled the Debtor's recognition hearing for April 1, 2014.  *Order Granting Application for Provisional Relief, Scheduling Recognition Hearing, and Specifying Form and Manner of Notice* (the "TRO Order") [Docket No. 13].

23.     The Court in the Class Action Litigation has entered an order freezing the assets of the non-Debtor defendants.  The Court has further indicated that it could not enter such an order with respect to the Debtor's assets in light of the provisional relief granted in this Chapter 15 case.

**D. U.S. Creditors Are Provided Incorrect and Incomplete Information Regarding Their Holdings, the Debtor's Assets, and the Circumstances Surrounding the Debtor's Supposed Insolvency**

24. To date, the level of contradictory statements and lack of transparency being afforded to U.S. creditors is alarming. For example, although the Debtor's attorneys insist that back-up data located on a server somewhere in Dallas is the Debtor's primary asset in the United States, that representation is contradicted by the Japan Proceeding, wherein the court was informed that the Debtor's primary assets in the United States consist of "cash deposits." Woodrow Declaration at ¶ 18. The only information about the location of the Debtor's servers that has been received came in the form of a forwarded email indicating that the servers are in Dallas with Softlayer Data Services. Id. at ¶ 19. No description of the backup data, the number of servers, their type, make, or model, has been provided. Id.

25. Furthermore, since the Petition Date, the Debtor's website has supposedly come back "online" to ostensibly allow exchange members to locate and determine their holdings on the exchange. Woodrow Declartion at ¶ 21. The chief problem with this is that the data is woefully incomplete. For example, Plaintiff Joseph Lack in the Class Action Litigation transferred $40,000 to the Debtor in late-January 2014 and his bank confirmed, through Mizuho Bank, Ltd., that the Debtor had received the money (and therefore Mizuho could not reverse the transaction). Mr. Lack's $40,000 is not reflected in his online account, and the same holds true for dozens if not hundreds of other United States creditors. Id.

26. Additionally, following widespread reports of suspicious movements on the Block Chain[3] on March 7, 2014, the Foreign Representative released a statement on March 20, 2014 that the debtor had "discovered" a bitcoin wallet containing approximately 200,000 bitcoins

---

[3] The Block Chain is the public record of all Bitcoin transactions. It can be viewed at www.blockchain.info.

(approximate value $110,000,000 USD) while doing a review of its older accounts. Woodrow Declaration at ¶ 22. The Foreign Representative indicated that he began moving these bitcoins on March 7, 2014 supposedly for security reasons and that he notified the Japanese court of these "found" coins on March 10, 2014—the same day that the Debtor filed its Petition. Id. Curiously, despite executing the Karpeles Declaration on the Petition Date, and notwithstanding the fact he had supposedly uncovered the existence of these bitcoins three days earlier on March 7, not a single pleading filed by the Foreign Representative on the Petition Date acknowledged this discovery, and his counsel neglected to apprise the Court of the supposed 200,000 found bitcoins during the emergency hearing. Id.

27. As such, from the viewpoint of the Debtor's United States creditors, the proceedings have been marked by a lack of transparency.

## IV. RELIEF REQUESTED

28. Pursuant to this Motion, Movants seek entry of an Order, substantially in the form attached hereto as **Exhibit A**, terminating the provisional emergency relief granted to the Foreign Representative in the TRO Order with respect to the Class Action Litigation.

## V. ARGUMENT

29. To receive the benefits of the automatic stay prior to the entry of an order granting a petition for recognition, a debtor must comply with the standards governing the issuance of a preliminary injunction. See, e.g., In re Vitro, 455 B.R. 571 (Bankr. N.D. Tex. 2011) (citing In re Commonwealth Oil Refining Co., 805 F.2d 1175, 1188 (5th Cir. 1986)). In deciding whether to grant an injunction, courts in the Fifth Circuit consider: (i) whether the movant has shown a reasonable likelihood of success on the merits; (ii) whether the movant will be irreparably injured by the denial of the relief; (iii) whether granting preliminary relief will result in even

greater harm to the nonmoving party; and (iv) whether granting preliminary relief will be in the public interest. Id. at 580 (citing Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008)); see also In re Commonwealth Oil, 805 F.2d at 1188.

30.     Section 1522(c) of the Bankruptcy Code provides that with respect to provisional relief granted under section 1519 or 1521, "The court may, at the request of the foreign representative or an entity affected by relief granted under section 1519 or 1521, or at its own motion, modify or terminate such relief."  For the court to either grant or modify such relief, the interests of the creditors and other interested entities, including the debtor, must be sufficiently protected.  11 U.S.C. § 1522(a).

31.     Applied here, not only has the Foreign Representative failed to satisfy any of the elements a debtor must meet to receive the benefits of the automatic stay prior to the Court granting the Petition, as explained further below vacating the TRO Order with respect to the Class Action Litigation is necessary to protect all of the Debtor's creditors and other parties in interest located in the United States.

**A.    The Foreign Representative Has Not Demonstrated a Reasonable Likelihood of Success on the Merits.**

32.     By failing to assert meaningful facts to support the Petition, the Foreign Representative has not demonstrated a reasonable likelihood of success on the merits that the Court will recognize the Japan Proceeding as a foreign main proceeding.

33.     First, the Foreign Representative has neglected to assert any facts to support this Court as the proper venue for the Petition.  28 U.S.C. § 1410(a) provides that a chapter 15 case may be commenced in the district where the debtor has its principal place of business or principal assets in the United States.  Despite this requirement, nowhere in the Petition or the TRO Application has the Foreign Representative mentioned *any* assets or business operations

located in Texas, let alone proffer facts demonstrating such assets are the Debtor's principal assets.

34.     Indeed, it appears from the Japanese court's order appointing Mr. Karpeles as the Foreign Representative that the Debtor informed the Japanese court that the Debtor's principal assets in the United States consist of cash deposits—not backup data located on unidentified servers.  Furthermore, after repeated requests over the past two weeks for such information by Movants' lawyers and the U.S. Trustee's office (in addition to the fact that Debtor's counsel was required to have such information to assert venue when filing the Petition in the first place), the only information about assets located in the U.S. came in the form of a forwarded email indicated that the Debtor's servers are in Dallas with Softlayer Data Services.  No description of the backup data, the number of servers, their type, make, or model, was provided.  Should the Debtor prove incapable of demonstrating that its principal place of business or assets in the United States is in the Northern District, venue here is improper.

35.     Second, even if venue is proper in this Court, the Foreign Representative has not provided a sufficient analysis to support his assertion that Japan is the Debtor's center of main interests ("COMI").  The Fifth Circuit considers the following factors, among others, in determining a debtor's COMI: "the location of the debtor's headquarters; the location of those who actually manage the debtor; the location of the debtor's primary assets; the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and/or the jurisdiction whose law would apply to most disputes."  In re Ran, 607 F.3d 1017, 1024 (5th Cir. 2010).

36.     Despite acknowledging these factors, the Foreign Representative's COMI analysis was limited to conclusory assertions that the debtor's registered office is located in

Tokyo, Japan, and most of the debtor's personnel reside in Japan. TRO Memorandum at ¶ 46. The Foreign Representative fails to include any discussion about the location of the Debtor's primary assets, the location of the majority of the Debtor's creditors, or the jurisdiction whose law would apply to most disputes. These omissions are not surprising given a supermajority of the Debtor's customers, and an unknown percentage of the Debtor's assets, are located outside of Japan. Without a meaningful analysis of these factors, the Foreign Representative cannot possibly demonstrate a likelihood of success on the merits. Put simply, the Petition does not meet the threshold for provisional relief because the location of the Debtor's assets and other critical information cannot be determined from the facts set forth therein.

37. Third, though the Foreign Representative filed this Chapter 15 case, he chose not to attend the initial hearing for approval of the TRO Application on the Petition Date, and he refuses to come to the United States for a deposition to defend and explain the facts asserted in the Petition and the Karpeles Declaration. TRO Memorandum at ¶ 13. By availing himself of the jurisdiction of this Court and filing the Karpeles Declaration, but refusing to testify in person regarding its contents, the Foreign Representative is setting a dangerous precedent for proposed Chapter 15 debtors to obtain the benefits of the automatic stay in United States courts without needing to come to the United States to support the relief sought.

38. The Foreign Representative's presence is particularly critical in this case because of the nature of the alleged wrongdoing and the intimate involvement of the Foreign Representative in what appears to be a highly complex financial crime. The Debtor's worldwide creditors allege that a massive fraud—perpetuated by the Foreign Representative himself—is

what led to the Debtor's downfall, and only the Foreign Representative himself will be able to sufficiently testify regarding the inner workings of the Debtor's management and operations.[4]

39.     For example, in the Karpeles Declaration, signed on the Petition Date, the Foreign Representative explained that the discovery on February 24, 2014 of a disappearance of 744,408 bitcoins was one of the primary reasons for the Debtor to become insolvent and file the Japanese Proceeding.  On March 20, 2014, however, a statement by the Foreign Representative posted on the Debtor's website (www.mtgox.com), a copy of which is attached to the Woodrow Declaration as Exhibit E (the "March 20th Statement"), indicates that on March 7, 2014, the Debtor confirmed that the company had "found" approximately 200,000 of the lost bitcoins (valued at approximately $110,000,000 USD) in "old wallets" and had notified its attorneys at Baker & McKenzie of the discovery.[5]

40.     Despite this revelation, neither the Petition nor any of the pleadings filed by the Foreign Representative on the Petition Date—which was held three full days following this purported discovery—make any mention of this substantial find.  Likewise, the Foreign Representative's attorneys failed to apprise the Court of this substantial find during the emergency hearing.  Such a lack of transparency falls well short of protecting U.S. creditors and frankly leaves the plaintiffs in the Class Action Litigation to wonder about what other critical details the Foreign Representative is not disclosing to this Court and its creditors.

---

[4]      Concurrently with the filing of this Motion, Greene is filing *Creditor Gregory Greene's Motion for an Order Pursuant to Bankruptcy Rule 2004 Compelling Deposition Testimony in the United States from the Foreign Representative*, in an effort to compel the Foreign Representative to come to the United States and address these issues.

[5]      A bitcoin wallet consists of a bitcoin address or set of addresses that can be used to store or transfer user bitcoins.

41.     In sum, it is manifestly irresponsible, if not flatly contrary to the public policy of the United States as dictated by Section 1506 of the Bankruptcy Code, to continue provisional relief on the basis of material omissions made by a foreign representative who is currently accused of fraudulent conduct and is apparently—by his own admission—guilty of gross mismanagement.[6]  The Debtor's request to recognize the Foreign Representative despite the loss of hundreds of millions of dollars' worth of bitcoins on his watch and the ensuing failure to disclose to this Court the recent discovery of more than a hundred million dollars of previously "lost" bitcoins is simply unconscionable, and recognizing the Foreign Representative under such circumstances is akin to a request that Custer be awarded recognition for his tactical decisions at Little Big Horn or that Bernie Madoff be honored for his "creative" money management strategies.[7]

## B. The Debtor's U.S. Customers Will Be Irreparably Harmed if the TRO Order Remains in Place

42.     The Debtor's U.S. customers, including Movants, will be irreparably harmed if the TRO Order remains in effect.  At present, "the current management of MtGox remains in place and is allowed to continue to operate its businesses as a debtor in possession."  TRO Application at ¶ 14.  As explained above, the Foreign Representative, the Debtor's CEO, has demonstrated his incompetence and stands accused of fraudulent conduct.  Under his watch

---

[6]     Put simply, that $110,000,000 worth of assets had simply been "misplaced" speaks volumes about the lack of effective management controls employed by the Foreign Representative when he was operating the Debtor as a bitcoin exchange.

[7]     To be sure, this is not the Foreign Representative's first run-in with the law.  Reports indicate that the Foreign Representative was found guilty of financial crimes involving a computer at some time when he was between 13 and 18 years old and received a three-month suspended sentence from a French Court. See Bitcoin King,: Mt. Gox CEO Mark Karpeles' History of Arrests, Firings, Daily Tech, http://www.dailytech.com/Bitcoin+King+Mt+Gox+CEO+Mark+Karpels+History+of+Arrests+Firings/article34442. htm, a copy of which is attached hereto as **Exhibit E**.

assets disappear (or are "misplaced") and then reappear without notice. By continuing the provisional relief, the Court is permitting the fox to continue guarding the hen house, or at minimum, placing an individual with an incentive to hide wrongdoing in charge of the investigation.

43.     The Foreign Representative also contends—without any support whatsoever—that by allowing the pending U.S. litigation to proceed, it will prejudice other creditors of the Debtor, whose claims will be heard in the Japanese Proceeding. TRO Application at ¶ 58. <u>See In re Worldwide Educational Services, Inc.</u>, 494 B.R. 494, 501-02 (Bankr. C.D. Cal. 2013) (denying a chapter 15 debtor's request for a provisional automatic stay, in part, where the foreign representative failed to show any specific reason why not granting provisional relief with respect to pending litigation would unfairly benefit the creditors that were party to such litigation).

44.     At present, the plaintiffs in the Class Action Litigation are seeking to protect the Debtor's assets located in the United States, and reach a determination as to the Debtor's liability to the class members, which appear to constitute the vast majority—if not all—of the Debtor's United States creditors. This benefits all creditors by taking control of the assets away from the untrustworthy Debtor and Foreign Representative. At the same time, the prompt adjudication of the Debtor's liabilities in the Class Action Litigation will enable the Debtor to better understand the scope of its worldwide liabilities and provide a judgment that can be recognized by the Japanese court. In addition, allowing the Class Action Litigation to proceed will expose the truth behind the actions that led to the Debtor's downfall, which will necessarily inure to the benefit all creditors worldwide.

**C. The Debtor Will Not Face Any Immediate or Irreparable Harm if the Class Action Litigation Is Not Stayed**

45.     Despite the Foreign Representative's claims, the Debtor will not face immediate or irreparable harm if the Class Action Litigation is not stayed.  The Foreign Representative claims that provisional relief is necessary "to preserve MtGox's assets and to allow MtGox a necessary breathing period for it to focus on its restructuring efforts without the distraction that would result if certain litigation currently pending in the United States were allowed to proceed." TRO Application at ¶ 17.  Not only does the Foreign Representative fail to detail the cost to the Debtor's estate of proceeding with the litigation, but the Debtor could save time and money by litigating the Class Action Litigation now, along with the other related defendants, instead of waiting until an indeterminate time in the future to duplicate the process at additional expense. Any distraction for the Debtor is illusory, however, as the Foreign Representative remains a defendant individually in the Class Action Litigation.  In addition, though the Debtor contends it needs a breathing period to focus on its restructuring efforts, it is Movants' understanding that the Debtor is still awaiting a determination by the Japanese examiner whether a restructuring is possible, or whether the Debtor will liquidate.  While that determination is pending, significant progress could be made in the Class Action Litigation regarding the location of assets and the liquidation of claims.

46.     The only Chapter 15 case cited by the Foreign Representative to supposedly demonstrate irreparable harm as a basis for granting injunctive relief is In re Japan Airlines Corp., Case No. 10-10198 ("JAL").  The Debtor fails, however, to point out several critical distinctions between this case and JAL, including that: (a) no creditors objected to the relief sought by the debtor in JAL; (b) neither the JAL debtors nor the foreign representative were being accused of fraud, let alone a fraud that directly led to the debtor's bankruptcy filing; and

(c) the debtor in JAL actually provided evidence regarding its assets, liabilities, and global business operations—in sharp contrast to than the Foreign Representative in this case.

47. On balance, the costs to the Debtors of proceeding with the Class Action Litigation are greatly outweighed by the interests of creditors and the fact that these costs will ultimately be incurred in some forum. As the Foreign Representative acknowledges, "MtGox's successful rehabilitation requires that the claims of all creditors, wherever situated, be resolved as part of the foreign proceeding." TRO Memorandum at ¶ 58. Not only will proceeding with the Class Action Litigation help determine the Debtor's global universe of creditors, but freezing the Debtor's assets in the United States will protect all parties in interest, including the Debtor and all creditors, until such time as the appropriate Court rules on the Petition.

### D. Terminating the TRO Order Is In the Public Interest

48. In asserting that the TRO Application was in the public's interest, the only argument advanced by the Foreign Representative is that "Granting the Application is clearly in the public interest because provisional relief requested by the Petitioner advances the express purpose of Chapter 15." TRO Memorandum at ¶ 60. Here again, the Foreign Representative fails to provide any facts to support his arguments. At least one recent court examining this issue ruled that such baseless assertions do not satisfy the necessary requirements for the granting of the provisional automatic stay. See In re Worldwide Educational Services, Inc., 494 B.R. at 501-02 (stating that ". . . the Liquidator makes no factual showing that granting provisional relief would be in the public interest and essentially argues that Section 1519 relief should always be granted in Chapter 15 cases because this would further the goals of Chapter 15. The court concludes that this cannot be the case as a matter of general policy because the court must consider the public consequences of granting or denying an injunction.").

49.     There are, in fact, several reasons why a continuance of the automatic stay is not in the public interest.  As discussed above, the dearth of facts in the Debtor's Petition raises serious doubts about, among other things, whether: (a) venue is proper in this Court; (b) Japan is the Debtor's center of main interests; (c) it is proper to keep Mr. Karpeles as the Foreign Representative; and (d) the Foreign Representative is being forthcoming about the Debtor's assets and liabilities, as well as the facts and circumstances leading up to the Japan Proceeding.

50.     The simple truth is that by allowing the stay to continue—especially in a case involving allegations of fraud against the Debtor and the Foreign Representative—the Court is doing a disservice not only to the Debtor's creditors in the United States, but to all of the Debtor's creditors worldwide.  The purpose of Chapter 15 is to encourage comity between courts in multiple countries.  Chapter 15 is not meant to avail a foreign debtor of the benefits of United States law without making a detailed showing in accordance with the requirements of United States law as to why such relief is just and proper, or to grant provisional relief to a foreign representative who has proven himself to be incompetent and is accused of fraudulent conduct.

## VI. NOTICE

51.     Copies of this Motion and proposed form of order have been provided to: (a) the Office of the United States Trustee for the Northern District of Texas; (b) counsel to the Foreign Representative; (c) counsel to CoinLab; and (d) the creditors listed in the Debtor's creditor matrix via electronic mail or overnight mail.

52.     Movants submit that the above notice and service constitute reasonable and proper notice under the circumstances, and that no other or further notice is necessary or appropriate.

WHEREFORE, Movants Request that this Court enter an order, substantially in the form attached hereto as **Exhibit A**, terminating the emergency relief granted to the Debtor in the TRO Order and granting Movants such other relief as is just and proper.

Respectfully submitted,
Dated: March 25, 2014

By: */s/ Robin E. Phelan* _____
Robin E. Phelan, TBN 15903000
Stephen Manz, TBN 24070211
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone:  214.651.5000
Facsimile:  214.651.5940
Email: robin.phelan@haynesboone.com
Email: stephen.manz@haynesboone.com

and

Steven L. Woodrow (admitted pro hac vice)
EDELSON PC
999 West 18th Street, Suite 3000
Denver, Colorado 80202
Telephone: (303) 357-4878
Facsimile: (303) 446-9111
Email: swoodrow@edelson.com

and

Jay Edelson (admitted *pro hac vice*)
Alicia E. Hwang (admitted *pro hac vice*)
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, IL 60654
Telephone: 312.589.6370
Facsimile:  312,589.6378
Email:  jedelson@edelson.com
Email: ahwang@edelson.com

and

and

Scott B. Kitei (admitted *pro hac vice*)
HONIGMAN MILLER SCHWARTZ AND COHN
LLP
2290 First National Bldg.
660 Woodward Ave.
Detroit, MI 48226
Telephone: 313.465.7524
Facsimile: 313.465.7525
Email: skitei@honigman.com

**ATTORNEYS FOR GREGORY GREEN AND
JOSEPH LACK**

## CERTIFICATE OF CONFERENCE

On March 24, 2014, counsel to Movants contacted counsel to the Foreign Representative regarding the relief requested in the Motion. Counsel to the Foreign Representative does not consent to the relief requested in the Motion.

By: */s/  Robin E. Phelan*
     Robin E. Phelan

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 25, 2014 a true and correct copy of the foregoing document was served (i) upon all parties on the attached Service List via e-mail (if available as indicated thereon) or first class mail, and (ii) via e-mail upon the parties that receive electronic notice in this case pursuant to the Court's ECF filing system:

*/s/  Robin E. Phelan*
Robin E. Phelan

## SERVICE LIST

David W. Parham
John Mitchell
Baker & McKenzie LLP
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, TX 75201
Email: david.parham@bakermckenzie.com
Email: john.mitchell@bakermckenzie.com

Erin E. Broderick
Baker & McKenzie LLP
300 East Randolph Drive, Suite 500
Chicago, IL 60602
Email: erin.broderick@bakermckenzie.com

Office of the United States Trustee
1100 Commerce Street, Room 976
Dallas, TX 75242
Email: ustpregion06.da.ecf@usdoj.gov

Christopher L. Door
Edelson PC
350 North LaSalle St., Suite 1300
Chicago, IL 60654

Edgar Sargent
Susman Godfrey LLP
1201 3rd Avenue, Suite 3800
Seattle, WA 98101-3087

Jean-Denis Marx
Baker & McKenzie (Gaikokuho Joint Ent.)
Ark Hills Sengokuyama Mori Tower 28th Fl
1-9-10 Roppongi
Tokyo 106-0032 Japan

John M. Murphy
Baker & McKenzie LLP
300 East Randolph, Suite 5000
Chicago, IL 60601

Josephine Garrett
Josephine Garrett, P.C.

3119 West 5th Street
Fort Worth, TX 76107

Mark Karpeles
6-28-3302, Aobadai 3-chome, Meguro-ku
Tokyo, Japan

Megan Lindsey
Edelson PC
999 West 18th St., Suite 3000
Denver, CO 80202

MtCox, Co. Ltd. a/k/a MtGox KK
11-5, Shibuya 2-chome, Shibuya-ku
Tokyo, Japan

Roger M. Townsend
Breskin Johnson & Townsend PLLC
1111 Third Avenue, Suite 2230
Seattle, WA 98101

Rosa A. Shirley
Baker & McKenzie LLP
2001 Ross Avenue, Suite 2300
Dallas, TX 75201

The Honorable Jeh Johnson
Secretary of Homeland Security
Department of Homeland Security
Washington, DC 20528

# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 15 |
| | § | |
| MtGox Co., Ltd. (a/k/a MtGox KK) | § | Case No. 14-31229-sgj-15 |
| | § | |
| Debtor in a Foreign Proceeding | § | |
| | § | |

**ORDER GRANTING CREDITORS GREGORY GREENE AND JOSEPH LACK'S
MOTION FOR TERMINATION OF PROVISIONAL RELIEF**

This matter having come before this Court on the motion (the "Motion")[1] of Creditors

Gregory Greene ("Greene") and Joseph Lack ("Lack") (collectively the "Movants"), for an

Order pursuant to 11 U.S.C. §1522 terminating the provisional relief granted to the Foreign

Representative pursuant to the Court's *Order Granting Application for Provisional Relief,*

*Scheduling Recognition Hearing, and Specifying Form and Manner of Notice* (the "TRO Order")

[Docket No. 13] with respect to the Class Action Litigation; it appearing that the relief requested

---

[1] Capitalized terms used but not otherwise defined herein shall have the meaning given to such terms in the Motion.

in the Motion is in the best interests of all parties-in-interest; it appearing that notice of the Motion has been given as set forth in the Motion and that no other or further notice need be given; and after due deliberation thereon and good cause appearing therefor,

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. The Motion is GRANTED in its entirety.

2. The automatic stay is hereby lifted solely to allow the Class Action Litigation to proceed against the Debtor in the United States District Court for the Northern District of Illinois.

3. The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

# # # END OF ORDER # # #

Submitted by:

Robin E. Phelan, TBN 15903000
Stephen Manz, TBN 24070211
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone: 214.651.5000
Facsimile: 214.651.5940
Email: robin.phelan@haynesboone.com
Email: stephen.manz@haynesboone.com

and

Steven L. Woodrow (admitted pro hac vice)
EDELSON PC
999 West 18th Street, Suite 3000
Denver, Colorado 80202
Telephone: (303) 357-4878
Facsimile: (303) 446-9111
Email: swoodrow@edelson.com

and

Jay Edelson (admitted *pro hac vice*)
Alicia E. Hwang (admitted *pro hac vice*)
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, IL 60654
Telephone: 312.589.6370
Facsimile: 312,589.6378
Email: jedelson@edelson.com
Email: ahwang@edelson.com

and

Scott B. Kitei (admitted *pro hac vice*)
HONIGMAN MILLER SCHWARTZ AND COHN LLP
2290 First National Bldg.
660 Woodward Ave.
Detroit, MI 48226
Telephone: 313.465.7524
Facsimile: 313.465.7525
Email: skitei@honigman.com

**ATTORNEYS FOR GREGORY GREENE
AND JOSEPH LACK**

# EXHIBIT B

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 15 |
| | § | |
| MtGox Co., Ltd. (a/k/a MtGox KK) | § | Case No. 14-31229-sgj-15 |
| | § | |
| Debtor in a Foreign Proceeding | § | |
| | § | |

**DECLARATION OF STEVEN L. WOODROW IN SUPPORT
OF CREDITORS GREGORY GREENE AND JOSEPH LACK'S MOTION
FOR TERMINATION OF PROVISIONAL RELIEF**

I Steven L. Woodrow, hereby declare under penalty of perjury as follows:

1.      My name is Steven L. Woodrow.      I am over the age of twenty-one (21) years, am competent to make this Declaration, and have personal knowledge of the facts as stated in this Declaration.

2.      I am one of the attorneys for the putative class of plaintiffs in the case captioned *Greene et al. v. Mt. Gox, Inc. et al.*, 1:14-cv-01437 (N.D. Ill.), which seeks damages on behalf of thousands of Mt. Gox exchange members who lost money and/or bitcoins as a result of Mt. Gox's alleged misconduct and closing of its Bitcoin exchange.

3.      Introduced in early 2009, Bitcoin has quickly become a recognized digital commodity. Similar in certain respects to paper money (*e.g.*, Dollars, Euros, etc.), bitcoins can be used to purchase and sell goods and services through a number of websites or from any merchant that accepts them.

4.      The similarities generally end there, however. For instance, whereas with paper money a government decides when to print and distribute, bitcoins are mined by individuals through complex computer programs and are also bought and sold by consumers through private "exchanges."

5.      Prior to shutting down, the Debtor had boasted that it had at one time operated the "world's most established Bitcoin exchange," handling "over 80% of all Bitcoin trade" worldwide.  *See* Mt. Gox Website Landing Page ("Landing Page") a true and accurate copy of which is attached hereto as **Exhibit A**. The Debtor represented on its website and through its Terms of Use that its members could "quickly and securely trade bitcoins with other people around the world with [their] local currency."  The Terms of Use are attached hereto as **Exhibit B**.  To use the exchange a consumer would register for an account with the exchange at www.mtgox.com and, once registered, users (called "members") could "trade" Bitcoin using the Debtor's online trading platform.

6.      As reflected on several websites, the Debtor also provided members "with the ability to securely store Bitcoins in a virtual 'vault' for safe keeping." In signing up for an account, the Debtor expressly promised that its website would "always [be] on," that users could "[b]uy and sell Bitcoin 24/7/365 with the world's most sophisticated trading platform," and, per the express terms of its Terms of Use, that it would keep each member's bitcoins and Fiat Currency in the member's account, in the member's name, and on the member's behalf. See Landing Page and Terms of Use.

7.      Though only company insiders know exactly when the trouble began, on February 4, 2014, the Debtor announced through its online Support Desk that it was "currently experiencing a problem where some bitcoin withdrawals are not being transferred correctly, affecting a limited number of users."  See "Support Desk Updates," true and accurate copies of which are attached hereto as **Exhibit C** (the "Support Desk Updates").  On February 7, 2014, the Debtor announced that "[i]n order for our team to resolve the withdrawal issue it is necessary for a temporarily [*sic*] pause on all withdrawal requests . . ." and that "[a]ll bitcoin withdrawal

requests will be on pause, and the withdrawals in the system will be returned to your MtGox wallet and can be reinitiated once the issue is resolved." Id.

8. On February 10, 2014, the Support Desk revealed that the Debtor had detected "unusual activity" with respect to its Bitcoin wallets and had been investigating a technical issue, called "transaction malleability," which appeared to involve the ability of third parties to manipulate certain transactions. Id. The Debtor assured members that "MtGox will resume bitcoin withdrawals to outside wallets once the issue" had been addressed. Id.

9. On or around February 15, 2014, the Debtor announced that it was "going to have a 6-hour downtime" on deposits and that it would be "doing extensive testing before bitcoin withdrawals are reactivated." Id. On February 17, 2014, the Support Desk announced "we have now implemented a solution that should enable withdrawals" and that "Mt. Gox should be able to resume withdrawals soon." Id. In an interview that day with *The Wall Street Journal*, the Foreign Representative—the Debtor's owner and CEO—refused to state when exactly the exchange would resume withdrawals.[1] At no point during any of these updates did Mt. Gox even suggest that all or even a large percentage of bitcoins and Fiat Currency had been lost or misappropriated.

10. On February 19, 2014, the Debtor announced that it had moved back to its prior offices in Tokyo. See Support Desk Updates. The next day, the Support Desk notified members that the move and technical challenges had "pushed back our progress" but again assured customers that "we are working on re-initiating bitcoin withdrawals." Id.

---

[1]     See http://online.wsj.com/news/articles/SB10001424052702304899704579388483531937 144?mg=reno64-wsj&url=http%3A%2F%2Fonline.wsj.com%2Farticle%2FSB100014240527 023048997045793884835319371144.html (last visited March 4, 2014.), a copy of which is attached hereto as **Exhibit D**.

11.     As exchange members clamored for answers and waited patiently for withdrawals to be restored, on February 24, 2014 the Debtor's website "went dark," denying members the ability to even see their balance. On February 27, 2014, Greene filed his putative *Class Action Complaint and Demand for Jury Trial* in the United States District Court for the Northern District of Illinois (the "Class Action Litigation," and its plaintiffs the "Class Action Plaintiffs") against the Debtor, the Foreign Representative (in his individual capacity), Tibanne KK, and MtGox Inc. (Case No. 1:14-cv-1437) for damages and injunctive relief.

12.     The next day, on February 28, 2014, the Debtor filed a petition for the commencement of a civil rehabilitation proceeding in Japan under Japanese Law (the "Japan Proceeding"), which is currently pending before the Twentieth Civil Division of the Tokyo District Court.

13.     Ten days following its initiating of the Japan Proceeding, on March 10, 2014 (the "Petition Date"), the Foreign Representative filed the *Verified Petition for Recognition and Chapter 15 Relief* [Docket No. 2] (the "Petition") under Chapter 15 of title 11 of the United States Code (the "Bankruptcy Code") seeking recognition of the Japan Proceeding as a foreign main proceeding, and recognition individually as the Debtor's foreign representative.

14.     Also on the Petition Date, the Foreign Representative filed his *Emergency Application for an Order Granting Provisional Relief Pursuant to Sections 105(a) and 1519 of the Bankruptcy Code, Scheduling Recognition Hearing, and Specifying Form and Manner of Notice* (the "TRO Application") [Docket No. 4], the *Memorandum of Law in Support of Petition for Recognition and Application for Provisional Relief, Scheduling Hearing, and Approving Form and Manner of Notice* (the "TRO Memorandum") [Docket No. 6], and the *Declaration of*

*Robert Marie Mark Karpeles* in support of the Petition (the "Karpeles Declaration") [Docket No. 3].

15.     The sole support offered in support of these emergency filings was the Karpeles Declaration.  As the CEO and apparent designer of the Debtor's back-end programming, the Foreign Representative had been appointed the Debtor's foreign representative. The Karpeles Declaration asserted that due to the technical issue, the Debtor had lost all or almost all of its exchange members' bitcoins and Fiat Currency and indicated that the Debtor had commenced the Japan Proceeding.  Further, and although his declaration was silent with respect to any assets that would support venue in this district, a cover sheet filed by Mt. Gox's attorneys asserted that assets consisting of backup data located on a server existed somewhere in Dallas. This contrasts with the filings in Japan which make clear that the Debtor had informed the Japanese court that the company's main U.S. assets were in the form of unspecified "cash deposits." See Exhibit F to the Karpeles Declaration at ¶ 5.

16.     At the emergency hearing held by this Court on March 10, 2014, the Court accepted the representative's averments regarding the Debtor's insolvency as well as the explanation by the Debtor's lawyers that the debtor's primary assets in the United States consisted of back-up data stored on servers in the Dallas area.  The Court entered the provisional stay with respect to the debtor, denied the Debtor's request to extend the stay as to non-debtors, and scheduled the Debtor's recognition hearing for April 1, 2014.  *Order Granting Application for Provisional Relief, Scheduling Recognition Hearing, and Specifying Form and Manner of Notice* (the "TRO Order") [Docket No. 13]

17.     The Court in the Greene Litigation has entered an order freezing the assets of the non-Debtor defendants.  The Court has further indicated that could not enter such an order with

respect to the Debtor's assets in light of the provisional relief staying proceedings against Mt. Gox KK that was granted in this Chapter 15 case.

18.     To date, the level of contradictory statements and lack of transparency being afforded to U.S. creditors is alarming. For example, although the Debtor's attorneys insist that back-up data located on a server somewhere in Dallas is the Debtor's primary asset in the United States, that representation is contradicted by the Japan Proceeding, wherein the court was informed that the Debtor's primary assets in the United States consist of "cash deposits." Moreover, Debtor's counsel has been unable, during any of the parties' telephone conferences, to disclose or provide any information regarding the location of the supposed servers or any description of the back-up data—notwithstanding the fact that counsel represented to the Court on March 10, 2014 that these servers constituted the Debtor's primary assets in the United States.

19.     In the afternoon of March 25, 2014, counsel for Greene received an email from Lisa Lambert of the U.S. Trustee's office forwarding an email from the Debtor's attorneys. That forwarded email indicated that the servers were in Dallas with Softlayer Data Services. No description of the backup data, the number of servers, their type, make, or model, was provided.[2]

20.     Likewise, despite repeated requests—and the fact that the same law firm represents the Debtor in the Japan Proceeding and the Class Action Litigation, and the Foreign Representative in this Chapter 15 case—the Debtor had not provided to the Court or any parties-in-interest English translation of the petition in the Japan Proceeding, as required by Section 1515(d) of the Bankruptcy Code, until the afternoon of March 25, 2014. The translated petition, which was also provided to counsel for Greene through Lisa Lambert, did not contain exhibits that had also been translated from Japanese to English.

---

[2] The following URL link contains information pertaining to Softlayer Data Services:
http://www.softlayer.com/data-centers

21.      Furthermore, since the Petition Date, the Debtor's website has supposedly come back "online" to ostensibly allow exchange members to locate and determine their holdings on the exchange.  The data is incomplete, however.  For example, Plaintiff Joseph Lack in the Class Action Litigation transferred $40,000 to the Debtor in late-January 2014 and his bank confirmed, through Mizuho Bank, Ltd., that the Debtor had received the money (and therefore Mizuho could not reverse the transaction).  Mr. Lack's $40,000 is not reflected in his online account, and the same holds true for other United States creditors.

22.      Additionally, following widespread reports of suspicious movements on the Block Chain[3] on March 7, 2014, the Foreign Representative released a statement on March 20, 2014 (the "March 20th Statement") that the debtor had "discovered" a bitcoin wallet containing approximately 200,000 bitcoins (approximate value $110,000,000 USD) while doing a review of its accounts in use prior to June 2011.  A copy of the March 20th Statement is attached hereto as **Exhibit E**.  The Foreign Representative indicated that he began moving these bitcoins on March 7, 2014 supposedly for security reasons and that he notified the Japanese court of these "found" coins on March 10, 2014—the same day that the Debtor filed its Petition.  See March 20th Statement.  Curiously, despite executing the Karpeles Declaration on the Petition Date, and notwithstanding the fact he had supposedly uncovered the existence of these bitcoins three days earlier on March 7, not a single pleading filed by the Foreign Representative on the Petition Date acknowledged this discovery, and his counsel neglected to apprise the Court of the supposed 200,000 found bitcoins during the emergency hearing or at any other time prior to the filing of this Declaration.

---

[3]      The Block Chain is the public record of all Bitcoin transactions. It can be viewed at www.blockchain.info.

23.     As such, from the viewpoint of the Debtor's United States creditors, the proceedings have been marked by a lack of transparency.

I declare under penalty of perjury under the laws of the United States, that the foregoing statements are true and correct.

Signed this 25th day of March, 2014.

*/s/ Steven L. Woodrow*

Steven L. Woodrow

# WOODROW - EXHIBIT A



 Sell Price: €128.94999  Buy Price: €129.09000  Low: €123.40000  Volume: 20166.8796  High: €134.79899  Avg: €128.97587    USD

Username    Password    **Login**
or Sign up

## Trade with confidence on the world's largest Bitcoin exchange!

Mt.Gox is the world's most established Bitcoin exchange. You can quickly and securely trade bitcoins with other people around the world with your local currency!

**SIGN UP NOW**

---

"As of July 2011, Mt. Gox handles over 80% of all Bitcoin trade"

WIKIPEDIA
The Free Encyclopedia

 **SECURE**

Mt.Gox is protected by Prolexic and certified by VeriSign, which means all communications with our servers are encrypted with SSL technology.

 **RELIABLE**

We're always on. Buy and sell Bitcoin 24/7/365 with the world's most sophisticated trading platform.

 **EASY**

Buying and selling Bitcoin doesn't have to be complicated! Get trading in a few simple steps.

 **GLOBAL**

The only multi-currency Bitcoin trading platform where you can trade with the entire world in your local currency.

## See where the world trades Bitcoin!

**SIGN UP NOW**

 **Mt. Gox in your pocket!**

### Payments made easy.



- Add MtGox to your website.
- Take Bitcoin payments online.
- Grow your business worldwide.

**GET STARTED NOW!**
No set-up fees.

### As seen on...

THE WALL STREET JOURNAL  CNN  WIRED
TechCrunch  The New York Times  The Economist
THE NEW YORKER
Forbes

### News Feed

- Statement Regarding OKPay Integration
- Statement Regarding Formal Complaint
- Statement Regarding Recent DDoS Attacks and Mitigation
- Hi everyone, just a quick update on the situation and what happened last night
- Orders will only be accepted when there are enough funds available in your wallet!
- It's been an epic few days: What happened?
- New AUD fee trial run saves you money on each deposit
- Mt.Gox announces new withdrawal limit rules for its customers
- Bitcoin blockchain issue - bitcoin deposits temporarily suspended
- Mt.Gox & Coinlab Announce Strategic Partnership to Bolster American Presence
- Urgent announcement on all SEPA and POLISH Deposits
- Mt.Gox account verification delays and solutions
- Resuming AUD domestic withdrawals for our Australian customers
- Announcement : Expect some disturbance during this year's season holidays!
- Temporary suspension of all GBP Deposits via Barclays
- Mt.Gox overview: August 2012
- Resuming Australian Dollar deposits, starting from today onward!
- Mt.Gox announced new guideline for all Fiat deposits
- Resuming Dwolla's full support for our US Customers
- Introducing a new 1.5% fee on Barclays cash deposit
- Introducing the Mt.Gox Trusted Vendor Program
- Boost your account security thanks to Mt.Gox's new Security Center

---

**QUICK LINKS**
TRADE
TRADE API
FEE SCHEDULE
FAQ
TERMS OF USE

MOBILE WEBSITE
SUPPORT
GET VERIFIED
PRIVACY POLICY

**OUR COMPANY**
ABOUT US    CONTACT US

**APPS AND SOCIAL**
  

Bitcoin Foundation
Platinum Member

MT.GOX © 2011 - 2013 Tibanne Co. Ltd. (Japan)

# WOODROW - EXHIBIT B

INTERNET ARCHIVE
WayBackMachine

https://www.mtgox.com/terms_of_service    Go

DEC  FEB  MAR
◀  15  ▶
2013  2014  2015

Close
Help

18 captures
5 May 12 – 15 Feb 14

HOME        TRADE        MERCHANT TOOLS        SECURITY CENTER        SETTINGS        FAQ        NEWS

# Terms of Use

Last updated on January 20, 2012

These Terms and Conditions (the "Terms") set out the conditions under which K.K. MtGox, a company incorporated under the laws of Japan with a registered address at Sarugaokacho 26-1, Shibuya-ku, Tokyo, Japan and its affiliates (hereinafter, "MtGox") offer you use of the MtGox website at https://mtgox.com/ (the "Site") and access to the Mt. Gox Platform (the "Platform"). Please read these Terms carefully and do not use the Site or the Platform unless you accept them.

The Platform, managed by MtGox, allows buyers ("Buyers") and sellers ("Sellers"), to buy and sell the internet commodity known as "Bitcoin(s)". It also allows all registered users of the Platform ("Members") to transfer funds and Bitcoins to other Members and to use Bitcoins for purchasing specific items.

Depending on their country of residence, Members may not access all the functions of the Site.

By opening an account to use the Platform ("Account") Members represent and warrant:

1. they have accepted these Terms; and
2. they are at least 18 years of age and have the full capacity to accept these Terms and enter into a transaction resulting on the Platform

MtGox reserves the right, at its sole discretion, to change, add or remove portions of these Terms, at any time. You will be notified of such changes a month in advance through your Account and upon such notification it is your responsibility to review the amended Terms. Your continued use of the Site following the posting of changes will mean that you accept and agree to the changes. You agree that all subsequent transactions by you will be subject to these Terms. As long as you comply with these Terms and any such modifications, MtGox grants you a personal, non-exclusive, non-transferable, non-sublicensable, limited right to enter and use the Site and the Platform.

Your acceptance of these Terms, as amended from time to time, gives MtGox a mandate to bring together Sellers and Buyers to trade on the Platform according to the following clauses as well as perform the functions described hereinbelow.

**DEFINITIONS**

Platform: means the technical, functional and organisational structure managed by MtGox to allow Sellers and Buyers to conclude a complete purchase and sale transaction of Bitcoins.

Bitcoins: means the Peer-to-Peer internet commodity further described at http://bitcoin.org.

Seller(s): means Member(s) that are submitting an offer to sell Bitcoins on the Platform.

Buyer(s): means Member(s) that are submitting an offer to buy Bitcoins on the Platform.

Member(s): means Buyers and Sellers as well as any holder of an Account.

Transaction: means (i) the agreement between the Buyer and the Seller to exchange Bitcoins on the Platform for currencies at a commonly agreed rate ("Bitcoin Purchase Transaction"), (ii) the conversion of currencies deposited by Members on their account ("Conversion Transaction"), (iii) the transfer of Bitcoins among Members ("Bitcoin Transfer Transaction"), (iv) the transfer of currencies among Members ("Currency Transfer Transaction") and (v) the purchase of products such as USB secure keys ("Purchase Transactions").

Price: means "price per coin" for which Members are willing to purchase or sell Bitcoins, using the Platform in a Bitcoin Purchase Transaction. The Price may be expressed in any of the currencies deposited by Members in their account and supported by the Platform. Members may deposit different currencies in their account. Currencies currently available are US dollars, Euros, Japanese yen, Canadian dollars, British pounds, Swiss francs, Russian rouble, Australian dollar, Swedish krona, Danish krones, Norwegian krones, Hong-Kong dollars, Polish zlotys, Chinese yuan renminbis, Singapore dollars, Thai bahts and New Zealand dollars.

Transaction Price: means the total price paid by the Buyer in respect of each Transaction performed on the Platform.

Commission: refers to the fee which is payable to MtGox on each Transaction. For Bitcoin Purchase Transactions, the applicable commission will vary according to the amount and type of the Transaction as well as the Member's last 30-day trading volume. The list of applicable Commissions for Bitcoin Purchase Transaction is available here: https://mtgox.com/fee-schedule. For Conversion Transactions, MtGox will charge a fixed commission of 2.5% calculated and applied on the amount of currencies being converted. No Commissions will be charged on Bitcoin Transfer Transactions and Currency Transfer Transactions. For Purchase Transactions, the price payable by Members will be the price of the goods offered for sale by MtGox at the price advertised on the Platform.

**YOUR ACCOUNT**

Members are responsible for maintaining the confidentiality of their Account information, including their password, and for all activity including Transactions that occur under their Account. Members agree to notify MtGox immediately of any unauthorized use of their Account or password, or any other breach of security by email addressed to security@mtgox.com. Members will be held liable for losses incurred by MtGox or any other user of the Site due to someone else using their password or user account. Members shall not use any Account other than their own or access the Account of another Member at any time. Members may not attempt to gain unauthorized access to the Site, and any attempt to do so or to assist others (Members or otherwise) to do so, or distribution of instructions, software or tools for that purpose, will result in the Accounts of such Members being terminated, and this does not limit the right of MtGox to take any other action against you.

Members agree to provide MtGox with accurate, current and complete information about themselves as prompted by the registration process, and keep such information updated. In addition, Members may update any of their Account information, or designate a different payment option to be debited, by clicking on the account button and selecting the appropriate link.

Members may only have one Account at any one time and may not create or use any Account other than their own. For a Member to be exempt from any of these rules, he/she must request express and prior permission from the Platform. The creation or use of Accounts without obtaining such prior express permission from the Platform will lead to the immediate suspension of all said Accounts, as well as all pending purchase/sale offers.

MtGox will request identification information (such as an identity card, invoices, Government issued photographic identification, utility bill, residential certificate, signed certification of cohabitation, or similar, banking information) depending on the amounts deposited on the Accounts or the presence of suspicious activity which may indicate money-laundering or other illegal activity. Identification of the bank account from which funds are transferred to the Account may also be requested. In certain cases notarization of certain documents (including apostille) may be requested. Transactions may be frozen until the identity check has been considered satisfactory by MtGox as required by applicable money laundering laws. MtGox may request additional identification information at any time at the request of any competent authority or by application of any applicable law or regulation.

Accounts may be used strictly for the purposes defined in these Terms.

**PLATFORM TRANSACTION PROCESS FOR BITCOIN PURCHASE TRANSACTIONS**

The Platform allows Buyers to submit offers to purchase Bitcoins and Sellers to submit offers to sell Bitcoins. The Price for which Members offer to purchase or sell Bitcoins is at their discretion.

Members recognise that their offers should only be submitted after careful consideration and once submitted Members are prepared to enter into a Bitcoin Purchase Transaction with another Member. Therefore, offers made by Sellers and Buyers on the Platform represent their unconditional acceptance to be bound by an agreement as soon as the Price set in their offer matches with the Price set in an offer submitted by a Buyer or Seller, respectively. Sellers and Buyers agree that as soon as their respective offers are matched, such offers are binding and may not be withdrawn. The Bitcoin Purchase Transactions will be completed instantaneously upon the matching of the Buyer's and Seller's offers, without prior notice to the Seller and Buyer, and will be considered to have taken place at that date and time.

Whether acting as Buyer or Seller in a Bitcoin Purchase Transaction, Members recognise that the matching of their offers for the sale and purchase of Bitcoins is a service provided by MtGox via the Platform and as such once Buyers' and Sellers' offers have been matched any right they may have to cancel any Bitcoin Purchase Transaction under the Distance Selling Directive 97/7/EC will be lost once this service has been performed.

Sellers acknowledge and agree that the payment of the Price in relation to the Bitcoin Purchase Transaction in the name and on behalf of the Buyer, may be delayed due to bank verifications, for a period of up to 1 month. Similarly and due to the inherent nature of the Bitcoin network, Buyers acknowledge and agree that withdrawing, depositing or otherwise receiving Bitcoins into their account may take between one (1) hour and twenty-four (24) hours, barring unforeseen or unavoidable network issues.

Upon matching of the offers of Buyer and Seller, MtGox has the sole authority to permit the transfer of the amount corresponding to the Transaction Price minus the Commission from the Buyer's Account to the Seller.

**PLATFORM TRANSACTION PROCESS FOR CONVERSION TRANSACTIONS**

The Platform allows Members to convert the currencies deposited into their account into any other currency. This will be performed either by the Platform, or by the transferring bank.

The conversion rate applicable to the Conversion Transaction shall be in general the conversion rate published on the website of the European Central Bank on the date where the Conversion Transaction shall be initiated by the Member.

Members recognize that although their account shall be immediately and automatically updated to reflect the Conversion Transaction, the actual conversion may take time depending on the availability of banking services and bank verifications. Accordingly, withdrawal of currencies from a Member's account may not be possible until the Conversion Transaction has actually been completed.

A fixed Commission of 2.5% shall apply to all Conversion Transactions which are performed by the Platform, and shall be deducted directly from the amount converted. The Commission shall be calculated on the amount of currency converted.

In cases where Conversion Transactions are performed by a bank as part of a deposit, a variable Commission of up to 2.5% shall apply. This rate is specific to the bank performing the transaction.

**PLATFORM TRANSACTION PROCESS FOR BITCOIN TRANSFER TRANSACTIONS**

Members may at any time transfer any amount of Bitcoins to any other Members as well as any other Bitcoin users even if they are not Members (the "Transferee").

Bitcoin Transfer Transactions may be initiated at any time from the following page: https://mtgox.com/index.html. Transferees shall be identified by their bitcoin address.

Members shall be solely responsible for ensuring that any transfer of Bitcoins to a Transferee shall be a valid and legal transaction not infringing any laws including money-laundering laws and regulations.

MtGox's responsibility shall be limited to using reasonable technical efforts to ensure the receipt of the Bitcoins transferred. When conducting

Bitcoin Transfer Transactions with a Bitcoin user who is not a Member, MtGox's responsibility shall be further limited to ensuring the transfer of the necessary technical data to the Bitcoin peer-to-peer network.

No Commission of any kind will be charged by MtGox for Bitcoin Transfer Transactions.

## PLATFORM TRANSACTION PROCESS FOR PURCHASE TRANSACTIONS

Members may purchase a USB secure key "YubiKey" at the conditions and price set forth at https://yubikey.mtgox.com/. The USB secure key allows a Member to manage his/her MtGox account more securely. A manufacturer's warranty is provided with the USB secure key. Please refer to the details of the manufacturer's warranty at http://www.yubico.com/yubikey. MtGox shall not replace any key lost by a Member.

Members may also purchase Bitcoin gift codes at the conditions and price set forth at https://mtgox.com/trade/funding-options. Gift codes are redeemable by any Member and may be delivered by emailing the gift code to the receiving Member. MtGox shall not be responsible should the gift codes not be redeemed. Gift codes are valid until redeemed. Gift codes are refundable at any time.

## MT. GOX'S OBLIGATIONS

Except in the case of Purchase Transactions, Members acknowledge and agree that, when completing Transactions, they are trading with other Members, and Members accept that MtGox acts only as an intermediary in such Transactions and not as a counterparty to any trade. It is thus the Members' and should the case arise, the Sellers' and the Buyers' responsibility to comply with any and all laws and regulations relating to the Transactions.

MtGox represents and warrants that:

1. it will use all reasonable care and skill in facilitating the matching of offers of the Members on the Site via the Platform to conclude Transactions.
2. all purchase and sale offers, as well as Bitcoin Purchase Transactions, made on the Platform, will be managed in an anonymous manner so that Buyers and Sellers will not know each other.
3. the Transaction Price is calculated on the basis of actual matched offers made by Buyers and Sellers participating in the bidding process on the Platform combined with the applicable Commission.
4. once offers to buy or sell Bitcoins are matched, such offers may not be withdrawn.
5. Transfer of Bitcoins in a Transfer Transaction may not be withdrawn.
6. it will hold all monetary sums and all Bitcoins deposited by each Member in its Account, in that Member's name as registered in their Account details, and on such Member's behalf.
7. it shall comply with any and all laws and regulations relating to offering the Platform.

If a Member contravenes these Terms, MtGox reserves the right to suspend his/her Account and block all monetary sums or Bitcoins contained therein.

The Platform is not intended to provide any legal, tax, insurance or investment advice. Tools available on the Site such as the "Trade Data" webpage accessible at https://mtgox.com/trade/history only provide Members with general information related to Transactions formerly performed on the Platform and should not be construed as investment education or advice provided by MtGox. Members are solely responsible for determining whether any contemplated Transaction is appropriate for them based on their personal goals, financial status and risk willingness.

## MEMBERS' OBLIGATIONS

Members represent and warrant that they will only use the Platform to perform Transactions in accordance with the conditions set forth in these Terms and that they are duly authorized and have the capacity to enter into the Transactions on the Platform.

Seller warrants that the Bitcoins offered to sell or to transfer correspond to actual Bitcoins.

Buyer warrants that the currencies deposited to buy the Bitcoins are actual currencies corresponding to actual assets in its bank account and coming from legal sources.

Members agree that they will not use the Platform to perform any type of illegal activity of any sort, including, but not limited to, money laundering, terrorism financing, or negatively affect the performances of the Platform.

Members agree that, whenever a Transaction is made, the Platform sends and receives the monetary sums and/or Bitcoins from the Buyer and the Seller's Accounts in their name and on their behalf, through the IT system in place on the Platform at the time of the Transaction.

## INTELLECTUAL PROPERTY AND LINKING

All intellectual property rights vested in texts, images, or any other content found on or related to the Platform are owned by MtGox. Accordingly, Members may not copy, distribute, reproduce, republish, upload, transmit, modify, post, frame-in or otherwise use in any way any such content without the prior express authorization of MtGox.

MtGox property or that of our suppliers or licensors and is protected by patent, trademark and/or copyright under Japanese, English and/or foreign laws and may not be used without MtGox express written consent.

Unless MtGox gives it express prior consent, other websites may only link to the Platform by using the following address: https://mtgox.com/, to the exclusion of any deep link.

## LIABILITY

Members represent and warrant that they are the legitimate owners and are allowed to use all monetary sums and Bitcoins deposited on their Account and that the Transactions being carried out do not infringe the rights of any third party or applicable laws. Members who are not consumers ("Business Members") will indemnify MtGox for any and all damages suffered and all liability actions brought against MtGox for infringement of third party rights or violation of applicable laws.

To the extent permitted by law, MtGox will not be held liable for any damages, loss of profit, loss of revenue, loss of business, loss of opportunity, loss of data, indirect or consequential loss unless the loss suffered is caused by a breach of these Terms by MtGox.

MtGox cannot be held liable for any malfunction, breakdown, delay or interruption to the internet connection, or if for any reason our site is unavailable at any time or for any period. Where our site contains links to other sites and resources provided by third parties, these links are provided for your information only. We have no control over the contents of those sites or resources, and accept no responsibility for them or for any loss or damage that may arise from your use of them.

In the case of fraud, MtGox will report all necessary information, including names, addresses and all other requested information, to the relevant authorities dealing with fraud and breaches of the law. Members recognize that their account may be frozen at any time at the request of any competent authority investigating a fraud or any other illegal activity.

To the extent that a Member operates and uses the Site and the Platform other than in the course of its business ("Consumer"), nothing in these Terms shall affect the statutory rights of such Members.

Nothing in these terms excludes or limits the liability of either party for fraud, death or personal injury caused by its negligence, breach of terms implied by operation of law, or any other liability which may not by law be limited or excluded.

Subject to the foregoing, MtGox's aggregate liability in respect of claims based on events arising out of or in connection with a Member's use of the Site and/or Platform, whether in contract or tort (including negligence) or otherwise, shall in no circumstances exceed the greater of either (a) the total amount held on Account for the Member making a claim less any amount of Commission that may be due and payable in respect of such Account; or (b) 125% of the amount of the Transaction(s) that are the subject of the claim less any amount of Commission that may be due and payable in respect of such Transaction(s).

**TERMINATION**

These Terms may be terminated without reason by either party providing the other with reasonable prior notice, receipt of which shall be promptly acknowledged in writing by the other party. Such termination will be effective when the terminating party receives the acknowledgment in writing of its notice to terminate from the other party. Such termination shall not affect the obligations or rights of either party under these Terms which had accrued prior to the notice of termination, nor the Transactions and its related obligations and rights concluded before such termination was effective.

MtGox may by notice to Members discontinue or modify the Platform and/or revise or terminate these Terms at any time. Members are deemed to have accepted these revisions or termination to the extent that they continue using the Platform. Upon such notice, Members may request a refund of any fund balances in their Accounts by writing to MtGox at support@mtgox.com within 60 days of receiving notice from MtGox of the discontinuation or material modification of the Platform. Alternatively, MtGox will before discontinuing the Platform send to all Members such fund balances by transferring such amounts into the bank account of affected Members using the most recent bank details provided by such Members.

Should they wish to terminate their agreement with MtGox, Members may close his/her Account at any time.

Members also agree that MtGox may, in its sole discretion by giving notice, terminate Members' access to the Site and their Account, including without limitation: limit, suspend or terminate the service and Members' Accounts, prohibit access to the Site and its content, services and tools, delay or remove hosted content, and take technical and legal steps to keep Members off the Site if we think that they are creating problems or possible legal liabilities, infringing the intellectual property rights of third parties, or acting inconsistently with the letter or spirit of these Terms. Additionally, we may, in appropriate circumstances and at our discretion, suspend or terminate Accounts of Members for any reason, including without limitation: (1) attempts to gain unauthorized access to the Site or another Member's account or providing assistance to others' attempting to do so, (2) overcoming software security features limiting use of or protecting any content, (3) usage of the Platform to perform illegal activities such as money laundering, terrorism financing or other criminal activities, (4) violations of these Terms, (5) failure to pay or fraudulent payment for Transactions, (6) unexpected operational difficulties, or (7) requests by law enforcement or other government agencies.

We also reserve the right to cancel unconfirmed Accounts or Accounts that have been inactive for a period of 6 months or more, or to modify or discontinue our Site or Platform. Members agree that MtGox will not be liable to them or to any third party for termination of their Account or access to the Site.

Members acknowledge and agree that their Account may be suspended until they provide MtGox with documents evidencing their identity and/or any other information that MtGox deems necessary to secure the Accounts, the Transactions and/or the Platform.

The suspension of an Account has consequences for the future and shall not affect the payment of the commissions due for past Transactions. Therefore, despite the Account having been suspended for whatever reason under these Terms, the Member must still pay the Commission(s) which were due before the date of suspension.

Upon termination, Members shall communicate a valid bank account to allow for the transfer of the currencies held on their account. Said bank account shall be held by the Member and shall be located in the same country from which funds initially originated (and in the case where funds originated from several countries, transfers shall be possible only to a valid bank account from which significant funds originated). Bitcoins may be transferred to a valid bank account only after conversion into a currency. MtGox shall exercise reasonable efforts in transferring the currencies as soon as possible following the Member's request provided, however, that any transaction fees levied by any bank intervening between the paying bank and the receiving bank (including the paying bank and the receiving bank) shall be deducted from the currencies transferred.

In the case where Members do not wish to make use of the functionalities of the Platform after having transferred currencies on their account, they may request that said currencies be returned to them. In this case, the same procedure as stipulated under the preceding paragraph shall apply.

**DATA PRIVACY**

When you open an Account to use the Platform or otherwise use this Site we may ask you to provide us with personal information about yourself. Personal information that you provide to MtGox through this Site shall be subject to our privacy policy. You can read our current privacy policy by clicking here.

**MISCELLANEOUS**

In case of a force majeure event as defined by applicable law, the liabilities of the affected party to these Terms will be suspended pending resolution of such event.

If a competent judicial authority deems any provision of the Terms unenforceable, that provision will be enforced to the maximum extent permissible, and all remaining provisions will remain in full force and effect.

**CONTACT US**

If you have any questions relating to these Terms, your rights and obligations arising from these Terms and/or your use of the Site and the Platform, your Account, or any other matter, please do not hesitate to contact MtGox at support@mtgox.com.

**QUICK LINKS**

**OUR COMPANY**

**APPS AND SOCIAL**

| | | |
|---|---|---|
| TRADE | MOBILE WEBSITE | ABOUT US    CONTACT US |
| TRADE API | SUPPORT | |
| FEE SCHEDULE | GET VERIFIED | |
| FAQ | PRIVACY POLICY | |
| TERMS OF USE | LOST PASSWORD | |
| UNLINK YUBIKEY/OTP | REPORT SECURITY ISSUE | |

© 2010 - 2014 MtGox Co.Ltd. (Japan) |

INTERNET ARCHIVE
WayBackMachine

https://www.mtgox.com/privacy_policy    Go

DEC    FEB    MAR
◄    15    ►
2013    2014    2015

Close
Help

20 captures
5 May 12 – 15 Feb 14

HOME        TRADE    MERCHANT TOOLS    SECURITY CENTER    SETTINGS    FAQ    NEWS

Login
up

# Privacy Policy

### General

MtGox K.K. and its affiliates (hereinafter, "MtGox", "we", "us" or "our") are committed to protecting and respecting your privacy.

This Privacy Policy (together with our Terms and Conditions of Use) governs our collection, processing and use of your Personal Information. We define "Personal Information" as information which identifies you personally, e.g. your name, address, e-mail address, trades etc.

The purpose of this Privacy Policy is to inform you of:
1. the kinds of Personal Information which we may collect about you and how it may be used;
2. our use of information regarding IP Addresses and our use of cookies;
3. any disclosure of Personal Information to third parties;
4. the transfer of Personal Information outside of Japan;
5. your ability to correct, update and delete your Personal Information; and
6. the security measures we have in place to prevent the loss, misuse, or alteration of Personal Information under our control.

### Gathering and Use of Personal Information

We may collect your Personal Information if you use the Site, open an Account to use the Platform or perform any Transactions on the Platform. The types of Personal Information which we collect may include:
1. your name;
2. your photographic identification;
3. your address;
4. your phone number;
5. your e-mail address;
6. your banking details including account numbers;
7. your date of birth; and
8. your trades.

We may use your Personal Information for the following purposes:
1. to allow you to open and operate an Account on the Platform;
2. to enable you to complete Transactions on the Platform;
3. if you contact us, to reply to your queries;
4. to analyse use of our Site;
5. as required for regulatory purposes;
6. to provide you with information about products and promotions that may be of interest to you, from ourselves and third parties, although only if you have specifically agreed to receive such information;
7. for market research e.g. surveying our Members' needs and opinions on issues, such as our performance etc.

We will process your Personal Information only for the purpose(s) for which it has been provided to us.

### IP Addresses

We may collect information about your computer, including where available your IP address, operating system and browser type, for system administration and to report aggregate information to our advertisers. This is statistical data about our users' browsing actions and patterns and does not identify any individual.

### Cookies

We use a browser feature known as a "cookie", which assigns a unique identification to your computer. Cookies are typically stored on your computer's hard drive. Information collected from cookies is used by us to evaluate the effectiveness of our Site, analyse trends, and administer the Platform. The information collected from cookies allows us to determine such things as which parts of our Site are most visited and what difficulties our visitors may experience in accessing our Site. With this knowledge, we can improve the quality of your experience on the Platform by recognising and delivering more of the most desired features and information, as well as by resolving access difficulties. We also use cookies and/or a technology known as web bugs or clear gifs, which are typically stored in emails to help us confirm your receipt

of, and response to, our emails and to provide you with a more personalised experience when using our Site.

We use third party service provider(s), to assist us in better understanding the use of our Site. Our service provider(s) will place cookies on the hard drive of your computer and will receive information that we select that will educate us on such things as how visitors navigate around our site, what products are browsed, and general Transaction information. Our service provider(s) analyses this information and provides us with aggregate reports. The information and analysis provided by our service provider(s) will be used to assist us in better understanding our visitors' interests in our Site and how to better serve those interests. The information collected by our service provider(s) may be linked to and combined with information that we collect about you while you are using the Platform. Our service provider(s) is/are contractually restricted from using information they receive from our Site other than to assist us.

By using our Site you are agreeing that we may use cookies for the purposes set out above.

**Disclosure of Personal Information**

We use the Personal Information for the purposes indicated at the time you provide us with such information, and/or otherwise for the purposes set out in this Privacy Policy and/or as otherwise permitted by law. We may make available the Personal Information that you provide to us to our affiliates, agents, representatives, trusted service providers and contractors for these limited purposes. We may also share Members' Personal Information with financial institutions, insurance companies or other companies in the case of a merger, divestiture, or other corporate re-organisation. We may also share Members' Personal Information with law enforcement or regulatory agencies, as may be required by law. Any third party which receives or has access to Personal Information shall be required by us to protect such Personal Information and to use it only to carry out the services they are performing for you or for MtGox, unless otherwise required or permitted by law. We will ensure that any such third party is aware of our obligations under this Privacy Policy and we will enter into contracts with such third parties by which they are bound by terms no less protective of any Personal Information disclosed to them than the obligations we undertake to you under this Privacy Policy or which are imposed on us under applicable data protection laws.

**Transfer of Personal Information Outside of Japan**

MtGox will transfer Members' Personal Information to MtGox K.K. as well as the third party service providers entrusted by MtGox with the hosting of the Platform and other technical operations relating to the operation of the Platform. These parties may be located anywhere in the world. By accepting this Privacy Policy, you consent to such transfer of your Personal Information out of Japan. Unfortunately, the transmission of information via the internet is not completely secure and whilst we will do our best to protect your Personal Information, we cannot guarantee the security of your data transmitted to our site when it is outside of our control. Once we have received your information, we will use strict procedures and security features to try to prevent unauthorised access.

**Correction/Updating/Deletion of Personal Information**

You have the right to access your Personal Information and to require the correction, updating and blocking of inaccurate and/or incorrect data by sending an email to us at: support@mtgox.com.

You may also request the deletion or destruction of both the Account and Personal Information by sending an email to us at: support@mtgox.com. MtGox will action your request only where this is not inconsistent with its legal and regulatory obligations.

Upon your written request, we will inform you of the Personal Information relating to you that we hold and the use and general disclosure of your Personal Information. We will also give you a copy of the Personal Information we have retained. There may be a minimal charge for accessing your Personal Information.

**Security**

We have implemented security measures to ensure the confidentiality of your Personal Information and to protect your Personal Information from loss, misuse, alteration or destruction. Only authorised personnel of MtGox have access to your Personal Information, and these personnel are required to treat the information as confidential. The security measures in place will, from time to time, be reviewed in line with legal and technical developments.

**Retention of Personal Information**

We will hold your Personal Information only for as long as it is necessary for us to do so, having regard to the purposes described in this Privacy Policy and our own legal and regulatory requirements. In accordance with our record keeping obligations we will retain Accounts and Personal Information for, at least a period of five years after they are closed by Members.

**Links**

There may be links from our Site to other sites and resources provided by third parties. This Privacy Policy applies only to our Site. Accessing those third party sites or sources requires you to leave our Site. We do not control those third party sites or any of the content contained therein and you agree that we are in no way responsible or liable for any of those third party sites, including, without limitation, their content, policies, failures, promotions, products, services or actions and/or any damages, losses, failures or problems caused by, related to or arising from those sites. We encourage you to review all policies, rules, terms and regulations, including the privacy policies, of each site that you visit.

**Marketing**

You have the right to ask us not to process your Personal Information for marketing purposes. You can exercise your right to prevent such processing by checking certain boxes on the forms we use to collect your Personal Information. You can exercise the right at any time by contacting us at support@mtgox.com.

**Changes**

Our Site policies, content, information, promotions, disclosures, disclaimers and features may be revised, modified, updated, and/or supplemented at any time and without prior notice at the sole and absolute discretion of MtGox. If we change this Privacy Policy, will take steps to notify all users by a notice on our Site and will post the amended Privacy Policy on the Site.

**Contact Us**

If you have any questions, comments, or concerns regarding our Privacy Policy and/or practices as it or they relate to the Platform, please contact us at the following e-mail address, address and telephone number:

E-Mail support@mtgox.com

**Address**

MtGox K.K.

Round Cross Shibuya 5F
11-6 Shibuya 2-Chome, Shibuya-ku
Tokyo, Japan
150-0002

FAO: Mark Karpeles

Telephone Number +81 3 4520 6200

Last updated: [February 2012]

## QUICK LINKS

| | |
|---|---|
| TRADE | MOBILE WEBSITE |
| TRADE API | SUPPORT |
| FEE SCHEDULE | GET VERIFIED |
| FAQ | PRIVACY POLICY |
| TERMS OF USE | LOST PASSWORD |
| UNLINK YUBIKEY/OTP | REPORT SECURITY ISSUE |

## OUR COMPANY

ABOUT US       CONTACT US

## APPS AND SOCIAL



© 2010 - 2014 MtGox Co.Ltd. (Japan) |

# WOODROW - EXHIBIT C

# Welcome to MtGox Customer Service!

Stay updated with announcements, get answers from the community and share your feature suggestions with us.
You can submit a request here.

## Support Desk

### Statement Regarding BTC Withdrawal Delays - UPDATE

Mike Feb 07  •  Announcements / Announcements

Posted: Feb 07 14:34 JST

Update regarding delays posted here.

Dear MtGox Customers,

In our efforts to resolve the issue being encountered by various bitcoin withdrawals, it was determined that the increase in the flow of withdrawal requests has hindered our efforts on a technical level. To understand the issue thoroughly, the system needs to be in a static state.

In order for our team to resolve the withdrawal issue it is necessary for a temporarily pause on all withdrawal requests to obtain a clear technical view of the current processes.

We apologize for the sudden short notice. All bitcoin withdrawal requests will be on pause, and the withdrawals in the system will be returned to your MtGox wallet and can be reinitiated once the issue is resolved. The trading platform will perform as usual for the needs of our customers.

Our team will resolve this problem as soon as possible and will provide an update on Monday, February 10, 2014 (JST).

We deeply apologize for the inconvenience caused, and thank you for your kind support and considerations.

Sincerely,

The MtGox Team

### Update - Statement Regarding BTC Withdrawal Delays

Maria Feb 04  •  Announcements / Announcements

Posted: Feb 04 17:58 JST

Dear MtGox Customers,

As noted recently, we are currently experiencing a problem where some bitcoin withdrawals are not being transferred correctly, affecting a limited number of users. Currently the problem is being fixed, but many previous transactions did not go through over the past days. Those transactions have now been returned to customer accounts in full, so any transactions that appeared to be "stuck" should now be refunded.

This problem applies primarily to larger transactions, so we appreciate your patience as we fix the issue. Smaller transactions should be fine in the meantime, and we will update you on the status as soon as possible.

Thank you for your patience.

Best Regards,

MtGox Team

### Buy Bitcoin in Latin America with MtGox and AstroPay

Marion December 14, 2013  •  Announcements / What's new at Mt.Gox

Dear MtGox Customers in Latin America,

We are proud to announce that MtGox now has a partnership with payment provider AstroPay to make direct bank deposits fast and easy from Argentina, Brasil, Chile, Colombia, Mexico, Peru, and Uruguay. AstroPay works directly with many banks in Latin America to provide an easy method to use your local currency to add U.S. dollars to your MtGox account just by using your bank's online banking service.

Get started with AstroPay in just a few steps:

1. Log in to your MtGox account and visit the Funding Options tab.
2. Select AstroPay as your funding method.
3. Select your country of residence.
4. Choose your bank from the list if available.

5. Enter amount you want to transfer in USD.

6. You will be automatically redirected to the AstroPay Landing-page.

7. Enter your personal information, confirm, and you will be redirected to your bank's online service.

8. Once logged-in to your bank's online service, confirm the transaction.

9. You can then check your MtGox account within one business day (Tokyo time) and begin using your funds.

We're looking forward to better serving the Latin American Bitcoin community, and working even more closely with AstroPay in the future. For more information please visit our support page: https://support.mtgox.com

-------------------------------------------------------------------------------------------------------------------------------------------------------------------------------

Estimados clientes de MtGox en Latinoamérica:

Nos enorgullece anunciar que MtGox ahora se ha asociado con el proveedor de pagos AstroPay para realizar depósitos bancarios directos de forma fácil y rápida desde Argentina, Brasil, Chile, Colombia, México, Perú y Uruguay. AstroPay trabaja directamente con muchos bancos en Latinoamérica para ofrecer una método sencillo de usar su moneda local para añadir dólares estadounidenses a su cuenta MtGox, con solo usar el servicio en línea de su banco.
Empiece a usar AstroPay en solo unos cuantos pasos:

1. Ingrese a su cuenta MtGox y visite la pestaña de Opciones para añadir fondos.

2. Seleccione AstroPay como su método para añadir fondos.

3. Seleccione su país de residencia.

4. Elija su banco de la lista disponible.

5. Escriba el monto que quiere transferir en dólares estadounidenses (USD).

6. Será redirigido automáticamente a la página de inicio de AstroPay.

7. Ingrese su información personal, confirme, y será redireccionado al servicio en línea de su banco.

8. Una vez que haya ingresado en el servicio en línea de su banco, confirme la transacción.

9. Ahora usted podrá verificarla en su cuenta MtGox en un plazo de un día hábil (hora de Tokio) y empezar a usar sus fondos.

Esperamos con ansias ofrecer un mejor servicio a la comunidad latinoamericana de Bitcoin y trabajar de forma aún más cercana con AstroPay en el futuro. Si tiene algún problema, por favor visite nuestra página de asistencia: https://support.mtgox.com

-------------------------------------------------------------------------------------------------------------------------------------------------------------------------------

Prezados Clientes do MtGox na América Latina,

Estamos orgulhosos em anunciar que o MtGox agora possui uma parceria com o provedor de pagamentos AstroPay para realizar depósitos bancários diretos, com rapidez e facilidade, da Argentina, Brasil, Chile, Colômbia, México, Peru e Uruguai. O AstroPay trabalha diretamente com diversos bancos da América Latina para proporcionar um método fácil de usar a sua moeda local ao adicionar dólares na sua conta do MtGox usando apenas o serviço de atendimento online do seu banco.
Comece a utilizar o AstroPay em apenas alguns passos:

1. Acesse a sua conta do MtGox e dirija-se à aba Opções de Financiamento.

2. Selecione AstroPay como o seu método de financiamento.

3. Selecione o seu país de residência.

4. Escolha o seu banco da lista caso ele esteja disponível.

5. Digite a quantia que deseja transferir em USD.

6. Você será automaticamente redirecionado para a página de destino do AstroPay.

7. Digite a sua informação pessoal, confirme, e você será redirecionado para o serviço de atendimento online do seu banco.

8. Após acessar o serviço de atendimento online do seu banco, confirme a transação.

9. Você pode então verificar a sua conta do MtGox dentro de um dia útil (horário de Tóquio) e começar a usar os seus fundos.

Esperamos poder servir melhor à comunidade Bitcoin latino-americana e estreitar ainda mais a nossa colaboração com o AstroPay no futuro. Se você tiver qualquer problema, por favor visite a nossa página de suporte: https://support.mtgox.com

Thank you for using Mt.Gox.

Best regards,

The Mt.Gox Team
Regards
Mt.Gox Co. Ltd Team.

# Important Update for Accounts in Japan

Marion November 10, 2013 • Announcements / What's new at Mt.Gox

Dear Mt. Gox Customer,

We have some good news for Japan-based account holders that are also important to note when depositing or withdrawing funds from Mt. Gox.

We've formed a new banking relationship formed with JapanNet Bank, and as a result Mt. Gox customers in Japan must make all domestic Japanese Yen (JPY) deposits to our JapanNet Bank account.

Additionally, all JPY deposits are credited to accounts within one hour when transferred from your bank between 9am and 3pm on banking days. Deposits made from JapanNet Bank accounts can be processed 24/7.

IMPORTANT: As always, you must include your account ID in the "Applicant Name" field for your transfer to be sure that the funds go to your account quickly

Withdrawals
All JPY withdrawals placed before 4pm Tokyo time on banking days are now processed the following banking day, and will be sent from our JapanNet Bank account.

**Fees**

Deposits: Free, except for fees charged by your own bank

Withdrawals to JapanNet Bank accounts:
 -52 JPY

Withdrawals to all other domestic accounts:
 - 168 JPY for all amounts up to 30,000 JPY
 - 262 JPY for all amounts from 30,000 JPY and above

**Bank account details** on Mt.Gox website.

Thank you for you business, and we look forward to serving you.

Best regards,

Mt. Gox Team
support@mtgox.com

## How to Set Up a Business Account with MtGox

Mike Jan 09 • **Getting Started/Using MtGox / Walkthroughs**

If you wish to have a Business Account on MtGox you will need to do the following:

1. Create an account specifically for your business (one account is required for each individual business) by clicking Sign Up on the MtGox homepage.
   Note: Personal accounts may not be used for a business as the names on the MtGox and Bank account must match (i.e. Jane Doe -> Jane Doe; ABC Company -> ABC Company).

2. Gather the following documents (Please also provide your **account number** and/or **username** so we know to which account the documents are related)

   Requirements for Businesses:

   • Certificate of incorporation/registration (If the list of shareholders is not written on this document, please provide another document with the list of all shareholders).

   • A valid copy of a government issued photo ID of shareholders entitled to 10% or more in voting rights.

   • A proof of residence (less than 3 months old) - E.g. An utility or phone bill of shareholders entitled to 10% or more in voting rights.

   • Company constitution or articles of memorandum (if any).

   • Copy of Trust Deed for the Trust involved as part of shareholders (if any).

   • IRS, EIN or TIN Number.

   **Note**: ALL documents must be notarized with apostille and sent by priority mail to the address at the bottom of this page. If your documents are not in Japanese, English, or do not have Roman alphabet, (i.e. 罗马字, 로마자, Латинский алфавит, לאטיינישער אלפאבעטן, الأبجدية اللاتينية, Λατινικό αλφάβητο) they will need to be translated and then notarized before sending.

3. Once you have created your business account and gathered the required documents, please open a ticket with MtGox Support containing:

   - Subject: MtGox Business Account
   - Body/Text:
      - MtGox Account Number or Username.
      - A statement requesting the mailing address for business verification documents.

4. We recommend that all documents be sent via registered mail so that you may track and confirm receipt of your documents.  Once your documents have been received they will be reviewed by our AML team and you will receive an email if there are any questions or issues, or when your documents have been verified.

Once your business account has been verified and assigned a Premium status, you may add funds to your account.

« Previous    1  2  3  4  5  6  7  8  9    Next »

Overview  |  Recent

# Announcements »

**What's new at Mt.Gox (3) »**

Important Update for Accounts in Japan

Buy Bitcoin in Latin America with MtGox and AstroPay

Statement about Site Maintenance

**Announcements (27) »**

Update - Announcement Affecting Bitcoin Transfers - February 20th, 2014

MtGox Co.,Ltd Location and Address Change – February 19

Update - Announcement Affecting Bitcoin Transfers - February 17th, 2014

# Getting Started/Using MtGox »

**5 Easy Steps (5) »**

**Walkthroughs (4) »**

Step 1 - Making an Account

Step 2 - Verifying Your Account

Step 3 - Adding Funds

How to Change Your Account Password/Email Address

How to Set Up a Business Account with MtGox

How to Add a Withdrawal Method

# Support »

**FAQ** (7) »

General Questions

Security

AML Account Statuses

**Outages** (26) »

*RESOLVED*[Outage#57673] Bitcoin Deposit Delay

*Resolved* [ OUTAGE-#33031 ] Trading Unavailable

*Resolved* [Outage-30254] Trading Unavailable

# Welcome to MtGox Customer Service!

Stay updated with announcements, get answers from the community and share your feature suggestions with us.
You can submit a request here.

## Support Desk

### Update - Announcement Affecting Bitcoin Transfers - February 20th, 2014

Mike Feb 20 • Announcements / Announcements

Dear MtGox Customers,

Thank you for your patience this week while we are working on re-initiating bitcoin withdrawals. In addition to the technical issue, this week we have experienced some security problems, and as a result we had to relocate MtGox to our previous office building in Shibuya (details can be found here: https://support.mtgox.com/home). The move, combined with some other security and technical challenges, pushed back our progress.

As much as we didn't want to only provide an "update on an update", this is the current status. We are committed to solving this issue and will provide more information as soon as possible to keep everyone in the loop.

We are very sorry for the delays and deeply appreciate your kind understanding and continuous support.

Best regards,

MtGox Team

### MtGox Co.,Ltd Location and Address Change – February 19

Mike Feb 19 • Announcements / Announcements

Dear MtGox Customers,

MtGox Co.,Ltd. (Japan) has moved to the address below:

MtGox Co.,Ltd.
Cerulean Tower 15F
26-1 Sakuragaokacho
1508512 Shibuya Tokyo
Japan

Please send all documents/letters to the above address from now on.
Thank you for your kind cooperation.

Best Regards,

MtGox Team

### Update - Announcement Affecting Bitcoin Transfers - February 17th, 2014

Mike Feb 17 • Announcements / Announcements

February 17th, 2014

Dear MtGox Customers,

We apologize for the inconvenience caused by the recent suspension of external bitcoin transfers. Fortunately, as we announced on Saturday we have now implemented a solution that should enable withdrawals and mitigate any issues caused by transaction malleability (please see our previous statements for details on this issue).

Thanks to our friends at Blockchain.info, MtGox now has a workaround that will use a unique identifier created by Blockchain to show whether transactions have been modified or not. This will prevent any fraudulent use of the malleability issue and protect the assets of our customers.

**Resuming Withdrawals**

With this new system in place, MtGox should be able to resume withdrawals soon. At the beginning we will do so at a moderated pace and with new daily/monthly limits in place to prevent any problems with the new system and to take into account current market conditions.

In order to launch the new system, we are going through the following steps:

- Re-indexing the entire Blockchain (approx. 32 million entries).

- Fully deploying the new NTX ID.
- Implementing a new bitcoin withdrawal queue that needs to be tested.


We will update everyone again by Thursday at the latest.


Additionally, you may have noticed that we have added a new login system that sends you an email when you successfully access your account. This is an additional security layer, but as always we strongly encourage our customers to use the 2-step authorization options available in our Security Center. Thank you again for your support, and we look forward to resume bitcoin withdrawals as quickly as possible.


Best regards,

MtGox Team

## Maintenance Announcement Effecting Bitcoin Transfers - February 15th, 2014

Mike Feb 17  •  Announcements / Announcements

Tokyo, Japan, February 15th, 2014


Dear MtGox Customers,

In order to implement our solution to the "transaction malleability" issue being faced by bitcoin exchanges and businesses, we are going to have a 6-hour downtime on all bitcoin deposits and internal bitcoin transfers in addition to the current pause on bitcoin withdrawals. Trading will otherwise still be open as usual.

Maintenance Schedule (approximate): 6pm ~ 12am JST (February 15th)

The above downtime period is approximate: it may be shortened or lengthened as required. Once the implementation is complete customers will again be able to deposit bitcoin, but we will be doing extensive testing before bitcoin withdrawals are reactivated. We will publish an update on the situation on Monday .

BlockChain.info have implemented changes to address the malleability issue. Our solution should work in the short term, while a longer-term solution is being discussed with the Bitcoin Core Dev team and the Bitcoin Foundation. We are also discussing this with other exchanges and businesses.

Thank you for your support during the maintenance, and we will update you on the progress shortly.


Best regards,

MtGox Team

## Update - Statement Regarding BTC Withdrawal Delays

Marion Feb 10  •  Announcements / Announcements

Dear MtGox Customers and Bitcoiners,

As you are aware, the MtGox team has been working hard to address an issue with the way that bitcoin withdrawals are processed. By "bitcoin withdrawal" we are referring to transactions from a MtGox bitcoin wallet to an external bitcoin address. Bitcoin transactions to any MtGox bitcoin address, and currency withdrawals (Yen, Euro, etc) are not affected by this issue.

The problem we have identified is not limited to MtGox, and affects all transactions where Bitcoins are being sent to a third party. We believe that the changes required for addressing this issue will be positive over the long term for the whole community. As a result we took the necessary action of suspending bitcoin withdrawals until this technical issue has been resolved.


**Addressing Transaction Malleability**
MtGox has detected unusual activity on its Bitcoin wallets and performed investigations during the past weeks. This confirmed the presence of transactions which need to be examined more closely.


Non-technical Explanation:
A bug in the bitcoin software makes it possible for someone to use the Bitcoin network to alter transaction details to make it seem like a sending of bitcoins to a bitcoin wallet did not occur when in fact it did occur. Since the transaction appears as if it has not proceeded correctly, the bitcoins may be resent. MtGox is working with the Bitcoin core development team and others to mitigate this issue.


Technical Explanation:
Bitcoin transactions are subject to a design issue that has been largely ignored, while known to at least a part of the Bitcoin core developers and mentioned on the BitcoinTalk forums. This defect, known as "transaction malleability" makes it possible for a third party to alter the hash of any freshly issued transaction without invalidating the signature, hence resulting in a similar transaction under a different hash. Of course only one of the two transactions can be validated. However, if the party who altered the transaction is fast enough, for example with a direct connection to different mining pools, or has even a small amount of mining power, it can easily cause the transaction hash alteration to be committed to the blockchain.

The bitcoin api "sendtoaddress" broadly used to send bitcoins to a given bitcoin address will return a transaction hash as a way to track the transaction's insertion in the blockchain.
Most wallet and exchange services will keep a record of this said hash in order to be able to respond to users should they inquire about their transaction. It is likely that these services will assume the transaction was not sent if it doesn't appear in the blockchain with the original hash and have currently no means to recognize the alternative transactions as theirs in an efficient way.

This means that an individual could request bitcoins from an exchange or wallet service, alter the resulting transaction's hash before inclusion in the blockchain, then contact the issuing service while claiming the transaction did not proceed. If the alteration fails, the user can simply send the bitcoins back and try again until successful.

We believe this can be addressed by using a different hash for transaction tracking purposes. While the network will continue to use the current hash for the purpose of inclusion in each block's Merkle Tree, the new hash's purpose will be to track a given transaction and can be computed and indexed by hashing the exact signed string via SHA256 (in the same way transactions are currently hashed).

This new transaction hash will allow signing parties to keep track of any transaction they have signed and can easily be computed, even for past transactions.

We have discussed this solution with the Bitcoin core developers and will allow Bitcoin withdrawals again once it has been approved and standardized.

In the meantime, exchanges and wallet services - and any service sending coins directly to third parties - should be extremely careful with anyone claiming their transaction did not go through.

Note that this will also affect any other crypto-currency using the same transaction scheme as Bitcoin.

**Conclusion**

To put things in perspective, it's important to remember that Bitcoin is a very new technology and still very much in its early stages. What MtGox and the Bitcoin community have experienced in the past year has been an incredible and exciting challenge, and there is still much to do to further improve.

MtGox will resume bitcoin withdrawals to outside wallets once the issue outlined above has been properly addressed in a manner that will best serve our customers.

More information on the status of this issue will be released as soon as possible.

We thank you for taking the time to read this, and especially for your patience.

Best Regards,
MtGox Team

« Previous  *1* 2 3 4 5 6 7 8 9  Next »

Overview  |  Recent

# Announcements »

**What's new at Mt.Gox (3) »**

Important Update for Accounts in Japan

Buy Bitcoin in Latin America with MtGox and AstroPay

Statement about Site Maintenance

**Announcements (27) »**

Update - Announcement Affecting Bitcoin Transfers - February 20th, 2014

MtGox Co.,Ltd Location and Address Change – February 19

Update - Announcement Affecting Bitcoin Transfers - February 17th, 2014

# Getting Started/Using MtGox »

**5 Easy Steps (5) »**

Step 1 - Making an Account

Step 2 - Verifying Your Account

Step 3 - Adding Funds

**Walkthroughs (4) »**

How to Change Your Account Password/Email Address

How to Set Up a Business Account with MtGox

How to Add a Withdrawal Method

# Support »

**FAQ (7) »**

General Questions

Security

AML Account Statuses

**Outages (26) »**

*RESOLVED*[Outage#57673] Bitcoin Deposit Delay

*Resolved* [OUTAGE-#33031 ] Trading Unavailable

*Resolved* [Outage-30254] Trading Unavailable

# WOODROW - EXHIBIT D

Dow Jones Reprints: This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers, use the Order Reprints tool at the bottom of any article or visit www.djreprints.com

•  See a sample reprint in PDF format   •   Order a reprint of this article now

MARKETS

# Mt. Gox Shows Bitcoin's Growing Pains

*Travails Illustrate Market's Convulsions as First Generation of Companies Trading the Virtual Currency Face Challenges*

By TAKASHI MOCHIZUKI and ELEANOR WARNOCK

Updated Feb. 17, 2014 4:22 p.m. ET



Mark Karpelès, head of Mt. Gox *Bloomberg News*

TOKYO—Just six months ago, Mark Karpelès was sitting on top of the world. Mt. Gox, his Tokyo-based platform that had started as an exchange for Magic trading cards, had in a short time become the world's dominant platform for exchanging the new big thing—bitcoins.

Cut to a snowy February morning in Tokyo, and you find Mr. Karpelès trying to walk past a bitcoin trader holding a sign outside Mt. Gox's offices in the hip Shibuya neighborhood, asking: "MT. GOX—WHERE IS OUR MONEY?"

The trader, Kolin Burges, who had flown in from London, was only one of many customers of the company who have been pressing the trading platform to disclose more about its financial health after it froze customer withdrawals on Feb. 7.

The travails of Mt. Gox illustrate the convulsions of the bitcoin market as the first generation of companies trading the virtual currency face growing technical and security challenges.

**Related**

**Bitcoin's Crisis Is Turning Point for Currency**

Chris Larsen, chief executive of San Francisco-based Ripple Labs Inc., a startup associated with another virtual currency, likened the convulsions as the bitcoin market expands to the early days of the Internet, when it wasn't clear that the World Wide Web would really catch on.

Then, "it all just seemed like the craziest stuff—who would ever use this?—and now it's absolutely in the fabric of every enterprise on earth," he said.

Mr. Larsen developed Ripple with another bitcoin entrepreneur, Jed McCaleb, the founder of Mt. Gox, who sold it to Mr. Karpelès in 2011. The name Mt. Gox, which came from the Magic card game the company originally dealt in before Mr. McCaleb turned it onto bitcoins, is short for Magic: The Gathering Online Exchange.

Mt. Gox has been wrestling with problems since last year, when it temporarily halted withdrawals in dollars, saying it was overwhelmed by volume.

Also, in May, some of Mt. Gox's funds were seized by U.S. regulators, who said the exchange wasn't properly registered in the U.S. Mt. Gox said in a statement last month that it is has been properly registered as a money-services business in the U.S. since the end of June.

After Mt. Gox again abruptly halted customer withdrawals on Feb. 7, it blamed its issues on a glitch in the bitcoin software.

On Feb. 10, Mt. Gox said it had been hit by fraudulent requests for payment by users exploiting a feature in the core protocol known as "transaction malleability."

Initially, many in the bitcoin community argued that Mt. Gox had simply failed to use the correct internal procedures to protect its accounts. The next day, however, a hacking attack crippled other bitcoin-exchange platforms and raised questions about the security of the global network for trading the virtual currency.

**WSJ.D**

**Introducing WSJD, the Journal's new home for tech news, analysis and product reviews.**

**Nursing Homes Exposed to Hacks**

**'Candy Crush' Maker Files for IPO**

**Mt. Gox Shows Bitcoin's Growing Pains**

**Who Did You Vote For? Pandora May Know**

Asked why the company hadn't addressed customers' concern sooner, Mr. Karpelès responded in an email interview with The Wall Street Journal on Monday: "I assume you refer to the malleability issue. We sincerely apologize for this incident; however, please understand that we are NOT the developers of Bitcoin." He added, "We are very surprised that anyone could fault MtGox instead of the bitcoin software."

However, he said, "We deeply apologize for any delays in our responses."

After Mr. Karpelès, who was running an IT company in Tokyo, bought Mt. Gox from Mr. McCaleb in 2011, Mt. Gox became the world's biggest bitcoin exchange by volume, with more than 80% of bitcoin trades, according to Bitcoinity.org, a service that tracks rates on various exchanges. During that time, the price of a single bitcoin rose from 92 cents to a peak of more than $1,147 last December, based on figures from

CoinDesk, a bitcoin-data provider based in London.

CoinDesk removed Mt. Gox from its benchmark bitcoin index early last week. The index, which now includes just Slovenia-based Bitstamp and BTC-e of Bulgaria, stood at $621.88 in late New York trading Monday, while Mt. Gox-traded bitcoin was at just $270.31. Its share of bitcoin trades was down to 25% on Monday, according to Bitcoinity.org.

But aside from the lower value of its bitcoins, investors are increasingly concerned about the status of their Mt. Gox accounts. The company's halt of bitcoin transfers to outside accounts led investors to speculate on online forums that the company had its bitcoins stolen by hackers or that it was out of cash and would default.

Tomoaki Ushida, who runs an IT consulting firm in Tokyo, has given up hope of recovering the two bitcoins he had in his Mt. Gox account. "I try to convince myself that I paid for a good lesson," he said. "If I ever get them returned, I'm lucky."

In the email interview, Mr. Karpelès responded to questions about the company's solvency or protection for customers' funds by saying that the matter is confidential. However, he said the company had discussed its business model with Japanese authorities "to ensure that we are operating within the law here."

At a weekly meeting Thursday of Mt. Gox investors and other members of Tokyo's small, tightknit bitcoin community at a bar about a 10-minute walk from Mt. Gox's headquarters, some 30 bitcoiners talked about bitcoins and exchanged the currency using cellphone-readable bar codes. Some members reminisced about tipping burlesque dancers in bitcoins at a bar called the Pink Cow in Tokyo's foreigner-rich Roppongi neighborhood that accepts bitcoins for payment.

But the conversation revolved mostly around Mt. Gox and whether the exchange would be able to honor deposits. Organizers had extended an invitation to Mr. Karpelès but said they didn't receive a response.

Ken Shishido, one of the group's organizers who works in the telecom industry, said, "Everyone's question is whether the company still has everyone's bitcoin and cash. That's a very critical thing we need to know."

Mr. Burges, the London investor, was among the bitcoiners Thursday night. The next morning, outside Mt. Gox's offices, he managed to get in a brief confrontation with Mr. Karpelès. "You still have everyone's bitcoin?" Mr. Burges asked while Mr. Karpelès tried to navigate around him holding a Starbucks cup and an umbrella.

In the wider Japanese business community, bitcoins aren't widely used or even well-known. Japanese officials are cautious about making any comments about bitcoins as they wait for the Bank of Japan to finish a study about the virtual currency. Still, some Japan-based lawyers say certain restrictions, especially on exchange platforms, should be considered in order to prevent criminal use of the currency, such as for money-laundering.

"I believe that regulating exchanges would be the best way to address these problems," said So Saito, a lawyer at the Tokyo law firm of Nishimura & Asahi.

Meanwhile, the turmoil at Mt. Gox has touched even the Pink Cow, which hosted the burlesque dancers, which has switched to another bitcoin payment process called BitPay.

Mt. Gox transactions are "taking an unacceptable length of time right now, so we are taking another

route," said owner Traci Consoli. "Hopefully, a more stable system will evolve as it grows."

**Write to** Takashi Mochizuki at takashi.mochizuki@wsj.com and Eleanor Warnock at
eleanor.warnock@wsj.com

Copyright 2013 Dow Jones & Company, Inc. All Rights Reserved
This copy is for your personal, non-commercial use only. Distribution and use of this material are governed by our Subscriber Agreement and by copyright law.
For non-personal use or to order multiple copies, please contact Dow Jones Reprints at 1-800-843-0008 or visit
www.djreprints.com

# WOODROW - EXHIBIT E

平成２６年３月２０日

各　位

東京都渋谷区渋谷２丁目１１番５号<br>
株式会社ＭＴＧＯＸ<br>
代表取締役　カルプレス・マルク・マリ・ロベート

当社保有ビットコインの残高に関するお知らせ

　当社が保有するビットコイン（以下「ＢＴＣ」といいます。）の残高につき，以下の通りお知らせいたします。

(1)　　　当社は，当初，過去に利用していた旧式ウォレットの残高がないものと考えておりましたが，民事再生手続開始の申立てを契機に，当該ウォレットについても再スキャンにより残高の有無を調査していたところ，平成２６年３月７日（金），当社が平成２３年６月以前に利用していた旧式ウォレット内に約２０万ＢＴＣ（１９万９９９９．９９ＢＴＣ）が残存していることを確認いたしました。当社は，上記約２０万ＢＴＣの存在を確認した後，直ちに民事再生手続の申立代理人弁護士（以下「申立代理人」といいます。）に事実を報告し，翌同月８日（土）に聴き取りによる報告により，申立代理人に事情の詳細を説明しました。また，申立代理人も，週明けの同月１０日（月）に，裁判所及び監督委員に対して約２０万ＢＴＣの存在が確認されたことを報告しております。

(2)　　　なお，当社は，上記約２０万ＢＴＣについて，セキュリティの問題から，同月７日（金）に当社のシステム上のウォレット（オンラインのウォレット）に移動させた後，同月１４日（金）から１５日（土）にかけて，オフラインのウォレットに移動して保管しております。当社は，かかるＢＴＣの移動（保管方法の変更）について，申立代理人を通じて裁判所及び監督委員にその都度報告しております。
　　　また，当社が現在保有しているＢＴＣは，民事再生手続開始の申立て前より存在を把握していたＢＴＣ（約２千ＢＴＣ）と上記約２０万ＢＴＣを合わせて，合計約２０万２千ＢＴＣとなります。

(3)　　　これまで，当社は，民事再生手続開始の申立ての原因となったＢＴＣの消失に関し，保有していた約８５万ＢＴＣ（ユーザーの取引履歴上のビットコイン保高であるおよそ７５万ＢＴＣ，及び，当社自身の保有ビットコインである約１０万ＢＴＣの合計）のほぼ全てが消失したとお知らせしていましたが，上記のとおり，約２０万ＢＴＣの存在が確認されたことから，消失したＢＴＣの数量は約６５万ＢＴＣとなるものと見込んでおります（ただし，ＢＴＣの消失の原因や消失したＢＴＣの数量は現在調査中ですので，調査の結果により数量が変動する可能性があります。）。

[translation]

March 20, 2014

To everyone concerned

> Mark Karpeles
> Representative Director
> MtGox Co., Ltd.

We inform you as follows with regard to the balance of bitcoins (BTC) held by MtGox Co., Ltd.

1.      MtGox Co., Ltd. had certain old-format wallets which were used in the past and which, MtGox thought, no longer held any bitcoins. Following the application for commencement of a civil rehabilitation proceeding, these wallets were rescanned and their balance researched. On March 7, 2014, MtGox Co., Ltd. confirmed that an old-format wallet which was used prior to June 2011 held a balance of approximately 200,000 BTC (199,999.99 BTC). MtGox Co., Ltd. investigated the presence of these 200,000 BTC, immediately reported it to its counsels in the application for commencement of a civil rehabilitation proceedings ("counsels"). A hearing took place on March 8 where a detailed explanation of the situation was made to counsels. Immediately on Monday (March 10), counsels reported the existence of the 200,000 BTC to the Court and the Supervisor.

2.      For security reasons, the 200,000 BTC which were at first on the 7th moved to online wallets were moved between the 14th and the 15th to offline wallets. These bitcoin movements (including the change in the manner in which these bitcoins were stored) has been reported to the Court and the Supervisor by counsels.

Further, the bitcoins held today by MtGox Co., Ltd. amount to a total of approximately 202,000 BTC, including the above 200,000 BTC and the approximately 2,000 BTC which existed prior to the application for commencement of a civil rehabilitation proceeding.

3.      MtGox Co., Ltd. had previously reported about the disappearance of bitcoins which had triggered this application for commencement of a civil rehabilitation proceeding that MtGox Co., Ltd. had lost almost all of the approximately 850,000 bitcoins it held (approximately 750,000 BTC corresponding to the balance of bitcoins belonging from users as seen from transaction records as well as approximately 100,000 BTC belonging to MtGox). Taking into account the existence of the 200,000 BTC, the total number of bitcoins which have disappeared is therefore estimated to be approximately 650,000 BTC. (Please note that the reasons for their disappearance and the exact number of bitcoins which disappeared is still under investigation and that the above figures may still change depending on the results of the investigation.)