[translation]

# Civil Rehabilitation Proceeding Commencement Application

February 28, 2014

To the person in charge of civil rehabilitation
Tokyo District Court 20th Civil Chamber

| | |
|---|---|
| Applicant | MtGox Co., Ltd. |
| | 11-5, Shibuya 2-chome, Shibuya-ku, Tokyo 150-0002 |

Representative Director of the above Mark Marie Robert Karpeles

Counsel of the applicant
    Attorney-at-law   Hideyuki Yamamoto
    Attorney-at-law   Junko Suetomi
    Baker & McKenzie (Gaikokuho Joint Enterprise)
    Ark Hills Sengokuyama Mori Tower 28F
    Roppongi 1-9-10, Minato-ku, Tokyo 106-0032
    Tel: 03-6271-9900
    Fax: 03-5549-7736

Counsel of the applicant
    Attorney-at-law Akio Shinomiya
    Attorney-at-law Kazumasa Kawai
    Yodoyabashi & Yamagami LPC
    Yusen Bldg 4F
    Marunouchi 2-3-2, Chiyoda-ku, Tokyo 100-0005
    Tel: 03-6267-1241
    Fax: 03-6267-1210

Attachments

1. Certificate of eligibility (same as exhibit 2 of prima facie evidence documents)
2. Determination of Director
3. Power of attorney

Purpose of the application

A decision of commencement of civil rehabilitation procedure against the applicant is hereby demanded.

Reasons for the application

Section 1.  Facts causing the the civil rehabilitation commencement

The outline as well as the current situation of the assets and liabilities of the applicant (the debtor) MtGox Co., Ltd. (the "applicant") are as follows. The applicant is not able to pay his debts when due without severe impediments to the continuation of the activity and since there is also a possibility of assets exceeding liabilities, there is a possibility of a cause for bankruptcy. Further, the circumstances leading to the causes for commencement are indicated below.

Section 2.  Outline of the debtor
　　1.  Outline of the company
　　　　(1)  Corporate name
　　　　　　The name is: MtGox Co., Ltd.
　　　　(2)  Business purpose of the company
　　　　　　①  Building and consulting with regard to IT systems
　　　　　　②  Development, production and consulting with regard to web content for the internet
　　　　　　③  Planning, development and design of computers and servers
　　　　　　④  Management and administration of internet sites
　　　　　　⑤  Anything incidental to each of the above.
　　　　(3)  Shares and amount of capital
　　　　　　Total number of shares that can be issued   10,000 shares
　　　　　　Total number of shares issued              500 shares
　　　　　　Amount of capital                         JPY 5,000,000
　　　　(4)  Date of establishment
　　　　　　August 9, 2011
　　　　(5)  Shareholders
　　　　　　The following two parties. Further, the representative of the

applicant, Mark Marie Robert Karpeles (the "applicant representative") holds 100% of the issued shares of Tibanne Co., Ltd. (the "parent company" or "Tibanne") which owns 440 shares of the applicant (88% of the total number of issued shares).

Tibanne          440 shares (88% of the total)
Jed McCaleb (individual) 60 shares (12% of the total)

(6) Directors
Representative Director Mark Marie Robert Karpeles
As indicated above, the applicant representative is also the representative director of the parent company as well as its only shareholder.

(7) Address of the head office
11-5, Shibuya 2-chome, Shibuya-ku, Tokyo

2. Business of the applicant
The main business of the applicant is the operation of an online exchange for the purchase and sale of virtual currencies such as bitcoins.

3. Facilities at factories and other places of business
The only place of business of the company is at the address of its head office at 11-5, Shibuya 2-chome, Shibuya-ku, Tokyo.
This office is leased by the parent company and the applicant leases it from Tibanne.

4. Employees
There are no employees directly employed by the applicant but a service agreement has been executed with the parent company and the applicant receives services from the parent company. The parent company has 32 employees (permanent employees, contract employees, arbeito).

Section 3.    Situation of the assets and liabilities of the applicant

3

1. Balance sheet for the two most recent fiscal years

The balance sheets of the applicant since its establishment are as submitted in the prima facie evidence documentation. The outline is as follows:

| Balance sheet | August 9, 2011 - March 31, 2012 | April 1, 2012 - March 31, 2013 |
|---|---|---|
| Current assets | 95 | 3,838,803 |
| Total assets | 95 | 3,838,803 |
| Current liabilities | 21,232 | 3,831,393 |
| Total liabilities | 21,232 | 3,831,393 |
| Total net assets | (21,137) | 7,410 |
| Total liabilities and net assets | 95 | 3,838,803 |

2. Profit and loss statement for the two most recent fiscal years

The profit and loss statement of te application since its establishment are as submitted in the prima facie evidence documentation. The outline is as follows:

| Profit and loss statement | August 9, 2011 - March 31, 2012 | April 1, 2012 - March 31, 2013 |
|---|---|---|
| Sales | 0 | 135,072 |
| Gross margin | 950 | 131,085 |
| Operating margin | (26,138) | 21,205 |
| Current margin | 0 | 29,395 |
| Current net income (loss) | (26,137) | 28,548 |

3. Contents of the assets

The assets of the applicant are as shown in the list of assets. The situation, etc. of the main assets is as follows.

Current assets:
(1) Cash deposits

The applicant holds a total of JPY 513,988,952 in banks and at payment service providers.

(2) BTC account

The applicant earns a bitcoin fee of approximately 0.6% from users of the exchange of the applicant ("users") who sell bitcoins. This bitcoin fee is recorded as an assets in the

4

    account "BTC account". Its value as of the time of the application is approximately JPY 901 millions.

(3)  Inventory assets

    This includes OTP cards (JPY 18,627,790), Yubikeys (JPY 3,419,440) for a total of JPY 22,047,230.

(4)  Advance payments

    Advance fees of JPY 7,968,000 paid to an annual event in France, E Logic, for computer fans.

(5)  Short term loans

    This includes expenses borne on behalf of related companies as well as related loans. The total amounts to JPY 801,249,564.

(6)  Other companies cash

    These are cash deposits located outside the bank accounts of the applicant. The total amounts to JPY 1,384,057,302.

Fixed assets:

(7)  Fixtures and tools

    These include computers, hardware and servers for a total of JPY 107,510,694.

(8)  Development expenses

    This include software development, web pages development, mobile phone developments. The total amounts to JPY 91,964,675.

(9)  Deposits

    The deposit for the leased space is JPY 540,000.

(10)  Deposited insurance money

    Seizures resulting from provisional dispositions.
JPY 10,586,875

Total assets              JPY 3,841,866,163

4.  Contents of the liabilities

  The liabilities of the applicant are as follows.

  (1)  Trade accounts payable

     The total amount of trade accounts payable can mostly be

5

|  |  |  |
|---|---|---|
|  | ascertained and, although it does not include everything, amounts to JPY 19,033,902. | |
| (2) | BTC suspense receipts | JPY 901,952,870 |
|  | This is the same amount as the one recorded in "BTC account" on the assets side. | |
| (3) | Deposits | JPY 5,502,576,538 |
|  | Cash deposited from users (there are approximately 127,000 users). | |

Section 4.   Other procedures or disposition related to the properties of the applicant

1. Lawsuits in Japan
   Case no.   Tokyo District Court 2013 (*wa*) 33872 Claim for return of deposits
   Case outline   This is a claim for return of a deposit of approximately JPY 10 million made by a user (individual)

2. Civil proceedings in the USA
   The applicant has received from a Delaware corporation a claim for payment of damages of USD 75 million for breach of a license contract. On the other hand, the applicant is claiming the return of USD 5 million from the same corporation. The lawsuit is proceeding in the United States District Court, Western District of Washington.

3. Seizure of deposits from the Department of Homeland Security
   The US Department of Homeland Security has seized USD 5 million from a related company of the applicant. The deposits are not those of the applicant but were held under the name of a related company but the source of these funds were deposits from users (mostly US users).

Section 5.   Existence of labor unions
None.

Section 6.   Existence of foreign bankruptcy proceedings
None.

Section 7.     Permits from administrative authorities or other agencies with regard to the establishment of the company or its business purpose
None.

Section 8.     Related companies
The related companies of the applicant are as shown in the prima facie evidence documentation. The applicant has two subsidiaries and the parent of the applicant, Tibanne has several subsidiaries other than the applicant.
Said corporations can be separated into two categories. The first one consists in corporations established in countries where the applicant which is a Japanese corporation cannot for financial regulations reasons open an account with financial instructions (since users exist all over the world, there is a need to have accounts in many financial institutions to receive deposits from users). The second category consists of corporation established for a business or with a business purpose unrelated to the operation of a bitcoin online exchange.

Section 9.     Existence of a cause for commencement of proceedings

  1.    Account up to the application
    (1)    Establishment of the applicant
        Jed McCaleb, one of the shareholders of the applicant developed the software to exchange online the virtual currency known as bitcoin and the online exchange started operations in 2010. In February 2011, the online exchange (not only the system but also the customers and the bitcoins held) was transferred from Jed McCaleb to Tibanne and Tibanne established the applicant on August 9, 2011 as recipient for the business.
        When transferring the business, Tibanne delivered to Jed McCaleb 60 shares of the applicant as part of the price for the business which explains why Jed McCaleb is also a shareholder of the applicant.

7

(2) Expansion of the business of the applicant

Immediately following the continuation of the business by Tibanne, in June 2011, the system was hacked and Tibanne had to stop the online exchange, develop new software and restart the online exchange after a few weeks. Following this, the business grew rapidly.

The applicant was at some time the largest bitcoin exchange in the world.

(3) Troubles with the applicant business

In May 2013, the US Department of Homeland Security ("DHS") seized approximately USD 5 million in the US bank account and the account held at a money transmitting business provider of Mutum Sigillum LLC, a corporation related to the applicant.

The reasons for the seizure was the fact that the applicant did not have a money transmitter license in the US. With regard to the return of the funds seized, negotiations have been going on for more than 6 months but there is no solution in sight.

Further, in order to solve its regulatory problems, the applicant looked for a business partner and in November 2012 executed a license agreement with CoinLab Inc. The purpose of this agreement was to transfer to CoinLab Inc., as licensee, the US business and it stipulated a fixed transition period to ensure a smooth transfer. However, CoinLab Inc. used the test of the API with the site of the applicant during said period to unduly collect in its own account large amounts from users. CoinLab Inc. returned a part of these funds but has failed to return approximately USD 5 million. The applicant is in a lawsuit with CoinLab Inc in a US court and but there are no prospects yet for the return of these funds.

(4) Troubles which lead to the application

At the start of February 2014, illegal access which abused a bug in the bitcoin base software (the software which manages the transfers, confirmation and mining, etc.) known as

8

"transaction malleability" resulted in an increase in unconfirmed transactions of bitcoins transfers (bitcoins withdrawals) and it was found that there was a possibility that the abuse of this bug may have resulted in illicit withdrawals of bitcoins. On February 10, 2014, the applicant stopped the withdrawal of bitcoins in order to eliminate the impact of this bug and develop and test an upgrade to the software of the applicant. The existence of this bug was known since May 2011 but it was not known until the end of January 2014 that it could lead to a large number of unconfirmed transactions and to a risk of illicit withdrawals. Following this, the applicant's investigation revealed that a large number of bitcoins had disappeared and although the exact situation is still not known today, it was found that until February 24, 2014, almost all of 750,000 bitcoins held on the basis of users transactions records as well as of 100,000 bitcoins held on the basis of the applicant's own transaction records had disappeared. These 750,000 bitcoins expressed in currency would amount to approximately JPY 11.46 billion on the basis of the last exchange rate on the online exchange of the applicant on February 25 which is the date when the exchange service was stopped (1 bitcoin = 13472.79 yen). The applicant believes that there is a high probability that the bitcoins were stolen by the abuse of the above bug and is currently asking an expert to investigate criminal complaints as well as procedures.

Further, on February 24, it was found that there was a large discrepancy in the total of deposit balances at those financial institutions which managed said deposits compared to the total amount actually deposited by users and that there was a large shortfall of deposit balances (the amounts are still under investigation and will probably change but the amount should be a maximum of JPY 2.8 billion).

The reasons for these problems are under investigation. It is probable that there are several causes including damages from hacking by third parties but it is necessary to

9

investigate a huge number of past transactions in order to find these causes. As of this date, it is therefore not possible to confirm the total amount of bitcoins which disappeared and the shortfall of deposit balances compared to money deposited.

The applicant judged that continuing the business normally would be difficult taking into account the lost bitcoins and the discrepancy between deposit balances and the balance of funds deposited and stopped all access to the site of the applicant around noon (Japan time) on February 25.

2. Insolvency, liabilities exceeding assets

From the circumstances described above, the total current liabilities of the applicant amount to JPY 6.4 billion compared to total assets of JPY 3.8 billion and the applicant is therefore in a situation of liabilities exceeding assets.

Further, making public the loss of bitcoins and the shortfall of funds deposited would abruptly worsen the credit of the applicant which is already affected by users' concerns about the stop of currency withdrawals and the stop of the online exchange service. A rush of withdrawals of bitcoins or currencies from users would clearly be impossible for the applicant to pay. It is therefore obvious that the applicant is not able to face the payment of its debts at the time they are due without this creating a significant problem to the business of the applicant.

Section 10. Opinion of the applicant with regard to the policy of drafting a rehabilitation plan

1. Method of rehabilitation

The main source of revenue of the application is the fees earned upon the purchase of sale and bitcoins on the online exchange (both purchaser and seller pay a fee of approximately 0.6% to the applicant). Users of the online exchange include many which use bitcoins as a method of daily settlement of funds and many which transact for the purpose of investment focusing on the different exchanges rates

10

available on each online exchange. On this basis, even if the currencies and bitcoins deposited cannot be used, exchanged or converted, the applicant believes that if the online exchange was restarted and if trust was restored in the business by a change in management, it is expected that many users would transact bitcoins again and new users would start transactions on the online exchange of the applicant. Accordingly, if the online exchange system could be restarted without problems, since it is possible to search for persons willing to invest in the online exchange system, the business could be rehabilitated by having said person succeed the online exchange system and the funds obtained from said succession would secure the funds necessary to repay rehabilitation debts.

2. Future financing plans

   Since there is sufficient cash on hand, financing is not an issue.

3. Prospects of cooperation from creditors, employees and important business partners

   (1) Creditors

   The impossibility for creditors to withdraw bitcoins and currencies is likely to generate significant reaction.

   Taking this into account, it is necessary to thoroughly investigate the disappearance of bitcoins and deposits which is the cause for this application, to evaluate damages, find causes, to actively repair damages, report damages to authorities and cooperate with their investigations. But even if these investigations, activities to repair damages, report and cooperation with authorities, etc. were implemented, the civil rehabilitation which assumes a rehabilitation of the activity should be easier for creditors to accept than a bankruptcy proceeding which would almost exclude any possibility of restart of the business. On this basis, the cooperation of creditors may be expected.

   Further, according to some press reports, chief cabinet secretary Suga expressed in a press conference that the government would react as necessary after having collected

    information through related government agencies and understood the situation. The applicant will do its best efforts to cooperate fully with authorities and with any agencies in or outside Japan investigating the situation and asking for the applicant's cooperation.

(2)  Employees, important business partners

    Since the cooperation of the parent Tibanne can be obtained, the cooperation of the employees should not be a problem. Further, the main business partners of the applicant are the users of the online exchange, there should be no problems obtaining their continuing cooperation even after the application for civil rehabilitation.

Prima facie evidence documentation

1. Articles of association
2. Certificate of commercial registry
3. Shareholders' registration
4. and 5. Financial statements and details of account headings
6. List of creditors (trade accounts payable)
   (since there are lots of member creditors for whom only an email address is known, this will be filed after further investigations)
7. List of assets
8. Chart showing related companies