

## Sign in with your MtGox account to see your wallet(s) balance.

Username: .................    Password: ...............    [ Sign in ]

**アカウントをご確認いただくユーザーの皆様への重要なお知らせ**
このサイトでご確認いただく残高は，あくまでも，ユーザーの皆様の便宜のために当社が行っているサービスに過ぎません。
このサイトでアカウントの残高をご確認いただくことが，民事再生手続上の再生債権の届出を意味するわけではなく，また，ご確認いただいた残高の全額が民事再生手続における再生債権として認められるとは限りませんのでご注意ください。
民事再生手続における再生債権額は，債権届出及びその後の債権調査手続により確定することとなりますが，債権届出の方法等につきましては，本件での取り扱いをお知らせできる状況になりましたら，当社のホームページへ掲載いたします。

以上

**Important announcement to all users confirming their account**
This balance confirmation service is provided on this site only for the convenience of all users.
Please be aware that confirming the balance on this site does not constitute a filing of rehabilitation claims under the civil rehabilitation procedure and note that the balance amounts shown on this site should also not be considered an acknowledgment by MtGox Co., Ltd. of the amount of any rehabilitation claims of users.
Rehabilitation claims under a civil rehabilitation procedure become confirmed from a filing which is followed by an investigation procedure. The method for filing claims will be published on this site as soon as we will be in situation to announce it.

## Press Releases & Announcements:

- 2014-03-28: 調査結果報告書の提出期限伸長のお知らせ / Announcement regarding the extension of the deadline for submission of the examination results report
- 2014-03-26: ビットコインの消失に係る捜査機関への相談に関するお知らせ / Announcement with regard to consultations with investigating authorities on the disappearance of bitcoins
- 2014-03-20: 当社保有ビットコインの残高に関するお知らせ / Announcement regarding the balance of Bitcoin held by the company
- 2014-03-14: 米国連邦破産法第１５章適用の申請に関するお知らせ / Announcement regarding the applicability of US Bankruptcy Code Chapter 15
- 2014-03-08: MTGOX 詐欺メール注意喚起通知 / Spam warning
- 2014-03-04: 包括的禁止命令主文の通知 / Comprehensive Prohibition Order Judgment Announcement
- 2014-03-03: 民事再生手続に関するよくあるご質問に対する回答



http://www.mtgox.com/

- ◦ 2014-02-28: 民事再生手続開始の申立てに関するお知らせ / Announcement Regarding An Application For Commencement Of A Prodedure Of Civil Rehabilitation

[translation]

Civil Rehabilitation Proceeding Commencement Application

February 28, 2014

To the person in charge of civil rehabilitation

Tokyo District Court 20th Civil Chamber

Applicant        MtGox Co., Ltd.

11-5, Shibuya 2-chome, Shibuya-ku, Tokyo 150-0002

Representative Director of the above Mark Marie Robert Karpeles

Counsel of the applicant

Attorney-at-law  Hideyuki Yamamoto

Attorney-at-law  Junko Suetomi

Baker & McKenzie (Gaikokuho Joint Enterprise)

Ark Hills Sengokuyama Mori Tower 28F

Roppongi 1-9-10, Minato-ku, Tokyo 106-0032

Tel: 03-6271-9900

Fax: 03-5549-7736

Counsel of the applicant

Attorney-at-law Akio Shinomiya

Attorney-at-law Kazumasa Kawai

Yodoyabashi & Yamagami LPC

Yusen Bldg 4F

Marunouchi 2-3-2, Chiyoda-ku, Tokyo 100-0005

Tel: 03-6267-1241

Fax: 03-6267-1210

Attachments

1.        Certificate of eligibility (same as exhibit 2 of prima facie evidence documents)

2.        Determination of Director

3.        Power of attorney

1



Purpose of the application

A decision of commencement of civil rehabilitation procedure against the applicant is hereby demanded.

Reasons for the application

Section 1.          Facts causing the the civil rehabilitation commencement

The outline as well as the current situation of the assets and liabilities of the applicant (the debtor) MtGox Co., Ltd. (the "applicant") are as follows. The applicant is not able to pay his debts when due without severe impediments to the continuation of the activity and since there is also a possibility of assets exceeding liabilities, there is a possibility of a cause for bankruptcy. Further, the circumstances leading to the causes for commencement are indicated below.

Section 2.          Outline of the debtor
        1.          Outline of the company
                (1)          Corporate name
                              The name is: MtGox Co., Ltd.
                (2)          Business purpose of the company
                        ①          Building and consulting with regard to IT systems
                        ②          Development, production and consulting with regard to web content for the internet
                        ③          Planning, development and design of computers and servers
                        ④          Management and administration of internet sites
                        ⑤          Anything incidental to each of the above.
                (3)          Shares and amount of capital
                              Total number of shares that can be issued   10,000 shares
                              Total number of shares issued                    500 shares
                              Amount of capital                                        JPY 5,000,000
                (4)          Date of establishment
                              August 9, 2011
                (5)          Shareholders
                              The following two parties. Further, the representative of the

2

applicant, Mark Marie Robert Karpeles (the "applicant representative") holds 100% of the issued shares of Tibanne Co., Ltd. (the "parent company" or "Tibanne") which owns 440 shares of the applicant (88% of the total number of issued shares).

Tibanne                440 shares (88% of the total)
Jed McCaleb (individual) 60 shares (12% of the total)

(6)    Directors
Representative Director Mark Marie Robert Karpeles
As indicated above, the applicant representative is also the representative director of the parent company as well as its only shareholder.

(7)    Address of the head office
11-5, Shibuya 2-chome, Shibuya-ku, Tokyo

2.    Business of the applicant
The main business of the applicant is the operation of an online exchange for the purchase and sale of virtual currencies such as bitcoins.

3.    Facilities at factories and other places of business
The only place of business of the company is at the address of its head office at 11-5, Shibuya 2-chome, Shibuya-ku, Tokyo.
This office is leased by the parent company and the applicant leases it from Tibanne.

4.    Employees
There are no employees directly employed by the applicant but a service agreement has been executed with the parent company and the applicant receives services from the parent company. The parent company has 32 employees (permanent employees, contract employees, arbeito).

Section 3.    Situation of the assets and liabilities of the applicant

3

1.    Balance sheet for the two most recent fiscal years

The balance sheets of the applicant since its establishment are as submitted in the prima facie evidence documentation. The outline is as follows:

| Balance sheet | August 9, 2011 - March 31, 2012 | April 1, 2012 - March 31, 2013 |
|---|---|---|
| Current assets | 95 | 3,838,803 |
| Total assets | 95 | 3,838,803 |
| Current liabilities | 21,232 | 3,831,393 |
| Total liabilities | 21,232 | 3,831,393 |
| Total net assets | (21,137) | 7,410 |
| Total liabilities and net assets | 95 | 3,838,803 |

2.    Profit and loss statement for the two most recent fiscal years

The profit and loss statement of te application since its establishment are as submitted in the prima facie evidence documentation. The outline is as follows:

| Profit and loss statement | August 9, 2011 - March 31, 2012 | April 1, 2012 - March 31, 2013 |
|---|---|---|
| Sales | 0 | 135,072 |
| Gross margin | 950 | 131,085 |
| Operating margin | (26,138) | 21,205 |
| Current margin | 0 | 29,395 |
| Current net income (loss) | (26,137) | 28,548 |

3.    Contents of the assets

The assets of the applicant are as shown in the list of assets. The situation, etc. of the main assets is as follows.

Current assets:

(1)    Cash deposits

The applicant holds a total of JPY 513,988,952 in banks and at payment service providers.

(2)    BTC account

The applicant earns a bitcoin fee of approximately 0.6% from users of the exchange of the applicant ("users") who sell bitcoins. This bitcoin fee is recorded as an assets in the

4

account "BTC account". Its value as of the time of the application is approximately JPY 901 millions.

(3)    Inventory assets

This includes OTP cards (JPY 18,627,790), Yubikeys (JPY 3,419,440) for a total of JPY 22,047,230.

(4)    Advance payments

Advance fees of JPY 7,968,000 paid to an annual event in France, E Logic, for computer fans.

(5)    Short term loans

This includes expenses borne on behalf of related companies as well as related loans. The total amounts to JPY 801,249,564.

(6)    Other companies cash

These are cash deposits located outside the bank accounts of the applicant. The total amounts to JPY 1,384,057,302.

Fixed assets:

(7)    Fixtures and tools

These include computers, hardware and servers for a total of JPY 107,510,694.

(8)    Development expenses

This include software development, web pages development, mobile phone developments. The total amounts to JPY 91,964,675.

(9)    Deposits

The deposit for the leased space is JPY 540,000.

(10)    Deposited insurance money

Seizures resulting from provisional dispositions. JPY 10,586,875

Total assets                        JPY 3,841,866,163

4.    Contents of the liabilities

The liabilities of the applicant are as follows.

(1)    Trade accounts payable

The total amount of trade accounts payable can mostly be

5

ascertained and, although it does not include everything, amounts to JPY 19,033,902.

(2)    BTC suspense receipts        JPY 901,952,870

This is the same amount as the one recorded in "BTC account" on the assets side.

(3)    Deposits        JPY 5,502,576,538

Cash deposited from users (there are approximately 127,000 users).

Section 4.    Other procedures or disposition related to the properties of the applicant

1.    Lawsuits in Japan

Case no.  Tokyo District Court 2013 (*wa*) 33872 Claim for return of deposits

Case outline    This is a claim for return of a deposit of approximately JPY 10 million made by a user (individual)

2.    Civil proceedings in the USA

The applicant has received from a Delaware corporation a claim for payment of damages of USD 75 million for breach of a license contract. On the other hand, the applicant is claiming the return of USD 5 million from the same corporation. The lawsuit is proceeding in the United States District Court, Western District of Washington.

3.    Seizure of deposits from the Department of Homeland Security

The US Department of Homeland Security has seized USD 5 million from a related company of the applicant. The deposits are not those of the applicant but were held under the name of a related company but the source of these funds were deposits from users (mostly US users).

Section 5.    Existence of labor unions

None.

Section 6.    Existence of foreign bankruptcy proceedings

None.

Section 7.        Permits from administrative authorities or other agencies with regard
                  to the establishment of the company or its business purpose
                  None.


Section 8.        Related companies
                  The related companies of the applicant are as shown in the prima facie
                  evidence documentation. The applicant has two subsidiaries and the
                  parent of the applicant, Tibanne has several subsidiaries other than
                  the applicant.
                  Said corporations can be separated into two categories. The first one
                  consists in corporations established in countries where the applicant
                  which is a Japanese corporation cannot for financial regulations
                  reasons open an account with financial instructions (since users exist
                  all over the world, there is a need to have accounts in many financial
                  institutions to receive deposits from users). The second category
                  consists of corporation established for a business or with a business
                  purpose unrelated to the operation of a bitcoin online exchange.


Section 9.        Existence of a cause for commencement of proceedings


    1.            Account up to the application
                  (1)       Establishment of the applicant
                            Jed McCaleb, one of the shareholders of the applicant
                            developed the software to exchange online the virtual
                            currency known as bitcoin and the online exchange started
                            operations in 2010. In February 2011, the online exchange
                            (not only the system but also the customers and the bitcoins
                            held) was transferred from Jed McCaleb to Tibanne and
                            Tibanne established the applicant on August 9, 2011 as
                            recipient for the business.
                            When transferring the business, Tibanne delivered to Jed
                            McCaleb 60 shares of the applicant as part of the price for the
                            business which explains why Jed McCaleb is also a
                            shareholder of the applicant.


7

(2)    Expansion of the business of the applicant

Immediately following the continuation of the business by Tibanne, in June 2011, the system was hacked and Tibanne had to stop the online exchange, develop new software and restart the online exchange after a few weeks. Following this, the business grew rapidly.

The applicant was at some time the largest bitcoin exchange in the world.

(3)    Troubles with the applicant business

In May 2013, the US Department of Homeland Security ("DHS") seized approximately USD 5 million in the US bank account and the account held at a money transmitting business provider of Mutum Sigillum LLC, a corporation related to the applicant.

The reasons for the seizure was the fact that the applicant did not have a money transmitter license in the US. With regard to the return of the funds seized, negotiations have been going on for more than 6 months but there is no solution in sight.

Further, in order to solve its regulatory problems, the applicant looked for a business partner and in November 2012 executed a license agreement with CoinLab Inc. The purpose of this agreement was to transfer to CoinLab Inc., as licensee, the US business and it stipulated a fixed transition period to ensure a smooth transfer. However, CoinLab Inc. used the test of the API with the site of the applicant during said period to unduly collect in its own account large amounts from users. CoinLab Inc. returned a part of these funds but has failed to return approximately USD 5 million. The applicant is in a lawsuit with CoinLab Inc in a US court and but there are no prospects yet for the return of these funds.

(4)    Troubles which lead to the application

At the start of February 2014, illegal access which abused a bug in the bitcoin base software (the software which manages the transfers, confirmation and mining, etc.) known as

8

"transaction malleability" resulted in an increase in unconfirmed transactions of bitcoins transfers (bitcoins withdrawals) and it was found that there was a possibility that the abuse of this bug may have resulted in illicit withdrawals of bitcoins. On February 10, 2014, the applicant stopped the withdrawal of bitcoins in order to eliminate the impact of this bug and develop and test an upgrade to the software of the applicant. The existence of this bug was known since May 2011 but it was not known until the end of January 2014 that it could lead to a large number of unconfirmed transactions and to a risk of illicit withdrawals.

Following this, the applicant's investigation revealed that a large number of bitcoins had disappeared and although the exact situation is still not known today, it was found that until February 24, 2014, almost all of 750,000 bitcoins held on the basis of users transactions records as well as of 100,000 bitcoins held on the basis of the applicant's own transaction records had disappeared. These 750,000 bitcoins expressed in currency would amount to approximately JPY 11.46 billion on the basis of the last exchange rate on the online exchange of the applicant on February 25 which is the date when the exchange service was stopped (1 bitcoin = 13472.79 yen). The applicant believes that there is a high probability that the bitcoins were stolen by the abuse of the above bug and is currently asking an expert to investigate criminal complaints as well as procedures.

Further, on February 24, it was found that there was a large discrepancy in the total of deposit balances at those financial institutions which managed said deposits compared to the total amount actually deposited by users and that there was a large shortfall of deposit balances (the amounts are still under investigation and will probably change but the amount should be a maximum of JPY 2.8 billion).

The reasons for these problems are under investigation. It is probable that there are several causes including damages from hacking by third parties but it is necessary to

9

investigate a huge number of past transactions in order to find these causes. As of this date, it is therefore not possible to confirm the total amount of bitcoins which disappeared and the shortfall of deposit balances compared to money deposited.

The applicant judged that continuing the business normally would be difficult taking into account the lost bitcoins and the discrepancy between deposit balances and the balance of funds deposited and stopped all access to the site of the applicant around noon (Japan time) on February 25.

2.      Insolvency, liabilities exceeding assets

From the circumstances described above, the total current liabilities of the applicant amount to JPY 6.4 billion compared to total assets of JPY 3.8 billion and the applicant is therefore in a situation of liabilities exceeding assets.

Further, making public the loss of bitcoins and the shortfall of funds deposited would abruptly worsen the credit of the applicant which is already affected by users' concerns about the stop of currency withdrawals and the stop of the online exchange service. A rush of withdrawals of bitcoins or currencies from users would clearly be impossible for the applicant to pay. It is therefore obvious that the applicant is not able to face the payment of its debts at the time they are due without this creating a significant problem to the business of the applicant.

Section 10.      Opinion of the applicant with regard to the policy of drafting a rehabilitation plan

1.      Method of rehabilitation

The main source of revenue of the application is the fees earned upon the purchase of sale and bitcoins on the online exchange (both purchaser and seller pay a fee of approximately 0.6% to the applicant). Users of the online exchange include many which use bitcoins as a method of daily settlement of funds and many which transact for the purpose of investment focusing on the different exchanges rates

10

available on each online exchange. On this basis, even if the currencies and bitcoins deposited cannot be used, exchanged or converted, the applicant believes that if the online exchange was restarted and if trust was restored in the business by a change in management, it is expected that many users would transact bitcoins again and new users would start transactions on the online exchange of the applicant.

Accordingly, if the online exchange system could be restarted without problems, since it is possible to search for persons willing to invest in the online exchange system, the business could be rehabilitated by having said person succeed the online exchange system and the funds obtained from said succession would secure the funds necessary to repay rehabilitation debts.

2.      Future financing plans

Since there is sufficient cash on hand, financing is not an issue.

3.      Prospects of cooperation from creditors, employees and important business partners

(1)      Creditors

The impossibility for creditors to withdraw bitcoins and currencies is likely to generate significant reaction.

Taking this into account, it is necessary to thoroughly investigate the disappearance of bitcoins and deposits which is the cause for this application, to evaluate damages, find causes, to actively repair damages, report damages to authorities and cooperate with their investigations. But even if these investigations, activities to repair damages, report and cooperation with authorities, etc. were implemented, the civil rehabilitation which assumes a rehabilitation of the activity should be easier for creditors to accept than a bankruptcy proceeding which would almost exclude any possibility of restart of the business. On this basis, the cooperation of creditors may be expected.

Further, according to some press reports, chief cabinet secretary Suga expressed in a press conference that the government would react as necessary after having collected

11

information through related government agencies and understood the situation. The applicant will do its best efforts to cooperate fully with authorities and with any agencies in or outside Japan investigating the situation and asking for the applicant's cooperation.

(2)    Employees, important business partners

Since the cooperation of the parent Tibanne can be obtained, the cooperation of the employees should not be a problem. Further, the main business partners of the applicant are the users of the online exchange, there should be no problems obtaining their continuing cooperation even after the application for civil rehabilitation.

Prima facie evidence documentation

1.    Articles of association
2.    Certificate of commercial registry
3.    Shareholders' registration
4. and 5. Financial statements and details of account headings
6.    List of creditors (trade accounts payable)
       (since there are lots of member creditors for whom only an email address is known, this will be filed after further investigations)
7.    List of assets
8.    Chart showing related companies

12

<    Wearable tech for tracking when cows are    Delta is offering the opportunity to meet    >
      'in heat'? Sure, why not?                 entrepreneurs at 35,000 feet

# Sound familiar? Bitcoin exchange Vircurex freezes customer accounts as it battles insolvency



Just **25** more days until TNW Europe Conference starts. Get your tickets now!

The implosion of Mt. Gox has been widely heralded as a sign of a new era of Bitcoin companies, but there are still examples of the unpredictable and shady side of the cryptocurrency world, as developments at Vircurex demonstrate.

**JON RUSSELL**
6 days ago
**Follow**



EXHIBIT
C

The Beijing-based virtual currency exchange is much smaller than Mt. Gox, but it is notable that it has stopped withdrawals of Bitcoin, Litecoin and other coins today, and it will freeze all existing user accounts from Monday after running into serious financial issues.

Vircurex was hacked twice last year and had been using a reserve of 'cold storage' currency to reimburse users whose balances were affected by the hacks. However, "large fund withdrawals in the last weeks... have lead to a complete depletion" of the reserves, the company says, meaning that it doesn't have the funds to pay back affected users. (The exact amount lost to hackers was never made public by Vircurex.)

Rather than filing for bankruptcy, as Mt. Gox has done, Vircurex is locking down its existing accounts and has a strategy aimed at paying back all affected customers and returning the exchange to positive financial health.

A statement on its website explains:

*1. We will introduce an additional balance type called "Frozen Funds". Funds in this balance type cannot be used to trade or withdraw. Those are the balances that the exchange will gradually pay back and hence transfer back to the available balance over time.*

*2. We will move all current balances for BTC, LTC, TRC and FTC to the "Frozen Balance", i.e. your balance will be set to 0.*

*3. We'll take the current available cold storage balance and distribute it based on the below described distribution logic.*

*4. Monthly we will take the net profit of the exhchange [sic] and credit back that amount distributed to the users based on the described distribution logic.*

*...*

## *Distribution logic*

*50% of the amount will be distributed top down and the other 50% will be distributed bottom up.*
*Top down means: credit the amount from the largest account balance down to the smaller accounts Bottom up: credit the amount from the smallest account balance to the larger accounts.*

*This approach has the advantages that:*

*- all users will eventually receive their funds, though the timeframe depends on the monthly volume available*

*- new deposits and users are not penalized, thus supporting the ongoing operations of the platform*

*- fund withdrawals from the available funds are guaranteed, no surprises or unecessary [sic] delays*

In order for its plan to work, Vircurex is betting that new users will continue to sign up to use its service despite the fact that it has become insolvent, while it is also relying on not being hacked again. Those are

two huge risk factors, and it remains to be seen how the plan will play out.

The company's most recent report claims that the exchange was seeing over 1,000 new registrations per day during November, but it isn't clear how many customers Vircurex has or the scale of transactions that it processes. The same report, suggests that it was 1,219.81 BTC in arrears at the end of November — that's around $700,000 on today's price.

Mt. Gox found 200,000 missing Bitcoin (worth around $115 million) this week, but the troubled company still has 650,000 BTC unaccounted for. While few exchanges are likely to have issues on anything like that scale, there are smaller volcanoes waiting to go off, it seems.

We've reached out to Vircurex for further details.

*Headline image via Zack Copley / Flickr*

SHOW 15 COMMENTS

Edition:  UK  US  AU  Sign in  Beta  About us                                         Subscribe

This site uses cookies. By continuing to browse the site you are agreeing to our use of cookies. Find out more here

## theguardian

Search

News  US  World  Sports  Comment  Culture  Business  Money  Environment  Science  Travel
Tech  Media  Life & style  Data

News
Technology
Bitcoin

# Bitcoin bank Flexcoin closes after hack attack

Bank admits it does not have resources to cover loss of 896 bitcoin worth £365,000 stolen in raid

Share  481
Tweet  402
g+1  54
Share  86

Email

Alex Hern
theguardian.com, Tuesday 4 March 2014 07.33 EST

Technology
Bitcoin · Hacking · Data and computer security

Money

Business
Banking

More news

More on this story





Flexcoin has lost almost 1000 bitcoins in a hack attack. Photograph: Edgar Su/Reuters

A bitcoin bank has been forced to close after hackers stole 896 bitcoin, worth £365,000, in an attack on Sunday.

The company shut its website and posted a statement on Tuesday morning detailing the loss.

"On March 2nd 2014 Flexcoin was attacked and robbed of all coins in the hot wallet," the statement read. "As Flexcoin does not have the resources, assets, or otherwise to come back from this loss, we are closing our doors immediately."

Not all of the company's assets were stolen. In line with best practices for running a bitcoin financial service, Flexcoin held some bitcoins in "cold storage", keeping them on devices not connected to the internet. Those bitcoins are safe, but only users who explicitly requested their bitcoins be held in cold storage (and paid a 0.5% fee) benefit.

MtGox: That missing £70m of bitcoin? Er, here it is
The currency exchange was forced to close earlier this month after losing 850,000 bitcoin, but has now found 200,000 of those. By Alex Hern

Bitcoins are like 'glass beads', warns Danish national bank

The Mt Gox bitcoin scandal is the best thing to happen to bitcoin in years

Bitcoin may bite the dust, but the notion of a digital currency will endure

Today's best video



What to listen to this week
Alexis Petridis recommends Baltimore trio Future Islands' new album
26 comments



Somersaults on top of a suspension bridge
British free runner illegally scales a suspension bridge in Kiev



The Guardian Film Show
Our critics review Captain America: The Winter Soldier, Muppets Most Wanted and 20 Feet From Stardom
44 comments



Pilot shows off skills
Pilot performs aerobatics over Greece's Corinth canal

Technology
Bitcoin · Hacking · Data and computer security

Money

Business
Banking

Bitcoin bank Flexcoin loses after hack attack Technology theguardian  Entered 08/31/14 15:14:43 Page 3 of 3
Case 14-31229-sgj15    Doc 54-1   Filed 09/31/14   Entered 08/31/14 15:14:43   Desc
Exhibit A through I    Page 20 of 81

"Users who put their coins into cold storage will be contacted by Flexcoin and asked to verify their identity," the statement continues. "Once identified, cold storage coins will be transferred out free of charge. Cold storage coins were held offline and not within reach of the attacker. Flexcoin will attempt to work with law enforcement to trace the source of the hack."

Flexcoin attempted to impose a more conventional banking system over the top of the bitcoin network, enabling instant free transfers between Flexcoin customers while still allowing them to spend money in the wider bitcoin community.

Just six days ago, the company was boasting that it was unscathed by the closure of MtGox, once the world's largest bitcoin exchange:



**flexcoin**
@flexcoin
Follow

We hold zero coins in other companies, exchanges etc. While the MtGox closure is unfortunate, we at Flexcoin have not lost anything.

10:52 AM - 25 Feb 2014

155 RETWEETS 49 FAVORITES

Flexcoin's closure reinforces the problem the bitcoin community has with security.

The same day the company came clean about its losses, a second bitcoin firm, Poloniex, also admitted that 12.3% of its reserves had been stolen by hackers. Poloniex is a bitcoin exchange, and the company has committed to operating at a fractional reserve until it can replenish the losses itself.

"I sincerely apologize for this," Poloniex's owner wrote in a statement, "and I am very grateful to the many people who have already expressed their support and belief in my character. I take full responsibility; I will be donating some of my own money, and I will not be taking profit before the debt is paid."

Flexcoin's closure follows that of MtGox's, blamed on hackers stealing 750,000 bitcoins by exploiting a bug known as "transaction malleability". Several other bitcoin businesses, both high- and low-profile, have gone under. Services including Bitcoinica, Inputs.io and MyBitcoin have all been hacked, each losing thousands of bitcoins.

• Why the bitcoin community is fighting to fix its security problem



Get the Guardian's Zip file email
For all you need to know about technology in the world this week, news, analysis and comment

Share    Tweet    8+1    Share    submit

---

Janet Yellen: Federal Reserve has no authority to regulate Bitcoin

Bitcoin endorsed by Wall Street strategist

Satoshi Nakamoto: man denies being bitcoin inventor amid media frenzy

Winklevoss twins use bitcoins to buy Virgin Galactic space flight tickets

Bitcoin endorsed by Wall Street strategist

Bitcoin: the Berlin streets where you can shop with virtual money

More news

**More on this story**



MtGox: That missing £70m of bitcoin? Er, here it is
The currency exchange was forced to close earlier this month after losing 850,000 bitcoin, but has now found 200,000 of those. By Alex Hern

Bitcoins are like 'glass beads', warns Danish national bank

The Mt Gox bitcoin scandal is the best thing to happen to bitcoin in years

Bitcoin may bite the dust, but the notion of a digital currency will endure

Janet Yellen: Federal Reserve has no authority to regulate Bitcoin

Bitcoin endorsed by Wall Street strategist

Satoshi Nakamoto: man denies being bitcoin inventor amid media frenzy

Winklevoss twins use bitcoins to buy Virgin Galactic space flight tickets

Bitcoin endorsed by Wall Street strategist

Bitcoin: the Berlin streets where you can shop with virtual money

**On the Guardian today**



Media
Faith and a media icon: Newsweek's unconventional new owners



Black death was not spread by rat fleas, say researchers



Charlotte Laws' fight with Hunter Moore, the internet's revenge porn king

---



# The Hacker News™
Security in a serious way

g+        y
+1,165,743    131,200
8+1   1.1M      Follow        Like  236k



## Danish Bitcoin exchange BIPS hacked and 1,295 Bitcoins worth $1 Million Stolen

Monday, November 25, 2013 by Swati Khandelwal

8+1  160      Like  590      812      584      Buffer  0      Reddit  73      38



The breaking news is that, another Bitcoin exchange company gets hacked i.e. BIPS (*bips.me*), one of the largest European Danish Bitcoin payment processors.

On Friday evening, a bunch of cyber criminals just broke into BIPs -Bitcoin payment processor servers and wiped out around 1,295 Bitcoin from people's wallets, currently worth $1 Million. More than 22,000 consumer wallets have been compromised and BIPS will be contacting the affected users.



Initially on 15th November, Hackers launched Distributed Denial of Service (DDoS) attack on BIPS, originate from Russia and neighboring countries and then hackers attacked again on 17th November. This time somehow they got access to several online Bitcoin wallets, which allowed them to steal the 1,295 BTC.

*"As a consequence Bips will temporarily close down the wallet initiative to focus on real-time merchant processing business which does not include storing of Bitcoins."* company says.

*"All existing users will be asked to transfer bitcoins to other wallet solutions"* said *Mr. Henriksen*, BIPs founder. Even after the robbery, he told his customers, *"Web Wallets are like a regular wallet that you carry cash in and not meant to keep large amounts in"*.

One of his customer replied to Henrickson's post, *"In fact, your website said: 'Your data is secure at BIPS.' So*

*yeah, I felt pretty goddamn secure leaving my BTC balance there."*

Saving thousands of dollars in a Bitcoin wallet that's highly susceptible to hackers, so don't store your Bitcoin on the internet.

Follow me on Google+, Twitter or LinkedIn or Contact via Email.



+1      FB Share      Tweet                          RSS      Feedly      Add Comment

*Bitcoin, Bitcoin Exchange Hacked, Cyber Crime, Danish Hacker, Ddos Attack, Digital Currency, Hacking News, Money Hacked*

### Trending Stories

HACK - A New Open Source Programming Language developed by Facebook
Indian Banks switching to Linux, rather than taking extended Windows XP Support
CASH! CASH! Hacking ATM Machines with Just a Text Message
Malaysian flight MH370 tragedy abused by Chinese hackers for Espionage attacks
Snoopy Drone Can Hack Your Smartphones
NSA Hacked Servers of Chinese telecom Huawei, Stole Source Codes
THN » Hacker's Dome - Gamification the Information Security
Microsoft Word Zero-Day Vulnerability is being exploited in the Wild
THN » Multiple Vulnerabilities in Firefox for Android Leak Sensitive Information
How to access Twitter in Turkey - #TwitterisBlockedinTurkey

### You might also like









THN » Arrested 'Happy Hacker' is the ZeuS Botnet Mastermind

THN » Wifi Protector - Protect Your Android From Wi-Fi Sniffing Attacks

THN » First Ever Windows Malware that can hack your Android Mobile

THN » Ankit Fadia (Ethical Hacker and Cyber Security Expert) is also Not Secure !

THN » BEWARE of new Facebook Malware Claims, 'Malaysia Plane MH370 Has Been Spotted'











THN » Facebook vulnerability allows to view hidden Facebook Friend List

THN » iPhone 5s Users Fooled By Apple, NSA and A Fake middle finger

THN » Microsoft's Process Explorer added VirusTotal Multi-Antivirus Scanner support

THN » PREC Tool prevents Android Device from Root Exploit hidden in Malicious apps

THN » Cryptography Hacks - Hash Encryption using DuckDuckGo Search Engine

## Comments

Another Bitcoin exchange from Czech Republic hacked more than $100,000 stolen.
Case 14-31229-sgj15   Doc 54-1   Filed 03/31/14   Entered 03/31/14 15:14:43   Page 23 of 81
Exhibit A through I    Page 23 of 81



Security News    Security and Hacking News    Malware    Interviews    Contact Us

Select Langu

Microsoft Office    Microsoft    Payday cash advance    Cash Advances        infolinks

Previous                                                      Next

Recent Posts

# Another Bitcoin exchange from Czech Republic hacked more than $100,000 stolen.

01:04    Abhishek kumar    Security news    0 Comments

## Free Cloud Storage

softlayer.com/Cloud-Storage

Chat Now to Get Your Free Cloud Storage.
Act Quickly, Limited Time!





Bitcoin *Exchange* based in Czech Republic, was hacked, causing more than 4000 bitcoin wallets to be compromised. The exchange (bitcash.cz) said on evening of November 11th there servers were breached by some Anonymous hackers.



Bitcash said hackers used their emails to send mails to their users asking them to send 2 BTC to wallet cause *company* have suffered a breach and have to use a U.S recovery company to get back the cash.

Company have warned their users on *Facebook page* for any such fraud mails, but still hackers were manage to stole $100,000 from over 4000 bitcoin wallets.

This is not the first time when any Bitcoin exchange have been compromised, just few days back
Chinese Bitcoin exchange GBL shutdown, taking away more than $4.1 virtual *currency* of users away with them.

Before that a similar case was found in Australia when Australian Bitcoin Exchange Tradefortress closed with $1 Million in Bitcoin *fund* missing.


**Rafael Correa** @MashiRafael
RT: Sigan a anonynews.info y su tw @noticiasanonec, van a mostrar la mafia de "Pepe" Serrano, su mujer i el espia Rommy Vallejo.
17    5


**Rafael Correa** @MashiRafael
Sigan a anonynews.info y su tw @noticiasanonec, van a mostrar la mafia de "Pepe" Serrano, su mujer i el espia Rommy Vallejo.
6



OVERNMEN
ENSORSHI
TECTING YOU FROM REAL



TELEKOMÜNİKASYON
Home    Site Map

Blog Archive

▶ 2014 (214)
▼ 2013 (448)
  ▶ 12/29 (15)
  ▶ 12/22 (13)
  ▶ 12/15 (21)
  ▶ 12/08 (5)
  ▶ 12/01 (7)
  ▶ 11/24 (11)
  ▶ 11/17 (6)
  ▼ 11/10 (10)
      Red FM and Sun TV Offi
          website hacked & def
      #OpUkraine : Anonymo
          Hackers hack the Ukr
          St...
      1000's of websites Defa
          server rooted by Dr. 9
      Another Bitcoin exchang
          Czech Republic hacke
      Anonymous Arabe hack
          deface Government v
      Facebook asks users to
          their password after...
      Hacking and worms go t
          outer Space, Internati
      #OpAustralia, Australian
          Intelligence Serv...
      Indian Arrested on char
          Hacking into AIADMK
      17 Military websites of E
          hacked and defaced .
  ▶ 11/03 (9)
  ▶ 10/27 (12)
  ▶ 10/20 (13)
  ▶ 10/13 (8)
  ▶ 10/06 (10)
  ▶ 09/29 (5)
  ▶ 09/22 (11)
  ▶ 09/15 (19)
  ▶ 09/08 (13)
  ▶ 09/01 (21)
  ▶ 08/25 (24)
  ▶ 08/18 (14)
  ▶ 08/11 (35)
  ▶ 08/04 (15)
  ▶ 07/28 (13)

# Third cryptocurrency exchange becomes hacking victim, loses Bitcoin

*Summary:* Following Mt. Gox and Flexcoin, Poloniex has admitted to losing over 10 percent of customer funds due to cyberattacks.

By Charlie Osborne for Zero Day | March 6, 2014 -- 10:27 GMT (02:27 PST)

Yet another cryptocurrency has come forward and admitted that security and system problems have led to customer funds being pinched by hackers.

Poloniex, a Bitcoin trading post similar to Mt. Gox, has lost 12.3 percent of the Bitcoin stored in hot wallets on the website. However, in stark contrast to how Mt. Gox CEO Mark Karpeles handled his company's Bitcoin losses, the owner of Poloniex, Tristan D'Agosta -- a.k.a. Busoni -- admitted to the loss and asked users how they would like to be compensated.

In a forum post (https://bitcointalk.org/index.php?topic=499580) , Busoni said that a hacker took advantage of a processing flaw in the Bitcoin exchange post. When users submit a withdrawal request, the input is checked against your balance, deducted, and the new amount recorded within a database. However, it was discovered that placing several withdrawals all in practically the same instant meant each request was processed at more -or-less the same time, resulting in a negative balance but "valid insertions into the database, which then get picked up by the withdrawal daemon."

*Read this*



The Mt. Gox bitcoin debacle: Bankruptcy filed, customer bitcoin lost

Read more

According to the Poloniex chief, auditing and security features were not explicitly looking for negative balances, and so the transactions were allowed to proceed. Busoni admitted that another "design flaw" contributed to the theft, as "this could not have happened if withdrawals requests were processed sequentially instead of simultaneously."

Trading was frozen following the discovery of unusual activity, and Busoni says he takes "full responsibility

(http://www.theregister.co.uk/2014/03/06/bitcoin_exchange_bleeds_money_after_hack_attack/) " for the missing 12.3 percent of Bitcoin -- believed to be worth roughly $50,000.

"If I had the money to cover the entire debt right now, I would cover it in a heartbeat." Busoni admitted. "I simply don't, and I can't just pull it out of thin air."

So, to keep everyone from withdrawing their BTC in order to not be left with picking up the debt, everyone's wallet on the trading post has been "temporarily be deducted by 12.3 percent."

"Please understand that this is an absolute necessity -- if I did not make this adjustment, people would most likely withdraw all their BTC as soon as possible in order to make sure they weren't left in that remaining 12.3 percent," Busoni said. "Aside from the obvious drawback of most of the BTC being taken out of the exchange, this would not be fair -- some people would get all of their money right away, and a few would get none right away."

The amounts deducted have been recorded, and the Poloniex chief says that funds will be raised from exchange fees -- and his own pocket -- to try and cover the debt and redistribute funds to users who have had Bitcoin deducted.

In order to prevent further exploits, Poloniex is checking for negative balances and will freeze any accounts that have taken advantage of the processing flaw. In addition, before the trading post is unfrozen, a new daemon will be created to make sure no more accounts with negative balances are running. Withdrawals will also be switched to a queued method.

Mt. Gox, once the dominate Bitcoin trading post online, closed its doors last week (http://www.zdnet.com/the-mt-gox -bitcoin-debacle-whats-happening-7000026750/) and filed for bankruptcy protection in Japan following years of undetected infiltration (http://www.zdnet.com/japan-lays-down-the-bitcoin-law-treat-it-like-gold-7000027009/) that resulted in the theft of 750,000 customer-owned Bitcoin, as well as Mt. Gox's store of roughly 100,000 coins, in total worth almost $500 million. System design flaws, hackers and poor accountancy practices have been blamed for the massive financial losses.

Flexcoin follow suit and closed after hackers stole 896 Bitcoin -- worth approximately $606,000 (http://www.smartplanet.com/blog/bulletin/bitcoin-raid-closes-yet-another-online-exchange/) -- and the trading exchange did not have the funds or resources to recover.

*Topic: Security*



About Charlie Osborne

London-based medical anthropologist Charlie Osborne is a journalist, freelance photographer and former teacher.

*You May Also Like*







10 SUVs to Steer Clear Of in 2014
(Wall St. Cheat Street)

Top IT Certifications for 2014
(The Night Owl)

10 of the Nicest Cars of 2014
(Insider Car News)

# Nasdaq outage resembles hacker attacks

**CYBERTRUTH (/BLOG/CYBERTRUTH/)**   Byron Acohido, USA TODAY   *8:03 p.m. EDT August 22, 2013*



*(Photo: Robert Deutsch, USA TODAY)*

**SHARE**   1044   CONNECT          **405 TWEET** (https://twitter.com/intent/tweet?url=http://usat.ly/176KqGM&text=Nasdaq%20outage%20resembles%2

SEATTLE — Officials for the moment say they cannot pinpoint anything malicious about the extraordinary outage (http://www.usatoday.com/story/money/markets/2013/08/22/nasdaq-trading-halt/2685361/) of the Nasdaq stock exchange earlier today.

But the incident had all the earmarks of the three waves of denial-of-service attacks (http://www.usatoday.com/story/cybertruth/2013/08/14/mishandled-software-update-cripples-new-york-times/2655869/) that have bedeviled U.S. financial institutions, including stock brokerages, since last September.

An Iranian hacking collective — Cyber Fighters of Izz ad-Din al-Qassam — has claimed credit for orchestrating sophisticated attacks that have overwhelmed the expensive security systems U.S. banks have put into place to keep their online banking services up and secure.

"My first thought is that it is a denial-of-service attack, but I'm not sure," says Gartner banking security analyst Avivah Litan. "It's a very attractive target. It's very visible, and that's what these Iranian state attacks are all about, making a political statement by disrupting a visible website."

*Video: Anatomy of a distributed denial of service attack (http://usat.ly/11YPyqt)*

More recently, a copycat group of profit-minded hackers has conducted denial-of-service attacks against certain U.S. banks as a smoke screen to divert attention while they execute an *Ocean's 11*-style wire transfer fraud.

Litan earlier this month blogged about that caper. These bad guys, she says, set into motion sophisticated denial-of-service attacks that overwhelmed pretty sturdy bank network security. While tech staff labored manually to get the banks' websites back into service, the crooks scrambled behind the scenes to extract funds from a bank employee's privileged account, which they had gained access to.

Instead of getting into one customer account at a time, the criminals used the employee's account to control the master payment switch for wire transfers, and moved as much money as they could from as many accounts as possible for as long as possible, Litan reports.

"Considerable financial damage has resulted from these attacks," says Litan.

However, Litan says those copycats would have a considerably harder time trying to extract funds from a stock exchange, where funds move about in a highly complex process understood only by stock market tech gurus.

It's more plausible that the Iranian ideological hackers would be behind a disruption of Nasdaq, like the three-hour outage that began shortly after noon, Eastern time, Litan reasons.

The first wave of denial-of-service attacks attributed to the Cyber Fighters of Izz ad-Din al-Qassam began last September and lasted about six weeks. Knocked offline for various periods of time were Wells Fargo, U.S. Bank, Bank of America, JPMorgan Chase & Co. and PNC Bank.

The second wave commenced in December and lasted seven weeks, knocking out mid-tier banks and credit unions.

And a third wave of high-powered denial-of-service attacks commenced in March targeting credit card companies and financia

"I don't have any inside knowledge, but I think this one (Nasdaq) is political, as well," Litan says.



EXHIBIT
D

Nasdaq has been hit by hackers before. In 2011, the FBI disclosed that they discovered suspicious files lurking in a server supporting Nasdaq's Directors Desk, a cloud-based collaboration service for company board members and senior executives.

Hackers often embed such files to snoop for valuable data, in this case possibly to gain information to make trades using insider knowledge.

Nasdaq at the time issued a statement saying "there is no evidence that any Directors Desk customer information was accessed or acquired by hackers."

However, it typically takes weeks to months for forensics experts to unravel where expert hackers have roamed in a breached network.

Security experts also note that brokerage Goldman Sachs reported a startling Internet-related glitch (http://finance.yahoo.com/news/goldman-sachs-massive-trading-error-113310219.html) on Tuesday.

The giant brokerage house reported a system programming error that set incorrect price limits and selling algorithms affecting contracts for companies such as JPMorgan Chase & Co., Johnson & Johnson and Kellogg Co., according to Reuters.

The timing of today's Nasdaq outage -- occurring within 48 hours of the Goldman Sachs glitch -- strikes Roel Schouwenberg, senior researcher at Kaspersky Lab, as peculiar.

"It's definitely possible that either cybercriminals or hacktivists were responsible for either of these incidents," Schouwenberg says. "So that means it could either be an operation which is financially motivated or an operation which is aimed at sabotage. However, this is speculation. These could all just be glitches of sorts, but the timing is definitely strange."

Sean Sullivan, a security adviser at F-Secure, concurs.

"Well, so far this week there's been a computer error that caused Goldman Sachs to sell options for a dollar, and now this," Sullivan observes. "It really, really makes me wonder about the undisclosed details surrounding the Nasdaq forum hack."

SHARE
1044
CONNECT

405
TWEET
(https://twitter.com/intent/tweet?url=http://usat.ly/176KqGM&text=Nasdaq%20outage%20resembles%

▷

USA NOW



(/media/cinematic/video/70189593/search-for-mudslide-victims-continues-usa-now/)
Search for mudslide victims continues
USA NOW
Mar 28, 2014

Case 14-31229-sgj15   Doc 54-1   Filed 03/31/14   Entered 03/31/14 15:14:43   Desc
Case: 1:14-cv-01437 Document #: 31 Filed: 03/11/14 Page 1 of 1 PageID #:267
Exhibit A through C Page 28 of 81

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 6,1
### Eastern Division

Gregory Greene

                    Plaintiff,

v.

                                                Case No.: 1:14−cv−01437
                                                  Honorable Gary Feinerman

MtGox Inc., et al.

                    Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Tuesday, March 11, 2014:

      MINUTE entry before the Honorable Gary Feinerman:For the reasons stated on the record, Plaintiff's motion for temporary restraining order [8] is granted in part and denied in part. As noted at the hearing, Plaintiff shall provide a draft TRO to the court's proposed order email box. The TRO shall expire on 3/25/2014 at 11:30 a.m. Status hearing set for 3/20/2014 at 9:30 a.m. Plaintiff shall post bond in the amount of $5,000.00 to the Clerk of the Court by noon on 3/13/2014. Pursuant to the bankruptcy stay, this case is stayed as to Defendant Mt. Gox KK. Mailed notice.(jlj, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.



Case 14-31229-sgj15    Doc 54-1    Filed 03/31/14    Entered 03/31/14 15:14:43    Desc
Exhibit A through I    Page 29 of 81
Case: 1:14-cv-01437 Document #: 33 Filed: 03/11/14 Page 1 of 9 PageID #:272

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| GREGORY GREENE, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>MTGOX INC., a Delaware corporation, MT. GOX KK, a Japanese corporation, TIBANNE KK, a Japanese corporation, and MARK KARPELES, an individual,<br><br>      Defendants. | No. 14 C 1437<br><br>Judge Feinerman |

### TEMPORARY RESTRAINING ORDER

Plaintiff Gregory Greene ("Greene" or "Plaintiff"), having filed this suit against

Defendants MtGox Inc., Mt. Gox KK, Tibanne KK, and Mark Karpeles (collectively, with the

exception of Mt. Gox KK, "Defendants"),[*] and having moved for a Temporary Restraining

Order and Preliminary Injunction, and the court having considered the Complaint, declarations,

exhibits, and memorandum of law filed in support of such motion, counsel for Plaintiff and

Defendant Mt. Gox KK, and no counsel or other representative appearing on behalf of

Defendants, and now being advised in the premises, the court finds that:

### FINDINGS

1.      The court has jurisdiction over the subject matter of this case, and there is good

cause to believe it will have jurisdiction over Defendants.

2.      Venue lies properly with this court.

---

[*]      As stated in the 3/11/2014 order (Doc. 31), this case is stayed as to Mt. Gox KK due to the bankruptcy proceeding in the Northern District of Texas (*see* Doc. 24). This Order imposes no obligations on Mt. Gox KK.

1



Case 14-31229-sgj15   Doc 54-1   Filed 03/31/14   Entered 03/31/14 15:14:43   Desc
Exhibit A through I   Page 30 of 81
Case: 1:14-cv-01437 Document #: 33 Filed: 03/11/14 Page 2 of 9 PageID #:273

3.      Plaintiff has demonstrated a likelihood of success on the merits with respect to his claims under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*, common law fraud, for an accounting, and for his claims of negligence and conversion related to Defendants' provision or management of the Bitcoin exchange known as Mt. Gox.

4.      There is good cause to believe that immediate and irreparable damage to the court's ability to grant effective final relief for consumers in the form of monetary restitution will occur from the sale, transfer, assignment, or other disposition or concealment by Defendants of their assets or records, unless Defendants are immediately restrained and enjoined by this order.

5.      Weighing the equities and considering the Plaintiff's likelihood of ultimate success, this temporary restraining order ("TRO" or "Order") is in the public interest.

6.      Notice of the TRO motion was served in accordance with Federal Rule of Civil Procedure 65(b) and Defendants had notice of these proceedings, for the reasons stated on the record in open court.

7.      Plaintiff shall post bond in the amount of $5,000 to serve as security for this Order. *See* Fed. R. Civ. P. 65(c). The amount of the bond is subject to revision in light of the magnitude of the Assets frozen by this Order.

## DEFINITIONS

1.      "Asset" or "Assets" means any legal or equitable interest in, right to, or claim to, any real or personal property, including, but not limited to, "goods," "instruments," "equipment," "fixtures," "general intangibles," "inventory," "checks," or "notes" (as these terms are defined in the Uniform Commercial Code), lines of credit, chattels, commodities, bitcoins, leaseholds, contracts, mail or other deliveries, shares of stock, lists of consumer names, accounts, credits, premises, receivables, funds, and all cash and Fiat Currency, wherever located.

2

Case 14-31229-sgj15    Doc 54-1    Filed 03/31/14    Entered 03/31/14 15:14:43    Desc
Exhibit A through I    Page 31 of 81
Case: 1:14-cv-01437 Document #: 33 Filed: 03/11/14 Page 3 of 9 PageID #:274

2.      "Bitcoin" means and refers to the internet commodity and method of peer-to-peer payments available for purchase on the Internet. The term "bitcoin" (lower case "b") means and refers to individual units of the commodity.

3.      "Document" or "Documents" means any materials listed in Federal Rule of Civil Procedure 34(a). A draft or non-identical copy is a separate Document within the meaning of the term.

4.      "Electronic data host" means any Person that stores, hosts, or otherwise maintains electronically stored information or computer equipment.

5.      "Fiat Currency" means and refers to paper money issued by a government (i.e., U.S. dollars, Swiss francs, Russian ruble etc.) that may be held on a Bitcoin exchange or in a Member's bitcoin wallet.

6.      "Internet service provider" means a company that provides third parties with access to the Internet.

7.      "Mark Karpeles" refers to Mark Karpeles, the CEO of Mt. Gox KK and 88% owner of Tibanne KK, Mt. Gox KK's parent company.

8.      "Person" means a natural person, an organization or other legal entity, including a corporation, partnership, sole proprietorship, limited liability company, association, cooperative, or any other group or combination acting as an entity.

9.      "Plaintiff's Counsel" means Edelson PC, attn. Jay Edelson, 350 North LaSalle Street, Suite 1300, Chicago, Illinois 60654.

10.      "The Bitcoin exchange known as Mt. Gox" means the Internet website where Class Members could buy, sell, convert, and trade their bitcoins and Fiat Currency.

3

Case 14-31229-sgj15   Doc 54-1   Filed 03/31/14   Entered 03/31/14 15:14:43   Desc
Exhibit A through L   Page 32 of 81
Case: 1:14-cv-01437 Document #: 33 Filed: 03/11/14 Page 4 of 9 PageID #:275

# I. ASSET PRESERVATION

**IT IS HEREBY ORDERED** that:

A.      Defendants, and their officers, agents, servants, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, or any of them, are hereby temporarily restrained and enjoined from directly or indirectly selling, transferring, alienating, liquidating, encumbering, pledging, loaning, assigning, concealing, dissipating, converting, withdrawing or making any other disposition of any assets or any interest therein, wherever located in the United States that are owned, controlled or held by, or for the benefit of, in whole or in part, Defendants, or in the actual or constructive possession of Defendants, other than those assets that are used for actual, ordinary, and necessary business or living expenses that Defendants reasonably incur.

B.      The Assets affected by this Section shall include both existing assets and assets acquired after the effective date of this Order.

C.      To the extent that Defendants withdraw, transfer, encumber, or otherwise dissipate Assets pursuant to Section I.A of this Order, they shall provide an accounting of their expenses to Plaintiff's Counsel for each calendar month.

## II. PRESERVATION OF WEBSITE, EXCHANGE DATA, RECORDS AND EQUIPMENT; REPORT OF NEW BUSINESS ACTIVITY

**IT IS FURTHER ORDERED** that immediately upon service of this Order upon them, Defendants, and their officers, agents, servants, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation,

Case 14-31229-sgj15    Doc 54-1    Filed 03/31/14    Entered 03/31/14 15:14:43    Desc
Exhibit A through J    Page 33 of 81
Case: 1:14-cv-01437 Document #: 33 Filed: 03/19/14 Page 5 of 9 PageID #:276

subsidiary, division, or other device, or any of them, and any other Person served with a copy of

this Order, shall

A.       Prevent the destruction or erasure of any websites used by Defendants for the

ownership, design, management, and maintenance of the Bitcoin exchange known as Mt. Gox by

preserving such websites in the format in which they were maintained on February 24, 2014

prior to being shut down, if in fact the Persons subject to this Order have possession, custody, or

control over such websites or over Persons with possession, custody, or control over such

websites; and

B.       Immediately notify Plaintiff's Counsel of all websites operated or controlled by

Defendants.

Such Persons are hereby further temporarily restrained and enjoined from:

C.       Failing to create and maintain books, records, accounts, bank statements, current

accountants' reports, general ledgers, general journals, cash receipts ledgers, cash disbursements

ledgers and source documents, documents indicating title to real or personal property, and any

other data which, in reasonable detail, accurately, fairly, and completely reflect Defendants'

income, and the disbursements, transactions, dispositions, and uses of Defendants' assets;

D.       Destroying, erasing, mutilating, concealing, altering, transferring, or otherwise

disposing of, in any manner, directly or indirectly, any documents, including electronically

stored materials and any data on mobile devices or other equipment used in the ownership,

design, management, and maintenance of the Bitcoin exchange known as Mt. Gox, that relate in

any way to: the business practices or business or personal finances of Defendants and Mt. Gox

KK; the business practices or finances of entities directly or indirectly under the control of

5

Case 14-31229-sgj15    Doc 54-1    Filed 03/31/14    Entered 03/31/14 15:14:43    Desc
Exhibit A through I    Page 34 of 81
Case: 1:14-cv-01437 Document #: 33 Filed: 03/31/14 Page 6 of 9 PageID #:277

Defendants or Mt. Gox KK; or the business practices or finances of entities directly or indirectly under common control of any other Defendant or Mt. Gox KK;

       E.     Selling, transferring, destroying, damaging, altering, concealing, or otherwise disposing of, in any manner, directly or indirectly, any equipment used in the ownership, design, management, and maintenance of the Bitcoin exchange known as Mt. Gox; and

       F.     Creating, operating, or exercising any control over any business entity, whether newly-formed or previously inactive, including any partnership, limited partnership, joint venture, sole proprietorship, or corporation, without first providing lawyers for the Plaintiff with a written statement disclosing: (1) the name of the business entity; (2) the address, telephone number, e-mail address, and website address of the business entity; (3) the names of the business entity's officers, directors, principals, managers, and employees; and (4) a description of the business entity's intended activities.

### III. EXPEDITED DISCOVERY

    **IT IS FURTHER ORDERED** that in accordance with Federal Rules of Civil Procedure 30(a), 31(a), 34, and 45, and notwithstanding the provisions of Federal Rules of Civil Procedure 26(d) and (f), 30(a)(2)(A), and 31(a)(2)(A), Plaintiff is granted leave, at any time after entry of this TRO to:

       A.     Take the deposition of any Person, whether or not a party, for the purpose of discovering the nature, location, status, and extent of the assets of Defendants and Defendants' affiliates and subsidiaries, whether or not located in the United States; the nature and location of documents reflecting the business transactions of Defendants and Defendants' affiliates and subsidiaries; the location of any premises where Defendants, directly or through any third party,

6

Case 14-31229-sgj15    Doc 54-1    Filed 03/31/14    Entered 03/31/14 15:14:43    Desc
Exhibit A through J    Page 35 of 81
Case: 1:14-cv-01437 Document #: 33 Filed: 03/19/14 Page 7 of 9 PageID #:278

conduct business operations; the Defendants' whereabouts; and/or the applicability of any
evidentiary privileges to this action; and

      B.    Demand the production of Documents from any Person, whether or not a party,
relating to the nature, status, and extent of the assets of Defendants and Defendants' affiliates
and subsidiaries whether or not located in the United States; the nature and location of
documents reflecting the business transactions of Defendants and Defendants' affiliates and
subsidiaries; the location of any premises where Defendants, directly or through any third party,
conduct business operations; Defendants' whereabouts; and/or the applicability of any
evidentiary privileges to this action.

      Five business days notice shall be deemed sufficient for any such deposition, and five
business days notice shall be deemed sufficient for the production of any such Documents,
including any Documents that are maintained or stored only as electronic data. The provisions of
this Section shall apply both to parties to this case and to non-parties. The limitations and
conditions set forth in Federal Rules of Civil Procedure 30(a)(2)(A)(ii) and 31(a)(2)(A)(ii)
regarding subsequent depositions of an individual shall not apply to depositions taken in
accordance with this Section. Any such depositions taken pursuant to this Section shall not be
counted toward any limit on the number of depositions under the Federal Rules of Civil
Procedure or this court's Local Rules, including those set forth in Federal Rules of Civil
Procedure 30(a)(2)(A) and 31(a)(2)(A). Service of discovery upon a party, taken pursuant to this
Section, shall be sufficient if made through the means described in Section V of this Order.

      C.    Any party or non-party may move for a protective order under Federal Rule of
Civil Procedure 26(c) or move to quash or modify a subpoena under Federal Rule of Civil
Procedure 45(d) to seek relief from any discovery requests served or subpoenas issued under the

Case 14-31229-sgj15   Doc 54-1   Filed 03/31/14   Entered 03/31/14 15:14:43   Desc
Exhibit A through I   Page 36 of 81
Case: 1:14-cv-01437 Document #: 33 Filed: 03/11/14 Page 8 of 9 PageID #:279

authority of Section III. Any such motion shall be noticed for presentment on the second

business day after its filing.

## IV. DISTRIBUTION OF ORDER BY DEFENDANTS

**IT IS FURTHER ORDERED** that Defendants shall immediately provide a copy of this

Order to each of their corporations, subsidiaries, affiliates, divisions, directors, officers, agents,

partners, successors, assigns, employees, attorneys, agents, representatives, sales entities, sales

persons, independent contractors, and any other Persons in active concert or participation with

them. By March 21, 2014, each Defendant shall serve on Plaintiff's Counsel an affidavit

identifying the name, title, address, telephone number, date of service, and manner of service of

each Person Defendants served with a copy of this Order.

## V. SERVICE OF ORDER

**IT IS FURTHER ORDERED** that copies of this Order may be served by any means,

including facsimile transmission, electronic mail, personal or overnight delivery, or by

Priority or Certified U.S. Mail, by agents and employees of Plaintiff's Counsel, by any law

enforcement agency, or by private process server, upon any Person that may have possession or

control of any Document of Defendants, or that may be subject to any provision of this Order.

## VI. CONSUMER REPORTING AGENCIES

**IT IS FURTHER ORDERED** that, pursuant to Section 604(a)(1) of the Fair Credit

Reporting Act, 15 U.S.C. § 1681b(a)(1), any consumer reporting agency may furnish a consumer

or credit report concerning any Defendant to Plaintiff's Counsel.

## VII. DURATION OF THE TEMPORARY RESTRAINING ORDER

**IT IS FURTHER ORDERED** that the Temporary Restraining Order granted herein

shall expire on March 25, 2014, at 11:30 am (Central Time), unless, within such time, for good

Case 14-31229-sgj15   Doc 54-1   Filed 03/31/14   Entered 03/31/14 15:14:43   Desc
Exhibit A through I   Page 37 of 81
Case: 1:14-cv-01437 Document #: 33 Filed: 03/11/14 Page 9 of 9 PageID #:280

cause shown, the Order is extended, or unless, as to any Defendant, the Defendant consents that

it should be extended for a longer period of time.

## VIII. SETTING OF STATUS CONFERENCE

**IT IS FURTHER ORDERED** that a status conference is set before the court (on the

21st floor of the Dirksen Federal Courthouse, 219 S. Dearborn Street, Chicago, Illinois 60604)

for March 20, 2014, at 9:30 a.m.

## IX. CORRESPONDENCE WITH AND NOTICE TO PLAINTIFF

**IT IS FURTHER ORDERED** that, for purposes of this Order, all correspondence and

pleadings to the Plaintiff shall be addressed to:

> Jay Edelson
> Edelson PC
> 350 North LaSalle St. Ste. 1300
> Chicago, Illinois 60654
> (312) 589-6375 [Telephone]
> (312) 589-6378 [Facsimile]

## X. RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction on this matter for

all purposes.

*      *      *      *

**IT IS SO ORDERED**, this 11th day of March, 2014, at 11:30 a.m.

_____
United States District Judge

CM/ECF LIVE, Ver 6.1 - U.S. District Court, Northern Illinois
Case 14-31229-sgj15   Doc 54-1   Filed 03/31/14   Entered 03/31/14 15:14:43   Page 6 of 8
Exhibit A through I   Page 38 of 81

| | | restraining order <u>8</u> *in support of motion.* (Woodrow, Steven) (Entered: 03/10/2014) |
|---|---|---|
| 03/10/2014 | <u>22</u> | ATTORNEY Appearance for Defendant Mt.Gox KK by John Michael Murphy (Murphy, John) (Entered: 03/10/2014) |
| 03/10/2014 | <u>23</u> | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 50, receipt number 0752-9276404. (Gamlen, Tod) (Entered: 03/10/2014) |
| 03/10/2014 | <u>24</u> | NOTICE by Mt.Gox KK *of Order Entered on 3-10-14 by the US Bankruptcy Ct. for the Northern District of Texas, Dallas Division* (Attachments: # <u>1</u> Exhibit 3-10-14 Order of US Bankruptcy Ct)(Murphy, John) (Entered: 03/10/2014) |
| 03/10/2014 | <u>25</u> | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 50, receipt number 0752-9276544. (Mitchell, John) (Entered: 03/10/2014) |
| 03/10/2014 | <u>26</u> | DECLARATION of Dennis Ou regarding motion for temporary restraining order <u>8</u> *in support of motion.* (Woodrow, Steven) (Entered: 03/10/2014) |
| 03/10/2014 | <u>27</u> | DECLARATION of Steven L. Woodrow regarding motion for temporary restraining order <u>8</u> *in support of motion.* (Attachments: # <u>1</u> Exhibit A) (Woodrow, Steven) (Entered: 03/10/2014) |
| 03/10/2014 | <u>28</u> | CERTIFICATE of Service by Steven Lezell Woodrow on behalf of Gregory Greene regarding declaration, <u>14</u> (Woodrow, Steven) (Entered: 03/10/2014) |
| 03/10/2014 | <u>29</u> | CERTIFICATE of Service by Steven Lezell Woodrow on behalf of Gregory Greene regarding declaration <u>21</u> , declaration <u>16</u> , declaration <u>17</u> , declaration <u>18</u> , declaration <u>19</u> , declaration <u>15</u> , declaration <u>20</u> (Woodrow, Steven) (Entered: 03/10/2014) |
| 03/11/2014 | <u>30</u> | MINUTE entry before the Honorable Gary Feinerman:Applications to appear pro hac vice <u>23</u> and <u>25</u> are granted.Mailed notice. (jlj) (Entered: 03/11/2014) |
| 03/11/2014 | <u>31</u> | MINUTE entry before the Honorable Gary Feinerman:For the reasons stated on the record, Plaintiff's motion for temporary restraining order <u>8</u> is granted in part and denied in part. As noted at the hearing, Plaintiff shall provide a draft TRO to the court's proposed order email box. The TRO shall expire on 3/25/2014 at 11:30 a.m. Status hearing set for 3/20/2014 at 9:30 a.m. Plaintiff shall post bond in the amount of $5,000.00 to the Clerk of the Court by noon on 3/13/2014. Pursuant to the bankruptcy stay, this case is stayed as to Defendant Mt. Gox KK. Mailed notice. (jlj, ) (Entered: 03/11/2014) |
| 03/11/2014 | <u>33</u> | Enter Temporary Restraining Order Signed by the Honorable Gary Feinerman on 3/11/2014.Mailed notice.(jlj) (Entered: 03/12/2014) |
| 03/12/2014 | <u>32</u> | SUMMONS Returned Executed by Gregory Greene as to Mark Karpeles on 3/4/2014, answer due 3/25/2014; MtGox Inc. on 3/4/2014, answer due 3/25/2014. (Woodrow, Steven) (Entered: 03/12/2014) |
| 03/12/2014 | | BOND in the amount of $ $5,000.00 posted by Gregory Greene (jn, ) (Entered: 03/12/2014) |
| 03/13/2014 | <u>34</u> | MINUTE entry before the Honorable Gary Feinerman:The exped |

**EXHIBIT G**

Case 14-31229-sgj15    Doc 54-1    Filed 03/31/14    Entered 03/31/14 15:14:43    Desc
Exhibit A through I    Page 39 of 81
Case: 1:14-cv-01437 Document #: 32 Filed: 03/12/14 Page 1 of 4 PageID #:268

AO 440 (Rev. 05/00) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

**SUMMONS IN A CIVIL CASE**

GREGORY GREENE, individually and on
behalf of all others similarly situated,

1:14-cv-01437

CASE NUMBER:

V.

ASSIGNED JUDGE:  Hon. Gary Feinerman

MTGOX INC., MT. GOX KK, TIBANNE KK,
and MARK KARPELES,

DESIGNATED
MAGISTRATE JUDGE: Hon. Susan E. Cox

TO: (Name and address of Defendant)

Mark Karpeles
c/o National Corporate Research, Ltd.
615 South Dupont Highway
Dover, Delaware 19901

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Christopher L. Dore
Edelson PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654

21

an answer to the complaint which is herewith served upon you, within _____ days after service of this
summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for
the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period
of time after service.

THOMAS G. BRUTON, CLERK

(By) D THOMAS G. BRUTON, CLERK

_____
(By) DEPUTY CLERK

DATE

February 28, 2014

DATE

Case 14-31229-sgj15    Doc 54-1    Filed 03/31/14    Entered 03/31/14 15:14:43    Desc
Exhibit A through I    Page 40 of 81
Case: 1:14-cv-01437 Document #: 32 Filed: 03/12/14 Page 2 of 4 PageID #:269

AO 440 (Rev 06/12) Summons in a Civil Action (Page 2)

Civil Action No.  1:14-cv-01437

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)*    Mark Karpeles

was received by me on *(date)*    03/04/2014    .

☐ I personally served the summons on the individual at *(place)*

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☑ I served the summons on *(name of individual)*    Diana Lewis, Managing Agent    , who is

designated by law to accept service of process on behalf of *(name of organization)*    Mark Karpeles

at National Corporate Research, Ltd., Registered Agent    on *(date)*    03/04/2014    ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify)*:



My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date:    03/04/2014

_____
*Server's signature*

Sharlene Ryan, Process Server
*Printed name and title*

Delaware Attorney Services
3516-16 Silverside Road
Wilmington, DE 19810
*Server's address*

Additional information regarding attempted service, etc:
Service was made on 3/4/14 at 4:00 PM, at National Corporate Research, 616 S. DuPont Hwy, Dover, DE 19901.

Documents Served:  Summons in a Civil Action; Preservation Letter; Plaintiff's Motion for and Memorandum in
Support of Class Certification; and Class Action Complaint and Demand for Jury Trial with Exhibit 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

In re

MtGox Co., Ltd. (a/k/a MtGox KK)

      Debtor in a Foreign Proceeding.

_____/

Chapter 15

Case No. 14-31229

### CREDITOR GREGORY GREENE'S FIRST SET OF INTERROGATORIES

Creditors Gregory Greene and Joseph Lack, individually and on behalf of all others

similarly situated ("**Greene**"), the Plaintiffs in the class action litigation pending in the United

States District Court for the Northern District of Illinois (Case No. 1:14-cv-01437), for their first

set of interrogatories to MtGox Co., Ltd. (a/k/a MtGox KK) (the "**Debtor**"), state:

### Definitions

1.      Asset" or "Assets" means any legal or equitable interest in, right to, or claim to

any real or personal property, Including "goods," "instruments," "equipment," "fixtures,"

"general intangibles," "inventory," "checks," or "notes" (as these terms are defined in the

Uniform Commercial Code), buildings, premises, houses, condominiums, lines of credit,

chattels, commodities, bitcoins, alternative currencies, YubiKeys, USB devices, discs, drives,

servers, Computers, tablets, email addresses, smartphones, accounts with mining pools, keys, IP

addresses, Bitcoin Addresses, Bitcoin accounts, leaseholds, contracts, mail or other deliveries,

shares of stock, securities, equities, commodities, lists of Your consumer's names, lists of Your

consumer's Bitcoin Addresses, lists of Your consumer's accounts, lists of Your consumer's

credits, lists of Your consumer's addresses, IP addresses, or other contact or identifying

information, lists of Your consumer's receivables, lists of Your consumer's funds and lists of

Your consumer's bitcoins and all cash and Fiat Currency, and any other assets wherever located.

14476333.2



2.      "Bitcoin" means the Internet commodity and method of peer-to-peer payments available for purchase on the Internet. "bitcoins" means individual units of the commodity.

3.      "Bitcoin Address" means any public or private string of characters that may be created through a Bitcoin Wallet or through which bitcoins may be transferred, purchased, or sold.

4.      "Block Chain" means the record that contains, records, transmits and/or confirms transactions Relating To bitcoins, which is accessible at blockchain.info.

5.      "Bitcoin Mining Pool" means any method through which multiple Persons may share their resources to collectively mine, generate, or create bitcoins and share in the bitcoins or other Assets that are generated as a result.

6.      "Communication" or "Communications" means the transmittal of information, facts, or ideas, Including communications in the form of any discussion, conversation, inquiry, negotiation, agreement, understanding, meeting, telephone conversation, letter, correspondence, note, memorandum, e-mail message, instant message, text message, electronic chat, telegram, audio recordings, advertisement or other form of exchange of words, whether oral or written. "Communication" or "Communications" also means all written and unwritten but recorded correspondence, including non-duplicate drafts, versions not sent, and copies that differ only in margin notes or annotations, Including memos, letters analog or digital recordings, audio recordings, electronic chat logs, voicemail, email, computer files, computer disks, or other things sent or received by You to or from any entity, Including files maintained or exchanged internally within Your business or with Your Employees.

7.      "Complaint" means Greene's Class Action Complaint filed in the United States District Court for the Northern District of Illinois on February 27, 2014 (Class Action Docket

3

No. 1) and any amendments thereto.

8.     "Computer" means all data processing equipment, Including central processing
units (CPUs), whether contained in a server or free standing computer or laptop or PDA or
similar device that may contain data storage capabilities, irrespective of whether such computing
platform, infrastructure or storage is virtualized, whether that data be structured or unstructured,
and also Including any equipment where computer files (Including records, documents, logs, and
any other contiguous of non-contiguous bit strings), hidden system files or metadata presently
reside such as hard disk drives, optical disk drives, removable media, such as floppy disk drives,
CD-ROM and DVD drives, Zip drives, Jaz drives, Maxtor drives or snap drives, data processing
cards, computer magnetic tapes, backup tapes, drum and disk storage devices or any other
similar electronic storage media or system of whatever name or description. "Computer" also
refers to all digital image evidence that may be stored on any type of hardware used to store or
manipulate electronic images, Including microfilm, microfiche and their repositories and readers,
or design or engineering Computer systems and regardless of any digital image's format,
Including .jpg, .bmp, or some other advanced or proprietary form of digital image format, such
as CAD layered drawings. "Computer" also refers to sources of digital evidence that may not
presently be in use by You or may have been deleted from Your active systems, whether the
source is a backup tape or disk, some other data retention system or some form of disaster
recovery system. "Computer" also refers to places where digital evidence may reside that may
have been deleted from Your active files and which may not be readily recoverable from a
backup medium, such as metadata.

9.     "Date" means the exact year, month and day, if known, or if not known, Your
best approximation thereof.

4

14476333.2

10.    "Describe," when used in relation to any process, policy, act or event means explain the process, policy, act, or event in complete and reasonable detail, stating the time, Date, and location, Identifying all Persons participating or present, and Identifying all Documents Relating thereto.

11.    "Document" or "Documents" means any writings, letters, telegrams, memoranda, correspondence, Communications, email messages, memoranda or notes of conferences or telephone conversations, reports, studies, lists, compilations of data, papers, books, records, contracts, deeds, leases, agreements, pictures, photographs, transcripts, tapes, microfilm, Computer data files, printouts, accounting statements, mechanical and electrical recordings, checks, pleadings, and other tangible things upon which any handwriting, typing, printing, drawing, representation, photostatic, or other magnetic or electrical impulses or other form of Communication is recorded, stored, or produced, Including audio and video recordings and ESI (Including e-mails, web pages, Websites, Computer discs, Computer programs and Computer files, Including, where applicable, compiled and uncompiled source code), whether or not in printout form. These terms shall also mean copies of Documents even though the originals are not in Your possession, custody or control; every copy of a Document which contains handwritten or other notations or which otherwise does not duplicate the original of any other copy; all attachments to any Documents; and any other Documents, item and/or information discoverable under federal law and procedure, Including, without limitation, the items referenced in Federal Rule of Civil Procedure 34(a)(1).

12.    "Employee" or "Employees" means present and former officers, directors, agents, attorneys, employees, and all Persons acting or purporting to act on behalf of any of them.

13.    "Electronic Data Host" means any Person that stores, hosts, or otherwise

5

14476333.2

maintains ESI or Computer equipment.

14.    "Electronically Stored Information" or "ESI" as used herein, means and refers to Computer generated information or data of any kind, stored on Computers, file servers, disks, tape or other devices or media, or otherwise evidenced by recording on some storage media, whether real virtual, or cloud-based.

15.    "Fiat Currency" means and refers to paper money issued by a government (i.e. U.S. dollars, Swiss francs, Russian rubles, etc.) that may be held on a Bitcoin exchange or in a Bitcoin Wallet.

16.    "Identify," when used with respect to a natural person, means to state the person's full name, present or last known business affiliation and position, past and present home address, and past position and business affiliation, if any, with any of the parties herein.

17.    "Identify," when used with respect to a company or other business entity, means to state the company's legal name, the names under which it does business, its form (*e.g.*, partnership, corporation, etc.), the address of its principal place of business, and to Identify its principal proprietors, officers or directors.

18.    "Identify," when used with respect to a Document, means to state the Date(s) prepared, drafted or generated, the author(s), intended and actual recipient(s), the type of Document (*e.g.*, "letter," "Terms of Service" or "email"), and to Identify its last known custodian or location.

19.    "Identify," when used in reference to an event, transaction, or occurrence, means to describe the act in complete and reasonable detail; state the time, Date, and location; Identify all Persons participating or present; and Identify all Documents Relating thereto.

20.    "Identify," when used with respect to a Communication, means to state the type

6

14476333.2

of Communication (*e.g.*, telephone discussion, email, face-to-face, etc.), the name and present

address of each Person present during the Communication or who otherwise observed or heard

the Communication, and to state the subject matter of the Communication and the Date upon

which it occurred. If the Communication was in writing, Identify all Documents that Relate or

are Related To the Communication in the manner provided above.

21.    "Including" means "including, but not limited to;" "Includes" means "includes,

but not limited to."

22.    "Internet Service Provider" means a company that provides third parties with

access to the Internet.

23.    "Japanese Proceeding" means the civil rehabilitation proceeding involving the

Debtor under Japanese law currently pending before the Twentieth Civil Division of the Tokyo

District Court, Japan.

24.    "Liability" means any legal debts or obligations arising during the course of Your

business operations, Including but not limited to loans, accounts and salaries payable, mortgages,

notes, and unclaimed dividends.

25.     "Metadata" means and refers to data about data, Including without limitation,

information embedded in a native file or other data that is not ordinarily viewable or printable

from the application that generated, edited, or modified such native file which describes the

characteristics, origins, usage and validity of the electronic file as well as information generated

automatically by the operation of a Computer or other information technology system when a

native file is created, modified, transmitted, deleted or otherwise manipulated by a user of such

system.

26.    "Mizuho Bank" means and refers to Mizuho Bank, Ltd., the financial services

14476333.2

company headquartered in Japan together with all of its parents, subsidiaries, affiliates, owners, directors, managers, employees, and related Persons.

27.    "Person" means any natural person, corporation, partnership, association, organization, joint ventures, or other entity of any type or nature.

28.    "Private Key" means any data string, number, cryptographic signature, or any other identifiers to enable the transfer, transmission, sale, or purchase of bitcoins, or to prove ownership or control of bitcoins.

29.    "Relating To," Including its various forms such as "Related To," means to consist of, concern, discuss, mention, regard, refer to, reflect or be in any way logically, factually or legally connected, directly or indirectly, with the matter described.

30.    "Relevant Time Period," means January 1, 2009 until the present. Unless otherwise indicated, all Requests shall refer to the Relevant Time Period.

31.    "The Bitcoin Exchange Known as Mt. Gox" means the Internet website location where Class Members could buy, sell, convert, and trade their bitcoins and Fiat Currency.

32.    "Wallet" or "WalletFile" means any file that stores, contains, or maintains Private Keys.

33.    "You," "Your," or "Mt. Gox" means the Debtor.

34.    "YubiKey" means a one-time password generator device capable of generating a unique sequence of characters when activated, Including any device with similar capabilities.

## Instructions

A.    The Person responding to an Interrogatory should have knowledge to answer said Interrogatory. If another Person has superior knowledge of the information requested in a specific Interrogatory, that other Person should respond to that Interrogatory and be so designated. If such Person is unavailable, that Person should be fully Identified and the nature

8

14476333.2

and scope of their knowledge and the reasons that such Person's knowledge is or is believed to be superior, explained fully.

    B.    In responding to these Interrogatories, furnish all information, however obtained, Including hearsay that is available to You and any information known by You, or that is within Your possession, custody or control.

    C.    These are intended as continuing Interrogatories, having within them a duty to timely supplement Your responses until and during the course of trial. Information sought by these Interrogatories that You obtain after You serve Your responses hereto must be disclosed to Plaintiff by supplementary responses.

    D.    It is intended by this set of Interrogatories to elicit information not merely within Your knowledge, but obtainable by You or on Your behalf.

    E.    You may not claim lack of information or knowledge as grounds for failing to respond to any Interrogatory or as grounds for giving an incomplete or partial response to any Interrogatory without exercising due diligence to secure the full information needed to respond. Where You rely or respond based on information provided to You from any other Person, fully Identify that Person and how You obtained the information from them. Where You rely on information in any Document, specifically Identify the Document and Identify the Person who has custody of that Document.

    F.    If You cannot respond to an Interrogatory in full after exercising due diligence to secure the full information needed to do so, so state and respond to the extent possible, specifying Your inability to respond to the remainder, stating whatever information or knowledge You have concerning the un-responded to portion and detailing what You did in attempting to secure the unknown information.

9

14476333.2

G.     If any Interrogatory is objected to on the basis that the time period covered by the Interrogatory is irrelevant, burdensome, or otherwise inappropriate, state what time period You consider proper for that Interrogatory and answer the Interrogatory for that time period, preserving Your objection to the remainder of the time period.

H.     If You object or otherwise refuse to respond to any portion of any Interrogatory, You shall (i) state the nature and basis of the objection or reason for such refusal in sufficient fashion to permit the Court to rule on the validity of the objection, and (ii) answer all portions of such Interrogatory that are not claimed to be objectionable.

I.     If You object to answering all or any part of any Interrogatory on the grounds of privilege or work product, Identify the privileged matter, materials, and/or Document(s), and with respect to each, Identify:

1.     the Date appearing on such Document, or if no Date appears, the Date on which such Document or ESI was prepared;

2.     ESI Metadata creation, revision, transmission, receipt, and last access dates;

3.     the name of each Person to whom such material, Document or ESI was addressed;

4.     the name of each Person, other than the addressee(s) Identified in subparagraph (3) above, to whom such material, Document or ESI, or copy thereof was sent, or with whom such material, Document or ESI was discussed;

5.     the name of each Person who signed such material, Document or ESI, if not signed, the name of each Person who prepared it;

6.     the name of each Person making any contribution to the authorship of such material, Document or ESI;

7.     the job title or position of each Person Identified in subparagraphs (3), (4), (5), and (6) above;

8.     the Date such material, Document or ESI was received or discussed by each Person Identified in subparagraphs (3) or (4) above;

10

9.    the general nature or description of such material, Document or ESI, and where applicable, its number of pages;

10.    the name of each Person who currently has custody of such material, Document or ESI; and

11.    the specific ground(s) upon which the privilege or work product rests.

J.    If You are producing any Document in lieu of answering any of the Interrogatories stated herein, all Documents are to be produced in the form, order, and manner in which they are maintained in Your files. Documents are to be produced in the folders, cartons, or containers in which they have been maintained, stored, clipped, stapled, or otherwise arranged in the same form and manner in which they were found and in such a manner that the office and location from which they were produced is readily identifiable. Whenever a Document (as defined) or group of Documents is taken out of a file folder, file drawer, file box, or notebook, before the same is produced, attach thereto a copy of the label on the file folder, file box, or notebook from which the Document or group of Documents was removed. All ESI should be produced in native format, reasonably usable, and verifiably responsive to the pertinent request(s) and processable using readily available tools.

K.    The singular form of a word shall be interpreted as plural, and the plural form of a word shall be interpreted as singular, whichever makes the Interrogatory most broad.

L.    As used herein, the present tense shall also include the past tense.

M.    For any term used herein, which is not otherwise specifically defined, the common and usual meaning of such term is intended. Any ambiguity in these Interrogatories shall be resolved so as to construe these Interrogatories as broadly as possible.

N.    When these Interrogatories refer to a "specific location," they contemplate a level of detail that would allow counsel to independently locate an item without significant assistance.

11

14476333.2

Thus, when these Interrogatories request the specific location of digital Media, an acceptable answer might be "in Bill Johnson's office, at 123 Main Street, Suite 100, New York, NY 10000."

O.    The terms defined above need not be capitalized to retain their meaning as set forth in that Section.

## Interrogatories

1.    Identify the name, address, and occupation of all Persons who participated in responding to these Interrogatories and Creditor Gregory Greene's First Set of Requests for the Production of Documents. For each Person so Identified, state the person's employer and their position or title, Describe in detail their knowledge relevant to these proceedings, and, if applicable, Identify the Interrogatories and/or Requests for Production of Documents that they assisted in answering.

   **RESPONSE:**

2.    Identify all Persons responsible for maintaining Your financial books and records. For each Person so Identified, state the Person's location, employer and their position or title and Describe their role in maintaining Your financial books and records.

   **RESPONSE:**

3.    State the name and address of all foreign and domestic corporations, partnerships, and other business entities in which You have a direct or indirect ownership or beneficial interest and provide the percentage and current value of Your ownership or beneficial interest.

   **RESPONSE:**

4.    Identify by name, address, and telephone number all domestic and foreign banks and financial institutions where You hold or have held an account, or over which You have signatory or other similar control, Including checking accounts, savings accounts, money market accounts, and certificates of deposit. For each account identified, state: (a) the title and registered

12

14476333.2

owner or holder of the account or certificate; (b) the account number; (c) a full and complete description of the nature of the account or certificate; and (d) the current balance or amount.

**RESPONSE:**

5.    Describe and provide the cost, fair market value, and location of all Your Assets and Liabilities with a value in excess of $1,000 USD, Including:

<u>Assets</u>

(1)    cash or other Fiat Currency

(2)    cash surrender value of insurance policies

(3)    accounts or notes receivable

(4)    real estate (including addresses)

(5)    furniture and fixtures

(6)    computers, servers, and other equipment

(7)    automobiles, motorcycles, boats, airplanes, and other vehicles

(8)    stocks, bonds, and other securities

(9)    gold

(10)    silver

(11)    jewelry

(12)    bitcoins, Including Identifying all Bitcoin Wallets by addresses and all transactions involving such Wallets

(13)    YubiKeys or similar devices

(14)    telephones and handheld devices

(15)    any other personalty

(16)    bitcoin mining operations or interests in or connections to Bitcoin Mining Pools including, without limitation, Eligius.

13

14476333.2

(17)    any other Assets

Liabilities

(1)    loans

(2)    accounts or notes payable

(3)    mortgages

(4)    any other Liabilities.

RESPONSE:

6.    Identify all cash, Fiat Currency, or other Assets with a value in excess of $1,000 USD that You have sold or transferred within the Relevant Time Period. For each sale or transfer, provide: (a) a description of the Asset, (b) the fair market value of the Asset, (c) the date of the transfer, (d) the name and address of the transferee, and (e) Your relation to the transferee.

RESPONSE:

7.    Identify every loan made to You during the Relevant Time Period, Including the name of the lender, the Date of the loan, the principal amount, Your purpose in borrowing the funds, and the amount You have repaid.

RESPONSE:

8.    State whether any Person is indebted to You in an amount in excess of $1,000 USD. For each debt, state: (a) the identity of the Person that is indebted to You, (b) the amount of the indebtedness, and (c) the Date on which such indebtedness is due.

RESPONSE:

9.    Identify and Describe any agreements or relationships between You and any Person providing professional services, Including any accountant, accounting firm, legal services provider, legal services firm, financial services firm or insurance provider, and the location thereof.

14476333.2

**RESPONSE:**

10.    Identify all policies of insurance that You have that would potentially apply to the allegations set forth in any litigation currently pending against You, Including the policy numbers and applicable policy limits, and the location of any insurer(s).

**RESPONSE:**

11.    Identify all of Your vendors, Including customer service call centers, website support staff, Internet Service Providers, data service providers, and technicians, and the location thereof.

**RESPONSE:**

12.    Identify each witness that You may or will call at any trial or hearing in this matter, and describe the anticipated testimony of each person.

**RESPONSE:**

13.    Identify all of Your worldwide employees, and the role and location of each employee.

**RESPONSE:**

14.    Identify Your officers and directors, and the mailing address for each.

**RESPONSE:**

15.    Identify and describe in detail Your worldwide operations.  This description must include: (a) the location of all operations; (b) the number of employees at each location; and (c) the operations conducted at each location.

**RESPONSE:**

16.    Provide a description of all activities involved in operating Your Bitcoin Exchange Known as Mt. Gox, as referenced in Paragraph 18 of Your *Memorandum of Law in*

15

*Support of Petition for Recognition and Application for Provisional Relief, Scheduling Hearing,*

*and Approving Form and Manner of Notice* (Docket No. 6).

**RESPONSE:**

17.    Identify and describe any administrative investigation being undertaken by any governmental unit against You.

**RESPONSE:**

18.    Identify and describe all of Your intellectual property rights, including all: (a) patents; (b) patent applications; (c) trademarks; (d) trademark registrations; (e) copyrights; and (f) any primary registration and foreign application in any country of any such rights.

**RESPONSE:**

19.    Identify the location and date of each of Your board meetings.

**RESPONSE:**

20.    Identify the location of Your worldwide headquarters, as well as the historical location of Your worldwide headquarters and relevant dates.

**RESPONSE:**

21.    Identify the location and mailing address of each of the Your worldwide offices, as well as any offices closed within the past two years.

**RESPONSE:**

22.    Identify all shareholders and their mailing addresses.

**RESPONSE:**

23.    Identify all of Your worldwide servers.  This list must include: (a) whether the server is owned by You; (b) the size of the server; (c) the location of the server; and (d) if owned by You, the value of the server.

**RESPONSE:**

16

24.    Identify the locations of Your customers on a country-by-country basis, including the number of customers, as well as the number of Bitcoins and amount of Fiat Currency held by such customers as of February 24, 2014.

**RESPONSE:**

25.    Identify the locations of Your U.S. customers on a state-by-state basis, including the number of customers, as well as the number of Bitcoins and amount of Fiat Currency held by such customers as of February 24, 2014.

**RESPONSE:**

26.    Identify the locations of Your creditors on a country-by-country basis, including the number of creditors, as well as the amount due and owing to creditors in each country.

**RESPONSE:**

27.    Identify all IP addresses you have used.

**RESPONSE:**

28.    Identify the name and mailing address of each of the Your subsidiaries and affiliates.

**RESPONSE:**

17

**GREGORY GREENE**, individually and on behalf
of a class of similarly situated individuals,

Dated: March 17, 2014

By:   /s/ Steven L. Woodrow
      One of Plaintiff's Attorneys

Steven L. Woodrow
swoodrow@edelson.com
EDELSON PC
999 West 18th Street, Suite 3000
Denver, Colorado 80202
Tel: 303.357.4878
Fax: 303.446.9111

Jay Edelson
jedelson@edelson.com
Alicia Hwang
ahwang@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

-and-

Scott B. Kitei (pro hac vice pending)
HONIGMAN MILLER SCHWARTZ AND COHN LLP
2290 First National Building
660 Woodward Avenue
Detroit, Michigan 48226-3506
Telephone: (313) 465-7000
Facsimile: (313) 465-8000
skitei@honigman.com

-and-

Robin E. Phelan
HAYNES AND BOONE LLP
2323 Victory Avenue
Suite 700
Dallas, Texas 75219
Telephone: (214) 651-5612
Facsimile: (214) 200-0649
Robin.phelan@haynesboone.com

*Counsel for Creditor Gregory Greene*

## CERTIFICATE OF SERVICE

     I, Steven L. Woodrow, an attorney, hereby certify that on March 17, 2014, I served the above and foregoing ***Creditor Gregory Greene's First Set of Requests for the Production of Documents to the Debtor*** by causing true and accurate copies of such paper to be transmitted via electronic mail to the person shown below:

Via email to the Debtor at:
    David.parham@bakermckenzie.com


                                 /s/ Steven L. Woodrow
                                   Steven L. Woodrow

14476333.2

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

In re

MtGox Co., Ltd. (a/k/a MtGox KK)

      Debtor in a Foreign Proceeding.

_____/

Chapter 15

Case No. 14-31229

## CREDITOR GREGORY GREENE'S FIRST SET OF REQUESTS FOR
## THE PRODUCTION OF DOCUMENTS

Creditors Gregory Greene and Joseph Lack, individually and on behalf of all others

similarly situated ("**Greene**"), the Plaintiffs in the class action litigation pending in the United

States District Court for the Northern District of Illinois (Case No. 1:14-cv-01437) hereby

request that MtGox Co., Ltd. (a/k/a MtGox KK) (the "**Debtor**") produce the following

documents for inspection and copying at the office of Edelson PC, 350 North LaSalle Street,

Suite 1300, Chicago, Illinois 60654, and to make service of said production upon their counsel.

### *I. Definitions*

1.     "Asset" or "Assets" means any legal or equitable interest in, right to, or claim to

any real or personal property, Including "goods," "instruments," "equipment," "fixtures,"

"general intangibles," "inventory," "checks," or "notes" (as these terms are defined in the

Uniform Commercial Code), buildings, premises, houses, condominiums, lines of credit,

chattels, commodities, bitcoins, alternative currencies, YubiKeys, USB devices, discs, drives,

servers, Computers, tablets, email addresses, smartphones, accounts with mining pools, keys, IP

addresses, Bitcoin Addresses, Bitcoin accounts, leaseholds, contracts, mail or other deliveries,

shares of stock, securities, equities, commodities, lists of Your consumer's names, lists of Your

consumer's Bitcoin Addresses, lists of Your consumer's accounts, lists of Your consumer's

credits, lists of Your consumer's addresses, IP addresses, or other contact or identifying

14476342.1                   2



information, lists of Your consumer's receivables, lists of Your consumer's funds and lists of
Your consumer's bitcoins and all cash and Fiat Currency, and any other assets wherever located.

2.      "Bitcoin" means the Internet commodity and method of peer-to-peer payments
available for purchase on the Internet. "bitcoins" means individual units of the commodity.

3.      "Bitcoin Address" means any public or private string of characters that may be
created through a Bitcoin Wallet or through which bitcoins may be transferred, purchased, or
sold.

4.      "Block Chain" means the record that contains, records, transmits and/or confirms
transactions Relating To bitcoins, which is accessible at blockchain.info.

5.      "Bitcoin Mining Pool" means any method through which multiple Persons may
share their resources to collectively mine, generate, or create bitcoins and share in the bitcoins or
other Assets that are generated as a result.

6.      "Communication" or "Communications" means the transmittal of information,
facts, or ideas, Including communications in the form of any discussion, conversation, inquiry,
negotiation, agreement, understanding, meeting, telephone conversation, letter, correspondence,
note, memorandum, e-mail message, instant message, text message, electronic chat, telegram,
audio recordings, advertisement or other form of exchange of words, whether oral or written.
"Communication" or "Communications" also means all written and unwritten but recorded
correspondence, including non-duplicate drafts, versions not sent, and copies that differ only in
margin notes or annotations, Including memos, letters analog or digital recordings, audio
recordings, electronic chat logs, voicemail, email, computer files, computer disks, or other things
sent or received by You to or from any entity, Including files maintained or exchanged internally
within Your business or with Your Employees.

7.    "Complaint" means Plaintiff's Class Action Complaint filed in the United States

District Court for the Northern District of Illinois on February 27, 2014 (Dkt. No. 1) and any

amendments thereto.

8.    "Computer" means all data processing equipment, Including central processing

units (CPUs), whether contained in a server or free standing computer or laptop or PDA or

similar device that may contain data storage capabilities, irrespective of whether such computing

platform, infrastructure or storage is virtualized, whether that data be structured or unstructured,

and also Including any equipment where computer files (Including records, documents, logs, and

any other contiguous of non-contiguous bit strings), hidden system files or metadata presently

reside such as hard disk drives, optical disk drives, removable media, such as floppy disk drives,

CD-ROM and DVD drives, Zip drives, Jaz drives, Maxtor drives or snap drives, data processing

cards, computer magnetic tapes, backup tapes, drum and disk storage devices or any other

similar electronic storage media or system of whatever name or description. "Computer" also

refers to all digital image evidence that may be stored on any type of hardware used to store or

manipulate electronic images, Including microfilm, microfiche and their repositories and readers,

or design or engineering Computer systems and regardless of any digital image's format,

Including .jpg, .bmp, or some other advanced or proprietary form of digital image format, such

as CAD layered drawings. "Computer" also refers to sources of digital evidence that may not

presently be in use by You or may have been deleted from Your active systems, whether the

source is a backup tape or disk, some other data retention system or some form of disaster

recovery system. "Computer" also refers to places where digital evidence may reside that may

have been deleted from Your active files and which may not be readily recoverable from a

backup medium, such as metadata.

9.    "Date" means the exact year, month and day, if known, or if not known, Your best approximation thereof.

10.    "Describe," when used in relation to any process, policy, act or event means explain the process, policy, act, or event in complete and reasonable detail, stating the time, Date, and location, Identifying all Persons participating or present, and Identifying all Documents Relating thereto.

11.    "Document" or "Documents" means any writings, letters, telegrams, memoranda, correspondence, Communications, email messages, memoranda or notes of conferences or telephone conversations, reports, studies, lists, compilations of data, papers, books, records, contracts, deeds, leases, agreements, pictures, photographs, transcripts, tapes, microfilm, Computer data files, printouts, accounting statements, mechanical and electrical recordings, checks, pleadings, and other tangible things upon which any handwriting, typing, printing, drawing, representation, photostatic, or other magnetic or electrical impulses or other form of Communication is recorded, stored, or produced, Including audio and video recordings and ESI (Including e-mails, web pages, Websites, Computer discs, Computer programs and Computer files, Including, where applicable, compiled and uncompiled source code), whether or not in printout form. These terms shall also mean copies of Documents even though the originals are not in Your possession, custody or control; every copy of a Document which contains handwritten or other notations or which otherwise does not duplicate the original of any other copy; all attachments to any Documents; and any other Documents, item and/or information discoverable under federal law and procedure, Including, without limitation, the items referenced in Federal Rule of Civil Procedure 34(a)(1).

12.    "Employee" or "Employees" means present and former officers, directors, agents,

attorneys, employees, and all Persons acting or purporting to act on behalf of any of them.

13.     "Electronic Data Host" means any Person that stores, hosts, or otherwise maintains ESI or Computer equipment.

14.     "Electronically Stored Information" or "ESI" as used herein, means and refers to Computer generated information or data of any kind, stored on Computers, file servers, disks, tape or other devices or media, or otherwise evidenced by recording on some storage media, whether real virtual, or cloud-based.

15.     "Fiat Currency" means and refers to paper money issued by a government (i.e. U.S. dollars, Swiss francs, Russian rubles, etc.) that may be held on a Bitcoin exchange or in a Bitcoin Wallet.

16.     "Identify," when used with respect to a natural person, means to state the person's full name, present or last known business affiliation and position, past and present home address, and past position and business affiliation, if any, with any of the parties herein.

17.     "Identify," when used with respect to a company or other business entity, means to state the company's legal name, the names under which it does business, its form (*e.g.*, partnership, corporation, etc.), the address of its principal place of business, and to Identify its principal proprietors, officers or directors.

18.     "Identify," when used with respect to a Document, means to state the Date(s) prepared, drafted or generated, the author(s), intended and actual recipient(s), the type of Document (*e.g.*, "letter," "Terms of Service" or "email"), and to Identify its last known custodian or location.

19.     "Identify," when used in reference to an event, transaction, or occurrence, means to describe the act in complete and reasonable detail; state the time, Date, and location; Identify

14476342.1                                    6

all Persons participating or present; and Identify all Documents Relating thereto.

20.    "Identify," when used with respect to a Communication, means to state the type of Communication (*e.g.*, telephone discussion, email, face-to-face, etc.), the name and present address of each Person present during the Communication or who otherwise observed or heard the Communication, and to state the subject matter of the Communication and the Date upon which it occurred. If the Communication was in writing, Identify all Documents that Relate or are Related To the Communication in the manner provided above.

21.    "Including" means "including, but not limited to;" "Includes" means "includes, but not limited to."

22.    "Internet Service Provider" means a company that provides third parties with access to the Internet.

23.    "Japanese Proceeding" means the civil rehabilitation proceeding involving the Debtor under Japanese law currently pending before the Twentieth Civil Division of the Tokyo District Court, Japan.

24.    "Liability" means any legal debts or obligations arising during the course of Your business operations, Including but not limited to loans, accounts and salaries payable, mortgages, notes, and unclaimed dividends.

25.    "Metadata" means and refers to data about data, Including without limitation, information embedded in a native file or other data that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage and validity of the electronic file as well as information generated automatically by the operation of a Computer or other information technology system when a native file is created, modified, transmitted, deleted or otherwise manipulated by a user of such

14476342.1                                    7

system.

26.    "Mizuho Bank" means and refers to Mizuho Bank, Ltd., the financial services

company headquartered in Japan together with all of its parents, subsidiaries, affiliates, owners,

directors, managers, employees, and related Persons.

27.    "Person" means any natural person, corporation, partnership, association,

organization, joint ventures, or other entity of any type or nature.

28.    "Private Key" means any data string, number, cryptographic signature, or any

other identifiers to enable the transfer, transmission, sale, or purchase of bitcoins, or to prove

ownership or control of bitcoins.

29.    "Relating To," Including its various forms such as "Related To," means to consist

of, concern, discuss, mention, regard, refer to, reflect or be in any way logically, factually or

legally connected, directly or indirectly, with the matter described.

30.    "Relevant Time Period," means January 1, 2009 until the present. Unless

otherwise indicated, all Requests shall refer to the Relevant Time Period.

31.    "The Bitcoin Exchange Known as Mt. Gox" means the Internet website location

where Class Members could buy, sell, convert, and trade their bitcoins and Fiat Currency.

32.    "Wallet" or "WalletFile" means any file that stores, contains, or maintains Private

Keys.

33.    "You," "Your," or "Mt. Gox" means the Debtor.

34.    "YubiKey" means a one-time password generator device capable of generating a

unique sequence of characters when activated, Including any device with similar capabilities.

## II. Instructions

1. The Person responding to a Request should have knowledge to answer said Request. If

another Person has superior knowledge of certain Requests, that other Person should respond to

that Request and be so designated. If such Person is unavailable, that Person should be fully

Identified and the nature and scope of their knowledge and the reasons that such Person's

knowledge is or is believed to be superior, explained fully.

2.      In responding to these Requests, furnish all information, however obtained,

Including hearsay, which is available to You and any information known by You, in Your

possession, or appearing in Your records.

3.      These are intended as continuing Requests having within them a duty to timely

supplement Your responses until and during the course of trial.

4.      Information sought by these Requests that You obtain after You serve Your

responses must be disclosed to Plaintiffs by supplementary responses.

5.      It is intended by this set of Requests to elicit information not merely within Your

knowledge, but obtainable by You or on Your behalf.

6.      You may not claim lack of information or knowledge as grounds for failing to

respond to any Request or as grounds for giving an incomplete or partial response to any Request

without exercising due diligence to secure the full information needed to do so. Where You rely

or respond based on information provided to You from any other Person, fully Identify that

Person and how You obtained the information from them. Where You rely on information in any

Document, specifically Identify the Document and Identify the Person who has custody of that

Document.

7.      If You cannot respond to a Request in full after exercising due diligence

to secure the full information needed to do so, so state and respond to the extent possible,

specifying Your inability to respond to the remainder, stating whatever information or

knowledge You have concerning the portion to which You did not respond and detailing Your

attempts to secure the unknown information.

8.      If any Request is objected to on the basis that the time period covered by the

Request is irrelevant, burdensome, or otherwise inappropriate, state what time period You

consider proper for that Request and answer the Request for that time period, preserving Your

objection to the remainder of the time period.

9.      If You choose to provide any responses, Documents, or other materials in Your

responses in electronic media or machine-readable form (such as Computer disk, cartridge, tape,

punch cards, or other non-printed media), You must provide all information and things necessary

for Plaintiff or his agents to fully access, read, and decode into plain English text all data and

files so provided.

10.     All Documents, ESI, file systems, and digital media are to be produced in their

respective native format with all associated Metadata intact and, if such electronic Documents or

ESI are no longer available in their native formats for any reason, please Identify the reasons

such native format Documents are no longer available and the Dates each such Document

became unavailable.

11.     Upon producing any Document requested, You are instructed to indicate to which

of the numbered Requests for Production the Document is being produced in response. You may

do so by referencing Document numbers (*i.e.*, Bates Numbers).

12.     Under Rule 34(b)(2)(E) of the Federal Rules of Civil Procedure, all Documents

are to be produced in the form, order, and manner in which they are maintained in Your files.

Documents are to be produced in the folders, cartons, or containers in which they have been

maintained, stored, clipped, stapled, or otherwise arranged in the same form and manner in

14476342.1                          10

which they were found and in such a manner that the office and location from which they were produced is readily identifiable. Whenever a Document or group of Documents is/are taken out of a file folder, file drawer, file box, or notebook, before the same is/are produced, attach thereto a copy of the label on the file folder, file box, or notebook from which the Document or group of Documents was removed.

13.    If any Document requested has been lost or destroyed since its creation, Identify the nature of the Document (*e.g.*, letter, email, etc.), the Date of the Document, the Persons who sent and received the original and any copy of the Document, a summary of the contents of the Document and Describe when, where, how, and by whom said Document was lost or destroyed, and state the name of the Person(s) who last had custody thereof.

14.    If, in responding to these Requests, You encounter any ambiguity in construing either the Request or any instruction relevant to the Request, You should nonetheless respond to the Request, set forth the matter deemed ambiguous, and set forth the construction used in responding to the Request.

15.    If You claim privilege as grounds for failing to produce any Document requested, provide a privilege log that:

(i)    Identifies the author or originator of the Document, the Date authored or originated, the identity of each Person to whom an original or a copy was addressed or delivered, the identity of each Person known or reasonably believed by You to have present possession, custody or control thereof;

(ii)    Discusses the factual basis for Your claim of privilege in sufficient detail to permit the Court to adjudicate the validity of that claim; and

(iii)    Produces so much of each such Document that does not contain privileged information or Communications.

16.    "And" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Requests any information which might otherwise be

14476342.1                                                    11

construed to be outside of their scope. Singular and plural words should be read so as to bring

within the scope of these Requests any information that might otherwise be construed to be

outside their scope. "Each" shall encompass "every." "Including" or "Includes" encompasses

"Including but not limited to."

17.    Attachments. Email attachments and embedded files must be mapped to their

parent by the Document or production number. If attachments and embedded files are combined

with their parent Documents, then "BeginAttach" and "EndAttach" fields listing the unique

beginning and end number for each attachment or embedded Document must be included.

18.    Bates Numbering. Each page of a produced Document, or media upon which ESI

in native format is produced, shall have a legible, unique page identifier "Bates Number"

electronically "burned" onto or associated with the media, or image in such a manner that

information from the source Document is not obliterated, concealed, or interfered with. There

shall be no other legend or stamp placed on the Document image unless a Document qualifies for

confidential treatment pursuant to the terms of a protective order in this litigation, or has been

redacted in accordance with applicable law or Court order. In the case of confidential materials, a

designation may be "burned" onto or otherwise associated with the Document's image at a

location that does not obliterate or obscure any information from the source Document. For

redacted material, the word "Redacted" should be burned onto the Document image over the

protected information. To the extent native files are produced, the producing party will name the

native file with the Bates number.

19.    Duplicates. To the extent that exact duplicate ESI Document (based on

MD5 or SHA-1 hash values) resides within a party's data set, You may produce only

a single copy of a responsive Document. This de-duping should be done only on exact duplicate

Documents. Only Documents where the main Document and the attachments are exactly the same will be considered exact duplicates. ESI with differing file names but identical hash values shall not be considered duplicates. Exact duplicate shall mean bit-for-bit identically with both Document content and any associated Metadata. Where any such Documents have attachments, hash values must be identical for both the Document-plus-attachment (Including associated Metadata) as well as for any attachment (Including associated Metadata) standing alone.

20.    File Naming Conventions. Where production of .tiff images rather than Native Format ESI is requested or agreed to, each Document image file produced shall be named with the unique Bates Number of the first page of the Document, followed by the extension ".tif" or ".tiff." To the extent separate text files are provided, text files should be named the same as the first tiff image of the Document.

21.    Metadata shall be provided in connection with ESI requested, and Includes without limitation, file, application and system Metadata. The following list identifies the Metadata fields that shall be produced (to the extent available):

- Document number or production number (Including the Document start and Document end numbers). This should use the standard Bates Number in accordance with those used in previous productions.
- BeginAttach
- EndAttach
- Title/Subject
- Sent/Date and time (for emails only)
- Last Modified Date and time created Date and time (for e-docs)
- Received Date and time (for emails only)
- Author
- Recipients
- cc:
- bcc:
- Source (custodian)
- Hash Value
- File Path
- Media (type of media that the Document was stored on when it was collected)

- Page count
- Original file name
- Doc extension
- Full text
- Accessed Date & time
- Last print Date

22.     Production of Paper Documents. Production of paper-based original Documents (*i.e.*, Documents that were not first generated by a Computer, such as hand written memoranda) shall be produced in hard copy manner.

23.     Structured Data. Structured data such as relevant database information shall be produced in native data format, together with any associated database schema necessary to render such data reasonably usable.

24.     For any term used herein that is not otherwise specifically defined, the common and usual meaning of such term is intended. Any ambiguity in these Requests shall be resolved so as to construe these Requests as broadly as possible.

25.     The terms defined in Section I above need not be capitalized to retain their meaning as set forth in that Section.

### III. Documents Requested

#### DOCUMENT REQUEST NO. 1

All Documents Identified or referred to in Creditor Greene's First Set of Interrogatories served on You or in Your response to those Interrogatories.

#### DOCUMENT REQUEST NO. 2

All Documents, Including monthly, quarterly, or other periodic statements, cancelled checks, deposit slips, wire transfers, etc., regarding any domestic or foreign bank or other financial account, regardless of how such account is titled, over which You had signatory authority or other control.

14476342.1                                        14

## DOCUMENT REQUEST NO. 3

All receipts, statements, deposit slips, wire transfer memoranda, debit slips, electronic mail messages, and other such documents reflecting any funds, stock, and/or property transferred by You or on Your behalf.

## DOCUMENT REQUEST NO. 4

All Documents written by You or received by You Relating To any account(s) Identified in response to Document Requests 2 through 4 above.

## DOCUMENT REQUEST NO. 5

All Documents Relating To any stocks, mutual funds, or other financial investments or instruments possessed or controlled by You or held on Your behalf.

## DOCUMENT REQUEST NO. 6

All Documents Relating To any Private Keys, Wallet Files, or Bitcoin Addresses possessed or controlled by You or held on Your behalf.

## DOCUMENT REQUEST NO. 7

All Documents You possess or control Relating To the names, account numbers, Bitcoin Addresses, or other credentials of Persons who held Bitcoin or Fiat Currency on the Bitcoin Exchange Known as Mt. Gox at any time during the Relevant Time Period and reflecting the amounts of such Bitcoin or Fiat Currency as of February 24, 2014.

## DOCUMENT REQUEST NO. 8

All Documents Relating To any electronic data, information, websites, IP addresses, or backup data that is stored, held, controlled, or possessed by You, Including the location of any such data, information, websites, or backup data.

14476342.1                                            15

**DOCUMENT REQUEST NO. 9**

All pleadings filed by You or on your behalf in the Japanese Proceeding, translated into English.

**DOCUMENT REQUEST NO. 10**

Copies of any domestic (Including both federal and state) and foreign tax returns prepared by You or on Your behalf.

**DOCUMENT REQUEST NO. 11**

All Documents relating to intercompany transactions that occurred in the two years prior to the filing of the Japanese Proceeding.

**DOCUMENT REQUEST NO. 12**

All financial statements and/or loan applications prepared by You or on Your behalf.

**DOCUMENT REQUEST NO. 13**

Copies of all deeds, mortgages, leases, and notes executed by You or that were in effect during the Relevant Time Period.

**DOCUMENT REQUEST NO. 14**

All Documents Relating To any YubiKeys in Your possession or control, Including any YubiKeys possessed or controlled on Your behalf.

**DOCUMENT REQUEST NO. 15**

All Documents Relating To any certificates of deposits You own or controll.

**DOCUMENT REQUEST NO. 16**

All Documents Identifying commercial activities carried on in the United States by You or on Your behalf.

14476342.1                          16

## DOCUMENT REQUEST NO. 17

All Documents You possess or control Relating To organizations and businesses owned or controlled by You, Including any Documents Relating To the location of any premises where You, directly or through any third party, conduct business operations.

## DOCUMENT REQUEST NO. 18

Any applications submitted to open the bank accounts referenced in Interrogatory 4.

## DOCUMENT REQUEST NO. 19

All Documents Relating To any Internet Service Providers You used or employed.

## DOCUMENT REQUEST NO. 20

All Documents Relating To any Electronic Data Host used or employed by You or on Your behalf.

## DOCUMENT REQUEST NO. 21

All Documents Relating To the seizure of any of Your Assets by the United States government, any foreign government, or any other entity.

## DOCUMENT REQUEST NO. 22

All Documents Relating to any allegations of criminal conduct by You, government investigation into Your conduct or activities, or civil complaints filed against You.

## DOCUMENT REQUEST NO. 23

All Documents Relating To any intellectual property, including trademarks, copyrights, and patents, possessed, owned, or controlled by You or on Your behalf.

## DOCUMENT REQUEST NO. 24

All Documents, Including wire transfers, memoranda, notes, statements from brokerage,

bank or other financial accounts regarding or reflecting the purchase, transfer, or sale of any real

or personal property.

**DOCUMENT REQUEST NO. 25**

All Documents, Including wire transfers, memoranda, notes, statements from brokerage,

bank or other financial accounts regarding or reflecting Your purchase, transfer, or sale of

bitcoins.

**DOCUMENT REQUEST NO. 26**

All Documents, Including wire transfers, memoranda, notes, statements from brokerage,

bank or other financial accounts regarding or reflecting the purchase, transfer, or sale of bitcoins.

**DOCUMENT REQUEST NO. 27**

The form of application submitted for a user to open an account with You.

**DOCUMENT REQUEST NO. 28**

Any documents or communications relating to the FinCEN registration with the United

States Department of Treasury.

**DOCUMENT REQUEST NO. 29**

All Documents Related To any agreements or relationships You have with any

accountant or accounting firm or auditor or auditing firm.

**DOCUMENT REQUEST NO. 30**

All Documents Related To any agreements or relationships You have with any legal

services provider or firm.

**DOCUMENT REQUEST NO. 31**

All contracts (including licenses) You have entered into since January 1, 2011.

14476342.1                                         18

**DOCUMENT REQUEST NO. 32**

All Documents and data Related To the movement or transfer of 180,000 bitcoins in the

Block Chain between March 6, 2014 and March 17, 2014 from address

1KecDYadohxk8MCDqKf8SBEMhCUNveAsCj.

**DOCUMENT REQUEST NO. 33**

All contracts You had with consumers in the United States Related To the storage, use,

maintenance, sale, purchase, or transfer of bitcoins or Fiat Currency.

**DOCUMENT REQUEST NO. 34**

All Documents Identifying or Related To Your consideration to file for bankruptcy

protection, liquidation, or recognition thereof in any country.

**DOCUMENT REQUEST NO. 35**

All Documents Identifying any bitcoins You have caused to be mined.

**DOCUMENT REQUEST NO. 36**

All Documents Identifying any Bitcoin Mining Pool in which you have mined or

attempted to mine bitcoins.

**DOCUMENT REQUEST NO. 37**

All Documents Identifying any transfer of money or bitcoins between You and: (a)

Mizuho Bank Ltd., (b) JPMorgan Chase Bank, N.A., (c) Wells Fargo Bank, N.A., (d) Citibank,

N.A., (e) Dwolla, (f) any attorney, (g) any accountant, or (h) any agent or Employee of any of

them.

**DOCUMENT REQUEST NO. 38**

All Documents sufficient to identify all YubiKeys in Your possession.

14476342.1

19

**DOCUMENT REQUEST NO. 39**

All Documents sufficient to identify and Related To all bitcoins and Fiat Currency in

your possession or control that You are presently holding on behalf of any other Person.

**DOCUMENT REQUEST NO. 40**

The recordings of any telephone conversation between You and Mizuho Bank.

**DOCUMENT REQUEST NO. 41**

All other Correspondence or Communications between You and Mizuho Bank.

**DOCUMENT REQUEST NO. 42**

All Documents Identifying all of Your bitcoins and Fiat Currency held outside the United

States.

**DOCUMENT REQUEST NO. 43**

All Documents Identifying all of Your bitcoins and Fiat Currency held in the United

States.

**DOCUMENT REQUEST NO. 44**

All statements of any witnesses You intend to call at trial or any other hearing in this

matter.

**DOCUMENT REQUEST NO. 45**

All Documents Related To Your discovery that You or any subsidiary had lost the

bitcoins or Fiat Currency of any United States consumer.

**DOCUMENT REQUEST NO. 46**

Copies of any legal complaints or other legal proceedings that have been commenced

against You.

14476342.1                                      20

**DOCUMENT REQUEST NO. 47**

All Documents Related To Your investigation of any transaction malleability issues affecting You or any entities affiliated with You.

**DOCUMENT REQUEST NO. 48**

All Documents sufficient to Identify each Wallet You own or control and the contents of each such Wallet.

**DOCUMENT REQUEST NO. 49**

All Documents Related To any of Your board meetings, votes of members or directors, or other acts in observance of corporate formalities.

**DOCUMENT REQUEST NO. 50**

All Documents supporting your assertion, if any, that You did not misappropriate the bitcoins and Fiat Currency of U.S. citizens who had deposited bitcoins and Fiat Currency in their Wallets on the Bitcoin Exchange Known as Mt. Gox.

**DOCUMENT REQUEST NO. 51**

All Documents Related To any orders or purchases by You of any equipment or software from Butterfly Labs.

**DOCUMENT REQUEST NO. 52**

All Documents sufficient to Identify all of Your vendors, Including customer service call centers.

**DOCUMENT REQUEST NO. 53**

All Documents sufficient to Identify all of Your vendors, Including customer service call centers, including the location thereof.

**DOCUMENT REQUEST NO. 54**

Copies of all insurance policies and declarations, Including life insurance, auto insurance, umbrella insurance, homeowner's insurance, etc., maintained by You or on Your behalf, regardless of whether You are the owner or beneficiary of the policy, in effect during the Relevant Time Period.

*         *         *

**GREGORY GREENE**, individually and on behalf of a class of similarly situated individuals,

Dated: March 17, 2014

By: ___/s/ Steven L. Woodrow_____
       One of Plaintiff's Attorneys

Steven L. Woodrow
swoodrow@edelson.com
EDELSON PC
999 West 18th Street, Suite 3000
Denver, Colorado 80202
Tel: 303.357.4878
Fax: 303.446.9111

Jay Edelson
jedelson@edelson.com
Alicia Hwang
ahwang@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

-and-

Scott B. Kitei (pro hac vice pending)
HONIGMAN MILLER SCHWARTZ AND COHN LLP
2290 First National Building
660 Woodward Avenue
Detroit, Michigan 48226-3506
Telephone: (313) 465-7000
Facsimile: (313) 465-8000
skitei@honigman.com

-and-

14476342.1

22

Robin E. Phelan
HAYNES AND BOONE LLP
2323 Victory Avenue
Suite 700
Dallas, Texas 75219
Telephone: (214) 651-5612
Facsimile: (214) 200-0649
Robin.phelan@haynesboone.com

*Counsel for Creditor Gregory Greene*

## CERTIFICATE OF SERVICE

I, Steven L. Woodrow, an attorney, hereby certify that on March 17, 2014, I served the above and foregoing ***Creditor Gregory Greene's First Set of Requests for the Production of Documents*** by causing true and accurate copies of such paper to be transmitted via electronic mail to the person shown below:

Via email to the Debtor at:
    David.parham@bakermckenzie.com


                                      /s/ Steven L. Woodrow
                                        Steven L. Woodrow