IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS (DALLAS)

| | |
|---|---|
| In re<br><br>MTGOX CO., LTD.,<br>a/k/a MTGOX KK,<br><br>Debtor. | Case No. 14-31229-SGJ15<br>Dallas, Texas<br><br>March 10, 2014<br>1:30 PM |

TRANSCRIPT OF DEBTOR'S EMERGENCY APPLICATION FOR AN ORDER GRANTING PROVISIONAL RELIEF, SCHEDULING RECOGNITION HEARING, AND SPECIFYING FORM AND MANNER OF NOTICE (4)
BEFORE THE HONORABLE HARLIN D. HALE,
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtor MtGox Co., Ltd.:
DAVID WILLIAM PARHAM, ESQ.
JOHN E. MITCHELL, ESQ.
BAKER & MCKENZIE LLP
2001 Ross Avenue
Suite 2300
Dallas, TX 75201

JOHN M. MURPHY, ESQ.
BAKER & MCKENZIE LLP
300 East Randolph Street
Suite 5000
Chicago, IL 60601

For the U.S. Trustee:
LISA LAMBERT, ESQ.
OFFICE OF THE UNITED STATES TRUSTEE
1100 Commerce Street
Room 976
Dallas, TX 75242

Transcription Services:
eScribers
700 West 192nd Street
Suite #607
New York, NY 10040
(973) 406-2250

PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING.

TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

APPEARANCES: (continued)

For CoinLab:

JANE PEARSON, ESQ. (Telephonic)
FOSTER PEPPER PLLC
1111 Third Avenue
Suite 3400
Seattle, WA 98101

EDGAR G. SARGENT, ESQ. (Telephonic)
SUSMAN GODFREY L.L.P.
1201 Third Avenue
Suite 3800
Seattle, WA 98101

ROGER M. TOWNSEND, ESQ.
BRESKIN JOHNSON & TOWNSEND PLLC
1000 Second Avenue
Suite 3670
Seattle, WA 98104

For Gregory D. Greene:

SCOTT B. KITEI, ESQ.
HONIGMAN MILLER SCHWARTZ AND COHN LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226

STEVEN L. WOODROW, ESQ.
CHRISTOPHER L. DORE, ESQ.
EDELSON PC
350 North LaSalle Street
Suite 1300
Chicago, IL 60654

THE CLERK: All rise.

THE COURT: Good afternoon. Please be seated. Thank you very much.

We were debating how to call the debtor. What -- how do you say that [Em Tee Gox] or --

MR. PARHAM: We refer to it as [Mount Gox].

THE COURT: [Mount Gox], all right. I'll take a appearances in MtGox, Ltd. First in the courtroom.

MR. PARHAM: Your Honor, David Parham and John Mitchell on behalf of the debtor, MtGox.

THE COURT: Welcome.

MS. LAMBERT: May it please the Court, Lisa Lambert for the United States Trustee.

THE COURT: Welcome. Anyone else in the courtroom want to make an appearance?

All right. I know that we have several folks on the telephone. Just take your appearance as you give them.

MS. PEARSON: This is Jane Pearson of Foster Pepper appearing for CoinLab.

THE COURT: Welcome.

MS. PEARSON: Thank you, Your Honor. I'm also here with Edgar Sargent of the law firm Susman Godfrey.

THE COURT: Welcome to our court.

MR. MURPHY: Your Honor, this is John Murphy from Baker McKenzie in Chicago on behalf of the debtor. I'm

here -- my colleagues in Dallas have their appearances filed. I am here just to listen in.

THE COURT: Welcome to our court, sir.

Anyone else on the phone wish to make an appearance?

MR. KITEI: Good afternoon, Your Honor. Scott Kitei from Honigman Miller Schwartz and Cohn on behalf of Gregory Greene.

THE COURT: Welcome to our court.

Mr. Parham or Mr. Mitchell.

MR. PARHAM: Good afternoon, Your Honor. We're here seeking provisional relief, the extension of the automatic stay to protect the debtor, and to -- to the debtor and to protect the debtor and its assets with respect to two pending litigations.

At the outset, as the Court knows, while granting of a -- a recognition rather of the foreign proceeding, the automatic stay would extend automatically to the debtor. Section 1517 provides that where once the petition's filed seeking recognition, the Court can grant relief where it's necessary to protect the assets of the debtor.

And so just by way of some background, I don't know how familiar the Court is with Bitcoin; I wasn't --

THE COURT: Only what I've read in the papers and then reading your motion today.

MR. PARHAM: But it's a virtual currency that was

first conceived of in 2008. There essentially are two ways to acquire bitcoin. One is to mine it, where you go on the Internet and you are able to, with the help of very powerful computers, solve algorithms in which case you get a certain number of bitcoins, which may change from time to time. The other is to go on an exchange and do what they call a peer-to-peer transfer of bitcoin. And the debtor operated one of those exchanges.

And essentially, what would happen is customers would open accounts, and deposit cash for bitcoin and then they can trade on those exchanges. And that was, in essence, the business of MtGox. You can also, with bitcoin, buy some goods and services, some retailers now in emergence will accept bitcoin.

MtGox started operating in 2011. On February 7th of this year it halted all bitcoin withdrawals because it suspected there was a glitch in the software that had allowed hackers to get in. On February 24th, they suspended all trading after they discovered that roughly 750,000 bitcoins were missing, including 100,000 bitcoins of their own.

The value of the missing bitcoins at the time and it's -- the values vary and fluctuate; it's a volatile value -- but around the time of the filing the value of the missing bitcoin was roughly 470 or 80 million dollars.

The company then proceeded to file, or apply for, a

civil rehabilitation proceeding in the Tokyo District Court. A civil rehabilitation proceeding is a lot like our Chapter 11. It is a reorganization proceeding where, the end of the day, the creditors vote on a plan of reorganization, and the plan hopefully will get confirmed. So the company is in that process. The district court in Tokyo has not yet granted the application for a civil rehabilitation; it has taken a number of steps that lead up to that step, that final step.

Included in that is -- the Tokyo court has entered several orders, and they're attached to the affidavit of Mark Karpeles, the foreign representative. And those orders, essentially, provide for relief similar to what you would see if you filed a Chapter 11 petition.

For example, there's a stay of creditor actions. The debtors are prohibited from paying pre-petition claims. There are certain steps that -- and there's been a supervisor -- to back up, the court has appointed a supervisor and an examiner, it's the same person, Nobuyuki Kobayashi (ph.). And the debtor can't take certain steps without the consent of Mr. Kobayashi. And basically, the easy way to think about it is that they can operate in the ordinary course, but they can't do activities outside the ordinary course. And the orders appointing Mr. Kobayashi are also attached to Mr. Karpeles' affidavit.

But central among those, they've also, as I

mentioned, entered a stay. And so there is, in the Japanese court, a stay of actions to try and exercise dominion over the debtor's assets. And just as though this Court were to enter a stay, and it would hope that a Japanese court would honor that stay, we would hope that the Court here would recognize that Japanese stay. So in essence, there is a stay in place, but we want to get the provisional stay from this Court to make it clear to the U.S. parties -- other U.S. parties, in that, in fact, a stay is in place.

As I mentioned, we're here under -- pursuant to Section 1519 and Section 105 for the extension of the provisional stay. There are two cases, as I mentioned, that are pending in the U.S. currently.

One is the CoinLab -- what I'll refer to CoinLab case, is pending in the U.S. District Court for the Western District of Washington. It's essentially a breach of contract case where the plaintiffs are seeking some seventy-five million dollars for alleged breach of a license agreement. MtGox has a counterclaim for 5.2 million for conversion of some monies.

The other case, which I'll refer to as the class action case, is a putative class action that was filed on February 27th which alleges various claims against MtGox, Tibanne Inc., which is the debtor's parent, MtGox Inc., which is a second-level sub, and Mark Karpeles.

THE COURT: And is that in Chicago?

MR. PARHAM: That's the one in Chicago, yes.

And I'll address each of those kind of in order, and why it is that to go forward in those cases, to not get a stay would be harmful to the debtor, in fact, create irreparable harm under the various cases that we've cited in our briefing.

With respect to the CoinLab case, the first case, there is significant discovery that's due in the near future. And that's going to result in substantial expense to MtGox and require significant attention of the management team, including Mr. Karpeles, whose deposition has been noticed for February -- March, rather, 25th and 26th.

And to give you an idea of what's going on right now in Japan, is there is an intense investigation, as you can imagine, given what's happened, in terms of trying to find the missing bitcoin and to get the company back on its feet. It's not a large company, about thirty employees, and Mr. Karpeles is certainly the key employee; he's the CEO of that company and the sole director. But they're seeking his deposition in Taipei on March 25th and 26th. There is an April 7th deadline to disclose expert witnesses. There is a May 2nd deadline to serve written discovery. A June discovery cutoff date in July. A deadline to file dispositive motions, and it's anticipated that there'll be a summary judgment practice. And then the case is set for trial in November.

And so if this case is permitted to go forward, it's obviously going to create a lot of work, a lot of expense, and be a considerable burden to MtGox.

With respect to the class action case, there's a TRO hearing scheduled for tomorrow in Chicago. The plaintiffs there are seeking to freeze the defendant's assets -- debtor's assets, rather, in the United States, including servers, computer equipment to the extent that that exists. They want to prohibit transfers of bitcoin or currency belonging to class members. When the class is described basically as all persons who traded on the exchange or who had currency or bitcoin stored at MtGox as of February 7th, very broad class. And the estimate I heard, of course, people from all over the world traded on this exchange. I don't know how many of those are in the U.S. We've heard the company has something like 120,000 customers.

They want to compel us to provide an accounting of all of the debtor's outstanding liabilities, and they want to impose a constructive trust over all assets of the debtors which would effect a jump in favor of the class members, which would in effect move the class members to the top of the list, so to speak, in terms of the priorities of distributions, in other words. And if you look at the relief they're seeking in total, in essence what they're going to do is supplant both this case and the Japanese case in -- basically divest the

company of its assets.

There's also a request in Chicago for expedited discovery, which falls to MtGox; MtGox is the operating company. So the discovery that has been requested is basically all discovery of MtGox. And whether that's from MtGox or whether it's from the president or the parent, Tibanne, in any event, it is MtGox that's going to have to respond if that case goes forward, and if they have to participate in discovery.

In terms of what we need to show, there is a likelihood of success on the merits. We think today that our test is to show that it's likely that a stay will be granted, and when we have our recognition hearing, which hopefully will be in thirty days or so, give or take, just one of the things we wanted to do today is actually schedule a recognition hearing if we can.

But as set forth in our papers this -- there's a foreign proceeding, a foreign insolvency proceeding. We certainly meet the test the courts have for a foreign proceeding. There is an insolvency proceeding. The center of main interest is unquestionably Japan. All the company's activities are in Japan. That's where all the employees are, the exchange; everything, basically, is in Tokyo, so that's -- Japan is clearly the center of main interest.

The Japanese Civil Rehabilitation Act is an act that

has been the subject of other Chapter 15s, including most recently, the Japanese Airlines in the U.S. So it is a recognized foreign regime. There's been a supervisor appointed to look over the assets. So we, certainly, meet that test.

In terms of irreparable harm. As I mentioned, in terms of the discovery they've sought other courts have found, for example, that where the debtor's U.S. assets could be subject to creditor efforts to control or possess those assets, that's sufficient irreparable harm to justify extension of the stay. The legal costs, diversion of managerial resources is another grounds, and that's clear form the manner of the discovery that's being sought and the deadlines that are coming up in these cases.

Disruption of the orderly determination of claims, and distribution of assets, is another grounds of irreparable harm that I think is clear from what they're seeking in Chicago. The threatening of assets subject to subjecting a foreign representative to the possible default judgment, or diverting funds from the insolvency case, that's an additional hardship that's been found by courts to be irreparable harm.

So it's clear when you look at what the deadlines are coming up in the CoinLab case and what the requirements are going to be on the company there, when you look at the relief that's being sought in Chicago, that there is irreparable harm

if these cases go forward, and if the provisional relief is not granted pending the recognition hearing.

In terms of balancing of the hardships it's hard to see whether there's any hardship to either of these other parties. They are -- to the extent that they have claims, they are unsecured creditors, as other creditors are. And so the idea that they need to go forward with two insolvency proceedings and have this kind of relief at this early stage while the company is in the particular shape that it's in at the moment, there's simply no harm there. There is, by contrast, significant harm to the debtor and to the reorganization efforts.

In terms of the public interest, the relief that we're seeking furthers the goals of Chapter 11 -- or of Chapter 15, rather. Excuse me, we're here on a 15 today which is not the norm. But in terms of the protection of assets of the estate, the cooperation of courts in different countries, comity between the Japanese courts and this Court, the maximization of the creditors' recoveries for the benefits of all, I think all of those goals are fostered by the relief that we're seeking here today.

So in a nutshell, what we would ask the Court to do is to extend the stay to MtGox, and to enter an order that basically stays the other two pending litigations pending the recognition hearing that hopefully the Court will schedule in

the upcoming month or so.

THE COURT: Thank you, Mr. Parham. Let me first hear from the United States Trustee, if anything. And then we'll turn over to folks on the telephone.

MS. LAMBERT: Your Honor, the United States Trustee has no opposition to the entry of the stay today.

That being said, we have asked that we be provided with addresses for Mr. Karpeles. Mr. Karpeles, as you are probably aware from the pleadings, is a defendant in the Chicago putative class action, himself individually. There have been some allegations that he might have been involved, or that he might have retained some of the bitcoins beyond the amount that was defrauded.

The United States Trustee is just getting up to speed in this case, but there's no way to verify that. Those are just allegations at this point.

And so -- but he is traveling between Taiwan and Japan, and so we've asked that we be kept current with his address in the interim while we're exploring these facts.

THE COURT: Thank you. I'll now hear from anyone on the phone. If you don't mind, if you would identify yourself before you speak so that we can just make sure that our record is right.

MR. WOODROW: Yes, Judge, I apologize for joining late. My name is Steven Woodrow, and I'm an attorney for the

plaintiffs in the Northern District of Illinois litigation.

THE COURT: Welcome to our court, sir.

MR. WOODROW: Thank you very much, Your Honor. Are there are other attorneys waiting to make appearances?

THE COURT: I think everyone else has made an appearance.

MR. TOWNSEND: Your Honor, this is -- I have not made an appearance. This is Roger Townsend. I'm one of the plaintiff's counsel for CoinLab in the CoinLab litigation in the Western District of Washington.

THE COURT: Okay. And did anyone else miss the first pass on appearances on the phone? If you have, just go ahead and make it now?

MR. WOODROW: For the clarity of the record, Your Honor, I also have Attorney Christopher Dore with me for the hearing.

THE COURT: Welcome. All right --

MR. TOWNSEND: And, Your Honor, just for clarity of the record here, this is Robert Townsend again; I wanted to advise you again that I'm here with executives of CoinLab, who are also listening to the call as well.

THE COURT: Welcome. Everyone, welcome to our court.

Mr. Woodrow, do you want to go first, or is there someone else on your side that is going to go for your client?

MR. WOODROW: Judge, I'd be happy to go if --

THE COURT: Okay.

MR. WOODROW: -- Your Honor, believes now is the time.

THE COURT: Sure.

MR. WOODROW: All right, Judge, real brief on the facts from our standpoint, Your Honor.

This case involves a massive fraud and breach of fiduciary duty by MtGox and Mark Karpeles personally. And it appears that the bankruptcy is being used in furtherance of that deceptive conduct.

As you've heard from MtGox's lawyers, MtGox ran one of the world's largest bitcoin exchanges, where members to buy, sell and trade their bitcoins.

On February 7th the site froze bitcoin withdrawals. Now, up until that point, getting cash or what's known as fiat currency, that's money issued by a government, getting fiat currency out of the exchange had resulted in delays. But up until February 7th user had always been able to withdraw the bitcoins, and that's what stopped on February 7th.

Notably, the company continued to accept deposits of both cash, that's fiat currency, and bitcoins, right up to the very end, even as it prepared to shut down. And we've recently filed declarations to that effect in our litigation in support of our TRO.

We filed our class action complaint, Judge, on

February 27th, and MtGox declared bankruptcy the next day on February 28th. We moved for a TRO on March 4th and we didn't hear anything from MtGox until 2:30 a.m. this morning, indicating that it was going to seek this emergency motion today.

Even in the brief time that we've had a chance to dive into the issues, Your Honor, we believe that there are at least four reasons to deny the requested relief that MtGox seeks today, and that we would also have some other points with respect to the order that they seek, given that we believe that it's very overbroad and that we would also briefing on the issues.

But starting with my first argument, Judge, MtGox in their brief did not show any likelihood of success on the merit, which they need to do in order to get the provisional injunction that they seek. There is nothing in the record that they've presented, Your Honor, to show that this Court has venue or jurisdiction, or that venue is proper here.

On a phone call earlier this morning, counsel for MtGox informed us that they've selected the Northern District of Texas because they say that MtGox has a server there. Of course, as Your Honor's aware, statements of counsel are not evidence; they're no substitute for evidence. We don't know if MtGox owns these servers, or rents them, or leases them. We don't know how many servers there are. We don't know where

other servers might be in the country, although our research suggests that they hold it or access servers out of Massachusetts.

We also know that back in May of 2013, the Department of Homeland Security seized between 2.1 and 5 million dollars of MtGox and Mr. Karpeles' personal assets in a matter that was filed in the District Court of Maryland. Those bank accounts are being held at Wells Fargo.

So it's really not clear, Judge, that they have the likelihood of succeeding on the merits, given that it doesn't look like they've proven or given any evidence, whatsoever, that venue would be appropriate here.

And even if we had that information, Your Honor, we still don't know where any other creditors are. We know that there's several hundred members of the exchange in the United States who are now without their bitcoins and currency because it was on the exchange when MtGox shut down. But we don't know where, globally speaking, their other assets are.

So without any of this information, Judge, without any record, the Court doesn't have the facts that it would need on the first prong to find that they demonstrated a likelihood of success on the merits.

With respect to my second point, Your Honor, there's no showing of irreparable harm here. And of course, as Your Honor's well aware, going back to Your Honor's decision in In

re Vitro S.A.B., we differentiate between the debtor and the nondebtor.

With respect to the debtor, MtGox KK, it's unclear what harm could possibly come from the relief that we seek in our TRO which is, according to MtGox's counsel, the seizure of a server, and an order requiring MtGox to preserve assets. Throughout its brief it says that it needs its relief in order to preserve assets.

They claim, incredibly, that we can preserve assets and protect creditors by entrusting the server or other properties and Mr. Karpeles. And respectfully, Judge, that is the definition of the fox guarding the henhouse.

As the U.S. Trustee just said, reports suggest that Mr. Karpeles -- and there's no way to prove this now -- may have taken the money or bitcoins for himself and shows he cannot be trusted, Your Honor, with any of the classes' assets, particularly, the class members in the United States.

For the nondebtors, which involve Mr. Karpeles personally, this case is right on point with Your Honor's decision in In re Vitro, S.A.B. There is zero chance in this case, Judge, that people are going to get a hundred cents on the dollar and the nondebtor, Mr. Karpeles, and the other entities, have an adequate remedy of law. They can declare bankruptcy, which Your Honor pointed out with respect to the debtor in In re Vitro S.A.B.

And with respect to the motion and the proposed order are grossly overbroad, as they seek to have the provisional injunction apply to Mr. Karpeles himself and that's having your cake and eating it too, giving Mr. Karpeles all the advantages of a bankruptcy proceeding even though he hasn't filed for reorganization personally or insolvency and he's left to spend his private fortune however he sees fit.

So we would argue here, Judge, that on the second point, they have not shown irreparable harm because they have an adequate remedy of law.

It follows, then, Judge, on our third point that the balance of harm plainly favors Plaintiff Greene. If this case is stayed, he is absolutely powerless to stop MtGox or Karpeles from further dissipating assets, and that's exactly what the defendant wants here -- or, not the defendant, sorry, he's our defendant -- which is exactly what MtGox and Mr. Karpeles want here.

Like we said, there are rumors online in hacker chat rooms, in this case there's been a ton of media attention and scrutiny, people who had invested in bitcoin and members of the exchange have followed this very closely. They understand the technology. And the people who look into this very closely are suggesting that MtGox is either hiding or moving bitcoins into smaller segments to avoid detection.

If MtGox and Mr. Karpeles get the relief that they

seek today, it is a very sad day for the U.S. consumers who were swindled in this fraud. And that's exactly what MtGox and Mr. Karpeles want.

Lastly, Judge, with respect to the public interest, as Your Honor explained in In re Vitro, extending the automatic stay for nondebtors contravenes basic bankruptcy principles. It's a basic and compelling principle of federal bankruptcy law that the automatic stay and those types of protectants focus on protecting debtors not nondebtors even if they are related. As in the In re Vitro case, they were subsidiary guarantors.

So here, Your Honor, we have Mr. Karpeles who's been sued individually in the Northern District of Illinois and he would like the automatic stay applied to him even though he had never declared bankruptcy.

Other than that, Judge, I'm not sure that MtGox is not entitled to the injunction that they seek. There's no emergency here with respect to having to get this order decided today. They told us at 2:30 this morning that they were going to seek this relief but there is nothing that warrants any type of emergency relief. At the very least, we should be able to brief these issues fully prior to the granting of any stay or injunction.

And we would also note that with respect to the order they submitted, Your Honor, not only does it include Mr.

Karpeles personally, which we would object to, they are overbroad with respect to the protections from the Bankruptcy Code that they're asking be applied. In the order, they seemed to broaden with actually seeking the terms of relief in their motion. We would object to that as well.

But at its heart, Judge, there is no irreparable harm here. Mr. Karpeles, if he wants to be -- if he has to have the advantage of the automatic stay and the protections that United States Bankruptcy Code affords the debtors, then he should become a debtor and declare bankruptcy as opposed to having to schedule a meeting with you.

So, Your Honor, that is, from where the plaintiffs stand in the Northern District of Illinois, Your Honor, should deny the relief sought. The record is devoid of facts that would even suggest this Court has jurisdiction. And even if the Court could look past that, which it can't, MtGox and Mr. Karpeles lose on the merits of the preliminary injunction. Thank you, Judge.

THE COURT: Thank you, Mr. Woodrow. Mr. Townsend, do you want to go next?

MR. TOWNSEND: I would defer, Judge, if Ms. Pearson's online, I'd let her go first for CoinLabs.

MS. PEARSON: I am online. This is Jane Pearson of Foster Pepper in Seattle for CoinLabs.

And first of all, I wish to concur with many of the

points made by the previous speaker. And then in connection with this Court's -- with the relief requested, I would first like to note that this debtor hasn't even -- or this proposed debtor hasn't even alleged sufficient facts in order to become a debtor in this case under Section 109 in which it would be required to reside, have a domicile, a place of business or property in the United States. And none of these filings included information that would establish that MtGox has these things as a requisite to being able to be a Chapter 15 debtor in this court. Such facts were sufficient for the Second Circuit, in the In re Barnet case, 737 F.3d 238, to deny Chapter 15 status to that proposed debtor.

I'd also like to add that even though this isn't the kind of argument one likes to make to a Court, a well-regarded Court, that there's nothing that would establish venue in this court under 28 U.S.C. 1410 in which venue is established by the debtor having a principal place of business or principal assets in the United States, a place of business or an action or proceeding pending in a federal court or something consistent with the interest of justice and the convenience of the parties. And those things simply don't exist here.

There are pending actions in Seattle and in Chicago. The Seattle action was filed first. Venue isn't appropriate, with all due respect, Your Honor, in the Northern District of Texas and it should be in Seattle or, as a secondary matter in

Chicago, if this entity were qualified to be a Chapter 15 debtor at all.

We'd like to also raise the same concerns that have been raised by the U.S. Trustee and the previous speaker which are with respect to Mr. Karpeles' activity. And again, we can't establish this at this point, we don't have proof, but we do have concerns about the movement of hundreds of millions of dollars in bitcoins being moved over the weekend on Mr. Karpeles individually and personally and are extremely concerned about that and about the idea of using a bankruptcy court in order to hold everyone else off but in order to enable Mr. Karpeles to continue to engage in what we're concerned about as being fraud.

And finally, should the Court be inclined to grant the relief, it should definitely be the case that the automatic stay applies only to the proposed debtor entity and not to any affiliates or to Mr. Karpeles individually.

In the Seattle litigation, there's another defendant, which is Tibanne, and the automatic stay should not apply to that -- to Tibanne; it should only be limited -- it should be extremely limited to MtGox. Those are all my comments, Your Honor.

THE COURT: Thank you, counsel. Anyone else on the phone wish to be heard?

Mr. Parham, we'll switch back to you. We have enough

time for everybody to speak so we're going to switch back to you. What about venue? And then are you seeking the automatic stay to cover this individual and nondebtors?

MR. PARHAM: Your Honor, we think -- well, first of all, let me answer it this way. If this were a Chapter 11 case, if the case is stayed as to -- there's a 362 stay as to MtGox, we think it's clear that all these litigations would be stopped. I mean as the -- as I think Mr. Woodrow --

MR. TOWNSEND: Your Honor, may I interrupt for one second? We can't hear the current speaker.

THE COURT: Okay. Hold that mic toward you.

MR. PARHAM: Thanks.

THE COURT: It's Mr. Parham representing MtGox.

MR. PARHAM: So we are asking that the litigation be stayed. In essence, if you look at the discovery that is being requested, the relief that's being requested in the class action case, for example, it's all, essentially, directed at MtGox. And were that litigation to go forward, it's going to be the same burden whether MtGox is -- for example, they want an accounting of all claims and debts and liabilities of MtGox. And there is a theory that where, for example, an affiliate is subject to an order such as that they have to go to the other affiliate and get it which in this case would be MtGox. So I don't see how those cases can go forward without, in essence, violating the stay, without

creating the very harm that we're here trying to protect by extending the stay to MtGox.

This isn't Vitro. I mean, these are not third-party-type guarantees here. The actions that are complained of, whether it's the termination of the license agreement in Seattle or whether it's the manner in which the exchange was operated in Tokyo which is the class action complaint as we've heard, it's MtGox's actions and MtGox's assets that they're seeking to recover, MtGox's information that they're seeking to get, everything goes back to MtGox. So yes, we do think this litigation should be stayed.

If you extend the stay to MtGox, we think it should stay all those cases because of how intertwined MtGox is in those cases and how they're, in essence, the target and the central figure. I mean, simply adding a third party or an employee in the case of the CEO, we don't -- we think that yes, the stay should apply to them --

THE COURT: Okay.

MR. PARHAM: -- to the extent of the litigation.

THE COURT: So you're saying I have authority in this action to say that it's stayed?

MR. PARHAM: Yes, I think you --

THE COURT: I thought I had the authority to say that it's stayed against the debtor.

MR. PARHAM: You do have the authority to extend the

stay against the debtor, I think, under 105 -- under Section 1519, you have the authority, basically, to enter whatever appropriate relief is available under the Bankruptcy Code for the benefit of protecting an order to protect the debtors' assets and for the benefit of the estate. So I do think you have the authority to enter a stay as to those two litigations.

And frankly, I mean this is not to say that they can't come back in as they would in any case and file a motion for relief from stay and we can have that day; if they want to come down and file a motion for relief, then we'll assert whatever defenses we have to it and they can assert whatever arguments they have, but that's exactly how it would work in a Chapter 11 if you applied the stay automatically and that's all we're really asking the Court to do here today.

THE COURT: Address the venue argument, if you would, please.

MR. PARHAM: Your Honor, venue is in this district because there are servers in Dallas that have MtGox backup data on them. And so there is an asset, the backup data, that's in Dallas and that is the basis for venue.

I think we've show in our papers, certainly that jurisdiction's proper in the United States. We can have the venue issue out later but clearly, this is, on the papers that we've presented, a case where jurisdiction does exist in the

United States for a Chapter 15. But that's the basis of our venue. Our venue is the backup data on the servers.

THE COURT: Okay.

MR. PARHAM: The only other point I would make in response is the argument that somehow these insolvency proceedings are in furtherance of some massive fraud. I think it's -- it just doesn't make any sense that -- frankly, it's counterintuitive that if you were trying to commit some fraud you would go and you would put the company into and ask a Japanese court to take control of its assets and submit yourself to court jurisdiction. So obviously, we would certainly deny that there's any massive fraud going on or that the bankruptcy or that this proceeding, frankly, is somehow in furtherance of some scheme and that's -- it's, frankly, it's offensive and, as I said, it's just counterintuitive that that would be the case.

THE COURT: You eventually will get to go last; we'll let everyone speak again, all right?

Anyone on the phone wish to add?

MR. WOODROW: Yes, Judge. Steven Woodrow --

MR. TOWNSEND: Yes, Judge.

MR. WOODROW: Yes, Judge -- I'm sorry; go ahead.

MR. TOWNSEND: Go ahead, Steven.

Well, this is Roger Townsend calling from Seattle and to make a point that the Court may not be aware of is that due

to the nature of the bitcoin network and the transactions, that the claim that Mr. Karpeles has transferred over a hundred million dollars in bitcoins this weekend, which, notably, was not denied by Baker counsel is verifiable and it's -- because it's a peer-to-peer network, it can be looked up through ledgers; it's not wild speculation. This is from looking at actual bitcoin accounts, addresses associated with Mr. Karpeles and because it's peer-to-peer decentralized network, these things can be looked up and reviewed and so the basis which are in public reports, mostly on Reddit, that those exist and are not based on wild speculation.

So the cause of doing that, and I can't pretend to decipher why he did that, but the fact that huge sums of money are being actively transferred on the eve of bankruptcy is not just a product of mere speculation. There are folks, as Mr. Woodrow mentioned, who are observing, what's called the block chain and noticing a huge amount of activity on the eve of bankruptcy.

THE COURT: What was the -- it's known as what? What did you just say? I just didn't hear --

MR. TOWNSEND: The term is block chain.

THE COURT: Block chain. Thank you.

MR. TOWNSEND: And there's a decentralized ledger of all transactions which is fundamental to the way the bitcoin network works and it's public. And so that all bitcoin

transactions can be observed and then it's an exercise of determining which addresses are associated with which individuals and so that's the exercise. But the fact that all transactions are available in this public ledger is the nature of the bitcoin protocol.

THE COURT: Thank you, Mr. Townsend.

MR. WOODROW: Yes, Your Honor, Steven Woodrow for the plaintiffs in the Northern District of Illinois. Very briefly, Your Honor.

With respect to venue, when counsel spoke, that was the first time we have heard that there is backup data with respect to the servers and that that's the asset that they're referring to, Your Honor. That type of statement is a grossly insufficient record upon which the Court can say it has venue to enter the relief that MtGox is presently seeking.

With respect to the nondebtor, Mr. Karpeles, and the other nondebtors which is its parent company, Your Honor's case of In re Vitro S.A.B. is directly on point, 455 B.R. 571. And Your Honor warned that this precise type of conduct would happen where a foreign entity was at an injunction in the United States in favor of one of its related companies and then it would be left free to do as it pleased.

If Mr. Karpeles desires to have bankruptcy protection, then he should avail himself of those protections in the Japanese court. Until he does that, he should not be

afforded the protections of the debtor.

THE COURT: Anyone else on the phone wish to speak?

MS. PEARSON: Yes, Your Honor, Jane Pearson, again, for CoinLab.

I wanted to point out with respect to Section 1410 -- 28 U.S.C. 1410, the venue provision, that in order to have the case be properly venued in the district where there are assets, they must be the principal assets; otherwise the case needs to be where there's an action or proceedings pending in federal or state court or where it's convenient for the parties. So again, we would submit that where that venue would be appropriate would be Seattle, as the first choice, or Chicago.

But I also wanted to point out with respect to the stay, that we concur with the previous speaker and that is if Mr. Karpeles and Tibanne want the benefit of a stay, they should either have to become their own debtors or they should seek application of a special stay in the context of a Chapter 15 proceeding if one is allowed to go forward. But they shouldn't be able to just ride the coattails of this proceeding.

THE COURT: Thank you. Mr. Parham, you get to go last.

MR. PARHAM: Your Honor, first of all, I don't think that we -- is any requirement that we plead every venue fact.

We note that on the petition, we do assert that there are assets in Dallas and that was the basis for the venue. Certainly, venue is something that can be challenged in an appropriate motion, but there is a venue here. And in any event, there's certainly venue in the United States -- or jurisdiction, rather, in the United States.

With respect to the allegations regarding the transfer of bitcoin, quite frankly, it's not in any of the litigation papers; it's not anything that we've heard of before today. I don't know. I would assume that Mr. Karpeles, if, in fact, that happened, and I don't know that it did, that it was all aboveboard and for appropriate reasons. But again, we've not heard anything about it. So the fact that we didn't earlier deny it, it's not to be taken as any sort of an admission. We simply don't know. But that said, I'm sure that Mr. Karpeles and the company are complying with the requirements of the Japanese proceeding. And in any event, that would seem to be an issue for the Japanese courts.

THE COURT: All right. What you're seeking from -- and by the way, this is Judge Jernigan's case so you'll just have me for a limited amount of time --

MR. PARHAM: Um-hum.

THE COURT: -- but you're seeking a temporary stay until you get to the recognition hearing in front of her. Is that correct?

MR. PARHAM: That's correct.

THE COURT: Okay. All right. I'm going to recess for a few minutes.

I apologize for asking you to stay on the phone. You can mute us. This is going to take a little while because I'm going to sit down with Ms. Jernigan's clerk and my own clerks and then we'll come back and give you a ruling. It could take as long as a half an hour, though, before we come back in the courtroom. So we'll be in recess for about a half an hour, I would think.

THE CLERK: All rise.

MR. WOODROW: Thank you, Your Honor.

(Recess from 2:18 p.m. until 2:59 p.m.)

THE CLERK: All rise.

THE COURT: Good afternoon, again. Please be seated. Thank you.

The Court's ruling will be as follows. The application will be granted in part. I want to go through a couple of the factors in case it's reviewed by someone.

It's beyond a doubt that there's a foreign main proceeding pending in Japan. It's also, I think, not really probably too much dispute that there are assets of the debtor in the United States which require protection while that proceeding is pending.

In looking at the balance of harm, the request is to

protect the debtors' assets until the case gets to a recognition hearing. I think that the balance of harm cuts in favor of the debtor.

And as far as public interest, it's in the interest of the debtor and all of the debtors' creditors, not just those that are in litigation, to issue a limited order which protects the debtor and its assets prior to the recognition hearing.

For purposes of this order, I'll find that venue is proper and also that the debtor is entitled to the full protections and rights available pursuant to Section 1519(a)(1) through (3) of the Bankruptcy Code.

I also will find that pursuant to 1519(a)(3) and 1521(a)(7) of the Bankruptcy Code Section 362 of the Bankruptcy Code is applicable to the debtor and its assets until further order of this Court or dismissal or closure of this Chapter 15 proceeding.

I note that the application sought need to make some sort of a finding as to a defined term. The United States litigation matters, I think that request is too broad. It may be that entering the order that I just described has the same effect but I don't have the authority to stay under the automatic stay actions against nondebtors.

Now, the recognition hearing will be held on April 1 at 1:30 and April 2 at 9:30. Judge Jernigan has a day and a

half to hear you and, obviously, these matters are subject to any orders that she might enter subsequent to this one.

Mr. Mitchell, you'd need to refine your order some and your notice some and then send them to me. They'll go to Jernigan's office first and they'll be routed to me for signature. All right.

MR. MITCHELL: Yes, Your Honor. Thank you.

THE COURT: All right. We'll be in recess. Thank you very much.

THE CLERK: All rise.

MR. WOODROW: Thank you, Judge.

MS. PEARSON: Thank you.

(Whereupon these proceedings were concluded at 3:02 PM)

I N D E X


| RULINGS: | PAGE | LINE |
|---|---|---|
| Motion for relief from stay granted | 32 | 18 |
| Venue is proper and debtor is entitled to full protections and rights pursuant to Section 1519(a)(1) through (3) of the Code | 33 | 10 |
| Pursuant to 1519(a)(3) and 1521(a)(7), Section 362, is applicable to debtor and its assets until further order of this Court or dismissal or closure of this Chapter 15 proceeding | 33 | 14 |

C E R T I F I C A T I O N

I, Esther Accardi, the court approved transcriber, do hereby certify the foregoing is a true and correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

March 30, 2014

ESTHER ACCARDI DATE

AAERT Certified Electronic Transcriber (CET**D-485)

## [

**[Em (1)** 3:5
**[Mount (2)** 3:6,7

## A

**able (5)** 5:3;15:18;20:22; 22:9;30:20
**aboveboard (1)** 31:12
**absolutely (1)** 19:13
**accept (2)** 5:13;15:20
**access (1)** 17:2
**according (1)** 18:5
**accounting (2)** 9:17;24:20
**accounts (3)** 5:10;17:8;28:7
**acquire (1)** 5:2
**Act (2)** 10:25,25
**action (11)** 7:22,22;9:4;13:10; 15:25;22:18,23; 24:17;25:7,21;30:9
**actions (6)** 6:14;7:2;22:22; 25:4,8;33:23
**actively (1)** 28:14
**activities (2)** 6:22;10:22
**activity (2)** 23:5;28:17
**actual (1)** 28:7
**actually (2)** 10:15;21:4
**add (2)** 22:13;27:19
**adding (1)** 25:15
**additional (1)** 11:20
**address (3)** 8:3;13:19;26:16
**addresses (3)** 13:8;28:7;29:2
**adequate (2)** 18:23;19:10
**admission (1)** 31:15
**advantage (1)** 21:8
**advantages (1)** 19:5
**advise (1)** 14:20
**affidavit (2)** 6:10,24
**affiliate (2)** 24:22,23
**affiliates (1)** 23:17
**afforded (1)** 30:1
**affords (1)** 21:9
**afternoon (4)** 3:2;4:5,10;32:15
**again (8)** 14:19,20;23:5; 27:18;30:3,11; 31:13;32:15
**against (4)** 7:23;25:24;26:1; 33:23
**agreement (2)** 7:18;25:5
**ahead (3)** 14:12;27:22,23
**Airlines (1)** 11:2
**algorithms (1)** 5:4
**allegations (3)** 13:11,16;31:7
**alleged (2)** 7:18;22:4
**alleges (1)** 7:23
**allowed (2)** 5:17;30:19
**although (1)** 17:1
**always (1)** 15:18
**among (1)** 6:25
**amount (3)** 13:13;28:17;31:21
**anticipated (1)** 8:24
**apologize (2)** 13:24;32:4
**appearance (5)** 3:15,17;4:4;14:6,8
**appearances (4)** 3:8;4:1;14:4,12
**appearing (1)** 3:19
**appears (1)** 15:9
**applicable (1)** 33:15
**application (4)** 6:7;30:18;32:18; 33:18
**applied (3)** 20:14;21:3;26:14
**applies (1)** 23:16
**apply (4)** 5:25;19:3;23:19; 25:17
**appointed (2)** 6:17;11:4
**appointing (1)** 6:23
**appropriate (6)** 17:12;22:23;26:3; 30:12;31:4,12
**April (3)** 8:20;33:24,25
**argue (1)** 19:8
**argument (4)** 16:13;22:14; 26:16;27:5
**arguments (1)** 26:13
**around (1)** 5:23
**assert (3)** 26:11,12;31:1
**asset (2)** 26:20;29:12
**assets (31)** 4:13,20;7:3;9:6,7, 19;10:1;11:4,8,10, 16,18;12:16;17:6,18; 18:6,8,9,17;19:14; 22:18;25:8;26:5; 27:10;30:8,8;31:2; 32:22;33:1,7,15
**associated (2)** 28:7;29:2
**assume (1)** 31:10
**attached (2)** 6:10,23
**attention (2)** 8:10;19:19
**attorney (2)** 13:25;14:15
**attorneys (1)** 14:4
**authority (6)** 25:20,23,25;26:2, 6;33:22
**automatic (10)** 4:11,17;20:6,8,14; 21:8;23:16,19;24:3; 33:23
**automatically (2)** 4:17;26:14
**avail (1)** 29:24
**available (3)** 26:3;29:4;33:11
**avoid (1)** 19:24
**aware (4)** 13:9;16:22;17:25; 27:25

## B

**back (10)** 6:17;8:16;17:4,25; 23:25;24:1;25:10; 26:9;32:7,8
**background (1)** 4:21
**backup (4)** 26:19,20;27:2; 29:11
**Baker (2)** 3:25;28:4
**balance (3)** 19:12;32:25;33:2
**balancing (1)** 12:3
**bank (1)** 17:7
**bankruptcy (19)** 15:9;16:1;18:24; 19:5;20:6,8,15;21:2, 9,10;23:10;26:3; 27:13;28:14,18; 29:23;33:12,14,15
**Barnet (1)** 22:11
**based (1)** 28:11
**basic (2)** 20:6,7
**basically (7)** 6:20;9:10,25;10:5, 23;12:24;26:2
**basis (4)** 26:21;27:1;28:10; 31:2
**become (3)** 21:10;22:4;30:17
**behalf (3)** 3:10,25;4:6
**believes (1)** 15:2
**belonging (1)** 9:9
**benefit (3)** 26:4,5;30:16
**benefits (1)** 12:19
**beyond (2)** 13:12;32:20
**Bitcoin (20)** 4:22;5:2,7,10,12, 14,16,24;8:16;9:9, 12;15:12,14;19:20; 28:1,7,24,25;29:5; 31:8
**bitcoins (13)** 5:5,19,20,21; 13:12;15:13,19,21; 17:16;18:15;19:24; 23:8;28:3
**block (3)** 28:16,21,22
**both (2)** 9:24;15:21
**BR (1)** 29:18
**breach (3)** 7:16,18;15:7
**brief (5)** 15:5;16:6,14;18:7; 20:22
**briefing (2)** 8:6;16:12
**briefly (1)** 29:9
**broad (2)** 9:12;33:20
**broaden (1)** 21:4
**burden (2)** 9:3;24:19
**business (4)** 5:12;22:6,17,18
**buy (2)** 5:12;15:13

## C

**cake (1)** 19:4
**call (4)** 3:4;5:6;14:21; 16:19
**called (1)** 28:16
**calling (1)** 27:24
**can (19)** 4:19;5:10,12;6:21; 8:14;10:16;13:22; 18:9,23;24:24;26:10, 12,23;28:5,9;29:1, 14;31:3;32:5
**case (39)** 5:4;7:15,17,21,22; 8:7,7,25;9:1,4,25,25; 10:8;11:20,23; 13:15;15:7;18:19, 21;19:12,19;20:10; 22:5,11;23:15;24:6, 6,17,24;25:16;26:9, 25;27:16;29:18; 30:7,8;31:20;32:19; 33:1
**cases (8)** 7:12;8:4,6;11:14; 12:1;24:24;25:13,14

**cash (3)**
5:10;15:15,21
**cause (1)**
28:12
**center (2)**
10:20,24
**central (2)**
6:25;25:15
**cents (1)**
18:21
**CEO (2)**
8:18;25:16
**certain (3)**
5:4;6:16,19
**certainly (7)**
8:18;10:19;11:4;26:22;27:12;31:3,5
**chain (3)**
28:17,21,22
**challenged (1)**
31:3
**chance (2)**
16:6;18:20
**change (1)**
5:5
**Chapter (13)**
6:2,13;11:1;12:14,15;22:9,12;23:1;24:5;26:14;27:1;30:18;33:17
**chat (1)**
19:18
**Chicago (11)**
3:25;8:1,2;9:5;10:2;11:18,25;13:10;22:22;23:1;30:13
**choice (1)**
30:12
**Christopher (1)**
14:15
**Circuit (1)**
22:11
**cited (1)**
8:6
**civil (4)**
6:1,2,7;10:25
**claim (2)**
18:9;28:2
**claims (5)**
6:15;7:23;11:15;12:5;24:20
**clarity (2)**
14:14,18
**class (13)**
7:21,22;9:4,10,10,12,20,21;13:10;15:25;18:17;24:17;25:7
**classes' (1)**
18:16
**clear (6)**
7:8;11:12,17,22;17:9;24:7
**clearly (2)**
10:24;26:24
**CLERK (5)**
3:1;32:6,11,14;34:10
**clerks (1)**
32:6
**client (1)**
14:24
**closely (2)**
19:21,23
**closure (1)**
33:16
**coattails (1)**
30:20
**Code (6)**
21:3,9;26:3;33:12,14,15
**Cohn (1)**
4:6
**CoinLab (9)**
3:19;7:14,14;8:7;11:23;14:9,9,20;30:4
**CoinLabs (2)**
21:22,24
**colleagues (1)**
4:1
**coming (2)**
11:14,23
**comity (1)**
12:18
**comments (1)**
23:21
**commit (1)**
27:8
**companies (1)**
29:21
**company (14)**
5:25;6:5;8:16,17,18;9:15;10:1,4;11:24;12:9;15:20;27:9;29:17;31:16
**company's (1)**
10:21
**compel (1)**
9:17
**compelling (1)**
20:7
**complained (1)**
25:4
**complaint (2)**
15:25;25:7
**complying (1)**
31:16
**computer (1)**
9:8
**computers (1)**
5:4
**conceived (1)**
5:1
**concerned (2)**
23:10,13
**concerns (2)**
23:3,7
**concluded (1)**
34:13
**concur (2)**
21:25;30:15
**conduct (2)**
15:10;29:19
**confirmed (1)**
6:5
**connection (1)**
22:1
**consent (1)**
6:19
**considerable (1)**
9:3
**consistent (1)**
22:20
**constructive (1)**
9:19
**consumers (1)**
20:1
**context (1)**
30:18
**continue (1)**
23:12
**continued (1)**
15:20
**contract (1)**
7:16
**contrast (1)**
12:11
**contravenes (1)**
20:6
**control (2)**
11:9;27:10
**convenience (1)**
22:20
**convenient (1)**
30:10
**conversion (1)**
7:19
**cooperation (1)**
12:17
**costs (1)**
11:11
**counsel (7)**
14:9;16:19,22;18:5;23:23;28:4;29:10
**counterclaim (1)**
7:19
**counterintuitive (2)**
27:8,15
**countries (1)**
12:17
**country (1)**
17:1
**couple (1)**
32:19
**course (5)**
6:21,22;9:13;16:22;17:24
**COURT (81)**
3:2,7,11,12,14,20,23,23;4:3,3,8,8,15,19,22,23;6:1,6,9,17;7:2,3,4,5,7,15;8:1;12:18,22,25;13:2,20;14:2,2,5,11,17,22,22;15:1,4;16:17;17:7,20;21:15,16,19;22:10,14,15,16,19;23:11,14,23;24:11,13;25:18,20,23;26:15,16;27:3,10,11,17,25;28:19,22;29:6,14,25;30:2,10,22;31:19,23;32:2,15;33:16;34:8
**courtroom (3)**
3:8,14;32:9
**courts (6)**
10:19;11:7,21;12:17,18;31:18
**Court's (2)**
22:2;32:17
**cover (1)**
24:3
**create (2)**
8:5;9:2
**creating (1)**
25:1
**creditor (2)**
6:14;11:9
**creditors (6)**
6:4;12:6,6;17:14;18:10;33:5
**creditors' (1)**
12:19
**currency (7)**
4:25;9:9,11;15:16,17,21;17:16
**current (2)**
13:18;24:10
**currently (1)**
7:13
**customers (2)**
5:9;9:16
**cutoff (1)**
8:22
**cuts (1)**
33:2

**D**

**Dallas (4)**
4:1;26:19,21;31:2
**data (4)**
26:20,20;27:2;29:11
**date (1)**
8:22
**David (1)**
3:9
**day (5)**
6:4;16:1;20:1;26:10;33:25
**days (1)**
10:14
**deadline (3)**
8:20,21,23
**deadlines (2)**
11:14,22
**debating (1)**
3:4
**debtor (33)**
3:4,10,25;4:12,12,13,17,20;5:7;6:19;8:5;12:11;18:1,3,25;21:10;22:3,4,5,9,12,17;23:2,16;25:24;26:1;30:1;32:22;33:3,5,7,10,15
**debtors (5)**
6:15;9:19;20:9;21:9;30:17
**debtors' (3)**
26:4;33:1,5
**debtor's (5)**
7:3,24;9:6,18;11:8
**debts (1)**
24:20
**decentralized (2)**
28:8,23
**deceptive (1)**
15:10
**decided (1)**
20:19
**decipher (1)**
28:13
**decision (2)**
17:25;18:20
**declarations (1)**
15:23
**declare (2)**
18:23;21:10
**declared (2)**
16:1;20:15
**default (1)**
11:19
**defendant (5)**
13:9;19:15,15,16;23:18
**defendant's (1)**
9:6
**defenses (1)**
26:12
**defer (1)**
21:21
**defined (1)**
33:19
**definitely (1)**
23:15
**definition (1)**
18:12
**defrauded (1)**
13:13
**delays (1)**

15:17
**demonstrated (1)**
17:21
**denied (1)**
28:4
**deny (5)**
16:8;21:14;22:11;
27:12;31:14
**Department (1)**
17:4
**deposit (1)**
5:10
**deposition (2)**
8:11,19
**deposits (1)**
15:20
**described (2)**
9:10;33:21
**desires (1)**
29:23
**detection (1)**
19:24
**determination (1)**
11:15
**determining (1)**
29:2
**devoid (1)**
21:14
**different (1)**
12:17
**differentiate (1)**
18:1
**directed (1)**
24:18
**directly (1)**
29:18
**director (1)**
8:19
**disclose (1)**
8:21
**discovered (1)**
5:19
**discovery (10)**
8:8,22,22;10:3,4,5,
9;11:7,13;24:15
**dismissal (1)**
33:16
**dispositive (1)**
8:23
**dispute (1)**
32:22
**Disruption (1)**
11:15
**dissipating (1)**
19:14
**distribution (1)**
11:16
**distributions (1)**
9:22
**District (14)**
6:1,6;7:15,16;
14:1,10;16:20;17:7;
20:13;21:13;22:24;
26:18;29:8;30:7
**dive (1)**
16:7
**diversion (1)**
11:11
**diverting (1)**
11:20
**divest (1)**
9:25
**dollar (1)**
18:22
**dollars (5)**
5:24;7:18;17:5;
23:8;28:3
**domicile (1)**
22:6
**dominion (1)**
7:2
**Dore (1)**
14:15
**doubt (1)**
32:20
**down (4)**
15:22;17:17;
26:11;32:6
**due (3)**
8:8;22:24;27:25
**duty (1)**
15:8

**E**

**earlier (2)**
16:19;31:14
**early (1)**
12:8
**easy (1)**
6:20
**eating (1)**
19:4
**Edgar (1)**
3:22
**effect (4)**
9:20,21;15:23;
33:22
**efforts (2)**
11:9;12:12
**either (3)**
12:4;19:23;30:17
**else (8)**
3:14;4:4;14:5,11,
24;23:11,23;30:2
**emergence (1)**
5:13
**emergency (3)**
16:4;20:18,21
**employee (2)**
8:18;25:16
**employees (2)**
8:17;10:22
**enable (1)**
23:12
**end (2)**
6:3;15:22
**engage (1)**
23:12
**enough (1)**
23:25
**enter (6)**
7:3;12:23;26:2,6;
29:15;34:2
**entered (2)**
6:9;7:1
**entering (1)**
33:21
**entities (1)**
18:23
**entitled (2)**
20:17;33:10
**entity (3)**
23:1,16;29:20
**entrusting (1)**
18:10
**entry (1)**
13:6
**equipment (1)**
9:8
**essence (6)**
5:11;7:6;9:24;
24:15,25;25:14
**essentially (5)**
5:1,9;6:12;7:16;
24:17
**establish (3)**
22:8,15;23:6
**established (1)**
22:16
**estate (2)**
12:17;26:5
**estimate (1)**
9:13
**eve (2)**
28:14,17
**even (11)**
15:22;16:6;17:13;
19:5;20:9,14;21:15,
15;22:3,4,13
**event (3)**
10:7;31:5,18
**eventually (1)**
27:17
**everybody (1)**
24:1
**everyone (4)**
14:5,22;23:11;
27:18
**evidence (3)**
16:23,23;17:11
**exactly (4)**
19:14,16;20:2;
26:13
**examiner (1)**
6:17
**example (5)**
6:14;11:8;24:17,
20,22
**exchange (9)**
5:6;9:11,14;10:23;
15:17;17:15,17;
19:21;25:6
**exchanges (3)**
5:8,11;15:12
**Excuse (1)**
12:15
**executives (1)**
14:20
**exercise (3)**
7:2;29:1,3
**exist (3)**
22:21;26:25;28:11
**exists (1)**
9:8
**expedited (1)**
10:2
**expense (2)**
8:9;9:2
**expert (1)**
8:21
**explained (1)**
20:5
**exploring (1)**
13:19
**extend (4)**
4:17;12:23;25:12,
25
**extending (2)**
20:5;25:2
**extension (3)**
4:11;7:11;11:11
**extent (3)**
9:8;12:5;25:19
**extremely (2)**
23:9,21

**F**

**F3d (1)**
22:11
**fact (7)**
7:9;8:5;28:13;
29:3;30:25;31:11,13
**factors (1)**
32:19
**facts (6)**
13:19;15:6;17:20;
21:14;22:4,10
**falls (1)**
10:3
**familiar (1)**
4:22
**far (1)**
33:4
**Fargo (1)**
17:8
**favor (3)**
9:20;29:21;33:3
**favors (1)**
19:12
**February (10)**
5:15,18;7:23;8:12;
9:12;15:14,18,19;
16:1,2
**federal (3)**
20:7;22:19;30:10
**feet (1)**
8:16
**few (1)**
32:3
**fiat (3)**
15:15,16,21
**fiduciary (1)**
15:8
**figure (1)**
25:15
**file (4)**
5:25;8:23;26:9,11
**filed (9)**
4:1,18;6:13;7:22;
15:23,25;17:7;19:6;
22:23
**filing (1)**
5:23
**filings (1)**
22:7
**final (1)**
6:8
**finally (1)**
23:14
**find (4)**
8:15;17:21;33:9,
13
**finding (1)**
33:19
**firm (1)**
3:22
**First (17)**
3:8;5:1;8:7;13:2;
14:11,23;16:13;
17:21;21:22,25;22:2,
23;24:4;29:11;
30:12,24;34:5
**fit (1)**
19:7
**fluctuate (1)**
5:22
**focus (1)**
20:9
**folks (3)**
3:16;13:4;28:15
**followed (1)**
19:21
**follows (2)**
19:11;32:17
**foreign (9)**
4:16;6:11;10:18,
18,19;11:3,19;29:20;
32:20
**form (1)**
11:12
**forth (1)**
10:17
**fortune (1)**

19:7
**forward (8)** 8:4;9:1;10:8;12:1, 7;24:18,25;30:19
**Foster (2)** 3:18;21:24
**fostered (1)** 12:20
**found (2)** 11:7,21
**four (1)** 16:8
**fox (1)** 18:12
**frankly (5)** 26:8;27:7,13,14; 31:8
**fraud (6)** 15:7;20:2;23:13; 27:6,8,12
**free (1)** 29:22
**freeze (1)** 9:6
**front (1)** 31:24
**froze (1)** 15:14
**full (1)** 33:10
**fully (1)** 20:22
**fundamental (1)** 28:24
**funds (1)** 11:20
**further (2)** 19:14;33:16
**furtherance (3)** 15:9;27:6,14
**furthers (1)** 12:14
**future (1)** 8:8

## G

**gets (1)** 33:1
**given (4)** 8:15;16:10;17:10, 11
**giving (1)** 19:4
**glitch (1)** 5:17
**globally (1)** 17:18
**goals (2)** 12:14,20
**Godfrey (1)** 3:22
**goes (2)** 10:8;25:10
**Good (4)** 3:2;4:5,10;32:15
**goods (1)** 5:12
**government (1)** 15:16
**Gox] (3)** 3:5,6,7
**grant (2)** 4:19;23:14
**granted (4)** 6:6;10:12;12:2; 32:18
**granting (2)** 4:15;20:23
**Greene (2)** 4:7;19:12
**Gregory (1)** 4:6
**grossly (2)** 19:2;29:13
**grounds (2)** 11:12,16
**guarantees (1)** 25:4
**guarantors (1)** 20:11
**guarding (1)** 18:12

## H

**hacker (1)** 19:18
**hackers (1)** 5:18
**half (3)** 32:8,9;34:1
**halted (1)** 5:16
**happen (2)** 5:9;29:20
**happened (2)** 8:15;31:11
**happy (1)** 14:25
**hard (1)** 12:3
**hardship (2)** 11:21;12:4
**hardships (1)** 12:3
**harm (16)** 8:6;11:6,10,17,21, 25;12:10,11;17:24; 18:4;19:9,12;21:6; 25:1;32:25;33:2
**harmful (1)** 8:5
**hear (6)** 13:2,20;16:3; 24:10;28:20;34:1
**heard (8)** 9:13,15;15:11; 23:24;25:8;29:11; 31:9,13
**hearing (10)** 9:5;10:13,16;12:2, 25;14:16;31:24; 33:2,8,24
**heart (1)** 21:6
**held (2)** 17:8;33:24
**help (1)** 5:3
**henhouse (1)** 18:12
**hiding (1)** 19:23
**himself (4)** 13:10;18:15;19:3; 29:24
**hold (3)** 17:2;23:11;24:11
**Homeland (1)** 17:5
**Honigman (1)** 4:6
**Honor (37)** 3:9,21,24;4:5,10; 7:4;13:5;14:3,7,15, 18;15:2,6;16:7,17; 17:13,23;18:16,24; 20:5,12,25;21:12,13; 22:24;23:22;24:4,9; 26:18;29:7,9,13,19; 30:3,24;32:12;34:7
**Honor's (5)** 16:22;17:25,25; 18:19;29:17
**hope (2)** 7:4,5
**hopefully (3)** 6:5;10:13;12:25
**hour (2)** 32:8,9
**huge (2)** 28:13,17
**hundred (3)** 17:15;18:21;28:3
**hundreds (1)** 23:7

## I

**idea (3)** 8:13;12:7;23:10
**identify (1)** 13:21
**Illinois (4)** 14:1;20:13;21:13; 29:8
**imagine (1)** 8:15
**impose (1)** 9:19
**Inc (2)** 7:24,24
**inclined (1)** 23:14
**include (1)** 20:25
**Included (2)** 6:9;22:8
**including (4)** 5:20;8:11;9:7;11:1
**incredibly (1)** 18:9
**indicating (1)** 16:4
**individual (1)** 24:3
**individually (4)** 13:10;20:13;23:9, 17
**individuals (1)** 29:3
**information (4)** 17:13,19;22:8; 25:9
**informed (1)** 16:20
**injunction (6)** 16:16;19:3;20:17, 23;21:17;29:20
**insolvency (6)** 10:18,20;11:20; 12:7;19:6;27:5
**insufficient (1)** 29:14
**intense (1)** 8:14
**interest (7)** 10:21,24;12:13; 20:4;22:20;33:4,4
**interim (1)** 13:19
**Internet (1)** 5:3
**interrupt (1)** 24:9
**intertwined (1)** 25:13
**into (4)** 16:7;19:22,24; 27:9
**invested (1)** 19:20
**investigation (1)** 8:14
**involve (1)** 18:18
**involved (1)** 13:11
**involves (1)** 15:7
**irreparable (9)** 8:5;11:6,10,16,21, 25;17:24;19:9;21:6
**issue (3)** 26:24;31:18;33:6
**issued (1)** 15:16
**issues (3)** 16:7,12;20:22

## J

**Jane (3)** 3:18;21:23;30:3
**Japan (6)** 8:14;10:21,22,24; 13:18;32:21
**Japanese (11)** 7:1,4,6;9:25; 10:25;11:2;12:18; 27:10;29:25;31:17, 18
**Jernigan (1)** 33:25
**Jernigan's (3)** 31:20;32:6;34:5
**John (2)** 3:9,24
**joining (1)** 13:24
**Judge (22)** 13:24;14:25;15:5, 25;16:13;17:9,19; 18:11,21;19:8,11; 20:4,16;21:6,18,21; 27:20,21,22;31:20; 33:25;34:11
**judgment (2)** 8:24;11:19
**July (1)** 8:23
**jump (1)** 9:20
**June (1)** 8:22
**jurisdiction (5)** 16:18;21:15; 26:25;27:11;31:6
**jurisdiction's (1)** 26:23
**justice (1)** 22:20
**justify (1)** 11:10

## K

**Karpeles (31)** 6:11;7:25;8:11,17; 13:8,8;15:8;18:11, 14,18,22;19:3,4,14, 17,25;20:3,12;21:1, 7,17;23:9,12,17; 28:2,8;29:16,23;

30:16;31:11,16
**Karpeles' (3)**
6:23;17:6;23:5
**kept (1)**
13:18
**key (1)**
8:18
**kind (3)**
8:3;12:8;22:14
**KITEI (2)**
4:5,5
**KK (1)**
18:3
**known (2)**
15:15;28:19
**knows (1)**
4:15
**Kobayashi (3)**
6:18,20,23

**L**

**LAMBERT (3)**
3:12,12;13:5
**large (1)**
8:17
**largest (1)**
15:12
**last (2)**
27:17;30:23
**Lastly (1)**
20:4
**late (1)**
13:25
**later (1)**
26:24
**law (4)**
3:22;18:23;19:10;20:8
**lawyers (1)**
15:11
**lead (1)**
6:8
**leases (1)**
16:24
**least (2)**
16:8;20:21
**ledger (2)**
28:23;29:4
**ledgers (1)**
28:6
**left (2)**
19:7;29:22
**legal (1)**
11:11
**liabilities (2)**
9:18;24:21
**license (2)**
7:18;25:5
**likelihood (4)**
10:11;16:14;17:10,22
**likely (1)**
10:12
**likes (1)**
22:14
**limited (4)**
23:20,21;31:21;33:6
**Lisa (1)**
3:12
**list (1)**
9:21
**listen (1)**
4:2
**listening (1)**
14:21
**litigation (11)**
14:1,9;15:23;23:18;24:14,18;25:11,19;31:9;33:6,20
**litigations (4)**
4:14;12:24;24:7;26:7
**little (1)**
32:5
**long (1)**
32:8
**look (8)**
9:23;11:4,22,24;17:11;19:22;21:16;24:15
**looked (2)**
28:5,9
**looking (2)**
28:7;32:25
**lose (1)**
21:17
**lot (3)**
6:2;9:2,2
**Ltd (1)**
3:8

**M**

**main (3)**
10:21,24;32:20
**management (1)**
8:10
**managerial (1)**
11:12
**manner (2)**
11:13;25:6
**many (3)**
9:14;16:25;21:25
**March (3)**
8:12,20;16:2
**Mark (3)**
6:10;7:25;15:8
**Maryland (1)**
17:7
**Massachusetts (1)**
17:3
**massive (3)**
15:7;27:6,12
**matter (2)**
17:6;22:25
**matters (2)**
33:20;34:1
**maximization (1)**
12:19
**May (8)**
3:12;5:5;8:21;17:4;18:14;24:9;27:25;33:20
**McKenzie (1)**
3:25
**mean (4)**
24:8;25:3,15;26:8
**media (1)**
19:19
**meet (2)**
10:19;11:4
**meeting (1)**
21:11
**members (7)**
9:10,20,21;15:12;17:15;18:17;19:20
**mentioned (5)**
7:1,10,12;11:6;28:16
**mere (1)**
28:15
**merit (1)**
16:15
**merits (4)**
10:11;17:10,22;21:17
**mic (1)**
24:11
**might (4)**
13:11,12;17:1;34:2
**Miller (1)**
4:6
**million (5)**
5:24;7:18,19;17:5;28:3
**millions (1)**
23:7
**mind (1)**
13:21
**mine (1)**
5:2
**minutes (1)**
32:3
**miss (1)**
14:11
**missing (4)**
5:20,21,24;8:16
**Mitchell (4)**
3:10;4:9;34:3,7
**moment (1)**
12:10
**money (3)**
15:16;18:15;28:13
**monies (1)**
7:20
**month (1)**
13:1
**morning (3)**
16:3,19;20:19
**most (1)**
11:1
**mostly (1)**
28:10
**motion (7)**
4:24;16:4;19:1;21:5;26:9,11;31:4
**motions (1)**
8:23
**move (1)**
9:21
**moved (2)**
16:2;23:8
**movement (1)**
23:7
**moving (1)**
19:23
**MtGox (50)**
3:8,10;5:12,15;7:19,23,24;8:9;9:3,12;10:3,3,5,6,7;12:23;15:8,11;16:1,3,8,13,20,21,24;17:6,17;18:3,6;19:13,16,23,25;20:2,16;21:16;22:8;23:21;24:7,13,18,19,21,24;25:2,10,12,13;26:19;29:15
**MtGox's (5)**
15:11;18:5;25:8,8,9
**much (4)**
3:3;14:3;32:22;34:9
**MURPHY (2)**
3:24,24
**must (1)**
30:8
**mute (1)**
32:5

**N**

**name (1)**
13:25
**nature (2)**
28:1;29:4
**near (1)**
8:8
**necessary (1)**
4:20
**need (6)**
10:10;12:7;16:15;17:21;33:18;34:3
**needs (2)**
18:7;30:9
**network (4)**
28:1,5,9,25
**next (2)**
16:1;21:20
**Nobuyuki (1)**
6:18
**nondebtor (3)**
18:2,22;29:16
**nondebtors (6)**
18:18;20:6,9;24:3;29:17;33:23
**none (1)**
22:7
**norm (1)**
12:16
**Northern (6)**
14:1;16:20;20:13;21:13;22:24;29:8
**Notably (2)**
15:20;28:4
**note (4)**
20:24;22:3;31:1;33:18
**notice (1)**
34:4
**noticed (1)**
8:11
**noticing (1)**
28:17
**November (1)**
8:25
**number (2)**
5:5;6:7
**nutshell (1)**
12:22

**O**

**object (2)**
21:1,5
**observed (1)**
29:1
**observing (1)**
28:16
**obviously (3)**
9:2;27:11;34:1
**off (1)**
23:11
**offensive (1)**
27:15
**office (1)**
34:5
**once (1)**
4:18
**One (12)**
5:2,7;7:14;8:2;10:14;14:8;15:11;22:14;24:9;29:21;30:19;34:2
**online (3)**
19:18;21:22,23
**Only (5)**
4:23;20:25;23:16,20;27:4
**open (1)**
5:10

**operate (1)** 6:21
**operated (2)** 5:7;25:7
**operating (2)** 5:15;10:3
**opposed (1)** 21:10
**opposition (1)** 13:6
**order (21)** 8:3;12:23;16:10, 15;18:6,7;19:1; 20:18,24;21:3;22:4; 23:11,11;24:22; 26:4;30:6;33:6,9,16, 21;34:3
**orderly (1)** 11:15
**orders (4)** 6:10,11,22;34:2
**ordinary (2)** 6:21,22
**otherwise (1)** 30:8
**out (6)** 15:17;17:2;18:24; 26:24;30:5,14
**outset (1)** 4:15
**outside (1)** 6:22
**outstanding (1)** 9:18
**over (7)** 7:2;9:13,19;11:4; 13:4;23:8;28:2
**overbroad (3)** 16:11;19:2;21:2
**own (3)** 5:20;30:17;32:6
**owns (1)** 16:24

**P**

**papers (5)** 4:23;10:17;26:22, 24;31:9
**parent (3)** 7:24;10:6;29:17
**PARHAM (22)** 3:6,9,9;4:9,10,25; 8:2;13:2;23:25;24:4, 12,13,14;25:19,22, 25;26:18;27:4; 30:22,24;31:22;32:1
**part (1)** 32:18
**participate (1)** 10:9
**particular (1)** 12:9
**particularly (1)** 18:17
**parties (5)** 7:8,8;12:5;22:21; 30:11
**party (1)** 25:15
**pass (1)** 14:12
**past (1)** 21:16
**paying (1)** 6:15
**PEARSON (8)** 3:18,18,21;21:23, 23;30:3,3;34:12
**Pearson's (1)** 21:21
**peer (1)** 5:7
**peer-to- (1)** 5:6
**peer-to-peer (2)** 28:5,8
**pending (11)** 4:13;7:13,15;12:2, 24,24;22:19,22;30:9; 32:21,24
**people (4)** 9:13;18:21;19:20, 22
**Pepper (2)** 3:18;21:24
**permitted (1)** 9:1
**person (1)** 6:18
**personal (1)** 17:6
**personally (5)** 15:8;18:19;19:6; 21:1;23:9
**persons (1)** 9:11
**petition (2)** 6:13;31:1
**petition's (1)** 4:18
**ph (1)** 6:18
**phone (8)** 4:4;13:21;14:12; 16:19;23:24;27:19; 30:2;32:4
**place (5)** 7:6,9;22:6,17,18
**plainly (1)** 19:12
**Plaintiff (1)** 19:12
**plaintiffs (5)** 7:17;9:5;14:1; 21:12;29:8
**plaintiff's (1)** 14:9
**plan (2)** 6:4,5
**plead (1)** 30:25
**pleadings (1)** 13:9
**Please (4)** 3:2,12;26:17; 32:15
**pleased (1)** 29:22
**pm (3)** 32:13,13;34:13
**point (12)** 13:16;15:15; 17:23;18:19;19:9, 11;23:6;27:4,25; 29:18;30:5,14
**pointed (1)** 18:24
**points (2)** 16:9;22:1
**possess (1)** 11:9
**possible (1)** 11:19
**possibly (1)** 18:4
**powerful (1)** 5:3
**powerless (1)** 19:13
**practice (1)** 8:24
**precise (1)** 29:19
**preliminary (1)** 21:17
**prepared (1)** 15:22
**pre-petition (1)** 6:15
**presented (2)** 16:17;26:25
**presently (1)** 29:15
**preserve (3)** 18:6,8,9
**president (1)** 10:6
**pretend (1)** 28:12
**previous (3)** 22:1;23:4;30:15
**principal (3)** 22:17,17;30:8
**principle (1)** 20:7
**principles (1)** 20:7
**prior (2)** 20:22;33:7
**priorities (1)** 9:22
**private (1)** 19:7
**probably (2)** 13:9;32:22
**proceeded (1)** 5:25
**proceeding (17)** 4:16;6:1,2,3; 10:18,18,20,20;19:5; 22:19;27:13;30:19, 21;31:17;32:21,24; 33:17
**proceedings (4)** 12:8;27:6;30:9; 34:13
**process (1)** 6:6
**product (1)** 28:15
**prohibit (1)** 9:9
**prohibited (1)** 6:15
**prong (1)** 17:21
**proof (1)** 23:6
**proper (3)** 16:18;26:23;33:10
**properly (1)** 30:7
**properties (1)** 18:11
**property (1)** 22:7
**proposed (4)** 19:1;22:3,12; 23:16
**protect (7)** 4:12,13,20;18:10; 25:1;26:4;33:1
**protectants (1)** 20:9
**protecting (2)** 20:9;26:4
**protection (3)** 12:16;29:24;32:23
**protections (5)** 21:2,8;29:24;30:1; 33:11
**protects (1)** 33:7
**protocol (1)** 29:5
**prove (1)** 18:14
**proven (1)** 17:11
**provide (2)** 6:12;9:17
**provided (1)** 13:7
**provides (1)** 4:18
**provision (1)** 30:6
**provisional (6)** 4:11;7:7,12;12:1; 16:15;19:2
**public (6)** 12:13;20:4;28:10, 25;29:4;33:4
**purposes (1)** 33:9
**pursuant (3)** 7:10;33:11,13
**put (1)** 27:9
**putative (2)** 7:22;13:10

**Q**

**qualified (1)** 23:1
**quite (1)** 31:8

**R**

**raise (1)** 23:3
**raised (1)** 23:4
**ran (1)** 15:11
**rather (5)** 4:16;8:12;9:7; 12:15;31:6
**re (7)** 18:1,20,25;20:5, 10;22:11;29:18
**read (1)** 4:23
**reading (1)** 4:24
**real (1)** 15:5
**really (3)** 17:9;26:15;32:21
**reasons (2)** 16:8;31:12
**recently (2)** 11:2;15:23
**recess (4)** 32:2,9,13;34:8
**recognition (10)** 4:16,19;10:13,15; 12:2,25;31:24;33:2, 7,24
**recognize (1)** 7:5
**recognized (1)**

11:3
**record (7)**
13:22;14:14,19;16:16;17:20;21:14;29:14
**recover (1)**
25:9
**recoveries (1)**
12:19
**Reddit (1)**
28:10
**refer (3)**
3:6;7:14,21
**referring (1)**
29:13
**refine (1)**
34:3
**regarding (1)**
31:7
**regime (1)**
11:3
**rehabilitation (4)**
6:1,2,7;10:25
**related (2)**
20:10;29:21
**relief (24)**
4:11,19;6:12;9:23;11:24;12:1,8,13,20;16:8;18:4,7;19:25;20:20,21;21:4,14;22:2;23:15;24:16;26:3,10,11;29:15
**remedy (2)**
18:23;19:10
**rents (1)**
16:24
**reorganization (4)**
6:3,4;12:12;19:6
**reports (2)**
18:13;28:10
**representative (2)**
6:11;11:19
**representing (1)**
24:13
**request (3)**
10:2;32:25;33:20
**requested (5)**
10:4;16:8;22:2;24:16,16
**require (2)**
8:10;32:23
**required (1)**
22:6
**requirement (1)**
30:25
**requirements (2)**
11:23;31:17
**requiring (1)**
18:6
**requisite (1)**
22:9
**research (1)**
17:1
**reside (1)**
22:6
**resources (1)**
11:12
**respect (20)**
4:13;8:7;9:4;16:10;17:23;18:3,24;19:1;20:4,18,24;21:2;22:24;23:5;29:10,12,16;30:5,14;31:7
**respectfully (1)**
18:11
**respond (1)**
10:8
**response (1)**
27:5
**result (1)**
8:9
**resulted (1)**
15:17
**retailers (1)**
5:13
**retained (1)**
13:12
**reviewed (2)**
28:9;32:19
**ride (1)**
30:20
**right (13)**
3:7,16;8:13;13:23;14:17;15:5,21;18:19;27:18;31:19;32:2;34:6,8
**rights (1)**
33:11
**rise (4)**
3:1;32:11,14;34:10
**Robert (1)**
14:19
**Roger (2)**
14:8;27:24
**rooms (1)**
19:19
**roughly (2)**
5:19,24
**routed (1)**
34:5
**ruling (2)**
32:7,17
**rumors (1)**
19:18

**S**

**SAB (4)**
18:1,20,25;29:18
**sad (1)**
20:1
**same (4)**
6:18;23:3;24:19;33:21
**Sargent (1)**
3:22
**saying (1)**
25:20
**schedule (3)**
10:15;12:25;21:11
**scheduled (1)**
9:5
**scheme (1)**
27:14
**Schwartz (1)**
4:6
**Scott (1)**
4:5
**scrutiny (1)**
19:20
**seated (2)**
3:2;32:15
**Seattle (8)**
21:24;22:22,23,25;23:18;25:6;27:24;30:12
**second (4)**
17:23;19:8;22:10;24:10
**secondary (1)**
22:25
**second-level (1)**
7:25
**Section (8)**
4:18;7:11,11;22:5;26:1;30:5;33:11,14
**Security (1)**
17:5
**seek (9)**
16:4,10,16;18:4;19:2;20:1,17,20;30:18
**seeking (16)**
4:11,19;7:17;8:19;9:6,23;11:17;12:14,21;21:4;24:2;25:9,9;29:15;31:19,23
**seeks (1)**
16:9
**seem (1)**
31:18
**seemed (1)**
21:4
**sees (1)**
19:7
**segments (1)**
19:24
**seized (1)**
17:5
**seizure (1)**
18:5
**selected (1)**
16:20
**sell (1)**
15:13
**send (1)**
34:4
**sense (1)**
27:7
**serve (1)**
8:22
**server (3)**
16:21;18:6,10
**servers (8)**
9:7;16:24,25;17:1,2;26:19;27:2;29:12
**services (1)**
5:13
**set (2)**
8:25;10:17
**seventy-five (1)**
7:17
**several (3)**
3:16;6:10;17:15
**shape (1)**
12:9
**show (5)**
10:10,12;16:14,17;26:22
**showing (1)**
17:24
**shown (1)**
19:9
**shows (1)**
18:15
**shut (2)**
15:22;17:17
**side (1)**
14:24
**signature (1)**
34:6
**significant (3)**
8:8,10;12:11
**similar (1)**
6:12
**simply (4)**
12:10;22:21;25:15;31:15
**sit (1)**
32:6
**site (1)**
15:14
**smaller (1)**
19:24
**software (1)**
5:17
**sole (1)**
8:19
**solve (1)**
5:4
**somehow (2)**
27:5,13
**someone (2)**
14:24;32:19
**sorry (2)**
19:15;27:22
**sort (2)**
31:15;33:19
**sought (5)**
11:7,13,25;21:14;33:18
**speak (5)**
9:22;13:22;24:1;27:18;30:2
**speaker (4)**
22:1;23:4;24:10;30:15
**speaking (1)**
17:18
**special (1)**
30:18
**speculation (3)**
28:6,11,15
**speed (1)**
13:14
**spend (1)**
19:7
**spoke (1)**
29:10
**stage (1)**
12:8
**stand (1)**
21:13
**standpoint (1)**
15:6
**started (1)**
5:15
**starting (1)**
16:13
**state (1)**
30:10
**statement (1)**
29:13
**statements (1)**
16:22
**States (17)**
3:13;9:7;13:3,5,14;17:16;18:17;21:9;22:7,18;26:23;27:1;29:21;31:5,6;32:23;33:19
**status (1)**
22:12
**stay (42)**
4:12,17;6:14;7:1,2,4,5,6,6,7,9,12;8:4;10:12;11:11;12:23;13:6;20:6,8,14,23;21:8;23:16,19;24:3,6,25;25:2,12,13,17;26:1,6,10,14;30:15,16,18;31:23;32:4;33:22,23
**stayed (6)**
19:13;24:6,15;25:11,21,24
**stays (1)**
12:24
**step (2)**
6:8,8
**steps (3)**
6:8,16,19
**Steven (4)**

13:25;27:20,23;
29:7
**still (1)**
17:14
**stop (1)**
19:13
**stopped (2)**
15:19;24:8
**stored (1)**
9:12
**sub (1)**
7:25
**subject (5)**
11:1,9,18;24:22;
34:1
**subjecting (1)**
11:18
**submit (2)**
27:10;30:11
**submitted (1)**
20:25
**subsequent (1)**
34:2
**subsidiary (1)**
20:11
**substantial (1)**
8:9
**substitute (1)**
16:23
**succeeding (1)**
17:10
**success (3)**
10:11;16:14;17:22
**sued (1)**
20:13
**sufficient (3)**
11:10;22:4,10
**suggest (2)**
18:13;21:15
**suggesting (1)**
19:23
**suggests (1)**
17:2
**summary (1)**
8:24
**sums (1)**
28:13
**supervisor (3)**
6:16,17;11:3
**supplant (1)**
9:24
**support (1)**
15:24
**sure (4)**
13:22;15:4;20:16;
31:16
**Susman (1)**
3:22
**suspected (1)**
5:17
**suspended (1)**
5:18
**swindled (1)**
20:2
**switch (2)**
23:25;24:1

**T**

**Taipei (1)**
8:20
**Taiwan (1)**
13:17
**target (1)**
25:14
**team (1)**
8:10
**technology (1)**
19:22
**Tee (1)**
3:5
**telephone (2)**
3:17;13:4
**temporary (1)**
31:23
**term (2)**
28:21;33:19
**termination (1)**
25:5
**terms (9)**
8:15;9:22;10:10;
11:6,7;12:3,13,16;
21:4
**test (3)**
10:12,19;11:5
**Texas (2)**
16:21;22:25
**Thanks (1)**
24:12
**theory (1)**
24:21
**there'll (1)**
8:24
**third (2)**
19:11;25:15
**third-party- (1)**
25:3
**thirty (2)**
8:17;10:14
**though (5)**
7:3;19:5;20:14;
22:13;32:8
**thought (1)**
25:23
**threatening (1)**
11:18
**Throughout (1)**
18:7
**Tibanne (5)**
7:24;10:7;23:19,
20;30:16
**today (12)**
4:24;10:11,15;
12:15,21;13:6;16:5,
9;20:1,19;26:15;
31:10
**Tokyo (5)**
6:1,6,9;10:23;25:7
**told (1)**
20:19
**tomorrow (1)**
9:5
**ton (1)**
19:19
**top (1)**
9:21
**total (1)**
9:24
**toward (1)**
24:11
**TOWNSEND (13)**
14:7,8,18,19;
21:19,21;24:9;27:21,
23,24;28:21,23;29:6
**trade (2)**
5:11;15:13
**traded (2)**
9:11,14
**trading (1)**
5:19
**transactions (4)**
28:1,24;29:1,4
**transfer (2)**
5:7;31:8
**transferred (2)**
28:2,14
**transfers (1)**
9:9
**traveling (1)**
13:17
**trial (1)**
8:25
**TRO (4)**
9:4;15:24;16:2;
18:5
**trust (1)**
9:19
**trusted (1)**
18:16
**Trustee (6)**
3:13;13:3,5,14;
18:13;23:4
**try (1)**
7:2
**trying (3)**
8:15;25:1;27:8
**turn (1)**
13:4
**two (6)**
4:13;5:1;7:12;
12:7,24;26:6
**type (4)**
20:21;25:4;29:13,
19
**types (1)**
20:8

**U**

**Um-hum (1)**
31:22
**unclear (1)**
18:3
**under (8)**
7:10;8:6;22:5,16;
26:1,1,3;33:22
**United (17)**
3:13;9:7;13:3,5,
14;17:15;18:17;
21:9;22:7,18;26:23;
27:1;29:21;31:5,6;
32:23;33:19
**unquestionably (1)**
10:21
**unsecured (1)**
12:6
**up (10)**
6:8,17;11:14,23;
13:14;15:15,17,21;
28:6,9
**upcoming (1)**
13:1
**upon (1)**
29:14
**USC (2)**
22:16;30:6
**used (1)**
15:9
**user (1)**
15:18
**using (1)**
23:10

**V**

**value (3)**
5:21,23,23
**values (1)**
5:22
**various (2)**
7:23;8:6
**vary (1)**
5:22
**venue (23)**
16:18,18;17:12;
22:15,16,23;24:2;
26:16,18,21,24;27:2,
2;29:10,14;30:6,11,
25;31:2,3,4,5;33:9
**venued (1)**
30:7
**verifiable (1)**
28:4
**verify (1)**
13:15
**violating (1)**
24:25
**virtual (1)**
4:25
**Vitro (7)**
18:1,20,25;20:5,
10;25:3;29:18
**volatile (1)**
5:22
**vote (1)**
6:4

**W**

**waiting (1)**
14:4
**wants (2)**
19:15;21:7
**warned (1)**
29:19
**warrants (1)**
20:21
**Washington (2)**
7:16;14:10
**way (7)**
4:21;6:20;13:15;
18:14;24:5;28:24;
31:20
**ways (1)**
5:1
**weekend (2)**
23:8;28:3
**Welcome (10)**
3:11,14,20,23;4:3,
8;14:2,17,22,22
**well-regarded (1)**
22:14
**Wells (1)**
17:8
**Western (2)**
7:15;14:10
**what's (4)**
8:13,15;15:15;
28:16
**whatsoever (1)**
17:11
**Whereupon (1)**
34:13
**who's (1)**
20:12
**whose (1)**
8:11
**wild (2)**
28:6,11
**wish (5)**
4:4;21:25;23:24;
27:19;30:2
**withdraw (1)**
15:18
**withdrawals (2)**
5:16;15:14
**without (6)**
6:19;17:16,19,19;
24:25,25
**witnesses (1)**
8:21
**WOODROW (18)**
13:24,25;14:3,14,
23,25;15:2,5;21:19;
24:8;27:20,20,22;

28:16;29:7,7;32:12;34:11
**words (1)** 9:23
**work (2)** 9:2;26:13
**works (1)** 28:25
**world (1)** 9:14
**world's (1)** 15:12
**written (1)** 8:22

**Y**

**year (1)** 5:16

**Z**

**zero (1)** 18:20

**1**

**1 (1)** 33:24
**1:30 (1)** 33:25
**100,000 (1)** 5:20
**105 (2)** 7:11;26:1
**109 (1)** 22:5
**11 (5)** 6:3,13;12:14;24:5;26:14
**120,000 (1)** 9:16
**1410 (3)** 22:16;30:5,6
**15 (8)** 12:15,15;22:9,12;23:1;27:1;30:19;33:17
**1517 (1)** 4:18
**1519 (2)** 7:11;26:2
**1519a1 (1)** 33:12
**1519a3 (1)** 33:13
**1521a7 (1)** 33:14
**15s (1)** 11:1

**2**

**2 (1)** 33:25
**2.1 (1)** 17:5
**2:18 (1)** 32:13
**2:30 (2)** 16:3;20:19
**2:59 (1)** 32:13
**2008 (1)** 5:1
**2011 (1)** 5:15
**2013 (1)** 17:4
**238 (1)** 22:11
**24th (1)** 5:18
**25th (2)** 8:12,20
**26th (2)** 8:12,20
**27th (2)** 7:23;16:1
**28 (2)** 22:16;30:6
**28th (1)** 16:2
**2nd (1)** 8:21

**3**

**3 (1)** 33:12
**3:02 (1)** 34:13
**362 (2)** 24:6;33:14

**4**

**455 (1)** 29:18
**470 (1)** 5:24
**4th (1)** 16:2

**5**

**5 (1)** 17:5
**5.2 (1)** 7:19
**571 (1)** 29:18

**7**

**737 (1)** 22:11
**750,000 (1)** 5:19
**7th (6)** 5:15;8:20;9:12;15:14,18,19

**8**

**80 (1)** 5:24

**9**

**9:30 (1)** 33:25