1          IN THE UNITED STATES BANKRUPTCY COURT
              NORTHERN DISTRICT OF TEXAS (DALLAS)
2


3
                                  )  Case No. 14-31229-SGJ15
4        In re                    )  Dallas, Texas
                                  )
5        MTGOX CO., LTD.,         )
         a/k/a MTGOX KK,          )
6                                 )    April 1, 2014
                         Debtor.  )    1:38 PM
7        _____)

8    TRANSCRIPT OF STATUS CONFERENCE (DOC. 1), MOTION FOR EXPEDITED
        HEARING (DOC. 28), MOTION TO COMPEL DEPOSITION TESTIMONY
9       (DOC. 39), MOTION TO APPROVE NOTICE PROCEDURES (DOC. 48)
              BEFORE THE HONORABLE STACEY G. C. JERNIGAN,
10               UNITED STATES BANKRUPTCY JUDGE

11   APPEARANCES:
     For the Debtor:             DAVID WILLIAM PARHAM, ESQ.
12                               JOHN E. MITCHELL, ESQ.
                                 BAKER & MCKENZIE LLP
13                               2001 Ross Avenue
                                 Suite 2300
14                               Dallas, TX 75201

15   For the U.S. Trustee:       LISA L. LAMBERT, AUST
                                 OFFICE OF THE UNITED STATES TRUSTEE
16                               1100 Commerce Street
                                 Room 976
17                               Dallas, TX 75242

18   For CoinLab:               ROGER M. TOWNSEND, ESQ.
                                  (TELEPHONICALLY)
19                               BRESKIN JOHNSON & TOWNSEND PLLC
                                 1000 Second Avenue
20                               Suite 3670
                                 Seattle, WA 98104
21
     Transcription Services:              eScribers
22                                        700 West 192nd Street
                                          Suite #607
23                                        New York, NY 10040
                                          (973) 406-2250
24
     PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING.
25   TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

1    APPEARANCES (cont'd.):

2    For CoinLab (cont'd.):    LARRY ENGEL, ESQ. (TELEPHONICALLY)
                               MORRISON FOERSTER
3                              425 Market Street
                               San Francisco, CA 94105
4

5    For Gregory D. Greene:    ROBIN ERIC PHELAN, ESQ.
                               HAYNES & BOONE, LLP
                               2323 Victory Avenue
6                              Suite 700
                               Dallas, TX 75219
7
                               STEVEN L. WOODROW, ESQ.
8                              EDELSON PC
                               350 North LaSalle Street
9                              Suite 1300
                               Chicago, IL 60654

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| | |
|---|---|
| 1 | THE COURT:  Please be seated.  All right, we will now |
| 2 | begin our settings in the MtGox Company, Ltd. case, number |
| 3 | 14-31229.  Let's start by getting appearances from counsel in |
| 4 | the courtroom first. |
| 5 | MR. PARHAM:  Good afternoon, Your Honor.  David |
| 6 | Parham and John Mitchell from Baker & McKenzie, on behalf of |
| 7 | MtGox. |
| 8 | THE COURT:  Okay.  Good morning -- afternoon, I |
| 9 | should say. |
| 10 | MR. PHELAN:  Robin Phelan for -- we're local counsel |
| 11 | with Mr. Woodrow here and Mr. Kitei, for the class-action |
| 12 | plaintiffs in Chicago. |
| 13 | THE COURT:  Okay.  Anyone else in the courtroom? |
| 14 | All right, we have several persons on the telephone; |
| 15 | some of -- |
| 16 | MS. LAMBERT:  I'm sorry, Your Honor.  Lisa Lambert |
| 17 | for the -- |
| 18 | THE COURT:  Oh. |
| 19 | MS. LAMBERT:  -- U.S. Trustee. |
| 20 | THE COURT:  Ms. Lambert, okay. |
| 21 | We have several persons on the telephone; some of |
| 22 | them are in listen-only mode.  But if you want to make an |
| 23 | appearance and speak today, you may do so at this time. |
| 24 | MR. ENGEL:  Your Honor, this is Larry Engel.  I'm a |
| 25 | partner at Morrison & Foerster in San Francisco.  My pro hac |

Colloquy                                                                    4

1    petition is pending before the Court now.  And I'd like to

2    address this Court for CoinLab, if that would be permitted.

3            THE COURT:  All right, I have seen your paperwork

4    and, yes, I give you permission.

5            Anyone else --

6            MR. ENGEL:  Thank you, Your Honor.

7            THE COURT:  Anyone else on the phone wish to appear?

8            MR. TOWNSEND:  This is Roger Townsend from Breskin

9    Johnson & Townsend, calling in Seattle.  I'm counsel for

10   CoinLab in the pending litigation in the Western District of

11   Washington in Seattle, and I'm available to the Court if you

12   have any questions about that litigation.

13           THE COURT:  All right.  Thank you, Mr. Townsend.

14           Anyone else?

15           All right, I'm going to ask counsel in the courtroom,

16   please make sure, when you speak today, you speak into the

17   microphones.  Since we have people on the phone, they cannot

18   hear you unless you are right in the microphone.

19           All right, well, let me start today by announcing

20   what we do and what we do not have set for hearing.  There

21   have been a lot of pleadings filed and so there may be some

22   confusion, so let me start by addressing that.  First, we have

23   a status conference.  People will recall that originally we

24   had a hearing set today on MtGox's request for this Court to

25   issue an order for recognition regarding the Japanese civil-

Colloquy                                                                  5

1    rehabilitation proceeding.  But MtGox's purported foreign

2    representative, Mr. -- is it pronounced [CAR-pa-lay] or --

3            MR. PARHAM:  I've always pronounced it [CAR-pa-less].

4    But if [CAR-pa-lay] -- I mean, he's French, so you may be

5    right.

6            THE COURT:  Okay, you didn't take French in high

7    school, apparently.

8            MR. PARHAM:  I didn't take French in high school,

9    so --

10           THE COURT:  All right.  I'm --

11           MR. PARHAM:  -- you may be right.

12           THE COURT:  I'm going to say [CAR-pa-lay]; I think

13   that may be the pronunciation.

14           Well, anyway, he asked this Court a week or two ago

15   to continue the April 1st hearing on the petition for

16   recognition, to May 6th.  So I granted that continuance, but

17   we went ahead and held this setting as a status conference.

18   So we're going to start today with our status conference,

19   because certainly I have some questions -- since this is my

20   first time to preside over a hearing in this case, I have some

21   questions about what's going on in the Japanese proceeding,

22   what's going on with the company, what we envision for the May

23   6th hearing as far as time estimates and contested issues,

24   et cetera.

25           So we'll start with the status conference.  Second,

Colloquy                                                                        6

1    we have set today what I think is a simple administrative

2    matter regarding notice.  The debtor has asked for a ruling on

3    the form and manner of notice, who's going to be served and

4    how, regarding the May 6th recognition hearing.

5           And then last, we have a couple of more contested

6    matters today regarding Mr. Phelan's clients, which I'll call

7    the Greene plaintiffs if that's okay.  The Greene plaintiffs

8    have filed a request to take a deposition of Mr. Karpeles here

9    in the U.S. prior to the May 6th hearing, and so it appears

10   that might be contested.  There might be issues regarding the

11   scope of discovery, whether a 2004 examination is appropriate

12   versus a more traditional deposition regarding the issues to

13   be tried on May 6th.  So that'll be the third thing we roll

14   into today.

15          And then last but not least, we also have the Greene

16   plaintiffs' request for an expedited hearing on their motion

17   to modify Judge Hale's provisional relief.  For that matter,

18   we are not having a substantive hearing; we are going to hear

19   why the Greene plaintiffs think they need modification -- or

20   need the Court to consider modification of the provisional

21   order prior to May 6, and we're going to figure out are we

22   going to have a substantive hearing on that between today and

23   May 6.

24          I will note I see that the CoinLab people, in the

25   last twenty-four hours, have filed joinders in the Greene

1   plaintiffs' motion wanting discovery and wanting modification
2   of the provisional-relief order.  I technically have not set
3   their matters for hearing, their joinders for hearing, but
4   obviously they're a party-in-interest and I will let them
5   speak to the merits of what the Greene plaintiffs have asked
6   for.

7          So, hopefully everyone is clear how we're going to
8   proceed.  So with that, Mr. Parham or Mr. Mitchell, I don't
9   know who is going to speak, but let's roll to our status
10  conference.

11         MR. PARHAM:  Sure.

12         THE COURT:  Okay?

13         MR. PARHAM:  Thank you.  Okay.  Well, and in fact
14  it's good, because what the Court had suggested you wanted to
15  hear is exactly what I felt like would be appropriate for the
16  status conference, knowing it's your first time and it's
17  somewhat of a unique proceeding in many ways.

18         But as the Court knows, the application for civil
19  rehabilitation was filed in Tokyo on February the 28th, just a
20  little bit over a month ago.  And with the filing of that
21  petition, the court in Tokyo entered a series of orders; one
22  of the orders effectively is like our automatic stay; it stays
23  creditor actions against MtGox's assets.  The court also
24  appointed a supervisor, and the supervisor is -- and an
25  examiner, who -- it's the same person, Mr. Koyabashi (sic).

Colloquy                                                                    8

1         The supervisor's role is a bit unique.  During

2    this -- at least to our system; obviously not to theirs.

3    During this period of time up until a decision's made as to

4    whether or not the case will go into civil rehabilitation,

5    which is like a reorganization or what they would refer to as

6    a bankruptcy, which is like a liquidation -- during this

7    period of time, the debtor remains in possession of its

8    assets; it's a debtor-in-possession.  They cannot engage in a

9    number of transactions, which are very similar to our 363.  So

10   in other words, if they want to do any kind of a transaction

11   outside of the ordinary course of business, for example,

12   retain Baker & McKenzie in this manner, the supervisor has to

13   consent and, generally speaking, depending on what exactly it

14   is, he may have to get a court order.  Particularly if he's

15   going to pay any money out, he has to get a court order, I

16   believe, on an outside-the-ordinary-course transaction.

17        So during this period what we have is we have a

18   company that's under supervision, although it remains, as I

19   said, in possession of its assets and in control of its

20   business, and we have an examiner in place who is doing an

21   examination.  The examiner was originally scheduled to report

22   back to the court in Tokyo on March 28, which is why initially

23   we wanted the April 1st recognition hearing.  Late last week

24   that got continued.  And so now the report is due May 9; and

25   frankly, it's due, I think, to the complexity of the matters

1   that he's got to examine.  This is, you know, no

2   straightforward simple task when you're dealing with virtual

3   currency and a company of this nature.

4           THE COURT:  Okay, let me just back up.  As I

5   understand it, there is always something like -- I think of it

6   as almost a gap period in an involuntary.

7           MR. PARHAM:  Um-hum.

8           THE COURT:  There's always this time frame, after the

9   Japanese proceeding is commenced, where you automatically have

10  a supervisor/examiner appointed to look at whether the company

11  should be allowed to go forward, either in a rehabilitation or

12  a liquidation; that's just an automatic -- always the process?

13          MR. PARHAM:  I believe it is automatic.

14          THE COURT:  Okay.

15          MR. PARHAM:  Now, it may be in this case it's a

16  longer process for --

17          THE COURT:  Okay.

18          MR. PARHAM:  -- for various reasons.  But I think

19  that the filing of the application for civil rehabilitation

20  does not, like it does in our system, automatically result in

21  a case.

22          THE COURT:  Um-hum.

23          MR. PARHAM:  There has to be a subsequent hearing

24  where the court takes that up and considers those issues.

25          THE COURT:  Okay.  And can you tell me what the

1    standards are that must be met to either do an order yes

2    you're going forward in rehabilitation or an order this is

3    liquidation or, I guess, dismissal?

4            MR. PARHAM:  Yeah, I can't tell you with -- precisely

5    what that court --

6            THE COURT:  Um-hum.

7            MR. PARHAM:  -- will be looking at.

8            THE COURT:  Okay.

9            MR. PARHAM:  But in general, I think it will depend

10   (a) on whether a reorganization is viable --

11           THE COURT:  Okay.

12           MR. PARHAM:  -- whether you get into -- and what I

13   don't know is whether you get into weighing relative degrees

14   of recovery and the like.  But I think that in this case at

15   least, the issue's going to be is there a company that can be

16   reorganized, and that will probably depend on a couple of

17   issues; one would be the success that the company has in this

18   interim period, essentially trying to fix the issues or make

19   itself more secure as an exchange, to prevent these kinds of

20   issues in the future.  Another issue would be whether or not

21   they can find a sponsor, because what the company is looking

22   for -- and they've had several expressions of interest -- is a

23   party to come in and essentially sponsor, like we would have a

24   plan sponsor, to sponsor by the exchange or sponsor the

25   rehabilitation.

1          THE COURT:  Okay.

2          MR. PARHAM:  And depending on what that transaction

3    looked like, I guess any range of possibilities could exist.

4    I mean, you might not need a rehabilitation, or you might.

5          So I think that is going to be really the issue for

6    the Tokyo court -- it may not -- is, is a reorganization

7    viable.   And --

8          THE COURT:  There's a hearing on May 9th or the

9    report is due May 9th?

10         MR. PARHAM:  Well, the report -- as I understand it,

11   the report is made to the court on May 9th.

12         THE COURT:  Okay.  Okay.

13         MR. PARHAM:  Now, and again, that is a date they

14   could move.  Hopefully they will be concluded by then.  And I

15   know they're trying to get to that point.

16         So that is -- May 9th right now in Japan looms as a

17   significant date.  And this period leading up to May 9th is a

18   critical period, because (a) you got to see if you can fix and

19   solve and understand the problems that happened, and (b)

20   you've got to see if you can -- if you're going to be able to

21   restructure and reorganize.

22         There are several investigations ongoing.  I mean,

23   obviously the company is investigating what happened with the

24   missing bitcoins.  The supervisor is conducting his -- or

25   examiner is conducting his investigation into what happened.

1    And the company has requested that the Tokyo Police also

2    investigate the theft of the bitcoins.  And in fact, the

3    company has turned over to the Tokyo Police copies of all the

4    servers and all the computer information.  It's not clear

5    whether the police will take it up and go forward; the

6    company's hopeful it will.  But that is an investi -- with the

7    hacking and all, that's the -- that is a request that the

8    company has made.

9            So one of the questions that --

10           THE COURT:  So a report has been made to the Tokyo

11   Police; we don't really know what they're doing to follow up.

12           MR. PARHAM:  Um-hum.

13           THE COURT:  But then the supervisor, I guess, has

14   forensic types going in, doing his own investigation?

15           MR. PARHAM:  Yeah, the supervisor is conducting his

16   own investigation; he has hired a Tokyo accounting firm --

17           THE COURT:  Okay.

18           MR. PARHAM:  -- on the financial side.  On the

19   technical side, they are looking -- well, the last I heard was

20   last week and they had interviewed several forensic types to

21   do a forensic examination.  I haven't heard that they have

22   settled on it.  It's apparently a fairly limited number of

23   entities that could do it.  And that's ranged from -- well,

24   they've looked, for example, at name-brand type, American

25   accounting firms and others.  And so that's -- that search was

1   going on last week.

2           THE COURT:  Okay.

3           MR. PARHAM:  Obviously, that kind of a search is

4   beyond probably the qualifications of most counsel --

5           THE COURT:  Um-hum.

6           MR. PARHAM:  -- certainly.

7           THE COURT:  I would think.

8           MR. PARHAM:  So -- and that's -- so those

9   investigations are going on, they're looking for a sponsor,

10  all of which kind of leads up to what will happen on May 9.

11  There is at this point no claim procedure in Japan; that would

12  come later.  And so, in fact, the message posted on the MtGox

13  Web site is that once there is -- a decision's been made as to

14  how and where and when -- you know, all claims, that that

15  would be posted on the Web site in Tokyo.  But at this point,

16  I think it's significant that -- particularly given the nature

17  of the relief requested, that the claims process has not yet

18  commenced in Japan.

19          THE COURT:  Okay.

20          MR. PARHAM:  And that, I think, would be pretty much

21  our report.

22          THE COURT:  All right.  Well, let me -- and this may

23  ultimately be a question more for your client representative

24  at some future point maybe.  I guess I'm trying to get a feel

25  for what's going on at the company right now.  I mean, you've

1  explained there's kind of this dual debtor-in-possession

2  concept --

3          MR. PARHAM:  Uh-huh.

4          THE COURT:  -- and supervisor/examiner, and you've

5  explained that investigations are ongoing.  But what is up and

6  running, and what is not?  And I guess I read somewhere there

7  were thirty-two employees at the parent level, not at the

8  debtor level.  I mean, are those people still working, or are

9  they still basically shut down?

10          MR. PARHAM:  Yeah, well, it's both.

11          THE COURT:  Okay.

12          MR. PARHAM:  First of all, with respect to the

13  employees, the employees are essentially retained by Tibanne,

14  which is the parent, but all their work is at MtGox, for

15  MtGox.  And there're contractual arrangements, as I understand

16  it, between MtGox and Tibanne.  So whether they're contract

17  employees -- it's a different circumstance than we typically

18  see, but that's how that has been structured.

19          My understanding is that they are working.  A lot of

20  the effort, obviously, is to try and determine what happened

21  and to fix the program such that they can restart the

22  exchange.  At the present time, there is an ability for

23  customers to log onto the Web site and then see their

24  balances.  There is a qualification, because I think the

25  accounting with all this has lagged and so it's -- they say

1    themselves the numbers may not be precise -- exactly precise.

2    But the exchange itself is not operating.  You cannot go on

3    the exchange and trade bitcoin.  You cannot go on the exchange

4    and buy and sell and the like.

5            So in a sense, yes, they are -- there're people

6    there, they're working, but the company is not operating in

7    the fashion that it was before the incident.

8            THE COURT:  How are these people getting paid?

9            MR. PARHAM:  You know, I don't know the answer to

10   that.  I don't know if they are getting paid by MtGox or if

11   they're being paid by Tibanne.  It -- you know, I'm --

12           THE COURT:  I mean, the --

13           MR. PARHAM:  I'm surmising it's MtGox is paying them.

14           THE COURT:  -- the company is not making revenue and,

15   I guess --

16           MR. PARHAM:  Right.

17           THE COURT:  -- hasn't been for a couple of months.

18           MR. PARHAM:  Right.

19           THE COURT:  How much traditional cash does the

20   company have right now?

21           MR. PARHAM:  You know, I --

22           THE COURT:  Or I guess y'all call it fiat cash in

23   pleadings.

24           MR. PARHAM:  From its real name as opposed to bitcoin

25   name.

1              THE COURT:  Okay.

2              MR. PARHAM:  You know, I don't know the answer to

3    that question.  My understanding is that they had -- the

4    number that was given to me was several million dollars, but

5    I'm not sure.  I wouldn't want to hazard a guess as to how

6    much cash they have versus what may be customer cash and the

7    like.

8              THE COURT:  Okay.  Well, I have a few more questions;

9    I may just wait and see if this otherwise comes out.  But let

10   me -- and actually, I'm quite sure this is probably going to

11   come out later in the discussion of discovery.  Mr. Karpeles,

12   I read, is in Taipei, Taiwan.  Is that still --

13             MR. PARHAM:  No, he's in Tokyo.  He's in Tokyo.

14             THE COURT:  Oh, he is in Tokyo now?

15             MR. PARHAM:  He's in Tokyo, yes.

16             THE COURT:  Okay.  I guess it was just offered as

17   some of --

18             MR. PARHAM:  We had offered --

19             THE COURT:  -- neutral site --

20             MR. PARHAM:  Yeah, we --

21             THE COURT:  -- for discovery.

22             MR. PARHAM:  There was an offer of a deposition in

23   Taipei that would be by videolink, and that's basically

24   because it's difficult to take depositions in Japan.  And so

25   the idea was to do a videolink deposition with him and,

Colloquy                                              17

1    frankly, in our offices in -- out of our offices in Taipei.

2          THE COURT:  Okay, but he --

3          MR. PARHAM:  But, no, he is in Japan.

4          THE COURT:  -- he is still --

5          MR. PARHAM:  All of the management and workers -- and

6    really it's just pretty much just -- Mr. Karpeles is the

7    manager -- or the main manager certainly -- it's all Japan;

8    it's all in Tokyo.

9          THE COURT:  Okay.  And as far as -- again, I know

10   this was discussed some at the hearing before Judge Hale and

11   continues to be discussed in some of the pleadings; the assets

12   in the U.S., and the assets specifically in Dallas, are what?

13         MR. PARHAM:  Okay.  There is information -- the

14   backup information through our servers is on servers that are

15   in Dallas.

16         THE COURT:  Okay.

17         MR. PARHAM:  And in our papers yesterday we filed a

18   supplemental declaration of Mark Karpeles that had, in fact,

19   the invoices with SoftLayer that show the servers as being in

20   Dallas.  They are rented by Tibanne; the servers are rented by

21   Tibanne.

22         THE COURT:  Um-hum.

23         MR. PARHAM:  But they're used solely, as I understand

24   it -- or at least from the companies' perspectives, by MtGox.

25         THE COURT:  Okay.  So there're backup servers in

Colloquy                                                        18

1    Dallas.  And what about other assets in the U.S.?

2              MR. PARHAM:  Well, and there's a reference, I think,

3    in the application, to cash deposits, or somewhere I saw a

4    reference to cash deposits.  The deposit, I think, that was

5    referred to is -- there was money that was seized by

6    Department of Homeland Security a while back.

7              THE COURT:  Five million?

8              MR. PARHAM:  Five million or so, yes.

9              THE COURT:  Fiat cash?

10             MR. PARHAM:  Fiat cash, right.

11             THE COURT:  Um-hum.

12             MR. PARHAM:  And so the company referred to it as a

13   deposit.  I don't think, technically, we would refer to it as

14   a deposit.  I think we have a claim -- and we're trying to get

15   the money back from Homeland Security, but I don't really view

16   that as a deposit like a bank deposit.  It's not clear we're

17   going to -- you know, that's a matter that's under discussion

18   with the Department of Homeland Security as to whether we get

19   it back.

20             So we have that.  We have a claim in the CoinLab case

21   for, again, a little over five million dollars; it relates to

22   customer monies that we say should have been transferred to

23   Japan and instead were used in CoinLab's operations.

24             THE COURT:  Okay.  So no U.S. bank accounts at this

25   time?

1          MR. PARHAM:  There's no U.S. bank account that we're
2    aware of.
3          THE COURT:  Where was the five million that was
4    seized?
5          MR. PARHAM:  It was with an entity that essentially
6    acted like PayPal:  Silk Road.
7          THE COURT:  Okay.
8          MR. PARHAM:  And it was a transmitter; it's a place
9    where U.S. people could deposit money and it would be
10   transmitted to --
11         THE COURT:  Silk Road, is that what you said?
12         MR. PARHAM:  Um-hum.
13         THE COURT:  Okay.  I've read about them.
14         All right, well, so that's the overall status, I
15   guess.  Why don't we --
16         Ms. Lambert, did you have something --
17         MS. LAMBERT:  I think we have some additional status
18   comments, Your Honor --
19         THE COURT:  Okay.
20         MS. LAMBERT:  -- but from all of the parties.
21         THE COURT:  Okay.
22         MS. LAMBERT:  To go back through, Your Honor, there's
23   some additional events leading to the filing here.
24         THE COURT:  Okay.
25         MS. LAMBERT:  So as the Court has mentioned, in May

```
 1   of 2013 the United States obtained warrants to seize accounts
 2   at Wells Fargo and to seize Meridian Credit Union accounts;
 3   those are in the United States.
 4           THE COURT:  Okay, back up.  I'm not familiar with
 5   this; if I should be, if it was in the papers, I --
 6           MS. LAMBERT:  Okay.  This is the Department of
 7   Homeland Security's seizure.
 8           THE COURT:  Okay, you're elaborating on what
 9   happened?
10           MS. LAMBERT:  Right.
11           THE COURT:  Okay, go ahead.
12           MS. LAMBERT:  So the seizure warrants were to Mark
13   Karpeles individually and Mutum Sigillum.  The Meridian Credit
14   Union accounts -- the seizure was for Mutum Sigillum.  On
15   information and belief, Mutum Sigillum is a subsidiary of
16   MtGox, although some of the news-report articles indicate that
17   it's owned by Karpeles.  The seizure stemmed from the failure
18   to register with FinCEN.  Then on February 7th --
19           THE COURT:  The seizure stemmed from failure to
20   register what?
21           MS. LAMBERT:  With the Financial Crimes
22   Enforcement --
23           THE COURT:  Okay.
24           MS. LAMBERT:  -- Network.  Its short name is FinCEN.
25           THE COURT:  Right.
```

Colloquy                                                                21

1        MS. LAMBERT:  On February 7th, 2014, MtGox stopped

2   transactions -- so that was pre-petition and before the

3   Japanese petition -- and it alleged that 744,000 bitcoins had

4   been stolen, which at the time was about, I believe, 350

5   million dollars.  And an additional theft of 200,000 bitcoins

6   was alleged to have occurred to MtGox itself.

7        On February 28th, the Japanese civil rehabilitation

8   was filed, and the United States shared the Court -- the

9   trustee shared the Court's question about whether an examiner

10  is appointed automatically.  It's unclear if that's the case,

11  but it is clear that an examiner would report on whether the

12  entity should be converted to Chapter 7 or a liquidation-type

13  proceeding, what we could call Chapter 7.

14       THE COURT:  Um-hum.

15       MS. LAMBERT:  And on March 7th, so about a week after

16  being in the Japanese proceedings, MtGox finds the missing

17  bitcoins -- that's also three days before this proceeding was

18  filed -- the 200,000 that were the MtGox bitcoins, not the

19  700- that were the clients' bitcoins.  So those 200 -- and

20  there's some differential in the number; it might be 180-, it

21  might be 220,000, but approximately 200,000 bitcoins were

22  found, and they were in an offline old-format wallet --

23       THE COURT:  Yeah.

24       MS. LAMBERT:  -- is what they were told.

25       THE COURT:  And I'll let you know; I've read pretty

1   much every paper, so I definitely know there are

2   allegations -- well, not just allegations; admissions of

3   massive amounts of missing bitcoin, and then some shows up in

4   an old wallet.

5           MS. LAMBERT:  Right.

6           THE COURT:  And I'm still trying to get my head

7   around all the technology here, what's the difference between

8   a secured vault and a wallet, and customer account and -- I'm

9   sure one day --

10          MS. LAMBERT:  We all are.

11          THE COURT:  -- one day I will, hopefully, completely

12  comprehend that, but --

13          MS. LAMBERT:  Okay.  But the point is this was an

14  offline wallet that had not been subject to discovery.  I

15  mean, the whole point was it was not found and then all of a

16  sudden money starts coming online -- and this is not disputed;

17  Mr. Karpeles acknowledges this -- allegedly to make it more

18  secure.  But now it's in online wallets in small increments.

19  And then on March 10th this case is filed; so, right before

20  this case is filed.

21          So -- and then on March 26, MtGox post an

22  announcement on its Web site, and the announcement in -- the

23  announcements on MtGox's Web site are in English as well as in

24  Japanese.  And the announcement says that they're cooperating

25  with the Japanese Police and that they have provided the

1    police with the documents.

2            So it's on this background that we come to the part

3    where we have our discovery discussions.  So --

4            THE COURT:  Well, I'm going to get to that, but

5    again, I kind of wanted the beginning intro.  Tell me what's

6    going on in Japan and how this process works and what's going

7    on with the company.  Then we're going to do --

8            MS. LAMBERT:  All right --

9            THE COURT:  -- we're going to do this administrative

10   matter of who gets notice and how.

11           MS. LAMBERT:  Okay.

12           THE COURT:  And then I'm actually going to turn it

13   over to Mr. Phelan to --

14           MS. LAMBERT:  All right, there're --

15           THE COURT:  -- make the argument.

16           MS. LAMBERT:  -- some aspects that are not totally

17   related to the discovery, that relate to where we are today,

18   though.  For example, we have the delayed translation of the

19   Japanese petition.  The requirements are that the petition

20   accompany the filing in the Chapter 15; that did not occur.

21   We have requested that, and almost --

22           THE COURT:  Okay, we've got everything now, right --

23           MS. LAMBERT:  No.

24           THE COURT:  -- or no?

25           MS. LAMBERT:  The exhibits are not translated, to my

Colloquy                                                        24

1    knowledge, yet.

2              UNIDENTIFIED SPEAKER:  That's incorrect, Your Honor.

3              MS. LAMBERT:  Okay.

4              THE COURT:  Okay, I've got something translated

5    yesterday.  So now they're all done, or no?

6              MR. PARHAM:  Your Honor, we're still working on the

7    exhibits to the application.  We filed the application.  We

8    have not yet translated the --

9              THE COURT REPORTER:  Speak into the mic.

10             MR. PARHAM:  We're still working on --

11             THE COURT:  Yeah, could you speak into the mic?

12   She's --

13             MR. PARHAM:  We're still working on translating the

14   exhibits.  We have filed a translated application.

15             THE COURT:  Okay.

16             MS. LAMBERT:  So the exhibits are very important

17   because they contain the financial information that is more

18   schematically described in the petition itself.  And so it is

19   the parties' position -- it's been the parties' position all

20   along -- that they needed the translated copy of the petition;

21   it was discussed at every meet-and-confer -- which we'll get

22   into, but there have been three of them -- and yet we have

23   been unable to get the translation of the petition for a long

24   time, and now we still do not have the supporting exhibits.

25             Similarly, at the hearing on the stay, the United

Colloquy                                                          25

1   States Trustee orally requested the information about the

2   servers.  On returning from that hearing, the United States

3   Trustee's office sent a request in writing for information

4   about the servers not just here, but also there were some

5   allegations that there were some servers in Massachusetts.

6   These issues were again discussed on the calls.

7            And finally, in response to yet another e-mail, the

8   United States Trustee received the location of the servers,

9   and we've never received the invoices.  But it's still unclear

10  whether this information is copied in multiple locations,

11  whether it's just here, what's contained here.  All this is

12  unknown.

13           So on that background we can shift to the issues in

14  the discovery disputes, which the United States Trustee

15  probably had some comments on too.

16           THE COURT:  All right.

17           MR. PARHAM:  Your Honor, if I can just --

18           THE COURT:  Well --

19           MR. PARHAM:  -- briefly address a couple of those

20  comments?  I'll be very brief.

21           THE COURT:  Okay, very brief, because we're going to

22  get --

23           MR. PARHAM:  I know.  I know.

24           THE COURT:  -- full-fledged into this topic of

25  discovery.  And again, it's Mr. Phelan's --

1             MR. PARHAM:  I understand.

2             THE COURT:  -- motion; he'll go first on that.

3             MR. PARHAM:  Well, all I wanted to do is just say

4    that if you stand back and you look at the time line of how

5    this case got filed, the -- anyway, we have been trying to

6    catch up in terms of some of these things.

7             THE COURT:  Um-hum.

8             MR. PARHAM:  That's just some of the translations.

9    But the Greene action was filed, I believe, on February 27.

10   The action in Japan was filed on February the 28th.  The

11   Greene plaintiffs had set a motion for basically an effort to

12   obtain a constructive trust over, and freeze over, U.S. assets

13   for the day following the day that we actually had our first-

14   day hearings.  So the filing essentially was in response to

15   that, was in order to get a stay to prevent the U.S. assets

16   from having a constructive trust imposed over them.

17             So it was hurried.  I mean, there's no question that

18   we were scrambling for a period of several days to get this

19   thing on file, and it hasn't been on file that long.  We are

20   trying to catch up, but there are things such as the

21   translations that are trailing.

22             THE COURT:  All right.  And again, the

23   translations -- you need, number one, a certified copy of the

24   decision commencing the foreign proceeding and appointing the

25   foreign representative, translated in English; a certificate

Colloquy                                                              27

1   from the foreign court affirming the existence of such foreign

2   proceeding and the appointment of the foreign representative;

3   and then in the absence of these, some other acceptable

4   evidence.  We have got those now, or --

5           MR. PARHAM:  Well, I think that what we have -- if

6   you'll give me just one second so I can go through your --

7   I'll follow your -- along in the Rules.

8           THE COURT:  What I remember seeing is something like

9   an application, a petition to --

10          MR. PARHAM:  The petition is the application --

11          THE COURT:  Yeah.

12          MR. PARHAM:  -- that is filed for the civil

13  rehabilitation.  So we have that.  That has been translated.

14  What has not been translated are some of the exhibits.  Most

15  of the -- or a lot of the information they're referring to in

16  the exhibits is actually in the text of the application, but

17  we do not yet have the exhibits translated.  The foreign rep

18  is the representative director of the corporation, and so

19  that's how we get that one.

20          I think we have, frankly, everything other than -- we

21  don't have the -- other than we don't have the -- excuse me --

22  the --

23          THE COURT:  What about the various orders?  Have they

24  been translated in English?

25          MR. PARHAM:  The orders have been translated.  The

1 orders are attached to Mr. Karpeles' declaration on the --

2 THE COURT: Okay.

3 MR. PARHAM: -- first day.

4 THE COURT: Okay. All right. Well, so you're

5 working on getting all of that; you think you've got most of

6 it. Let's talk very briefly about the notice.

7 MR. PARHAM: Okay.

8 THE COURT: You have proposed -- somewhere I have in

9 here the type of notice. Why don't you reiterate what it is

10 you've proposed.

11 MR. PARHAM: Well, what we're proposing, Your Honor,

12 is to -- obviously, to the people on the service list, we

13 would, by U.S. mail -- serve them by U.S. mail or in e-mail.

14 In terms of the broader audience --

15 THE COURT: And the people on --

16 Tab 11 in my binder.

17 The people on the service list, that's the Greene

18 plaintiffs and their counsel, the CoinLab --

19 MR. PARHAM: CoinLab and --

20 THE COURT: -- people and their counsel --

21 MR. PARHAM: The company, the supervisor --

22 THE COURT: The company --

23 MR. PARHAM: -- and its --

24 THE COURT: -- the supervisor --

25 MR. PARHAM: -- its --

Colloquy                                                           29

1            THE COURT:  -- the U.S. Trustee?

2            MR. PARHAM:  Yeah.  It's relatively limited.  What we

3    would do is -- to the broader audience, is we'd propose three

4    things:  We would propose to --

5            THE COURT:  Let me ask this.

6            MR. PARHAM:  Okay.

7            THE COURT:  Who are the creditors here, other than

8    the people like CoinLab and the people like Mr. Phelan's

9    clients, the actual customers who've traded --

10           MR. PARHAM:  Um-hum.

11           THE COURT:  -- on the Web site?  Or there're no

12   traditional -- there're no bank lenders, there's no secured

13   lenders, there's --

14           MR. PARHAM:  There's no secured debt; there's no bank

15   lenders.  I believe that we are talking about customers.

16           THE COURT:  Okay.

17           MR. PARHAM:  And --

18           THE COURT:  That's it?

19           MR. PARHAM:  That's it.

20           THE COURT:  No vendors, no landlords --

21           MR. PARHAM:  Not in the United States.  We'll talk

22   later, but they're really a Tibanne vendor.

23           THE COURT:  Okay.

24           MR. PHELAN:  I'm not aware of any other vendors in

25   the United States at this point.

Colloquy                                                        30

1          THE COURT:  Okay.  All right.

2          MR. PARHAM:  So we're really talking about customers.

3   And our propose is really kind of threefold:  one would be to

4   send e-mail to our customers, basically advising them of the

5   recognition hearing; the second would be to post it on the

6   MtGox Web site; and the third would be to post on blog,

7   Reddit, which is frequented by tech users.  And we think that

8   is the --

9          THE COURT:  On the blog what?

10          MR. PARHAM:  Reddit --

11          THE COURT:  Okay.

12          MR. PARHAM:  -- R-E-D-D-I-T.  We think that is a

13   manner of service that is probably most likely to reach our

14   customers.  We do have -- the U.S. Trustee has asked that we

15   also post legal notices in The Wall Street Journal and in the

16   Financial Times; our preference would not be to do that, for a

17   couple of reasons:  one is cost; two is we just don't think it

18   would be effective under the circumstances, because our

19   customers basically are techies and they're going to pay a lot

20   more attention to the electronic media than they will to the

21   print media.  And to the extent that the print media -- you

22   know, that they did -- excuse me.  To the extent that they did

23   pay attention to the print media, we would submit that already

24   the articles, which have been all over the place, much more

25   prominent than a legal notice about this case and the

Colloquy                                                          31

1    commencement of this case, would effect -- frankly, are much

2    more effective in terms of getting to those folks, than a

3    legal notice.

4                THE COURT:  Okay.  And how many customers are there?

5                MR. PARHAM:  We have heard -- the number that has

6    been -- that I've heard is 120,000 worldwide.

7                THE COURT:  Okay.

8                MR. PARHAM:  And there is a significant percentage,

9    not the most, but I think probably on the order of twenty-five

10   percent maybe are estimated to be in the U.S.; but that's hard

11   to tell because people use different online codes and

12   addresses.  So we don't really know with precision where these

13   folks are is kind of the bottom line.  But we're talking about

14   a significant customer base in terms of size.

15               THE COURT:  All right.  And so the notice that you

16   had sent e-mail and post on the Web site, on the blog, it

17   would be the actual notice filed with the Court:  the hearing

18   will be held on May 6th at such and such time --

19               MR. PARHAM:  That would be our proposal, right.

20               THE COURT:  -- and deadline for objecting, and --

21               MR. PARHAM:  Um-hum.

22               THE COURT:  Okay.  All right, well, who wishes to be

23   heard on this notice issue?

24               MS. LAMBERT:  The United States Trustee, Your Honor.

25   This application was filed as the result of discussions with

1    the United States Trustee.  And basically, there are only two

2    causes of action pending in the United States, but there was

3    also a class action filed in Toronto about a month before --

4    or a week or two before the Chapter 15 filing here.  So it

5    occurred to the United States Trustee that possibly there were

6    claimants around the country who would have similar class-

7    action claims but would not be able to participate in the

8    Chicago class action, which raises both federal claims and

9    Illinois state-law claims.  And for this reason, the United

10   States Trustee submitted to them that other parties needed to

11   receive notice, that they -- and have an opportunity to raise

12   the same types of issues, because the venue or jurisdiction of

13   this Court might be relevant to their position.

14          So there are two issues that are remaining:  one is

15   the scope of the advertising, and two is the form of the

16   notice.  The United States Trustee contends that -- and has

17   requested, as I mentioned, that the advertising occur in The

18   Wall Street Journal and the Financial Times, and this is

19   because many of the bitcoin clients are not trading bitcoins

20   at this point, based on -- they can't at MtGox because MtGox

21   is closed, but the other thing is that their e-mail addresses

22   they have changed.  So while the press has covered these

23   issues, the fact that the press has covered them does not tell

24   the parties that they have rights to come to the Court and

25   participate in the Chapter 15 adjudication.  And that is the

1  issue that the notice would provide.

2         So let's turn to the second issue, which is the form

3  of the notice.  The form of the notice was attached as an

4  exhibit to your motion and it refers the parties to the

5  Delaware bankruptcy courts rather than txnb.uscourts.  It also

6  requires that the parties, if they want copies of the

7  pleadings and do not go on the txnb.uscourts Web site, that

8  they mail written correspondence to the debtor's counsel.  It

9  also seems to contemplate -- and I think this may have been

10 unintentional -- that the parties would have to mail any

11 objections to the law firm both in Chicago and in Dallas,

12 rather than e-mail or rely on the ECF notice.  The Court's

13 notice also seems to contemplate this for the order setting

14 the adjudication.  And I wanted to clarify that the Court was

15 still contemplating that we could have ECF notice and we could

16 provide e-mail copies and objections, rather than mailing,

17 which backs up the objection deadline by two to three days.

18        So those were the issues that the United States

19 Trustee had with the proposed notice.

20        THE COURT:  All right, anyone else?

21        MR. ENGEL:  Your Honor?

22        THE COURT:  Yes?

23        MR. ENGEL:  This is Larry Engel, Morrison & Foerster,

24 on the phone.

25        THE COURT:  Okay.

1          MR. ENGEL:  I have a related issue, if you'll -- if
2     it's time to hear it, which is the actual timing of the
3     hearing in relation to the March 9th date -- excuse me -- May
4     9th date for the Japanese examiner's report.  I also have some
5     comments on the Japanese proceeding and can answer your
6     questions differently than MtGox's counsel did, when you're
7     ready to hear that.
8          I apologize for the fact that I'm not there in person
9     to do this; I know it's awkward for Your Honor, on the phone.
10    But I do have substantial experience with Japanese insolvency
11    proceedings and the cross-border issues, as obviously does
12    Mr. Phalen; we worked together with Judge Mott in the Western
13    District, in the think3 case, for example, which you may have
14    heard of, which went to the Japanese Supreme Court.
15         So we have a strong position here for Your Honor to
16    consider that the hearing in the U.S. for the 15 should follow
17    rather than precede the examiner's report, and --
18         THE COURT:  Okay.
19         MR. ENGEL:  -- I can explain why that's the case, if
20    you're interested.
21         THE COURT:  All right, well, I guess this is germane
22    to the whole subject of the notice procedures.
23         I actually was sort of wondering that myself,
24    Mr. Parham, when you said that you sought a continuance of the
25    April 1st setting to May 6th because of the delay from March

Colloquy                                                   35

1    28.  So May 9th, the examiner's report; I wondered is it, by

2    chance, premature to having a hearing three days before that

3    report comes out on recognition?

4              MR. PARHAM:  Yeah.  No, we would agree with counsel's

5    position that actually this hearing, the recognition hearing,

6    should follow what happens on May 9th, for the same reason

7    that we wanted the April 1 hearing to follow the March 28.  We

8    just haven't made the request to adjourn yet, but --

9              THE COURT:  Okay.  You were coming to that.

10             MR. PARHAM:  But we were coming --

11             THE COURT:  Okay.

12             MR. PARHAM:  -- to that.

13             THE COURT:  Okay.  Well --

14             MR. PARHAM:  And since we're at a status conference,

15   it's probably appropriate, frankly, to take that up and --

16   because I do think that what happens on the 9th may well

17   inform what happens at the recognition hearing.  But one thing

18   you may have a very -- you may have a different appointed

19   representative; maybe a trustee appointed in Japan, for

20   example.  So it does make sense for the recognition hearing to

21   follow the 9th; we just haven't made that request yet.

22             THE COURT:  All right.  Okay, so we're going to have

23   a discussion in a bit about do we continue the May 6th date

24   even farther out.  But again, I'm trying to stay on track

25   here.  With regard -- let's just focus right now on the form

1    of notice, whether it's May 6th or May something else --

2              MR. PARHAM:  Right.

3              THE COURT:  -- the human beings proposed to be served

4    and the manner.  Does anyone besides the U.S. Trustee have a

5    specific point they want to make about that?

6              I'll just ask anyone in the room to tell me -- I

7    mean, I'm thinking about this request for Wall Street Journal,

8    Financial Times.  I mean, is there any precedent for this?  I

9    mean, we have to remember this isn't like a proof-of-claim bar

10   date, this is not like major substantive relief; it's just do

11   we recognize the Japanese proceeding.  And I'm sort of

12   gravitating to thinking that's not appropriate use of dollars,

13   again, especially where we have techie people.

14             Can anyone tell me; ads in The Wall Street Journal

15   for notice of a recognition hearing, is there --

16             MS. LAMBERT:  Well, Your Honor --

17             THE COURT:  -- precedent for that?

18             MR. PARHAM:  -- the parties' rights are being

19   adjudicated in the Chapter 15 adjudication, because they may

20   contend that there should be no Chapter 15.  And --

21             THE COURT:  Well, I understand, but I'm just

22   thinking, in the universe of actions that happen in the

23   bankruptcy court, is this worthy of spending the --

24             MS. LAMBERT:  It's consonant --

25             THE COURT:  -- 50,000 dollars, or whatever, for The

 1    Wall Street Journal.

 2             MS. LAMBERT:  It's consonant -- it's 10,000 dollars

 3    for three days, as I understand it.

 4             THE COURT:  Okay.

 5             MS. LAMBERT:  For the Financial Times --

 6             THE COURT:  Precedent?  Precedent?  I mean --

 7             MS. LAMBERT:  There's no precedent, but there's not a

 8    lot of these cases.  And so -- there's not a lot of cases

 9    where we have a situation where we have --

10             THE COURT:  Okay.

11             MS. LAMBERT:  -- potential plaintiffs all over the

12    country.

13             THE COURT:  All right.  Well, if there's no further

14    comment, I am actually going to approve the form of notice

15    proposed by MtGox's counsel.  Again, if things develop, if the

16    Chapter 15 goes forward, if there's even a concurrent case --

17    I mean, certainly there may be situations where more notice is

18    potentially going to be required to parties-in-interest.  But

19    I think -- for this notice of hearing on the bankruptcy

20    court's considering the petition for recognition, I think what

21    you have proposed is fine, Mr. Parham.  But certainly let's

22    work out the bugs that were mentioned by Ms. Lambert:  the

23    mention of the Delaware court versus the Northern District,

24    and --

25             MR. PARHAM:  Yeah.  Right.  We have done that.  And

Colloquy                                                    38

1  in fact, we've added -- for example, Mr. Phelan wanted notice

2  as well, so -- particularly if we're not going to have to

3  publish it, if other parties want notice of any objections

4  that are filed, it makes it easier to do.  We were trying to

5  hold the lines --

6              THE COURT:  Yeah --

7              MR. PARHAM:  -- down to hold down the cost and --

8              THE COURT:  -- hard copy, regular-mail --

9              MR. PARHAM:  Yeah.

10             THE COURT:  -- service to people who've requested --

11             MR. PARHAM:  Sure.

12             THE COURT:  -- service, to the Greene plaintiffs, to

13 the CoinLab people --

14             MR. PARHAM:  Um-hum.

15             THE COURT:  -- to the Japanese supervisor/examiner,

16 to the U.S. Trustee, to anyone who requests it.  But for the

17 other universe of customers out there, e-mails, posting on the

18 MtGox Web site, posting on the blog you mentioned, Reddit, I

19 think that will be sufficient.

20             MR. PARHAM:  Once we -- why we don't we -- if I could

21 suggest, once we essentially get the bugs worked out and

22 people are happy with the form of notice, if we could upload

23 the order with the form attached, just so it's clear that this

24 is what you're approving and --

25             THE COURT:  Yes.  Yes, that's good.

Colloquy                                                         39

1          And the comments you made, Ms. Lambert, about e-mail

2    versus mail, I mean, again, what did you tell me; that they

3    were required to serve by hard copy?

4          MS. LAMBERT:  Correct.  This is the issue:  there's a

5    deadline seven days before the hearing, for objections, at

6    4 o'clock p.m.

7          THE COURT:  Okay, they can file it on ECF and serve

8    electronically the debtor --

9          MS. LAMBERT:  And the issue is --

10          THE COURT:  -- and --

11          MS. LAMBERT:  -- that the order also requires that

12    the mail copy be received by that deadline, which

13    constructively backs up the deadline to nine or ten days

14    before the hearing.

15          THE COURT:  No.  Let me -- electronic.  Electronic

16    service is appropriate, okay?  So Mr. Parham will work that

17    in.

18          All right, well, now to the discovery.  And again, we

19    are going to circle back to May 6 versus something else, and I

20    am going to let Mr. Engel --

21          You can come back and give your own version of

22    Japanese rehabilitation proceedings.

23          But I'm going to turn now to the discovery that the

24    Greene plaintiffs want, and we'll hear the arguments from

25    everyone on that.

Colloquy                                    40

1           MR. WOODROW:  Thank you, Your Honor.  Steven Woodrow

2    for the --

3           THE COURT:  Okay.

4           MR. WOODROW:  -- Greene plaintiffs.

5           THE COURT:  All right.

6           MR. WOODROW:  Judge, today the Court should grant our

7    motion to compel Mr. Karpeles' deposition to occur within the

8    United States, for two main reasons:  first, there's been a

9    real lack of transparency from Mr. Karpeles with respect to

10   the facts underlying and supporting his Chapter 15 petition;

11   and second, requiring several sets of attorneys and their

12   personnel to fly all the way to Taipei is far less efficient

13   than simply ordering Mr. Karpeles to come here, particularly

14   given that he's already come before this Court asking for

15   relief, he has exclusive knowledge, he is the sole person with

16   knowledge of the operative facts, and, Your Honor, we've

17   offered to pay his travel expenses.  Ultimately, Your Honor,

18   Mr. Karpeles seeks all the privileges and accommodations a

19   foreign representative who has been open, honest and

20   transparent would readily receive, without demonstrating

21   openness, honesty or transparency.

22          Turning to my first point, Mr. Karpeles has neglected

23   to apprise this Court of key facts relevant to his petition.

24   Your Honor, Mr. Karpeles provided two different stories to the

25   Japanese court and this Court, with respect to the main U.S.

1    assets.  He told the Japanese court that the main U.S. assets

2    consisted of customer deposits; that is actually, people have

3    said -- I heard -- I read it somewhere; it's in his

4    declaration seeking appointment as the foreign representative.

5    So he swore to that, Your Honor.  But then that very same day,

6    just a few hours later, he told Judge Hale, when seeking

7    emergency relief, that the main U.S. assets were servers

8    somewhere in the nebulous Dallas area.  We just last night

9    received some paperwork about these servers, but it's not even

10   clear that the debtor owns them; it appears that they just

11   lease space on them.

12          To the extent the debtor is asserting that it's the

13   data on the servers that's the asset, we have zero information

14   at this point about that data, Judge.  We certainly have no

15   information to suggest that its value was created from the

16   five million dollars Mr. Karpeles informed the Japanese court

17   was the value of the customer deposits.  Counsel said that he

18   believed that the money seized by Homeland Security was from

19   Silk Road.  Our research, Your Honor, shows that two different

20   seizures took place:  one with respect to Dwolla, D-W-O-L-L-A,

21   and the other 2.1 million, or so, were in Wells Fargo

22   accounts, both in Mr. Karpeles' name personally and his -- or

23   MtGox's subsidiary, Mutum Sigillum.

24          So, Judge, we have no information right now about

25   that; all we have is a discrepancy between what the foreign

1  representative told the Japanese court and what he told this

2  Court to receive provisional relief.

3          As has already been mentioned, we still don't have

4  translated exhibits for the Chapter 11 filing, which were due

5  three weeks ago.  This means that we still don't have a list

6  of assets, the list of creditors, which most, Your Honor,

7  appear to be outside of Japan; we don't have financial

8  statements or a list of account holdings; we have no charter-

9  related companies; and we are lacking the articles of

10 incorporation.  All of that information should have been

11 provided with the Chapter 15 filing.

12         Counsel has said that they filed the Chapter 15 in

13 response to my client's motion for a TRO.  That motion was

14 filed on the 4th of March.  They had a full week to prepare

15 the petition.  And even if they couldn't get it done by the

16 15 -- by the date that the 15 was filed, we're a month out

17 now, and the fact that we still don't have those exhibits puts

18 us at a disadvantage.

19         Your Honor, two days before the Chapter 15 filing, as

20 has already been said, Mr. Karpeles apparently discovered

21 200,000 bitcoins in an old wallet.  While 200,000 bitcoins

22 might sound kind of -- you know, what's the big deal?  That

23 has a street value, a present-day value, Judge, of between 90

24 to 110 million dollars.  And I think that that speaks volumes

25 as to the type of accounting practices that were going on here

1  and the type of obvious conflict Mr. Karpeles has with respect

2  to running the company while investigating himself, if he's

3  going to be uncovering these types of assets, which are

4  absolutely substantial, in old wallets.

5       THE COURT:  Okay, I don't mean to cut you off, but

6  where do you want to depose them, when, and what would the

7  scope be?  Because you've asked for a 2004 exam, and MtGox's

8  lawyers say 2004 doesn't apply right now at this juncture of

9  the Chapter 15, Rule 1018 does; that's more traditional

10 deposition aimed at the standards that have to be established

11 at the petition for recognition.  So where, when, and what

12 would the scope be?

13      MR. WOODROW:  Yes, Judge.

14      THE COURT:  And respond to their argument 2004

15 doesn't apply.

16      MR. WOODROW:  Will do, Your Honor.  The reason I was

17 giving that background is because our overall point, Judge, is

18 that their proposal to send everyone to Taipei is

19 unreasonable.

20      THE COURT:  Um-hum.

21      MR. WOODROW:  Where it might be reasonable with a

22 transparent, open and forthright foreign representative,

23 that's not what we have here.

24      THE COURT:  So you want --

25      MR. WOODROW:  And so that was my point.

1          THE COURT:  -- him here.  You've even offered to pay

2    for him to come here.

3          MR. WOODROW:  Correct.  And we would like --

4          THE COURT:  "Here" being Dallas, Texas.

5          MR. WOODROW:  "Here" being Dallas, Texas --

6          THE COURT:  Okay.

7          MR. WOODROW:  -- at some point prior to the

8    recognition hearing.  I would suggest that the deposition

9    occur before the end of this month.

10          THE COURT:  Okay.

11          MR. WOODROW:  Your Honor, there were a few questions

12    from the Court, one being, why 2004?  At this point we don't

13    have sufficient information to know whether or not we're

14    actually going to contest the Chapter 15.  So I can understand

15    that 2004 might not apply where the Chapter 15 is being

16    contested, but we don't even have information to allow us to

17    make that decision yet.  In a normal case -- and I put air

18    quotes around "normal" -- the creditors would have the

19    translated Chapter 15 petition, would have the exhibits that

20    contain the information on assets and creditors, from which we

21    could determine is this a proceeding that we're going to

22    contest; we would have information regarding the data on the

23    servers so we know whether or not venue's appropriate.  But we

24    don't have that information right now.

25          So really what we're trying to do -- I'm not fishing

Colloquy                                                45

1   to get discovery for my class action, like I've been accused

2   of, although I appreciate that they think I'd be that clever.

3   What I really want to know is, is this Chapter 15 appropriate?

4   And the only person who can answer those questions, Your

5   Honor, is Mark Karpeles.  This was a one-man show.  He

6   controlled everything.  He had exclusive access to the bank

7   accounts.  He's the only one who's going to know how many

8   subsidiaries there are scattered throughout the United States

9   and what bank accounts they might have.  So we need to depose

10  him.

11          And the idea that we would all fly --

12          THE COURT:  Okay, we'll -- okay, I'm going to my

13  checklist that I'm going to have in front of me on May 6th or

14  whenever:  did we give notice to the right people in the form

15  I ordered; do we have a petition for recognition that meets

16  all the technical requirements of Section 1515, you know,

17  translated documents and all those things; do we have a person

18  applying for recognition, i.e., Mr. Karpeles, who constitutes

19  an appropriate foreign representative; does the Japanese

20  proceeding constitute either a foreign main proceeding or a

21  foreign nonmain proceeding, and I guess that would entail

22  looking into the center of main interest, right, and

23  understanding the activities and what's going on where.  And I

24  guess -- I guess, more big-picture, you could raise the 1506

25  issue, right, of is something about this manifestly contrary

Colloquy                                                    46

1    to public policy.

2              So I guess what I'm getting at is -- let me just tell

3    you what I'm thinking.  I'm thinking Messrs. Parham and

4    Mitchell are kind of right; 2004 probably, technically,

5    doesn't apply at this juncture.  However, a deposition in a

6    contested matter does apply.  I mean, you ought to be able to

7    take the guy's deposition and ask him on topics germane to

8    what my checklist is going to be on May 6.  Okay?  So I really

9    am trying to -- I'm inclined to say yes.  He avails himself of

10   this Court, by God he is going to get over here.  But what are

11   the subjects we're going to allow deposition on?  Okay?

12             So really, tell me what you need to know and why you

13   think it falls under these Chapter 15 standards.

14             MR. WOODROW:  Certainly, Your Honor.  Most of them

15   fall under the COMI factors and venue and whether or not we

16   have a person applying who constitutes a fair foreign

17   representative, as well as the catchall policy arguments.  The

18   topics of the deposition would all fall into those parameters.

19   And what we'd be looking for is information such as where are

20   the assets in the United States, what data is really on these

21   servers, what is the value of that data, how is it being

22   valued, is that data available on other places; there's a

23   whole line of questioning about that, as it's being heralded

24   as the main asset in the United States.  We do have some

25   information about servers in Massachusetts; we would want to

Colloquy                                                             47

1    understand that.  Apparently, MtGox or its subsidiary was

2    using servers in Massachusetts, and that might also contain

3    data.

4              THE COURT:  Okay.

5              MR. WOODROW:  We're not sure at this point.

6              THE COURT:  So you're going to fully examine him on

7    what do we have in the U.S. --

8              MR. WOODROW:  Yes, or to ask --

9              THE COURT:  -- what all is in the U.S.?

10             MR. WOODROW:  As it relates --

11             THE COURT:  Everything, everything, everything?

12             MR. WOODROW:  Correct.

13             THE COURT:  You mentioned you're going to examine him

14   on venue; that's really overlapping with what we just talked

15   about --

16             MR. WOODROW:  Yes, Your Honor.

17             THE COURT:  -- do we have assets here, versus no.  Is

18   he a fair foreign representative; that one kind of threw me

19   off.  I mean, he's either a foreign representative as defined

20   in the Bankruptcy Code, or not.  Are you going to, what, try

21   to go --

22             MR. WOODROW:  Perhaps that's --

23             THE COURT:  -- something --

24             MR. WOODROW:  Perhaps, Your Honor --

25             THE COURT:  -- different there?

 1          MR. WOODROW:  -- it's more tied to the policy

 2   argument of is this the --

 3          THE COURT:  That's more the --

 4          MR. WOODROW:  -- individual that we --

 5          THE COURT:  -- public policy?  I gotcha.

 6          MR. WOODROW:  -- that we should really have here.

 7          THE COURT:  I gotcha.  So you could make that public-

 8   policy argument, and then what are you going to want to delve

 9   into to frame that argument?

10          Again, I don't want to come back in a week or two

11   with a fight over objections at a deposition.

12          MR. WOODROW:  And fair enough, Judge.  And it's not

13   our goal to try to go beyond --

14          THE COURT:  Okay.

15          MR. WOODROW:  -- the considerations of the Chapter

16   15.  We're really trying to focus on what are the assets in

17   the United States, where are their employees and creditors.

18   Only Mr. Karpeles, the current foreign representative, is

19   going to be able to tell us the actual numbers and where

20   creditors are.  And it does appear that at least a plurality

21   of exchange members were in the United States.  But we don't

22   have that information yet, and he's the best person to tell

23   us.

24          So I -- Your Honor, there's nothing on our list of

25   items that we'd like to ask him about that goes beyond the

1   scope of the Chapter 15.  We're not going to get into the

2   nitty-gritty of what exactly caused the loss of bitcoins and

3   fiat currency.  Although an argument could be made that

4   they're relevant from a policy standpoint, it's not going to

5   be the major focus of our inquiry.  What we're really tied to

6   is where are the assets, where are the creditors, what do we

7   know currently with respect to their holdings, and things of

8   that nature; focused on the venue and really the COMI factors.

9             THE COURT:  Okay.

10            MR. WOODROW:  So with respect to whether or not this

11   occurs under 2004, Your Honor, because he's the foreign

12   representative, and that provision speaks directly to taking

13   the examination of the foreign representative, that's why the

14   motion was set up under 2004.

15            If the Court's more inclined to allow the deposition

16   under Rule 7030 or some other mechanism -- discovery

17   mechanism, we're happy to engage in that process.  The most

18   important thing is that we have the examination and that we

19   don't force everyone to fly to Taipei to do it.  That's really

20   the dispute here.

21            THE COURT:  Okay.  All right, thank you.

22            Mr. Phelan, you look like you're dying to add

23   something.  Go ahead.

24            MR. PHELAN:  I was only going to add one small point,

25   Your Honor.

1          THE COURT:  Okay.

2          MR. PHELAN:  And that is that I think the scope of

3   the examination would also relate to Section 1522(b), which

4   would be what conditions should the Court put, if any, on the

5   recognition.

6          THE COURT:  Okay.  Okay, gotcha.

7          All right --

8          MR. ENGEL:  Your Honor --

9          THE COURT:  Mr. Engel, is that you?

10          MR. ENGEL:  Yes, it is, Your Honor.  I don't know

11  when the right time to speak is, because obviously, I can't

12  see.  But --

13          THE COURT:  All right, I'm going to ask --

14          MR. ENGEL:  -- I do --

15          THE COURT:  I'm going to ask to hear from you now.  I

16  know you filed a me-too joinder.  And so what do you want to

17  say about the discovery?

18          MR. ENGEL:  I did.  And I'd like to supplement what

19  you just heard from my friend, Mr. Phelan, about 1522, which

20  in none of the debtor's papers, did they even mention it.  And

21  it's not just 1522(b), it's also 1522(a) and potentially (d).

22          The issue at the beginning is that the -- it says in

23  1522(a) that the Court may issue -- may grant relief under

24  1519 or 1521, and may modify or terminate relief, only if the

25  interests of creditors and other interested parties, including

 1   the debtor, are sufficiently protected.

 2          So sufficient protection is a critical issue here in

 3   Chapter 15, including at the recognition hearing level.  And

 4   because there are tremendous conflicts of interest here by Mr.

 5   Karpeles.  I mean, there needs to be an inquiry into those

 6   conflicts of interest, because that goes to the question of

 7   sufficient protection.

 8          And so for instance, I mean, we're talking about the

 9   owner of the parent company here, which you've already heard,

10   controls all the employees; it owns the servers that they're

11   using as the basis for jurisdiction.  As far as we know, there

12   are all kinds of avoidable transfers going on between the --

13   and that have already gone on between the parent and MtGox.

14   And Mr. Karpeles is the owner of the parent and involved in

15   that conflict.  And he's also, at least considered by many

16   creditors and perhaps other parties, to be one of the main

17   suspects in this case.

18          So we have a situation where he's -- he's

19   investigating himself, basically.  And so in order to defend

20   his declarations under those circumstances, it's essential

21   that not only he be questioned on everything that's in his

22   declarations, but also on those conflict issues as well.

23          THE COURT:  Okay.  Gotcha.

24          MR. ENGEL:  And I'd point out, Your Honor, just for

25   the record, so there's no confusion, because there is no stay

Colloquy                                                          52

1  as to Mr. Karpeles, and he was supposed to have his deposition
2  previously taken in the Seattle action, and we expect to take
3  his deposition again -- or for the first time -- in the
4  Seattle action, at a rescheduled time in particular, in his
5  role as to the parent, there will be questions asked on the
6  subjects in that, as well as other matters relating to that
7  deposition.

8          So if we have our way, he's going to have to come
9  here for the Seattle process anyway.  So that's just one more
10  reason for him to be ordered by this Court to come.  And we
11  can deal with all those issues at the same time.

12          THE COURT:  All right.  Thank you.

13          Well, Mr. Parham or Mr. Mitchell, let me hear from
14  you.  You probably gleaned where I'm leaning from my
15  comments -- my comment in particular that if he availed
16  himself of this Court, why shouldn't he come over here.  Why
17  don't you answer that question?  If you're opposing him coming
18  over here -- why should he not have to come over here?

19          MR. MITCHELL:  Okay.  To be clear, Your Honor -- and
20  I just want to get this up-front -- and my apologies if it
21  wasn't clear in our response to the motion -- we are not
22  opposing the foreign representative being deposed, nor are we
23  suggesting we will not have the foreign representative here,
24  in person, to give live testimony and be subject for cross-
25  examination by parties-in-interest.  That's the first thing we

1   put in our response.  And I want to make sure the Court

2   understands we're very clear about that.

3           We suggest that he shouldn't be made to appear here

4   twice, back-to-back.  If you're going to take a deposition and

5   he's over in Asia, and he's -- this is a critical time leading

6   up to this final report by the examiner, that he needs to be

7   there, our suggestion was it would make most sense to have a

8   deposition via video link and then have him here live, in

9   person, testifying, subject to cross-examination.

10          And we've never suggested that the foreign rep

11  wouldn't be here for trial.

12          Now, to be clear also, though, is --

13          THE COURT:  Let me ask a basic question.  What are

14  his language skills like?

15          MR. MITCHELL:  French, I believe, is his native

16  language, with broken English.  I don't know if you can say

17  he's fluent in English.  But to the extent he is being deposed

18  via video link or otherwise the Court orders him coming over

19  here, as well as to the extent he's here, we certainly would

20  make arrangements for a certified translator, so that would

21  not be a problem.

22          The other thing, too, Your Honor, is I think we're

23  kind of putting the cart before the horse.  We don't oppose a

24  deposition of the foreign representative.  And you'll note,

25  I'm saying "the foreign representative" as opposed to

1   Mr. Karpeles -- or [CAR-pa-lay] -- by name.

2          The foreign representative very well could change, as

3   Mr. Parham said.  We may have a trustee put in, effective --

4   basically, effectively a trustee put in.  Or alternatively,

5   the debtor may choose to replace the foreign representative.

6   I want to be very clear about that so there's no suggestion

7   that there is anything tricky going on.  I don't want there to

8   be any surprises.  That could happen.

9          THE COURT:  Okay.  Well, I got a lot of questions

10  about that.

11         MR. MITCHELL:  Okay.

12         THE COURT:  And maybe this where I'm going to need

13  Mr. Engel, Mr. Phelan, my -- I guess people who -- what was

14  that case before Judge Mott, again?

15         MR. PHELAN:  think3, Your Honor.

16         MR. ENGEL:  think3 Inc.

17         THE COURT:  Okay.  I completely forgot about that.

18  Anyway, how -- okay.  How does this happen before even there's

19  been a supervisor or examiner report?  A --

20         MR. MITCHELL:  Because it's within the --

21         THE COURT:  -- a change in personal representative or

22  foreign representative?

23         MR. MITCHELL:  Because it's up to MtGox to choose who

24  the foreign representative will be.  There's no requirement --

25         THE COURT:  Well, who else would it be?

 1            MR. MITCHELL:  I don't know, Your Honor.  There's

 2   a -- they could -- for example, it's not uncommon as I know

 3   Mr. --

 4            THE COURT:  So Mr. Karpeles could say, I don't think

 5   I want to do this, I think I'll appoint who to do it?  I

 6   mean --

 7            MR. MITCHELL:  He could appoint a representative

 8   here.  It could be a lawyer.  It could be an accountant.  It

 9   could be an individual.  The definite -- just a couple of

10   examples on that, Your Honor.

11            So, for example, it's not uncommon, when there's a

12   Chapter 15 here in the United States, when there's a

13   liquidation or other insolvency over in Europe, that's being

14   run by an accounting firm, to have the accountants of one of

15   the big four or otherwise --

16            THE COURT:  Okay.

17            MR. MITCHELL:  -- acting as a foreign representative.

18            THE COURT:  Okay.

19            MR. MITCHELL:  Totally not uncommon.

20            THE COURT:  So right now, that is the decision of Mr.

21   Karpeles.  Is that -- is --

22            MR. MITCHELL:  It is.

23            THE COURT:  Okay.

24            MR. MITCHELL:  It is -- well, it's the decision --

25            THE COURT:  All right.  So what -- I guess what I'm

1    starting to think ahead on is -- I mean, I don't want to order

2    today he appears for a deposition on X date, as foreign

3    representative of MtGox and then he changes and makes someone

4    else the foreign representative next week, and says okay, I

5    don't have to appear anymore.  He's obviously the person with

6    the knowledge.

7              MR. MITCHELL:  He is, Your Honor.  He is the primary

8    principal.  I think he's the -- what's the term in Japan --

9    the representative director, is the term, I think -- sole

10   director or representative director, I think, is the Japanese

11   term.  He is the person with the knowledge.

12             THE COURT:  Um-hum.

13             MR. MITCHELL:  However, but I think what we need to

14   do is make sure that we're clear, Your Honor, and that is, he

15   may be the person with the most knowledge with respect to the

16   assets and operations of MtGox, but that's not what this Court

17   is going to be evaluating, nor is there any requirement in the

18   Bankruptcy Code that the foreign representative be the person

19   with the most knowledge with respect to the assets and

20   operations.

21             The foreign representative is whoever the foreign

22   debtor --

23             THE COURT:  Okay.

24             MR. MITCHELL:  -- chooses --

25             THE COURT:  Understood.

1           MR. MITCHELL:  -- to represent --

2           THE COURT:  So you're saying --

3           MR. MITCHELL:  -- in the U.S.

4           THE COURT:  It could change before May --

5           MR. ENGEL:  Your Honor, on that point, if I may?

6    This is Larry Engel.

7           THE COURT:  Okay.  I'll hear you in a minute.  I'll

8    hear you in a minute.

9           THE COURT:  So you're saying it could change, but

10   what I guess I'm saying I don't want changed is I don't want

11   you to treat this like a Rule 30(b)(6) representative and

12   okay, now the new guy is going to be the person who appears

13   for a deposition.

14          Clearly, these parties want Mr. Karpeles and think

15   he's the person with the information on where are the assets,

16   who are the creditors.  Okay?

17          MR. MITCHELL:  That's correct.

18          THE COURT:  Okay.

19          MR. MITCHELL:  But let's be clear on what they want

20   it for, Your Honor.  They may dress it up as if they want it

21   to challenge this recognition petition, but that's not what

22   they want it for.  I think the joinder for Mr. Engel is

23   infinitely clear, and he says over and over and over, and I'm

24   happy to walk the Court through is joinder, he says because I

25   haven't been able to get Mr. Karpeles as a representative of

1   Tibanne, a nondebtor defendant that he's sued, and because the

2   individuals in Chicago haven't been able to get Mr. Karpeles

3   in his individual basis, we want you, Your Honor, to order him

4   to come here to the United States to sit for a deposition.

5           And they cloak it in Chapter 15, but that's not the

6   case.  And there is no requirement that the person that

7   testifies at this hearing be the person with the most

8   knowledge of the assets.

9           If they give us a 30(b)(6) deposition notice, Your

10  Honor, and outline matters that are relevant to the proceeding

11  that's going to go forward, we will certainly make that

12  individual available for a deposition, and if the Court orders

13  that person to come to the United States, so be it.  We think

14  it's more efficient for the depo to be a video and live

15  testimony here.  Same thing with whoever our foreign

16  representative is.  That person will be here, in court, live

17  to testify.

18          But what this Court can't do, and if I can make one

19  point on that, Your Honor, because I think it's germane to

20  this --

21          THE COURT:  Um-hum.

22          MR. MITCHELL:  -- what's really going on here, Your

23  Honor, is the plaintiff are asking you to circumvent 1510 of

24  the Bankruptcy Code.  1510 of the Bankruptcy Code says, "The

25  sole fact that a foreign representative files a petition under

1   Section 1515 does not subject the foreign representative to

2   the jurisdiction of any court in the United States for any

3   other purpose."

4          You can't read the papers filed by the Greene

5   plaintiffs or CoinLab, without coming away from their motions

6   to compel Mr. Karpeles to come here, other than the fact that

7   they have been frustrated that they haven't been able to

8   obtain jurisdiction over Mr. Karpeles, in the actions that

9   they commenced.  And so what they're asking you to do is bring

10  him over here so that they can get testimony from him with

11  respect to matters not before this Court.  And that's an end

12  run around 1510, Your Honor.

13         THE COURT:  Okay.  Well, I'm not going to let anybody

14  play games.  I'm not going to let these creditors depose him

15  through order from me on anything other than the standards

16  relevant for Chapter 15.

17         MR. MITCHELL:  Understood.

18         THE COURT:  And that's why I was really pressing the

19  issue with Mr. Woodrow, what do you want to ask about.  Okay?

20  So I'm not going to issue an order that lets them essentially

21  do their discovery in the Washington and Illinois actions.

22         But I'm not going to -- I mean, you have to know --

23  it appears to me, he's wanting to not come over here because

24  he's trying to avoid service personally on those issues, he's

25  trying to avoid personal jurisdiction or service.  That's what

1   it sounds like.

2           MR. MITCHELL:  But -- well, if --

3           THE COURT:  I mean, why is it not terribly burdensome

4   to them -- I mean, a video deposition of a guy who has broken

5   English, and in Taipei of all places.

6           MR. MITCHELL:  Um-hum.

7           THE COURT:  I mean, that's just -- he's got to come

8   over here.  He's got to come over here.

9           MR. MITCHELL:  And is this Court, though, Your Honor,

10  saying that Mr. Karpeles has to come over here, or are you

11  saying the foreign representative has to come over here?

12  Because there's -- the Code simply says, Your Honor, and I can

13  pull up the definition -- the Code basically says a foreign

14  representative has to be any person or body.  That's all it

15  says, and there is no requirement --

16          THE COURT:  Well, but --

17          MR. MITCHELL:  -- other than he's the anointed --

18          THE COURT:  -- isn't it Rule 1018, what I really look

19  at more than 15-whatever you're looking at?

20          1018 seems to permit discovery in this context.  We

21  have the ability of parties-in-interest -- parties-in-

22  interest, that's the term used --

23          MR. MITCHELL:  Correct.

24          THE COURT:  -- to contest a petition for recognition

25  in Rule 12 -- it's treated like Rule 12.  And then we have

Colloquy                                                            61

1  Rule 1018 that seems to contemplate depositions, discovery,

2  right?

3          MR. MITCHELL:  It does, Your Honor.

4          THE COURT:  So that wouldn't be limited to the

5  personal representative, would it?

6          MR. MITCHELL:  That's correct.  But if you want to

7  take the deposition of an individual -- if they want to take

8  deposition of an organization, they need to issue a 30(b)(6)

9  notice.  No questions.  And we'll produce that witness.  We'd

10  like to do it via video.  If the Court ordered us to produce

11  that witness here, we'll do it.  Same thing with the foreign

12  representative.

13          But if they want to go get a specific individual then

14  they have to go to the country where that individual is in

15  order to take his or her deposition.  And if -- and they can't

16  simply issue a deposition notice with respect to an

17  individual, in that individual -- that person's individual

18  capacity as a director or otherwise of a corporation -- and

19  then ask the Court to compel him to come to the United States.

20          What they can do is issue a deposition notice under

21  30(b)(6) of the organization, and we'll produce the

22  representative.  And because this is a recognition hearing,

23  we'll produce a foreign representative.  But with respect to

24  the individual, though, that they want to target -- and that's

25  exactly what's going on here -- they're targeting him in his

 1    individual capacity -- then they need to go --

 2            THE COURT:  Oh, okay --

 3            MR. MITCHELL:  -- overseas to get him.

 4            MR. ENGEL:  Your Honor --

 5            THE COURT:  Let me just -- and I'll get to you next,

 6    Mr. Engel.  Let me just ask you, you always play straight with

 7    me, Mr. Mitchell -- can you tell me is he going to appear over

 8    here or not for a deposition?

 9            MR. MITCHELL:  I don't know, Your Honor.  Let me

10    answer you straight up.

11            THE COURT:  You don't know?

12            MR. MITCHELL:  Okay. Well, but can I answer you

13    straight up, though?

14            THE COURT:  Um-hum.

15            MR. MITCHELL:  He's in the process of obtaining

16    counsel, and he might have actually already gotten counsel.  I

17    don't know if they've appeared.  He may or may not appear.

18            But let me also explain too, though, Your Honor, as

19    well.  So with respect to will he or won't he show up, I do

20    not know.  He's getting separate individual counsel.  And Your

21    Honor, with respect to the allegations that have been made, I

22    don't think Your Honor would say it's necessarily beyond the

23    realm of reasonableness for an individual, faced with the

24    allegations that you read in their papers, to consider whether

25    or not that individual should appear here in the United States

1  or not and what his rights and remedies are and whether or not

2  the Chicago or the Seattle court have jurisdiction over him as

3  a foreign national that, from what I understand, has never set

4  foot in the United States.  Just to be clear.

5           And secondly, with respect to the expectations of the

6  creditors, Your Honor, you can't get on the MtGox Web site

7  without seeing a lot of Japanese characters.  It's a Japanese

8  company.  This isn't a situation, just to be clear, where

9  Toyota is selling cars and have accelerator problems and

10 there's class-action claims and then Toyota says, you know

11 what, sue me in Japan.  That's different.  It's an established

12 industry doing business here in the United States.

13          These individuals went to the MtGox Web site, every

14 single one of these customers went to the MtGox Web site, did

15 business with a Japanese company, with a less-than-established

16 industry.  I don't know that I have my arms around it.  And so

17 for them to say you need to come over here, I would flip that

18 around and say, no, no, no, no; you need to go over there.

19 They affirmatively went to Japan to do business with a

20 Japanese company, Your Honor.

21          THE COURT:  But he filed this case.

22          MR. MITCHELL:  In defense -- in --

23          THE COURT:  He filed this case.

24          MR. MITCHELL:  In response to --

25          THE COURT:  They don't want to be in Dallas.

Colloquy                                                    64

1          MR. MITCHELL:  I understand.  It's a recognition

2   hearing of a Japanese company.

3          THE COURT:  Um-hum.

4          MR. MITCHELL:  It's a recognition hearing for a

5   Japanese company.  This is not a Chapter 11.  It's a

6   recognition hearing for a Japanese company.  And it is

7   absolutely in response to the creditors in Chicago seeking to

8   impose a constructive trust on an emergency basis over the

9   assets of the company that are located here in the United

10  States.  There's no place of business in the U.S. but there

11  are assets located in the U.S.

12          And that is why --

13          MR. ENGEL:  Your --

14          MR. MITCHELL:  -- the Chapter 15 was commenced.  And

15  you'll notice there wasn't a Chapter 15 commenced in response

16  to the CoinLab litigation, which had been ongoing a lot longer

17  than the Chicago litigation.  But it was this constructive

18  trust, and that's why the Chapter 15 petition was commenced.

19          Your Honor, but to also be completely honest, too,

20  MtGox is evaluating whether or not to choose a different

21  foreign representative.  It is absolutely within their

22  discretion to do so.  There is no standards, there is no

23  requirement, other than it's a person or a body that has

24  authority to be the foreign representative.  That's the only

25  standard before the Court.

1          So that's why I wanted to raise it, that that may

2     happen.  That may happen.

3          THE COURT:  I understand.  But the issue is to me,

4     they are entitled to discovery, as I read 1018.

5          MR. MITCHELL:  They are.

6          THE COURT:  And they're entitled to a person with

7     knowledge.  And I don't know who in the heck's going to have

8     knowledge, but -- I mean, I don't know.  Maybe some of these

9     thirty-two employees of Tibanne have a lot of information in

10    their brain that I think they're entitled to the guy who is

11    the hundred percent owner of Tibanne, which is the eighty-

12    eight percent owner of the debtor, which puts himself out

13    there as MtGox.

14         Let me -- I'll come back to you.

15         But Mr. Engel, I hear you on the phone, dying to say

16    something.  Let me hear from you.

17         MR. ENGEL:  I apologize for my impatience, Your

18    Honor.

19         THE COURT:  Okay.

20         MR. ENGEL:  The point that we keep missing here, is

21    that they put him up, in addition to being the foreign

22    representative, also as their sole actual declarant, apart

23    from the factual statements that were made by the lawyers,

24    which waived the attorney-client privilege; and I doubt they

25    want to expand on that.

Colloquy                                                                66

1          So the -- if the declarant, Mr. Karpeles, doesn't

2     come to the U.S. to defend his declarations, and his

3     declarations will be stricken, then there's no evidence for

4     their Chapter 15.  And lawyers' statement such as you saw in

5     the papers in abundance, that sound as if they're facts, they

6     have to be supported with evidence.  These folks don't have

7     any evidence at the moment, apart from a few factual

8     statements by the lawyers, which -- the competency of which

9     and the waiver characteristics of which I'm sure we'll be

10    debating.  But as to their main factual witness, it's been Mr.

11    Karpeles with his declarations.

12          Now, if they want to withdraw their declarations and

13    try and substitute other declarations of a whole new witness,

14    then that affects many things, and, frankly, we'd see that as

15    just more stalling by Mr. Karpeles; and we all want to get to

16    the bottom of this.

17          But if -- there's also an issue here, and the reason

18    we want to know this sooner, as opposed to later, is when you

19    want to hear it, the Japanese process is actually a little

20    different than you might surmise from reading the MtGox

21    papers.  The examiner is a much more substantive and important

22    player in the Japanese process than he's being given credit

23    for here.  And this idea that you can simply substitute in a

24    new foreign representative on him under these circumstances,

25    "him" meaning the Japanese examiner, I would dispute.  I would

1  also dispute that such a replacement, if not approved by the

2  examiner specifically, would be able to spend the money that

3  wouldn't be needed to pay lawyers to come here and act in the

4  U.S., et cetera.

5          I mean, you're opening up a whole series of problems

6  if you substitute in a new player at this time.  And we would

7  see that happening as yet one more reason for complaining

8  about MtGox's delay here, while the U.S. creditors are not

9  sufficiently protected, going back to the conflict issues and

10  the 1522 discussion that we had earlier.  Which, by the way,

11  is a direct answer to his 1510 argument, because as Mr. Phelan

12  reported to you earlier, you may have conditions under 1522(b)

13  to adequately protect, or sufficiently protect, is the term

14  that they use in 1522, to adequately -- or sufficiently

15  protect the U.S. creditors, which require that the foreign

16  representative be available here in the U.S., and subject to

17  U.S. discovery and other rights of creditors.  That's a

18  condition to the availability of Chapter 15.

19          There's a concept here, just as there is in the

20  Bankruptcy Code in Chapter 15, more generally in the

21  Bankruptcy Code, of benefits and burdens, right.  They're

22  seeking the benefit of Chapter 15 without the burdens.

23  They're trying to make life easy on Mr. Karpeles, and that's

24  not what this is about.  If he wants to be the foreign

25  representative, then he has to stand up and take the burdens

1    that go with that.  And if he tries to substitute later on

2    somebody else in, then he's starting a whole new process,

3    because we're counting on these declarations, and deposing him

4    with respect to those and cross-examining with respect to

5    those, and that's a fundamental requirement for there to be a

6    Chapter 15 here.

7            MR. MITCHELL:  Your -- I'm sorry.

8            THE COURT:  All right.  Going back to something you

9    said at the beginning, Mr. Engel.  Are you saying the examiner

10   would have to approve -- consent to any replacement of Mr.

11   Karpeles as the foreign representative?

12           MR. ENGEL:  Well, I -- let me say it this way.  If I

13   were in the debtor's position, I would want the consent of the

14   examiner.  I'm pretty clear that he can't spend money on

15   behalf of the estate, in terms of a new foreign

16   representative, without the blessing.  It's a power of the

17   purse kind of issue, as opposed to a power --

18           THE COURT:  Okay, I got you.

19           MR. ENGEL:  -- to act.  I also think that the

20   Japanese examiner has more power to restrain activities by

21   whoever purports to act as the foreign representative if he

22   chooses to use that power.

23           So it -- let me say it this way.  It may be that Mr.

24   Karpeles could, if he chose to, replace himself at MtGox with

25   somebody who would be pictorially the foreign representative,

Colloquy                                                        69

1   but in terms of the ability of that party to act, that ability

2   to act could be severely constrained by the examiner, and, in

3   effect, disable him from acting, including by cutting off his

4   funds.

5          THE COURT:  Okay.

6          MR. MITCHELL:  Yeah.

7          THE COURT:  Mr. Mitchell.

8          MR. MITCHELL:  Your Honor, two points.  One, we don't

9   necessarily disagree with Mr. Engel on the fact that it's more

10  of the power of the purse right now, and -- with respect to

11  the appointment of the examiner.  So if, let's just say -- not

12  the examiner, excuse me, the foreign representative.  So if,

13  let's just say, there was an intent to hire an accountant or a

14  lawyer, somebody here in the United States to be the foreign

15  representative, and they need a retainer to be paid or

16  anything else, yes, you probably would have to go back to the

17  examiner to get that approved.  And the examiner may or may

18  not have to take that to the Court.  I don't want to

19  necessarily get into Japanese law on that.  I'm not sure, but,

20  certainly, the examiner had to approve MtGox sending a

21  retainer to Baker & McKenzie, and hiring Baker & McKenzie to

22  represent MtGox in the Chapter 15, and so I would presume that

23  would be the same for any foreign representative change.

24          I'd like to call the Court's attention to a provision

25  of the Bankruptcy Code, and that's Section -- and it's the

Colloquy                                          70

1   definition of foreign representative.  And that's 101(24).

2          THE COURT:  Okay.

3          MR. MITCHELL:  101(24) says "The term 'foreign

4   representative' means a person or body," which is what I was

5   saying earlier, Your Honor, "including a person or body

6   appointed on an interim basis authorized in a foreign

7   proceeding to administer the reorganization or the liquidation

8   of the debtor's assets or affairs, or to act as a

9   representative of such foreign proceeding."

10          I'm not here telling you, Your Honor, that there is

11   an interim appointment, that's not my point.  My point is this

12   though, that the Code contemplates that there could be a

13   change.  Somebody appointed on an interim basis, maybe not on

14   a final basis.  And, in fact, that may happen; there may be a

15   change.  The Code contemplates this.  It's not you choose your

16   foreign representative, and you're stuck with him.  It's any

17   person or body that's authorized to act.  It's a very, very

18   broad standard.

19          Additionally, Your Honor, with respect to Mr. Engel's

20   suggestion that discovery -- and this goes to the scope of

21   discovery.  My apologies, I've lost my place.  It was 1521, I

22   believe --

23          MR. ENGEL:  22, 1522.

24          THE COURT:  1522(a) and (b).

25          MR. MITCHELL:  Okay.  It's 22(a) and (b).  Okay, my

1    apologies, I could have sworn he said 1521.  My apologies

2    then.  Then, Your Honor, I have something to address on 1521.

3           Your Honor, maybe I could sum up this way, and kind

4    of the process that we see going forward.  And that is this,

5    is the Greene plaintiffs have issued interrogatories and

6    request for production of documents.  We think they're

7    completely overbroad and overbearing; and that's not before

8    the Court today.  But, nevertheless, I think the return date

9    is April 16th.  We certainly would suggest that the plaintiffs

10   should be required to issue a 30(b)(6) notice to MtGox.  The

11   debtor is MtGox.  The debtor is not Mark Karpeles.  And it's

12   improper for these parties to come forward and designate an

13   individual that they want to testify on behalf of the company.

14   That's the company's prerogative, and that's --

15          THE COURT:  Okay.  Why -- really, explain to me why

16   is that improper?  If he is the person who right now is the

17   foreign representative, if he is the person who has filed all

18   the declarations in support of MtGox's pleadings, why is that

19   improper to focus on him personally?

20          MR. MITCHELL:  Well, because, one, with respect to

21   the declarations that he's filed, I agree.  If somebody comes

22   in and substitutes there may need to be an adoption or a

23   replacement of those declarations.  That may need to happen if

24   there is a substitution.  But if a company is requested to --

25   basically, it's the debtor's right and the corporation's

1   right, under a 30(b)(6) deposition to choose who -- and it

2   could be several individuals -- will testify with respect to

3   the subject so designated.  And that is MtGox's prerogative

4   under 30(b)(6).

5           The deposition notice is issued, the subjects are

6   identified, and then MtGox decides who will testify on behalf

7   of MtGox, the debtor.  And it's improper, simply because these

8   plaintiffs want to depose an individual, for them to designate

9   who will be the corporate representative.  And that's what's

10  going on here, Your Honor.

11          They should be first required to issue a deposition

12  notice with the subjects, and then it is our right, under the

13  rules, to identify who that witness should be.  If they want

14  go depose somebody on an individual basis, they can do that.

15  But here with respect to what's going to happen on May 6th, or

16  whenever this Court sets it for hearing, we should have the

17  right to designate who will be providing that evidence.

18          If we put declarations on file, and we don't have the

19  evidence to back that up at trial, that's something this Court

20  takes up at trial.  It's not something that this Court should

21  use today in insisting that the deposition of Mr. Karpeles go

22  forward in the United States.

23          THE COURT:  All right.  Mr. Phelan, I'll give you the

24  last word on this.

25          MR. PHELAN:  Your Honor, you zeroed in on it.  MtGox,

1    M-T Gox, whatever they are, came to this Court, filed a

2    Chapter 15, with a declaration of Mr. [CAR-pa-lay]

3    [CAR-pa-less], whatever his name is.  And he was -- they

4    were -- MtGox, M-T Gox was granted provisional relief on

5    extremely short notice of less than twenty-four hours, based

6    on that declaration.

7             We don't have to do a 30(b)(6).  This is a one-man

8    band.  Mr. Karpeles is MtGox.  He is the foreign

9    representative right now.  We can speculate who might be one

10   in the future, but that's speculation.  We are entitled to

11   take a deposition of the people that have the information

12   necessary for us to determine what position we're going to

13   take with respect to the recognition under Chapter 15.  We may

14   think it's a lousy idea when we get done; we may think it's a

15   good idea, and we need it for the protection of our clients,

16   which, essentially, are the United States clients, with the

17   exception of Mr. Engel's client.

18            As a result, under 1510, the foreign representative

19   is here, for this proceeding, and you have told us, in no

20   uncertain terms, that the information that we can seek has to

21   be related to this proceeding.  Chicago is Chicago; I guess

22   for Mr. Engel Seattle is Seattle.  But this is a case here,

23   and we're entitled to find out about assets, what conditions

24   should be required, creditors, center of main interest, the

25   stuff that relates to this proceeding.  And that's what we're

Colloquy                                    74

1  going to do, and we're not going to go outside of that box,

2  and if we go outside that box I'm sure that Mr. Mitchell will

3  come and tell you -- this Court.

4        What's done in other cases, with respect to other

5  situations, where you have Deloitte or Alix or somebody that

6  is another foreign representative looking for six trucks in

7  Arizona is a whole different animal and has no relationship to

8  this case.

9        This guy is the witness.  They want to bring in some

10 other people who don't know anything for that final hearing,

11 hey, let them do it, we'll deal with that at that point in

12 time.  But what we have in front of this Court is a

13 declaration of Mr. Karpeles.  He needs to come here, we need

14 to find out if he's lying or not, we need to find out what's

15 going on with respect to this Chapter 15 in that box; and

16 that's what we're entitled to at this stage of the game.

17 Thank you, Your Honor.

18        THE COURT:  All right.  Let me -- I'm going to order

19 him to appear, but let me talk about timing now.

20        We're going to circle back to this May 6th date

21 versus something else.  But then Mr. Phelan, Mr. Woodrow, you

22 have your motion to modify provisional relief, which, again, I

23 told you I wasn't going to give you a substantive hearing on

24 today; I would consider your request for an expedited hearing.

25        MR. PHELAN:  Can I address that briefly?

1          THE COURT:  You can.  I mean, I guess what I'm

2   starting to think is a deposition happens sometime in the next

3   two or so weeks.  Maybe we continue or set the hearing on the

4   motion for provisional relief on May 6th.  You may or may not

5   be seeking some sort of provisional relief, depending on what

6   you hear at the deposition.  Same with CoinLab.  And then I

7   can consider it if you want to ask for some modification at

8   that time.  But then we're going to have the hearing on

9   recognition sometime later than May 6th, it sounds like.

10  That's kind of where this seems to be heading.

11         MR. PHELAN:  You have -- we have a little problem

12  here, and I think you're getting the picture today.  On May

13  (sic) 10th Karpeles on behalf of MtGox comes here, gets

14  provisional relief on less than twenty-four hours notice to

15  anybody.

16         THE COURT:  March 10th.

17         MR. PHELAN:  I'm sorry; March 10th.

18         THE COURT:  Um-hum.

19         MR. PHELAN:  Doesn't tell the Court that oh, by the

20  way, I found a couple of hundred thousand bitcoins a couple of

21  days ago, even in his declaration.  Through the declaration,

22  or through the attorneys, I don't remember which, or both,

23  says well, the main asset in the United States is the server

24  kind of thing, and data on this server, but I'm not going to

25  tell you where it's at exactly, and I'm not going to tell you

Colloquy                                                    76

1    what's on it.  And gets the relief.

2            And today the relief is there, the provisional

3    relief.  And provisional relief isn't automatic.  I mean,

4    normally in a case the way that the Code's drafted is you file

5    your petition for recognition, and when you are recognizing

6    you get the relief unless you need it in the meantime.  And if

7    you need it in the meantime, you have to satisfy what,

8    essentially, are temporary restraining order and preliminary

9    injunction standards.

10           If you look at the record, what little there is of

11   it, that hasn't really been done.  Now, in a lot of cases it's

12   not contested, it's no big deal, everybody kind of agrees on

13   stuff, and it's granted.  But that's not the case here.  And

14   that goes to our motion to terminate the provisional relief

15   because they've had it for a month now based on, essentially,

16   nothing.  And it's less than nothing because what they told

17   this Court, your colleague down the hall, turns out not to be

18   true, or not to be accurate.  It certainly isn't complete.

19           So I think that goes to the timing of setting our --

20   setting this motion to terminate the provisional relief.

21   Because they've kind of told you they -- well, maybe this

22   Karpeles guy isn't going to be the foreign representative, and

23   maybe he's not going to be here, and maybe nobody's going to

24   be able to test him on the declaration that got the

25   provisional relief.  So to me that's the problem on the

1   timing.

2            And I'll defer to Mr. Woodrow with respect to what

3   kind of makes sense from a discovery standpoint and a

4   deposition standpoint and when we need to have -- what's the

5   best time to have this done, because they moved it to May 6th.

6   I'm sorry that the examiner over there isn't done by May 9th.

7   But they shouldn't be able to just keep kicking out this

8   provisional relief that was gotten on the basis of not very

9   much.

10           THE COURT:  Okay.  Let's start at the back end.

11  Instead of May 6th, what do you propose, Mr. Parham or Mr.

12  Mitchell?  And everyone else can weigh in, but if the report

13  is going to be made on May 9th, does it make more sense to

14  push the recognition hearing in this Court out to say, I don't

15  know, middle of May, a week after that, two weeks after that?

16           MR. MITCHELL:  Yeah.  Your Honor, I think whatever

17  works on your calendar, whether it's a week or two weeks.  I

18  think -- I don't see a reason for any kind of a lengthy gap.

19  But I think probably a few days so the parties can react

20  depending on what happens on May 9th in Tokyo.

21           THE COURT:  Okay.  So May 9th is a Friday.  Is my

22  trial week, Laura, the week of May 19th?

23           THE CLERK:  Yes.

24           THE COURT:  Okay.  So I'll probably have some free

25  days.  But something in the week of May 19th, does anyone have

1    any opposition to me looking for a date the week of May 19th?

2          MR. MITCHELL:  It's fine with us, Your Honor.

3          THE COURT:  Okay.

4          MR. PHELAN:  Yes, Judge.

5          THE COURT:  That's good?

6          MR. PHELAN:  Yes, Your Honor.

7          THE COURT:  All right.  CoinLab people, that good

8    with you?

9          MR. ENGEL:  Roger is that satisfactory to you?  I'm

10   asking my co-counsel, Your Honor.

11         THE COURT:  Okay.  Yeah.  Mr. Townsend?

12         MR. ENGEL:  Roger Townsend?

13         THE COURTCALL OPERATOR:  Pardon the interruption.

14   This is the CourtCall operator, Roger Townsend has

15   disconnected.

16         THE COURT:  Okay.

17         MR. ENGEL:  Oh, well, then, Your Honor, I'll take

18   responsibility.  It's satisfactory.

19         THE COURT:  All right.  And U.S. Trustee, everything

20   good with you on that week?

21         MS. LAMBERT:  The Department of Justice is always

22   available to you.

23         THE COURT:  Okay.  Well, let's hope so.  Let me check

24   with my courtroom deputy.

25         (Pause)

1           THE COURT:  All right.  Tuesday, May 20th at 9:30 is

2    when we will --

3           MR. ENGEL:  I'm sorry, Your Honor, I couldn't hear.

4           THE COURT:  Tuesday, May 20th at 9:30 Central Time

5    will now be the setting on the petition for recognition.

6           MR. ENGEL:  Okay.

7           THE COURT:  So we'll see whatever the report says

8    from the examiner in Japan, and then that gives eleven or so

9    days for people to digest that.  So Tuesday, May 20th, 9:30.

10          Now, so I'm thinking we'll give the Greene plaintiffs

11   and CoinLab a setting on May 6th, what was going to be the

12   hearing on the petition for recognition, on the motion to

13   modify the provisional relief.  All right?  So you may or may

14   not still want to argue that, I suppose, depending on what

15   happens between now and May 6th.  But if you want to argue

16   that I should change what Judge Hale did -- and the way I look

17   at it he didn't do a heck of a lot, he just said the automatic

18   stay applies to MtGox, or he stayed the Illinois action and

19   the Seattle action from going forward against MtGox only,

20   right.  And I guess the stay protects the servers, the

21   receivable, whatever claim against the Department of Homeland

22   Security, that's all we know about as being protected.

23          So, again, if you want to make an argument prior to

24   May 20th, to modify the provisional relief order, that will be

25   your time to do it, May 6th, was that at 9:30.

Colloquy                                                        80

1          MR. PARHAM:  I believe it was.  Let's see, what was

2    the --

3          MR. MITCHELL:  It was, yes, Your Honor, 9:30.

4          THE COURT:  Okay, so 9:30.  All right.  So now

5    working backwards.  Obviously, I know that we don't have Mr.

6    Karpeles' consent on any of this, but if you want to weigh in

7    on what may be good and what may be bad for him coming to the

8    U.S., now would be the chance to do it, Mr. Parham and Mr.

9    Mitchell.  I mean, again, I don't have a feel for is he 24/7

10   working with the supervisor, the examiner, what is going to

11   be -- what we're going to be pulling him away from, what we're

12   not.  So I'll just let you weigh --

13         MR. ENGEL:  Would you like to hear comments on that

14   subject, Your Honor?

15         THE COURT:  If you -- if you know something.  I think

16   Mr. Parham was getting up to address that.  What do you want

17   to say?

18         MR. ENGEL:  Well, Your Honor, we haven't really

19   talked about the other side of the Japanese process.  But this

20   is a situation where when the examiner wants something he asks

21   for it.  He doesn't simply allow Mr. Karpeles to run the show

22   or run the investigation at all.  And this is a situation

23   where he's a Japanese official who's engaged in an important

24   duty and he's going to do it his way.  And he's not going to

25   have Mr. Karpeles working every day for a month doing things.

1          I'm sure -- I would guess, just judging from past

2     experience in these situations, that he's already gotten from

3     Mr. Karpeles what he wants from Mr. Karpeles, apart from

4     whatever new things Mr. Karpeles drops in to stall this, such

5     as, oh, by the way, I've found some more coins.  I mean, so --

6     or I've got a buyer for the company, or the other usual things

7     that debtors in his circumstance sometimes try to do to delay

8     the proceedings.

9          Apart from investigating those kinds of things, I

10    don't think there's a legitimate basis for Mr. Karpeles to say

11    he can't be here, because he's got to be there doing

12    investigations.  I think if he's investigating, he's doing it

13    for his own account, not for the examiner.

14          THE COURT:  All right.

15          MR. PARHAM:  Well, that's just complete speculation.

16          THE COURT:  All right.

17          MR. PARHAM:  My understanding is that Mr. Karpeles is

18    extremely busy working towards whatever is going to happen to

19    this company, whether it's going to be -- whether they're

20    going to find to sponsor or rehabilitation, whether the

21    exchange can be resurrected.  I think the only thing, perhaps,

22    that everybody doesn't disagree on today is that Mr. Karpeles

23    is obviously very central to this company, and it's a very

24    critical stage in the company's life.

25          We would suggest it be as late as possible to give

1    this as much time, frankly, and so that people who are

2    operating from -- well, let me back up.  We do think it should

3    be later, not sooner.  We have written discovery to us that is

4    due, as Mr. Mitchell mentioned, I believe on April 16 or 17.

5    Frankly, almost everything that is within the scope of what

6    they want in this deposition is going to be responded to, I

7    believe, in those interrogatories.  So -- and in the request

8    for production.  So they're going to have a lot of this

9    information in the next two and a half weeks anyway.

10           So our suggestion would be it be as late as possible.

11   Frankly, I would like to see it around the May 6th date,

12   because that is the date if he's got to come over here, if

13   they're going to go forward on the motion to modify

14   provisional relief then he's here, and could testify at that

15   hearing as well, if necessary.  As I said, I think they're

16   going to have this information so I don't think it's going to

17   prejudice them.

18           The other point I would make is, obviously, Mr.

19   Karpeles we learned this morning, had hired his own counsel.

20   So, obviously, while we'll -- we'll do what we can to have him

21   here on any given date, we may run into an issue that way too.

22   I don't know.

23           THE COURT:  Okay.  Are there any restrictions on his

24   ability to travel?  Somewhere in somebody's paper I saw some

25   comment there may be.  And I just don't know if that was

1    speculation, it turned out not to be correct, or what --

2             MR. PARHAM:  Yeah -- no.  I think there was some

3    concern at one time that the Japanese court would not allow

4    him to travel.  I don't think that that is the case.  Now,

5    they may not pay for him to travel, that I think is possible.

6    But there's no restriction, per se, from the Japanese court on

7    whether or not he can travel.

8             THE COURT:  Okay.  All right, well --

9             MR. PHELAN:  Your Honor --

10            THE COURT:  What do you say about dates?

11            MR. PHELAN:  Well, that kind of came out in stages

12   about the travel.  Because at first it was his travel

13   restrictions, and then it was well, is it for real, well, it's

14   not really, it's just money.  So, okay, we'll pay for him to

15   come here.  So that's been -- their game's delay.

16            They suggested the written interrogatories, and

17   you've been around the block, you know what those answers look

18   like.  That's not going to get us where we need to go, and I

19   think we're over that hump.

20            If we're going to do something on the 6th then we

21   really need to have the deposition well before that.  And we

22   would suggest it be sometime before April 21st.

23            THE COURT:  Okay.

24            MR. PHELAN:  That gives us a little bit of time

25   before the 6th.  And I just looked there's two nonstops from

1  Tokyo to Dallas on American alone, and there's other airlines

2  that fly nonstop here.  So it's not much fun to fly that far,

3  but, hey, this dude does it all the time.  That's -- and he's

4  computer literate, he can do a lot of stuff with his little

5  computer now from wherever he is in the world, because that's

6  the business he ran.

7          THE COURT:  Okay.

8          MR. PHELAN:  So before April 21st is our request,

9  Your Honor.

10          MR. ENGEL:  We -- this is for CoinLab, Larry Engel.

11  We join in that request for an early date.

12          THE COURT:  Okay.  Well, I'm going to say April 17th,

13  or a date otherwise mutually agreed upon in writing by both

14  the Greene plaintiffs' counsel, CoinLab counsel, and MtGox

15  counsel.  Okay.  In the absence of a written agreement of all

16  of you, we'll say April 17th, 9:30 in the morning, Dallas,

17  Texas, offices of Baker & McKenzie.  All right.

18          And I guess I'm going to be clear on the nature of my

19  ruling.  I'm granting, I guess, as modified, the motion of the

20  Greene plaintiffs for an order pursuant to Rule 2004 and the

21  joinder therein by the CoinLab plaintiffs.  And what I mean by

22  "as modified" is I'm granting the request to take the

23  deposition of Mark Karpeles pursuant to the 7000 rules of

24  discovery -- pursuant to Bankruptcy Rule 1018 and the 7000

25  rules -- 7030, the other relevant 7000 rules, rather than

Colloquy                                                                    85

1    under 2004.  I think you all understand, we've discussed that

2    today.  It's not really clear to me that 2004 applies in a

3    Chapter 15 case before an order for recognition.  But it is

4    quite clear to me from Rule 1018 that parties-in-interest can

5    take discovery that might be germane to whether an order for

6    recognition should be issued.

7            So I am ordering that it be Mr. Karpeles.  He has

8    made himself a fact witness by signing the petition for

9    recognition filed in this court, by submitting a detailed

10   declaration in support of the petition for recognition, by

11   holding himself out to this Court and the world, as the sole

12   director and CEO or sole officer of MtGox Co., Ltd., also

13   known as Mt. Gox KK.  He appears to be the indirect eighty-

14   eight percent owner.  And, again, he availed himself to this

15   Court asking this Court for relief on behalf of MtGox.

16           So with full recognition that he's not a U.S.

17   citizen, that he is in Tokyo, Japan, that there may be a

18   process of him being replaced at some juncture as the foreign

19   representative of MtGox, I am still nevertheless ordering that

20   he, as a fact witness, appear for a deposition April 17th,

21   9:30 a.m. Central Time in Dallas, Texas for deposition.

22           Again, I've made it clear what the scope of this

23   deposition is going to be.  And I hope I don't have any

24   motions for protective order, motions to compel, subsequent to

25   this ruling.  I think everyone in this room understands what

1  it is that I will need to consider on May 20th -- what did I

2  say?

3          MR. MITCHELL:  17th.

4          THE COURT:  May 20th for the hearing on recognition.

5          MR. MITCHELL:  Okay, yeah.

6          THE COURT:  And so, again:  what are the company's

7  assets in the U.S., in general; where are its creditors;

8  questions germane to the main center of interest; and

9  potentially questions that there are on the public policy

10  issue; questions that may be germane to modifying or

11  conditioning any order of recognition under 1522.  But this is

12  not an order permitting a Rule 2004 fishing expedition, and

13  it's not an order allowing discovery germane to the Illinois

14  action or the Seattle action.  I am not allowing discovery for

15  those actions.

16          All right.  So questions, housekeeping matters before

17  we adjourn?

18          MR. PARHAM:  Your Honor, I assume that the

19  objection --

20          MR. ENGEL:  Oh, Your Honor, one question.

21          THE COURT:  Just a minute.  Just a minute.

22  Mr. Parham was just starting to ask something.  Could you

23  speak in the microphone so he hears you?

24          MR. PARHAM:  Yeah.  Your Honor, I would assume that

25  the objection deadline, which has been basically floating the

 1   week behind the -- or a week in front of the recognition
 2   hearing, rather, would just continue to move with the
 3   recognition hearing, such that the objection deadline would
 4   be, I guess, May 13th.
 5          THE COURT:  I think that's appropriate.  Anyone have
 6   a problem with that?  We'll make it May 13th then.  All right.
 7          Mr. Engel, you were saying?
 8          MR. ENGEL:  Your Honor, I'm just going to ask one
 9   question as to this process.  As you know, proving foreign law
10   is sometimes an expensive and complicated process.  I don't
11   know what the debtor's, or MtGox's plan is for how to deal
12   with Japanese law questions, whether they're planning to put
13   on an expert, or whether they're not.  But we should know what
14   they're planning to do, because that will inform us what we
15   need to do in response to that.  And Your Honor may then have
16   views about whether there're alternatives as to how best to
17   prove up foreign law on an inexpensive basis, for instance.
18          And we were talking earlier about Judge Mott's wild
19   case in think3, and we had videotaped witnesses from offshore
20   who were providing expert questions and answers to the court
21   while we were -- but they also submitted reports -- expert
22   reports.  So I don't know if you want to do something like
23   that, or whether the debtor is going to even trigger that.
24   But we need to be able to respond to that if it arises,
25   because filling up their papers with U.S. commentary about

Colloquy                                                                            88

1   Japanese law without it being proven is not a good idea.

2            THE COURT:  All right.  You have any thoughts on that

3   yet, Mr. Parham?

4            MR. PARHAM:  I think it's interesting that now they

5   want to take a video deposition.  But that aside, no.  At this

6   point it's something, obviously, we're giving some thought to,

7   but I think it's something we should discuss probably with

8   counsel outside the -- offline, as opposed to just debating it

9   at the moment.

10           THE COURT:  All right.  Well --

11           MR. ENGEL:  That's fine, Your Honor.  The reason I

12  bring it up now is that I don't want it to become an excuse

13  for delay later.  So let's have the meet-and-confer soon so

14  that we can build it into the time process that you've set,

15  Your Honor, because we don't want to move those dates.

16           THE COURT:  All right.  Well, I will order you to

17  meet and confer on this in the next ten days.  What is today,

18  the 1st?  By the close of business April 11th.  And then if

19  you don't have an agreeable process in writing then you can

20  file a motion and ask me to, I don't know, order a court

21  expert on this that you want to propose, or something of that

22  nature.

23           MR. PARHAM:  Your Honor, I think we've typically done

24  this in past cases just by declarations from foreign counsel.

25  I don't think that the Japanese law issues are going to be

 1 subject to a whole lot of debate.  And so I think what we'll

 2 propose, just so the Court kind of knows where we're going,

 3 would probably be exchange declarations.  And if someone has

 4 an issue then we can kind of go from there as to what may need

 5 to happen.  But I don't expect that to be a controversial

 6 topic, to be honest with you.

 7             THE COURT:  All right.  What do you think?

 8             MR. PHELAN:  Your Honor, I have some summaries of

 9 Japanese law that I have access to.  And I have a complete

10 book on Japanese bankruptcy law from Hideyuki Sakai, who's a

11 very prominent Japanese practitioner.  It's only one problem,

12 it's also in Japanese.

13             THE COURT:  Oh, well, I don't know Japanese

14 characters or language.

15             MR. PHELAN:  I think we can work this out, Your

16 Honor.

17             THE COURT:  Thanks for that generous offer, though.

18             All right.  Well, meet and confer by April 11th.  And

19 if you need the Court to order something, file a motion and

20 I'll order something.  But I'll assume you all are going to

21 come in with an agreeable process if I haven't heard -- seen a

22 motion.

23             All right, I'll look for your orders.  Thank you.

24             MR. PARHAM:  Thank you, Your Honor.

25             THE CLERK:  All rise.

1          MR. ENGEL:  Thank you, Your Honor.

2      (Whereupon these proceedings were concluded at 3:40 PM)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                         I N D E X

3

4   RULINGS:                            PAGE    LINE

5   Debtor's motion to approve notice      37      14

6   procedures, approved.

7   Motion of the Greene plaintiffs for an    84      19

8   order pursuant to Rule 2004 and the

9   joinder therein by the CoinLab plaintiffs,

10  granted as modified.

11  Mark Karpeles is to appear for deposition  85      19

12  April 17th, 9:30 a.m. central time in

13  Dallas, Texas.

14  Meet-and-confer ordered to occurred by     88      16

15  close of business April 11th.

16

17

18

19

20

21

22

23

24

25

1

2                    C E R T I F I C A T I O N

3

4           I, Clara Rubin, the court approved transcriber, do

5    hereby certify the foregoing is a true and correct transcript

6    from the official electronic sound recording of the

7    proceedings in the above-entitled matter.

8

9

10

11                                          April 3, 2014

12   _____      _____

13   CLARA RUBIN                           DATE

14

15

16

17

18

19

20

21

22

23

24

25

MTGOX CO., LTD., a/k/a MTGOX KK
Case No. 14-31229-SGJ15

April 1, 2014

**[**

**[CAR-pa-lay] (5)**
5:2,4,12;54:1;73:2
**[CAR-pa-less] (2)**
5:3;73:3

**A**

**ability (5)**
14:22;60:21;69:1,
1;82:24
**able (11)**
11:20;32:7;46:6;
48:19;57:25;58:2;
59:7;67:2;76:24;
77:7;87:24
**absence (2)**
27:3;84:15
**absolutely (3)**
43:4;64:7,21
**abundance (1)**
66:5
**accelerator (1)**
63:9
**acceptable (1)**
27:3
**access (2)**
45:6;89:9
**accommodations (1)**
40:18
**accompany (1)**
23:20
**account (4)**
19:1;22:8;42:8;
81:13
**accountant (2)**
55:8;69:13
**accountants (1)**
55:14
**accounting (5)**
12:16,25;14:25;
42:25;55:14
**accounts (7)**
18:24;20:1,2,14;
41:22;45:7,9
**accurate (1)**
76:18
**accused (1)**
45:1
**acknowledges (1)**
22:17
**act (7)**
67:3;68:19,21;
69:1,2;70:8,17
**acted (1)**
19:6
**acting (2)**
55:17;69:3
**action (13)**
26:9,10;32:2,3,7,8;
45:1;52:2,4;79:18,

**19;86:14,14**
**actions (5)**
7:23;36:22;59:8,
21;86:15
**activities (2)**
45:23;68:20
**actual (5)**
29:9;31:17;34:2;
48:19;65:22
**actually (11)**
16:10;23:12;
26:13;27:16;34:23;
35:5;37:14;41:2;
44:14;62:16;66:19
**add (2)**
49:22,24
**added (1)**
38:1
**addition (1)**
65:21
**additional (3)**
19:17,23;21:5
**Additionally (1)**
70:19
**address (5)**
4:2;25:19;71:2;
74:25;80:16
**addresses (2)**
31:12;32:21
**addressing (1)**
4:22
**adequately (2)**
67:13,14
**adjourn (2)**
35:8;86:17
**adjudicated (1)**
36:19
**adjudication (3)**
32:25;33:14;36:19
**administer (1)**
70:7
**administrative (2)**
6:1;23:9
**admissions (1)**
22:2
**adoption (1)**
71:22
**ads (1)**
36:14
**advertising (2)**
32:15,17
**advising (1)**
30:4
**affairs (1)**
70:8
**affects (1)**
66:14
**affirmatively (1)**
63:19
**affirming (1)**
27:1
**afternoon (1)**
3:5,8

**again (21)**
11:13;17:9;18:21;
23:5;25:6,25;26:22;
35:24;36:13;37:15;
39:2,18;48:10;52:3;
54:14;74:22;79:23;
80:9;85:14,22;86:6
**against (3)**
7:23;79:19,21
**ago (4)**
5:14;7:20;42:5;
75:21
**agree (2)**
35:4;71:21
**agreeable (2)**
88:19;89:21
**agreed (1)**
84:13
**agreement (1)**
84:15
**agrees (1)**
76:12
**ahead (4)**
5:17;20:11;49:23;
56:1
**aimed (1)**
43:10
**air (1)**
44:17
**airlines (1)**
84:1
**Alix (1)**
74:5
**allegations (5)**
22:2,2;25:5;62:21,
24
**alleged (2)**
21:3,6
**allegedly (1)**
22:17
**allow (5)**
44:16;46:11;
49:15;80:21;83:3
**allowed (1)**
9:11
**allowing (2)**
86:13,14
**almost (3)**
9:6;23:21;82:5
**alone (1)**
84:1
**along (2)**
24:20;27:7
**alternatively (1)**
54:4
**alternatives (1)**
87:16
**although (4)**
8:18;20:16;45:2;
49:3
**always (6)**
5:3;9:5,8,12;62:6;
78:21

**American (2)**
12:24;84:1
**amounts (1)**
22:3
**animal (1)**
74:7
**announcement (3)**
22:22,22,24
**announcements (1)**
22:23
**announcing (1)**
4:19
**anointed (1)**
60:17
**anymore (1)**
56:5
**apart (4)**
65:22;66:7;81:3,9
**apologies (4)**
52:20;70:21;71:1,
1
**apologize (2)**
34:8;65:17
**apparently (4)**
5:7;12:22;42:20;
47:1
**appear (10)**
4:7;42:7;48:20;
53:3;56:5;62:7,17,
25;74:19;85:20
**appearance (1)**
3:23
**appearances (1)**
3:3
**appeared (1)**
62:17
**appears (6)**
6:9;41:10;56:2;
57:12;59:23;85:13
**application (10)**
7:18;9:19;18:3;
24:7,7,14;27:9,10,
16;31:25
**applies (2)**
79:18;85:2
**apply (5)**
43:8,15;44:15;
46:5,6
**applying (2)**
45:18;46:16
**appoint (2)**
55:5,7
**appointed (7)**
7:24;9:10;21:10;
35:18,19;70:6,13
**appointing (1)**
26:24
**appointment (4)**
27:2;41:4;69:11;
70:11
**appreciate (1)**
45:2
**apprise (1)**

**40:23**
**appropriate (9)**
6:11;7:15;35:15;
36:12;39:16;44:23;
45:3,19;87:5
**approve (3)**
37:14;68:10;69:20
**approved (2)**
67:1;69:17
**approving (1)**
38:24
**approximately (1)**
21:21
**April (13)**
5:15;8:23;34:25;
35:7;71:9;82:4;
83:22;84:8,12,16;
85:20;88:18;89:18
**area (1)**
41:8
**argue (2)**
79:14,15
**argument (8)**
23:15;43:14;48:2,
8,9;49:3;67:11;
79:23
**arguments (2)**
39:24;46:17
**arises (1)**
87:24
**Arizona (1)**
74:7
**arms (1)**
63:16
**around (8)**
22:7;32:6;44:18;
59:12;63:16,18;
82:11;83:17
**arrangements (2)**
14:15;53:20
**articles (3)**
20:16;30:24;42:9
**Asia (1)**
53:5
**aside (1)**
88:5
**aspects (1)**
23:16
**asserting (1)**
41:12
**asset (3)**
41:13;46:24;75:23
**assets (27)**
7:23;8:8,19;17:11,
12;18:1;26:12,15;
41:1,1,7;42:6;43:3;
44:20;46:20;47:17;
48:16;49:6;56:16,
19;57:15;58:8;64:9,
11;70:8;73:23;86:7
**assume (3)**
86:18,24;89:20
**attached (3)**

Min-U-Script®
eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
(1) [CAR-pa-lay] - attached

Case 14-31229-sgj15   Doc 71   Filed 04/04/14   Entered 04/04/14 11:55:56   Desc Main
MTGOX CO., LTD., a/k/a MTGOX KK   Document   Page 94 of 108
Case No. 14-31229-SGJ15

April 1, 2014

28:1;33:3;38:23

**attention (3)**
30:20,23;69:24
**attorney-client (1)**
65:24
**attorneys (2)**
40:11;75:22
**audience (2)**
28:14;29:3
**authority (1)**
64:24
**authorized (2)**
70:6,17
**automatic (5)**
7:22;9:12,13;76:3;
79:17
**automatically (3)**
9:9,20;21:10
**availability (1)**
67:18
**available (5)**
4:11;46:22;58:12;
67:16;78:22
**availed (2)**
52:15;85:14
**avails (1)**
46:9
**avoid (2)**
59:24,25
**avoidable (1)**
51:12
**aware (2)**
19:2;29:24
**away (2)**
59:5;80:11
**awkward (1)**
34:9

**B**

**back (19)**
8:22;9:4;18:6,15,
19;19:22;20:4;26:4;
39:19,21;48:10;
65:14;67:9;68:8;
69:16;72:19;74:20;
77:10;82:2
**background (3)**
23:2;25:13;43:17
**backs (2)**
33:17;39:13
**back-to-back (1)**
53:4
**backup (2)**
17:14,25
**backwards (1)**
80:5
**bad (1)**
80:7
**Baker (5)**
3:6;8:12;69:21,21;
84:17
**balances (1)**

14:24
**band (1)**
73:8
**bank (7)**
18:16,24;19:1;
29:12,14;45:6,9
**bankruptcy (13)**
8:6;33:5;36:23;
37:19;47:20;56:18;
58:24,24;67:20,21;
69:25;84:24;89:10
**bar (1)**
36:9
**base (1)**
31:14
**based (3)**
32:20;73:5;76:15
**basic (1)**
53:13
**basically (11)**
14:9;16:23;26:11;
30:4,19;32:1;51:19;
54:4;60:13;71:25;
86:25
**basis (10)**
51:11;58:3;64:8;
70:6,13,14;72:14;
77:8;81:10;87:17
**become (1)**
88:12
**begin (1)**
3:2
**beginning (3)**
23:5;50:22;68:9
**behalf (6)**
3:6;68:15;71:13;
72:6;75:13;85:15
**behind (1)**
87:1
**beings (1)**
36:3
**belief (1)**
20:15
**benefit (1)**
67:22
**benefits (1)**
67:21
**besides (1)**
36:4
**best (3)**
48:22;77:5;87:16
**beyond (4)**
13:4;48:13,25;
62:22
**big (3)**
42:22;55:15;76:12
**big-picture (1)**
45:24
**binder (1)**
28:16
**bit (4)**
7:20;8:1;35:23;
83:24

**bitcoin (4)**
15:3,24;22:3;
32:19
**bitcoins (13)**
11:24;12:2;21:3,5,
17,18,19,21;32:19;
42:21,21;49:2;75:20
**blessing (1)**
68:16
**block (1)**
83:17
**blog (4)**
30:6,9;31:16;
38:18
**body (5)**
60:14;64:23;70:4,
5,17
**book (1)**
89:10
**both (6)**
14:10;32:8;33:11;
41:22;75:22;84:13
**bottom (2)**
31:13;66:16
**box (3)**
74:1,2,15
**brain (1)**
65:10
**Breskin (1)**
4:8
**brief (2)**
25:20,21
**briefly (3)**
25:19;28:6;74:25
**bring (3)**
59:9;74:9;88:12
**broad (1)**
70:18
**broader (2)**
28:14;29:3
**broken (2)**
53:16;60:4
**bugs (2)**
37:22;38:21
**build (1)**
88:14
**burdens (3)**
67:21,22,25
**burdensome (1)**
60:3
**business (7)**
8:11,20;63:12,15,
19;64:10;84:6;88:18
**busy (1)**
81:18
**buy (1)**
15:4
**buyer (1)**
81:6

**C**

**calendar (1)**

77:17
**call (4)**
6:6;15:22;21:13;
69:24
**calling (1)**
4:9
**calls (1)**
25:6
**came (2)**
73:1;83:11
**can (42)**
9:25;10:15,21;
11:18,20;14:21;
25:13,17;27:6;34:5,
19;36:14;39:7,21;
44:14;45:4;52:11;
53:16;58:18;59:10;
60:12;61:20;62:7,
12;66:23;72:14;
73:9,20;74:25;75:1,
7;77:12,19;81:21;
82:20;83:7;84:4;
85:4;88:14,19;89:4,
15
**capacity (2)**
61:18;62:1
**cars (1)**
63:9
**cart (1)**
53:23
**case (29)**
3:2;5:20;8:4;9:15,
21;10:14;18:20;
21:10;22:19,20;
26:5;30:25;31:1;
34:13,19;37:16;
44:17;51:17;54:14;
58:6;63:21,23;
73:22;74:8;76:4,13;
83:4;85:3;87:19
**cases (5)**
37:8,8;74:4;76:11;
88:24
**cash (8)**
15:19,22;16:6,6;
18:3,4,9,10
**catch (2)**
26:6,20
**catchall (1)**
46:17
**caused (1)**
49:2
**causes (1)**
32:2
**center (3)**
45:22;73:24;86:8
**Central (3)**
79:4;81:23;85:21
**CEO (1)**
85:12
**certainly (12)**
5:19;13:6;17:7;
37:17,21;41:14;

46:14;53:19;58:11;
69:20;71:9;76:18
**certificate (1)**
26:25
**certified (2)**
26:23;53:20
**cetera (2)**
5:24;67:4
**challenge (1)**
57:21
**chance (2)**
35:2;80:8
**change (8)**
54:2,21;57:4,9;
69:23;70:13,15;
79:16
**changed (2)**
32:22;57:10
**changes (1)**
56:3
**Chapter (39)**
21:12,13;23:20;
32:4,25;36:19,20;
37:16;40:10;42:4,11,
12,19;43:9;44:14,15,
19;45:3;46:13;
48:15;49:1;51:3;
55:12;58:5;59:16;
64:5,14,15,18;66:4;
67:18,20,22;68:6;
69:22;73:2,13;
74:15;85:3
**characteristics (1)**
66:9
**characters (2)**
63:7;89:14
**charter- (1)**
42:8
**check (1)**
78:23
**checklist (2)**
45:13;46:8
**Chicago (9)**
3:12;32:8;33:11;
58:2;63:2;64:7,17;
73:21,21
**choose (5)**
54:5,23;64:20;
70:15;72:1
**chooses (2)**
56:24;68:22
**chose (1)**
68:24
**circle (2)**
39:19;74:20
**circumstance (2)**
14:17;81:7
**circumstances (3)**
30:18;51:20;66:24
**circumvent (1)**
58:23
**citizen (1)**
85:17

**civil (5)**
7:18;8:4;9:19;
21:7;27:12

**civil- (1)**
4:25

**claim (4)**
13:11;18:14,20;
79:21

**claimants (1)**
32:6

**claims (6)**
13:14,17;32:7,8,9;
63:10

**clarify (1)**
33:14

**class (3)**
32:3,8;45:1

**class- (1)**
32:6

**class-action (2)**
3:11;63:10

**clear (21)**
7:7;12:4;18:16;
21:11;38:23;41:10;
52:19,21;53:2,12;
54:6;56:14;57:19,
23;63:4,8;68:14;
84:18;85:2,4,22

**Clearly (1)**
57:14

**CLERK (2)**
77:23;89:25

**clever (1)**
45:2

**client (2)**
13:23;73:17

**clients (5)**
6:6;29:9;32:19;
73:15,16

**clients' (1)**
21:19

**client's (1)**
42:13

**cloak (1)**
58:5

**close (1)**
88:18

**closed (1)**
32:21

**Co (1)**
85:12

**co-counsel (1)**
78:10

**Code (11)**
47:20;56:18;
58:24,24;60:12,13;
67:20,21;69:25;
70:12,15

**codes (1)**
31:11

**Code's (1)**
76:4

**CoinLab (16)**

4:2,10;6:24;18:20;
28:18,19;29:8;
38:13;59:5;64:16;
75:6;78:7;79:11;
84:10,14,21

**CoinLab's (1)**
18:23

**coins (1)**
81:5

**colleague (1)**
76:17

**COMI (2)**
46:15;49:8

**coming (7)**
22:16;35:9,10;
52:17;53:18;59:5;
80:7

**commenced (6)**
9:9;13:18;59:9;
64:14,15,18

**commencement (1)**
31:1

**commencing (1)**
26:24

**comment (3)**
37:14;52:15;82:25

**commentary (1)**
87:25

**comments (7)**
19:18;25:15,20;
34:5;39:1;52:15;
80:13

**companies (1)**
42:9

**companies' (1)**
17:24

**Company (34)**
3:2;5:22;8:18;9:3,
10;10:15,17,21;
11:23;12:1,3,8;
13:25;15:6,14,20;
18:12;23:7;28:21,
22;43:2;51:9;63:8,
15,20;64:2,5,6,9;
71:13,24;81:6,19,23

**company's (4)**
12:6;71:14;81:24;
86:6

**compel (4)**
40:7;59:6;61:19;
85:24

**competency (1)**
66:8

**complaining (1)**
67:7

**complete (3)**
76:18;81:15;89:9

**completely (4)**
22:11;54:17;
64:19;71:7

**complexity (1)**
8:25

**complicated (1)**

87:10

**comprehend (1)**
22:12

**computer (3)**
12:4;84:4,5

**concept (2)**
14:2;67:19

**concern (1)**
83:3

**concluded (2)**
11:14;90:2

**concurrent (1)**
37:16

**condition (1)**
67:18

**conditioning (1)**
86:11

**conditions (3)**
50:4;67:12;73:23

**conducting (3)**
11:24,25;12:15

**confer (2)**
88:17;89:18

**conference (7)**
4:23;5:17,18,25;
7:10,16;35:14

**conflict (4)**
43:1;51:15,22;
67:9

**conflicts (2)**
51:4,6

**confusion (2)**
4:22;51:25

**consent (4)**
8:13;68:10,13;
80:6

**consider (6)**
6:20;34:16;62:24;
74:24;75:7;86:1

**considerations (1)**
48:15

**considered (1)**
51:15

**considering (1)**
37:20

**considers (1)**
9:24

**consisted (1)**
41:2

**consonant (2)**
36:24;37:2

**constitute (1)**
45:20

**constitutes (2)**
45:18;46:16

**constrained (1)**
69:2

**constructive (4)**
26:12,16;64:8,17

**constructively (1)**
39:13

**contain (3)**
24:17;44:20;47:2

**contained (1)**
25:11

**contemplate (3)**
33:9,13;61:1

**contemplates (2)**
70:12,15

**contemplating (1)**
33:15

**contend (1)**
36:20

**contends (1)**
32:16

**contest (3)**
44:14,22;60:24

**contested (6)**
5:23;6:5,10;44:16;
46:6;76:12

**context (1)**
60:20

**continuance (2)**
5:16;34:24

**continue (4)**
5:15;35:23;75:3;
87:2

**continued (1)**
8:24

**continues (1)**
17:11

**contract (1)**
14:16

**contractual (1)**
14:15

**contrary (1)**
45:25

**control (1)**
8:19

**controlled (1)**
45:6

**controls (1)**
51:10

**controversial (1)**
89:5

**converted (1)**
21:12

**cooperating (1)**
22:24

**copied (1)**
25:10

**copies (3)**
12:3;33:6,16

**copy (5)**
24:20;26:23;38:8;
39:3,12

**corporate (1)**
72:9

**corporation (2)**
27:18;61:18

**corporation's (1)**
71:25

**correspondence (1)**
33:8

**cost (2)**
30:17;38:7

**counsel (21)**
3:3,10;4:9,15;
13:4;28:18,20;33:8;
34:6;37:15;41:17;
42:12;62:16,16,20;
82:19;84:14,14,15;
88:8,24

**counsel's (1)**
35:4

**counting (1)**
68:3

**country (3)**
32:6;37:12;61:14

**couple (8)**
6:5;10:16;15:17;
25:19;30:17;55:9;
75:20,20

**course (1)**
8:11

**COURT (337)**
3:1,8,13,18,20;4:1,
2,3,7,11,13,24;5:6,
10,12,14;6:20;7:12,
14,18,21,23;8:14,15,
22;9:4,8,14,17,22,24,
25;10:5,6,8,11;11:1,
6,8,11,12;12:10,13,
17;13:2,5,7,19,22;
14:4,11;15:8,12,14,
17,19,22;16:1,8,14,
16,19,21;17:2,4,9,16,
22,25;18:7,9,11,24;
19:3,7,11,13,19,21,
24,25;20:4,8,11,19,
23,25;21:8,14,23,25;
22:6,11;23:4,9,12,
15,22,24;24:4,9,11,
15;25:16,18,21,24;
26:2,7,22;27:1,8,11,
23;28:2,4,8,15,20,22,
24;29:1,5,7,11,16,18,
20,23;30:1,9,11;
31:4,7,15,17,20,22;
32:13,24;33:14,20,
22,25;34:14,18,21;
35:9,11,13,22;36:3,
17,21,23,25;37:4,6,
10,13,23;38:6,8,10,
12,15,25;57:9,7,10,15;
40:3,5,6,14,23,23,25;
41:1,16;42:1,2;43:5,
14,20,24;44:1,4,6,10,
12;45:12;46:10;
47:4,6,9,11,13,17,23,
25;48:3,5,7,14;49:9,
21;50:1,4,6,9,13,15,
23;51:23;52:10,12,
16;53:1,13,18;54:9,
12,17,21,25;55:4,16,
18,20,23,25;56:12,
16,23,25;57:2,4,7,9,
18,24;58:12,16,18,
21;59:2,11,13,18;

60:3,7,9,16,18,24;
61:4,10,19;62:2,5,
11,14;63:2,21,23,25;
64:3,25;65:3,6,19;
68:8,18;69:5,7,18;
70:2,24;71:8,15;
72:16,19,20,23;73:1;
74:3,12,18;75:1,16,
18,19;76:17;77:10,
14,21,24;78:3,5,7,11,
16,19,23;79:1,4,7;
80:4,15;81:14,16;
82:23;83:3,6,8,10,
23;84:7,12;85:9,11,
15,15;86:4,6,21;
87:5,20;88:2,10,16,
20;89:2,7,13,17,19
**COURTCALL (2)**
78:13,14
**courtroom (4)**
3:4,13;4:15;78:24
**courts (1)**
33:5
**Court's (5)**
21:9;33:12;37:20;
49:15;69:24
**covered (2)**
32:22,23
**created (1)**
41:15
**Credit (3)**
20:2,13;66:22
**creditor (1)**
7:23
**creditors (18)**
29:7;42:6;44:18,
20;48:17,20;49:6;
50:25;51:16;57:16;
59:14;63:6;64:7;
67:8,15,17;73:24;
86:7
**Crimes (1)**
20:21
**critical (4)**
11:18;51:2;53:5;
81:24
**cross- (1)**
52:24
**cross-border (1)**
34:11
**cross-examination (1)**
53:9
**cross-examining (1)**
68:4
**currency (2)**
9:3;49:3
**current (1)**
48:18
**currently (1)**
49:7
**customer (6)**
16:6;18:22;22:8;
31:14;41:2,17

**customers (10)**
14:23;29:9,15;
30:2,4,14,19;31:4;
38:17;63:14
**cut (1)**
43:5
**cutting (1)**
69:3

**D**

**Dallas (12)**
17:12,15,20;18:1;
33:11;41:8;44:4,5;
63:25;84:1,16;85:21
**data (8)**
41:13,14;44:22;
46:20,21,22;47:3;
75:24
**date (16)**
11:13,17;34:3,4;
35:23;36:10;42:16;
56:2;71:8;74:20;
78:1;82:11,12,21;
84:11,13
**dates (2)**
83:10;88:15
**David (1)**
3:5
**day (8)**
22:9,11;26:13,13,
14;28:3;41:5;80:25
**days (13)**
21:17;26:18;
33:17;35:2;37:3;
39:5,13;42:19;
75:21;77:19,25;
79:9;88:17
**deadline (7)**
31:20;33:17;39:5,
12,13;86:25;87:3
**deal (5)**
42:22;52:11;
74:11;76:12;87:11
**dealing (1)**
9:2
**debate (1)**
89:1
**debating (2)**
66:10;88:8
**debt (1)**
29:14
**debtor (14)**
6:2;8:7;14:8;39:8;
41:10,12;51:1;54:5;
56:22;65:12;71:11,
11;72:7;87:23
**debtor-in-possession (2)**
8:8;14:1
**debtors (1)**
81:7
**debtor's (6)**
33:8;50:20;68:13;

70:8;71:25;87:11
**decides (1)**
72:6
**decision (4)**
26:24;44:17;
55:20,24
**decision's (2)**
8:3;13:13
**declarant (2)**
65:22;66:1
**declaration (10)**
17:18;28:1;41:4;
73:2,6;74:13;75:21,
21;76:24;85:10
**declarations (14)**
51:20,22;66:2,3,
11,12,13;68:3;71:18,
21,23;72:18;88:24;
89:3
**defend (2)**
51:19;66:2
**defendant (1)**
58:1
**defense (1)**
63:22
**defer (1)**
77:2
**defined (1)**
47:19
**definite (1)**
55:9
**definitely (1)**
22:1
**definition (2)**
60:13;70:1
**degrees (1)**
10:13
**Delaware (2)**
33:5;37:23
**delay (5)**
34:25;67:8;81:7;
83:15;88:13
**delayed (1)**
23:18
**Deloitte (1)**
74:5
**delve (1)**
48:8
**demonstrating (1)**
40:20
**Department (5)**
18:6,18;20:6;
78:21;79:21
**depend (2)**
10:9,16
**depending (5)**
8:13;11:2;75:5;
77:20;79:14
**depo (1)**
58:14
**depose (5)**
43:6;45:9;59:14;
72:8,14

**deposed (2)**
52:22;53:17
**deposing (1)**
68:3
**deposit (6)**
18:4,13,14,16,16;
19:9
**deposition (46)**
6:8,12;16:22,25;
40:7;43:10;44:8;
46:5,7,11,18;48:11;
49:15;52:1,3,7;53:4,
8,24;56:2;57:13;
58:4,9,12;60:4;61:7,
8,15,16,20;62:8;
72:1,5,11,21;73:11;
75:2,6;77:4;82:6;
83:21;84:23;85:20,
21,23;88:5
**depositions (2)**
16:24;61:1
**deposits (4)**
18:3,4;41:2,17
**deputy (1)**
78:24
**described (1)**
24:18
**designate (3)**
71:12;72:8,17
**designated (1)**
72:3
**detailed (1)**
85:9
**determine (3)**
14:20;44:21;73:12
**develop (1)**
37:15
**difference (1)**
22:7
**different (10)**
14:17;31:11;
35:18;40:24;41:19;
47:25;63:11;64:20;
66:20;74:7
**differential (1)**
21:20
**differently (1)**
34:6
**difficult (1)**
16:24
**digest (1)**
79:9
**direct (1)**
67:11
**directly (1)**
49:12
**director (6)**
27:18;56:9,10,10;
61:18;85:12
**disable (1)**
69:3
**disadvantage (1)**
42:18

**disagree (2)**
69:9;81:22
**disconnected (1)**
78:15
**discovered (1)**
42:20
**discovery (27)**
6:11;7:1;16:11,21;
22:14;23:3,17;25:14,
25;39:18,23;45:1;
49:16;50:17;59:21;
60:20;61:1;65:4;
67:17;70:20,21;
77:3;82:3;84:24;
85:5;86:13,14
**discrepancy (1)**
41:25
**discretion (1)**
64:22
**discuss (1)**
88:7
**discussed (5)**
17:10,11;24:21;
25:6;85:1
**discussion (4)**
16:11;18:17;
35:23;67:10
**discussions (2)**
23:3;31:25
**dismissal (1)**
10:3
**dispute (3)**
49:20;66:25;67:1
**disputed (1)**
22:16
**disputes (1)**
25:14
**District (3)**
4:10;34:13;37:23
**documents (3)**
23:1;45:17;71:6
**dollars (8)**
16:4;18:21;21:5;
36:12,25;37:2;
41:16;42:24
**done (9)**
24:5;37:25;42:15;
73:14;74:4;76:11;
77:5,6;88:23
**doubt (1)**
65:24
**down (4)**
14:9;38:7,7;76:17
**drafted (1)**
76:4
**dress (1)**
57:20
**drops (1)**
81:4
**dual (1)**
14:1
**dude (1)**
84:3

**due (5)**
8:24,25;11:9;42:4;
82:4
**During (4)**
8:1,3,6,17
**duty (1)**
80:24
**Dwolla (1)**
41:20
**D-W-O-L-L-A (1)**
41:20
**dying (2)**
49:22;65:15

## E

**earlier (4)**
67:10,12;70:5;
87:18
**early (1)**
84:11
**easier (1)**
38:4
**easy (1)**
67:23
**ECF (3)**
33:12,15;39:7
**effect (2)**
31:1;69:3
**effective (3)**
30:18;31:2;54:3
**effectively (2)**
7:22;54:4
**efficient (2)**
40:12;58:14
**effort (2)**
14:20;26:11
**eight (2)**
65:12;85:14
**eighty- (2)**
65:11;85:13
**either (4)**
9:11;10:1;45:20;
47:19
**elaborating (1)**
20:8
**electronic (3)**
30:20;39:15,15
**electronically (1)**
39:8
**eleven (1)**
79:8
**else (13)**
3:13;4:5,7,14;
33:20;36:1;39:19;
54:25;56:4;68:2;
69:16;74:21;77:12
**e-mail (8)**
25:7;28:13;30:4;
31:16;32:21;33:12,
16;39:1
**e-mails (1)**
38:17

**emergency (2)**
41:7;64:8
**employees (7)**
14:7,13,13,17;
48:17;51:10;65:9
**end (3)**
44:9;59:11;77:10
**Enforcement (1)**
20:22
**engage (2)**
8:8;49:17
**engaged (1)**
80:23
**ENGEL (46)**
3:24,24;4:6;33:21,
23,23;34:1,19;39:20;
50:8,9,10,14,18;
51:24;54:13,16;57:5,
6,22;62:4,6;64:13;
65:15,17,20;68:9,12,
19;69:9;70:23;
73:22;78:9,12,17;
79:3,6;80:13,18;
84:10,10;86:20;87:7,
8;88:11;90:1
**Engel's (2)**
70:19;73:17
**English (6)**
22:23;26:25;
27:24;53:16,17;60:5
**enough (1)**
48:12
**entail (1)**
45:21
**entered (1)**
7:21
**entities (1)**
12:23
**entitled (6)**
65:4,6,10;73:10,
23;74:16
**entity (2)**
19:5;21:12
**envision (1)**
5:22
**especially (1)**
36:13
**essential (1)**
51:20
**essentially (10)**
10:18,23;14:13;
19:5;26:14;38:21;
59:20;73:16;76:8,15
**established (2)**
43:10;63:11
**estate (1)**
68:15
**estimated (1)**
31:10
**estimates (1)**
5:23
**et (2)**
5:24;67:4

**Europe (1)**
55:13
**evaluating (2)**
56:17;64:20
**even (10)**
35:24;37:16;41:9;
42:15;44:1,16;
50:20;54:18;75:21;
87:23
**events (1)**
19:23
**everybody (2)**
76:12;81:22
**everyone (6)**
7:7;39:25;43:18;
49:19;77:12;85:25
**evidence (7)**
27:4;66:3,6,7;
72:17,19
**exactly (6)**
7:15;8:13;15:1;
49:2;61:25;75:25
**exam (1)**
43:7
**examination (7)**
6:11;8:21;12:21;
49:13,18;50:3;52:25
**examine (3)**
9:1;47:6,13
**examiner (25)**
7:25;8:20,21;
11:25;21:9,11;53:6;
54:19;66:21,25;
67:2;68:9,14,20;
69:2,11,12,17,17,20;
77:6;79:8;80:10,20;
81:13
**examiner's (3)**
34:4,17;35:1
**example (8)**
8:11;12:24;23:18;
34:13;35:20;38:1;
55:2,11
**examples (1)**
55:10
**exception (1)**
73:17
**exchange (9)**
10:19,24;14:22;
15:2,3,3;48:21;
81:21;89:3
**exclusive (2)**
40:15;45:6
**excuse (5)**
27:21;30:22;34:3;
69:12;88:12
**exhibit (1)**
33:4
**exhibits (11)**
23:25;24:7,14,16,
24;27:14,16,17;42:4,
17;44:19
**exist (1)**

11:3
**existence (1)**
27:1
**expand (1)**
65:25
**expect (2)**
52:2;89:5
**expectations (1)**
63:5
**expedited (2)**
6:16;74:24
**expedition (1)**
86:12
**expenses (1)**
40:17
**expensive (1)**
87:10
**experience (2)**
34:10;81:2
**expert (4)**
87:13,20,21;88:21
**explain (3)**
34:19;62:18;71:15
**explained (2)**
14:1,5
**expressions (1)**
10:22
**extent (5)**
30:21,22;41:12;
53:17,19
**extremely (2)**
73:5;81:18

## F

**faced (1)**
62:23
**fact (14)**
7:13;12:2;13:12;
17:18;32:23;34:8;
38:1;42:17;58:25;
59:6;69:9;70:14;
85:8,20
**factors (2)**
46:15;49:8
**facts (4)**
40:10,16,23;66:5
**factual (3)**
65:23;66:7,10
**failure (2)**
20:17,19
**fair (3)**
46:16;47:18;48:12
**fairly (1)**
12:22
**fall (2)**
46:15,18
**falls (1)**
46:13
**familiar (1)**
20:4
**far (5)**
5:23;17:9;40:12;

**51:11;84:2**
**Fargo (2)**
20:2;41:21
**farther (1)**
35:24
**fashion (1)**
15:7
**February (6)**
7:19;20:18;21:1,7;
26:9,10
**federal (1)**
32:8
**feel (2)**
13:24;80:9
**felt (1)**
7:15
**few (5)**
16:8;41:6;44:11;
66:7;77:19
**fiat (4)**
15:22;18:9,10;
49:3
**fight (1)**
48:11
**figure (1)**
6:21
**file (7)**
26:19,19;39:7;
72:18;76:4;88:20;
89:19
**filed (30)**
4:21;6:8,25;7:19;
17:17;21:8,18;22:19,
20;24:7,14;26:5,9,
10;27:12;31:17,25;
32:3;38:4;42:12,14,
16;50:16;59:4;
63:21,23;71:17,21;
73:1;85:9
**files (1)**
58:25
**filing (9)**
7:20;9:19;19:23;
23:20;26:14;32:4;
42:4,11,19
**filling (1)**
87:25
**final (3)**
53:6;70:14;74:10
**finally (1)**
25:7
**financial (8)**
12:18;20:21;
24:17;30:16;32:18;
36:8;37:5;42:7
**FinCEN (2)**
20:18,24
**find (5)**
10:21;73:23;
74:14,14;81:20
**finds (1)**
21:16
**fine (3)**

37:21;78:2;88:11

**firm (13)**
12:16;33:11;55:14

**firms (1)**
12:25

**first (13)**
3:4;4:22;5:20;
7:16;14:12;26:2;
28:3;40:8,22;52:3,
25;72:11;83:12

**first- (1)**
26:13

**fishing (2)**
44:25;86:12

**Five (5)**
18:7,8,21;19:3;
41:16

**fix (3)**
10:18;11:18;14:21

**flip (1)**
63:17

**floating (1)**
86:25

**fluent (1)**
53:17

**fly (5)**
40:12;45:11;
49:19;84:2,2

**focus (4)**
35:25;48:16;49:5;
71:19

**focused (1)**
49:8

**Foerster (2)**
3:25;33:23

**folks (3)**
31:2,13;66:6

**follow (6)**
12:11;27:7;34:16;
35:6,7,21

**following (1)**
26:13

**foot (1)**
63:4

**force (1)**
49:19

**foreign (70)**
5:1;26:24,25;27:1,
1,2,17;40:19;41:4,
25;43:22;45:19,20,
21;46:16;47:18,19;
48:18;49:11,13;
52:22,23;53:10,24,
25;54:2,5,22,24;
55:17;56:2,4,18,21,
21;58:15,25;59:1;
60:11,13;61:11,23;
63:3;64:21,24;
65:21;66:24;67:15,
24;68:11,15,21,25;
69:12,14,23;70:1,3,
6,9,16;71:17;73:8,
18;74:6;76:22;

85:18;87:9,17;88:24

**forensic (3)**
12:14,20,21

**forgot (1)**
54:17

**form (9)**
6:3;32:15;33:2,3;
35:25;37:14;38:22,
23;45:14

**forthright (1)**
43:22

**forward (10)**
9:11;10:2;12:5;
37:16;58:11;71:4,
12;72:22;79:19;
82:13

**found (4)**
21:22;22:15;
75:20;81:5

**four (1)**
55:15

**frame (2)**
9:8;48:9

**Francisco (1)**
3:25

**frankly (9)**
8:25;17:1;27:20;
31:1;35:15;66:14;
82:1,5,11

**free (1)**
77:24

**freeze (1)**
26:12

**French (4)**
5:4,6,8;53:15

**frequented (1)**
30:7

**Friday (1)**
77:21

**friend (1)**
50:19

**front (3)**
45:13;74:12;87:1

**frustrated (1)**
59:7

**full (2)**
42:14;85:16

**full-fledged (1)**
25:24

**fully (1)**
47:6

**fun (1)**
84:2

**fundamental (1)**
68:5

**funds (1)**
69:4

**further (1)**
37:13

**future (3)**
10:20;13:24;73:10

## G

**game (1)**
74:16

**games (1)**
59:14

**game's (1)**
83:15

**gap (2)**
9:6;77:18

**general (2)**
10:9;86:7

**generally (2)**
8:13;67:20

**generous (1)**
89:17

**germane (7)**
34:21;46:7;58:19;
85:5;86:8,10,13

**gets (3)**
23:10;75:13;76:1

**given (5)**
13:16;16:4;40:14;
66:22;82:21

**gives (2)**
79:8;83:24

**giving (2)**
43:17;88:6

**gleaned (1)**
52:14

**goal (1)**
48:13

**God (1)**
46:10

**goes (6)**
37:16;48:25;51:6;
70:20;76:14,19

**Good (10)**
3:5,8;7:14;38:25;
73:15;78:5,7,20;
80:7;88:1

**gotcha (4)**
48:5,7;50:6;51:23

**Gox (3)**
73:1,4;85:13

**grant (2)**
40:6;50:23

**granted (3)**
5:16;73:4;76:13

**granting (2)**
84:19,22

**gravitating (1)**
36:12

**Greene (17)**
6:7,7,15,19,25;7:5;
26:9,11;28:17;
38:12;39:24;40:4;
59:4;71:5;79:10;
84:14,20

**guess (25)**
10:3;11:3;12:13;
13:24;14:6;15:15,

22;16:5,16;19:15;
34:21;45:21,24,24;
46:2;54:13;55:25;
57:10;73:21;75:1;
79:20;81:1;84:18,
19;87:4

**guy (5)**
57:12;60:4;65:10;
74:9;76:22

**guy's (1)**
46:7

## H

**hac (1)**
3:25

**hacking (1)**
12:7

**Hale (3)**
17:10;41:6;79:16

**Hale's (1)**
6:17

**half (1)**
82:9

**hall (1)**
76:17

**happen (11)**
13:10;36:22;54:8,
18;65:2,2;70:14;
71:23;72:15;81:18;
89:5

**happened (5)**
11:19,23,25;
14:20;20:9

**happening (1)**
67:7

**happens (6)**
35:6,16,17;75:2;
77:20;79:15

**happy (3)**
38:22;49:17;57:24

**hard (3)**
31:10;38:8;39:3

**hazard (1)**
16:5

**head (1)**
22:6

**heading (1)**
75:10

**hear (16)**
4:18;6:18;7:15;
34:2,7;39:24;50:15;
52:13;57:7,8;65:15,
16;66:19;75:6;79:3;
80:13

**heard (10)**
12:19,21;31:5,6,
23;34:14;41:3;
50:19;51:9;89:21

**hearing (51)**
4:20,24;5:15,20,
23;6:4,9,16,18,22;
7:3,3,8;23:9;23:

11:8;17:10;24:25;
25:2;30:5;31:17;
34:3,16;35:2,5,5,7,
17,20;36:15;37:19;
39:5,14;44:8;51:3;
58:7;61:22;64:2,4,6;
72:16;74:10,23,24;
75:3,8;77:14;79:12;
82:15;86:4;87:2,3

**hearings (1)**
26:14

**hears (1)**
86:23

**heck (1)**
79:17

**heck's (1)**
65:7

**held (2)**
5:17;31:18

**heralded (1)**
46:23

**hey (2)**
74:11;84:3

**Hideyuki (1)**
89:10

**high (2)**
5:6,8

**himself (9)**
43:2;46:9;51:19;
52:16;65:12;68:24;
85:8,11,14

**hire (1)**
69:13

**hired (2)**
12:16;82:19

**hiring (1)**
69:21

**hold (2)**
38:5,7

**holding (1)**
85:11

**holdings (2)**
42:8;49:7

**Homeland (6)**
18:6,15,18;20:7;
41:18;79:21

**honest (3)**
40:19;64:19;89:6

**honesty (1)**
40:21

**Honor (93)**
3:5,16,24;4:6;
19:18,22;24:2,6;
25:17;28:11;31:24;
33:21;34:9,15;
36:16;40:1,16,17,24;
41:5,19;42:6,19;
43:16;44:11;45:5;
46:14;47:16,24;
48:24;49:11,25;50:8,
10;51:24;52:19;
53:22;54:15;55:1,
10;56:7,14;57:5,20;

58:3,10,19,23;59:12;
60:9,12;61:3;62:4,9,
18,21,22;63:6,20;
64:19;65:18;69:8;
70:5,10,19;71:2,3;
72:10,25;74:17;
77:16;78:2,6,10,17;
79:3;80:3,14,18;
83:9;84:9;86:18,20,
24;87:8,15;88:11,15,
23;89:8,16,24;90:1
**hope (2)**
78:23;85:23
**hopeful (1)**
12:6
**hopefully (3)**
7:7;11:14;22:11
**horse (1)**
53:23
**hours (4)**
6:25;41:6;73:5;
75:14
**housekeeping (1)**
86:16
**human (1)**
36:3
**hump (1)**
83:19
**hundred (2)**
65:11;75:20
**hurried (1)**
26:17

## I

**idea (6)**
16:25;45:11;
66:23;73:14,15;88:1
**identified (1)**
72:6
**identify (1)**
72:13
**ie (1)**
45:18
**Illinois (4)**
32:9;59:21;79:18;
86:13
**impatience (1)**
65:17
**important (4)**
24:16;49:18;
66:21;80:23
**impose (1)**
64:8
**imposed (1)**
26:16
**improper (4)**
71:12,16,19;72:7
**Inc (1)**
54:16
**incident (1)**
15:7
**inclined (2)**

46:9;49:15
**including (4)**
50:25;51:3;69:3;
70:5
**incorporation (1)**
42:10
**incorrect (1)**
24:2
**increments (1)**
22:18
**indicate (1)**
20:16
**indirect (1)**
85:13
**individual (18)**
48:4;55:9;58:3,12;
61:7,13,14,17,17,17,
24;62:1,20,23,25;
71:13;72:8,14
**individually (1)**
20:13
**individuals (3)**
58:2;63:13;72:2
**industry (2)**
63:12,16
**inexpensive (1)**
87:17
**infinitely (1)**
57:23
**inform (2)**
35:17;87:14
**information (27)**
12:4;17:13,14;
20:15;24:17;25:1,3,
10;27:15;41:13,15,
24;42:10;44:13,16,
20,22,24;46:19,25;
48:22;57:15;65:9;
73:11,20;82:9,16
**informed (1)**
41:16
**initially (1)**
8:22
**injunction (1)**
76:9
**inquiry (2)**
49:5;51:5
**insisting (1)**
72:21
**insolvency (2)**
34:10;55:13
**instance (2)**
51:8;87:17
**instead (2)**
18:23;77:11
**intent (1)**
69:13
**interest (7)**
10:22;45:22;51:4,
6;60:22;73:24;86:8
**interested (2)**
34:20;50:25
**interesting (1)**

88:4
**interests (1)**
50:25
**interim (4)**
10:18;70:6,11,13
**interrogatories (3)**
71:5;82:7;83:16
**interruption (1)**
78:13
**interviewed (1)**
12:20
**into (18)**
4:16;6:14;8:4;
10:12,13;11:25;24:9,
11,22;25:24;45:22;
46:18;48:9;49:1;
51:5;69:19;82:21;
88:14
**intro (1)**
23:5
**investi (1)**
12:6
**investigate (1)**
12:2
**investigating (5)**
11:23;43:2;51:19;
81:9,12
**investigation (4)**
11:25;12:14,16;
80:22
**investigations (4)**
11:22;13:9;14:5;
81:12
**invoices (2)**
17:19;25:9
**involuntary (1)**
9:6
**involved (1)**
51:14
**issue (26)**
4:25;10:20;11:5;
31:23;33:1,2;34:1;
39:4,9;45:25;50:22,
23;51:2;59:19,20;
61:8,16,20;65:3;
66:17;68:17;71:10;
72:11;82:21;86:10;
89:4
**issued (3)**
71:5;72:5;85:6
**issues (19)**
5:23;6:10,12;9:24;
10:17,18,20;25:6,13;
32:12,14,23;33:18;
34:11;51:22;52:11;
59:24;67:9;88:25
**issue's (1)**
10:15
**items (1)**
48:25

## J

88:4

**Japan (16)**
11:16;13:11,18;
16:24;17:3,7;18:23;
23:6;26:10;35:19;
42:7;56:8;63:11,19;
79:8;85:17
**Japanese (46)**
4:25;5:21;9:9;
21:3,7,16;22:24,25;
23:19;34:4,5,10,14;
36:11;38:15;39:22;
40:25;41:1,16;42:1;
45:19;56:10;63:7,7,
15,20;64:2,5,6;
66:19,22,25;68:20;
69:19;80:19,23;83:3,
6;87:12;88:1,25;
89:9,10,11,12,13
**John (1)**
3:6
**Johnson (1)**
4:9
**join (1)**
84:11
**joinder (4)**
50:16;57:22,24;
84:21
**joinders (2)**
6:25;7:3
**Journal (5)**
30:15;32:18;36:7,
14;37:1
**Judge (15)**
6:17;17:10;34:12;
40:6;41:6,14,24;
42:23;43:13,17;
48:12;54:14;78:4;
79:16;87:18
**judging (1)**
81:1
**juncture (3)**
43:8;46:5;85:18
**jurisdiction (6)**
32:12;51:11;59:2,
8,25;63:2
**Justice (1)**
78:21

## K

**Karpeles (53)**
6:8;16:11;17:6,18;
20:13,17;22:17;40:9,
13,18,22,24;41:16;
42:20;43:1;45:5,18;
48:18;51:5,14;52:1;
54:1;55:4,21;57:14,
25;58:2;59:6,8;
60:10;66:1,11,15;
67:23;68:11,24;
71:11;72:21;73:8;
74:13;75:13;76:22;
80:21,25;81:3,3,4,

10,17,22;82:19;
84:23;85:7
**Karpeles' (4)**
28:1;40:7;41:22;
80:6
**keep (2)**
65:20;77:7
**key (1)**
40:23
**kicking (1)**
77:7
**kind (22)**
8:10;13:3,10;14:1;
23:5;30:3;31:13;
42:22;46:4;47:18;
53:23;68:17;71:3;
75:10,24;76:12,21;
77:3,18;83:11;89:2,4
**kinds (5)**
10:19;51:12;81:9
**Kitei (1)**
3:11
**KK (1)**
85:13
**knowing (1)**
7:16
**knowledge (10)**
24:1;40:15,16;
56:6,11,15,19;58:8;
65:7,8
**known (1)**
85:13
**knows (2)**
7:18;89:2
**Koyabashi (1)**
7:25

## L

**lack (1)**
40:9
**lacking (1)**
42:9
**lagged (1)**
14:25
**LAMBERT (41)**
3:16,16,19,20;
19:16,17,20,22,25;
20:6,10,12,21,24;
21:1,15,24;22:5,10,
13;23:8,11,14,16,23,
25;24:3,16;31:24;
36:16,24;37:2,5,7,
11,22;39:1,4,9,11;
78:21
**landlords (1)**
29:20
**language (3)**
53:14,16;89:14
**Larry (4)**
3:24;33:23;57:6;
84:10
**last (9)**

Case 14-31229-sgj15 Doc 71 Filed 04/04/14 Entered 04/04/14 11:55:56 Desc Main
MTGOX CO., LTD., a/k/a MTGOX KK Document Page 100 of 108
Case No. 14-31229-SGJ15

April 1, 2014

6:5,15,25;8:23;
12:19,20;13:1;41:8;
72:24
**Late (3)**
8:23;81:25;82:10
**later (9)**
13:12;16:11;
29:22;41:6;66:18;
68:1;75:9;82:3;
88:13
**Laura (1)**
77:22
**law (9)**
33:11;69:19;87:9,
12,17;88:1,25;89:9,
10
**lawyer (2)**
55:8;69:14
**lawyers (4)**
43:8;65:23;66:8;
67:3
**lawyers' (1)**
66:4
**leading (3)**
11:17;19:23;53:5
**leads (1)**
13:10
**leaning (1)**
52:14
**learned (1)**
82:19
**lease (1)**
41:11
**least (6)**
6:15;8:2;10:15;
17:24;48:20;51:15
**legal (3)**
30:15,25;31:3
**legitimate (1)**
81:10
**lenders (3)**
29:12,13,15
**lengthy (1)**
77:18
**less (4)**
40:12;73:5;75:14;
76:16
**less-than-established (1)**
63:15
**lets (1)**
59:20
**level (3)**
14:7,8;51:3
**life (2)**
67:23;81:24
**likely (1)**
30:13
**limited (3)**
12:22;29:2;61:4
**line (3)**
26:4;31:13;46:23
**lines (1)**
38:5

**link (2)**
53:8,18
**liquidation (5)**
8:6;9:12;10:3;
55:13;70:7
**liquidation-type (1)**
21:12
**Lisa (1)**
3:16
**list (6)**
28:12,17;42:5,6,8;
48:24
**listen-only (1)**
3:22
**literate (1)**
84:4
**litigation (4)**
4:10,12;64:16,17
**little (7)**
7:20;18:21;66:19;
75:11;76:10;83:24;
84:4
**live (4)**
52:24;53:8;58:14,
16
**local (1)**
3:10
**located (2)**
64:9,11
**location (1)**
25:8
**locations (1)**
25:10
**log (1)**
14:23
**long (2)**
24:23;26:19
**longer (2)**
9:16;64:16
**look (8)**
9:10;26:4;49:22;
60:18;76:10;79:16;
83:17;89:23
**looked (3)**
11:3;12:24;83:25
**looking (9)**
10:7,21;12:19;
13:9;45:22;46:19;
60:19;74:6;78:1
**looms (1)**
11:16
**loss (1)**
49:2
**lost (1)**
70:21
**lot (15)**
4:21;14:19;27:15;
30:19;37:8,8;54:9;
63:7;64:16;65:9;
76:11;79:17;82:8;
84:4;89:1
**lousy (1)**
73:14

**Ltd (2)**
3:2;85:12
**lying (1)**
74:14

**M**

**mail (6)**
28:13,13;33:8,10;
39:2,12
**mailing (1)**
33:16
**main (13)**
17:7;40:8,25;41:1,
7;45:20,22;46:24;
51:16;66:10;73:24;
75:23;86:8
**major (2)**
36:10;49:5
**makes (3)**
38:4;56:3;77:3
**making (1)**
15:14
**management (1)**
17:5
**manager (2)**
17:7,7
**manifestly (1)**
45:25
**manner (4)**
6:3;8:12;30:13;
36:4
**many (6)**
7:17;31:4;32:19;
45:7;51:15;66:14
**March (10)**
8:22;21:15;22:19,
21;34:3,25;35:7;
42:14;75:16,17
**Mark (5)**
17:18;20:12;45:5;
71:11;84:23
**Massachusetts (3)**
25:5;46:25;47:2
**massive (1)**
22:3
**matter (5)**
6:2,17;18:17;
23:10;46:6
**matters (7)**
6:6;7:3;8:25;52:6;
58:10;59:11;86:16
**may (108)**
3:23;4:21;5:4,11,
13,16,22;6:4,9,13,21,
23;8:14,24;9:15;
11:6,8,9,11,16,17;
13:10,22;15:1;16:6,
9;19:25;31:18;33:9;
34:3,13,25;35:1,6,
16,18,18,23;36:1,1,
19;37:17;39:19;
45:13;46:8;50:23,23,

24;54:3,5;56:15;
57:4,5,20;62:17,17;
65:1,2;67:12;68:23;
69:17,17;70:14,14;
71:22,23;72:15;
73:13,14;74:20;75:4,
4,4,9,12;77:5,6,11,
13,15,20,21,22,25;
78:1;79:1,4,9,11,13,
13,15,24,25;80:7,7;
82:11,21,25;83:5;
85:17;86:1,4,10;
87:4,6,15;89:4
**maybe (11)**
13:24;31:10;
35:19;54:12;65:8;
70:13;71:3;75:3;
76:21,23,23
**McKenzie (5)**
3:6;8:12;69:21,21;
84:17
**mean (32)**
5:4;11:4,22;13:25;
14:8;15:12;22:15;
26:17;36:7,8,9;37:6,
17;39:2;43:5;46:6;
47:19;51:5,8;55:6;
56:1;59:22;60:3,4,7;
65:8;67:5;75:1;76:3;
80:9;81:5;84:21
**meaning (1)**
66:25
**means (2)**
42:5;70:4
**meantime (2)**
76:6,7
**mechanism (2)**
49:16,17
**media (4)**
30:20,21,21,23
**meet (2)**
88:17;89:18
**meet-and-confer (2)**
24:21;88:13
**meets (1)**
45:15
**members (1)**
48:21
**mention (2)**
37:23;50:20
**mentioned (7)**
19:25;32:17;
37:22;38:18;42:3;
47:13;82:4
**Meridian (2)**
20:2,13
**merits (1)**
7:5
**message (1)**
13:12
**Messrs (1)**
46:3
**met (1)**

10:1
**me-too (1)**
50:16
**mic (2)**
24:9,11
**microphone (2)**
4:18;86:23
**microphones (1)**
4:17
**middle (1)**
77:15
**might (16)**
6:10,10;11:4,4;
21:20,21;32:13;
42:22;43:21;44:15;
45:9;47:2;62:16;
66:20;73:9;85:5
**million (9)**
16:4;18:7,8,21;
19:3;21:5;41:16,21;
42:24
**minute (4)**
57:7,8;86:21,21
**missing (4)**
11:24;21:16;22:3;
65:20
**Mitchell (58)**
3:6;7:8;46:4;
52:13,19;53:15;
54:11,20,23;55:1,7,
17,19,22,24;56:7,13,
24;57:1,3,17,19;
58:22;59:17;60:2,6,
9,17,23;61:3,6;62:3,
7,9,12,15;63:22,24;
64:1,4,14,16;65:5;68:7;
69:6,7,8;70:3,25;
71:20;74:2;77:12,
16;78:2;80:3,9;82:4;
86:3,5
**mode (1)**
3:22
**modification (4)**
6:19,20;7:1;75:7
**modified (2)**
84:19,22
**modify (6)**
6:17;50:24;74:22;
79:13,24;82:13
**modifying (1)**
86:10
**moment (4)**
66:7;88:9
**money (9)**
8:15;18:5,15;19:9;
22:16;41:18;67:2;
68:14;83:14
**monies (1)**
18:22
**month (6)**
7:20;32:3;42:16;
44:9;76:15;80:25
**months (1)**

15:17

**more (27)**
6:5,12;10:19;
13:23;16:8;22:17;
24:17;30:20,24;
31:2;37:17;43:9;
45:24;48:1,3;49:15;
52:9;58:14;60:19;
66:15,21;67:7,20;
68:20;69:9;77:13;
81:5

**morning (3)**
3:8;82:19;84:16

**Morrison (2)**
3:25;33:23

**most (12)**
13:4;27:14;28:5;
30:13;31:9;42:6;
46:14;49:17;53:7;
56:15,19;58:7

**motion (20)**
6:16;7:1;26:2,11;
33:4;40:7;42:13,13;
49:14;52:21;74:22;
75:4;76:14,20;
79:12;82:13;84:19;
88:20;89:19,22

**motions (3)**
59:5;85:24,24

**Mott (2)**
34:12;54:14

**Mott's (1)**
87:18

**move (3)**
11:14;87:2;88:15

**moved (1)**
77:5

**Mt (1)**
85:13

**M-T (2)**
73:1,4

**MtGox (47)**
3:2,7;13:12;14:14,
15,16;15:10,13;
17:24;20:16;21:1,6,
16,18;22:21;30:6;
32:20,20;38:18;
47:1;51:13;54:23;
56:3,16;63:6,13,14;
64:20;65:13;66:20;
68:24;69:20,22;
71:10,11;72:6,7,25;
73:4,8;75:13;79:18,
19;84:14;85:12,15,
19

**MtGox's (12)**
4:24;5:1;7:23;
22:23;34:6;37:15;
41:23;43:7;67:8;
71:18;72:3;87:11

**much (11)**
13:20;15:19;16:6;
17:6;22:1;30:24;

31:1;66:21;77:9;
82:1;84:2

**multiple (1)**
25:10

**must (1)**
10:1

**mutually (1)**
84:13

**Mutum (4)**
20:13,14,15;41:23

**myself (1)**
34:23

## N

**name (6)**
15:24,25;20:24;
41:22;54:1;73:3

**name-brand (1)**
12:24

**national (1)**
63:3

**native (1)**
53:15

**nature (5)**
9:3;13:16;49:8;
84:18;88:22

**nebulous (1)**
41:8

**necessarily (3)**
62:22;69:9,19

**necessary (2)**
73:12;82:15

**need (28)**
6:19,20;11:4;
26:23;45:9;46:12;
54:12;56:13;61:8;
62:1;63:17,18;
69:15;71:22,23;
73:15;74:13,14;76:6,
7;77:4;83:18,21;
86:1;87:15,24;89:4,
19

**needed (3)**
24:20;32:10;67:3

**needs (3)**
51:5;53:6;74:13

**neglected (1)**
40:22

**Network (1)**
20:24

**neutral (1)**
16:19

**nevertheless (2)**
71:8;85:19

**new (7)**
57:12;66:13,24;
67:6;68:2,15;81:4

**news-report (1)**
20:16

**next (5)**
56:4;62:5;75:2;
82:9;88:17

**night (1)**
41:8

**nine (1)**
39:13

**nitty-gritty (1)**
49:2

**nobody's (1)**
76:23

**nondebtor (1)**
58:1

**none (1)**
50:20

**nonmain (1)**
45:21

**nonstop (1)**
84:2

**nonstops (1)**
83:25

**nor (1)**
52:22;56:17

**normal (2)**
44:17,18

**normally (1)**
76:4

**Northern (1)**
37:23

**note (2)**
6:24;53:24

**notice (39)**
6:2,3;23:10;28:6,
9;30:25;31:3,15,17,
23;32:11,16;33:1,3,
3,12,13,15,19;34:22;
36:1,15;37:14,17,19;
38:1,3,22;45:14;
58:9;61:9,16,20;
64:15;71:10;72:5,
12;73:5;75:14

**notices (1)**
30:15

**number (7)**
3:2;8:9;12:22;
16:4;21:20;26:23;
31:5

**numbers (2)**
15:1;48:19

## O

**objecting (1)**
31:20

**objection (4)**
33:17;86:19,25;
87:3

**objections (5)**
33:11,16;38:3;
39:5;48:11

**obtain (2)**
26:12;59:8

**obtained (1)**
20:1

**obtaining (1)**
62:15

**obvious (1)**
43:1

**obviously (14)**
7:4;8:2;11:23;
13:3;14:20;28:12;
34:11;50:11;56:5;
80:5;81:23;82:18,
20;88:6

**occur (3)**
23:20;32:17;40:7;
44:9

**occurred (2)**
21:6;32:5

**occurs (1)**
49:11

**o'clock (1)**
39:6

**off (3)**
43:5;47:19;69:3

**offer (2)**
16:22;89:17

**offered (4)**
16:16,18;40:17;
44:1

**office (1)**
25:3

**officer (1)**
85:12

**offices (3)**
17:1,1;84:17

**official (1)**
80:23

**offline (1)**
21:22;22:14;88:8

**offshore (1)**
87:19

**old (3)**
22:4;42:21;43:4

**old-format (1)**
21:22

**once (3)**
13:13;38:20,21

**one (30)**
7:21;10:17;12:9;
22:9,11;26:23;27:6,
19;30:3,17;32:14;
35:17;41:20;44:12;
45:7;47:18;49:24;
51:16;52:9;55:14;
58:18;63:14;67:7;
69:8;71:20;73:9;
83:3;86:20;87:8;
89:11

**one-man (2)**
45:5;73:7

**ongoing (3)**
11:22;14:5;64:16

**online (3)**
22:16,18;31:11

**only (11)**
32:1;45:4,7;48:18;
49:24;50:24;51:21;
64:24;79:19;81:21;

89:11

**onto (1)**
14:23

**open (2)**
40:19;43:22

**opening (1)**
67:5

**openness (1)**
40:21

**operating (3)**
15:2,6;82:2

**operations (3)**
18:23;56:16,20

**operative (1)**
40:16

**OPERATOR (2)**
78:13,14

**opportunity (1)**
32:11

**oppose (1)**
53:23

**opposed (5)**
15:24;53:25;
66:18;68:17;88:8

**opposing (2)**
52:17,22

**opposition (1)**
78:1

**orally (1)**
25:1

**order (32)**
4:25;6:21;7:2;
8:14,15;10:1,2;
26:15;31:9;33:13;
38:23;39:11;51:19;
56:1;58:3;59:15,20;
61:15;74:18;76:8;
79:24;84:20;85:3,5,
24;86:11,12,13;
88:16,20;89:19,20

**ordered (3)**
45:15;52:10;61:10

**ordering (3)**
40:13;85:7,19

**orders (8)**
7:21,22;27:23,25;
28:1;53:18;58:12;
89:23

**ordinary (1)**
8:11

**organization (2)**
61:8,21

**originally (2)**
4:23;8:21

**others (1)**
12:25

**otherwise (5)**
16:9;53:18;55:15;
61:18;84:13

**ought (1)**
46:6

**out (23)**
6:21;8:15;16:9,11;

17:1;35:3,24;37:22;
38:17,21;42:16;
51:24;65:12;73:23;
74:14,14;76:17;77:7,
14;83:1,11;85:11;
89:15
**outline (1)**
58:10
**outside (5)**
8:11;42:7;74:1,2;
88:8
outside-the-ordinary-course (1)
8:16
**over (36)**
5:20;7:20;12:3;
18:21;23:13;26:12,
12,16;30:24;37:11;
46:10;48:11;52:16,
18,18;53:5,18;55:13;
57:23,23,23;59:8,10,
23;60:8,8,10,11;
62:7;63:2,17,18;
64:8;77:6;82:12;
83:19
**overall (2)**
19:14;43:17
**overbearing (1)**
71:7
**overbroad (1)**
71:7
**overlapping (1)**
47:14
**overseas (1)**
62:3
**own (5)**
12:14,16;39:21;
81:13;82:19
**owned (1)**
20:17
**owner (5)**
51:9,14;65:11,12;
85:14
**owns (2)**
41:10;51:10

**P**

**paid (4)**
15:8,10,11;69:15
**paper (2)**
22:1;82:24
**papers (8)**
17:17;20:5;50:20;
59:4;62:24;66:5,21;
87:25
**paperwork (2)**
4:3;41:9
**parameters (1)**
46:18
**Pardon (1)**
78:13
**parent (6)**
14:7,14;51:9,13,

14;52:5
**PARHAM (121)**
3:5,6;5:3,8,11;7:8,
11,13;9:7,13,15,18,
23;10:4,7,9,12;11:2,
10,13;12:12,15,18;
13:3,6,8,20;14:3,10,
12;15:9,13,16,18,21,
24;16:2,13,15,18,20,
22;17:3,5,13,17,23;
18:2,8,10,12;19:1,5,
8,12;24:6,10,13;
25:17,19,23;26:1,3,
8;27:5,10,12,25;
28:3,7,11,19,21,23,
25;29:2,6,10,14,17,
19,21;30:2,10,12;
31:5,8,19,21;34:24;
35:4,10,12,14;36:2,
18;37:21,25;38:7,9,
11,14,20;39:16;46:3;
52:13;54:3;77:11;
80:1,8,16;81:15,17;
83:2;86:18,22,24;
88:3,4,23;89:24
**part (1)**
23:2
**participate (2)**
32:7,25
**particular (2)**
52:4,15
**Particularly (4)**
8:14;13:16;38:2;
40:13
**parties (12)**
19:20;32:10,24;
33:4,6,10;38:3;
50:25;51:16;57:14;
71:12;77:19
**parties' (3)**
24:19,19;36:18
**parties-in- (1)**
60:21
**parties-in-interest (4)**
37:18;52:25;
60:21;85:4
**partner (1)**
3:25
**party (2)**
10:23;69:1
**party-in-interest (1)**
7:4
**past (2)**
81:1;88:24
**Pause (1)**
78:25
**pay (8)**
8:15;30:19,23;
40:17;44:1;67:3;
83:5,14
**paying (1)**
15:13
**PayPal (1)**

19:6
**pending (3)**
4:1;10;32:2
**people (26)**
4:17,23;6:24;14:8;
15:5,8;19:9;28:12,
15,17,20;29:8,8;
31:11;36:13;38:10,
13,22;41:2;45:14;
54:13;73:11;74:10;
78:7;79:9;82:1
**per (1)**
83:6
**percent (4)**
31:10;65:11,12;
85:14
**percentage (1)**
31:8
**Perhaps (4)**
47:22,24;51:16;
81:21
**period (8)**
8:3,7,17;9:6;
10:18;11:17,18;
26:18
**permission (1)**
4:4
**permit (1)**
60:20
**permitted (1)**
4:2
**permitting (1)**
86:12
**person (27)**
7:25;34:8;40:15;
45:4,17;46:16;
48:22;52:24;53:9;
56:5,11,15,18;57:12,
15;58:6,7,13,16;
60:14;64:23;65:6;
70:4,5,17;71:16,17
**personal (3)**
54:21;59:25;61:5
**personally (3)**
41:22;59:24;71:19
**personnel (1)**
40:12
**persons (2)**
3:14,21
**person's (1)**
61:17
**perspectives (1)**
17:24
**petition (27)**
4:1;5:15;7:21;
21:3;23:19,19;24:18,
20,23;27:9,10;37:20;
40:10,23;42:15;
43:11;44:19;45:15;
57:21;58:25;60:24;
64:18;76:5;79:5,12;
85:8,10
**Phalen (1)**

34:12
**PHELAN (27)**
3:10,10;23:13;
29:24;38:1;49:22,
24;50:2,19;54:13,15;
67:11;72:23,25;
74:21,25;75:11,17,
19;78:4,6;83:9,11,
24;84:8;89:8,15
**Phelan's (3)**
6:6;25:25;29:8
**phone (5)**
4:7,17;33:24;34:9;
65:15
**pictorially (1)**
68:25
**picture (1)**
75:12
**place (6)**
8:20;19:8;30:24;
41:20;64:10;70:21
**places (2)**
46:22;60:5
**plaintiff (1)**
58:23
**plaintiffs (18)**
3:12;6:7,7,19;7:5;
26:11;28:18;37:11;
38:12;39:24;40:4;
59:5;71:5,9;72:8;
79:10;84:20,21
**plaintiffs' (3)**
6:16;7:1;84:14
**plan (2)**
10:24;87:11
**planning (2)**
87:12,14
**play (2)**
59:14;62:6
**player (2)**
66:22;67:6
**pleadings (5)**
4:21;15:23;17:11;
33:7;71:18
**Please (2)**
3:1;4:16
**plurality (1)**
48:20
**pm (2)**
39:6;90:2
**point (26)**
11:15;13:11,15,
24;22:13,15;29:25;
32:20;36:5;40:22;
41:14;43:17,25;44:7,
12;47:5;49:24;
51:24;57:5;58:19;
65:20;70:11,11;
74:11;82:18;88:6
**points (1)**
69:8
**Police (6)**
12:1,3,5,11;22:25;

23:1
**policy (7)**
46:1,17;48:1,5,8;
49:4;86:9
**position (7)**
24:19,19;32:13;
34:15;35:5;68:13;
73:12
**possession (2)**
8:7,19
**possibilities (1)**
11:3
**possible (3)**
81:25;82:10;83:5
**possibly (1)**
32:5
**post (5)**
22:21;30:5,6,15;
31:16
**posted (2)**
13:12,15
**posting (2)**
38:17,18
**potential (1)**
37:11
**potentially (3)**
37:18;50:21;86:9
**power (5)**
68:16,17,20,22;
69:10
**practices (1)**
42:25
**practitioner (1)**
89:11
**precede (1)**
34:17
**precedent (5)**
36:8,17;37:6,6,7
**precise (2)**
15:1,1
**precisely (1)**
10:4
**precision (1)**
31:12
**preference (1)**
30:16
**prejudice (1)**
82:17
**preliminary (1)**
76:8
**premature (1)**
35:2
**prepare (1)**
42:14
**pre-petition (1)**
21:2
**prerogative (2)**
71:14;72:3
**present (1)**
14:22
**present-day (1)**
42:23
**preside (1)**

MTGOX CO., LTD., a/k/a MTGOX KK

Case No. 14-31229-SGJ15

April 1, 2014

5:20
**press (2)**
   32:22,23
**pressing (1)**
   59:18
**presume (1)**
   69:22
**pretty (4)**
   13:20;17:6;21:25;
   68:14
**prevent (2)**
   10:19;26:15
**previously (1)**
   52:2
**primary (1)**
   56:7
**principal (1)**
   56:8
**print (3)**
   30:21,21,23
**prior (4)**
   6:9,21;44:7;79:23
**privilege (1)**
   65:24
**privileges (1)**
   40:18
**pro (1)**
   3:25
**probably (14)**
   10:16;13:4;16:10;
   25:15;30:13;31:9;
   35:15;46:4;52:14;
   69:16;77:19,24;
   88:7;89:3
**problem (5)**
   53:21;75:11;
   76:25;87:6;89:11
**problems (3)**
   11:19;63:9;67:5
**procedure (1)**
   13:11
**procedures (1)**
   34:22
**proceed (1)**
   7:8
**proceeding (20)**
   5:1,21;7:17;9:9;
   21:13,17;26:24;
   27:2;34:5;36:11;
   44:21;45:20,20,21;
   58:10;70:7,9;73:19,
   21,25
**proceedings (5)**
   21:16;34:11;
   39:22;81:8;90:2
**process (18)**
   9:12,16;13:17;
   23:6;49:17;52:9;
   62:15;66:19,22;
   68:2;71:4;80:19;
   85:18;87:9,10;88:14,
   19;89:21
**produce (4)**

61:9,10,21,23
**production (2)**
   71:6;82:8
**program (1)**
   14:21
**prominent (2)**
   30:25;89:11
**pronounced (2)**
   5:2,3
**pronunciation (1)**
   5:13
**proof-of-claim (1)**
   36:9
**proposal (2)**
   31:19;43:18
**propose (6)**
   29:3,4;30:3;77:11;
   88:21;89:2
**proposed (6)**
   28:8,10;33:19;
   36:3;37:15,21
**proposing (1)**
   28:11
**protect (3)**
   67:13,13,15
**protected (3)**
   51:1;67:9;79:22
**protection (1)**
   51:2,7;73:15
**protective (1)**
   85:24
**protects (1)**
   79:20
**prove (1)**
   87:17
**proven (1)**
   88:1
**provide (2)**
   33:1,16
**provided (3)**
   22:25;40:24;42:11
**providing (2)**
   72:17;87:20
**proving (1)**
   87:9
**provision (2)**
   49:12;69:24
**provisional (17)**
   6:17,20;42:2;73:4;
   74:22;75:4,5,14;
   76:2,3,14,20,25;
   77:8;79:13,24;82:14
**provisional-relief (1)**
   7:2
**public (4)**
   46:1;48:5;86:9
**public- (1)**
   48:7
**publish (1)**
   38:3
**pull (1)**
   60:13
**pulling (1)**

80:11
**purported (1)**
   5:1
**purports (1)**
   68:21
**purpose (1)**
   59:3
**purse (2)**
   68:17;69:10
**pursuant (3)**
   84:20,23,24
**push (1)**
   77:14
**put (8)**
   44:17;50:4;53:1;
   54:3,4;65:21;72:18;
   87:12
**puts (2)**
   42:17;65:12
**putting (1)**
   53:23

## Q

**qualification (1)**
   14:24
**qualifications (1)**
   13:4
**quite (2)**
   16:10;85:4
**quotes (1)**
   44:18

## R

**raise (3)**
   32:11;45:24;65:1
**raises (1)**
   32:8
**ran (1)**
   84:6
**range (1)**
   11:3
**ranged (1)**
   12:23
**rather (6)**
   33:5,12,16;34:17;
   84:25;87:2
**reach (1)**
   30:13
**react (1)**
   77:19
**read (8)**
   14:6;16:12;19:13;
   21:25;41:3;59:4;
   62:24;65:4
**readily (1)**
   40:20
**reading (1)**
   66:20
**ready (1)**
   34:7
**real (3)**

15:24;40:9;83:13
**really (28)**
   11:5;12:11;17:6;
   18:15;29:22;30:2,3;
   31:12;44:25;45:3;
   46:8,12,20;47:14;
   48:6,16;49:5,8,19;
   58:22;59:18;60:18;
   71:15;76:11;80:18;
   83:14,21;85:2
**realm (1)**
   62:23
**reason (8)**
   32:9;35:6;43:16;
   52:10;66:17;67:7;
   77:18;88:11
**reasonable (1)**
   43:21
**reasonableness (1)**
   62:23
**reasons (3)**
   9:18;30:17;40:8
**recall (1)**
   4:23
**receivable (1)**
   79:21
**receive (3)**
   32:11;40:20;42:2
**received (4)**
   25:8,9;39:12;41:9
**recognition (38)**
   4:25;5:16;6:4;
   8:23;30:5;35:3,5,17,
   20;36:15;37:20;
   43:11;44:8;45:15,
   18;50:5;51:3;57:21;
   60:24;61:22;64:1,4,
   6;73:13;75:9;76:5;
   77:14;79:5,12;85:3,
   6,9,10,16;86:4,11;
   87:1,3
**recognize (1)**
   36:11
**recognizing (1)**
   76:5
**record (2)**
   51:25;76:10
**recovery (1)**
   10:14
**Reddit (3)**
   30:7,10;38:18
**R-E-D-D-I-T (1)**
   30:12
**refer (2)**
   8:5;18:13
**reference (2)**
   18:2,4
**referred (2)**
   18:5,12
**referring (1)**
   27:15
**refers (1)**
   33:4

**regard (1)**
   35:25
**regarding (7)**
   4:25;6:2,4,6,10,12;
   44:22
**register (2)**
   20:18,20
**regular-mail (1)**
   38:8
**rehabilitation (12)**
   5:1;7:19;8:4;9:11,
   19;10:2,25;11:4;
   21:7;27:13;39:22;
   81:20
**reiterate (1)**
   28:9
**relate (2)**
   23:17;50:3
**related (4)**
   23:17;34:1;42:9;
   73:21
**relates (3)**
   18:21;47:10;73:21
**relating (1)**
   52:6
**relation (1)**
   34:3
**relationship (1)**
   74:7
**relative (1)**
   10:13
**relatively (1)**
   29:2
**relevant (6)**
   32:13;40:23;49:4;
   58:10;59:16;84:25
**relief (26)**
   6:17;13:17;36:10;
   40:15;41:7;42:2;
   50:23,24;73:4;
   74:22;75:4,5,14;
   76:1,2,3,3,6,14,20,
   25;77:8;79:13,24;
   82:14;85:15
**rely (1)**
   33:12
**remaining (1)**
   32:14
**remains (2)**
   8:7,18
**remedies (1)**
   63:1
**remember (3)**
   27:8;36:9;75:22
**rented (2)**
   17:20,20
**reorganization (4)**
   8:5;10:10;11:6;
   70:7
**reorganize (1)**
   11:21
**reorganized (1)**
   10:16

rep (2)
27:17;53:10
replace (2)
54:5;68:24
replaced (1)
85:18
replacement (3)
67:1;68:10;71:23
report (16)
8:21,24;11:9,10,
11;12:10;13:21;
21:11;34:4,17;35:1,
3;53:6;54:19;77:12;
79:7
reported (1)
67:12
REPORTER (1)
24:9
reports (2)
87:21,22
represent (2)
57:1;69:22
representative (68)
5:2;13:23;26:25;
27:2,18;35:19;
40:19;41:4;42:1;
43:22;45:19;46:17;
47:18,19;48:18;
49:12,13;52:22,23;
53:24,25;54:2,5,21,
22,24;55:7,17;56:3,
4,9,10,18,21;57:11,
25;58:16,25;59:1;
60:11,14;61:5,12,22,
23;64:21,24;65:22;
66:24;67:16,25;
68:11,16,21,25;
69:12,15,23;70:1,9,
16;71:17;72:9;73:9,
18;74:6;76:22;85:19
representative' (1)
70:4
request (14)
4:24;6:8,16;12:7;
25:3;35:8,21;36:7;
71:6;74:24;82:7;
84:8,11,22
requested (7)
12:1;13:17;23:21;
25:1;32:17;38:10;
71:24
requests (1)
38:16
require (1)
67:15
required (5)
37:18;39:3;71:10;
72:11;73:24
requirement (6)
54:24;56:17;58:6;
60:15;64:23;68:5
requirements (2)
23:19;45:16

requires (2)
33:6;39:11
requiring (1)
40:11
rescheduled (1)
52:4
research (1)
41:19
respect (26)
14:12;40:9,25;
41:20;43:1;49:7,10;
56:15,19;59:11;
61:16,23;62:19,21;
63:5;68:4,4;69:10;
70:19;71:20;72:2,
15;73:13;74:4,15;
77:3
respond (2)
43:14;87:24
responded (1)
82:6
response (9)
25:7;26:14;42:13;
52:21;53:1;63:24;
64:7,15;87:15
responsibility (1)
78:18
restart (1)
14:21
restrain (1)
68:20
restraining (1)
76:8
restriction (1)
83:6
restrictions (2)
82:23;83:13
restructure (1)
11:21
result (3)
9:20;31:25;73:18
resurrected (1)
81:21
retain (1)
8:12
retained (1)
14:13
retainer (2)
69:15,21
return (1)
71:8
returning (1)
25:2
revenue (1)
15:14
right (85)
3:1,14;4:3,13,15,
18,19;5:5,10,11;
11:16;13:22,25;
15:16,18,20;18:10;
19:14;20:10,25;22:5,
19;23:8,14,22;25:16;
26:22;28:4;30:1;

31:15,19,22;33:20;
34:21;35:22,25;
36:2;37:13,25;
39:18;40:5;41:24;
43:8;44:24;45:14,22,
25;46:4;49:21;50:7,
11,13;52:12;55:20,
25;61:2;67:21;68:8;
69:10;71:16,25;72:1,
12,17,23;73:9;74:18;
78:7,19;79:1,13,20;
80:4;81:14,16;83:8;
84:17;86:16;87:6;
88:2,10,16;89:7,18,
23
rights (4)
32:24;36:18;63:1;
67:17
rise (1)
89:25
Road (3)
19:6,11;41:19
Robin (1)
3:10
Roger (4)
4:8;78:9,12,14
role (2)
8:1;52:5
roll (2)
6:13;7:9
room (2)
36:6;85:25
Rule (11)
43:9;49:16;57:11;
60:18,25,25;61:1;
84:20,24;85:4;86:12
Rules (5)
27:7;72:13;84:23,
25,25
ruling (3)
6:2;84:19;85:25
run (5)
55:14;59:12;
80:21,22;82:21
running (2)
14:6;43:2

_____

## S

Sakai (1)
89:10
same (9)
7:25;32:12;35:6;
41:5;52:11;58:15;
61:11;69:23;75:6
San (1)
3:25
satisfactory (2)
78:9,18
satisfy (1)
76:7
saw (3)
18:3;66:4;82:24

saying (9)
53:25;57:2,9,10;
60:10,11;68:9;70:5;
87:7
scattered (1)
45:8
scheduled (1)
8:21
schematically (1)
24:18
school (2)
5:7,8
scope (9)
6:11;32:15;43:7,
12;49:1;50:2;70:20;
82:5;85:22
scrambling (1)
26:18
se (1)
83:6
search (2)
12:25;13:3
seated (1)
3:1
Seattle (10)
4:9,11;52:2,4,9;
63:2;73:22,22;
79:19;86:14
Second (5)
5:25;27:6;30:5;
33:2;40:11
secondly (1)
63:5
Section (4)
45:16;50:3;59:1;
69:25
secure (2)
10:19;22:18
secured (3)
22:8;29:12,14
Security (5)
18:6,15,18;41:18;
79:22
Security's (1)
20:7
seeing (2)
27:8;63:7
seek (1)
73:20
seeking (5)
41:4,6;64:7;67:22;
75:5
seeks (1)
40:18
seems (5)
33:9,13;60:20;
61:1;75:10
seize (2)
20:1,2
seized (3)
18:5;19:4;41:18
seizure (5)
20:7,12,14,17,19

seizures (1)
41:20
sell (1)
15:4
selling (1)
63:9
send (2)
30:4;43:18
sending (1)
69:20
sense (5)
15:5;35:20;53:7;
77:3,13
sent (2)
25:3;31:16
separate (1)
62:20
series (2)
7:21;67:5
serve (3)
28:13;39:3,7
served (2)
6:3;36:3
server (2)
75:23,24
servers (19)
12:4;17:14,14,19,
20,25;25:2,4,5,8;
41:7,9,13;44:23;
46:21,25;47:2;
51:10;79:20
service (8)
28:12,17;30:13;
38:10,12;39:16;
59:24,25
set (9)
4:20,24;6:1;7:2;
26:11;49:14;63:3;
75:3;88:14
sets (2)
40:11;72:16
setting (7)
5:17;33:13;34:25;
76:19,20;79:5,11
settings (1)
3:2
settled (1)
12:22
seven (1)
39:5
several (9)
3:14,21;10:22;
11:22;12:20;16:4;
26:18;40:11;72:2
severely (1)
69:2
shared (2)
21:8,9
shift (1)
25:13
short (2)
20:24;73:5
show (4)

17:19;45:5;62:19;
80:21
**shows (2)**
22:3;41:19
**shut (1)**
14:9
**sic (2)**
7:25;75:13
**side (3)**
12:18,19;80:19
**Sigillum (4)**
20:13,14,15;41:23
**significant (4)**
11:17;13:16;31:8,
14
**signing (1)**
85:8
**Silk (3)**
19:6,11;41:19
**similar (2)**
8:9;32:6
**Similarly (1)**
24:25
**simple (2)**
6:1;9:2
**simply (6)**
40:13;60:12;
61:16;66:23;72:7;
80:21
**single (1)**
63:14
**sit (1)**
58:4
**site (14)**
13:13,15;14:23;
16:19;22:22,23;
29:11;30:6;31:16;
33:7;38:18;63:6,13,
14
**situation (5)**
37:9;51:18;63:8;
80:20,22
**situations (3)**
37:17;74:5;81:2
**six (1)**
74:6
**size (1)**
31:14
**skills (1)**
53:14
**small (2)**
22:18;49:24
**SoftLayer (1)**
17:19
**sole (6)**
40:15;56:9;58:25;
65:22;85:11,12
**solely (1)**
17:23
**solve (1)**
11:19
**somebody (7)**
68:2,25;69:14;

70:13;71:21;72:14;
74:5
**somebody's (1)**
82:24
**someone (2)**
56:3;89:3
**sometime (3)**
75:2,9;83:22
**sometimes (2)**
81:7;87:10
**somewhat (1)**
7:17
**somewhere (6)**
14:6;18:3;28:8;
41:3,8;82:24
**soon (1)**
88:13
**sooner (2)**
66:18;82:3
**sorry (5)**
3:16;68:7;75:17;
77:6;79:3
**sort (3)**
34:23;36:11;75:5
**sought (1)**
34:24
**sound (2)**
42:22;66:5
**sounds (2)**
60:1;75:9
**space (1)**
41:11
**speak (9)**
3:23;4:16,16;7:5,
9;24:9,11;50:11;
86:23
**SPEAKER (1)**
24:2
**speaking (1)**
8:13
**speaks (2)**
42:24;49:12
**specific (2)**
36:5;61:13
**specifically (2)**
17:12;67:2
**speculate (1)**
73:9
**speculation (3)**
73:10;81:15;83:1
**spend (2)**
67:2;68:14
**spending (1)**
36:23
**sponsor (7)**
10:21,23,24,24,24;
13:9;81:20
**stage (2)**
74:16;81:24
**stages (1)**
83:11
**stall (1)**
81:4

**stalling (1)**
66:15
**stand (2)**
26:4;67:25
**standard (2)**
64:25;70:18
**standards (6)**
10:1;43:10;46:13;
59:15;64:22;76:9
**standpoint (3)**
49:4;77:3,4
**start (6)**
3:3;4:19,22;5:18,
25;77:10
**starting (4)**
56:1;68:2;75:2;
86:22
**starts (1)**
22:16
**state-law (1)**
32:9
**statement (1)**
66:4
**statements (3)**
42:8;65:23;66:8
**States (35)**
20:1,3;21:8;25:1,
2,8,14;29:21,25;
31:24;32:1,2,5,10,
16;33:18;40:8;45:8;
46:20,24;48:17,21;
55:12;58:4,13;59:2;
61:19;62:25;63:4,
12;64:10;69:14;
72:22;73:16;75:23
**status (9)**
4:23;5:17,18,25;
7:9,16;19:14,17;
35:14
**stay (7)**
7:22;24:25;26:15;
35:24;51:25;79:18,
20
**stayed (1)**
79:18
**stays (1)**
7:22
**stemmed (2)**
20:17,19
**Steven (1)**
40:1
**still (16)**
14:8,9;16:12;17:4;
22:6;24:6,10,13,24;
25:9;33:15;42:3,5,
17;79:14;85:19
**stolen (1)**
21:4
**stopped (1)**
21:1
**stories (1)**
40:24
**straight (3)**

62:6,10,13
**straightforward (1)**
9:2
**Street (6)**
30:15;32:18;36:7,
14;37:1;42:23
**stricken (1)**
66:3
**strong (1)**
34:15
**structured (1)**
14:18
**stuck (1)**
70:16
**stuff (3)**
73:25;76:13;84:4
**subject (9)**
22:14;34:22;
52:24;53:9;59:1;
67:16;72:3;80:14;
89:1
**subjects (4)**
46:11;52:6;72:5,
12
**submit (1)**
30:23
**submitted (2)**
32:10;87:21
**submitting (1)**
85:9
**subsequent (2)**
9:23;85:24
**subsidiaries (1)**
45:8
**subsidiary (3)**
20:15;41:23;47:1
**substantial (2)**
34:10;43:4
**substantive (5)**
6:18,22;36:10;
66:21;74:23
**substitute (4)**
66:13,23;67:6;
68:1
**substitutes (1)**
71:22
**substitution (1)**
71:24
**success (1)**
10:17
**sudden (1)**
22:16
**sue (1)**
63:11
**sued (1)**
58:1
**sufficient (4)**
38:19;44:13;51:2,
7
**sufficiently (4)**
51:1;67:9,13,14
**suggest (7)**
38:21;41:15;44:8;

53:3;71:9;81:25;
83:22
**suggested (3)**
7:14;53:10;83:16
**suggesting (1)**
52:23
**suggestion (4)**
53:7;54:6;70:20;
82:10
**sum (1)**
71:3
**summaries (1)**
89:8
**supervision (1)**
8:18
**supervisor (10)**
7:24,24;8:12;
11:24;12:13,15;
28:21,24;54:19;
80:10
**supervisor/examiner (3)**
9:10;14:4;38:15
**supervisor's (1)**
8:1
**supplement (1)**
50:18
**supplemental (1)**
17:18
**support (2)**
71:18;85:10
**supported (1)**
66:6
**supporting (2)**
24:24;40:10
**suppose (1)**
79:14
**supposed (1)**
52:1
**Supreme (1)**
34:14
**sure (13)**
4:16;7:11;16:5,10;
22:9;38:11;47:5;
53:1;56:14;66:9;
69:19;74:2;81:1
**surmise (1)**
66:20
**surmising (1)**
15:13
**surprises (1)**
54:8
**suspects (1)**
51:17
**swore (1)**
41:5
**sworn (1)**
71:1
**system (2)**
8:2;9:20

---

**T**

---

**Tab (1)**

28:16

**Taipei (7)**
16:12,23;17:1;
40:12;43:18;49:19;
60:5

**Taiwan (1)**
16:12

**talk (3)**
28:6;29:21;74:19

**talked (2)**
47:14;80:19

**talking (5)**
29:15;30:2;31:13;
51:8;87:18

**target (1)**
61:24

**targeting (1)**
61:25

**task (1)**
9:2

**tech (1)**
30:7

**techie (1)**
36:13

**techies (1)**
30:19

**technical (2)**
12:19;45:16

**technically (3)**
7:2;18:13;46:4

**technology (1)**
22:7

**telephone (2)**
3:14,21

**telling (1)**
70:10

**temporary (1)**
76:8

**ten (2)**
39:13;88:17

**term (6)**
56:8,9,11;60:22;
67:13;70:3

**terminate (3)**
50:24;76:14,20

**terms (7)**
26:6;28:14;31:2,
14;68:15;69:1;73:20

**terribly (1)**
60:3

**test (1)**
76:24

**testifies (1)**
58:7

**testify (5)**
58:17;71:13;72:2,
6;82:14

**testifying (1)**
53:9

**testimony (3)**
52:24;58:15;59:10

**Texas (4)**
44:4,5;84:17;

85:21

**Thanks (1)**
89:17

**that'll (1)**
6:13

**theft (2)**
12:2;21:5

**theirs (1)**
8:2

**therein (1)**
84:21

**there're (7)**
14:15;15:5;17:25;
23:14;29:11,12;
87:16

**think3 (4)**
34:13;54:15,16;
87:19

**thinking (6)**
36:7,12,22;46:3,3;
79:10

**third (2)**
6:13;30:6

**thirty-two (2)**
14:7;65:9

**though (8)**
23:18;53:12;60:9;
61:24;62:13,18;
70:12;89:17

**thought (1)**
88:6

**thoughts (1)**
88:2

**thousand (1)**
75:20

**three (7)**
21:17;24:22;29:3;
33:17;35:2;37:3;
42:5

**threefold (1)**
30:3

**threw (1)**
47:18

**throughout (1)**
45:8

**Tibanne (9)**
14:13,16;15:11;
17:20,21;29:22;
58:1;65:9,11

**tied (2)**
48:1;49:5

**Times (4)**
30:16;32:18;36:8;
37:5

**timing (4)**
34:2;74:19;76:19;
77:1

**today (20)**
3:23;4:16,19,24;
5:18;6:1,6,14,22;
23:17;40:6;56:2;
71:8;72:21;74:24;
75:12;76:2;81:22;

85:2;88:17

**together (1)**
34:12

**Tokyo (17)**
7:19,21;8:22;11:6;
12:1,3,10,16;13:15;
16:13,13,14,15;17:8;
77:20;84:1;85:17

**told (9)**
21:24;41:1,6;42:1,
1;73:19;74:23;
76:16,21

**took (1)**
41:20

**topic (2)**
25:24;89:6

**topics (2)**
46:7,18

**Toronto (1)**
32:3

**totally (2)**
23:16;55:19

**towards (1)**
81:18

**TOWNSEND (7)**
4:8,8,9,13;78:11,
12,14

**Toyota (2)**
63:9,10

**track (1)**
35:24

**trade (1)**
15:3

**traded (1)**
29:9

**trading (1)**
32:19

**traditional (4)**
6:12;15:19;29:12;
43:9

**trailing (1)**
26:21

**transaction (3)**
8:10,16;11:2

**transactions (2)**
8:9;21:2

**transferred (1)**
18:22

**transfers (1)**
51:12

**translated (14)**
23:25;24:4,8,14,
20;26:25;27:13,14,
17,24,25;42:4;44:19;
45:17

**translating (1)**
24:13

**translation (2)**
23:18;24:23

**translations (3)**
26:8,21,23

**translator (1)**
53:20

**transmitted (1)**
19:10

**transmitter (1)**
19:8

**transparency (2)**
40:9;21

**transparent (2)**
40:20;43:22

**travel (7)**
40:17;82:24;83:4,
5,7,12,12

**treat (1)**
57:11

**treated (1)**
60:25

**tremendous (1)**
51:4

**trial (4)**
53:11;72:19,20;
77:22

**tricky (1)**
54:7

**tried (1)**
6:13

**tries (1)**
68:1

**trigger (1)**
87:23

**TRO (1)**
42:13

**trucks (1)**
74:6

**true (1)**
76:18

**trust (4)**
26:12,16;64:8,18

**Trustee (19)**
3:19;21:9;25:1,8,
14;29:1;30:14;
31:24;32:1,5,10,16;
33:19;35:19;36:4;
38:16;54:3,4;78:19

**Trustee's (1)**
25:3

**try (5)**
14:20;47:20;
48:13;66:13;81:7

**trying (15)**
10:18;11:15;
13:24;18:14;22:6;
26:5;20:35:24;38:4;
44:25;46:9;48:16;
59:24,25;67:23

**Tuesday (3)**
79:1,4,9

**turn (3)**
23:12;33:2;39:23

**turned (2)**
12:3;83:1

**Turning (1)**
40:22

**turns (1)**
76:17

**transmitted (1)** ... 

**twenty-five (1)**
31:9

**twenty-four (3)**
6:25;73:5;75:14

**twice (1)**
53:4

**two (18)**
5:14;30:17;32:1,4,
14,15;33:17;40:8,24;
41:19;42:19;48:10;
69:8;75:3;77:15,17;
82:9;83:25

**txnbuscourts (2)**
33:5,7

**type (4)**
12:24;28:9;42:25;
43:1

**types (4)**
12:14,20;32:12;
43:3

**typically (2)**
14:17;88:23

---

## U

**ultimately (2)**
13:23;40:17

**Um-hum (20)**
9:7,22;10:6;12:12;
13:5;17:22;18:11;
19:12;21:14;26:7;
29:10;31:21;38:14;
43:20;56:12;58:21;
60:6;62:14;64:3;
75:18

**unable (1)**
24:23

**uncertain (1)**
73:20

**unclear (2)**
21:10;25:9

**uncommon (3)**
55:2,11,19

**uncovering (1)**
43:3

**under (21)**
8:18;18:17;30:18;
46:13,15;49:11,14,
16;50:23;51:20;
58:25;61:20;66:24;
67:12;72:1,4,12;
73:13,18;85:1;86:11

**underlying (1)**
40:10

**understands (2)**
53:2;85:25

**Understood (2)**
56:25;59:17

**UNIDENTIFIED (1)**
24:2

**unintentional (1)**
33:10

**Union (2)**

20:2,14
**unique (2)**
7:17;8:1
**United (35)**
20:1,3;21:8;24:25;
25:2,8,14;29:21,25;
31:24;32:1,2,5,9,16;
33:18;40:8;45:8;
46:20,24;48:17,21;
55:12;58:4,13;59:2;
61:19;62:25;63:4,
12;64:9;69:14;
72:22;73:16;75:23
**universe (2)**
36:22;38:17
**unknown (1)**
25:12
**unless (2)**
4:18;76:6
**unreasonable (1)**
43:19
**up (34)**
8:3;9:4,24;11:17;
12:5,11;13:10;14:5;
20:4;22:3;26:6,20;
33:17;35:15;39:13;
49:14;53:6;54:23;
57:20;60:13;62:10,
13,19;65:21;67:5,25;
71:3;72:19,20;
80:16;82:2;87:17,
25;88:12
**up-front (1)**
52:20
**upload (1)**
38:22
**upon (1)**
84:13
**use (5)**
31:11;36:12;
67:14;68:22;72:21
**used (3)**
17:23;18:23;60:22
**users (1)**
30:7
**using (2)**
47:2;51:11
**usual (1)**
81:6

**V**

**value (5)**
41:15,17;42:23,
23;46:21
**valued (1)**
46:22
**various (2)**
9:18;27:23
**vault (1)**
22:8
**vendor (1)**
29:22

**vendors (2)**
29:20,24
**venue (2)**
32:12;46:15;
47:14;49:8
**venue's (1)**
44:23
**version (1)**
39:21
**versus (7)**
6:12;16:6;37:23;
39:2,19;47:17;74:21
**via (3)**
53:8,18;61:10
**viable (2)**
10:10;11:7
**video (6)**
53:8,18;58:14;
60:4;61:10;88:5
**videolink (2)**
16:23,25
**videotaped (1)**
87:19
**view (1)**
18:15
**views (1)**
87:16
**virtual (1)**
9:2
**volumes (1)**
42:24

**W**

**wait (1)**
16:9
**waived (1)**
65:24
**waiver (1)**
66:9
**walk (1)**
57:24
**Wall (5)**
30:15;32:18;36:7,
14;37:1
**wallet (5)**
21:22;22:4,8,14;
42:21
**wallets (2)**
22:18;43:4
**wants (3)**
67:24;80:20;81:3
**warrants (2)**
20:1,12
**Washington (2)**
4:11;59:21
**way (12)**
40:12;52:8;67:10;
68:12,23;71:3;
75:20;76:4;79:16;
80:24;81:5;82:21
**ways (1)**
7:17

**Web (13)**
13:13,15;14:23;
22:22,23;29:11;
30:6;31:16;33:7;
38:18;63:6,13,14
**week (18)**
5:14;8:23;12:20;
13:1;21:15;32:4;
42:14;48:10;56:4;
77:15,17,22,22,25;
78:1,20;87:1,1
**weeks (5)**
42:5;75:3;77:15,
17;82:9
**weigh (3)**
77:12;80:6,12
**weighing (1)**
10:13
**Wells (2)**
20:2;41:21
**Western (2)**
4:10;34:12
**what's (18)**
5:21,22;13:25;
22:7;23:5,6;25:11;
42:22;45:23;56:8;
58:22;61:25;72:9,
15;74:4,14;76:1;
77:4
**whenever (2)**
45:14;72:16
**Whereupon (1)**
90:2
**wherever (1)**
84:5
**whole (8)**
22:15;34:22;
46:23;66:13;67:5;
68:2;74:7;89:1
**who's (4)**
6:3;45:7;80:23;
89:10
**who've (2)**
29:9;38:10
**wild (1)**
87:18
**wish (1)**
4:7
**wishes (1)**
31:22
**withdraw (1)**
66:12
**within (4)**
40:7;54:20;64:21;
82:5
**without (6)**
40:20;59:5;63:7;
67:22;68:16;88:1
**witness (8)**
61:9,11;66:10,13;
72:13;74:9;85:8,20
**witnesses (1)**
87:19

**wondered (1)**
35:1
**wondering (1)**
34:23
**Woodrow (30)**
3:11;40:1,1,4,6;
43:13,16,21,25;44:3,
5,7,11;46:14;47:5,8,
10,12,16,22,24;48:1,
4,6,12,15;49:10;
59:19;74:21;77:2
**word (1)**
72:24
**words (1)**
8:10
**work (4)**
14:14;37:22;
39:16;89:15
**worked (2)**
34:12;38:21
**workers (1)**
17:5
**working (11)**
14:8,19;15:6;24:6,
10,13;28:5;80:5,10,
25;81:18
**works (2)**
23:6;77:17
**world (2)**
84:5;85:11
**worldwide (1)**
31:6
**worthy (1)**
36:23
**writing (3)**
25:3;84:13;88:19
**written (4)**
33:8;82:3;83:16;
84:15

**Y**

**y'all (1)**
15:22
**yesterday (2)**
17:17;24:5

**Z**

**zero (1)**
41:13
**zeroed (1)**
72:25

**1**

**1 (1)**
35:7
**10,000 (1)**
37:2
**10124 (2)**
70:1,3
**1018 (7)**

43:9;60:18,20;
61:1;65:4;84:24;
85:4
**10th (4)**
22:19;75:13,16,17
**11 (3)**
28:16;42:4;64:5
**110 (1)**
42:24
**11th (2)**
88:18;89:18
**12 (2)**
60:25,25
**120,000 (1)**
31:6
**13th (2)**
87:4,6
**14-31229 (1)**
3:3
**15 (38)**
23:20;32:4,25;
34:16;36:19,20;
37:16;40:10;42:11,
12,16,16,19;43:9;
44:14,15,19;45:3;
46:13;48:16;49:1;
51:3;55:12;58:5;
59:16;64:14,15,18;
66:4;67:18,20,22;
68:6;69:22;73:2,13;
74:15;85:3
**1506 (1)**
45:24
**1510 (5)**
58:23,24;59:12;
67:11;73:18
**1515 (2)**
45:16;59:1
**1519 (1)**
50:24
**1521 (4)**
50:24;70:21;71:1,
2
**1522 (5)**
50:19;67:10,14;
70:23;86:11
**1522a (3)**
50:21,23;70:24
**1522b (2)**
50:3,21;67:12
**15-whatever (1)**
60:19
**16 (1)**
82:4
**16th (1)**
71:9
**17 (1)**
82:4
**17th (4)**
84:12,16;85:20;
86:3
**180- (1)**
21:20

MTGOX CO., LTD., a/k/a MTGOX KK
Case No. 14-31229-SGJ15

April 1, 2014

**19th (3)**
   77:22,25;78:1
**1st (4)**
   5:15;8:23;34:25;
   88:18

**2**

**2.1 (1)**
   41:21
**200 (1)**
   21:19
**200,000 (5)**
   21:5,18,21;42:21,
   21
**2004 (13)**
   6:11;43:7,8,14;
   44:12,15;46:4;49:11,
   14;84:20;85:1,2;
   86:12
**2013 (1)**
   20:1
**2014 (1)**
   21:1
**20th (6)**
   79:1,4,9,24;86:1,4
**21st (2)**
   83:22;84:8
**22 (1)**
   70:23
**220,000 (1)**
   21:21
**22a (1)**
   70:25
**24/7 (1)**
   80:9
**26 (1)**
   22:21
**27 (1)**
   26:9
**28 (3)**
   8:22;35:1,7
**28th (3)**
   7:19;21:7;26:10

**3**

**3:40 (1)**
   90:2
**30b6 (8)**
   57:11;58:9;61:8,
   21;71:10;72:1,4;
   73:7
**350 (1)**
   21:4
**363 (1)**
   8:9

**4**

**4 (1)**
   39:6
**4th (1)**

   42:14

**5**

**50,000 (1)**
   36:25

**6**

**6 (4)**
   6:21,23;39:19;
   46:8
**6th (22)**
   5:16,23;6:4,9,13;
   31:18;34:25;35:23;
   36:1;45:13;72:15;
   74:20;75:4,9;77:5,
   11;79:11,15,25;
   82:11;83:20,25

**7**

**7 (2)**
   21:12,13
**700- (1)**
   21:19
**7000 (3)**
   84:23,24,25
**7030 (2)**
   49:16;84:25
**744,000 (1)**
   21:3
**7th (3)**
   20:18;21:1,15

**9**

**9 (2)**
   8:24;13:10
**9:30 (8)**
   79:1,4,9,25;80:3,4;
   84:16;85:21
**90 (1)**
   42:23
**9th (15)**
   11:8,9,11,16,17;
   34:3,4;35:1,6,16,21;
   77:6,13,20,21