David J. Molton (*admitted pro hac vice*)
Daniel J. Saval (*admitted pro hac vice*)
Brown Rudnick LLP
Seven Times Square
New York, New York 10036
Telephone:  (212) 209-4800
Facsimile:  (212) 209-4801
Email:  dmolton@brownrudnick.com
Email:  dsaval@brownrudnick.com

- and -

Marcus A. Helt (TX 24052187)
Thomas Scannell (TX 24070559)
Gardere Wynne Sewell LLP
1601 Elm Street, Suite 3000
Dallas, Texas 75201-4761
Telephone:  (214) 999-3000
Facsimile:  (214) 999-4667
Email:  mhelt@gardere.com
Email:  tscannell@gardere.com

*Counsel for Nobuaki Kobayashi, in his capacity
as the Bankruptcy Trustee and Foreign Representative
of MtGox Co., Ltd., a/k/a MtGox KK*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

|  |  |
|---|---|
| In re: | Chapter 15 |
| MtGox Co., Ltd. (a/k/a MtGox KK), | Case No. 14-31229-sgj-15 |
| Debtor in a Foreign Proceeding. | |

**MEMORANDUM OF LAW IN SUPPORT OF
AMENDED PETITION FOR RECOGNITION AND CHAPTER 15 RELIEF**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................... 1

BACKGROUND ...................................................................................................... 2

JURISDICTION AND VENUE .................................................................................... 4

ARGUMENT ........................................................................................................... 5

I.   THE JAPAN PROCEEDING MEETS  THE REQUIREMENTS FOR RECOGNITION ... 5

    A.   The Petitioner Qualifies As the Debtor's Foreign Representative ............................. 5

    B.   The Japan Proceeding is a Foreign Proceeding. ........................................... 6

    C.   The Japan Proceeding Is A Foreign Main Proceeding ................................. 10

    D.   In the Event the Japan Proceeding  Is Not Recognized as a Foreign Main
    Proceeding,  It Should Be Recognized as a Foreign Nonmain Proceeding. .............. 23

    E.   The Requirements of Section 1515 Have Been Satisfied. ......................... 25

    F.   Recognition of the Japan Proceeding  Would Not Be Manifestly Contrary to
    U.S. Public Policy ..................................................................................... 26

II.  THE PETITIONER REQUESTS  ADDITIONAL NECESSARY AND APPROPRIATE
    RELIEF PURSUANT TO BANKRUPTCY CODE SECTION 1521(a) ........................... 27

CONCLUSION ...................................................................................................... 29

Exhibit A:  Cited Provisions of the UNCITRAL Guide ................................................ 1

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Hertz Corp. v. Friend,
    559 U.S. 77 (2010).............................................................................................13

In re ABC Learning Ctrs. Ltd.,
    445 B.R. 318 (Bankr. D. Del. 2010), aff'd, 728 F.3d 301 (3d Cir. 2013) ................................8

In re Bear Stearns High-Grade Structured Credit Strategies Master Fund,
    374 B.R. 122 (Bankr. S.D.N.Y. 2007), aff'd 389 B.R. 325 (S.D.N.Y. 2008) .............11, 12, 24

In re Betcorp Ltd.,
    400 B.R. 266 (Bankr. D. Nev. 2009) ............................................................... passim

In re British Am. Ins. Co.,
    425 B.R. 884 (Bankr. S.D. Fla. 2010).............................................................15, 17

In re Chiang,
    437 B.R. 397 (Bankr. C.D. Cal. 2010)....................................................................11

In re Ephedra Prod. Liab. Litig.,
    349 B.R. 333 (S.D.N.Y. 2006)................................................................................14

In re Fairfield Sentry Ltd.,
    440 B.R. 60 (Bankr. S.D.N.Y. 2010), aff'd, 2011 WL 4357421 (S.D.N.Y. Sept. 16,
    2011), aff'd, 714 F.3d 127 (2d Cir. 2013) ................................................................13

In re Gerova Fin. Grp., Ltd.,
    482 B.R. 86 (Bankr. S.D.N.Y. 2012).......................................................................12

In re Iida,
    377 B.R. 243 (9th Cir. BAP 2007)...........................................................................27

In re Millennium Global Emerging Credit Master Fund Ltd.,
    458 B.R. 63 (Bankr. S.D.N.Y. 2011), aff'd, 474 B.R. 88 (S.D.N.Y. 2012)...........................25

In re SPhinX,
    351 B.R. 103 (Bankr. S.D.N.Y. 2006), aff'd, 371 B.R. 10 (S.D.N.Y. 2007) ........................18

In re Tradex Swiss AG,
    384 B.R. 34 (Bankr. D. Mass. 2008) .......................................................................11

In re Tri-Cont'l Exch. Ltd.,
    349 B.R. 627 (Bankr. E.D. Cal. 2006), aff'd, 389 B.R. 326 (S.D.N.Y. 2008) ............11, 13, 26

Lavie v. Ran (In re Ran),
    607 F.3d 1017 (5th Cir. 2010) ............................................................ passim

Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.),
    714 F.3d 127 (2d Cir. 2013) ............................................................ passim

STATUTES

11 U.S.C. § 101(23) ............................................................ passim

11 U.S.C. § 101(24) ............................................................2, 5, 6, 7

11 U.S.C. § 101(41) ............................................................2, 5, 6

11 U.S.C. § 1501 ............................................................27

11 U.S.C. § 1502 ............................................................5, 10, 23, 24

11 U.S.C. § 1506 ............................................................14, 26

11 U.S.C. § 1508 ............................................................7, 13

11 U.S.C. § 1509 ............................................................4, 27

11 U.S.C. § 1515 ............................................................2, 4, 5, 25, 26

11 U.S.C. § 1516 ............................................................4, 11

11 U.S.C. § 1517 ............................................................ passim

11 U.S.C. § 1520 ............................................................4, 27, 29

11 U.S.C. § 1521 ............................................................4, 27, 28, 29

11 U.S.C. § 1522 ............................................................4, 28, 29

28 U.S.C. § 157 ............................................................4

28 U.S.C. § 1334 ............................................................4

28 U.S.C § 1410 ............................................................4

OTHER AUTHORITIES

H.R. Rep. No. 109-31(I), (2005), reprinted in 2005 U.S.C.C.A.N. 88 ............................13

Jay Lawrence Westbrook, Chapter 15 at Last, 79 AM. BANKR. L.J. 713, 719–20 (2005) .......12, 13

Guide to Enactment of the UNCITRAL Model Law on Cross-Border Insolvency,
    *available at* http://www.uncitral.org/pdf/english/texts/insolven/1997-Model-Law-
    Insol-2013-Guide-Enactment-e.pdf. .......................................................................13

**DOCKETED CASES**

CoinLab, Inc. v. MtGox KK,
    Case No. 13-0777 (MJP) (W.D. Wash. May 2, 2013)...........................................17

Greene v. MtGox KK,
    Case No. 14-01437(GF) (N.D. Ill. Feb 27, 2014).................................................17

In re Elpida Memory, Inc.,
    Case No. 12-10947 (Bankr. D. Del. Apr. 24, 2012) ...............................................9

In re Gestion-Privee Location L.L.C.,
    Case No. 06-80071 (Bankr. M.D.N.C. Feb. 24, 2006) ............................................9

In re Iida,
    Case No. 06-00376 (Bankr. D. Haw. July 14, 2006), aff'd 377 B.R. 243 (9th Cir. BAP
    2007) .......................................................................................................................9

In re Japan Airlines Corp.,
    Case No. 10-10198 (Bankr. S.D.N.Y. Feb. 17, 2010) ..........................................10

In re Kokura,
    Case No. 06-00849 (Bankr. D. Haw. Dec. 22, 2006) ..............................................9

In re Nanbu, Inc.,
    Case No. 09-01274 (Bankr. D. Haw. July 15, 2009) ...............................................9

In re Spansion Japan Ltd.,
    Case No. 09-11480 (Bankr. D. Del. May 28, 2009) ..............................................10

In re Three Estates Co., Ltd.,
    Case No. 07-23597 (Bankr. E.D. Cal. Aug. 30, 2007) ............................................9

Nobuaki Kobayashi, in his capacity as the bankruptcy trustee and foreign representative (the "Petitioner") of MtGox Co., Ltd., a/k/a MtGox KK (the "Debtor" or "MtGox"), a debtor in a bankruptcy proceeding under Japanese law (the "Japan Proceeding"), currently pending before the Twentieth Civil Division of the Tokyo District Court, Japan (the "Tokyo Court"), by his undersigned U.S. counsel, submits this memorandum of law in support of his *Amended Verified Petition for Recognition and Chapter 15 Relief* (the "Amended Petition"), seeking recognition of the Japan Proceeding as a foreign main proceeding or, in the alternative, as a foreign nonmain proceeding, and related relief under Chapter 15 of title 11 of the United States Code (the "Bankruptcy Code") as set forth therein and herein, and entry of an order substantially in the form attached to the Amended Petition as Exhibit E (the "Order").

## PRELIMINARY STATEMENT

1.    The Petitioner is the duly authorized foreign representative of MtGox in connection with its Japan Proceeding pending before the Tokyo Court.[1]  Pursuant to the Bankruptcy Order (defined below) of the Tokyo Court appointing him the bankruptcy trustee of the Debtor, the Petitioner is charged with administering and realizing upon the assets of the Debtor and distributing those assets in accordance with the insolvency laws of Japan and under the supervision of the Tokyo Court.   In furtherance of these duties, the Petitioner, as the bankruptcy trustee and foreign representative of the Debtor, seeks foreign main recognition or, in the alternative, foreign nonmain recognition, of the Japan Proceeding in aid of his efforts to maximize recoveries to, and provide for an equitable distribution of value among, all creditors.

2.    Chapter 15 of the Bankruptcy Code authorizes this Court to, among other things, (i) recognize a foreign proceeding upon a foreign representative's proper commencement of a

---

[1]   The facts pertinent to the Amended Petition are set forth in the Declaration of Nobuaki Kobayashi (the "Kobayashi Declaration" or "Kobayashi Decl."), submitted contemporaneously herewith in support of the Amended Petition.

case under Chapter 15 of the Bankruptcy Code and (ii) once recognition is granted, provide further assistance in the United States to such foreign representative with respect to the foreign proceeding consistent with the statutory purposes of Chapter 15 to facilitate and foster cooperation in cross-border insolvency proceedings.

3.      As explained herein, all of the requirements for Chapter 15 recognition of the Japan Proceeding as a "foreign proceeding" have been satisfied:  (i) the Japan Proceeding is a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code; (ii) the Petitioner is a "foreign representative" and "person" within the meaning of sections 101(24) and (41) of the Bankruptcy Code; (iii) the Amended Petition meets the filing requirements of section 1515 of the Bankruptcy Code; and (iv) recognition of the Japan Proceeding would not be manifestly contrary to U.S. public policy.   Furthermore, as explained below, the Japan Proceeding should be accorded recognition as a "foreign main proceeding" under section 1517 of the Bankruptcy Code because the "center of main interests" ("COMI") of the Debtor is in Japan, the jurisdiction where, *inter alia*, the Debtor's registered office and head office are, and have always been, located.

## BACKGROUND

4.      MtGox is a Japanese corporation formed in 2011.  It is, and always has been, located, centered and headquartered in Tokyo, Japan.  MtGox's business involved the operation of an online bitcoin exchange through the website mtgox.com (the "MtGox Exchange").  There were times during this period when the MtGox Exchange was reported to be the largest online bitcoin exchange in the world, but that is no longer the case.

5.      On or about February 10, 2014, MtGox halted all bitcoin withdrawals by its customers after MtGox was subject to what appears to have been a massive theft or disappearance of bitcoins held by MtGox both on behalf of its customers and itself.  According

to the Japan Petition (defined below), MtGox suspended all trading on the MtGox Exchange on February 24, 2014 after it was discovered, according to an internal investigation, that approximately 850,000 bitcoins were missing from both customer accounts and MtGox's accounts. These events caused, among other things, MtGox to become insolvent and ultimately led to the Japan Proceeding.

6. On February 28, 2014, the Debtor filed a petition (the "<u>Japan Petition</u>") for the commencement of a civil rehabilitation proceeding (the "<u>Japan Civil Rehabilitation</u>") in the Tokyo Court pursuant to Article 21(1) of the Japanese Civil Rehabilitation Act (*Minji Saisei Ho*) (the "<u>JCRA</u>"), reporting that the Debtor had lost almost 750,000 bitcoins shown on customers' accounts and 100,000 bitcoins in the Debtor's account. Subsequently, the Debtor discovered 200,000 bitcoins that were held in an old-format digital wallet, and it is now estimated that approximately 650,000 bitcoins remain missing.

7. On March 9, 2014 (the "<u>Chapter 15 Petition Date</u>"), the Debtor commenced this Chapter 15 case by filing a petition in this Court for recognition of the Japan Civil Rehabilitation as a foreign main proceeding and for related relief under Chapter 15.

8. Following a preliminary investigation conducted by the Debtor, the Tokyo Court decided to dismiss the Japan Petition pursuant to Article 25(3) of the JCRA, stating that under the circumstances the Debtor would be unlikely to successfully prepare and approve a viable rehabilitation plan. By orders entered on April 16, 2014, the Tokyo Court placed the Debtor in a provisional administration by dismissing the Japan Petition and appointing the Petitioner as the Debtor's provisional administrator pending the commencement of a bankruptcy procedure under

the Bankruptcy Act of Japan (the "Bankruptcy Act").[2]  On April 24, 2014, the Tokyo Court

entered an order (the "Bankruptcy Order") formally commencing the Debtor's Japan Proceeding

and appointing the Petitioner as the Debtor's bankruptcy trustee.

9.      For a more complete description of the Debtor's corporate structure, corporate

governance, historical business operations, and background leading up to the commencement of

the Japan Proceeding, the Petitioner respectfully refers the Court to the Amended Petition with

exhibits, the Declaration of Nobuaki Kobayashi, dated May 23, 2014 and filed

contemporaneously herewith (together with all exhibits attached thereto, the "Kobayashi

Declaration").  The Amended Petition and Kobayashi Declaration are incorporated by reference

as if fully set forth herein.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157

and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

11.      Venue for this proceeding is proper before this Court pursuant to 28 U.S.C §

1410.

12.      The statutory predicates for the relief requested herein are sections 1509, 1515,

1516, 1517, 1520, 1521 and 1522 of the Bankruptcy Code.

---

2    English translations of the relevant provisions of the Bankruptcy Act are attached as Exhibit 1 to the Kobayashi
Decl., and an English translation of the entire Bankruptcy Act is *available at*:
http://www.japaneselawtranslation.go.jp/law/detail/?re=01&dn=1&x=0&y=0&co=1&ia=03&yo=&gn=&sy=&
ht=&no=&bu=&ta=&ky=%E7%A0%B4%E7%94%A3%E6%B3%95&page=29.

<u>ARGUMENT</u>

I.    **THE JAPAN PROCEEDING MEETS
      THE REQUIREMENTS FOR RECOGNITION**

13.    Under section 1517(a) of the Bankruptcy Code, "an order recognizing a foreign proceeding shall be entered if – (1) such foreign proceeding . . . is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502; (2) the foreign representative applying for recognition is a person or body; and (3) the petition meets the requirements of section 1515."  11 U.S.C. § 1517(a).  The Japan Proceeding is entitled to recognition as a "foreign main proceeding" under section 1517 of the Bankruptcy Code because:

   a.    the Petitioner is a "person" within the meaning of section 101(41) of the Bankruptcy Code and a "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code;

   b.    the Japan Proceeding is a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code;

   c.    the Japan Proceeding is a "foreign main proceeding" within the meaning of section 1502(4) of the Bankruptcy Code because the Japan Proceeding is pending in the jurisdiction where the Debtor's center of main interests is located;

   d.    the Amended Petition meets the procedural requirements of section 1515 of the Bankruptcy Code; and

   e.    granting recognition of the Japan Proceeding as a foreign main proceeding is not manifestly contrary to the public policy of the United States, and is therefore required pursuant to section 1517 of the Bankruptcy Code.

A.    <u>The Petitioner Qualifies As the Debtor's Foreign Representative.</u>

14.    The Amended Petition was filed by the Petitioner, the duly authorized "foreign representative" of MtGox within the meaning of section 101(24) of the Bankruptcy Code.  The term "foreign representative" is defined in section 101(24) of the Bankruptcy Code as follows:

   The term "foreign representative" means a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization

5

or the liquidation of the debtor's assets or affairs or to act as a
representative of such foreign proceeding.

11 U.S.C. § 101(24).  Additionally, section 101(41) of the Bankruptcy Code defines the term
"person" as an "individual, partnership, and corporation, but does not include governmental
unit."  11 U.S.C. § 101(41).   There can be no dispute that the Petitioner, an individual, is a
"person."

15.     By the Bankruptcy Order, the Tokyo Court appointed the Petitioner as MtGox's
bankruptcy trustee.  A true and correct copy of the Bankruptcy Order along with a certified
English translation is attached as Exhibit A to the Amended Petition.  Moreover, as set forth in
the Kobayashi Declaration, Article 78(1) of the Bankruptcy Act provides that the right to
administer and dispose of the debtor's bankruptcy estate upon the commencement of a
bankruptcy procedure is vested *solely* in the bankruptcy trustee, who is under the supervision of
the Tokyo Court.  Kobayashi Decl. ¶ 46; see also Bankruptcy Act, Art. 75 (attached as
Exhibit 1 to the Kobayashi Decl.).

16.     As the only person permitted under the Bankruptcy Act to administer the MtGox
bankruptcy estate, the Petitioner, in his capacity as bankruptcy trustee, thus qualifies as a
"foreign representative" under section 101(24) of the Bankruptcy Code.  Specifically, he is a
"person" – *i.e.*, an individual – that is "authorized in a foreign proceeding to administer the
reorganization or the liquidation of the debtor's assets or affairs." 11 U.S.C. § 101(24).

**B.     The Japan Proceeding is a Foreign Proceeding.**

17.     The Japan Proceeding is a "foreign proceeding" within the meaning of section
101(23) of the Bankruptcy Code.  Section 101(23) of the Bankruptcy Code provides that:

The term "foreign proceeding" means a collective judicial or
administrative proceeding in a foreign country, including an
interim proceeding, under a law relating to insolvency or
adjustment of debt in which proceeding the assets and affairs of the

6

debtor are subject to control or supervision by a foreign court, for
the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).

18.     In <u>In re Betcorp Ltd.</u>, 400 B.R. 266 (Bankr. D. Nev. 2009), the Bankruptcy Court

for the District of Nevada analyzed whether an Australian voluntary winding up proceeding

could be recognized as a foreign proceeding under Chapter 15.  That court noted that Chapter 15

"incorporate[s] the Model Law on Cross-Border Insolvency," and to interpret the term "foreign

proceeding," "the court shall consider its international origin, and the need to promote an

application of this chapter that is consistent with the application of similar statutes adopted by

foreign jurisdictions."  <u>Id.</u> at 275-76 (quoting 11 U.S.C. § 1508).

> To fall within the scope of the Model Law, a foreign insolvency
> proceeding needs to possess certain attributes.  These include the
> following:  basis in insolvency-related law of the originating State;
> involvement of creditors collectively; control or supervision of the
> assets and affairs of the debtor by a court or another official body;
> and reorganization or liquidation of the debtor as the purpose of
> the proceeding.

<u>Id.</u> at 276 (quoting UNCITRAL Model Law on Cross-Border Insolvency with Guide to

Enactment, ¶ 32).

19.     The court then conducted a lengthy examination of the Australian proceeding to

determine whether it met the section 101(23) requirements, namely whether it was:  "(i) a

proceeding; (ii) that is either judicial or administrative; (iii) that is collective in nature; (iv) that is

in a foreign country; (v) that is authorized or conducted under a law related to insolvency or the

adjustment of debts; (vi) in which the debtor's assets and affairs are subject to the control or

supervision of a foreign court; and (viii) which proceeding is for the purpose of reorganization or

liquidation."  <u>Id.</u> at 277.  That court concluded that all relevant criteria were met and recognized

the Australian proceeding as a foreign proceeding.

20.     Similarly, the Japan Proceeding meets all of the criteria set forth in section 101(23) of the Bankruptcy Code and related case law thereto, and is therefore entitled to recognition as a "foreign proceeding" under Chapter 15.

21.     First, the Japan Proceeding is a "proceeding," as it is a bankruptcy procedure under the Bankruptcy Act that was initiated by the Tokyo Court pursuant to the Bankruptcy Order following the dismissal of the Debtor's Japan Civil Rehabilitation.

22.     Second, the Japan Proceeding is "judicial" because it is:  (a) a proceeding that the Tokyo Court initiated by entering the Bankruptcy Order; and (b) a proceeding that the Tokyo Court is required to oversee and supervise pursuant to Article 75 of the Bankruptcy Act.  See Kobayashi Decl. ¶¶ 45-46, 63; see also Bankruptcy Act, Art. 75 (attached as Exhibit 1 to the Kobayashi Decl.).

23.     Third, the Japan Proceeding is "collective in nature" because the claims of all creditors will be addressed and resolved in a fair and neutral manner, without favoring any single creditor or group of creditors.  The court in Betcorp found that a proceeding was collective where it "considers the rights and obligations of all creditors" in contrast to a "receivership remedy instigated at the request, and for the benefit, of a single secured creditor."  400 B.R. at 281; see also In re ABC Learning Ctrs. Ltd., 445 B.R. 318, 328 (Bankr. D. Del. 2010) (citing Betcorp regarding the meaning of "collective in nature"), aff'd, 728 F.3d 301 (3d Cir. 2013).

24.     Here, the Japan Proceeding is a bankruptcy procedure under the Bankruptcy Act, which states that its purpose is to appropriately coordinate the interests of creditors and other interested persons and the relationship of rights between debtors and creditors, see Bankruptcy Act, Art. 1 (attached as Exhibit 1 to the Kobayashi Decl.), and requires that the distribution of assets with regard to bankruptcy claims be done fairly and in proportion to the amounts of the

bankruptcy claims of all creditors. <u>See</u> Bankruptcy Act, Art. 194(2) (attached as Exhibit 1 to the Kobayashi Decl.). As such, the Japan Proceeding is collective in nature.

25. <u>Fourth</u>, the Japan Proceeding is pending in Japan, a foreign country.

26. <u>Fifth</u>, the Japan Proceeding is "authorized or conducted under a law related to insolvency" because it is governed by the Bankruptcy Act, which specifies the proceedings for the liquidation of property held by debtors who are unable to pay their debts or are insolvent. <u>See</u> Bankruptcy Act, Art. 1 (attached as Exhibit 1 to the Kobayashi Decl.).

27. <u>Sixth</u>, the Japan Proceeding is "subject to the control or supervision of a foreign court" because the Tokyo Court is required to supervise the fair and neutral administration of the Debtor's bankruptcy estate pursuant to Article 75 of the Bankruptcy Act. <u>See</u> Bankruptcy Act, Art. 75 (attached as Exhibit 1 to the Kobayashi Decl.).

28. <u>Seventh</u>, the objective of the Japan Proceeding, as described above, is the liquidation of the Debtor's assets in a fair and neutral manner for the benefit of all creditors.

29. Significantly, since the enactment of Chapter 15, U.S. courts have routinely recognized Japanese bankruptcy proceedings under the Bankruptcy Act (as well as other proceedings under Japanese insolvency law) as foreign proceedings. <u>See</u>, <u>In re Nanbu, Inc.</u>, Case No. 09-01274 (Bankr. D. Haw. July 15, 2009) [Docket No. 9] (recognizing Japanese bankruptcy proceeding under Bankruptcy Act as a foreign main proceeding); <u>In re Three Estates Co., Ltd.</u>, Case No. 07-23597 (Bankr. E.D. Cal. Aug. 30, 2007) [Docket No. 31] (same); <u>In re Iida</u>, Case No. 06-00376 (Bankr. D. Haw. July 14, 2006) [Docket No. 13] (same), <u>aff'd</u> 377 B.R. 243 (9th Cir. BAP 2007); <u>In re Gestion-Privee Location L.L.C.</u>, Case No. 06-80071 (Bankr. M.D.N.C. Feb. 24, 2006) [Docket No. 11] (same); <u>In re Kokura</u>, Case No. 06-00849 (Bankr. D. Haw. Dec. 22, 2006) [Docket No. 21] (same); <u>see also</u> <u>In re Elpida Memory, Inc.</u>, Case No. 12-

10947 (Bankr. D. Del. Apr. 24, 2012) [Docket No. 65] (recognizing Japanese corporate reorganization proceeding as a foreign main proceeding); In re Japan Airlines Corp., Case No. 10-10198 (Bankr. S.D.N.Y. Feb. 17, 2010) [Docket No. 49] (same); In re Spansion Japan Ltd., Case No. 09-11480 (Bankr. D. Del. May 28, 2009) [Docket No. 30] (same).

30.      As all of the criteria required by section 101(23) of the Bankruptcy Code are satisfied, this Court should recognize the Japan Proceeding as a "foreign proceeding" as required by section 1517 of the Bankruptcy Code.

**C.      The Japan Proceeding Is A Foreign Main Proceeding.**

31.      A foreign proceeding within the meaning of section 101(23) of the Bankruptcy Code may be recognized under section 1517 of the Bankruptcy Code as either (i) a "foreign main proceeding" or (ii) a "foreign nonmain proceeding," within the meaning of section 1502 of the Bankruptcy Code.  See 11 U.S.C. § 1517(a)(1).

32.      Section 1502(4) defines "foreign main proceeding" as "a foreign proceeding pending in the country where the debtor has the center of its main interests."  11 U.S.C. § 1502(4).  Section 1517(b)(1) of the Bankruptcy Code provides that a foreign proceeding "*shall* be recognized as a foreign main proceeding if it is pending in the country where the debtor has the center of its main interests."  11 U.S.C. § 1517(b)(1) (emphasis added).  Thus, where, as is the case here, a foreign proceeding is pending in the country in which the debtor has its COMI, such proceeding *must* be recognized as a foreign main proceeding.  Additionally, the Fifth Circuit and other courts have established that a debtor's COMI is determined as of the time the Chapter 15 petition for recognition is filed in the United States.  See Lavie v. Ran (In re Ran), 607 F.3d 1017, 1025 (5th Cir. 2010); see also Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.), 714 F.3d 127, 133 (2d Cir. 2013) (hereinafter "Fairfield Sentry II").

1.      **The Statutory Presumption of a Japan COMI Applies.**

33.     The phrase "center of main interests" is a term of art that the Bankruptcy Code does not define explicitly.  See In re Betcorp Ltd., 400 B.R. at 287 ("the term 'center of main interests' is not specifically defined, either in chapter 15 or the Model Law").  However, section 1516(c) of the Bankruptcy Code provides that, "in the absence of evidence to the contrary, the debtor's registered office . . . is presumed to be the center of the debtor's main interests."  11 U.S.C. § 1516(c); see In re Tri-Cont'l Exch. Ltd., 349 B.R. 627, 635 (Bankr. E.D. Cal. 2006) ("In effect, the registered office (or place of incorporation) is evidence that is probative of, and that may in the absence of other evidence be accepted as a proxy for, 'center of main interests.'"), aff'd, 389 B.R. 326 (S.D.N.Y. 2008); see also In re Ran, 607 F.3d at 1022; In re Betcorp, 400 B.R. at 291; In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, 374 B.R. 122, 127 (Bankr. S.D.N.Y. 2007), aff'd 389 B.R. 325 (S.D.N.Y. 2008); In re Tradex Swiss AG, 384 B.R. 34, 43 (Bankr. D. Mass. 2008).

34.     In this case, the Debtor is a Japanese corporation and its registered office is, and has always been, located in Japan.  See Kobayashi Decl. ¶¶ 8, 14.  Accordingly, there is a statutory presumption that the Debtor's COMI is in Japan.

35.     Although the statutory presumption may be rebutted by "evidence to the contrary," the relevant evidence – and, in particular, documents from the Debtor's books and records attached to the Kobayashi Declaration – overwhelmingly demonstrates that the Debtor's COMI is located in Japan.  Indeed, there is no plausible claim that the Debtor's COMI exists in any other jurisdiction.  See In re Chiang, 437 B.R. 397, 403 (Bankr. C.D. Cal. 2010) ("a debtor must have a COMI and it must be in a specific country").  Therefore, the presumption of a Japan COMI cannot be rebutted and, even if the Court were to decide not to rely on the presumption, the evidence affirmatively and unequivocally establishes a Japan COMI.

**2.      The Debtor's Central Place of Administration is
Located in Japan, a Fact that is Ascertainable by Third Parties.**

36.      U.S. courts and other relevant authorities have instructed that, in determining a

debtor's COMI, the principal factors are the location of the debtor's central place of

administration and whether that place of administration is ascertainable by third parties.  For

example, in In re Ran, the Fifth Circuit held that:

> [I]t is important that the debtor's COMI be ascertainable by third
> parties.  If the debtor's main interests are in a particular country
> and third parties observe this situation, it should be irrelevant that
> the debtor's interests were previously centered in a different
> country . . . .  The presumption is that creditors will look to the law
> of the jurisdiction in which they perceive the debtor to be operating
> to resolve any difficulties they have with that debtor, regardless of
> whether such resolution is informal, administrative or judicial.

607 F.3d at 1025-26.  Moreover, in Fairfield Sentry II, the Second Circuit held that "[t]he

relevant principle . . . is that the COMI lies where the debtor conducts its regular business, so that

the place is ascertainable by third parties," 714 F.3d at 130; see also In re Betcorp, 400 B.R. at

290 (the COMI determination "examines the debtor's administration, management, and

operations along with whether reasonable and ordinary third parties can discern or perceive

where the debtor is conducting these various functions."); In re Gerova Fin. Grp., Ltd., 482 B.R.

86, 91 (Bankr. S.D.N.Y. 2012) (whether COMI is "ascertainable to third parties" is "an

important factor in the COMI determination").

37.      Similarly, U.S. courts have also equated the COMI concept with "principal place

of business" under U.S. law.  See In re Betcorp, 400 B.R. at 287 ("the phrase 'center of main

interests' . . . could have been replaced by 'principal place of business' as a phrase more familiar

to American judges and lawyers.") (quoting Jay Lawrence Westbrook, Chapter 15 at Last, 79

Aᴍ. Bᴀɴᴋʀ. L.J. 713, 719–20 (2005)); In re Bear Stearns High-Grade Structured Credit

Strategies Master Fund, 374 B.R. at 129 ("[T]he COMI concept . . . generally equates with the concept of a 'principal place of business' in United States law.") (citing In re Tri-Cont'l Exch. Ltd., 349 B.R. at 634). The principal place of business is where "a corporation's officers direct, control, and coordinate the corporation's activities," otherwise known as the corporation's "nerve center." Hertz Corp. v. Friend, 559 U.S. 77, 92-93 (2010); see also In re Fairfield Sentry Ltd., 440 B.R. 60, 64 (Bankr. S.D.N.Y. 2010) ("Fairfield Sentry I") (finding that the debtor's COMI was in the British Virgin Islands where "[a]lthough the Debtors' assets and investors are international, the facts before the Court suggest that the Debtors' most feasible administrative 'nerve center' has existed for some time in the BVI"), aff'd, 2011 WL 4357421 (S.D.N.Y. Sept. 16, 2011), aff'd, 714 F.3d 127 (2d Cir. 2013).

38.    In addition, and importantly, section 1508 of the Bankruptcy Code instructs courts, in interpreting Chapter 15, to "consider its international origin, and the need to promote an application of [Chapter 15] that is consistent with the application of similar statutes adopted by foreign jurisdictions." 11 U.S.C. § 1508. Accordingly, the 2005 House Report [3] accompanying the enactment of Chapter 15 states that the Guide to Enactment of the UNCITRAL Model Law on Cross-Border Insolvency (the "UNCITRAL Guide")[4] "should be consulted for guidance as to the meaning and purpose of [Chapter 15's] provisions." H.R. Rep. No. 109-31(I), at 106 n. 101 (2005), reprinted in 2005 U.S.C.C.A.N. 88; see also In re Tri-Cont'l Exch. Ltd., 349 B.R. at 633 ("One of the sources that a United States court is obligated to treat as persuasive is the [UNCITRAL Guide]."). Thus, U.S. courts frequently consult the UNCITRAL

---

[3]  Professor Jay Lawrence Westbook, an expert on Chapter 15 and cross-border insolvency law, has stated that the House Report is the "most important source of authoritative interpretation of Chapter 15." Jay Lawrence Westbrook, Chapter 15 at Last, 79 AM. BANKR. L.J. 713, 719–20 (2005).

[4]  The sections of the UNCITRAL Guide cited herein are set forth in **Exhibit A** hereto. The full UNCITRAL Guide is available at http://www.uncitral.org/pdf/english/texts/insolven/1997-Model-Law-Insol-2013-Guide-Enactment-e.pdf.

Guide in interpreting the provisions of Chapter 15. See, e.g., In re Ran, 607 F.3d at 1023

(consulting the UNCITRAL Guide in interpreting the scope of the COMI presumption); In re

Ephedra Prod. Liab. Litig., 349 B.R. 333, 336 (S.D.N.Y. 2006) (consulting the UNCITRAL

Guide in interpreting the public policy exception of section 1506, noting that "the House

Judiciary Committee, in enacting Chapter 15, specifically indicated that the Guide should be

consulted for guidance as to the meaning and purpose of Chapter 15's provisions") (internal

quotation marks omitted); Fairfield Sentry II, 714 F.3d at 132 ("The legislative history

accompanying the passage of Chapter 15 recommends the [UNCITRAL Guide] for guidance as

to the meaning and purpose of [the Model Law's] provisions.") (internal quotation marks

omitted).

    39.    In January 2014, the UNCITRAL Guide was revised in order to, among other

things, provide certain clarifications regarding the determination of a debtor's COMI. Generally,

the UNCITRAL Guide advises that COMI should "correspond to the place where the debtor

conducts the administration of his interests on a regular basis and is therefore ascertainable by

third parties."[5]  UNCITRAL Guide ¶¶ 82-83.  Thus, and consistent with the U.S. authorities

referenced above, the UNCITRAL Guide instructs that two primary factors should be considered

in the COMI analysis, namely "the location:  (a) where the central administration of the debtor

takes place, and (b) which is readily ascertainable by creditors." Id. ¶ 145.  According to the

UNCITRAL Guide, *only* when these principal factors do not yield a clear answer regarding the

---

[5]    This formulation correlates with the European Union Counsel Regulation enacting the Convention on
Insolvency Proceedings, which states that "[t]he 'centre of main interests' should correspond to the place where
the debtor conducts the administration of his interests on a regular basis and is therefore ascertainable by third
parties."  Council Regulation (EC) No. 1346/2000 of 29 May 2000, Preamble ¶ 13.  As the Second Circuit
recently held, "[t]he focus on regularity and ascertainability should also inform our interpretation of the text."
Fairfield Sentry II, 714 F.3d at 136.

debtor's COMI should a court then consider additional factors related to the debtor's business.
Id. ¶ 146.

40.    Application of the foregoing factors, identified by both U.S. courts and the
UNCITRAL Guide as most significant to the COMI determination, decidedly points to a Japan
COMI.  First, the central administration of the Debtor is, and has always been, carried out in
Japan, as established by the following facts:

- The Debtor's corporate headquarters (the "Head Office") is, and has always been, located in Tokyo, Japan.  See Kobayashi Decl. ¶ 14.

- The Debtor has no offices or place of business outside of Japan.  See id.

- Mr. Karpeles has been the only director or officer of the Debtor since its inception, and he has resided in Japan during the entirety of this period.  See id. ¶ 16.

- The Debtor's parent company, Tibanne, provides operational and administrative services to the Debtor, including the provision of employees and making its servers and computer systems available to the Debtor for its business operations. See id. ¶ 18.  Tibanne is a Japanese corporation and its headquarters and employees are located in the same venue as the Debtor's Head Office in Japan. See id. ¶¶ 9, 14; see also In re British Am. Ins. Co. Ltd., 425 B.R. 884, 912 (Bankr. S.D. Fla. 2010) (holding that the location of the debtor's management functions, which were performed by its subsidiary as the debtor's agent pursuant to a services agreement, was relevant to the COMI determination).

- Upon the filing of the Japan Petition, the Debtor commenced an investigation in Japan with regard to the circumstances that led to the Japan Civil Rehabilitation, which investigation was subject to the oversight of the Tokyo Court.  See Kobayashi Decl. ¶¶ 37, 42; see also Fairfield Sentry II, 714 F.3d at 137 ("any relevant activities, including liquidation activities and administrative functions, may be considered in the COMI analysis").

Critically, Japan is not only the central place of administration, head office and "nerve center" of
the Debtor, it is the *sole* place of administration.  The Debtor has no offices or places of business
outside of Japan.  It is therefore indisputable that that the Debtor's place of central administration
is located in Japan.

41.    Moreover, the evidence also establishes that the Debtor's Japan COMI is reasonably ascertainable by creditors and third parties.  The Debtor has always held itself out as a Japanese company that is located in Japan.  Given the online nature of the Debtor's business, the Debtor has historically communicated and interfaced with its customers and creditors worldwide through electronic means, and in particular the MtGox website – http://www.mtgox.com (the "Website").  When the MtGox Exchange was operational, the Website communicated, *inter alia*, the following to its customers and others:

- The "Terms of Use" page of the Website referred to the Debtor as "a company incorporated under the laws of Japan" and disclosed its registered address in Tokyo.  See Kobayashi Decl. ¶ 31.

- The "Privacy Policy" page of the Website noted the Debtor's Tokyo address and its Tokyo phone number.  See id.

- The "About Us" page of the Website previously contained a link to the Debtor's "official registration at the Tokyo Chamber of Commerce."  See id.

- The Debtor required that customers provide certain verification documents in order to deposit funds in or withdraw funds from their accounts.  The "AML Account Statuses" page of the Website instructed customers wishing to upgrade their accounts to a "premium account" to mail their identification documents to the Debtor's office in Tokyo verification.  See id. ¶ 27.

- The "General Questions Page" of the Website stated that the Debtor is based in Japan and that, because of this, there may be a delay in the response time to some user support inquiries.  See id. ¶ 28.

42.    Moreover, when the MtGox exchange was shut down and the Japan Petition was filed in February 2014, the Debtor continued to use the Website to communicate with customers, creditors and other parties.  On February 28, 2014, the Debtor posted to the Website a notice regarding the filing of the Japan Petition (the "February 28 Notice").  That notice listed the Tokyo address of the Debtor's Head Office.  It also communicated that the Debtor had established a call center with a Tokyo telephone number and directed all inquiries to be made to

16

that number (the "Call Center").  See id. ¶ 32.  Subsequent to the February 28 Notice, the Debtor published additional notices regarding the Japanese proceedings that identified both the Tokyo address of the Head Office and details regarding the Call Center.  See id.  Moreover, upon the appointment of the Petitioner as provisional administrator and, thereafter, as bankruptcy trustee, the Petitioner has published additional notices on the Website, providing information regarding the activities in Japan relating to the Debtor's insolvency proceedings before the Tokyo Court. See id. ¶ 33.  See In re British Am. Ins. Co. Ltd., 425 B.R. at 914 (noting that a foreign representative's activities may cause the debtor's creditors and third parties to look to the location of the foreign representative as the debtor's COMI).

43.     Finally, further evidence that the Debtor's Japan COMI was reasonably ascertainable by third parties includes statements and admissions by CoinLab Inc. and the Class Action plaintiffs in their respective complaints that MtGox, as well as its parent company Tibanne, have their principal place of business in Tokyo.  See First Amended Complaint, CoinLab, Inc. v. MtGox KK, Case No. 13-0777 (MJP) (W.D. Wash. May 2, 2013) [Docket No. 29], ¶¶ 3, 5; Corrected First Amended Class Action Complaint, Greene v. MtGox Inc., Case No. 14-01437 (GF) (N.D. Ill. Feb. 27, 2014) [Docket No. 37], ¶¶ 8-10.

44.     In short, the evidence conclusively establishes that (i) the Debtor's central place of administration is in Japan, and (ii) that central place of administration is reasonably ascertainable by creditors and other third parties, based on objective and publicly available facts.

### 3.      Other Factors Also Support a Japan COMI.

45.     The Petitioner respectfully submits that, because of the statutory presumption of a Japan COMI and because the principal COMI factors unequivocally establish a Japan COMI, it is not necessary for this Court to consider other factors.  However, even if it does, additional

factors further support a finding that the Debtor's COMI is in Japan, and those factors certainly

do not point to a COMI in any other jurisdiction.

46.    In In re Ran, the Fifth Circuit identified several additional factors that may be

relevant to the COMI analysis:

> [T]he location of the debtor's headquarters; the location of those
> who actually manage the debtor; . . . the location of the debtor's
> primary assets; the location of the majority of the debtor's creditors
> or of a majority of the creditors who would be affected by the case;
> and/or the jurisdiction whose law would apply to most disputes.

In re Ran, 607 F.3d at 1023 (citing In re SPhinX, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006),

aff'd, 371 B.R. 10 (S.D.N.Y. 2007)).   Notably, the analysis of additional COMI factors is a

flexible one, as "courts do not apply any rigid formula or consistently find one factor

dispositive."  In re Betcorp Ltd., 400 B.R. at 290.

47.    Similarly, the UNCITRAL Guide also provides that "[w]hen [the] principal

factors do not yield a ready answer regarding the debtor's [COMI], a number of additional

factors concerning the debtor's business may be considered."  Id. ¶ 146.  The additional factors

suggested in the UNCITRAL Guide are non-exclusive of other potential factors, but all factors

should be considered holistically and "give greater or less weight to a given factor, depending on

the circumstances of the particular case."  Id.  The additional factors set forth in the UNCITRAL

Guide include the following:

    a.    the location of the debtor's books and records;

    b.    the location where financing was organized or authorized, or from where
       the cash management system was run;

    c.    the location in which the debtor's principal assets or operations are found;

    d.    the location of the debtor's primary bank;

    e.    the location of employees;

f.      the location in which commercial policy was determined;

g.      the site of the controlling law or the law governing the main contracts of the company;

h.      the location from which purchasing and sales policy, staff, accounts payable and computer systems were managed;

i.      the location from which contracts (for supply) were organized;

j.      the location from which reorganization of the debtor was being conducted;

k.      the jurisdiction whose law would apply to most disputes;

l.      the location in which the debtor was subject to supervision or regulation; and

m.      the location whose law governed the preparation and audit of accounts and in which they were prepared and audited.

<u>Id.</u> ¶ 147.

48.     As demonstrated in detail below, the additional factors that may be considered in the COMI analysis either provide further support for a Japan COMI or, in some instances, are neutral to the COMI analysis.  These factors do not establish, or even remotely suggest, that the Debtor's COMI is located in any jurisdiction other than Japan.  The other potentially relevant factors that have not otherwise been addressed above are as follows:

49.     *The Location of the Debtor's Primary Assets*.  As of February 20, 2014, the Debtor's liquid assets (other than bitcoins) included approximately $4.9 million of fiat currency held in approximately 43 accounts with 14 different banks and payment service providers.  <u>See</u> Kobayashi Decl. ¶ 51.  Of those 43 accounts, 39 are located in Japan, and the others are located in the Caribbean, Europe and Australia.  <u>See id.</u>  The Debtor's primary operational bank account has always been located in Japan.  <u>See id.</u>  The Petitioner has also repatriated to Japan approximately $5 million in fiat currency that was previously held in MtGox Poland accounts.

See id. ¶ 52.   In addition, the Debtor has a potential claim to recover all or a portion of approximately $5 million of cash that the United States Department of Homeland Security seized in March 2013, which may include funds belonging to the Debtor.  See id. ¶ 53.  The Debtor's other tangible assets include servers and other computer equipment located in Japan.  See id. ¶ 54.

50.   *The Location of a Majority of the Debtor's Creditors*.   As set forth in the Kobayashi Declaration, the Debtor has approximately 120,000 customers, but the Petitioner is currently only aware of the location of approximately 80,000 of them.  See id. ¶ 24.  These known customers are located in approximately 175 countries around the world.   See id. Although approximately 30,000 customers are located in the United States, see id., that is plainly not a majority, and there are a significant number of customers in other countries, including Germany, Canada, the United Kingdom and France, as well as over 1,000 customers in Japan. See id.  Additionally, the Debtor has at least 10 trade creditors that provided goods or services to the Debtor prior to the filing of the Japan Petition.  Of these trade creditors, approximately 5 have offices located in Japan.  The remaining trade creditors are located in various jurisdictions, including the United States, the United Kingdom, Poland, and India.  See id. ¶ 29.

51.   *The Law Governing Disputes Under Key Contracts*.   As described in the Kobayashi Declaration, the Debtor has entered into a number of contracts relating to its business and operations, which are governed by the laws of various jurisdictions, including Japan:

- The Debtor's most important contract is its Services Agreement with Tibanne. Although the Services Agreement does not contain a choice of law provision, any disputes arising under the Services Agreement will likely be governed by Japanese law because:  (i) both parties are Japanese companies; (ii) performance under the Services Agreement occurs in Japan; and (iii) the subject matter of the contract relates to assets located in and services performed in Japan.  See Kobayashi Decl. ¶¶ 18, 55; see also Services Agreement (attached as Exhibit 7 to the Kobayashi Decl.).

- Of the Debtor's two Outsourcing Agreements, pursuant to which independent contractors provide customer support services, one is governed by Japanese law and the other is governed by Indian law.  See id. ¶ 19.

- An "anti-money laundering" services agreement is governed by English law.  See id. ¶ 20.

- An agreement for the provision of services related to the design and development of a marketing website is governed by the law of Ontario, Canada.  See id.

- The license agreement between the Debtor and CoinLab, Inc. (which is subject to dispute in the CoinLab Action (defined below)) for the operation of the Debtor's business in the United States and Canada (which agreement was never performed) is governed by the law of the State of Washington.  See id. ¶ 57.

- The agreement for the MtGox NA joint venture is governed by the laws of both Japan and the State of Indiana.  See id. ¶ 11.

52.    *The Location of the Debtor's Books and Records*.  The Debtor's books and records are located at the Debtor's Head Office in Japan.  See id. ¶ 15.

53.    *The Location of Cash Management System*.  As previously stated, the Debtor has 43 bank accounts, of which 39 are located in Japan.  See id. ¶ 51.  Furthermore, the Debtor's Head Office was its only office and thus the only office from which the cash management system could be managed.  See id. ¶ 14.

54.    *The Location of the Debtor's Primary Bank*.  The Debtor's primary bank for business activities was the Japan Net Bank, Limited, which is located in Japan.  See id. ¶ 51.

55.    *The Location of Employees and Staff*.  The Debtor does not have, and has never had, any direct employees, but instead relies on the Services Agreement with Tibanne for its workforce.  All of the employees provided by Tibanne under the Services Agreement performed their work in Japan.  See id. ¶ 18.  Pursuant to the Outsourcing Agreements, the Debtor had approximately 40 individuals working on its behalf in the United Kingdom and India.  See id. ¶

19. Additionally, the Debtor had one independent contractor working on its behalf in Peru.  See id.

56. *The Location Where Commercial Policy Was Determined*.  At all times, the Debtor's Head Office – and its only office – was located in Japan.  See id. ¶ 14.  Additionally, the Debtor's sole director and representative director has always been Mr. Karpeles, who at all relevant times has resided in Japan.  See id. ¶ 16.  As such, Japan is the only place where the Debtor's commercial policy could have been determined.

57. *The Location of Computer Systems*.  The Debtor owns servers and other computer equipment located in Japan.  See id. ¶ 54.  Pursuant to the Services Agreement, the Debtor also leases from Tibanne several servers that are located in Japan.  See id. ¶ 55.  Tibanne also leases certain backup servers, which contain some of the Debtor's data, from third parties, and such backup servers were, as of the Chapter 15 Petition Date, located in the United States, the United Kingdom, France and Germany.  See id.

58. *The Location from which the Debtor's Reorganization was Conducted*.  Both the Debtor's Japan Civil Rehabilitation and Japan Proceeding have been conducted in Japan, under the supervision of the Tokyo Court, with the Tokyo-based Petitioner initially acting as supervisor and examiner, and then provisional administrator, and now bankruptcy trustee in those proceedings.  See id. ¶¶ 38-47.

59. *The Location in Which the Debtor was Subject to Supervision/Regulation*.  Under the Bankruptcy Order and the Bankruptcy Act, the Debtor is subject to the supervision of the Tokyo Court located in Japan.  See id. ¶¶ 45-46; see also Bankruptcy Order (attached as Exhibit A to the Amended Petition); Bankruptcy Act, Art. 75 (attached as Exhibit 1 to the Kobayashi Decl.).

60.     *The Location Whose Law Governs Account Audits*.    Under Japanese corporate law, the Debtor is not legally obligated to have financial statements audited by a third party, and the Debtor did not have its accounts audited.    See id. ¶ 17.    The Debtor did, however, have unaudited financial statements prepared by Japan-based accountants Aoyama & Partners, pursuant to an agreement governed by Japanese law.    See id.

61.     Viewing the totality of the relevant contacts between the Debtor and the various jurisdictions with which it has contacts and interests, it is clear that no jurisdiction other than Japan has a plausible claim as the Debtor's COMI.    In comparison to the Debtor's substantial connections with Japan, its connections with other jurisdictions are minimal and scattered, and therefore insufficient to support a finding that COMI exists elsewhere.

62.     Given (i) the statutory presumption of a Japan COMI, (ii) that the Debtor's central place of administration is and always has been in Japan, (iii) that a Japan COMI is and was reasonably ascertainable by creditors and other third parties, and (iv) the Debtor's other material connections to Japan, this is a clear-cut case that the Debtor's COMI is in Japan.    Accordingly, the Japan Proceeding should be recognized as a "foreign main proceeding" within the meaning of section 1502(4) of the Bankruptcy Code.

**D.     In the Event the Japan Proceeding
Is Not Recognized as a Foreign Main Proceeding,
It Should Be Recognized as a Foreign Nonmain Proceeding.**

63.     As discussed in detail above, the evidentiary record does not rebut the statutory presumption that the Debtor's COMI is in Japan; to the contrary, the record affirmatively and clearly establishes COMI in Japan and no place else.    However, in the event this Court concludes that the Japan Proceeding is not a "foreign main proceeding," then the Petitioner submits that the Japan Proceeding should be recognized, in the alternative, as a "foreign nonmain proceeding" within the meaning of section 1502(5) of the Bankruptcy Code.

23

64.     As stated above, section 1517(a) of the Bankruptcy Code provides that "an order recognizing a foreign proceeding shall be entered if (1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502."  11 U.S.C. § 1517(a)(1).  Section 1502(5) of the Bankruptcy Code defines foreign nonmain proceeding as "a foreign proceeding, other than a foreign main proceeding, pending in a country where the debtor has an establishment."  11 U.S.C. § 1502(5).

65.     To qualify as a foreign nonmain proceeding, a debtor must have an establishment in the country in which the foreign proceeding is pending.  Id.  "Establishment" is defined in section 1502(2) of the Bankruptcy Code to mean "any place of operations where the debtor carries out a nontransitory economic activity."  11 U.S.C. § 1502(2).  "Nontransitory economic activity" is not defined in the Bankruptcy Code, but the place in which such activity is conducted has been interpreted to mean "a place of business."  See In re Ran, 607 F.3d at 1027 (citing Bear Stearns, 374 B.R. at 131).  Similar to the time of evaluating a debtor's COMI, whether the debtor has an "establishment" in a country is also determined as of the time of the filing of the Chapter 15 petition.  In re Ran, 607 F.3d at 1027.

66.     Here, nontransitory economic activity in respect of the Debtor is and has been carried out in Japan.  Although it had customers all over the world, the Debtor has always maintained a single place of business, which is located in Japan.  See Kobayashi Decl. ¶ 14.  It is from that place of business that the Debtor controlled and managed its operations and assets. Moreover, upon the commencement of the Japan Proceeding and the Petitioner's appointment as bankruptcy trustee in April 2014, the Petitioner has actively managed the Debtor's business and assets from the Tokyo offices of his law firm, Nagashima Ohno & Tsunematsu.  See id. ¶¶ 46-47, 65.

24

67.     The Debtor has "a place of business" in Japan because it has always maintained its only office there and its winding up activities are based in that jurisdiction.  Thus, the Debtor has an "establishment" in Japan.  See In re Millennium Global Emerging Credit Master Fund Ltd., 458 B.R. 63, 85 (Bankr. S.D.N.Y. 2011) (noting that the threshold requirements of an establishment are the existence of an asset in a country together with evidence of some management thereof within that country), aff'd, 474 B.R. 88 (S.D.N.Y. 2012).

68.     Accordingly, in the event this Court declines to recognize the Japan Proceeding as a foreign main proceeding, it should alternatively conclude that the Japan Proceeding is entitled to recognition as a "foreign nonmain proceeding" within the meaning of 1502(5) of the Bankruptcy Code.

### E.     The Requirements of Section 1515 Have Been Satisfied.

69.     Section 1515 of the Bankruptcy Code sets forth three technical requirements that must be satisfied to obtain recognition:  (i) the foreign representative must file a petition for recognition; (ii) the foreign representative must establish that a foreign proceeding exists by providing a certified copy of the decision commencing the foreign proceeding; and (iii) the petition for recognition must be accompanied by a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative.  See 11 U.S.C §§ 1515, 1517(a)(3); see also In re Ran, 607 F.3d at 1021.  Additionally, section 1515(d) of the Bankruptcy Code requires that the foreign representative provide English translations of the decision commencing the foreign proceeding.  See 11 U.S.C. § 1515(d).

70.     Here, the Petitioner has filed with the Court  (i) the Amended Petition; (ii) a certified copy of the Bankruptcy Order, along with a certified English translation, which affirms the existence of the Japan Proceeding and the appointment of the Petitioner as the bankruptcy trustee, in satisfaction of section 1515(b)(1) of the Bankruptcy Code, see Amended Petition,

Exhibit E; and (iii) a statement verifying that the Petitioner is not aware of any foreign proceedings with respect to MtGox other than the Japan Proceeding, in satisfaction of section 1515(c) of the Bankruptcy Code.  See id. Exhibit B.  As such, the Petitioner has satisfied each of the technical requirements for recognition pursuant to section 1515 of the Bankruptcy Code.

> **F.      Recognition of the Japan Proceeding**
> **Would Not Be Manifestly Contrary to U.S. Public Policy**

71.      Section 1517(a) of the Bankruptcy Code provides that entry of an order recognizing a foreign proceeding is "subject to section 1506."  Section 1506 of the Bankruptcy Code provides as follows:

> Nothing in this chapter prevents the court from refusing to take an action governed by this chapter if the action would be manifestly contrary to the public policy of the United States.

11 U.S.C. § 1506.

72.      Notwithstanding the potential applicability of section 1506 in connection with the recognition determination, the Fifth Circuit and other courts have instructed that it must be construed very narrowly.  See In re Ran, 607 F.3d at 1021 ("the exception is intended to be invoked only under *exceptional circumstances* concerning matters of *fundamental importance for the United States*") (emphasis added); In re Tri-Cont'l Exch. Ltd., 349 B.R. at 638 n.16 ("The word 'manifestly' in international usage restricts the public policy exception to *the most fundamental policies* of the United States . . . [Its purpose] . . . is to emphasize that the public policy exception should be *interpreted restrictively* and that [provision] is only intended to be invoked under *exceptional circumstances* concerning matters of fundamental importance for the enacting State.") (citing the UNICTRAL Guide) (emphasis added); Fairfield Sentry II, 714 F.3d at 139  ("The statutory wording [of section 1506] requires a narrow reading.").

26

73.     In this case, there is no U.S. public policy whatsoever that would be contravened by recognition of the Japan Proceeding.  As noted above, since the enactment of Chapter 15, U.S. courts have routinely recognized Japanese bankruptcy proceedings under the Bankruptcy Act.  <u>See</u> <u>supra</u> ¶ 29 (citing cases); <u>see also</u> <u>In re Iida</u>, 377 B.R. 243, 259 (9th Cir. BAP 2007) (stating that objector-appellants "have not articulated a fundamental policy of the United States that is offended by recognizing the Japanese bankruptcy proceeding").

74.     Indeed, recognizing the Japan Proceeding as a foreign main proceeding would advance the express objectives of Chapter 15 set forth in section 1501 of the Bankruptcy Code, including:  (i) the "fair and efficient administration of cross-border insolvencies that protects the interests of all creditors and other interested entities, including the [D]ebtor," 11 U.S.C. § 1501(a)(3); and (ii) the "protection and maximization of the value of the [D]ebtor's assets."  11 U.S.C. § 1501(a)(4).  Here, foreign main recognition will, *inter alia*, give the Debtor the benefit of the automatic stay in the United States, <u>see</u> 11 U.S.C. § 1520(a)(1), and give the Petitioner, as the Debtor's foreign representative, access to U.S. courts for relief in aid of the Japan Proceeding.  <u>See</u> 11 U.S.C. § 1509(b).  Thus, recognition will materially aid Petitioner's efforts to maximize recoveries for, and provide for an equitable distribution of value among, all creditors.

## II.     THE PETITIONER REQUESTS ADDITIONAL NECESSARY AND APPROPRIATE RELIEF PURSUANT TO BANKRUPTCY CODE SECTION 1521(a)

75.     Upon recognition of the Japan Proceeding, whether as a foreign main or foreign nonmain proceeding, this Court is empowered to grant "any appropriate relief" pursuant to section 1521(a) of the Bankruptcy Code where such relief is "necessary to effectuate the purpose of [Chapter 15] and to protect the assets of the debtor or the interests of the creditors."  11 U.S.C. § 1521(a).  Relief under Section 1521(a) is appropriate so long as "the interests of the creditors

and other interested entities, including the debtor, are sufficiently protected."   11 U.S.C. §
1522(a).

76.      Here, the Petitioner respectfully requests that this Court grant the following
additional relief under section 1521(a):  (i) granting the Petitioner the right, upon recognition, to
seek leave to examine witnesses, take evidence or deliver information concerning the debtor's
assets, affairs, rights, obligations or liabilities, pursuant to section 1521(a)(4); and (ii) entrusting
the Petitioner, as the Debtor's foreign representative, with the administration or realization of all
of the Debtor's assets within the territorial jurisdiction of the United States, pursuant to section
1521(a)(5).[6]

77.      The additional relief requested by the Petitioner under section 1521(a) of the
Bankruptcy Code will assist the Petitioner in carrying out his duties as bankruptcy trustee and
will promote the effective administration of the Japan Proceeding.  In particular, the Petitioner,
as bankruptcy trustee, is tasked with investigating the bankruptcy estate.  As part of that
investigation, the Petitioner may need to seek discovery against parties in the United States.

78.      Moreover, under Article 78(1) of Bankruptcy Act, the Petitioner, as the Debtor's
bankruptcy trustee, has the sole right and power to administer the assets of the Debtor's
bankruptcy estate.  See Bankruptcy Act, Art. 78(1) (attached as Exhibit 1 to the Kobayashi
Decl.).   The entrustment relief requested herein will, therefore, assist the Petitioner in
administering the Debtor's global estate in an efficient and value-maximizing manner, for the

---

[6]   11 U.S.C. §§ 1521(a)(4)-(5) provides, in relevant part, that "(a) Upon recognition of a foreign proceeding,
whether main or nonmain, where necessary to effectuate the purpose of this chapter and to protect the assets of
the debtor or the interests of the creditors, the court may, at the request of the foreign representative, grant any
appropriate relief, including – (4) providing for the examination of witnesses, the taking of evidence or the
delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities; [and] (5)
entrusting the administration or realization of all or part of the debtor's assets within the territorial jurisdiction
of the United States to the foreign representative or another person, including an examiner, authorized by the
court."

benefit of all creditors.  As such, the Petitioner respectfully submits that the discovery rights and entrustment relief requested herein satisfy the criteria under sections 1521(a) and 1522(a) of the Bankruptcy Code, and therefore requests that this Court grant such relief.[7]

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Petitioner respectfully requests that this Court enter an Order:  (i) recognizing the Japan Proceeding as a foreign main proceeding or, if not so recognized, as a foreign nonmain proceeding; (ii) granting the Petitioner additional necessary and appropriate relief pursuant to section 1521(a) of the Bankruptcy Code; and (iii) granting such other and further relief as may be just and proper.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

---

[7] In the event the Court recognizes the Japan Proceeding as a foreign nonmain proceeding, the Petitioner also requests relief under Sections 1521(a)(1)-(3), which allows the Court, as a discretionary matter, to grant the relief that is automatically available upon foreign main recognition pursuant to Section 1520(a).  That relief includes:  "(1) staying the commencement or continuation of an individual action or proceeding concerning the debtor's assets, rights, obligations or liabilities to the extent they have not been stayed under section 1520(a); (2) staying execution against the debtor's assets to the extent it has not been stayed under section 1520(a); [and] (3) suspending the right to transfer, encumber or otherwise dispose of any assets of the debtor to the extent this right has not been suspended under section 1520(a)."  11 U.S.C. § 1521(a)(1)-(3).

29

Dated:   May 23, 2014
        Dallas, Texas

Respectfully submitted,

**GARDERE WYNNE SEWELL LLP**

*/s/  Marcus A. Helt*
Marcus A. Helt (TX 24052187)
Thomas Scannell (TX 24070559)
Gardere Wynne Sewell LLP
1601 Elm Street, Suite 3000
Dallas, Texas 75201-4761
Telephone:  (214) 999-3000
Facsimile:  (214) 999-4667
Email:  mhelt@gardere.com
Email:  tscannell@gardere.com

- and -

**BROWN RUDNICK LLP**
David J. Molton (*admitted pro hac vice*)
Daniel J. Saval (*admitted pro hac vice*)
Seven Times Square
New York, New York 10036
Telephone:  (212) 209-4800
Facsimile:  (212) 209-4801
Email:  dmolton@brownrudnick.com
Email:  dsaval@brownrudnick.com

*Counsel for Nobuaki Kobayashi, in his capacity
as the Trustee and Foreign Representative
of MtGox Co., Ltd., a/k/a MtGox KK*

30

# EXHIBIT A:

# Cited Provisions of the UNCITRAL Guide

# Cited Provisions of the UNCITRAL Guide

*Subparagraph (b) – foreign main proceeding*

82.     The Model Law does not define the concept "centre of main interests".  However, an explanatory report (the "Virgos-Schmit Report"), prepared with respect to the European Convention, provided guidance on the concept of "main insolvency proceedings" and notwithstanding the subsequent demise of the Convention, the Report has been accepted generally as an aid to interpretation of the term "centre of main interests" in the EC Regulation. Since the formulation "centre of main interests" in the EC Regulation corresponds to that of the Model Law, albeit for different purposes (see para. 141 below), jurisprudence interpreting the EC Regulation may also be relevant to interpretation of the Model Law.

83.     Recitals (12) and (13) of the EC Regulation state:

> "(12) This Regulation enables the main insolvency proceedings to be opened in the Member State where the debtor has the centre of his main interests. These proceedings have universal scope and aim at encompassing all the debtor's assets. To protect the diversity of interests, this Regulation permits secondary proceedings to be opened to run in parallel with the main proceedings. Secondary proceedings may be opened in the Member State where the debtor has an establishment.  The effects of secondary proceedings are limited to the assets located in that State.  Mandatory rules of coordination with the main proceedings satisfy the need for unity in the Community.

> "(13) The 'centre of main interests' should correspond to the place where the debtor conducts the administration of his interests on a regular basis and is therefore ascertainable by third parties."

*Factors relevant to the determination of centre of main interests*

145.     In most cases, the following principal factors, considered as a whole, will tend to indicate whether the location in which the foreign proceeding has commenced is the debtor's centre of main interests.  The factors are the location: (a) where the central administration of the debtor takes place, and (b) which is readily ascertainable by creditors.  The date at which these factors should be analysed in order to determine the location of the debtor's centre of main interests is addressed in paragraphs 157-160 below.

146.     When these principal factors do not yield a ready answer regarding the debtor's centre of main interests, a number of additional factors concerning the debtor's business may be considered.  The court may need to give greater or less weight to a given factor, depending on the circumstances of the particular case. In all cases, however, the endeavour is an holistic one, designed to determine that the location of the foreign proceeding in fact corresponds to the actual

location of the debtor's centre of main interests, as readily ascertainable by creditors.

147.    The order in which the additional factors are set out below is not intended to indicate the priority or weight to be accorded to them, nor is it intended to be an exhaustive list of relevant factors; other factors might be considered by the court as applicable in a given case.    The additional factors may include the following: the location of the debtor's books and records; the location where financing was organized or authorized, or from where the cash management system was run; the location in which the debtor's principal assets or operations are found; the location of the debtor's primary bank; the location of employees; the location in which commercial policy was determined; the site of the controlling law or the law governing the main contracts of the company; the location from which purchasing and sales policy, staff, accounts payable and computer systems were managed; the location from which contracts (for supply) were organized; the location from which reorganization of the debtor was being conducted; the jurisdiction whose law would apply to most disputes; the location in which the debtor was subject to supervision or regulation; and the location whose law governed the preparation and audit of accounts and in which they were prepared and audited.