G. Larry Engel (admitted *pro hac vice*)
Vincent J. Novak (admitted *pro hac vice*)
Kristin A. Hiensch (admitted *pro hac vice*)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522
LEngel@mofo.com; VNovak@mofo.com;
KHiensch@mofo.com

Barry C. Barnett (TX Bar No. 01778700)
SUSMAN GODFREY L.L.P.
901 Main Street, Suite 5100
Dallas, Texas 75202
Telephone: 214.754.1903
Facsimile: 214.754.1933
bbarnett@SusmanGodfrey.com

*Attorneys for Creditor CoinLab, Inc.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 15 |
| MTGOX CO., LTD. (A/K/A MTGOX KK), | Case No. 14-31229-sgj-15 |
| Debtor in a foreign proceeding | |

## COINLAB, INC.'S STATUS CONFERENCE STATEMENT

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................... 1

II.   BACKGROUND REGARDING  THE SUNLOT PROPOSAL....................................... 3

     A.    Procedural Problems with the Sunlot Proposal...................................................... 3

     B.    Substantive Problems with the Sunlot Proposal .................................................... 5

III.  CONDITIONING RECOGNITION  ON SECTION 1522 CREDITOR
      PROTECTIONS ........................................................................................................... 9

     A.    CoinLab's Rights and Defenses Must Be Sufficiently Protected under
          §§ 1506 and 1522.................................................................................................. 9

     B.    Sufficient Protection of Rights Is a Condition Precedent to Recognition,
          and Thus Should Be Dealt with Now Consistent with Vitro ............................... 11

IV.  NEED FOR INVESTIGATION ................................................................................. 13

     A.    Creditors Must Be Fully Informed Before a Deal Can Be Struck ....................... 13

     B.    What Little Information Is Currently Available to Creditors Is Unreliable......... 15

V.    VENUE CONCERNS ................................................................................................ 18

**TABLE OF EXHIBITS**

| Exhibit | Description |
|---------|-------------|
| A. | Sunlot Proposal |
| B. | CoinLab Critique of each provision of the Sunlot Proposal |
| C. | *The Troubling Holes in MtGox's Account of How It Lost $600 Million in Bitcoins*, MIT TECHNOLOGY REVIEW |
| D. | *Bitcoin Foundation hit by resignations over new director*, REUTERS |
| E. | *Bitcoin consumer platform debuts at Circle*, USA TODAY |
| F. | *Bitcoin Exits Mt. Gox and Heads to Wall Street*, INSTITUTIONAL INVESTOR |
| G. | *U.S. Examines Bitcoin's Ties With Shuttered Silk Road*, DAILY BANKRUPTCY REVIEW |
| H. | *Mt. Gox Bankruptcy Trustee Outlines Liquidation Schedule*, CIO.COM |

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ad Hoc Grp. of Vitro Noteholders v. Vitro, S.A.B. de C.V. (In re Vitro, S.A.B. de C.V.),*
701 F.3d 1031 (5th Cir. 2012) ........................................................................ passim

*In re Exide Techs.,*
607 F.3d 957 (3d Cir. 2010)..................................................................3,5,7, 109

*In Sunbeam Prods., Inc. v. Chi. Am. Mfg., LLC,*
686 F.3d 372 (7th Cir. 2012) ..................................................................3, 5, 7, 10

*Jaffe v. Samsung Elecs. Co., Ltd.,*
737 F.3d 14 (4th Cir. 2013) ("*Qimonda*") ...........................................3, 5, 8, 10, 11

STATUTES

28 U.S.C.
§ 1410........................................................................................................17

11 U.S.C.
§ 1506 ................................................................................................ passim
§ 1522 ................................................................................................ passim

CoinLab, Inc. ("CoinLab"), a creditor and holder of various intellectual property and other rights, licenses, and defenses, hereby files this Status Conference Statement (this "Statement") by and through its attorneys, and respectfully represents as follows:

## I.
## INTRODUCTION

1.         CoinLab wishes to update this Court on recent developments that could impact the scheduling and procedures surrounding the petition for recognition in this Chapter 15 case. Although CoinLab is not formally requesting any specific relief by this Statement, CoinLab urges the Court to address these issues at the upcoming status conference.

2.         Sunlot Holdings Ltd. ("Sunlot"), a fund formed in Cypress, has proposed an objectionable plan of rehabilitation for the above-captioned debtor (the "Debtor" or "MtGox") as a means to implement a partial settlement with certain Karpeles co-defendants in the class action proceeding (the "Class Action") currently pending against the Debtor in the United States District Court for the Northern District of Illinois. (*See* Exhibit 1 to the Request for Judicial Notice ("RJN") filed concurrently herewith; Exhibit A hereto). As part of the proposed settlement plan (the "Sunlot Proposal"), Sunlot would procure all shares in MtGox for 1,000 JPY—without any fair or open bidding process, and without adequate disclosure to U.S. creditors—and certain creditors would receive pro-rata shares of common stock in a new entity (as yet unformed) equal to 16.5% in the aggregate, along with certain rights to distributions. Additionally, Sunlot would effectively replace the bankruptcy proceeding with its own privately controlled process, and would largely assume the role held by Nobuaki Kobayashi, the trustee in the Debtor's Japanese bankruptcy case (the "Trustee" or the "Japanese Trustee"), as to substantially all estate assets—for the benefit of only select depositors as determined by Sunlot. Under the proposal, Sunlot would be given control of (a) the related investigation and settlement of MtGox claims, (b) the allowance and disallowance of depositor claims against MtGox,[1] (c) the

---

[1] Part of Sunlot's strategy appears to be preventing court challenges to its settlement with, among others, Karpeles and other suspects and defendants, while allowing them to share in the distributions without having to

(Footnote continues on next page.)

1

recovery of estate assets, and (d) the making of distributions (in exchange for Sunlot receiving a US $10 million litigation war chest funded by the MtGox estate, plus 10% of any recoveries and any unclaimed funds or bitcoins that remain undistributed).  (*See* RJN Ex. 1 at PageID # 1123-26.)

3.      In an unprecedented procedural maneuver, Sunlot's proposal seeks class action approval in the Northern District of Illinois pursuant to a settlement between two individuals that have no ownership interest in MtGox.  Furthermore, the Sunlot deal does not account for the claims of other unsecured creditors of MtGox, such as CoinLab or creditors who have not received notice.  While this proposal would be subject to the ultimate approval of the Tokyo District Court and this Court, the Sunlot process is designed to eliminate key creditor protections and evade full scrutiny by the courts and creditors.

4.      The Sunlot Proposal implicates a host of considerations that directly affect this Chapter 15 proceeding.  CoinLab urges this Court to consider the issues raised herein and to be discussed at the status conference in order to fashion procedures that will provide the key parties with the opportunity to address in a systematic and meaningful way these concerns in connection with the upcoming recognition hearing.  As discussed in greater detail below, procedures should be addressed concerning treatment of the Sunlot Proposal itself, sufficient protection of creditors' rights under sections 1506 and 1522 of the Bankruptcy Code,[2] and discovery and other information sharing, among other concerns.

---

(Footnote continued from previous page.)

(a) file proofs of claim or (b) subject themselves to challenges by other creditors.

[2] References herein to the Bankruptcy Code are to Title 11 of the United States Code, as amended.  Statutory references used herein but not otherwise defined are to sections of the Bankruptcy Code.

## II.
## BACKGROUND REGARDING
## THE SUNLOT PROPOSAL

### A.    Procedural Problems with the Sunlot Proposal

5.      Although approval of the Sunlot Proposal is not presently before this Court, it continues to be processed in the Class Action, with the Trustee and creditors, and in the media. The issues raised by the Trustee's contemplation of the proposal will directly implicate U.S. creditors—as well as how creditors should proceed in order to protect their interests in connection with the recognition proceeding—and, thus, is squarely within this Court's province. As such, these disputes raise important questions to be addressed at the upcoming status conference.  Some of the chief procedural and substantive concerns surrounding the proposal are discussed briefly here.

6.      Exhibit B hereto contains a point-by-point analysis of the Sunlot Proposal on its merits (or lack thereof), and exposes flaws, misleading or incorrect statements by Sunlot, and other legal and business objections that could prejudice all creditors, including CoinLab. CoinLab recognizes that the Japanese Trustee may not wish to focus the attention of the recognition hearing on the Sunlot Proposal.  Nevertheless, this focus is not only legally necessary and appropriate, but also is essential in order to avoid needless and wasteful litigation here and in Japan.  For example, the Sunlot Proposal is not only substantively and procedurally objectionable, but it lacks necessary creditor protections required by sections 1506 and 1522 and contrary to the lessons learned in *Sunbeam Prods., Inc. v. Chi. Am. Mfg.*, LLC, 686 F.3d 372 (7th Cir. 2012) (hereinafter "*Sunbeam*"), *In re Exide Techs.*, 607 F.3d 957 (3d Cir. 2010) (hereinafter "*Exide*"), *Jaffe v. Samsung Elecs. Co., Ltd.*, 737 F.3d 14 (4th Cir. 2013) (hereinafter "*Qimonda*"), and *Ad Hoc Grp. of Vitro Noteholders v. Vitro, S.A.B. de C.V. (In re Vitro, S.A.B. de C.V.)*, 701 F.3d 1031 (5th Cir. 2012) (limiting the imposition upon creditors of third-party releases) (hereinafter "*Vitro*").  A process is needed to address these concerns.

7.      In an attempt to obtain approval of the Sunlot Proposal, Sunlot has crafted a procedural maneuver that attempts to cram down the proposal upon creditors, while avoiding

competitive bidding or other meaningful creditor safeguards. In the *Plaintiffs' Motion for Preliminary Settlement Approval* (Dkt. No. 79, Case No. 1:14-cv-01437, N.D. Ill.), attached as Exhibit 1 to the RJN and hereto as Exhibit A, Sunlot has proposed a "Rehabilitation Plan" for MtGox, which it attached to a class action settlement with a few insider co-defendants and colleagues of Mr. Karpeles[3] in the Class Action. The plaintiffs in the Class Action seek approval of a settlement between two individuals, Gonzague Gay-Bouchery and Jed McCaleb, and the putative class. One key problem with the proposal, of course, is that these individuals do not own or control the asset that they purport to settle. Mr. Gay-Bouchery is an employee of Tibanne with no equity. Mr. McCaleb is the founder of MtGox but has not been involved in the exchange for several years in any capacity. Although framed as a simple partial settlement of the Class Action, the Sunlot Proposal in effect would cram down a comprehensive plan upon depositor creditors worldwide without any real scrutiny or adequate disclosure, competition, or adequate opportunities for creditors to evaluate the merits of the proposal.

8. However, Sunlot seems to be relying on the theory that, if it can capitalize on victimized depositor-customers' hope for recovery, obtain approval of the settlement in the Class Action, and avoid too many creditors overlooking the flaws of the proposal, then Sunlot can present the proposal to the Japanese Trustee and the Tokyo District Court and allege (as it is now doing in the media) that Sunlot has obtained support by a "majority" of U.S. depositor-creditors *i.e.*, class-member depositor-creditors who simply failed to opt out of the settlement in a timely manner or to invest the time, money, or legal counsel to investigate, make informed decisions, and object to the Sunlot Proposal (which deadline has not yet passed in the Class Action). Furthermore, because CoinLab and perhaps many other creditors, in the U.S. and across the

---

[3] The proposed settling parties are two insider members of the Karpeles team who are supposedly changing sides. Of course, some have questioned whether there are really only two sides in this dispute: (a) the apparent Sunlot-Karpeles alliance and their favored creditors and soon-to-be released allies, and (b) the remainder of the creditors like CoinLab. *See* RJN Ex. 1 (the Class Action's deficient explanation of this Sunlot settlement scheme).

globe,[4] are not parties to the Class Action and have limited interest (or standing) to participate in that process, there is a very real risk that creditors generally will be prejudiced if the Sunlot Proposal gains momentum because of the lack of adequate disclosure and attention to this threat in the U.S. and Japanese bankruptcy cases.

9.      The Sunlot Proposal is predicated upon the Japanese bankruptcy liquidation proceeding (the U.S. Chapter 7 equivalent) being converted back into a civil rehabilitation proceeding or corporate reorganization (U.S. Chapter 11 equivalents).  Among other concerns, there is a risk that the Tokyo District Court, lacking expertise in the intricacies of U.S. class action proceedings, may accept at face value Sunlot's misleading representation that it has full U.S. creditor and court support.  If Sunlot successfully obtains approval of the Tokyo District Court as a result, Sunlot may thereafter return to this Court and attempt to enforce its objectionable plan, at the cost of, among other things, U.S. creditors' due process, competitive bidding, meaningful disclosure or opportunity to be heard.  As a result, CoinLab and other creditors intend to seek this Court's enforcement of their rights and defenses under sections 1506 and 1522.  The Sunlot Proposal raises the same disputed third-party release issues as were raised in *Vitro*, the same intellectual property and license-related rights and defenses as in *Qimonda*, *Sunbeam*, and *Exide*, and numerous other issues addressed below that implicate sections 1506 and 1522.

B.      **Substantive Problems with the Sunlot Proposal**

10.      Apart from Sunlot's objectionable procedures discussed above, the Sunlot Proposal also suffers from a host of substantive issues that could materially harm creditors'

---

[4] Sunlot has followed Karpeles's unsubstantiated contention that there are no meaningful creditors besides the MtGox depositors and CoinLab.  However, there is ample reason to believe that the books and records previously maintained by Mr. Karpeles are not credible evidence on this or other issues. Additionally, the claims bar date in the Japanese proceeding is November 28, which will provide greater clarity (and reliability) on the scope of creditors. Until the claims bar date and a final schedule of assets is determined, it is premature to make conclusions about the numbers of creditors.

recovery and impact their rights. These problems are discussed in detail in a critique of the line-by-line specifics of the Sunlot Proposal, attached hereto as <u>Exhibit B</u>.

11. Among other concerns, Sunlot has proposed that it will acquire all of the important assets of MtGox for the benefit of only Sunlot-selected depositor-creditors, while effectively usurping the Trustee's role in the recovery and distribution of estate assets, and control the investigation into the missing bitcoins and other assets of the estate using $10 million of estate funds to be advanced to Sunlot. Despite the absence of adequate disclosure and competition for taking on a role more suited to an estate fiduciary, however, Sunlot has made no showing of its qualifications to manage and conduct such an investigation, let alone answered pressing questions about potential conflicts of interest it has suffered or may suffer, including any associations with the Karpeles team still in control of Tibanne KK, MtGox's parent company, who may still claim competing ownership of key assets (*e.g.*, bitcoins or intellectual property). Additionally, Sunlot has proposed to take a 10% fee on all net recoveries it achieves on behalf of the estate—something difficult to justify, particularly given that others (including CoinLab) have offered to assist the Trustee in the investigation now without depriving creditors of these critical funds. Indeed, CoinLab continues to seek the bitcoin addresses through discovery so that it can conduct a transparent investigation itself and share the results now, and thus help creditors make informed decisions.[5]

12. It is important that any plan, sale, or settlement involving the MtGox estate be accompanied by full disclosure so that creditors can make informed decisions and understand the full implications of what is purportedly being done on their behalf. Hence, the stolen-bitcoin investigation is a critical and integral part of the process, and one that must be handled either openly as CoinLab proposes or by a party free from conflicts of interest—and, moreover, by one properly qualified to conduct the search.[6] The following key questions are examples of facts that

---

[5] As noted below, as the U.S. and Canadian licensee of MtGox, CoinLab is, under its License Agreement, entitled to this same data.

[6] The key recovery opportunity in this case is in finding the stolen bitcoins and holding the thieves accountable.

(Footnote continues on next page.)

must be fully understood *before* any deal is struck, whether through discovery, disclosure, or a full investigation:

(a) Who is culpable in the theft of the bitcoins? Was the loss of the bitcoins, as some have inquired, an "insider job" by the Karpeles-related defendants (including class action defendants who are to be released under the Sunlot Proposal)?

(b) How many bitcoins were in fact held by MtGox and by Tribanne prior to the loss/theft? Who now holds the stolen bitcoins? Who are the best targets of recovery litigation?

(c) Who was involved in the cover-up of the bitcoin theft (whether as a knowing participant, or acting in conscious disregard of facts) in order to shield wrongdoers?

(d) Who (besides the Trustee's team) can be trusted to enforce recovery rights for the benefit of the MtGox estate, is qualified to do so, and offers the best terms? What showing has Sunlot made that they are unconflicted, trustworthy, or qualified, and that the price they have offered to pursue recovery investigation and litigation is an appropriate use of estate funds—*i.e.*, $10 million plus 10% of recoveries?

(e) What conflicts of interest does Sunlot have with respect to the Karpeles-related defendants or other suspects? What would happen to the stolen bitcoins if they later show up in the possession or control of parties whom Sunlot releases (in its discretion under the Sunlot Proposal)? (It must be remembered that Mr. Karpeles already has reported belatedly "finding" 200,000 "lost" bitcoins.)

(f) What would happen to the rights of large non-depositor creditors like CoinLab, whose interests the Sunlot Proposal effectively ignores? The Sunlot Proposal would put all meaningful estate assets and resources in Sunlot's hands, to be distributed to the depositors it qualifies in its discretion outside of any court process, without giving any challenge opportunities for other creditors. This would leave the Japanese Trustee without any meaningful assets to make distributions to remaining creditors like CoinLab.

(g) The Sunlot Proposal effectively ignores, and indeed attempts to strip away, intellectual property license rights and defenses that CoinLab holds in the U.S. and Canada. How can the proposal move forward absent reconciliation of these rights? These IP rights must be preserved in accordance with sections 1506 and 1522 as rights and defenses under *Sunbeam* and *Exide* and in other applicable cases construing section

---

(Footnote continued from previous page.)

That focus is on the value of commodity recovery, rather than on the value of an operating exchange. Such recovery effort is less difficult than might be expected, if conducted by a longtime bitcoin industry participant like CoinLab, whose qualifications CoinLab would be pleased to demonstrate.

365(n), which must be respected as paramount U.S. public policy. *See, e.g.*, *Qimonda*; *see also Vitro* (limiting the imposition upon creditors of third-party releases).

(h) How can third parties effectively compete against the Sunlot Proposal with Sunlot relying on flawed, legally questionable premises that artificially enhance the attractiveness of the proposal? *See, e.g.*, <u>Exhibit B</u> at B-2, B-9 (concerning tax and securities law risks).

(i) Is Sunlot or its related parties a 12% equity holder in MtGox, as has been reported? If so (and perhaps in any event), the Sunlot Proposal would constitute an insider transaction, requiring strict scrutiny and even greater disclosure.

13. These questions, in addition to the numerous other concerns identified on <u>Exhibit B</u>, all must be answered or resolved before an agreement having the magnitude of the Sunlot Proposal should be approved. Creditors are entitled to full disclosure so that they can consider whether to oppose such a monumental undertaking purportedly on their behalf while a fair opportunity to do so still exists.

14. As CoinLab has stated in meeting and conferring with the Trustee's counsel and other parties, and to this Court at hearings, CoinLab is willing to assist in investigating the loss of the bitcoins and other key factual issues that must be resolved quickly—and, importantly, CoinLab has indicated its willingness to provide such assistance without demanding the $10 million investigation fund or 10% of recoveries that Sunlot is demanding. CoinLab is particularly qualified to assist in any such investigation, and in any event requires only access to a complete list of MtGox's bitcoin addresses in order to undertake any analysis, which can be conducted with full transparency with the Trustee and other legitimate parties. *See* <u>Exhibit C</u> hereto (*The Troubling Holes in MtGox's Account of How It Lost $600 Million in Bitcoins*, MIT TECH. REV., Apr. 4, 2014) (discussing a related Zurich study of the MtGox losses). Not only is that data the subject of longstanding CoinLab discovery requests in this Chapter 15 case and other actions, but CoinLab is entitled to that information under its License Agreement (defined below) as part of its trade-secret protections and other rights. *See* RJN <u>Ex. 2</u>. Such an investigation as managed or assisted by CoinLab could be accomplished quickly and

sf-3418662

transparently under supervision of this Court and the Japanese Trustee without entering into the kind of comprehensive, radical, and costly arrangement that Sunlot has proposed.[7]

15.     Additionally, CoinLab itself is in a position to provide a more competitive bid than offered by Sunlot.  CoinLab holds intellectual property rights pursuant to the License Agreement to be the exclusive licensee of the MtGox exchange in North America.  CoinLab has direct experience with the MtGox exchange, its operations and data.  CoinLab offers a market efficiency to creditors because it can address disposition of its intellectual property rights in the exchange as well as market expertise.  However, no process currently exists for competing overbids.

16.     CoinLab urges the Court to use the upcoming status conference as a forum to address the concerns raised by the Sunlot Proposal and to address procedures that creditors may wish to pursue vis-à-vis recognition, including seeking sufficient protection from the transactions contemplated under the Sunlot Proposal, as well as pursuing discovery and other rights, as discussed in greater detail below.  *See* 11 U.S.C. §§ 1506 and 1522.

### III.
### CONDITIONING RECOGNITION
### ON SECTION 1522 CREDITOR PROTECTIONS

**A.     CoinLab's Rights and Defenses Must Be Sufficiently Protected under §§ 1506 and 1522.**

17.     CoinLab and other creditors are entitled to sufficient protection of their rights and defenses in this proceeding.  Indeed, sections 1506 and 1522 of the Bankruptcy Code expressly condition the recognition of a foreign main proceeding on creditors' interests being sufficiently protected in a manner consistent with the public policy of the United States.  As a result, CoinLab urges the Court at the upcoming status conference to discuss a process by which

---

[7] By evading the customary court-supervised claim allowance and disallowance process based on filed proofs of claim, Sunlot would also trigger concerns of U.S. and other tax and regulatory authorities about payments of estate assets to persons who would otherwise not file identifying proofs of claim.  Sunlot is not an appropriate party to be trusted with claims allowance in lieu of a court proceeding.

sf-3418662

CoinLab's and other creditors' rights can be protected in connection with the recognition proceeding, as seems to be contemplated by the *Vitro* ruling and other precedents.

18. In addition to being a creditor of the MtGox estate, CoinLab is an exclusive licensee of intellectual property rights of the Debtor under U.S. and Canadian law, and, as such, has important contractual rights that would block any competing exchange operations by Sunlot, among other consequences. *See* RJN Ex. 2 (CoinLab, Inc. & Mt. Gox KK Exclusive License Agreement for the USA & Canada, dated as of November 22, 2012, attached as Exhibit A to CoinLab's complaint against MtGox and Tibanne pending in the U.S. District Court for the Western District of Washington) (the "License Agreement"). CoinLab thus requires protection of the following rights, among others, in connection with these proceedings:

(a) Reservation of CoinLab's rights, licenses, and defenses arising under its License Agreement with the Debtor under the principles of *Sunbeam*, *Exide*, and, as an alternative, under section 365(n) and *Qimonda*.

(b) Reservation of CoinLab's right to adequate protection of its rights, licenses, and defenses under section 363(e) and otherwise.

(c) Reservation of CoinLab's right, as a means of protecting itself and maximizing recovery, to overbid the Sunlot Proposal or other proposed transaction— particularly any transaction that involves any transfer of MtGox assets, releases of estate claims against wrongdoers, shifting of the control of estate assets to non-fiduciaries like Sunlot, stripping of intellectual property rights, defenses, or licenses, or otherwise harming CoinLab or other creditors.

(d) Reserving CoinLab's right to reasonable discovery (including as to the bitcoin addresses, the Dallas server on which venue or jurisdiction purportedly rests, and other U.S. asset and operation data, and the differences between assets of MtGox and its non-debtor parent still controlled by Mr. Karpeles) in order to make its record for creditor protections under sections 1506 and 1522 and otherwise and for the balancing required by *Vitro*.

19. CoinLab looks forward to working constructively with the Japanese Trustee and others in order to ensure that the rights of U.S. creditors are protected in this process. However, until it receives full assurances that its rights and defenses will be protected, CoinLab is compelled to seek to protect its interests now, before the flawed Sunlot Proposal (and procedural evasion) can gain an unfair advantage.

**B.      Sufficient Protection of Rights Is a Condition Precedent to Recognition, and Thus Should Be Dealt with Now Consistent with *Vitro*.**

20.      Sections 1506 and 1522 require that compliance with public policy of the United States and the granting of sufficient protections for creditors are *conditions* to the granting of recognition and related relief under Chapter 15.  *See generally Vitro*, 701 F.3d 1031; *Qimonda*, 737 F.3d 14.  Because this is a critical issue that must be addressed in connection with recognition, the time is ripe for the Court to address these issues at the status conference.

21.      There can be no question about the importance of "sufficient protection" in Chapter 15.  First, the relief potentially available at the recognition hearing under section 1521 is explicitly subject to the proviso in section 1521(b) that "the court is satisfied that the interests of creditors in the United States are *sufficiently protected*," applying "the standards, procedures and limitations applicable to an injunction" in accordance with section 1521(e) (emphasis added).

22.      Second, as reaffirmed in *Vitro* by the Fifth Circuit, section 1522 overrides any relief available to the foreign representative under section 1519 or 1521:  "(a)  The court may grant relief under section 1519 or 1521 . . . only if the interests of the creditors and other interested entities . . . are *sufficiently protected*" (emphasis added).  Moreover, creditors are entitled to seek to "condition" a foreign representative's relief under section 1522(b) on "the giving of security or the filing of a bond," or the appointment of an examiner under sections 322 or 1104 pursuant to section 1522(d)—although CoinLab has made more modest requests for essential creditor protections under sections 1506 and 1522, rather than pursuing a bond or an examiner.[8]  In any event, it is clear in light of the continuing threats of the Sunlot Proposal that "sufficient protection" under section 1522 is critical at this stage and that measures promptly be taken to protect the rights, defenses, and licenses of creditors.[9]

---

[8] Nevertheless, CoinLab reserves the right to apply for an examiner under section 1522(d), absent some demonstration that its rights will be protected.

[9] CoinLab has met and conferred with counsel for the Japanese Trustee.  Those conferences have been cordial, and counsel was receptive to hearing CoinLab's concerns.  At this stage, however, no meaningful response to or resolution of CoinLab's concerns has occurred.

sf-3418662

23.     The Court in *Vitro* addressed the need for providing creditors with sufficient protection in the Chapter 15 context and in balancing those interests against the relief sought by the foreign representative.  As the *Vitro* court explained:

> [W]e conclude that, even if §1521 did not provide the broad relief Vitro seeks, enforcement of this Plan would be precluded under §1522 for failing to provide an adequate balance between relief that may be granted to the foreign representative and the interests of the persons that may be affected by such relief.

*Vitro*, 701 F.3d at 1067, n. 42 (citing *In re Int'l Banking Corp. BSC*, 439 B.R. 614, 626 (Bankr. S.D.N.Y. 2010); *In re Sivec SRL*, 476 B.R. 310, 323 (Bankr. E.D. Okla. 2012)).  There the court further explained:

> Finally, we note that the bankruptcy court's decision was proper under §1522, which requires that the relief contemplated under §1521 balance the interest of creditors and debtors.  *See In re Tri-Cont'l Exch, Ltd*., 349 BR at 637 (analysis of §1522 "emphasize[s] the needs to tailor relief and conditions so as to balance the relief granted to the foreign representative and the interests of those affected by such relief, without unduly favoring one group of credits over another").

*Id.* at 1060.

24.     There is no question that the Sunlot Proposal fails the balancing test contemplated by *Vitro.*  The problems inherent in the proposal, and the lack of sufficient protection for creditors consistent with U.S. public policies, make clear that the recognition of any Chapter 15 proceeding contemplating such a drastic proposal should be conditioned on ensuring that creditors' rights are protected as part of the process.  As demonstrated on Exhibit B hereto, however, such protection from the Sunlot Proposal and procedural maneuvers is currently lacking.  In *Vitro*, the bankruptcy court had to consider whether the results yielded under the foreign representative's plan in question, on the facts of the case, were "comparable to the results likely in the United States."  *Vitro*, 701 F.3d at 1066 (citing *In re Treco*, 240 F.3d 148, 159 (2d Cir. 2001; *In re Sivec*, 476 B.R. at 324).  Applying that reasoning here, the Sunlot Proposal should be duly considered to fully assess its impact on creditors, and competitive bidding is needed to demonstrate what kind of alternative results could be achieved in a fair and open

sf-3418662

process.  Moreover, as in *Vitro*, the Sunlot Proposal "does not provide for the distribution of proceeds of the debtor's property substantially in accordance with the order prescribed by Title 11, contrary to §1507(b)(4)."  *Id.* at 1060.

25.     Sufficient creditor protection under sections 1506 and 1522 is available in a variety of forms.  For example, among other protections, a fair and open sale and recovery process is needed, as well as a better plan process with full disclosure—both concepts the Sunlot Proposal attempts to avoid.  Additionally, full disclosure is needed regarding the inherent risks and legal flaws of the Sunlot Proposal (another type of section 1522 creditor protection that could be addressed by a section 1522(d) examiner, if necessary).[10]  Furthermore, creditors should be protected against Sunlot's attempt to abuse the class action process by claiming that it has the "support" or "votes" of depositor class creditors (through the failure of uninformed depositors to opt out of the Class Action or object to the Sunlot Proposal in that case) in an attempt to secure support of the proposal in Japan.  This court must protect all U.S. creditors from that danger and other problems with the Sunlot Proposal, including those set forth on Exhibit B hereto.

26.     In light of the risks imposed on creditors by the Sunlot Proposal, CoinLab requests that this Court address a process for providing creditors with sufficient protection consistent with U.S. public policies in connection with recognition at the status conference.

## IV.
## NEED FOR INVESTIGATION

### A.     Creditors Must Be Fully Informed Before a Deal Can Be Struck.

27.     This Court should also address at the status conference the question of how and when the issues concerning (i) the Sunlot Proposal and (ii) sufficient protection for creditors can best be properly investigated, litigated, and disclosed to U.S. creditors, few of whom can afford Japanese lawyers or can otherwise closely follow the Japanese process (or even participate

---

[10] CoinLab is a creditor focused on maximizing recoveries for itself and other creditors, which includes minimizing estate expenses.  Accordingly, CoinLab has offered to help, so as to avoid the need to pay Sunlot $10 million plus 10% of recoveries.  However, because CoinLab believes that Sunlot will not maximize value, and that any examiner would block the Sunlot Proposal, CoinLab reserves the right to seek such defensive relief.

effectively to address Sunlot's threats in the Class Action).  At the time of this filing, the only

information publicly provided to creditors by MtGox in this Chapter 15 proceeding has come

from Mr. Karpeles and his team.  The credibility problems of Mr. Karpeles and his team are well

documented, and none of his representations and allegations have been subject to adequate

testing in discovery or otherwise.  Accordingly, the need for good information continues to be a

critical issue in this case.[11]

28.    Many questions surround the Sunlot Proposal as well, including concerning its

principals, their relationship with MtGox, and their potential relationship with other insiders and

colleagues of Mr. Karpeles.  Indeed, these questions were taken seriously enough to result in

various resignations in protest upon appointment of Brock Pierce, one of Sunlot's principals, to

the Bitcoin Foundation Board of Directors.  *See* Exhibit D hereto (*Bitcoin Foundation hit by*

*resignations over new director*, REUTERS, May 16, 2014).  As a result, the time has come for a

more complete investigation and exchange of data.

29.    While creditors have not yet been provided all of the details of the overbroad

releases contemplated by the Sunlot Proposal, CoinLab understands that Sunlot is seeking or will

seek the same kind of third-party releases and related injunctions that were barred in *Vitro*.

CoinLab reserves its right to object to such releases on the same grounds, as well as under

sections 1506 and 1522.  These concerns highlight the discovery and other disclosure issues

pertinent in this proceeding as well as the venue issues addressed below.[12]

---

[11] Immediately prior to this filing, the Trustee filed an amended declaration in support of the pending petition for recognition, and we are hopeful that the information will shed further light on some of the open issues. Nevertheless, CoinLab expects that further discovery will be in order in connection with its anticipated request for sufficient protection under sections 1522 and 1506.

[12] As the Fifth Circuit explained at length in *Vitro*, as in the Ninth Circuit, such third-party releases of nondebtors are improper under the Bankruptcy Code.  *See Vitro*, 701 F.3d at 1069-70.  The difference in the Fifth Circuit's approach is that *Vitro* may allow for the theoretical imposition of such releases under section 1506 in a proper case (which *Vitro* and this case are not), because certain U.S. Circuits take a more permissive view of third-party releases.  *See id.* at 1069-70 (analyzing this issue but not concluding).  By contrast, CoinLab believes that the Ninth Circuit would not allow such releases to be imposed, because that would be contrary to U.S. public policy under section 1506.  Therefore, while both Circuits should agree, as a balancing matter, to reject the releases set forth in the Sunlot Proposal, the Ninth Circuit would appear to be more protective of creditors by applying section 1506, where the Fifth Circuit seems more conflicted in *Vitro*.

sf-3418662

**B.      What Little Information Is Currently Available to Creditors Is Unreliable.**

30.      In light of the erroneous and misleading information that has been spread concerning the Sunlot Proposal (either by the Karpeles team or others), creditors are certain to be confused or uninformed about the key facts.  To the extent that the Trustee attempts to rely on disputed data from unreliable sources (*e.g.*, the Karpeles team) or from conflicted sources providing self-serving data (*e.g.*, Sunlot), any such information should be excluded from any evidentiary proceeding, and creditors should be given an opportunity to rebut any such information.

31.      To that end, CoinLab has sought and continues to seek greater disclosure and discovery.  While CoinLab is sympathetic to the Trustee's preference for the traditional Japanese process (which is generally less transparent than the U.S. bankruptcy process), there is a risk that such an approach permits reliance on false and misleading data from sources whom CoinLab cannot cost-effectively cross-examine in the Chapter 15 case.  CoinLab desires to correct this flow of bad information in the Chapter 15 process.  In short, creditors need sunlight, not Sunlot.

32.      There are many examples of why greater transparency and a flow of accurate information is critical in this case.  For example, because the bar date in the Japanese proceeding is not until November 28, 2014, it is impossible to claim (as Sunlot has asserted) that there are no nondepositor creditors of significance besides CoinLab.  By failing to correct this unsubstantiated "fact," which has created an unreliable record in the media (and in the Karpeles-controlled phase of this Chapter 15 case), the Trustee unfortunately could be perceived to have accepted that theory.  If the Trustee were to assert such an unsubstantiated "fact" originating from self-serving information expressed by Sunlot or the Karpeles team, CoinLab and other creditors should be given the opportunity to attack such an assertion as inadmissible hearsay not based on the personal knowledge of the Trustee.  If the Trustee seeks to promote that disputed theory based on unreliable books and records created by the Karpeles team, without having audited the information to test its credibility, then CoinLab and others should be entitled to discovery regarding the credibility issue.

sf-3418662

33.      Furthermore, absent any reliably prepared schedules or public data concerning whether assets purportedly property of the MtGox estate are actually owned by Tibanne (and thus remain in Mr. Karpeles's control), creditors cannot make informed decisions.  This lack of information provides an obstacle to creditors seeking to challenge private deals like the Sunlot Proposal.  For example, Sunlot may be willing to accept the theory that Tibanne, and not MtGox, owns all key assets and, therefore, if Mr. Karpeles is to transfer his ownership of Tibanne to Sunlot or another buyer, the buyer can claim it has added value in order to justify disputed releases of the Mr. Karpeles and related parties.  (Note that the Sunlot Proposal may not contemplate sharing with creditors any recoveries received from Tibanne.)

34.      Another important line of inquiry is into Sunlot's justification for fixing the bitcoin exchange rate at $500 to 1, when the price was reported to be $447.73 on May 15, 2014 after a low of $70 in June 2013, and a peak of $1,151 in December 2013 before the theft and other developments.  *See* Exhibit E hereto (*Bitcoin consumer platform debuts at Circle*, USA TODAY, May 16, 2014); *see also* www.bitcoinexchangerate.org.[13]  Notably, the Sunlot Proposal fixes that price despite potentially dramatic changes in the exchange rate in the future.

35.      CoinLab is, of course, not the only expert capable of investigating the theft of the bitcoins.  *See* Exhibit C hereto (supporting CoinLab's concerns about the reliability of Mr. Karpeles's explanation about the bitcoin losses, and confirming the work of Christian Decker and Roger Wattenhofer at the Swiss Federal Institute of Technology in Zurich).  As a result, more information is clearly needed regarding the qualifications of any party conducting investigations for the estate.

36.      While Sunlot seeks to obtain valuable assets, without providing adequate disclosure, for a paltry price, and without competition, the values and potential of the bitcoin market continue to move at a rapid pace, relatively unshaken by the downfall of the MtGox exchange.  *See* Exhibit F attached hereto (*Bitcoin Exits Mt. Gox and Heads to Wall Street*,

---

[13] At the end of the day on May 22, 2014, bitcoinexchangerate.org reported the price at $525.

INSTITUTIONAL INVESTOR, April 17, 2014) (illustrating and explaining the bitcoin trajectory and quoting numerous experts, including CoinLab's Peter Vessenes). With all that activity and potential upside, why allow Sunlot to replace the U.S. and Japanese proceedings without full disclosure or competition? Why allow Sunlot to control a private deal that allows Sunlot full discretion to deal with the Karpeles team in the shadows?

37.     Apart from the civil issues, there are important criminal and regulatory issues that are yet to be explored, and which the Sunlot Proposal disregards. For example, MtGox reportedly has been cooperating with U.S. prosecutors in their investigation of the Silk Road scandal, following up on the Homeland Security seizure of MtGox funds, including by providing document disclosures with response to prosecutors' subpoenas. *See* Exhibit G attached hereto (*U.S. Examines Bitcoin's Ties With Shuttered Silk Road*, DAILY BANKRUPTCY REVIEW, May 21, 2014). CoinLab and other creditors should be entitled to copies of any documents that have been turned over, particularly before any key assets or functions are turned over to Sunlot under their proposal (and thus placed outside of the view of the U.S. and Japanese courts). Disclosure should come first, rather than simply handing the reigns to Sunlot to investigate in the future in its discretion.

38.     Finally, the Sunlot public relations team apparently continues to maneuver deftly, illustrating creditors' need to be able to counter any misinformation. Indeed, the preliminary approval of the Sunlot Proposal in the Class Action has been described in a misleading way, effectively being reported as a done deal. *See, e.g.*, Exhibit H attached hereto (*Mt. Gox Bankruptcy Trustee Outlines Liquidation Schedule*, CIO.COM, May 21, 2014) ("Sunlot Holdings, headed by entrepreneur John Betts, had won U.S. court approval earlier this month for a deal in which it would acquire MtGox and compensate users for their losses."). Press such as this highlights that creditors are entitled to useful and reliable information in order to make informed decisions, but they also need the ability to correct misinformation. This Court's assistance is thus needed so that creditors can be properly informed.

# V.
## VENUE CONCERNS

39.     Venue remains a reserved question in this case. According to the unsubstantiated Karpeles declaration originally filed in support of the recognition petition, venue appeared to be based solely on the alleged presence in Dallas of a server owned or leased by Tibanne KK, which was alleged to contain certain electronic backup data of MtGox.  The venue rules under 28 U.S.C. §§ 1410 appear to authorize dismissal of a Chapter 15 case that was improperly filed in the wrong venue (or, at least, militates transfer to another venue).

40.     Clearly, trivial electronic backup data on a server owned or leased by a third party, if it even exists, is not what section 1410 contemplates.  Indeed, when a debtor in a foreign proceeding has no principal place of business in the United States and no meaningful assets in the district in question, section 1410 commands that venue be in the district of the first-filed federal action against the debtor—in this instance, CoinLab's action against MtGox and Tibanne pending in the United States District Court for the Western District of Washington.[14]  CoinLab is informed and believes that discovery concerning the Debtor's assets would reveal that the Dallas electronic backup data is inadequate to support venue before this Court.

41.     The pertinent question, then, is what, if anything, should be done about this.  If the issue were merely a matter of the preference of the Japanese Trustee, CoinLab would likely be willing to ignore the issue out of respect for the Trustee.  However, now that Sunlot is attempting to manipulate the traditional, open process in a way that prejudices creditors and precludes competition, CoinLab wishes to understand the Trustee's position regarding the Sunlot Proposal before waiving the venue issue.  CoinLab has complete respect for this Court, but raises the issue only in order to preserve CoinLab's ability to protect its rights and defenses and to challenge the prior decision by Karpeles to forum shop, a decision that Sunlot now attempts to exploit for itself.[15]

---

[14] The litigation in the United States District Court in Washington is presently stayed due to the present Chapter 15 proceeding.

[15] CoinLab suspects that the Karpeles team selected Dallas because they believed that they had a better chance to
(Footnote continues on next page.)

sf-3418662

42.     This venue discussion simply highlights the need for full disclosure and sharing of information, as well as a process for ensuring that creditors' rights are sufficiently protected—all of which CoinLab urges this Court to address at the upcoming status conference.

Dated: May 23, 2014                     Respectfully submitted,

By:   Vincent J. Novak
_____

G. Larry Engel (admitted *pro hac vice*)
Vincent J. Novak (admitted *pro hac vice*)
Kristin A. Hiensch (admitted *pro hac vice*)
Morrison & Foerster LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:   415.268.7000
Facsimile:    415.268.7522
LEngel@mofo.com;
VNovak@mofo.com;
KHhiensch@mofo.com

-and-

Barry C. Barnett (TX Bar No. 01778700)
Susman Godfrey L.L.P.
901 Main Street, Suite 5100
Dallas, TX 75202
Telephone: 214.754.1903
Facsimile: 214.754.1933
bbarnett@susmangodfrey.com

*Counsel for Creditor CoinLab, Inc.*

_____

(Footnote continued from previous page.)

cram down third-party releases and other disputed practices in the Fifth Circuit compared with the Ninth Circuit, where such releases would not be permitted.  *See* fn. 12 above, discussing *Vitro*.

## CERTIFICATE OF SERVICE

This is to certify that on May 23, 2014, a copy of the foregoing document was served on the parties registered to receive electronic notification via the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas, and via United States first class mail, postage pre-paid to the parties listed below:

MtCox, Co. Ltd. a/k/a MtGox KK
Level 15-F, Cerulean Tower
26-1 Sakuragaoka-cho
Shibuya-ku
Tokyo, Japan 150-8152
*Via first-class mail*

Erin E. Broderick
Baker & McKenzie LLP
300 East Randolph Drive, Suite 500
Chicago, IL 60602
*Via first- class mail:*

Office of the U.S. Trustee
1100 Commerce Street, Room 976
Dallas, TX 75242
*Via email:*
ustpregion06.da.ecf@usdoj.gov

Roger M. Townsend
Breskin Johnson & Townsend PLLC
1000 Second Avenue, Suite 3670
Seattle, WA 98104
*Via email:*
rtownsend@bjtlegal.com

Jay Edelson
Edelson PC
350 N. LaSalle St., Suite 1300
Chicago, IL 60654
*Via first-class mail*

David J. Molton/Daniel J. Saval
Brown Rudnick
Seven Times Square
New York, NY  10036
*Via email:*
jdmolton@brownrudnick.com;
jbeiswenger@brownrudnick.com;
wlancaster@brownrudnick.com;
dsaval@brownrudnick.com

Barry Barnett
Susman Godfrey LLP
1201 3rd Avenue, Suite 3800
Seattle, WA 98101-3087
*Via email:*
bbarnet@susmangodfrey.com;
rlicon@susmangodfrey.com

Thomas C. Scannell
Gardere
Thanksgiving Tower, Suite 3000
1601 Elm Street
Dallas, Texas  75201
*Via email:*
tscannell@gardere.com;
koliver@gardere.com;
jcharrison@gardere.com

MtCox, Co. Ltd. a/k/a MtGox KK
Level 15-F, Cerulean Tower
26-1 Sakuragaoka-cho
Shibuya-ku
Tokyo, Japan 150-8152
*Via first-class mail*

Josephine Garrett
Josephine Garrett, P.C.
3119 West 5th Street
Fort Worth, TX 76107
*Via email:*
filing@jgarrettlaw.com

The Honorable Jeh Johnson
Secretary of Homeland Security
Department of Homeland Security
Washington, DC 20528
*Via first class mail*

Steven L. Woodrow/Alicia Hwang/
Christopher L. Door
Edelson PC
350 North LaSalle St., Suite 1300
Chicago, IL 60654
*Via email and first-class mail:*
swoodrow@edelson.com
cdoor@edelson.com

Scott B. Kitei
Honigan Miller Schwartz and Cohn
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
*Via email:*
skitei@honigman.com

Robin E. Phelan
Stephen Manz
Haynes and Boone, LLP
2323 Victory Avenue, Suite 700
Dallas, TX 75219
*Via email:*
robin.phelan@haynesboone.com
Stephen.manz@haynesboone.com

Marcus Alan Helt
Gardere
Thanksgiving Tower, Suite 3000
1601 Elm Street
Dallas, Texas  75201
*Via email:*
mhelt@gardere.com;
koliver@gardere.com;
ccoleman@gardere.com

sf-3406754

John D. Penn
Perkins Coie LLP
500 N. Akard Street, Suite 3300
Dallas, TX 75201
*Via email:*
jpenn@perkinscoie.com;
docketdal@perkinscoie.com


/s/ John Kline
John Kline