David J. Molton (*admitted pro hac vice*)
Daniel J. Saval (*admitted pro hac vice*)
Brown Rudnick LLP
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
Email: dmolton@brownrudnick.com
Email: dsaval@brownrudnick.com

- and -

Marcus A. Helt (TX 24052187)
Thomas Scannell (TX 24070559)
Gardere Wynne Sewell LLP
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667
Email: mhelt@gardere.com
Email: tscannell@gardere.com

*Counsel for Nobuaki Kobayashi, in his capacity*
*as the Bankruptcy Trustee and Foreign Representative*
*of MtGox Co., Ltd., a/k/a MtGox KK*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>MtGox Co., Ltd. (a/k/a MtGox KK),<br><br>　　　Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. 14-31229-sgj-15 |

**FOREIGN REPRESENTATIVE'S MOTION
FOR AN ORDER APPROVING (I) SETTLEMENT
AGREEMENT WITH U.S. GOVERNMENT; (II) TRANSFER OF
SEIZED FUNDS IN ACCORDANCE WITH THE SETTLEMENT
AGREEMENT, PURSUANT TO 11 U.S.C. §§ 363 AND 1520(a)(2); AND
(III) REPATRIATION OF RELEASED FUNDS TO JAPAN FOR DISTRIBUTION
<u>IN THE JAPAN BANKRUPTCY PROCEEDING PURSUANT TO 11 U.S.C § 1521(b)</u>**

Nobuaki Kobayashi, in his capacity as the bankruptcy trustee and foreign representative (the "Foreign Representative") of MtGox Co., Ltd., a/k/a MtGox KK (the "Debtor" or "MtGox"), a debtor in a bankruptcy proceeding under Japanese law (the "Japan Bankruptcy"), currently pending before the Twentieth Civil Division of the Tokyo District Court, Japan (the "Tokyo Court"), by his undersigned U.S. counsel, hereby respectfully submits this motion (the "Motion") seeking entry of an order substantially in the form attached hereto as **Exhibit H** (the "Order"): (i) approving the settlement agreement between the United States Attorney's Office for the District of Maryland (the "Government") and the Foreign Representative (the "Settlement Agreement"), attached hereto as **Exhibit A**[1], pursuant to sections 363 and 1520(a)(2) of title 11 of the United States Code (the "Bankruptcy Code"), insofar as the Settlement Agreement provides for a transfer of an interest of the Debtor in property in the United States; (ii) pursuant to Sections 363 and 1520(a)(2) of the Bankruptcy Code, approving the transfer of $2,571,201.10 of the Seized Funds (the "Released Funds") to the Foreign Representative and the forfeiture of $2,571,201.10 of the Seized Funds (the "Forfeited Funds") to the Government in accordance with the Settlement Agreement; and (iii) pursuant to Bankruptcy Code Section 1521(b), approving the repatriation of the Released Funds to Japan for distribution in the Japan Bankruptcy. In support of this Motion, the Foreign Representative also submits the Declaration of Nobuaki Kobayashi (the "Kobayashi Declaration") attached hereto as **Exhibit B**, and respectfully states as follows:

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Settlement Agreement.

**PRELIMINARY STATEMENT**

1. In 2013, prior to the commencement of MtGox's Japanese bankruptcy proceedings and this Chapter 15 case, the United States government, acting through the United States Secret Service and the United States Homeland Security Investigations arm of the Department of Homeland Security, seized a total amount of $5,142,402.20 (the "Seized Funds") from bank accounts of a MtGox affiliate located in the United States. The seizures were prompted by the United States government's assertion that MtGox, through an affiliate, operated an unlicensed money transmitting business in the United States in violation of 18 U.S.C. § 1960. The United States government's assertion was supported by multiple affidavits that led a U.S. Magistrate Judge to find that probable cause existed to believe that the MtGox affiliate, which processed funds relating to MtGox's U.S. customers to and from the bitcoin exchange through an online payment processor in the U.S., violated the statute during the course of MtGox's U.S. bitcoin operations.

2. As previously stated at status conferences before this Court, the Foreign Representative has been involved in extensive negotiations with the Government to resolve the issues related to the Seized Funds. As a result of these negotiations, the Government and Foreign Representative, on behalf of the Debtor, have agreed to transfer the Released Funds, representing 50% of the Seized Funds, to the Foreign Representative pursuant to the Settlement Agreement.

3. For the following reasons, the Foreign Representative respectfully submits this Court should approve the Settlement Agreement and authorize the Released Funds to be transferred to the Foreign Representative and repatriated to Japan for distribution in the Japan Bankruptcy, which has been recognized as a foreign main proceeding by this Court.

4. <u>First</u>, the transfer of the Released Funds to the Foreign Representative is a sound business decision because the Settlement Agreement was the result of an extensive, arm's-length settlement process, the Settlement Agreement avoids the significant risks and expenses of litigation with the U.S. government, and the Released Funds will subsequently be used for distribution in MtGox's recognized Japan Bankruptcy in accordance with the Bankruptcy Act of Japan.

5. <u>Second</u>, the repatriation of the Released Funds to Japan is warranted because the interests of United States creditors are sufficiently protected in Japan, where the Japan Bankruptcy (*i.e.*, the foreign main proceeding) is being administered and where all creditor claims are already being adjudicated.

6. <u>Third</u>, repatriation of the Released Funds is justified as a matter of public policy. The public policy objectives of Chapter 15 of the Bankruptcy Code are advanced by the repatriation of the Released Funds here because repatriation will materially aid the Foreign Representative's efforts to maximize recoveries for, and provide for an equitable distribution of value among, all creditors. Furthermore, repatriation will assist the Foreign Representative in providing creditor distributions in an economically efficient manner.

## JURISDICTION AND VENUE

7. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

8. Venue for this proceeding is proper before this Court pursuant to 28 U.S.C. §§ 1409 and 1410.

9. The statutory and legal predicates for the relief requested herein are Bankruptcy Code Sections 363, 1520(a), and 1521(b), and this Court's *Order Recognizing Foreign Main Proceeding and Granting Related Relief* [Docket No. 151] (the "Recognition Order").

## BACKGROUND

10. In May and June of 2013, the U.S. Government, acting through either the U.S. Secret Service or the U.S. Homeland Security Investigations arm of the Department of Homeland Security, executed two (2) seizures against a MtGox affiliate's U.S. bank accounts based on seizure warrants signed by a United States Magistrate Judge in the United States District Court for the District Of Maryland (the "Maryland Court").[2] The total amount of U.S. Currency seized pursuant to the three seizure warrants described above is $5,142,402.20, which constitutes the Seized Funds. The Government currently holds the Seized Funds in the District of Maryland.

11. The seizures were precipitated and supported by affidavits from Special Agents with the United States Secret Service and Homeland Security Investigations.[3] According to the affiants, there was probable cause to believe that the contents of bank accounts in the name of Mutum Sigillum LLC ("Mutum"), an affiliate of MtGox, were involved in transactions and attempted transactions in violation of 18 U.S.C. § 1960 and that Mutum was engaged in the "unlicensed money transmitting business" in violation of 18 U.S.C. § 1960 since December of 2011. As a result, the contents of the bank accounts were subject to seizure under 18 U.S.C. §

---

[2] Additionally, under a third seizure warrant, the U.S. Secret Service seized a check in the amount of $109,479.84 drawn from a Wells Fargo Bank N.A. account in the name of MtGox North America, Inc., a MtGox subsidiary. Those funds are included in the total amount of Seized Funds that are addressed in the Settlement Agreement.

[3] The affidavits of Special Agents Shaun Bridges and Michael T. McFarland and the resultant seizure warrants are attached hereto as **Exhibit C** and **D**, respectively.

981.[4] On the basis of the affidavits, a United States Magistrate Judge for the District of Maryland found probable cause that the bank accounts were subject to seizure under 18 U.S.C. § 981 and signed warrants to effectuate the seizures.[5]

12. Mutum was used for the processing of funds relating to MtGox's U.S. customers to and from the bitcoin exchange through an online payment processor, Dwolla, which was located in Iowa. In order to facilitate trades on the MtGox exchange, Mutum funded its Dwolla account from its Wells Fargo account. Additionally, MtGox would transfer, by international wire transfer, funds from Sumitomo Mitsui Bank in Japan in the name of Mt. Gox Company Ltd. for the benefit of the Mutum Wells Fargo account. After the funds were credited to the Mutum Wells Fargo account, they were frequently disbursed to the Dwolla account to purchase bitcoins which would then be registered on MtGox's bitcoin registry.[6]

---

[4] Money transmitting businesses are required by 31 U.S.C. § 5330 to register as such with the U.S. Department of Treasury's Financial Crimes Enforcement Network ("FinCen"). A violation of 18 U.S.C. § 1960 occurs when a person or entity "conducts, controls, manages, supervises, directs, or owns all or part of an unlicensed money transmitting business" 18 U.S.C. §1960(a), with the term "'unlicensed money transmitting business' mean[ing] a money transmitting business which . . . (B) fails to comply with the money transmitting business registration requirements under section 5330 of United States Code, or regulations prescribed under such section . . . ." 18 U.S.C. §1960(b)(1)(B). On March 18, 2013 FinCen issued guidance on the application of FinCen's regulations to bitcoin operations, stating that an administrator or exchanger of virtual currencies is a money transmitter under FinCen's regulations and must register. See FIN-2013-G001, "Application of FinCEN's Regulations to Persons Administering, Exchanging, or Using Virtual Currencies," March 18, 2013. 18 U.S.C. § 981 provides that any personal property involved in a transaction or attempted transaction in violation or 18 U.S.C. § 1960 is subject to forfeiture to the U.S. See 18 U.S.C. § 981.

[5] In the interests of disclosure, the Foreign Representative notes that in March 2015, Special Agent Shaun W. Bridges of the U.S. Secret Service and one of the affiants with respect to the seizures, was charged with wire fraud, money laundering and related offenses committed during the U.S. Secret Service's investigation of Silk Road. The Silk Road marketplace was an underground black market that allowed vendors and buyers to conduct illegal transactions over the internet. However, during negotiations with the Foreign Representative over the Settlement Agreement, the Government strongly took the position that Mr. Bridges' arrest did not affect liability on the criminal acts alleged or the Government's ability to prosecute the actions, including by establishing predicate facts through other witnesses and evidence if necessary.

[6] Although Mutum was used for the processing of funds in connection with the operation of the MtGox exchange, Mutum is a company wholly owned by Robert Marie Mark Karpeles. As the Court is aware, Mr. Karpeles is the founder of MtGox and its former sole director, but no longer has any control over MtGox.

13. On February 28, 2014, the Debtor filed a petition ("Japan Petition") for the commencement of a civil rehabilitation proceeding (the "Japan Civil Rehabilitation") in the Tokyo Court pursuant to Article 21(1) of the Japanese Corporate Reorganization Act.

14. On March 9, 2014, the Debtor filed the *Verified Petition for Recognition and Chapter 15 Relief* [Docket No. 2] in this Court seeking, *inter alia*, recognition of the Japan Civil Rehabilitation as a foreign main proceeding under Chapter 15 of the Bankruptcy Code.

15. By orders entered on April 16, 2014, the Tokyo Court placed the Debtor in a provisional administration by dismissing the Japan Petition and appointing Mr. Kobayashi as the Debtor's provisional administrator pending the commencement of a bankruptcy proceeding under the Bankruptcy Act of Japan (the "Bankruptcy Act"). On April 24, 2014, the Tokyo Court entered an order (the "Bankruptcy Order") formally commencing the Debtor's Japan Bankruptcy and appointing Mr. Kobayashi as the Debtor's bankruptcy trustee.

16. On May 23, 2014, the Foreign Representative filed his *Amended Verified Petition for Recognition and Chapter 15 Relief* (the "Amended Recognition Petition") [Docket No. 126] requesting, *inter alia*, that the Japan Bankruptcy be recognized as a foreign main proceeding.

17. On June 18, 2014, this Court entered the Recognition Order, recognizing the Japan Bankruptcy as a foreign main proceeding under Bankruptcy Code Sections 1517(a) and 1517(b)(1). By the Recognition Order, the Court also granted certain other relief, including: (i) recognizing the Foreign Representative as the foreign representative of the Debtor; and (ii) ordering that the Foreign Representative is entitled to the full protections and rights enumerated under section 1521(a)(4) and 1521(a)(5) of the Bankruptcy Code, including, *inter alia*, entrusting the Foreign Representative with the administration and realization of all of the Debtor's assets within the territorial jurisdiction of the United States.

18. In 2014, subsequent to the seizures of the Seized Funds and the appointment of the Foreign Representative as the bankruptcy trustee for MtGox in the Japan Bankruptcy, counsel for the Foreign Representative, on behalf of the Debtor, contacted the Government to commence discussions and negotiations in an effort to obtain the return of the Seized Funds and their repatriation to Japan for use in distributions in the Japan Bankruptcy.

19. While the Debtor has a right to a trial if the Government filed a forfeiture case with respect to the Seized Funds, the Foreign Representative sought to avert a trial and its incumbent risks, delays and expenses by reaching a fair and expedited resolution to the matter. One unique and substantial hurdle the Debtor faces in litigating a forfeiture case against the Government is overcoming the burden placed on a private litigant in wresting property seized under the forfeiture statute from the U.S. government, which acquires title to the property as of the date of the alleged wrongdoing. See infra ¶ 28. The Debtor thus faces losing all of the Seized Funds to the U.S. government if it chooses to litigate.

20. The Foreign Representative, through his U.S. counsel, and the Government engaged in extensive, arms' length negotiations on the matter, and ultimately reached agreement on the terms set forth in the Settlement Agreement.[7]

## THE SETTLEMENT AGREEMENT

21. Following lengthy negotiations between the parties, in February 2017, the Foreign Representative and the Government agreed to the terms of the Settlement Agreement, which releases one-half of the Seized Funds to the Foreign Representative and alleviates the risk and expense of engaging in civil litigation with the Government parties.

---

[7] The Foreign Representative notes that the resolution embodied in the Settlement Agreement was agreed to in February 2016, approximately one year ago. However, the Settlement Agreement required formal approval by personnel with the Department of Justice in Washington, D.C. That approval was not given until the end of January 2017, which the DOJ's representatives informed Brown Rudnick is not atypical.

22. A summary of the key terms of the Settlement Agreement is as follows:[8]

   i. The Government agrees to release a total of $2,571,201.10, of the Seized Funds, representing fifty percent (50%) of the Seized Funds (the "Released Funds"), to the Foreign Representative, on behalf of the Debtor.

   ii. The Foreign Representative, on behalf of MtGox, agrees to withdraw its claims as to the remaining Seized Funds, and agrees to forfeit all rights, title, and interest in that portion of the Seized Funds to the Government.

   iii. MtGox agrees to indemnify and hold the Government harmless from and against all claims, damages, losses, and actions resulting from or arising out of the release of the Released Funds to MtGox, provided, however, that MtGox's obligation to the Government under the indemnity provision, if any, shall not exceed the amount of the Released Funds.

   iv. The Settlement Agreement shall only be effective upon (i) the entry of an order by the Chapter 15 Court or any other court of competent jurisdiction (a) approving the Settlement Agreement; (b) approving the transfer of the Released Funds to the Foreign Representative pursuant to Sections 363 and 1520(a)(2) of the Bankruptcy Code; (c) approving the repatriation of the Released Funds to Japan for use in the Japan Bankruptcy pursuant to Section 1521(b) of the Bankruptcy Code; and/or (d) any other and further relief necessary to effectuate this Agreement; and (ii) the entry of an order by the Tokyo Court approving the Settlement Agreement and granting any other and further relief necessary to effectuate the Agreement.

23. On February 2, 2017, the Tokyo Court approved the Settlement Agreement. A copy of the Tokyo Court's approval order is attached hereto as **Exhibit E**, and a copy of the Tokyo Court's approval order translated into English is attached hereto as **Exhibit F**.

## RELIEF REQUESTED

24. By this Motion, the Foreign Representative seeks the entry of an Order, substantially in the form attached hereto as **Exhibit H**, (i) approving the Settlement Agreement pursuant to Bankruptcy Code Sections 363 and 1520(a)(2) insofar as it provides for the transfer of an interest of the Debtor in property in the United States; (ii) pursuant to Bankruptcy Code

---

[8] The summary of the Settlement Agreement set forth herein is provided solely for the convenience of the Court, and is not intended to be a comprehensive recitation of the terms of the Settlement Agreement. To the extent that there is any inconsistency between the summary and the actual terms of the Settlement Agreement, the actual terms of the Settlement Agreement control.

9

Sections 363 and 1520(a)(2), approving the transfer of Released Funds to the Foreign Representative and the forfeiture of the Forfeited Funds to the Government in accordance with the Settlement Agreement; and (iii) pursuant to Bankruptcy Code Section 1521(b), approving the repatriation of the Released Funds to Japan for distribution in the Japan Bankruptcy.

## BASIS FOR RELIEF REQUESTED

**I.  Transfer of the Released Funds to the Foreign Representative Should be Approved under Bankruptcy Code Section 1520(a) and 363(b).**

25. Section 1520(a) of the Bankruptcy Code, provides that "[u]pon recognition of a foreign proceeding that is a foreign main proceeding—(2) sections 363, 549, and 552 apply to a transfer of an interest of the debtor in property that is within the territorial jurisdiction of the United States to the same extent that the sections would apply to property of an estate . . . ." 11 U.S.C. § 1520(a)(2). The Foreign Representative respectfully submits that the transfer of the Released Funds to the Foreign Representative and agreement to forfeit the Forfeited Funds to the Government should be approved as an exercise of the Foreign Representative's sound business judgment under Bankruptcy Code Sections 1520(a)(2) and 363(b).

26. While the Fifth Circuit has not directly addressed the issue, other Courts have held that Bankruptcy Code Section 1520(a)(2) requires bankruptcy courts to review transactions that are outside the ordinary course in Chapter 15 cases in the same manner as they would in a Chapter 11 case. See In re Fairfield Sentry Ltd., 768 F.3d 239, 246 (2d Cir. 2014) ("The language of section 1520(a)(2) is plain; the bankruptcy court is *required* to conduct a section 363 review when the debtor seeks a transfer of an interest in property within the territorial jurisdiction of the United States."); In re Elpida Memory, Inc., 2012 WL 6090194 at *1 (Bankr. D. Del. Nov. 20, 2012) (stating that courts should review transfers pursuant to Bankruptcy Code Section 1520(a)(2) under the same legal standards that it would review a "transfer by a trustee

10

outside the ordinary course of business, *i.e.*, is the transaction a sound exercise of the trustee's business judgment").

27. In the Fifth Circuit, courts determine whether to authorize the use, sale, or lease of property of the estate under Bankruptcy Code Section 363(b) by requiring the debtor to show that a sound business purpose justifies such actions. See In re ASARCO, L.L.C., 650 F.3d 593, 601 (5th Cir. 2011) ("'[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.'") (quoting In re Cont'l Air Lines, Inc., 780 F.2d 1223, 1226 (5th Cir. 1986)); In re Moore, 608 F.3d 253, 263 (5th Cir. 2010) ("A sale of assets under § 363 . . . is subject to court approval and must be supported by an articulated business justification, good business judgment, or sound business reasons."). Furthermore, "[u]nless the manner in which an estate representative arrives at a decision is seriously flawed, the court will defer to the estate representative." In re Broughton Ltd. P'ship, 474 B.R. 206, 218 (Bankr. N.D. Tex. 2012) (citing In re Pilgrim's Pride Corp., 403 B.R. 413, 427 (Bankr. N.D. Tex. 2009) ("The court must ensure the decision-making process used by a debtor in possession in exercising its powers under the Code is a sensible one.").

28. The Foreign Representative has determined in his business judgment that the Settlement Agreement is justified and in the best interests of MtGox creditors. To be sure, the Foreign Representative would contest the alleged crimes in any litigation against the Government. However, the risks of litigating against the U.S. government for the full amount of the Seized Funds, for whom litigation costs and temporal delay are no issue, are great and present a serious chance of the Debtor recovering *none* of the Seized Funds. Those risks are especially pronounced here, where it would be the Debtor's burden to wrest title away from the

11

U.S. government in the litigation.[9] Specifically, the federal forfeiture statute provides that "[a]ll right, title, and interest in property [subject to forfeiture] shall vest in the United States upon commission of the act giving rise to forfeiture under this section." 18 U.S.C. § 981(f). The statute further provides that "[p]roperty taken or detained under this section shall not be repleviable, but shall be deemed to be in the custody of the Attorney General . . . , subject only to the orders and decrees of the court or official having jurisdiction thereof." 18 U.S.C. § 981(c). These risks only compound the underlying risk in any litigation—that the Foreign Representative may lose, *after* incurring significant costs in that litigation.

29. Here, the Foreign Representative submits that transfers provided under the Settlement Agreement amply meet the Fifth Circuit's business judgment standard. The negotiation process between the Foreign Representative and the Government was extensive and the Foreign Representative believes the Settlement Agreement represents the best deal possible under the circumstances. See Kobayashi Decl. ¶¶ 11-14. The transfer of the Released Funds from the Government to the Foreign Representative is the result of an arm's-length negotiation process, avoids the unnecessary risks, delays and expenses related to potential litigation over the underlying seizures, and benefits all of MtGox's creditors because the Released Funds, upon transfer to the Foreign Representative, will be available for distribution in the Japan Bankruptcy. See id.[10]

---

[9] To overcome this burden, MtGox would need to prevail at trial on the predicate offense of operating as an unlicensed money transmitting business.

[10] The Foreign Representative notes that MtGox is required to indemnify the Government against claims resulting from or arising out of the release of the Released Funds to MtGox. This was a condition that the Government insisted upon through the negotiations of the Settlement Agreement. However, the Government agreed to limit MtGox's indemnification obligations, if any, to the amount of Released Funds. Moreover, the risk of the indemnification obligation being triggered is very low, taking into account, among other things, that no U.S. creditor has an interest in the Seized Funds. See Kobayashi Decl. ¶ 13, n.6.

30. To the extent the Court considers it appropriate to review the matter as a settlement pursuant to Bankruptcy Rule 9019, that standard has been met.[11] Bankruptcy courts "should approve a settlement only when the settlement is fair and equitable and in the best interest of the estate." Matter of Foster Mortg. Corp., 68 F.3d 914, 917 (5th Cir. 1995) (citing Jackson Brewing Co., 624 F.2d 599, 602 (5th Cir. 1980). Central to the analysis is a balance of the "terms of the compromise with the likely rewards of litigation." Id. (internal quotations omitted). The Fifth Circuit applies a three-part test when considering compromise settlements:

> (1) the probability of success in the litigation, with due consideration for the uncertainty in fact and law,
>
> (2) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and
>
> (3) all other factors bearing on the wisdom of the compromise.

Id. (quoting Jackson Brewing, 624 F.2d at 609).

31. As discussed above, each factor considered by courts in the Fifth Circuit weighs in favor of authorizing the Settlement Agreement. For the first factor, the Foreign Representative stands across the table from the U.S. federal government, which is in possession of the Seized Funds, has developed evidence in support of multiple search and seizure warrants, and persuaded a U.S. Magistrate Judge to find probable cause that MtGox, through an affiliate, was operating an unlicensed money transmitting business. The second factor has already been addressed, but it bears repeating that the Foreign Representative must, in litigation, weather the full resources of the U.S. federal government, for whom a lengthy litigation poses no downside. Finally, the Settlement Agreement represents a near-term return of significant assets to the Japan

---

[11] The Foreign Representative notes that there is uncertainty whether Bankruptcy Rule 9019 applies in Chapter 15 cases. See In re Ace Track Co., Ltd., 556 B.R. 887, 909 (Bankr. N.D. Ill. 2016) (applying Bankruptcy Rule 9019 to a settlement in a Chapter 15 case but recognizing that "[a]n argument certainly could be raised that Rule 9019 should not apply . . . [a]s in chapter 9 cases, there is no bankruptcy estate.") (citing In re City of Stockton, Cal., 486 B.R. 194, 195-98 (Bankr. E.D. Cal. 2013)).

13

Bankruptcy for future distribution in that proceeding (the "main" bankruptcy proceeding), while eliminating the risk of returning empty handed. The Foreign Representative submits that under either the Bankruptcy Code Section 363 standard or the Bankruptcy Rule 9019 standard, the Settlement Agreement and the transfers thereunder should be approved.

## II. Repatriation of the Released Funds is Appropriate under Bankruptcy Code Section 1521(b).

32. The repatriation of the Released Funds to Japan for distribution in the Japan Bankruptcy is permitted by the Bankruptcy Code and the Court should authorize and entrust the Released Funds to the Foreign Representative for their repatriation pursuant to Bankruptcy Code Section 1521(b). Section 1521(b) of the Bankruptcy Code authorizes the Court, in its discretion, to "entrust the distribution of all or part of the debtor's assets located in the United States to the foreign representative . . . , provided that the court is satisfied that the interests of creditors in the United States are sufficiently protected." 11 U.S.C. § 1521(b); see also 11 U.S.C. § 1522(a) ("The court may grant relief under section . . . 1521, . . . only if the interests of the creditors and other interested entities, including the debtor, are sufficiently protected.").

33. Bankruptcy Code Sections 1521(b) and 1522 work in conjunction to "achieve an appropriate balance between the interests of creditors and other interested entities, including the debtor." In re Vitro S.A.B. de C.V., 473 B.R. 117, 121 (Bankr. N.D. Tex. 2012); see In re Int'l Banking Corp. B.S.C., 439 B.R. 614, 626 (Bankr. S.D.N.Y. 2010) ("The idea underlying [Bankruptcy Code Section 1522] is that there should be a balance between relief that may be granted to the foreign representative and the interests of the persons that may be affected by such relief."). Concerns over whether interested entities are sufficiently protected center around whether the relief sought "unduly favor[s] one group of creditors over another" or whether the relief falls afoul of the public policy exception embodied in Bankruptcy Code Section 1506. In

14

re Tri-Cont'l Exch. Ltd., 349 B.R. 627, 637-38 (Bankr. E.D. Cal. 2006); see In re Vitro S.A.B. de C.V., 473 B.R. at 123 (describing the Bankruptcy Code Section 1506 public policy exception as a safety valve for creditors in Chapter 15 proceedings).

34. Courts have entrusted the distribution of assets to foreign representatives pursuant to Bankruptcy Code Section 1521(b) in situations where the turnover of assets "would be more economical and efficient in that it would permit all of [the company's] creditors worldwide to pursue their rights and remedies in one court of competent jurisdiction." In re Atlas Shipping A/S, 404 B.R. 726, 742 (Bankr. S.D.N.Y. 2009). The Atlas court found that creditors' ability to assert their rights to the transferred funds in the foreign court, without prejudice, was sufficient protection for creditors under Section 1521(b). See id. Here, the Japan Bankruptcy is a foreign main proceeding, and is the singular forum in which all creditors (including all U.S. and foreign creditors) are already seeking to satisfy their claims. See Kobayashi Decl. ¶¶ 14-18.[12]

35. By this Motion, the Foreign Representative is merely seeking to repatriate the Released Funds to Japan to be used in the administration of the Japan Bankruptcy, including providing distributions to all creditors. U.S. creditors and other interest holders will not be prejudiced by asserting their claims in the Japan Bankruptcy because all creditors, regardless of geographical or jurisdictional location, must utilize the same process in the same manner as all other creditors. See id. Therefore, the Debtor's U.S. creditors, like the creditors in Atlas, are sufficiently protected under 11 U.S.C. §§ 1521(b) and 1522 because U.S. creditors may assert their rights to the transferred funds, without prejudice, in the same forum as all other creditors. Importantly, no U.S. or other creditors have a property interest in the Seized Funds. All MtGox

---

[12] For a summary of the status of the filing of bankruptcy claims as of September 28, 2016, see Trustee's Report, MtGox Co., Ltd [Tokyo District Court] September 28, 2016, (fu) no. 3830, available at www.mtgox.com and attached hereto as **Exhibit G**.

customers, including those in the U.S., have the status of unsecured creditors and are being treated as such in the Japan Bankruptcy. See Kobayashi Decl. ¶ 14.

36. Moreover, there is no issue of public policy that justifies a contrary result. Indeed, permitting the Foreign Representative to repatriate the Released Funds for use in the Japan Bankruptcy would advance the express objectives of Chapter 15 set forth in Bankruptcy Code Section 1501, including: (i) the "fair and efficient administration of cross-border insolvencies that protects the interests of all creditors and other interested entities, including the [D]ebtor," 11 U.S.C. §1501(a)(3); and (ii) the "protection and maximization of the value of the [D]ebtor's assets." 11 U.S.C. § 1501(a)(4). Here, repatriation of the funds will, *inter alia*, increase the value of the Debtor's estate in the Japan Bankruptcy, and subsequently result in increased distributions to all creditors in the Japan Bankruptcy. Thus, permitting the Foreign Representative to repatriate the Released Funds will materially aid the Foreign Representative's efforts to maximize recoveries for, and provide for an equitable distribution of value among, all creditors.

[*REMAINDER OF PAGE INTENTIONALLY LEFT BLANK*]

# **CONCLUSION**

37. For all of the foregoing reasons, the Foreign Representative respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit H**, (i) approving the Settlement Agreement pursuant to Bankruptcy Code Sections 363 and 1520(a)(2) insofar as it provides for the transfer of an interest of the Debtor in property in the United States; (ii) pursuant to Bankruptcy Code Sections 363 and 1520(a)(2), approving the transfer of Released Funds to the Foreign Representative and the forfeiture of the Forfeited Funds to the Government in accordance with the Settlement Agreement; and (iii) pursuant to Bankruptcy Code Section 1521(b), approving the repatriation of the Released Funds to Japan for distribution in the Japan Bankruptcy.

Dated: February 28, 2017
        Dallas, Texas

Respectfully submitted,

**GARDERE WYNNE SEWELL LLP**

*/s/ Thomas C. Scannell*
Marcus A. Helt (TX 24052187)
Thomas Scannell (TX 24070559)
Gardere Wynne Sewell LLP
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667
Email: mhelt@gardere.com
Email: tscannell@gardere.com

- and -

**BROWN RUDNICK LLP**
David J. Molton (*admitted pro hac vice*)
Daniel J. Saval (*admitted pro hac vice*)
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
Email: dmolton@brownrudnick.com
Email: dsaval@brownrudnick.com

*Counsel for Nobuaki Kobayashi, in his capacity as the Trustee and Foreign Representative of MtGox Co., Ltd., a/k/a MtGox KK*

62713666 v1