Exhibit A



**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

---

Evan Thomas Shea
*Assistant United States Attorney*
Evan.Shea@usdoj.gov

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: 410-209-4982
MAIN: 410-209-4800
FAX: 410-962-9293

January 27, 2017

Daniel J. Saval, Esquire
Brown Rudnick LLP
Seven Times Square
New York, NY 10036

Re:     United States v. $2,117,414.96 in U.S. Currency,
        USSS case no. 101-777-40003-J, seizure number 101-2013-004.

        United States v. $109,479.84 in U.S. Currency,
        USSS case no. 101-777-40003-J, seizure number 101-2013-006.

        United States v. $2,915,507.40 in U.S. Currency,
        CBP case no. 2013-1303-001294-01                    .

Dear Mr. Saval:

In accordance with our recent communications concerning the above-referenced forfeiture actions, the following agreement is proposed. Once the agreement is fully executed and returned to me, I will forward it to the appropriate agencies for disposition.

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is made between MtGox Co., Ltd. (the "Claimant"), by and through Nobuaki Kobayashi, solely in his capacity as the bankruptcy trustee and foreign representative of the Claimant (the "Foreign Representative"), and the United States Attorney's Office for the District of Maryland (the "Government" and, together with the Foreign Representative, the "Parties");

WHEREAS, on or about May 9, 2013, the U.S. Secret Service executed seizure warrant number 13-1085-SAG and seized $2,117,414.96 in U.S. Currency under USSS case no. 101-777-40003-J before the United States District Court for the District of Maryland (the "Maryland Court"), seizure number 101-2013-004; and

WHEREAS, on or about May 14, 2013, the U.S. Homeland Security Investigations executed seizure warrant number 13-1162-SKG and seized $2,915,507.40 in U.S. Currency under CBP case no. 2013-1303-001294-01 before the Maryland Court; and

WHEREAS, on or about July 3, 2013, the U.S. Secret Service executed seizure warrant number 13-1387-SAG and seized $109,479.84 in U.S. Currency under USSS case no. 101-777-40003-J before the Maryland Court, seizure number 101-2013-006; and

WHEREAS, the total amount of U.S. Currency seized pursuant to the three seizure warrants described above is $5,142,402.20 (the "Seized Assets"); and

WHEREAS, the Seized Assets are held in the District of Maryland; and

WHEREAS, the Claimant is presently involved in bankruptcy proceedings in Japan (the "Japan Bankruptcy Proceeding") before the Twentieth Civil Division of the Tokyo District Court, Japan (the "Tokyo Court") and a related Chapter 15 bankruptcy case in the United States before the U.S. Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Chapter 15 Court"), and by order dated June 18, 2014, the Chapter 15 Court entered an order, *inter alia*, recognizing the Japan Bankruptcy Proceeding as a "foreign main proceeding" under Chapter 15 of the U.S. Bankruptcy Code and recognizing the Foreign Representative as the foreign representative of Claimant (the "Recognition Order");

WHEREAS, subsequent to the seizures of the Seized Assets and entry of the Recognition Order, counsel for the Foreign Representative, on behalf of the Claimant, contacted Government counsel and expressed an interest in the Seized Assets, and also provisionally waived any and all time limits for the filing of a civil forfeiture case affecting the Seized Assets; and

WHEREAS, during such a civil forfeiture case against the Seized Assets, the Claimant would have a right to a civil trial at which the Claimant could examine witnesses, present evidence, and give testimony; and

WHEREAS, the Claimant would prevail at such a trial if the Government could not establish by a preponderance of the evidence that the property was subject to forfeiture, or if the Claimant could establish that the Claimant was an innocent owner; and

WHEREAS, the Foreign Representative, on behalf of the Claimant, nevertheless wishes to settle this case and waive the right to a trial, and the Parties both wish to reach a fair and expedited resolution to this matter; and

WHEREAS, it appears to the Parties that no person other than the Claimant has any legal right, title, or interest in any part of the Seized Assets; and

WHEREAS, the Foreign Representative, on behalf of the Claimant, acknowledges that the Government has no obligation to any of the Claimant's customers, past or present, with respect to the Seized Assets, and the Foreign Representative, on behalf of the Claimant, agrees that all claims

by such customers pertaining to any funds that were held by the Claimant, at any time, on behalf of customers, or pertaining specifically to the Seized Assets are the sole responsibility of the Claimant;

**NOW, THEREFORE,** for the foregoing reasons and for good and substantial consideration, the adequacy and receipt of which is hereby acknowledged, the Foreign Representative, on behalf of the Claimant, and the Government agree as follows:

1.  The Government agrees to **release a total of $2,571,201.10 of the Seized Assets (the "Released Funds") as follows to the Foreign Representative, on behalf of the Claimant:**

    (a)  release $2,117,414.96 in U.S. Currency held under USSS case no. 101-777-40003-J, and seizure number 101-2013-004;

    (b)  release $109,479.84 in U.S. Currency held under USSS case no. 101-777-40003-J, and seizure number 101-2013-006; and

    (c)  release $344,306.30 in U.S. Currency held under CBP case no. 2013-1303-001294-01.

Within five (5) business days of the Effective Date (defined below), the Government shall initiate the transfer of the Released Funds, by electronic funds transfer, to a bank account to be designated by the Foreign Representative. The Foreign Representative agrees to provide Government counsel with completed ACH payment forms so that the transfer of the Released Funds can be made.

2.  This Agreement is subject to (the "Effectiveness Conditions"): (i) the entry of an order by the Chapter 15 Court or any other court of competent jurisdiction (a) approving this Agreement; (b) approving the transfer of the Released Funds to the Foreign Representative pursuant to Sections 363 and 1520(a)(2) of the Bankruptcy Code; (c) approving the repatriation of the Released Funds to Japan for use in the Japan Bankruptcy Proceeding pursuant to Section 1521(b) of the Bankruptcy Code; and/or (d) any other and further relief necessary to effectuate this Agreement; and (ii) the entry of an order by the Tokyo Court approving this Agreement and granting any other and further relief necessary to effectuate this Agreement (the "Approval Orders"). The Parties agree that the Foreign Representative may file a motion seeking the Approval Orders in each of the Chapter 15 Court and the Tokyo Court. On the first date when both Effectiveness Conditions are satisfied (the "Effective Date"), this Agreement shall become effective and the payment of the Released Funds to the Foreign Representative shall be due and payable in accordance with paragraph 1 above. This Agreement shall terminate on the date (the "Termination Date") on which an order is entered denying approval of this Agreement by the Chapter 15 Court, the Tokyo Court, the Maryland Court or any other court of competent jurisdiction over the subject matter herein and, upon such termination, the Parties shall be restored to the same position they were in immediately before entry into this Agreement without waiver of any rights, remedies, claims, defenses, positions or arguments, including, without limitation, Claimant's right to a trial on the matter. Without limiting the foregoing, prior to the occurrence of

any Termination Date, the Foreign Representative, on behalf of the Claimant, shall not assert that there was a lack of reasonable cause for the Government's seizure of the Seized Assets.

3.      The Foreign Representative, on behalf of the Claimant, agrees as of the Effective Date to withdraw its claims as to the remaining Seized Assets, and agrees to forfeit all rights, title, and interest in that portion of the Seized Assets to the Government. These forfeited funds are as follows: $2,571,201.10 in U.S. Currency held under CBP case no. 2013-1303-001294-01 (the "Forfeited Funds").

4.      The Parties agree that, if necessary, the Government may submit a copy of this Agreement to the Maryland Court in support of a motion seeking an order conforming to the terms of this Agreement and seeking judicial forfeiture of the Forfeited Funds specified in paragraph 3 above. The Government acknowledges that it does not require the approval of the Maryland Court to transfer the Released Funds to the Claimant.

5.      The Claimant agrees to indemnify and hold the Government harmless from and against all claims, damages, losses, and actions resulting from or arising out of the release of the Released Funds to the Claimant, provided, however, that Claimant's obligations to the Government under this paragraph, if any, shall not exceed the amount of the Released Funds. Each of the Parties agrees to bear its own costs and attorney's fees in connection with the negotiation, documentation and seeking of any approval of this Agreement.

6.      Notwithstanding the Government's agreement to release the Released Funds to the Foreign Representative, on behalf of the Claimant, the Foreign Representative understands that the United States Department of the Treasury's Bureau of the Fiscal Service administers a centralized offset program (the "Treasury Offset Program"), under which the federal agencies of the United States of America (the "Federal Agencies") may withhold parts or all of any funds in the possession of the United States of America until the Federal Agencies (including the Internal Revenue Service) have determined that the Claimant does not owe any unrelated, legally enforceable debts to the United States of America. See 31 U.S.C. § 3716. Notwithstanding the foregoing, the Foreign Representative and the Claimant do not waive any rights or protections available under 31 C.F.R. § 285.5 and all related statutes and regulations, including, without limitation, all statutes and regulations prohibiting the Government or the Federal Agencies from collecting or offsetting debts subject to the automatic stay in bankruptcy proceedings or debts covered by a statute that prohibits collection of such debt by offset. Furthermore, the Foreign Representative and the Claimant do not waive any rights or protections available based upon (i) the application of 11 U.S.C. § 362 to the Claimant and the property of the Claimant that is within the territorial jurisdiction of the United States of America pursuant to 11 U.S.C. § 1520(a)(1) and the Recognition Order, and/or (ii) the provisions of 11 U.S.C. § 1507 and 11 U.S.C. § 1521, including, without limitation, 11 U.S.C. § 1521(a)(5) and 11 U.S.C. § 1521(a)(7).

7.      Notwithstanding anything herein to the contrary, the Foreign Representative is acting solely in a representative capacity and not individually as the bankruptcy trustee and foreign representative on behalf of the Claimant, and the Government agrees that the Foreign Representative shall bear no personal liability whatsoever in connection with (i) this Agreement,

(ii) any of the matters addressed herein, or (iii) any of Claimant's obligations hereunder, including, without limitation, any obligations that may arise under paragraph 5 hereof.

8.    This Agreement states the entire agreement reached between the Parties hereto.

Rod J. Rosenstein
United States Attorney

1/30/2017
Date

Evan T. Shea
Assistant United States Attorney

2/28/2017
Date

Daniel J. Saval, Esquire
Brown Rudnick LLP
Attorney for Bankruptcy Trusteee of MtGox, Co., Ltd

2/2/2017
Date

Nobuaki Kobayashi
Solely in his Representative Capacity as Bankruptcy
Trustee of MtGox, Co., Ltd. and not individually