Exhibit B

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>MtGox Co., Ltd. (a/k/a MtGox KK),<br><br>Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. 14-31229-sgj-15 |

DECLARATION
OF NOBUAKI KOBAYASHI,
AS FOREIGN REPRESENTATIVE,
IN SUPPORT OF THE MOTION FOR
AN ORDER APPROVING: (I) SETTLEMENT
AGREEMENT WITH U.S. GOVERNMENT; (II) TRANSFER
OF SEIZED FUNDS IN ACCORDANCE WITH THE SETTLEMENT
AGREEMENT, PURSUANT TO 11 U.S.C. §§ 363 AND 1520(a)(2); AND (III)
REPATRIATION OF THE RELEASED FUNDS TO JAPAN FOR DISTRIBUTION
IN THE JAPAN BANKRUPTCY PROCEEDING PURSUANT TO 11 U.S.C § 1521(b)

I, Nobuaki Kobayashi, in my capacity as the bankruptcy trustee and foreign representative of MtGox Co., Ltd., a/k/a MtGox KK (the "Debtor" or "MtGox"), pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America that the following is true and correct to the best of my knowledge and belief, including based upon my review of the books, records and documents of the Debtor and discussions with my counsel:

1. I am a resident of Japan, and after receiving an L.L.B from Chuo University in 1979, have been registered to practice law in Japan since 1983. I am currently a partner at Nagashima Ohno & Tsunematsu, a Japan-based law firm engaged in the provision of corporate reorganization, insolvency and related services in Japan. Since becoming an attorney at law, I have been a member of the Insolvency Law Study Group of the Tokyo Bar Association, and I was appointed Chairperson in 2002. Since 2013, I have been Chairperson of the Study

Committee on the Bankruptcy Law System of the Japan Federation of Bar Associations. I have lectured in a variety of programs and institutions and have delivered lectures on insolvency practice hosted by the Training and Research Institute for Court Officials of the Supreme Court of Japan and attended by Japanese judges. From 2007 to March 2014, I was a visiting Professor in insolvency law at Chuo University Law School in Tokyo, Japan. In 2012, I was ranked the fourth most valuable business law attorney in Japan based on a survey conducted by Nikkei.

2. In addition, I have extensive experience in each of Japan's three types of insolvency proceedings. Specifically, I have served as: (i) the bankruptcy trustee in approximately 30 Japan bankruptcy proceedings involving companies; (ii) the supervisor in approximately 30 Japan civil rehabilitation proceedings; and (iii) the reorganization trustee in approximately 10 Japan reorganization proceedings. As such, I am fully familiar with Japanese insolvency law and with MtGox's Japan Bankruptcy (as described below).

3. On April 24, 2014, I was appointed as the bankruptcy trustee of MtGox, which is the subject of a bankruptcy procedure under the Bankruptcy Act of Japan (the "Japan Bankruptcy"), currently pending before the Twentieth Civil Division of the Tokyo District Court in Japan (the "Tokyo Court").

4. On May 23, 2014, I, as bankruptcy trustee and Foreign Representative of MtGox, filed the *Amended Verified Petition for Recognition and Chapter 15 Relief* [Docket No. 126] in the United States Bankruptcy Court for the Northern District of Texas (the "Court") requesting, *inter alia*, that the Japan Bankruptcy be recognized as a foreign main proceeding.

5. On June 18, 2014, this Court entered the *Order Recognizing Foreign Main Proceeding and Granting Related Relief* [Docket No. 151] (the "Recognition Order"), recognizing the Japan Bankruptcy as a foreign main proceeding under title 11 of the United

2

States Code (the "Bankruptcy Code") Sections 1517(a) and 1517(b)(1), and stating that all of the effects of recognition as set forth in Bankruptcy Code Section 1520 apply. The Recognition Order also established that I am the recognized foreign representative of the Debtor.

6. I submit this declaration in support of the *Motion for an Order Approving: (I) Settlement Agreement With U.S. Government; (II) Transfer of Seized Funds in Accordance With the Settlement Agreement, Pursuant to 11 U.S.C. §§ 363 and 1520(a)(2); and (III) Repatriation of Released Funds to Japan for Distribution in the Japan Bankruptcy Proceeding Pursuant to 11 U.S.C. § 1521(b)* (the "Motion"), which I, in my capacity as bankruptcy trustee and foreign representative of MtGox, have contemporaneously filed with the this Court seeking, *inter alia*, permission to have the Released Funds transferred to MtGox for repatriation and distribution in the Japan Bankruptcy.[1] Specifically, by the Motion, I respectfully seek an Order granting: (i) approval of the Settlement Agreement pursuant to Bankruptcy Code Sections 363 and 1520(a)(2), as the Settlement Agreement provides for the transfer of an interest of MtGox in property located in the United States; (ii) authorization to transfer the Released Funds to me, in my capacity as the bankruptcy trustee and foreign representative of MtGox, pursuant to Bankruptcy Code Sections 363 and 1520(a)(2); and (iii) authorization to repatriate the Released Funds to Japan pursuant to Bankruptcy Code Section 1521(b) for distribution in the Japan Bankruptcy.

7. Based on my review of the relevant documents and discussions with my U.S. counsel, I understand that from May through July 2013, the U.S. Government, acting through the U.S. Secret Service and U.S. Homeland Security Investigations, seized a total amount of $5,142,402.20 (the "Seized Funds") from Wells Fargo Bank, N.A. and Dwolla bank accounts of

---

[1] All capitalized terms used but not defined herein, shall have the meanings ascribed to such terms in the Motion.

3

a MtGox affiliate, Mutum Sigillum LLC, a Delaware entity ("Mutum").[2] I have been advised the seizures were based on a finding, by a U.S. Magistrate Judge, that there was probable cause to believe that the MtGox affiliate was operating as an unlicensed money transmitting business in violation of 18 U.S.C. § 1960. The U.S. Government currently holds the Seized Funds in the District of Maryland.

8. I have been advised and it is my understanding that Mutum was used for the processing of funds relating to MtGox's U.S. customers to and from the bitcoin exchange through an online payment processor, Dwolla, which was located in Iowa. More specifically, it is my understanding that, in order to facilitate trades on the MtGox exchange, Mutum funded its Dwolla account from its Wells Fargo account and, after a trade had been made, funds would be transferred from Mutum's Dwolla account to its Wells Fargo account. Additionally, I have been advised and it is my understanding that MtGox would transfer, by international wire transfer, funds from Sumitomo Mitsui Bank in Japan in the name of Mt. Gox Company Ltd. for the benefit of the Mutum Wells Fargo account. After the funds were credited to the Mutum Wells Fargo account, they were frequently disbursed to the Dwolla account to purchase bitcoins which would then be registered on MtGox's bitcoin registry.[3]

9. Subsequent to the seizures of the Seized Funds and following my appointment as bankruptcy trustee and Foreign Representative of MtGox, I instructed my United States counsel, Brown Rudnick LLP, to contact counsel for the United States Attorney's Office for the District

---

[2] I have been advised that, pursuant to the seizure warrants, $2,915,507.40 was seized from Mutum's Dwolla account and $2,117,414.96 was seized from Mutum's Wells Fargo Bank, N.A. account. Additionally, I have been advised that a check in the amount of $109, 479.84 drawn from a Wells Fargo Bank, N.A. account in the name of MtGox North America, Inc., a MtGox subsidiary, was seized by the U.S. Secret Service during its attempted transfer to a different bank. The Seized Funds comprise all of the aforementioned funds.

[3] Although Mutum was used for the processing of funds in connection with the operation of the MtGox exchange, I understand, from MtGox's books and records, that Mutum is a company wholly owned by Robert Marie Mark Karpeles. As the Court is aware, Mr. Karpeles is the founder of MtGox and its former sole director, but no longer has any control over MtGox.

4

of Maryland (the "Government") in order to seek the return and repatriation of the Seized Funds to Japan for use and distribution in the Japan Bankruptcy, including to make distributions to creditors.

10. After lengthy, arm's-length negotiations between the parties, I, on behalf of the Debtor, entered into a settlement agreement with the Government to resolve the disputes over the Seized Funds (the "Settlement Agreement"). The Settlement Agreement provides for the release of 50% of the Seized Funds -- *i.e.*, $2,571,201.10 -- to me, in my capacity as bankruptcy trustee and foreign representative of MtGox and on behalf of MtGox.[4]

11. After multiple conversations with my counsel, my understanding of the extensive negotiations between my counsel and the U.S. government, and my business and professional experience, I believe that the Settlement Agreement represents the best deal possible under the circumstances.

12. In addition to returning a significant portion of the Seized Funds to MtGox, the Settlement Agreement also constitutes a more favorable result than litigation. I am advised that litigation to recover the Seized Funds would require substantial discovery, briefing, and a trial that would significantly deplete assets of the Debtor's estate. Importantly, I have been advised that there are significant and unique impediments to MtGox recovering the full amount of the Seized Funds through litigation with the U.S. government. One of the principal hurdles is that should the U.S. government commence a formal forfeiture proceeding against the funds, under U.S. law, title to the funds would vest in the U.S. government and it would be MtGox's burden to overcome that transfer of property interest through litigation.[5]

---

[4] A copy of the Settlement Agreement is attached to the Motion as **Exhibit A.**

[5] I have been advised that, to overcome this burden, MtGox must prevail at trial on the predicate crime of operating as an unlicensed money transmitting business.

13. The Settlement Agreement averts the incumbent risks, costs and delays of a trial against the U.S. government and eliminates the risk of zero recovery at trial. In this way, the Settlement Agreement is beneficial to the Debtor's estate in two key ways: (i) it provides for the release of substantial funds that can be used for distribution in the Japan Bankruptcy; and (ii) it avoids draining the limited resources of the Debtor's estate in any trial against the Government.[6]

14. Furthermore, in granting the relief requested in the Motion, the interests of U.S. creditors are sufficiently protected. In the Japan Bankruptcy, all global creditors of MtGox (including U.S. creditors) with allowed claims will receive *pro rata, pari passu* distributions from MtGox's pool of assets located in Japan. Moreover, there are no U.S. customers or creditors that have an interest in the Seized Funds; rather, all U.S. creditors (including U.S. MtGox customers) are unsecured creditors and will be treated as such in the Japan Bankruptcy.

15. Regarding the claim reconciliation process in Japan, as of February 2, 2017, there were 24,750 persons who filed bankruptcy claims as asserted customers of the MtGox exchange—6,642 of whom were U.S. creditors. The total amount of claims that have been filed is JPY 263,519,268,303,371, which is approximately $2,320,632,367,562 USD using a conversion rate of one (1) JPY to 0.0088 USD. I have challenged creditor claims in the total aggregate amount of JPY 263,473,508,143,986. Of the claims filed by U.S. creditors, 4,961 have been accepted by me in their entirety and 1,378 have been accepted by me in part, totaling JPY 12,317,265,506, which is approximately $108,469,658 USD. I have accepted JPY 45,760,159,385 in total, which is approximately $401,652,219 USD.

---

[6] I note that MtGox is required to indemnify the Government against claims resulting from or arising out of the release of the Released Funds to MtGox. I have been advised by my counsel that this was a condition that the Government insisted upon throughout the negotiations of the Settlement Agreement. However, the Government agreed to limit MtGox's indemnification obligations, if any, to the amount of Released Funds. Moreover, I consider that the risk of the indemnification obligation being triggered is very low, taking into account, among other things, that no U.S. creditor has an interest in the Seized Funds. See infra ¶ 14.

16. I have challenged a total of 1,681 claims filed by U.S. creditors, 299 of which I have challenged in full. The total amount of U.S. creditor claims challenged is JPY 250,134,384,214.[7] Further, I note that in the Japan Bankruptcy, any creditor who disagrees with my decision to challenge their claim may file a motion for appraisal of claims. As of February 2, 2017, one hundred and forty-three (143) creditors, including twenty five (25) U.S. creditors, have filed a motion for appraisal of claims.

17. Now that all bankruptcy claims have been accepted or challenged, subject to the ongoing appraisal of claims, I intend to move forward with the distribution process as soon as possible. However, the exact timing of distribution is not yet determinable because we must still: (i) collect all receivables of MtGox in the amount of approximately JPY 1,956,856,911[8] ($17,220,340 USD); (ii) liquidate the remainder MtGox's assets;[9] and (iii) resolve all outstanding disputes against MtGox that have given rise to additional claims, including the claims asserted by CoinLab, Inc.[10]

---

[7] I note that the largest challenged U.S. creditor claim was in the amount of JPY 233,637,622,403; this claim by itself represents 89.02% of the total amount claimed by U.S. creditors. The challenged claim amount with respect to U.S. creditors appears significant only because of a small number of very large filings. Taking into account the ten largest U.S. creditors' claims, the challenged amount is JPY 249,677,726,390, which constitutes 99.82% of the aggregate amount of challenge U.S. creditor claims.

[8] This number represents the book value of MtGox assets that remain collectable as of September 27, 2016. I note that for certain of these assets it may be difficult to collect any or all of their full book value.

[9] However, as I understand this Court has previously been advised, MtGox customers with allowed claims may have the option of electing to receive a distribution in either cash or bitcoin. Even in the case where I determine it is feasible to distribute bitcoins directly to creditors, the number of bitcoins to be distributed depends on the number of creditors who wish to receive in bitcoins in lieu of cash. As previously reported, I am in possession and control of approximately 202,185.35 bitcoin on behalf of the MtGox estate.

[10] For a summary of the status of the filing of bankruptcy claims as of September 28, 2016, see Trustee's Report, MtGox Co., Ltd [Tokyo District Court] September 28, 2016, (fu) no. 3830, available at www.mtgox.com and attached to the Motion as **Exhibit G**.

18. Finally, repatriation of the Released Funds to Japan will make the distribution process more economically efficient as the Released Funds can simply be added to the pool of assets already located in Japan for administration of the Debtor's estate.

19. Based on the foregoing, I have determined that, in my business judgment, the Settlement Agreement provides for a resolution of the claims to the Seized Funds in a manner that is fair, equitable and in the best interests of MtGox and MtGox's creditors.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is, to the best of my knowledge, information and belief, complete, true and correct.

Executed on this 27 of February, 2017
in Tokyo, Japan

_____
Nobuaki Kobayashi