### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NOTHERN DISTRICT OF TEXAS

**IN RE: MTGOX CO., LTD.**                                              **DEBTOR**

**CAUSE NO. 14-31229**

### MOTION FOR STATUS CONFERENCE

Pursuant to the broad discretion vested with this Court under Chapter 15 to protect the interests of United States creditors and to guarantee fairness in the prosecution of foreign insolvencies, Jed McCaleb requests a conference with this Court to discuss several issues (detailed below) related to the administration of the MTGOX insolvency proceeding. McCaleb's position in the MTGOX insolvency proceeding is unique among the thousands of creditors who have filed claims in the Second Japanese Rehabilitation Proceeding, and this Court's assistance is needed to guarantee his interests are adequately protected.

**I.    FACTUAL BACKGROUND**

Jed McCaleb is a California-based software developer and entrepreneur. In 2010, McCaleb created the MTGOX bitcoin exchange. Though he sold MTGOX three years prior to its collapse, several MTGOX creditors are now seeking to hold McCaleb liable for their losses on the MTGOX exchange.

1

### A. *The alleged theft of the Raggios' bitcoins and the subsequent investigation*

Drs. Donald and Chris Raggio ("the Raggios") created an account on the MTGOX exchange in late 2010 and deposited $5,000. *See*, Affidavit of Chris Raggio, attached as Exhibit A, at ¶ 2; Amended Complaint, attached as Exhibit B, at ¶ 6. The Raggios bought and sold thousands of bitcoins with other MTGOX users and the bitcoins they purchased were placed in their MTGOX account.

The Raggios allege that, from January 7 to January 9, 2011, someone stole 9,406.33 bitcoins from their MTGOX account. *See* Exhibit B, at ¶ 11. At the time, the value of those bitcoins was approximately $3,100 ($0.33 per bitcoin). The Raggios discovered the theft on January 9, 2011 and immediately informed McCaleb. There is no evidence the site's security measures were circumvented. Rather, the theft was perpetrated by someone using the Raggios' own password to access their account.

At McCaleb's suggestion, the Raggios enlisted the help of Michael Marquardt—known as "Theymos" on bitcoin message boards—to trace the bitcoin theft and electronic movement of the bitcoins. McCaleb believed he might have identified the MTGOX account of the person responsible for the unauthorized withdrawals and froze that user's account pending further investigation. *See* Exhibit B, at ¶ 16. That user was known as "Baron". *Id.*, at ¶ 17. We believe those coins

2

remained in Baron's frozen account on the day of MTGOX's collapse.

McCaleb sold the MTGOX exchange on February 11, 2011 to Tibanne KK, a Japanese company owned by Mark Karpeles. *See* McCaleb Affidavit, attached as Exhibit C, at ¶ 8. The Raggios began corresponding with Karpeles regarding the recovery of their allegedly stolen bitcoins. The Raggios told Theymos that Karpeles had taken over the investigation and "[i]t's up to Mark [Karpeles] to see if we are able to recover the stolen BTC."

On May 30, 2011, the Raggios told McCaleb:

> I am glad you did what you could to take action against this scammer. Hopefully this will work and I will get the coins back. And if for some reason that doesn't work out maybe bitcoin will hit 1000 and what [sic] we will have more than enough regardless.

Again, on December 21, 2011, the Raggios e-mailed McCaleb, updating him on the investigation, expressing their appreciation for his efforts, and acknowledging that he was not responsible for "mak[ing] things right":

> I'm not asking you to intervene on my or my father's behalf. Mark is the owner of Mt Gox now. It's his call whether he wants to make things right with us as he did with Bitomat.

The Raggios corresponded with McCaleb well into 2012 (including an in-person meeting in August 2011), discussing wide-ranging topics including philosophical issues related to technology, the future of bitcoin, ideas for future development, and

3

the status of the bitcoin theft. Throughout this time, the Raggios never suggested that McCaleb had breached any obligation to them or was responsible for recovering their bitcoins. Meanwhile, the Raggios continued to correspond with Karpeles. According to the Raggios, Karpeles told them in March 2012 that he was not responsible for recovering their bitcoins. The Raggios' effort to recover their bitcoins stopped at that time.

### B. *The Raggio litigation*

The Raggios filed suit in Mississippi state court on March 5, 2014—three years and 54 days after the theft, but mere days after MTGOX's collapse—to recover the value of their allegedly stolen bitcoins. The Raggios named MTGOX a sole proprietorship, MTGOX, Inc., MT.GOX KK, Tibanne KK, Mutum Sigillum, LLC, Code Collective, LLC, Jed McCaleb, Mark Karpeles, and several John Doe defendants. *See* Original Complaint, attached as Exhibit D. The Raggios never served MT.GOX KK, Tibanne KK, Mutum Sigillum, LLC, or Mark Karpeles. By March 5, 2014, the bitcoins' price had reached approximately $660, from $0.33, a roughly 2,000-fold increase. Today, the bitcoins' price is nearly $11,000 per bitcoin. As a result, the Raggios contend they are now entitled to more than $100 million from McCaleb.

This litigation has continued in fits and starts over the course of the past five years, most of which centered on litigating statute of limitations issues with the Raggios' claims. On September 7, 2018, the Raggios amended their Complaint, naming only Jed McCaleb, Code Collective, LLC, and MTGOX, Inc. *See* Exhibit B. The Raggios now include claims for breach of the Uniform Commercial Code, breach of contract, specific performance for return of the lost bitcoins (frozen in Baron's account and held by the MTGOX estate), breach of fiduciary duty, bailment, fraud, constructive trust, conversion, account stated, conspiracy, and negligence. *See* Exhibit B.

The Raggios filed a Proof of Claim in the Second Japanese Rehabilitation Proceeding on October 16, 2018. On January 9, 2019, McCaleb first received a copy of the Raggios' Proof of Claim in the MTGOX bankruptcy. In that Proof of Claim, the Raggios seek recovery of 9,406.33 bitcoins—the exact sum claimed against McCaleb in the Mississippi lawsuit. *See* Raggios' Proof of Claim, attached as Exhibit E, at 3, 5. One day after receiving the Raggios' Proof of Claim, McCaleb removed the *Raggio* case to federal court based on bankruptcy-related jurisdiction. *See* Docket for *Raggio v. MTGOX, Inc.*, United States District Court for the Southern District of Mississippi, Cause No. 3:19-cv-00022.

### C. McCaleb is Owed Indemnity for All MTGOX-related Claims

As previously described above, McCaleb created MTGOX in 2010. On February 3, 2011, he sold MTGOX to Mark Karpeles and K.K. Tibanne ("Tibanne"). Pursuant to that agreement, Karpeles and Tibanne were to "[f]orm New Gox within six months" and "New Gox will acquire all of MTGOX." *See* Sale Contract for MTGOX, attached as Exhibit F. The agreement also provided that McCaleb "retains no control of MTGOX or New Gox," and that McCaleb would be indemnified "against any legal action that is taken against [him] with regards to" the MTGOX exchange. *Id.*

### D. MTGOX Corporate History and Subsequent Insolvencies

"New Gox" became MtGox Co., Ltd. a/k/a MtGox KK (the debtor here, referred to as "MTGOX"). Tibanne is the parent company of MTGOX and all of its affiliated entities (*e.g.*., MtGox Inc. and MtGox North America). MTGOX continued in operation for more than three years after McCaleb sold it. On February 7, 2014, MTGOX halted withdrawals on the exchange. By February 28, 2014, MTGOX suspended all trading on the exchange and filed a petition for civil rehabilitation in Japan (hereinafter "the First Japanese Rehabilitation Proceeding"). On March 9, 2014, it filed a voluntary petition in this Court commencing this Chapter 15 bankruptcy proceeding as an ancillary proceeding to the operative Japanese bankruptcy proceeding.

On April 16, 2014, the Japanese court concluded that MTGOX did not have sufficient assets to satisfy its obligations leading it to dismiss the First Japanese Rehabilitation Proceeding and replace it with a liquidation proceeding ("the Japanese Liquidation Proceeding"). Because of its heavy reliance on MTGOX for revenue, the Japanese Liquidation Proceeding ultimately forced Tibanne into bankruptcy. An ancillary Chapter 15 proceeding was commenced in the U.S. Bankruptcy Court for the Southern District of New York by Tibanne on February 3, 2015. *See In re Tibanne Co., Ltd.*, United States Bankruptcy Court for the Southern District of New York, No. 15-10255. There has been very little activity in the Tibanne Chapter 15 proceeding, but it appears there is ongoing litigation between the Tibanne trustee and the MTGOX trustee.

Between June 2014 and June 2018, the value of bitcoins increased approximately 1,200% with a peak increase reaching over 2,800%. This change in value in MTGOX's bitcoin holdings led to a change in circumstances for the Japanese Liquidation Proceeding, leading the court to stay the Japanese Liquidation Proceeding because creditors might be made whole. As a result, on June 22, 2018 the Japanese court initiated a new civil rehabilitation proceeding (hereinafter "Second Japanese Rehabilitation Proceeding"), and it stayed the Japanese Liquidation Proceeding pursuant to Article 39 of the Japanese Civil Rehabilitation

Act. On October 25, 2018, the trustee in the Second Japanese Rehabilitation Proceeding asked this Court to modify its recognition order to identify the Second Japanese Rehabilitation Proceeding as the operative main proceeding here. On December 11, 2018, this Court granted that request.

### *E. Administration of the Claims in MTGOX Bankruptcy*

The original deadline for filing claims in the Japanese Liquidation Proceeding was July 29, 2015. The Raggios did not file a proof of claim in the Japanese Liquidation Proceeding. Once the Second Japanese Civil Rehabilitation was commenced in June 2018, the proof of claim filing process started over. The new deadline for filing claims was October 22, 2018. That deadline was later extended to December 26, 2018. The proof of claim form, however, limited recovery to those who had bitcoins in an account on the MTGOX exchange at the time it collapsed (February 2014). *See* Exhibit E, at 15.

As mentioned above, the Raggios filed their Proof of Claim in the Second Japanese Rehabilitation Proceeding on October 16, 2018. That Proof of Claim was not provided to McCaleb until January 9, 2019, after the close of the claims period for the Second Japanese Rehabilitation Proceeding. On February 6, 2019, McCaleb submitted a Proof of Claim in the Second Japanese Civil Rehabilitation Proceeding, seeking indemnity and/or to prevent the Raggios from obtaining a double recovery

in the Mississippi lawsuit and the insolvency proceeding. *See* McCaleb Proof of Claim and Letter, attached as Exhibit G.

As evidenced by the Proof of Claim form, the claim process is ill-suited for the indemnity-type interest asserted by McCaleb here. *See* Exhibit E. The same is true of the Raggios, who are asserting a claim for bitcoins that were not present in their account at the time MTGOX collapsed. The *fact* that those bitcoins were not in their account forms the very basis of their claim; yet it appears it will also be the basis for denying their claim.

On the other hand, it was reported in April 2019 that the trustee was approving reimbursement for creditors **who did not file proofs of claims at all** so long as those creditors had verified account balances on the MTGOX exchange at the time it collapsed. Under such an approach reimbursement is automatically granted to individuals like Baron (the owner of the account frozen in 2011 during the investigation of the Raggios' theft) irrespective of whether he claims ownership of those bitcoins via a Proof of Claim. *Id.* Baron's frozen bitcoins are the subject of the *Raggio* litigation and there is compelling evidence that those bitcoins are stolen property; to approve reimbursement of those bitcoins to Baron without any procedure for resolving the issues of disputed ownership would be a gross injustice. But, there is no mechanism in the Second Japanese Rehabilitation Proceeding for

9

McCaleb (or the Raggios) to learn the status of the Baron account or its frozen bitcoins. McCaleb is also left at the mercy of Raggios' counsel to remain informed as to the status of their pending claim.

After filing his Proof of Claim, McCaleb received no communication from MTGOX or the MTGOX trustee. In late April, after an inquiry by McCaleb, the MTGOX Technical Support Center emailed counsel for McCaleb to inform him the claim was not accepted. *See* Compilation of E-mails, attached as Exhibit H, at 17. No information was given for how to challenge this determination. *Id.* In early May the MTGOX Technical Support Center further explained that the claim was neither approved nor disapproved but was essentially disregarded. *Id.* at 22. This was the explanation given for why McCaleb received no communication from the trustee himself.

McCaleb has repeatedly requested information about how to protect his interests in the ongoing Second Japanese Civil Rehabilitation Proceeding including how to seek reassessment of the decision to disregard his claim. *See generally* Exhibit H. McCaleb laid out in a letter originally transmitted with his proof of claim and also in subsequent emails that he believes his claim is co-extensive with the timely-filed claims of others (*i.e.*, the Raggios). *See generally* Exhibits G and H. McCaleb was not seeking any *new* recovery from the estate, therefore there is no

prejudice in evaluating McCaleb's claim in the first instance. One week ago, McCaleb finally received communication from the trustee, who explained that McCaleb must submit a document **in Japanese** explaining his position in order to have his claim evaluated. *See* Exhibit H, at 25. Yet, all indications are that McCaleb's best-case scenario is having his claim evaluated pursuant to the extremely narrow review process described above.

### F. McCaleb Faces Copy-Cat Lawsuits

The *Raggio* lawsuit is not the only matter pending against McCaleb wherein creditors of MTGOX seek to hold him liable for damages from MTGOX's collapse. Other MTGOX creditors, frustrated by the lack of progress in the MTGOX bankruptcy, recently made similar claims against McCaleb. A lawsuit filed on May 17, 2019 (and not yet served on McCaleb) alleges that McCaleb made representations in 2010 and 2011 that caused the plaintiffs to lose the bitcoins they had on the MTGOX exchange when it collapsed in 2014. The status of these individuals' proofs of claim (assuming they filed one) also remains unknown, but they claim they are entitled to more than 45,000 BTC. This lawsuit was filed after the deadline for which McCaleb could have filed a Proof of Claim, as will any future claims that may be brought.

It is suspected that the claims currently pending against McCaleb involve some of the largest individual claims in the MTGOX insolvency proceeding. Yet, the Second Japanese Civil Rehabilitation Proceeding appears to have no mechanism for McCaleb to protect himself against the growing wave of litigation involving MTGOX creditors now seeking to hold him liable for MTGOX's liabilities.

## II. REQUEST FOR STATUS CONFERENCE

Chapter 15 was created to promote "cooperation between United States courts, trustees, examiners, debtors and debtors in possession and the courts and other competent authorities of foreign countries [for] fair and efficient administration of cross-border insolvencies that protects the interests of all creditors and other interested entities." *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 126 (Bankr. S.D.N.Y. 2007); *accord* 11 U.S.C. § 1501(a). "Chapter 15 accords the court substantial discretion and flexibility" to advance those interests. *Id*.

In particular, Code § 1507(b)(2) embodies the requirement that **"a U.S. court consider the prejudice and inconvenience to U.S. creditors** in prosecuting their claims in the foreign proceeding" where it states clearly that "protection of claim holders in the United States" is a central purpose behind Chapter 15. *See* 8 Norton

Bankr. L. & Prac. 3d § 154:22. Foreign courts must provide assurance that "claims arising under U.S. law will be protected." *Id.*

McCaleb, the founder of MTGOX who sold it three years before its collapse, has been placed in an impossible situation. U.S. creditors of MTGOX who are frustrated with the Second Japanese Civil Rehabilitation Proceeding are now turning to McCaleb to assert claims that he is somehow responsible for covering MTGOX's obligations. The MTGOX claims process is not *designed* to handle claims based on contractual indemnity or theft. The trustee/foreign representative has been tasked with caring for the interests of thousands of individual (and oftentimes anonymous) creditors around the world in an extraordinarily complex, volatile, and unwieldy insolvency proceeding. While McCaleb understands the difficulty of the trustee/foreign representative's job, McCaleb has not been able to obtain information about how to protect his interests in the Second Japanese Civil Rehabilitation.

Pursuant to the broad discretion afforded this Court, McCaleb requests a status conference to obtain the following information from the Court, the foreign representative, or the foreign representative's U.S. counsel:

1) **What evaluation criteria and procedures exist for the claims of McCaleb, the Raggios, and other similarly situated parties?**

    The Second Japanese Rehabilitation Proceeding (and its Proof of Claim procedure) is structured around providing recovery for individuals with bitcoins in an account on MTGOX at the time of its

collapse. More information is needed with respect to claims based on theft of bitcoins from one's MTGOX account prior to the collapse.

2) **What procedures exist to resolve the disputed ownership of bitcoins frozen in Baron's account?**

All involved parties believed a MTGOX account holder named Baron may have stolen the Raggios' bitcoins. His account was frozen and, to our knowledge, remained frozen at the time MTGOX collapsed. A failure to account for this disputed ownership will result in prejudice to McCaleb, the Raggios, and potentially all other MTGOX creditors.

3) **Will McCaleb, the Raggios, and others be given a clear explanation for any determination on their claims that will provide sufficient time and information to allow for that determination to be challenged?**

The communication from MTGOX has been erratic and untimely. Assurances are needed to guarantee McCaleb, the Raggios, and others have sufficient opportunity to prosecute their claims.

4) **Will MTGOX's Civil Rehabilitation honor contractual indemnity obligations owed to McCaleb?**

McCaleb continues to be presented with new claims covered by the indemnity provisions of the MTGOX sale contract. There is no information available regarding the allocation of assets and liabilities between MTGOX and Tibanne. Furthermore, McCaleb seeks information regarding whether a substantive consolidation (or similar procedure) of MTGOX, Tibanne, and other MTGOX-related entities has been considered to protect the interests of all U.S. creditors.

Given the lack of formal procedures in place to address the above issues in the Second Japanese Rehabilitation Proceeding, there is a significant risk of prejudice to McCaleb, the Raggios, and other similarly situated individuals and entities.

This Court has the authority to grant the relief requested above. "Code § 1525(b) authorizes the court to communicate directly with, or to request information or assistance directly from, a foreign court or a foreign representative." *See* 8 Norton Bankr. L. & Prac. 3d §154:27. The legislative history reveals that "the rights of courts to communicate with other courts in worldwide insolvency cases is of central importance [and t]his section authorizes courts to do so." *Id.* In fact, clear protocols are established under Bankruptcy Rule 5012 for how a U.S. bankruptcy court is to engage a foreign court or foreign representative, demonstrating this Court has such authority. *Id.*

Chapter 15 also contemplates this Court's power to conduct discovery of a foreign proceeding. *See* 8 Norton Bankr. L. & Prac. 3d § 154:14. And U.S. courts have reserved the right to "review any proposed distribution to creditors to determine that the interests of the creditors in the United States are sufficiently protected" under their Chapter 15 powers. *Id.* (discussing *In re RHTC Liquidating Co.*, 424 B.R. 714, 717-18 (Bankr. W.D. Pa. 2010)). This Court has broad discretion to provide the relief

requested so that McCaleb can fully protect his interests without undue prejudice or inconvenience.

WHEREFORE, for the reasons stated above, McCaleb requests that this court grant the relief requested above.

Respectfully submitted, this the 2nd day of July, 2019.

**JED McCALEB**

By: */s/ Edwin S. Gault Jr.*
EDWIN S. GAULT, JR. (TX #24049863)
FORMAN WATKINS & KRUTZ LLP
210 East Capitol Street, Suite 2200 (39201)
P.O. Box 22608
Jackson, MS 39225-2608
Phone: (601) 960-8600
Facsimile: (601) 960-8613
win.gault@formanwatkins.com

*Counsel for Jed McCaleb*

## **CERTIFICATE OF SERVICE**

I do hereby certify that I have served the foregoing using the Court's ECF System, which sent notifications to all known counsel of record.

THIS, the 2nd day of July, 2019.

/s/ *Edwin S. Gault, Jr.*
**EDWIN S. GAULT JR.**
