David J. Molton (admitted *pro hac vice*)
Gerard T. Cicero
**BROWN RUDNICK LLP**
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
Email: dmolton@brownrudnick.com
Email: gcicero@brownrudnick.com

- and –

Thomas Scannell (TX 24070559)
**FOLEY & LARDNER LLP**
2021 McKinney Avenue
Dallas, Texas 75201
Telephone: (214) 999-4289
Email: tscannell@foley.com

*Counsel for Nobuaki Kobayashi,
In His Capacities as the Bankruptcy Trustee
and Foreign Representative and Trustee of the
Second Civil Rehabilitation Proceeding
and Foreign Representative of MtGox Co., Ltd.,
a/k/a MtGox KK*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 15 |
| MTGOX Co., LTD. (a/k/a MTGOX KK), | Case No. 14-31229-sgj-15 |
| Debtor in a Foreign Proceeding. | |

**NOTICE REGARDING IN CAMERA SUBMISSION BY COUNSEL**

**PLEASE TAKE NOTICE** that on March 13, 2023, counsel for Nobuaki Kobayashi, in his capacity as the rehabilitation trustee of the Debtor (the "Trustee") in respect of the civil rehabilitation proceeding of Mt Gox Co. Ltd. a/k/a Mt Gox KK (the "Debtor") under Japanese law currently pending before the Twentieth Civil Division of the Tokyo District, Court, Japan (the

1

"Civil Rehabilitation Proceeding" and the "Court") submitted a letter to the chambers of the Hon. Lisa G. Beckerman, of the United States Bankruptcy Court for the Southern District of New York. To provide notice to all parties to these proceedings, a copy of such letter is attached hereto as **Exhibit A**.

Dated: March 13, 2023
       Dallas, Texas

Respectfully submitted,

**FOLEY &LARDNER LLP**

*/s/ Thomas C. Scannell*
Thomas Scannell (TX 24070559)
2021 McKinney Avenue
Dallas, Texas 75201
Telephone: (214) 999-4289
Email: tscannell@foley.com

- and –

**BROWN RUDNICK LLP**
David J. Molton (admitted *pro hac vice*)
Gerard T. Cicero (admitted *pro hac vice*)
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
Email: dmolton@brownrudnick.com
Email: gcicero@brownrudnick.com

*Counsel for Nobuaki Kobayashi,*
*In His Capacities as the Bankruptcy Trustee*
*and Foreign Representative and Trustee of the*
*Second Civil Rehabilitation Proceeding*
*and Foreign Representative of MtGox Co.,*
*Ltd., a/k/a MtGox KK*

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that a true and correct copy of the foregoing was served electronically on March 13, 2023, through the Court's CM/ECF system on all parties registered to received electronic notice in this case.

*/s/ Thomas C. Scannell*
Thomas C. Scannell

# **<u>Exhibit A</u>**

**brown**rudnick

DAVID J. MOLTON

direct dial: 212.209.4822
fax: 212.938.2822
dmolton@brownrudnick.com

March 13, 2023

Honorable Lisa G. Beckerman
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004-1408

**RE:    Personnel Matter: Former Judicial Clerk Jennifer M. Schein**

Dear Judge Beckerman:

  We write regarding Ms. Jennifer M. Schein, who formerly served as a judicial law clerk in Your Honor's Chambers from February 2021 to February 2022. Ms. Schein will be joining Brown Rudnick LLP (the "Firm") as an associate in our Restructuring Practice Group. Ms. Schein is a licensed member of the New York and New Jersey bars. In accordance with Rule l.12(d)(1)(iv) of the New York Rules of Professional Conduct (the "New York Rules") and Rule 1.12(b)(2) of the New Jersey Rules of Professional Conduct (the "New Jersey Rules" and together with the New York Rules, the "Rules"), this correspondence is to advise the Court of the steps the Firm is taking to enable the Court to ascertain compliance with the Rules. Courtesy copies of the applicable Rules are attached for your convenience.

  The first contact with the Firm regarding Ms. Schein's prospective employment was on or about February 14, 2023. Following that initial contact, the Firm conducted a conflicts analysis, in which Ms. Schein advised that, during her tenure in your Chambers, she briefly worked on Chapter 15 bankruptcy matter styled as <u>In Re: Tibanne Co., Ltd. a/k/a K.K. Tibanne and Nobuaki Kobayashi, in his capacity as the Bankruptcy Trustee and Foreign Representative of MtGox Co., Ltd., a/k/a MtGox KK (Case No. 15-10255 (LGB))</u> (the "Tibanne Case"). We do not represent any party in the Tibanne Case.[1] However, this case is related to a Chapter 15 bankruptcy matter filed in the United States Bankruptcy Court for the Northern District of Texas styled as <u>In Re: MtGox Co., Ltd. (Case No. 3:14-bk-31229)</u> (the "MtGox Case"). In the MtGox Case, we represent Nobuaki Kobayashi, in his capacity as Foreign Representative of MtGox Co., Ltd.

---

[1] Attorney Daniel J. Saval represents Nobuaki Kobayashi in the Tibanne Case. Attorney Saval was previously employed by Brown Rudnick and is currently employed by Kobre & Kim.



Honorable Lisa G. Beckerman
March 13, 2023
Page 2

Although Ms. Schein will not be involved in the MtGox Case once employed by the Firm, we are taking the following steps regarding Ms. Schein's employment with the Firm (in an abundance of caution, we are adhering to the New York and New Jersey Rules):

1) Per Rule 1.12(b)(2) of the New York Rules and Rule 1.12(a) of the New Jersey Rules, Ms. Schein will not represent anyone in connection with the MtGox Case. If the Firm becomes involved in any other matter in which she participated personally and substantially as a law clerk, she will not represent anyone in such a matter.

2) Per Rule 1.12(d)(1)(i) of the New York Rule, all Firm personnel working on the MtGox Case have been notified that Ms. Schein is prohibited from participating in the representation of any client in the MtGox Case.

3) Per Rule 1.12(d)(1)(ii) of the New York Rules and Rule 1.12(b)(1) of the New Jersey Rules, we will implement an ethical wall and screening procedures to prevent disclosure and access to information related to the MtGox Case between Ms. Schein and other Firm personnel. If the Firm subsequently becomes involved in any other matter in which she participated personally and substantially as a law clerk, we will also establish screening procedures.

4) Per Rule 1.12(d)(1)(iii) of the New York Rule and Rule 1.12(b)(1) of the New Jersey Rule, Ms. Schein will not be apportioned any part of the fee from the Firm's representations in or related to the MtGox Case. If the Firm subsequently becomes involved in any other matter in which she participated personally and substantially as a law clerk, she will not be apportioned any part of the fee from such representation.

5) Per Rule 1.12(d)(1)(iv) of the New York Rule and Rule 1.12(b)(2) of the New Jersey Rule, the Firm is sending this notice to the Court, and is providing a copy of this letter to the other parties in the MtGox case. If the Firm subsequently becomes involved in any other matter in which Ms. Schein participated personally and substantially as a law clerk, we will provide appropriate notices.

In addition, per Rule 1.12(d)(2) of the New York Rule, after a review of the circumstances, we do not believe that there are any circumstances in our particular representation in the MtGox Case that create an appearance of impropriety. We will conduct such an analysis in each case if the Firm subsequently becomes involved in any other matter in which Ms. Schein participated in personally and substantially as a law clerk.



Honorable Lisa G. Beckerman
March 13, 2023
Page 3

     Should the Court have any questions regarding the matters outlined above, please contact me at your earliest convenience.

                                      Sincerely,
                                      BROWN RUDNICK LLP

                                      David J. Molton

Enclosures:   Rule 1.12 of the New York Rules of Professional Conduct
                Rule 1.12 of the New Jersey Rules of Professional Conduct

cc: All parties in *In Re: MtGox Co., Ltd. (Case No. 3:14-bk-31229)* by e-filing

# RULE 1.12

## SPECIFIC CONFLICTS OF INTEREST FOR FORMER JUDGES, ARBITRATORS, MEDIATORS OR OTHER THIRD-PARTY NEUTRALS

(a) A lawyer shall not accept private employment in a matter upon the merits of which the lawyer has acted in a judicial capacity.

(b) Except as stated in paragraph (e), and unless all parties to the proceeding give informed consent, confirmed in writing, a lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as:

    (1) an arbitrator, mediator or other third-party neutral; or

    (2) a law clerk to a judge or other adjudicative officer or an arbitrator, mediator or other third-party neutral.

(c) A lawyer shall not negotiate for employment with any person who is involved as a party or as lawyer for a party in a matter in which the lawyer is participating personally and substantially as a judge or other adjudicative officer or as an arbitrator, mediator or other third-party neutral.

(d) When a lawyer is disqualified from representation under this Rule, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter unless:

    (1) the firm acts promptly and reasonably to:

        (i) notify, as appropriate, lawyers and nonlawyer personnel within the firm that the personally disqualified lawyer is prohibited from participating in the representation of the current client;

        (ii) implement effective screening procedures to prevent the flow of information about the matter between the personally disqualified lawyer and the others in the firm;

    (iii) ensure that the disqualified lawyer is apportioned no part of the fee therefrom; and

    (iv) give written notice to the parties and any appropriate tribunal to enable it to ascertain compliance with the provisions of this Rule; and

  (2) there are no other circumstances in the particular representation that create an appearance of impropriety.

 (e) An arbitrator selected as a partisan of a party in a multi-member arbitration panel is not prohibited from subsequently representing that party.

**Comment**

 [1] A lawyer acts in a "judicial capacity" within the meaning of paragraph (a) when the lawyer serves as a judge or other adjudicative officer. Where a judge or other adjudicative officer in a multimember court, leaves judicial office to practice law, the former judge or adjudicative officer is not prohibited from representing a client in a matter that was pending in the court if the former judge or adjudicative officer did not act upon the merits in that matter. So also, the fact that a former judge or adjudicative officer exercised administrative responsibility in a court does not prevent the former judge or adjudicative officer from acting as a lawyer in a matter where the judge or adjudicative officer had previously exercised remote or incidental administrative responsibility that did not affect the merits. *See* Rule 1.11, Comment [4] (a former government lawyer is disqualified "only from particular matters I which the lawyer participated personally and substantially"). A former judge or adjudicative officer may not, however, accept private employment in a matter upon the merits of which the judge or adjudicative officer has acted in a judicial capacity and—unlike conflicts for lawyers who have acted in a capacity listed in Rule 1.12 (b)—a conflict arising under paragraph (a) cannot be waived. The term "adjudicative officer" in paragraphs (b)(2) and (c) includes such officials as judges pro tempore, referees, special masters, hearing officers and other parajudicial officers.

 [2] A lawyer who has served as an arbitrator, mediator or other third-party neutral may be asked to represent a client in a matter in which the lawyer participated personally and substantially. This Rule forbids such representation unless all of the parties to the proceedings give their

informed consents, confirmed in writing. *See* Rules 1.0(j), (e). Other law or codes of ethics governing third-party neutrals may impose more stringent standards of personal or imputed disqualification. *See* Rule 2.4.

[3] Although lawyers who serve as third-party neutrals do not obtain information concerning the parties that is protected under Rule 1.6, they typically owe the parties an obligation of confidentiality under law or codes of ethics governing third-party neutrals. Paragraph (d) therefore provides that conflicts of the personally disqualified lawyer will be imputed to other lawyers in a law firm unless the conditions of this paragraph are met.

[4] Requirements for screening procedures are stated in paragraph (d). "Screened" and "screening" are defined in Rule 1.0(t).

[4A] A firm seeking to avoid imputed disqualification under this Rule must prohibit the personally disqualified lawyer from sharing in the fees in the matter.

[4B] A firm seeking to avoid disqualification under this Rule should also consider its ability to implement, maintain, and monitor the screening procedures permitted by paragraph (d) before undertaking or continuing the representation. In deciding whether the screening procedures permitted by this Rule will be effective to avoid imputed disqualification, a firm should consider a number of factors, including how the size, practices and organization of the firm will affect the likelihood that any confidential information acquired about the matter by the personally disqualified lawyer can be protected. If the firm is large and is organized into separate departments, or maintains offices in multiple locations, or for any reason the structure of the firm facilitates preventing the sharing of information with lawyers not participating in the particular matter, it is more likely that the requirements of this Rule can be met and imputed disqualification avoided. Although a large firm will find it easier to maintain effective screening, lack of timeliness in instituting, or lack of vigilance in maintaining, the procedures required by this Rule may make those procedures ineffective in avoiding imputed disqualification. If a personally disqualified lawyer is working on other matters with lawyers who are participating in a matter requiring screening, it may be impossible to maintain effective screening procedures. The size of the firm may be considered as one of the factors affecting the firm's ability to institute and maintain effective screening procedures, it is not a dispositive factor. A

small firm may need to exercise special care and vigilance to maintain effective screening but, if appropriate precautions are taken, small firms can satisfy the requirements of paragraph (d).

[4C]   In order to prevent any lawyer in the firm from acquiring confidential information about the matter from the newly associated lawyer, it is essential that notification be given and screening procedures implemented promptly. If the matter requiring screening is already pending before the personally disqualified lawyer joins the firm, the procedures required by this Rule should be implemented before the lawyer joins the firm. If a newly associated lawyer joins a firm before a conflict requiring screening arises, the requirements of this Rule should be satisfied as soon as practicable after the conflict arises. If any lawyer in the firm acquires confidential information about the matter from the personally disqualified lawyer, the requirements of this Rule cannot be met, and any subsequent efforts to institute or maintain screening will not be effective in avoiding the firm's disqualification. Other factors may affect the likelihood that screening procedures will be effective in preventing the flow of confidential information between the personally disqualified lawyer and others in the firm in a given matter.

[5]   To enable the tribunal to determine compliance with the Rule, notice to the parties and any appropriate tribunal generally should be given as soon as practicable after the need for screening becomes apparent.

former paragraphs (c) and (d) amended and redesignated as paragraphs (d) and (e), and former paragraph (e) merged into redesignated paragraph (e) November 17, 2003 to be effective January 1, 2004; paragraph (c) amended July 9, 2008 to be effective September 1, 2008.

Comment by Court (Regarding 2008 Amendment)

In In re ACPE Opinion 705, 192 N.J. 46 (2007), the Court deferred to the Legislature in the spirit of comity and held that the post-government employment restrictions imposed by the New Jersey Conflicts of Interest Law, N.J.S.A. 52:13D-17, apply in the context of former State attorneys. The 2008 amendment to paragraph (c) implements that decision.

---

### RPC 1.12. Former Judge, Arbitrator, Mediator or Other Third-Party Neutral or Law Clerk

(a) Except as stated in paragraph (c), a lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge or other adjudicative officer, arbitrator, mediator or other third-party neutral, or law clerk to such a person, unless all parties to the proceeding have given consent, confirmed in writing.

(b) If a lawyer is disqualified by paragraph (a), no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in the matter unless:

(1) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and

(2) written notice is promptly given to the parties and any appropriate tribunal to enable them to ascertain compliance with the provisions of this Rule.

(c) A lawyer shall not negotiate for employment with any person who is involved as a party or as an attorney for a party in a matter in which the lawyer is participating personally and substantially as a judge or other adjudicative officer, arbitrator, mediator, or other third-party neutral. A lawyer serving as law clerk to such a person may negotiate for employment with a party or attorney involved in a matter in which the law clerk is participating personally and substantially, but only after the lawyer has notified the person to whom the lawyer is serving as law clerk.

(d) An arbitrator selected by a party in a multi-member arbitration panel is not prohibited from subsequently representing that party.

Note: Adopted July 12, 1984 to be effective September 10, 1984; caption and paragraph (a) amended, new paragraph (b) adopted, former paragraphs (b) and (c) amended and redesignated as paragraphs (c) and (d) November 17, 2003 to be effective January 1, 2004.

---

### RPC 1.13. Organization as the Client

(a) A lawyer employed or retained to represent an organization represents the organization as distinct from its directors, officers, employees, members, shareholders or other constituents. For the purposes of RPC 4.2 and 4.3, however, the organization's lawyer shall be deemed to represent not only the organizational entity but also the members of its litigation control group. Members of the litigation control group shall be deemed to include current agents and employees responsible for, or significantly involved in, the determination of the organization's legal position in the matter whether or not in litigation, provided, however, that "significant involvement" requires involvement greater, and other than, the supplying of factual information or data respecting the matter. Former agents and employees who were members of the litigation control group shall presumptively be deemed to be represented in the matter by the organization's lawyer but may at any time disavow said representation.

(b) If a lawyer for an organization knows that an officer, employee or other person associated with the organization is engaged in action, intends to act or refuses to act in a matter related to the representation that is a violation of a legal obligation to the organization, or a violation of law which reasonably might be imputed to the organization, and is likely to result in substantial injury to the organization, the lawyer shall proceed as is reasonably necessary in the best interest of the organization. In determining how to proceed, the lawyer shall give due consideration to the seriousness of the violation and its consequences, the scope and nature of the lawyer's representation, the responsibility in the organization and the apparent motivation of the person involved, the policies of the organization concerning such matters and any other relevant considerations. Any measures taken shall be designed to minimize disruption of the organization and the risk of revealing information relating to the representation to persons outside the organization. Such measures may include among others:

(1) asking reconsideration of the matter;

(2) advising that a separate legal opinion on the matter be sought for presentation to appropriate authority in the organization; and

(3) referring the matter to higher authority in the organization, including, if warranted by the seriousness of the matter, referral to the highest authority that can act in behalf of the organization as determined by applicable law.

(c) When the organization's highest authority insists upon action, or refuses to take action, that is clearly a violation of a legal obligation to the organization, or a violation of law which reasonably might be imputed to the organization, and is likely to result in substantial injury to the organization, the lawyer may take further remedial action that the lawyer reasonably believes to be in the best interest of the organization. Such action may include revealing information otherwise protected by RPC 1.6 only if the lawyer reasonably believes that: